# EXHIBIT 24

STATE OF NORTH CAROLINA

ROBESON COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
24 CVS 468

CINDY SOLES SMITH, Administratrix )
of the ESTATE OF MARK KEANNAN )
SMITH )
           )
         Plaintiff, )
           )
v. )
           )
WILLIAM BRATTY LAMB and )
XPO LOGISTICS FREIGHT, INC. )
           )
         Defendants. )
           )

## PLAINTIFF'S MOTION FOR SANCTIONS AND SECOND MOTION TO COMPEL AGAINST DEFENDANT XPO LOGISTICS FREIGHT, INC.

NOW COMES Plaintiff, Cindy Soles Smith, by and through undersigned counsel, pursuant to Rules 26, 33, 34, and 37 of the North Carolina Rules of Civil Procedure, and moves for an Order compelling Defendant XPO Logistics Freight, Inc. to respond fully, completely, and without objection to Plaintiff's First Interrogatories, First Requests for Production of Documents and Second Request for Production of Documents, and produce all documents responsive thereto and moving the Court for appropriate sanctions. In support of this Motion, Plaintiff states as follows:

1.     This Action arises out of the horrific suffering and death of Mark Smith, who was tragically killed in a serious motor vehicle collision on U.S. 74 Alternate on October 11, 2023, in Robeson County involving a commercial vehicle owned by XPO – a shipping and transportation conglomerate based in Greenwich, Connecticut.

Electronically Filed Date: 2/26/2025 2:27 PM Robeson Superior Court County Clerk of Superior Court

2. Plaintiff served XPO with Plaintiff's First Interrogatories and First Request for Production of Documents and First Request for Admission on June 5, 2024. *(Plaintiff's Exhibit 1)*

3. On June 27, 2024, XPO moved the Clerk for an extension of time to respond to Plaintiff's first set of discovery. *(Plaintiff's Exhibit 2)*

4. The Clerk granted an Order enlarging the time for XPO to respond to Plaintiff's First Set of Interrogatories, First Request for Production and First Request for Admission to and including August 5, 2024. *(Plaintiff's Exhibit 3)*

5. On August 6, 2024, XPO served its <u>untimely</u> responses to Plaintiff's First Interrogatories, First Request for Production of Documents and First Request for Admission. *(Plaintiff's Exhibit 4)*

6. XPO's responses contained numerous improper objections and refusals to substantively answer, improper limitations of their responses and XPO improperly withheld clearly responsive documents and materials.

7. On August 6, 2024, counsel for Plaintiff sent a detailed correspondence to counsel for XPO advising counsel for XPO of the consequences of its untimely discovery responses and requested supplementation – without objection – within 10 business days. *(Plaintiff's Exhibit 5)*

8. On August 22, 2024, counsel for Plaintiff again sent a detailed correspondence to XPO advising of the improper objections and past-due discovery and further advised XPO that its objections were waived as a matter of law and again requested complete responses on or before August 30, 2024. *(Plaintiff's Exhibit 6)*

9. On August 30, 2024, counsel for XPO requested another extension of time to fully respond to Plaintiff's discovery, as requested in the correspondence dated August 6, 2024 and August 30, 2024. In a show of good faith and cooperation, counsel for Plaintiff allowed this extension and moved the deadline to September 3, 2024. *(Plaintiff's Exhibit 7)*

10. XPO served its First Supplemental Responses to Plaintiff's First Set of Interrogatories, First Request for Production of Documents and First Request for Admission on September 3, 2024. *(Plaintiff's Exhibit 8)*

11. After reviewing the production and responses from XPO, on September 4, 2024, counsel for Plaintiff again advised counsel for XPO of the various ongoing discovery deficiencies – including the production of XPO's insurance policies, declaration pages, training materials, the employee handbook and basic shipping documents (e.g., Bill of Lading and Manifest). *(Plaintiff's Exhibit 9)*

12. On October 10, 2024, counsel for Plaintiff sent counsel for XPO a detailed correspondence which requested supplemental discovery responses to the following specific request:

    a. Request for Production 2 (request for the document retention policy of XPO);

    b. Request for Production 3 and 4 (request for all insurance policies for XPO, including all excess policies);

    c. Request for Production 6 (request for the Driver Qualification File, Driver Investigation File and Driver History File);

    d. Request for Production 33 (email communications between Lamb and XPO for 90 days prior to the subject collision);

e. <u>Request for Production 34</u> (request for communications between XPO and Lamb from any onboard communication systems);

f. <u>Request for Production 35</u> (request for all onboard audio and visual telematics data and videos);

g. <u>Request for Production 40</u> (request for DVIR reports);

h. <u>Request for Production of 42</u> (request for basic shipping documents including the manifest, bill of lading and dispatch documents);

i. <u>Request for Production 46</u> (documents concerning preventability analysis completed on behalf of XPO and the conclusions of such analysis);

j. <u>Request for Production 55-59</u> (request for training materials that were provided to Defendant Lamb);

k. <u>Request for Production 60</u> (request for documents related to hierarchy of supervisors and management at XPO);

l. <u>Request for Production 61</u> (request for training documents provided to XPO employees) ;

m. <u>Request for Production 63-64</u> (request for contracts or agreements between XPO, its driver (Lamb) and any other entities involved in the subject transport);

n. <u>Request for Production 65</u> (request for XPO's "Accident Register" which is required to be maintained under federal law);

o. <u>Request for Production 66</u> (request for 30(b)(6) deposition transcripts from XPO corporate designee(s) for injury or death claims in last 5 years);

p. <u>Interrogatory 3</u> (information requested concerning injury and death claims

4

and lawsuits involving XPO);

q. <u>Interrogatory 5</u> (seeking actual written responses to (a)-(g));

r. <u>Interrogatory 6</u> (seeking actual written responses to (a)-(e));

s. <u>Interrogatory 7</u> (seeking actual written responses to (a)-(e));

t. <u>Interrogatory 12</u> (seeking actual written responses to (b)-(d));

u. <u>Interrogatory 14</u> (seeking actual written responses to the question asked);

v. <u>Interrogatory 15</u> (seeking actual written responses to the question asked);

w. <u>Interrogatory 20</u> (seeking written responses to internal investigation documents referenced by XPO);

x. <u>Interrogatory 22</u> (seeking actual written responses, not direction to documents referenced by XPO);

y. <u>Interrogatory 26</u> (seeking written responses to internal investigation documents referenced by XPO);

z. <u>Interrogatory 32</u> (seeking written responses to internal investigation documents referenced by XPO);

aa. <u>Interrogatory 36</u> (seeking written responses concerning XPO's accident review board and preventability determination completed by XPO);

bb. <u>Interrogatory 38</u> (seeking actual written responses concerning all liability insurance coverage for XPO)

13. In the detailed correspondence of October 10, 2024, counsel for Plaintiff further requested supplementation of the following XPO Bates:

a. XPO – 000058

b. XPO – 000091

5

c. XPO – 000109

14. In the detailed correspondence of October 10, 2024, counsel for Plaintiff requested supplemental responses within 15 business days and once again certified that Plaintiff would seek the Court's intervention if substantive responses were not received in a timely manner. *(Plaintiff's Exhibit 10)*

15. On October 22, 2024, counsel for Plaintiff served its Second Request for Production of Documents on XPO, which related specifically to telematics software used by XPO. *(Plaintiff's Exhibit 11)*

16. On October 29, 2024, counsel for Plaintiff sent counsel for XPO a detailed correspondence again requesting the insurance coverage and declaration pages for XPO. In this letter, counsel for Plaintiff alternatively requested an affidavit from XPO concerning the existence of excess insurance coverage that would be potentially applicable to this wrongful death case. *(Plaintiff's Exhibit 12)*

17. On November 1, 2024, as a final show of good faith and cooperation, counsel for Plaintiff sent counsel for XPO a detailed letter and ***agreed to voluntarily limit the scope of its request for supplementation*** with an updated due date of December 2, 2024. *(Plaintiff's Exhibit 13)*

18. After multiple requests for further extensions of time by XPO, counsel for Plaintiff agreed to a new due date of December 23, 2024, for all supplemental discovery responses as it correlated with XPO's due date for responses to Plaintiff's Second Request for Production of Documents. *(Plaintiff's Exhibit 14)*

19. On December 23, 2024, at 4:41pm, XPO served its responses to Plaintiff's November 1, 2024 supplementation request and also served its responses to Plaintiff's

Second Request for Production of Documents. *(Plaintiff's Exhibit 15)*

20.     As with all responses served by XPO in this litigation to date, XPO's responses contained numerous improper objections and refusals to provide relevant and discoverable documents and information. XPO also refused to produce responsive and discoverable documents, materials, and files requested which were related to the telematics systems on board the subject tractor trailer.

21.     On December 24, 2024, counsel for Plaintiff advised counsel for XPO that the responses to Plaintiff's Second Request for Production of Documents and the supplementation in response to the November 1, 2024 correspondence were both woefully insufficient and counsel for Plaintiff advised XPO that this Motion was forthcoming. *(Plaintiff's Exhibit 16)*

22.     Throughout this litigation, XPO has continually and egregiously violated their obligations to Plaintiff and to this Court under the North Carolina Rules of Civil Procedure. XPO has exhibited a pattern of doing so, despite many attempts by Plaintiff's counsel to resolve these issues without judicial intervention.

23.     Plaintiff filed a Motion to Compel Against Defendant XPO on January 2, 2025 that was heard by this Court on January 13, 2025. *(Plaintiff's Exhibit 17)*

24.     This Court entered an Order on January 21, 2025 compelling Defendant XPO to respond fully to certain discovery – specifically set forth in the Order – within 30 days. *(Plaintiff's Exhibit 18)*

25.     On February 25, 2025 and February 26, 2025, past the deadline set by this Court in the Order dated January 21, 2025, Defendant XPO served their supplemental discovery responses that were woefully inadequate. *(Plaintiff's Exhibit 19)*

7

26. Plaintiff attempted to confer with Defendant XPO on February 24, 2025 but has not received complete supplementation from Defendant XPO as required by the Order entered by this Court on January 21, 2025. *(Plaintiff's Exhibit 20)*

27. Defendant XPO has continually, intentionally and egregiously violated their obligations to the Plaintiff and to this Court under the North Carolina Rules of Civil Procedure. Defendant XPO has exhibited a deliberate and calculated pattern of doing so despite many attempts by Plaintiff's counsel to resolve these issues without judicial intervention. Plaintiff is unable to effectively prosecute her claims without the highly relevant materials being withheld by Defendant XPO.

28. Pursuant to N.C.G.S. § 1A-1, Rule 37(d), Defendant XPO is subject to sanctions by this Court for the failure to comply with this Court's Order. Plaintiff therefore moves the Court to issue any sanction available pursuant to Rule 37(b)(2) for these failures, including but not limited to:

    a. An order compelling Defendant XPO to appear and show cause as to why they should not be held in contempt by the Court;

    b. An order taxing Defendant XPO with all costs incurred by the Plaintiff in this Action;

    c. An order taxing Defendant XPO with reasonable attorney's fees incurred by Defendant XPO's refusal to participate in discovery as required by the North Carolina Rules of Civil Procedure; and

    d. An order granting Plaintiff with such other and further relief against Defendant XPO available pursuant to Rules 26 and 37 of the North Carolina Rules of Civil Procedure in the discretion of the Court.

8

WHEREFORE, Plaintiff moves this Court for an Order pursuant to Rule 37(a) of the North Carolina Rules of Civil Procedure:

1. Compelling Defendant XPO to fully answer Plaintiff's First Interrogatories, First Requests for Production of Documents and Second Request for Production of Documents without objection;

2. Compelling Defendant XPO to produce all documents responsive to Plaintiff's First Interrogatories, First Requests for Production and Second Request for Production without objection;

3. Compelling Defendant XPO to appear and show cause as to why they should not be held in contempt by the Court;

4. Overruling all Defendant XPO's objections contained within its Responses to Plaintiff's First Interrogatories, First Requests for Production of Documents and Second Request for Production of Documents;

5. Taxing Defendant XPO with all costs incurred by the Plaintiff in this Action;

6. Taxing Defendant XPO with reasonable attorney's fees incurred by said Defendants' refusal to participate in discovery as required by the North Carolina Rules of Civil Procedure; and

7. For any further relief available under Rule 37(a) and/or Rule 37(b) – including sanctions – that the Court deems appropriate in the interests of justice given the continued disregard to which Defendant XPO has had to its obligations to participate in discovery in this Action.

*[Signature on Next Page]*

9

This the 26th day of February, 2025.

MUSSELWHITE, MUSSELWHITE,
BRANCH & GRANTHAM, P.A.

J. William Owen, NC Bar # 47994
P.O. Box 1448
Lumberton, NC 28359
Telephone: (910) 738-5277
Facsimile: (910) 738-3678
wowen@mmbglaw.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing *PLAINTIFF'S SECOND MOTION TO COMPEL AGAINST DEFENDANT XPO, NOTICE OF HEARING and CALENDAR REQUEST* was served upon all parties by email and U.S. mail to the following:

Megan M. Stacy
Austin Kessler
Gordon Rees Scully Mansukhani, LLP
150 Fayetteville St., Suite 1120
Raleigh, NC 27602
mstacy@grsm.com
lbyrd@grsm.com
*Counsel for Defendant XPO Logistics Freight, Inc. and Defendant Lamb*

Jennifer Welch
Cranfill Sumner
P.O. Box 27808
Raleigh, NC 27611-7808
JWelch@cshlaw.com
*Counsel for Counterclaim Defendant Cindy Smith, Adminsitratrix of the Estate of Mark K. Smith.*

This the 26th day of February, 2025.

MUSSELWHITE, MUSSELWHITE, BRANCH & GRANTHAM, P.A.

J. William Owen
NC State Bar No. 47994
606 N. Elm Street
Lumberton, NC 28358
wowen@mmbglaw.com
*Counsel for Plaintiff*

Electronically Filed Date: 2/26/2025 2:27 PM  Robeson Superior Court County Clerk of Superior Court

J.W. Musselwhite
W. Edward Musselwhite, Jr.
David F. Branch, Jr.

Norris Musselwhite Grantham
J. William Owen

William E. Musselwhite Sr.
(1930-1987)
Fred L. Musselwhite
(1939-2017)

# MUSSELWHITE | MUSSELWHITE
# BRANCH & GRANTHAM

## ATTORNEYS AT LAW

June 5, 2024

<u>VIA EMAIL ONLY</u>

Megan Stacy
Le'Ron Byrd
Gordon Rees Scully Mansukhani
150 Fayetteville Street, Suite 1120
Raleigh, NC 27601

> *Re:* **Cindy Soles Smith, Administratrix of the Estate of Mark K. Smith**
> **v. William Bratty Lamb and XPO Logistics Freight, Inc.**
> **24 CVS 468 (Robeson County)**

Dear Megan & Le'Ron:

Enclosed for service via electronic mail please find the following:

(1) Plaintiff's First Set of Interrogatories, Request for Production of Documents
and Request for Admission to Defendant William Bratty Lamb;

(2) Plaintiff's First Set of Interrogatories, Request for Production of Documents
and Request for Admission to Defendant XPO Logistics Freight, Inc.

Sincerely yours,

MUSSELWHITE, MUSSELWHITE, BRANCH & GRANTHAM

J. William Owen

Enclosures

Cc: Jennfier Welch (via email only)

606 North Elm Street     Post Office Box 1448     Lumberton, NC 28359-1
Telephone: (910) 738-5277     Fax: (910) 738-3678



PLAINTIFF'S
EXHIBIT
1

**Will Owen**

| | |
|---|---|
| **From:** | Will Owen |
| **Sent:** | Wednesday, June 05, 2024 10:41 AM |
| **To:** | mstacy@grsm.com; lbyrd@grsm.com |
| **Cc:** | Jennifer A. Welch; Brandi Davis; Sabrina Rockwell; Taylor Bolebruch; Stacy Frazier |
| **Subject:** | Estate of Mark K. Smith v. XPO Logistics Freight et al., 24 CVS 468 (Robeson County) |
| **Attachments:** | Ltr to Megan Stacy and Le'Ron Byrd 6.5.24.pdf; First Set of Interrogatories, Request for Production and Request for Admission to Lamb.pdf; First Set of Interrogatories, Request for Production and Request for Admission to XPO.pdf |

Dear Counsel:

Attached for service pursuant to Rule 5 of the North Carolina Rules of Civil Procedure please find the following:

(1) Plaintiff's First Set of Interrogatories, Request for Production of Documents and Request for Admission to Defendant William Bratty Lamb;

(2) Plaintiff's First Set of Interrogatories, Request for Production of Documents and Request for Admission to Defendant XPO Logistics Freight, Inc.

We look forward to continuing to work with you on this tragic case.

**J. William Owen**
Musselwhite, Musselwhite, Branch & Grantham, P.A.
T: +1 910 738 5277 | F: +1 910 738 3678

1

STATE OF NORTH CAROLINA

COUNTY OF ROBESON

CINDY SOLES SMITH, Administratrix of the )
ESTATE OF MARK KEANNAN SMITH )
                        )
          Plaintiff, )
                        )
v. )
                        )
WILLIAM BRATTY LAMB )
                        )
          Defendant )
                        )
and )
                        )
XPO LOGISTICS FREIGHT, INC. )
                        )
          Defendant/Counterclaim )
          Plaintiff )

**PLAINTIFF'S FIRST SET OF INTERROGATORIES, FIRST REQUESTS FOR PRODUCTION, AND FIRST REQUESTS FOR ADMISSION TO DEFENDANT XPO LOGISTICS FREIGHT, INC.**

       Pursuant to Rules 26, 33, 34 and 36 of the North Carolina Rules of Civil Procedure, you are hereby required to answer under oath within thirty (30) days the following requests for discovery. Each of the interrogatories is a continuing interrogatory so as to require you to file supplemental answers if you obtain further or different information between the time your answers are served and the time of the trial. These interrogatories request information which is known by you or is available to you, or is in the possession of your representatives, servants, or agents, insurance carriers and their representatives, including your attorney and his investigators, unless such information is clearly privileged.

       For each document responsive to this request that is withheld under claim of privilege or work-product immunity, provide a statement under oath by a person having knowledge setting forth as to each document:

    1.    The name and title of the author;
    2.    The name and title of each person to whom the document was addressed;
    3.    The name and title of each person to whom a copy of the document was sent;
    4.    The date of the document;
    5.    The number of pages of the document;

6.     A brief description of the nature and subject matter of the document;

7.     The nature of the claimed privilege or immunity;

8.     The category or categories of the request to which the document is responsive; and

9.     The exact location of the original and each copy as of the date and receipt of this request, along with the name and address of the custodian of said originals and copies.

If you are aware of any document otherwise responsive to these requests, which document is no longer in your custody or control, identify the name and title of the author, name and title of the addressee, date of the document, subject matter of the document or documents, the last date on which the document was in your control, the person or entity, if any, now in control of the document, the reasons for your disposition or release of the document, all persons who have knowledge of the circumstances surrounding its disposition and state what knowledge each person has.

If you cannot answer the following interrogatories in full, after exercising due diligence to secure the information to do so, so state, and answer to the extent possible, specifying your inability to answer the remainder, and stating whatever information or knowledge you have concerning the unanswered portions.

Pursuant to Rule 34 of the North Carolina Rules of Civil Procedure, the plaintiff hereby requests that the defendant produce the originals of all documents herein requested and permit the plaintiff to inspect and copy the same, at the law office of Musselwhite, Musselwhite, Branch & Grantham, P.A. (606 N. Elm Street Lumberton, NC 28358) on the thirtieth (30) day following service of these Interrogatories, Requests for Production of Documents, and Requests for Admissions. In the alternative, the defendant may comply with these requests by attaching legible copies of all such documents and clearly designating the interrogatory to which each document or group of documents pertains.

In the event the defendant should fail to answer or should provide evasive or incomplete answers to any of the discovery requests set forth below, or in the event the defendant should fail or refuse to produce any of the documents requested herein, the plaintiff puts the defendant on notice that the plaintiff will move the Court, pursuant to Rule 37(a)(4) of the North Carolina Rules of Civil Procedure, for the reasonable expenses, including attorney's fees, incurred by the plaintiff to move the Court to compel the defendant to provide answers or to provide adequate or complete answers to all such discovery requests and to produce all such documents requested herein.

For the purposes of these discovery requests, the meaning of the word "document" shall include, but not be limited to, writings, drawings, graphs, charts, photographs, reports, phonograph records, computer records, digital recordings, and other data compilations from which information can be obtained or translated, if necessary, through detection devices or other equipment, into usable form.

You are required and have a lawful duty to supplement, update and amend your responses and answers to these discovery requests in the following instances:

1. Any requests or questions directly addressed to:
   a. The identity and location of persons having knowledge of discoverable matter; and
   b. The identity of each person expected to be called as an expert witness at the trial, the subject matter on which he is to testify and the substance of his testimony.

2. Any responses or answers to questions or requests if you obtain information upon the basis of which:
   a. You know or discover that the prior response was incorrect or incomplete when made; or
   b. You know that the response, though correct when made is no longer true and the circumstances are such that a failure to amend the response is in substance a knowing concealment.

## DEFINITIONS

Unless otherwise indicated, the following definitions shall be applicable to these Interrogatories, Requests for Production of Documents and Requests for Admissions to Defendant XPO Logistics Freight, Inc.:

1. The term **"Document"** as used herein shall be given a very broad definition to include every type of paper, writing, data, record, graphic, drawing, photograph, audio recording and video recording. The term includes material in all forms, including printed, written, recorded, or other. The term includes all files, records and data contained in any computer system, computer component and/or computer storage (e.g., hard drive, disc, magnetic tape, backup system, etc.). This term includes, but is not limited to, correspondence, reports, meeting minutes, memoranda, stenographic or handwritten notes, diaries, notebooks, account books, orders, invoices, statements, bills, checks, vouchers, purchase orders, studies, surveys, charts, maps, analyses, publications, books, pamphlets, periodicals, catalogues, brochures, schedules, circulars, bulletins, notices, instructions, manuals, journals, e-mails, e-mail attachments, data sheets, work sheets, statistical compilations, data processing cards, microfilms, computer records (including printouts, disks or other magnetic storage media), tapes, photographs (positive or negative prints), drawings, films, videotapes, hard drive recordings, pictures, and voice recordings. Plaintiff expressly intends for the term "Document" to include every copy of such writing, etc. when such copy contains any commentary or notation whatsoever that does not appear on the original and any attachments or exhibits to the requested document or any other documents referred to in the requested document or incorporated by reference.

3

2. **"Person"** means any natural person, corporation, partnership, proprietorship, association, organization, group of persons, or any governmental body or subdivision thereof.

3. **"Identify"** with respect to any **"person"** or any reference to stating the **"identity"** of any **"person"** means to provide the name, home address, telephone number, business name, business address, and business telephone number of such person, and a description of each such person's connection with the events in question.

4. **"Identify"** with respect to any **"document"** or any reference to stating the **"identification"** of any **"document"** means to provide the title and date of each such document, the name and address of the party or parties responsible for the preparation of each such document, the name and address of the party who requested or required the preparation of the document or on whose behalf it was prepared, the name and address of the recipient or recipients of each such document, and the names and addresses of any and all persons who have custody or control of each such document, or copies thereof.

5. **"Subject Incident"** means the collision between William Bratty Lamb, driver for XPO Logistics Freight, Inc and Mark K. Smith, which occurred on October 11, 2023 in Robeson County, North Carolina.

6. **"You," "Your,"** or **"XPO"** means Defendant XPO Logistics Freight, Inc.

7. **"William Lamb"** means Defendant William Bratty Lamb.

8. **"Similar"** shall have the meaning given in the American Heritage Dictionary, which is "showing some resemblance; related in appearance or nature; alike but not identical." As used here, the word "similar" shall not be limited as if modified by the word "substantially" and shall not mean "the same". If you limit the information provided because you use another interpretation of the word "similar," please state the interpretation you are using and reveal the nature of the information withheld.

9. The terms **"and"** as well as **"or"** shall be each construed conjunctively and disjunctively as necessary to bring within the scope of each interrogatory and request for documents all information and documents that might otherwise be construed to be outside its scope. The term **"and/or"** shall be construed likewise.

10. Whenever necessary to bring within the scope of an interrogatory or request for production of documents any information or document that might otherwise be construed to be outside its scope: (i) the use of a verb in any tense shall be construed as the use of the verb in all other tenses; (ii) the use of the singular shall be construed as the use of the plural and vice versa; and (iii) **"any"**

4

includes "all," and "**all**" includes "any."

11. With regard to any term used herein that is deemed by the responding party as being ambiguous or vague, a term shall be construed in its broadest sense to encompass all reasonable definitions of that term.

## INTERROGATORIES TO DEFENDANT XPO

1. If you contend that Plaintiff has sued the wrong party or that your name is incorrectly stated in this lawsuit, please explain the basis for your contention and identify the correct legal entity for the correct party in interest to this suit.

   **ANSWER:**

2. Identify the following people: (a) The Safety Director/Chief Safety Officer for XPO on the date of the Subject Incident and now; (b) The person(s) primarily responsible for compliance with state and federal safety regulations at XPO on the date of the Subject Incident and now; (c) The person(s) responsible for training William Lamb; and (d) William Lambs' supervisor and manager on the date of the Subject Incident.

   **ANSWER:**

3. For each claim (formal or informal) and lawsuit wherein it is/was suggested or alleged that any person was injured or killed as a result of XPO's driver's actions in the past three years, provide the style of the case (or name of parties, jurisdiction and case number), and describe briefly the circumstances of each suit/claim and the disposition.

   **ANSWER:**

4. Identify and explain each communication of any kind between any federal and/or state agency and XPO that involved compliance (or noncompliance) with state and/or federal laws and/or regulations in the past 5 years. This would include, but is not limited to, all letters, interventions, complaints, warnings, citations, and safety ratings.

   **ANSWER:**

5

5. With respect to the <u>tractor</u> operated by William Lamb at the time of the Subject Incident, provide the following information:

(a) Identify the registered owner, leasor (if any) and leasee (if any) on the date of the Subject Incident and presently.

(b) Provide the mileage and gross weight at the time of the Subject Incident;

(c) For the engine, identify the manufacturer, year, model and identification number;

(d) Identify all systems and devices in/on the tractor that have the capability of recording and or transmitting any data about the operation of the tractor (including without limitation Engine Control Module, Event Data Recorder, Airbag Control Module, Brake Control Module, Electronic On-Board Recorder, VORAD, etc.), state whether or not that data has been preserved and/or downloaded, and if so, when and by whom.

(e) Identify all systems and devices of any kind in or on the tractor that allowed for communication between the driver and any other person or entity, state whether the data for the time period surrounding the Subject Incident has been preserved, and identify the person who has custody of the data and of the system from which the data was acquired.

(f) Identify all systems and devices of any kind in or on the tractor that has the capability to monitor, record, and/or transmit data (this includes, but is not limited to, Qualcomm, TransCore, SkyBitz, Fluensee, Fleetilla, Teletrac, Lat-Lon, Telogis, GeoLogic, Cheetah, Xata, PeopleNet or similar system; any collision or lane departure warning system; any driver safety monitoring or hours of service monitoring system; any transponders or tachographs; any onboard cameras or video devices; any bar code or toll pass systems; and any other tracking system, logging unit, trip monitor, trip recorder, GPS system, satellite systems, or cellular systems), state whether the data for the time period surrounding the Subject Incident has been preserved, and identify the person who has custody of the data and of the system from which the data was acquired.

(g) Identify all maintenance and repairs performed for the time period from 12 months before the Subject Incident to present.

**ANSWER:**

6

6. With respect to the <u>trailer</u> operated by William Lamb at the time of the Subject Incident, provide the following information:

   (a) Identify the registered owner, leasor (if any) and leasee (if any) on the date of the Subject Incident and presently.
   (b) Provide the mileage and gross weight at the time of the Subject Incident;
   (c) Identify all systems and devices in/on the trailer that have the capability of recording any data about the operation of the trailer (including without limitation ABS control module, etc.), state whether or not that data has been preserved and/or downloaded, and if so, when and by whom.
   (d) Identify all systems and devices of any kind in or on the trailer that has the capability to monitor, record, and/or transmit data (this includes, but is not limited to, any transponders or tachographs; any bar code systems; and any other tracking system, logging unit, GPS system, satellite systems, or cellular systems), state whether the data for the time period surrounding the Subject Incident has been preserved, and identify the person who has custody of the data and of the system from which the data was acquired.
   (e) Identify all maintenance and repairs performed for the time period from 12 months before the Subject Incident to present.

   **ANSWER:**

7. With respect to the trip that William Lamb was on at the time of the Subject Incident, provide the following information:

   (a) Identify all shippers and brokers involved;
   (b) Explain where and when (date and time) William Lamb picked up the load he had at the time of the Subject Incident;
   (c) Identify where (name and address of location) and when (date and time) the load was to be delivered;
   (d) Identify the location, time, duration and reason for each stop William Lamb made from the time he picked up the load until the time of the Subject Incident; and
   (e) Identify the route William Lamb intended to follow from the point of origin to the point of destination.

   **ANSWER:**

8. With respect to William Lamb's Hours of Service (HOS) in the eight (8) days leading up to the date of the Subject Incident, provide the following information:

   (a) Identify all errors on William Lamb's logs of which you are aware;
   (b) Identify all HOS violations of which you are aware;
   (c) Explain what you have done, if anything, to audit or verify the accuracy of

7

William Lamb's logs and identify all persons involved in the process; and,
(d) Identify all documents and data of any kind that you used to audit or verify the accuracy of William Lamb's logs.

**ANSWER:**

9. For the 72 hours leading up to the Subject Incident, provide the following information regarding William Lamb:

   (a) Identify all driving hours
   (b) Identify all on-duty not driving hours (location and activities)
   (c) Identify all stops (time and location) and the reason for them;
   (d) Identify when and where meals were eaten
   (e) Identify when and where William Lamb slept
   (f) Identify when and where and in what dosages all medications (prescription and over the counter) were ingested.

**ANSWER:**

10. Did William Lamb have any health issues that affected or could have affected his ability to drive in any way in the 72 hours leading up to the Subject Incident? If so, explain.

**ANSWER:**

11. If XPO performs hours of service log audits on drivers:

   (a) Explain what is entailed in the auditing process;
   (b) Identify all documents and data used in the process;
   (c) Identify who performs the audits (in-house or outsourced);
   (d) Identify when, if ever, William Lamb's logs were audited; and
   (e) Identify all Hours of Service violations of which you are aware for William Lamb while he was working with your company.

**ANSWER:**

12. With Respect to William Lamb, provide the following information:

   (a) Explain the relationship between XPO and William Lamb at the time of the Subject Incident (e.g., leased driver, company driver, etc.);
   (b) Explain how William Lamb was paid for driving (by hour, by load, by mile, salary or other);
   (c) Explain all steps XPO undertook to qualify William Lamb in accord with the Federal Motor Carrier Safety Regulations;

8

(d)    Identify when XPO's relationship with William Lamb began and ended.

**ANSWER:**

13. Was William Lamb acting within the course and scope of his employment or agency at the time of the Subject Incident? If not, explain the basis for your contention and identify documents and witnesses that support your contention.

**ANSWER:**

14. Identify and describe all formal and informal disciplinary and/or counseling actions undertaken by XPO regarding William Lamb at any time.

**ANSWER:**

15. Describe in detail all training and education (including on the job training) provided by or on behalf of XPO to William Lamb at any time and in any way related to the operation of a commercial motor vehicle.

**ANSWER:**

16. Identify all traffic violations committed by William Lamb, either while in your employment or in previous employment.

**ANSWER:**

17. If William Lamb has ever been arrested or charged with any crime to your knowledge, for each arrest or charge identify the charge, date, jurisdiction and disposition.

**ANSWER:**

18. For each motor vehicle collision/accident involving William Lamb of which you are aware, provide the collision/accident date, location, jurisdiction, names of other parties involved and a brief description of what happened.

**ANSWER:**

19. If William Lamb had ever been disqualified from driving a commercial motor vehicle while in your employ, please describe when and under what circumstances.

**ANSWER:**

9

20. Identify and explain all communications of any kind between William Lamb and anyone acting for or on behalf of XPO during the twenty-four (24) hours <u>before</u> and <u>after</u> the Subject Incident. For each communication, identify the method of communication (cell phone, QualComm, other), time of communication, persons involved, and the general subject.

**ANSWER:**

21. If you maintain that the Federal Motor Carrier Safety Regulations did not apply to William Lamb at the time of the Subject Incident, explain the basis for your contention and identify all facts, witnesses, and documents that support your contention.

**ANSWER:**

22. Identify all XPO policies, procedures, rules, guidelines, directives, manuals, handbooks and instructions that were in effect for William Lamb at the time of the Subject Incident.

**ANSWER:**

23. Describe in detail when and how you first became aware that William Lamb was involved in the Subject Incident. Please include the identification of all persons involved and what information was conveyed.

**ANSWER:**

24. Explain your understanding of <u>how</u> and <u>why</u> the Subject Incident occurred.

**ANSWER:**

25. Identify all persons who to your knowledge were present at the scene of the Subject Incident at any time in the 48 hours after the collision and explain their role, why they were at the scene and what actions they took.

10

**ANSWER:**

26. Identify each person (name and employer) who has been involved in the investigation of the Subject Incident. For each person identified, describe their role and involvement in the investigation.

**ANSWER:**

27. Identify all person(s) who you to your knowledge have or may have any relevant information regarding: the Subject Incident; the facts leading up to the Subject Incident; the investigation of the Subject Incident; any party to this action; any vehicles involved in the Subject Incident; and/or any claims or defenses raised in this action. The purpose of this Interrogatory is to identify all witnesses whom XPO believes may have relevant testimony of any kind in connection with this case.

**ANSWER:**

28. Identify all persons who to your knowledge have given a statement **in any form** (written, oral, recorded or otherwise) in connection with this case. For each person identified, provide the date and time of the statement, identify to whom the statement was made and who was present when the statement was made, identify whether the statement was written, oral, recorded, and/or transcribed, and identify all persons presently having custody of the statement.

**ANSWER:**

29. Identify and explain all interaction and communication between anyone working for or on behalf of XPO and any federal and/or state law enforcement personnel/agency regarding the Subject Incident. Please include the identification of all persons involved and what information was conveyed.

**ANSWER:**

30. Identify and explain all interaction and communication between anyone working for or on behalf of XPO and anyone employed with or acting on behalf of any other Defendant named in this action in connection with the Subject Incident.

**ANSWER:**

11

31. Please state whether any drug and/or alcohol tests (blood, urine or otherwise) performed on William Lamb after the Subject Incident occurred. If so, please state the time at which the test was administered, the name, address and phone number of the persons, firms, or entities who administered said test(s) and all such persons, firms, or entities in possession of a copy of the results of said test(s).

**ANSWER:**

32. As to any tests, inspections, measurements and/or investigations performed by or on behalf of XPO, or of which you are at all aware regarding in any way the Subject Incident and/or any other matter raised in this case, identify all person(s) who ordered and/or who participated in performing each and describe in detail the subject(s), purpose(s), methodologies and conclusions of each.

**ANSWER:**

33. Identify all photographs, motion pictures, maps, plats, drawings, diagrams, videotapes, or other tangible or documentary evidence depicting the scene of the Subject Incident and/or any person or vehicle involved in the Subject Incident.

**ANSWER:**

34. If you maintain that any non-party has any responsibility of any kind for causing the Subject Incident, and/or for causing any of the damages alleged in the Complaint, identify each such person and or entity, describe in detail the basis for their responsibility and identify all person(s) who have any knowledge regarding this issue.

**ANSWER:**

35. If you maintain that Decedent Mark Smith has any responsibility of any kind for causing the Subject Incident, and/or for causing any of the damages alleged in the Plaintiff's Complaint, describe in detail the basis for this responsibility and identify all person(s) who have any knowledge regarding this issue.

**ANSWER:**

12

36. If XPO has performed any review (e.g., accident review board, preventability determination) of the Subject Incident to determine preventability and/or fault, identify all persons involved in the review, the dates of the review and the conclusions that were reached.

   **ANSWER:**

37. Identify each person XPO expects to call as an expert witness at trial and for each expert identified: (a) summarize each opinion the expert holds in regards to this case; (b) identify the factual basis for each such opinion; (c) identify all documents and evidence of any kind provided to the expert for review; and (d) identify all documents and evidence of any kind that support each opinion.

   **ANSWER:**

38. For each insurance policy of any kind that does or may provide any coverage on behalf of any XPO (whether it is your policy or anyone else's policy) for damages/injuries alleged in this case, provide: name of insurer; policy number; limits of coverage; the name(s) of all insureds; and state whether any insurer has offered a defense under a reservation of rights or otherwise contested coverage for the subject case.

   **ANSWER:**

## PLEASE TAKE NOTICE THAT THESE INTERROGATORIES ARE CONTINUING, AND YOU ARE UNDER A DUTY TO SUPPLEMENT OR AMEND YOUR ANSWERS TO PLAINTIFF'S DISCOVERY REQUESTS.

## REQUEST FOR PRODUCTION TO DEFENDANT XPO

PURSUANT to Rule 34 of the Rules of Civil Procedure, you are requested to produce for copying and inspection those items listed below. These items are to be produced at the offices of Musselwhite, Musselwhite, Branch & Grantham 606 N. Elm Street Lumberton, NC 28358 Monday through Friday within the time limit provided by the Rules of Civil Procedure. The items to be produced include:

1. A copy of each document utilized by you in any way in responding to Plaintiff's First Interrogatories to XPO.

   **RESPONSE:**

13

2. A copy of each document retention policy in effect for XPO at any time between the time of the Subject Incident and present.

   **RESPONSE:**

3. A copy of each insurance policy (and declarations page for each policy) that provides or may provide coverage for damages sustained in the Subject Incident.

   **RESPONSE:**

4. Copies of all reservation of rights letters and/or agreements regarding insurance coverage for the Subject Incident.

   **RESPONSE:**

5. All documents setting forth the relationship between William Lamb and XPO. This includes, but is not limited to all leases, employment contracts, and independent contractor agreements and other contracts, agreements, memorandum and the like.

   **RESPONSE:**

6. The contents of William Lamb's driver qualification file, driver investigation file, driver history file and all documents that demonstrate compliance with federal and state driver qualification laws and regulations. The requested documents include, but are not limited to all documents required by FMCSR, 49 CFR Part 391, and the state equivalent thereto. If any responsive documents have been removed from the driver qualification file, these should be produced nonetheless.

   **RESPONSE:**

7. All documents of any kind that relate to any pre-employment background investigation of William Lamb, including without limitation any investigation of William Lamb's qualifications, character, driving history, training, criminal history, drug use, financial responsibility, medical conditions, health conditions, and/or any other matter relevant to employment with XPO. This specifically includes all data and information obtained through FMCSA's Pre-Employment Screening Program.

   **RESPONSE:**

8. All documents that relate in any way to your recruiting of William Lamb.

   **RESPONSE:**

14

9. All documents that relate in any way to you hiring William Lamb.

   **RESPONSE:**

10. All documents that relate in any way to any orientation provided by XPO to William Lamb.

    **RESPONSE:**

11. All documents that relate in any way to training of William Lamb. This includes but is not limited to all documents that show all training received by William Lamb; when, where and who provided the training and all materials used for training.

    **RESPONSE:**

12. All quizzes, tests and/or other assessments (questions and answers) ever given by or on behalf of XPO to William Lamb at any time. An answer key should also be provided.

    **RESPONSE:**

13. Copies of all documents (a) explaining how William Lamb was compensated for the one month leading up to and including the date of the Subject Incident and extending one week after the date of the Subject Incident; and (b) showing any detention of wages over the same time period.

    **RESPONSE:**

14. A copy of the front and back of every driver's license issued to William Lamb (regardless of name used) in your possession, custody and/or control.

    **RESPONSE:**

15. All documents placing you on notice of any violation by William Lamb of any law, ordinance or regulation. This includes, but is not limited to, reports of violations pursuant to Section 391.27(a) of the Federal Motor Carrier Safety Regulations, as well as copies of citations, warnings and inspection reports.

    **RESPONSE:**

16. All documents relating to any and all blood, urine, hair or other type of drug or alcohol testing of William Lamb in your possession, custody and/or control.

    **RESPONSE:**

17. A copy of all documents relating to any violation of any safety rule or principle by William Lamb at any time.

   RESPONSE:

18. All documents of any kind that relate to any action (formal or informal) by any supervisor or manager or anyone working by or on behalf of XPO directed to William Lamb for the purpose of teaching, counseling, disciplining, correcting or otherwise managing William Lamb in any way relating to the safe operation of a commercial vehicle. This includes but is not limited to all disciplinary actions and the contents of all disciplinary folders or files of any kind by whatever name called.

   RESPONSE:

19. A copy of all documents in your possession relating in any way to any motor vehicle collision and/or accident of any kind in which William Lamb has been involved.

   RESPONSE:

20. Copies of all documents relating to any complaint, criticism or concern raised by any person or entity regarding the driving performance and/or safety of William Lamb. This should include, but is not limited to, customer complaints and call-ins by motorists either to company directly or to any service (i.e., How's My Driving? Call 800…).

   RESPONSE:

21. For each communication device (e.g., cell phones, PDAs, smartphones, texting and e-mailing devices, etc.) that was in the tractor that William Lamb's was operating at the time of the Subject Incident, produce all documents reflecting usage and billing for the time period time period beginning 48 hours before the Subject Incident and ending 48 hours after the Subject Incident. This includes all devices, whether owned by William Lamb or not, and whether it was in use at the time of the Subject Incident or not.

   RESPONSE:

22. Copies of all documents prepared by William Lamb that describes the Subject Incident or the circumstances leading up to the subject incident.

   RESPONSE:

23. All documents evidencing any evaluation of the driving abilities, safety, and/or performance of William Lamb that has not been produced in response to the preceding Requests.

16

**RESPONSE:**

24. A complete copy of the contents of each and every file (whether maintained physically or electronically), regardless of what the file is called, regarding or addressing William Lamb in any way, that has not been produced in response to other Requests above.

**RESPONSE:**

25. A copy of all William Lamb's hours of service logs and any other driving logs and/or time sheets for the period beginning 180 days before the Subject Incident and ending 7 days following the Subject Incident.

**RESPONSE:**

26. In addition to the documents responsive to the preceding Request, produce all documents in your possession custody or control that demonstrate what William Lamb was doing for the time period beginning 14 days before the Subject Incident and ending two days following the Subject Incident. The requested documents include all documents that a motor carrier division officer might use to audit the logs of this driver, including, but not but are not limited to:

   a. All documents evidencing hours of service not produced above (e.g., daily logs and time sheets as well as log audits and letters regarding hours of service);
   b. All documents that could be used to check the accuracy of Hours of Service logs and/or time sheets;
   c. All documents related to trips (including driver's trip envelopes, trip reports, work reports, bills of lading, manifests, cargo documents of any kind, load documents of any kind, loading and unloading records of any kind, load detention records of any kind, freight bills, pick-up and delivery records of any kind, directions (e.g., routes to take), instructions (delivery notes, times, special handling), driver's trip check and settlement sheets, dispatch records, mileage reports, weight and scale records, and receipts for fuel, food, tolls, lodging, permits, repairs, and/or other purchases and expenses of any kind whether reimbursable or not, final trip accounting documents and printouts, as well as any and all reports and/or summaries of any kind referencing the above information);
   d. All documents evidencing any and all stops; and
   e. All driver call in reports and any other documentation of any communications between you and William Lamb.

**RESPONSE:**

17

27. A copy of all audits and summaries of William Lamb's hours of service covering the period beginning one year prior to the Subject Incident and ending 14 days following the Subject Incident.

**RESPONSE:**

28. For the <u>tractor</u> involved in the Subject Incident, produce the following documents:

    a.    Title;
    b.    Registration;
    c.    Operators manual;
    d.    Maintenance Schedules;
    e.    All documents evidencing maintenance performed on the tractor at any time within 6 months before the Subject Incident;
    f.    All documents evidencing any inspections of the tractor during the 6 months before the Subject Incident;
    g.    All documents evidencing any repairs and/or modifications to the tractor at any time within 6 months before the Subject Incident;
    h.    All documents evidencing any repairs made to the tractor as a result of the subject collision (including insurance submissions);
    i.    All leases involving the vehicle;
    j.    Documents evidencing the purchase of the vehicle;
    k.    Documents evidencing the sale of the vehicle if it has been sold;
    l.    Documents evidencing mileage and weight at time of the Subject Incident; and
    m.    Copies of each and every logbook, ledger, file or the like maintained for any reason regarding the vehicle.

**RESPONSE:**

29. For the <u>trailer</u> involved in the Subject Incident, produce the following documents:

    n.    Title;
    o.    Registration;
    p.    Operators manual;
    q.    Maintenance and service manuals;
    r.    All documents evidencing maintenance performed on the trailer at any time within 6 months before the Subject Incident;
    s.    All documents evidencing any inspections of the trailer during the 6 months before the Subject Incident;
    t.    All documents evidencing any repairs and/or modifications to the trailer at any time within 6 months before the Subject Incident;
    u.    All documents evidencing any repairs made to the trailer as a result of the subject collision (including insurance submissions);
    v.    All leases involving the vehicle;
    w.    Documents evidencing the purchase of the vehicle;

18

x. Documents evidencing the sale of the vehicle if it has been sold;
y. Documents evidencing mileage and weight at time of the Subject Incident; and
z. Copies of each and every logbook, ledger, file or the like maintained for any reason regarding the vehicle.

**RESPONSE:**

30. If any data is available (whether or not downloaded or retrieved) from the tractor or any part or system from the tractor (e.g., engine control module (ECM), event data recorder (EDR), Sensing Diagnostic Module (SDM), drive-train or transmission control unit, power steering unit, airbag module, ABS or other brake system, or any EOBR), please produce both the printout of the data and the data file in its original format. This request is intended to cover data for as long as it was recorded before during and after the Subject Incident.

**RESPONSE:**

31. If any data is available (whether or not downloaded or retrieved) from the trailer or any part or system from the trailer (e.g., event data recorder, ABS or other brake system, or any EOBR), please produce both the printout of the data and the data file in its original format. This request is intended to cover data for as long as it was recorded before during and after the Subject Incident.

**RESPONSE:**

32. If the tractor at issue was equipped with a lane departure warning system or collision warning system (e.g., VORAD), please produce the printout of the downloaded data and to the degree possible produce the data file in its original format.

**RESPONSE:**

33. Produce copies of all e-mails between William Lamb and XPO for the time period beginning 90 days prior to the Subject Incident and present.

**RESPONSE:**

34. Produce copies of all communications and transmissions between William Lamb and XPO that were transmitted through any system on-board of the tractor or trailer involved in the Subject Incident for the period beginning 30 days before the Subject Incident and ending seven days after the Subject Incident. This includes any and all satellite or cellular systems, regardless of manufacturer, and includes, without limitation, all electronic on-board recorders (EOBRs) and system such as those made available by Qualcomm, TransCore, SkyBitz, Fluensee, Fleetilla, Teletrac,

Lat-Lon, Telogis, GeoLogic, Cheetah, Xata, PeopleNet and other transportation service and product providers.

**RESPONSE:**

35. If the tractor was equipped with any on-board audio or video recording or monitoring devices and/or any other driver or driver safety monitoring system, please produce everything that was retrieved or could be retrieved from such devices and systems.

**RESPONSE:**

36. To the degree that it has not been produced in response to other Requests above, produce all data of any kind that was recovered from the tractor, the trailer and/or anything inside or connected to any part or system of the tractor and/or trailer that were involved in the Subject Incident.

**RESPONSE:**

37. A copy of each out of service report or violation concerning the tractor and/or the trailer involved in the Subject Incident from the period beginning one year prior to the Subject Incident through present. This request includes any supplements, responses, amendments and dispositions regarding any violation.

**RESPONSE:**

38. Produce all documents evidencing damage to any vehicle or other property as a result of the Subject Incident, including but not limited to repair estimates, appraisals, purchase invoices, repair bills, and checks or drafts reflecting payment for repair or replacement, and any other documents concerning or establishing the value of any item of property before or after the Subject Incident.

**RESPONSE:**

39. Produce all documents given to any person or entity, including any insurance company in return for payment in whole or in part for property damage, e.g., loan receipt(s), release(s), assignment(s), etc.

**RESPONSE:**

40. For the tractor and trailer involved in the Subject Incident, produce all the Driver Vehicle Inspection Reports (DVIR) from the period beginning six months before the Subject Incident and ending one week after the Subject Incident.

**RESPONSE:**

20

41. Produce all pre-trip inspection reports for the trip in question and three months prior to the date of the Subject Incident for the <u>tractor</u> and <u>trailer</u>.

**RESPONSE:**

42. All documents that relate to the load being hauled by William Lamb at the time of the Subject Incident, including, by way of example and without limitation, all manifests, bills of lading, weight receipts, dispatch documents, content summaries, and documents that address the contents, ownership, pick-up, detainment, and delivery of the load.

**RESPONSE:**

43. A copy of every document related to any investigation done by or on behalf of XPO of the scene of the Subject Incident.

**RESPONSE:**

44. All documents authored by anyone working for or on behalf of XPO that set forth any facts relating to the Subject Incident.

**RESPONSE:**

45. All documents that explain what caused the Subject Incident.

**RESPONSE:**

46. All documents assessing preventability of and/or fault for the Subject Incident.

**RESPONSE:**

47. If the scene of the Subject Incident was mapped (with a total station or other survey equipment) within 14 days of the Subject Incident, please produce a copy of the survey data files and all diagrams produced therefrom.

**RESPONSE:**

48. Copies of all photographs, video, computer simulations, and any other documents depicting:

   a. Any vehicle involved in the Subject Incident;
   b. Any person involved in the Subject Incident;
   c. The scene of the Subject Incident; and/or
   d. Any evidence (roadway markings or other) relevant to the Subject Incident.

**RESPONSE:**

21

49. Copies of all reports (you know what this means and it is not vague) relating to the Subject Incident including those prepared by William Lamb and those prepared by anyone working for or on behalf of XPO (except lawyers).

**RESPONSE:**

50. A copy of all correspondence and other communications (including e-mail) that you have had with any person other than your lawyer involving the Subject Incident.

**RESPONSE:**

51. All tapes and transcripts of conversations, interviews, and/or statements of any person who purports to know any facts or circumstances relevant to the issues of liability, comparative fault, causation and/or damages in this case.

**RESPONSE:**

52. If an Accident Review Board or similar entity reviewed the Subject Incident, produce the following:

   a. A copy of all documents (as defined) and other materials of any kind reviewed by said board or entity;
   b. A copy of all reports and documents (as defined) of any kind generated by said board or entity;
   c. Documents evidencing who was on the board;
   d. Documents evidencing all criteria for review; and
   e. Determination of preventability and all other conclusions reached by said board or entity.

**RESPONSE:**

53. Copies of all documents sent to or received from any governmental agency regarding the Subject Incident, the driver involved in the Subject Incident, or any subject that is part of the basis of this lawsuit.

**RESPONSE:**

54. Copy of all documents and communications of any kind related to any CSA Intervention against your company in the past two years.

**RESPONSE:**

55. Copies of all XPO policies, procedures, rules, guidelines, directives, manuals, handbooks and instructions that were in effect at the time of the Subject Incident, relating to:

22

    a. Working for or with trucking company generally (e.g., employee manual or handbook);
    b. Operation of any motor vehicle (e.g., driving manuals or handbooks, and the like);
    c. Operation of a commercial vehicle;
    d. Driving safety;
    e. Defensive driving;
    f. Compliance with federal and state laws and regulations;
    g. Accident investigation;
    h. Accident review boards;
    i. Determination of preventability of accidents;
    j. Hiring, training and supervising drivers; and
    k. Disciplinary actions.

**RESPONSE:**

56. Copies of each document that William Lamb signed to prove that William Lamb received and/or agreed to be bound by any policies, procedures, rules, guidelines and/or standards of XPO.

**RESPONSE:**

57. To the degree that XPO has any rules, policies, procedures, guidelines, driving manuals, employee handbooks or manuals, or other similar documents that were not provided to William Lamb before the Subject Incident, please produce them now.

**RESPONSE:**

58. A complete copy of, or in the alternative, access to, each driver safety training film, video, videotape, videocassette, audio cassette, computer program, simulator, driver diagnostic record or test, maintained by your company, or used by XPO, its personnel, agents, or employees during the year of the Subject Incident and three years prior.

**RESPONSE:**

59. Copies of all industry and/or other guidelines and/or practices that you rely upon to support your contentions in this case.

**RESPONSE:**

60. Copy of documents showing the hierarchy of managerial positions at XPO and who occupied such positions as of the time of the subject incident and presently.

RESPONSE:

61. A copy of each document (including articles and presentations) prepared and/or presented by any XPO representative relating to the safe operation of a commercial motor vehicle and/or the safe operation of a trucking company in the past five years.

RESPONSE:

62. All company newsletters distributed during the time period beginning two years before the Subject Incident and present.

RESPONSE:

63. A copy of all lease and trip lease contracts applicable to William Lamb and/or any vehicle involved in the Subject Incident.

RESPONSE:

64. Copies of any contract under which your company was operating the truck in question at the time of the Subject Incident.

RESPONSE:

65. A copy of XPO's accident register maintained as required by 49 CFR § 390.35.

RESPONSE:

66. Transcripts or recordings of all depositions of corporate designees for XPO given in the past five years in cases where it was alleged that a driver working for XPO caused injury or death to another person.

RESPONSE:

67. Copies of all documents putting any third party on notice of a claim arising from the Subject Incident.

RESPONSE:

68. All correspondence and other communication of any kind between you and any other Defendant to this Action.

24

**RESPONSE:**

69. With respect to each expert witness who may provide testimony at the trial of this case, provide:

    a. A copy of all documents (as that term is defined above) and items of any kind produced <u>to</u> said expert;

    b. A copy of all documents (as that term is defined above) and items of any kind generated or produced <u>by</u> said expert;

    c. A copy of the entire file of said expert;

    d. A current résumé or curriculum vitae for said expert; and

    e. All billing records and work logs for said expert.

**RESPONSE:**

70. A copy of any and all documents and other materials which support any contention that the Subject Incident was the fault of anyone other than the Defendants.

**RESPONSE:**

71. Copies of all diagrams, graphs, illustrations, photographs, charts, pictures, models, blow-ups, or any other document or thing, including electronically created charts, animations, or data that you intend to utilize as an exhibit, demonstrative exhibit, or aid in the trial of this case not previously supplied.

**RESPONSE:**

72. Produce each document or thing that you contend is evidence, proof, or support of your claims on any issue of negligence or causation as to the Subject Incident, including but not limited to admissions of fault, engineering analysis, scientific tests, and official or unofficial reports.

**RESPONSE:**

73. Produce each document or thing that you contend evidences or supports your denial of any of Plaintiff's Requests for Admissions.

**RESPONSE:**

74. If any surveillance has been undertaken by or on behalf of XPO, produce a copy of all reports, photographs, video and anything else generated through that investigation.

**RESPONSE:**

25

PLEASE TAKE NOTICE THAT THESE REQUESTS FOR PRODUCTION ARE CONTINUING, AND YOU ARE UNDER A DUTY TO SUPPLEMENT OR AMEND YOUR ANSWERS TO PLAINTIFF'S DISCOVERY REQUESTS.

## REQUESTS FOR ADMISSION

Plaintiff serves you with the following requests for admission under the provisions of Rules 26 and 36 of the North Carolina Rules of Civil Procedure. You are requested to admit the truth of all matters within the scope of Rule 26(b) of the North Carolina Rules of Civil Procedure as they relate to statements or opinions of fact or of the application of law to fact, including the genuineness of certain documents.

Each matter will be considered admitted unless, within thirty (30) days of the date of service of this request, defendants serve upon counsel for plaintiff a written answer or objection addressed to the matter and signed by defendants or defendant's attorney. If objection is made, the reasons therefore shall be stated. Each answer shall specifically deny the matter or set forth in detail the reasons why the defendant cannot truthfully admit or deny the matter. A denial shall fairly meet the substance of the requested admission, and when good faith requires that defendant qualify an answer or deny only a part of the matter of which an admission is requested, defendant shall specify so much of it as is true and qualify or deny the remainder.

Defendant may not give lack of information or knowledge as a reason for failure to admit or deny unless defendants state that they have made a reasonable inquiry and the information known or readily obtainable by defendant is insufficient to enable defendant to admit or deny. Any matter admitted hereunder is conclusively established for the purposes of the pending action unless this Court on Motion permits withdrawal of amendment of the admission.

1. Admit that the DOT number for XPO is 241829.

**ADMIT:**
**DENY:**
**REASON, IF DENIED:**

2. Admit that the MC ICC number for XPO is 165377.

**ADMIT:**
**DENY:**
**REASON, IF DENIED:**

3. Admit that Decedent Mark Smith is a member of the public.

**ADMIT:**
**DENY:**
**REASON, IF DENIED:**

26

4. Admit that XPO was involved in intrastate transport at the time of the Subject Incident.

**ADMIT:**
**DENY:**
**REASON, IF DENIED:**

5. Admit that XPO was involved in interstate transport at the time of the Subject Incident.

**ADMIT:**
**DENY:**
**REASON, IF DENIED:**

6. Admit that XPO is a "motor carrier" as defined by the Federal Motor Carrier Safety Regulations.

**ADMIT:**
**DENY:**
**REASON, IF DENIED:**

7. Admit that XPO was a motor carrier as defined by the Federal Motor Carrier Safety Regulations at the time of the Subject Incident.

**ADMIT:**
**DENY:**
**REASON, IF DENIED:**

8. Admit that on October 11, 2023, XPO was the owner of a tractor involved in the Subject Incident.

**ADMIT:**
**DENY:**
**REASON, IF DENIED:**

9. Admit that on October 11, 2023, XPO was the owner of a trailer involved in the Subject Incident.

**ADMIT:**
**DENY:**
**REASON, IF DENIED:**

27

10. Admit that the tractor-trailer, VIN 3AKBGADV9GSHB2477, was involved in the Subject Incident.

**ADMIT:**
**DENY:**
**REASON, IF DENIED:**

11. Admit that on October 11, 2023, William Lamb was an agent of XPO.

**ADMIT:**
**DENY:**
**REASON, IF DENIED:**

12. Admit that on October 11, 2023, William Lamb was an employee of XPO.

**ADMIT:**
**DENY:**
**REASON, IF DENIED:**

13. Admit that at the time of the Subject Incident, William Lamb was acting within the course and scope of his employment or agency with XPO.

**ADMIT:**
**DENY:**
**REASON, IF DENIED:**

14. Admit that on October 11, 2023, William Lamb was operating the tractor-trailer owned by XPO.

**ADMIT:**
**DENY:**
**REASON, IF DENIED:**

15. Admit that on October 11, 2023, William Lamb was operating the tractor-trailer with the permission of XPO.

**ADMIT:**
**DENY:**
**REASON, IF DENIED:**

28

16. Admit that on October 11, 2023, William Lamb was operating the tractor-trailer with the knowledge of XPO.

**ADMIT:**
**DENY:**
**REASON, IF DENIED:**

17. Admit that on October 11, 2023, William Lamb was operating the tractor-trailer as trained by XPO.

**ADMIT:**
**DENY:**
**REASON, IF DENIED:**

18. Admit that on October 11, 2023, William Lamb was not operating the tractor-trailer as trained by XPO.

**ADMIT:**
**DENY:**
**REASON, IF DENIED:**

19. Admit that William Lamb is fully responsible for causing the Subject Incident.

**ADMIT:**
**DENY:**
**REASON, IF DENIED:**

20. Admit that William Lamb was a professional driver on the date and time of the Subject Incident.

**ADMIT:**
**DENY:**
**REASON, IF DENIED:**

21. Admit that XPO is properly named in the Complaint.

**ADMIT:**
**DENY:**
**REASON, IF DENIED:**

22. Admit that venue is proper in Robeson County Superior Court.

**ADMIT:**
**DENY:**
**REASON, IF DENIED:**

23. Admit that jurisdiction is proper in this Court.

**ADMIT:**
**DENY:**
**REASON, IF DENIED:**

24. Admit that service was proper upon XPO.

**ADMIT:**
**DENY:**
**REASON, IF DENIED:**

25. Admit that the person answering these questions has authority from XPO to do so.

**ADMIT:**
**DENY:**
**REASON, IF DENIED:**

This the 5th day of June, 2024

MUSSELWHITE, MUSSELWHITE,
BRANCH & GRANTHAM, P.A.

J. William Owen
NC State Bar No. 47994
606 N. Elm Street
Lumberton, NC 28358
wowen@mmbglaw.com
*Counsel for Plaintiff*

30

## CERTIFICATE OF SERVICE

This certifies that a copy of the foregoing *Plaintiff's First Set of Interrogatories,* *First Request for Production of Documents* and *First Request for Admission to* *Defendant XPO Logistics Freight, Inc.* were served on all counsel of record, via electronic mail only addressed as follows:

Megan M. Stacy
Gordon Rees Scully Mansukhani, LLP
Le'Ron A. Byrd
150 Fayetteville St., Suite 1120
Raleigh, NC 27602
mstacy@grsm.com
lbyrd@grsm.com
*Counsel for Defendant XPO Logistics Freight, Inc. and Defendant Lamb*

Jennifer Welch
Cranfill Sumner
P.O. Box 27808
Raleigh, NC 27611-7808
JWelch@cshlaw.com
*Counsel for Counterclaim Defendant Cindy Smith, Adminsitratrix of the Estate of Mark K. Smith.*

This the 2 day of June, 2024

MUSSELWHITE, MUSSELWHITE, BRANCH & GRANTHAM, P.A.

J. William Owen
NC State Bar No. 47994
606 N. Elm Street
Lumberton, NC 28358
wowen@mmbglaw.com
*Counsel for Plaintiff*

31

MEGAN M. STACY
MSTACY@GRSM.COM
984.289.1405



GORDON REES SCULLY MANSUKHANI
YOUR 50 STATE LAW FIRM™

ATTORNEYS AT LAW
150 FAYETTEVILLE STREET, SUITE 1120
RALEIGH, NC 27601
WWW.GRSM.COM

June 27, 2024

<span style="text-decoration: underline;">VIA USPS</span>

Robeson County Courthouse
Attention: Superior Court Clerk
500 N. Elm Street, Room 100
Lumberton, North Carolina 28539

      *Re:*    *Estate of Mark Keannan Smith v. William Bratty Lamb, et. al.*
           *Superior Court File No.: 24-CVS-468*

Dear Clerk of Court:

    Please find enclosed an Original and one copy of Defendant XPO Logistics' Motion for Extension of Time to Respond to Discovery along with our Proposed Order.

    Kindly file the originals and return the file-stamped copies to us in the enclosed self-addressed postage paid envelope.

    By copy of this correspondence, I am serving all parties of record via electronic mail.

    Thank you for your assistance in this matter. Should you have any further questions or concerns, please do not hesitate to contact me.

                Sincerely,

                *Sabrina*

                Sabrina Rockwell

Enclosures



2024-06-26- Ltr to COC enc. MEOT to Respond to Disc & Proposed Order(90174629.1) - 6/27/2024 8:25 AM



$1.240
US POSTAGE
FIRST-CLASS
062S0002174784
FROM 27601
87093T.15

GORDON&REES
SCULLY MANSUKHANI
YOUR 50 STATE PARTNER*

150 FAYETTEVILLE STREET
SUITE 1120
RALEIGH, NC 27601

Robeson County Courthouse
Attention: Superior Court Clerk
500 N. Elm Street, Room 100
Lumberton, North Carolina 28539

$0.680
US POSTAGE
FIRST-CLASS
062S0002174784
FROM 27601
87093O.15

GORDON&REES
SCULLY MANSUKHANI
YOUR 50 STATE PARTNER*

150 FAYETTEVILLE STREET
SUITE 1120
RALEIGH, NC 27601

ATTN: BROWN

STATE OF NORTH CAROLINA
COUNTY OF ROBESON

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
24-CVS-468

CINDY SOLES SMITH, Administratrix of the
ESTATE OF MARK KEANNAN SMITH,

        Plaintiff/Counterclaim-
        Defendant,

    v.

WILLIAM BRATTY LAMB,

        Defendant,

    and

XPO LOGISTICS FREIGHT, INC.

        Defendant/Counterclaim-
        Plaintiff.

**DEFENDANT XPO LOGISTICS
FREIGHT, INC. MOTION FOR
EXTENSION OF TIME TO RESPOND
TO PLAINTIFF'S FIRST SET OF
INTERROGATORIES, REQUEST FOR
PRODUCTION OF DOCUMENTS AND
REQUEST FOR ADMISSION**

       Defendant XPO Logistics Freight, Inc. (hereinafter, "XPO") hereby moves this Court pursuant to Rules 26, 33, 34 and 36 of the Rules of Civil Procedure for an order enlarging the time in which XPO has to respond to Plaintiff's First Set of Interrogatories, Request for Production of Documents and Requests for Admission.

       XPO shows the Court that the time in which to respond to Plaintiff's First Set of Interrogatories, Request for Production of Documents and Requests for Admission served on June 5, 2024, has not yet expired, and that additional time is needed in which to investigate and collect information necessary to answer Plaintiff's First Set of Interrogatories, Request for Production of Documents and Requests for Admission.

       WHEREFORE, movant request the Court grant an extension of time to answer Plaintiff's First Set of Interrogatories, Request for Production of Documents and Requests for Admission to and including the 5th day of August, 2024.

Respectfully submitted this 27th day of June, 2024.

GORDON REES SCULLY MANSUKHANI LLP

*Megan M. Stacy* (signature)

_____

Megan M. Stacy
N.C. State Bar No. 47108
Le'Ron A. Byrd
North Carolina Bar No. 55732
150 Fayetteville Street, Suite 1120
Raleigh, North Carolina 27601
Telephone: (919) 787-4555
Facsimile: (919) 741-5840
E-mail: mstacy@grsm.com
E-mail: lbyrd@grsm.com
*Counsel for Defendant XPO Logistics Freight, Inc.*
*and William Lamb*

## CERTIFICATE OF SERVICE

This is to certify that I caused the foregoing **DEFENDANT XPO LOGISTICS FREIGHT, INC. MOTION FOR EXTENSION OF TIME TO RESPOND TO PLAINTIFF'S FIRST SET OF INTERROGATORIES, REQUEST FOR PRODUCTION OF DOCUMENTS AND REQUEST FOR ADMISSION** be filed and served upon all counsel of record by email pursuant to Rule 5 of the North Carolina Rules of Civil Procedure addressed as follows:

J. William Owen
Musselwhite, Musselwhite, Branch & Grantham, P.A.
P.O. Box 1448
Lumberton, NC 28359
wowen@mmbglaw.com
*Counsel for Plaintiff*

Jennifer Welch
Cranfill Sumner
P.O. Box 27808
Raleigh, NC 27611-7808
jwelch@cshlaw.com
*Counsel for Counterclaim Defendant Cindy Smith, Administratrix of the Estate of Mark K. Smith*

This the 27th day of June, 2024.

**Gordon Rees Scully Mansukhani, LLP**

By: _____
Megan M. Stacy

FILED

2024 JUL -1 P 3: 04

ROBESON CO., C.S.C.

BY___*Ks*___

STATE OF NORTH CAROLINA

COUNTY OF ROBESON

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
24-CVS-468

CINDY SOLES SMITH, Administratrix of the
ESTATE OF MARK KEANNAN SMITH,

        Plaintiff/Counterclaim-
        Defendant,

    v.

WILLIAM BRATTY LAMB,

        Defendant,

    and

XPO LOGISTICS FREIGHT, INC.

        Defendant/Counterclaim-
        Plaintiff.

**ORDER GRANTING DEFENDANT
XPO LOGISTICS FREIGHT, INC'S
MOTION FOR EXTENSION OF TIME
TO RESPOND TO PLAINTIFF'S FIRST
SET OF INTERROGATORIES,
REQUEST FOR PRODUCTION OF
DOCUMENTS AND REQUEST FOR
ADMISSION**

        This cause is before the undersigned on motion of Defendant XPO for an enlargement of time to respond to Plaintiff's First Set of Interrogatories, Request for Production of Documents and Requests for Admission, and it appears to the Court that the time in which to respond said Plaintiff's First Set of Interrogatories, Request for Production of Documents and Requests for Admission has not yet expired and the Court is of the opinion that good cause has been shown and the motion shall be allowed.

PLAINTIFF'S
EXHIBIT
**3**

IT IS THEREFORE ALLOWED that the time in which to respond to Plaintiff's First Set

of Interrogatories, Request for Production of Documents and Requests for Admission is hereby

enlarged to and including the 5th day of August, 2024.

This 1st day of July, 2024.


Kimberly Sampson, Asst. Clerk
Clerk of Superior Court

STATE OF NORTH CAROLINA
COUNTY OF ROBESON

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
24-CVS-468

CINDY SOLES SMITH, Administratrix of the
ESTATE OF MARK KEANNAN SMITH,

        Plaintiff/Counterclaim-
        Defendant,

v.

WILLIAM BRATTY LAMB,

        Defendant,

and

XPO LOGISTICS FREIGHT, INC.

        Defendant/Counterclaim-
        Plaintiff.

DEFENDANT XPO LOGISTICS FREIGHT,
INC.'s RESPONSES TO PLAINTIFF'S
FIRST SET OF INTERROGATORIES,
REQUESTS FOR PRODUCTION OF
DOCUMENTS, and REQUESTS FOR
ADMISSION

Pursuant to Rules 26, 33, 34, and 36 of the North Carolina Rules of Civil Procedure, Defendant/Counterclaim Plaintiff XPO Logistics Freight, Inc. ("XPO" or "Defendant"), by and through the undersigned counsel, hereby responds to the First Set of Interrogatories, Requests for Production of Documents, and Requests for Admission served by Plaintiff/Counterclaim-Defendant Cindy Soles Smith, Administratrix of the Estate of Mark Keannan Smith ("Plaintiff").

## INTERROGATORIES

1.    If you contend that Plaintiff has sued the wrong party or that your name is incorrectly stated in this lawsuit, please explain the basis for your contention and identify the correct legal entity for the correct party in interest to this suit.

    **ANSWER:**    **Objection.** Defendant objects to this Interrogatory to the extent it is premature and no third-party discovery has been conducted by Defendant as of the date of this response. Further, Defendant objects to this Interrogatory to the extent it requires information protected by privilege, including without limitation the attorney-client privilege and/or the work-product doctrine. Additionally, Defendant objects to this Interrogatory as premature to the extent that discovery is on-going and Defendant is continuing to investigate the facts alleged by Plaintiff in the Complaint.



PLAINTIFF'S EXHIBIT 4

Subject to and without waiving the above objection, Defendant does not allege that it is incorrectly named in this lawsuit.

2.  Identify the following people: (a) The Safety Director/Chief Safety Officer for XPO on the date of the Subject Incident and now; (b) The person(s) primarily responsible for compliance with state and federal safety regulations at XPO on the date of the Subject Incident and now; (c) The person(s) responsible for training William Lamb; and (d) William Lambs' supervisor and manager on the date of the Subject Incident.

**ANSWER:**     **Objection.** Defendant objects to this Interrogatory to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery.

Subject to and without waiving the above objection, Defendant William Lamb's supervisor at the time of the Subject Incident and now is Brad Lutz. Brad Lutz was in charge of supervising and training Defendant William Lamb. Chad Mitchell was the inbound supervisor on the date of the Subject Incident. Riley Anderson was the safety manager on the date of the Subject Incident.

3.  For each claim (formal or informal) and lawsuit wherein it is/was suggested or alleged that any person was injured or killed as a result of XPO's driver's actions in the past three years, provide the style of the case (or name of parties, jurisdiction and case number), and describe briefly the circumstances of each suit/claim and the disposition.

**ANSWER:**     **Objection.** Defendant objects to this Interrogatory to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant further objects to this Interrogatory to the extent it seeks information in the possession of or equally accessible to Plaintiff. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery. Defendant also objects to the extent that this request seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other privilege.

4.  Identify and explain each communication of any kind between any federal and/or state agency and XPO that involved compliance (or noncompliance) with state and/or federal laws and/or regulations in the past 5 years. This would include, but is not limited to, all letters, interventions, complaints, warnings, citations, and safety ratings.

2

**ANSWER:** **Objection.** Defendant objects to this Interrogatory to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Specifically, this Interrogatory requests XPO to gather and compile information related to compliance or noncompliance for an entire span of 5 years, well outside of the relevance and purview of this action. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery. Defendant also objects to the extent that this request seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other privilege.

5.      With respect to the <u>tractor</u> operated by William Lamb at the time of the Subject Incident, provide the following information:

(a)      Identify the registered owner, leasor (if any) and leasee (if any) on the date of the Subject Incident and presently.

(b)      Provide the mileage and gross weight at the time of the Subject Incident;

(c)      For the engine, identify the manufacturer, year, model and identification number;

(d)      Identify all systems and devices in/on the tractor that have the capability of recording and or transmitting any data about the operation of the tractor (including without limitation Engine Control Module, Event Data Recorder, Airbag Control Module, Brake Control Module, Electronic On-Board Recorder, VORAD, etc.), state whether or not that data has been preserved and/or downloaded, and if so, when and by whom.

(e)      Identify all systems and devices of any kind in or on the tractor that allowed for communication between the driver and any other person or entity, state whether the data for the time period surrounding the Subject Incident has been preserved, and identify the person who has custody of the data and of the system from which the data was acquired.

(f)      Identify all systems and devices of any kind in or on the tractor that has the capability to monitor, record, and/or transmit data (this includes, but is not limited to, Qualcomm, TransCore, SkyBitz, Fluensee, Fleetilla, Teletrac, Lat-Lon, Telogis, GeoLogic, Cheetah, Xata, PeopleNet or similar system; any collision or lane departure warning system; any driver safety monitoring or hours of service monitoring system; any transponders or tachographs; any onboard cameras or video devices; any bar code or toll pass systems; and any other tracking system, logging unit, trip monitor, trip recorder, GPS system, satellite systems, or cellular systems), state whether the data for the time period surrounding the Subject Incident has been preserved, and identify the person who has custody of the data and of the system from which the data was acquired.

(g)      Identify all maintenance and repairs performed for the time period from 12 months before the Subject Incident to present.

3

**ANSWER:** **Objection.** Defendant objects to this Interrogatory to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Interrogatory to the extent it requests XPO to gather and compile information related to maintenance for a period of 12 months before the Subject Incident, as this information is well outside of the relevance and purview of this action. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery. Defendant also objects to the extent that this request seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other privilege

Subject to and without waiving the above objections, Defendant is the owner of the tractor operated by Defendant William Lamb at the time of the Subject Incident. Defendant further references and incorporates the documents produced in connection with Defendant's Responses to Plaintiff's First Set of Request for Production of Documents.

6.    With respect to the trailer operated by William Lamb at the time of the Subject Incident, provide the following information:

(a)   Identify the registered owner, leasor (if any) and leasee (if any) on the date of the Subject Incident and presently.

(b)   Provide the mileage and gross weight at the time of the Subject Incident;

(c)   Identify all systems and devices in/on the trailer that have the capability of recording any data about the operation of the trailer (including without limitation ABS control module, etc.), state whether or not that data has been preserved and/or downloaded, and if so, when and by whom.

(d)   Identify all systems and devices of any kind in or on the trailer that has the capability to monitor, record, and/or transmit data (this includes, but is not limited to, any transponders or tachographs; any bar code systems; and any other tracking system, logging unit, GPS system, satellite systems, or cellular systems), state whether the data for the time period surrounding the Subject Incident has been preserved, and identify the person who has custody of the data and of the system from which the data was acquired.

(e)   Identify all maintenance and repairs performed for the time period from 12 months before the Subject Incident to present.

**ANSWER:** **Objection.** Defendant objects to this Interrogatory to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Interrogatory to the extent it requests XPO to gather and compile information related to maintenance for a period of 12 months before the Subject Incident, as this information is well outside of the relevance and

4

purview of this action. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery.

Subject to and without waiving the above objections, Defendant is the owner of the trailer operated by Defendant William Lamb at the time of the Subject Incident. Defendant further references and incorporates the documents produced in connection with Defendant's Responses to Plaintiff's First Set of Request for Production of Documents.

7.    With respect to the trip that William Lamb was on at the time of the Subject Incident, provide the following information:

(a)    Identify all shippers and brokers involved;
(b)    Explain where and when (date and time) William Lamb picked up the load he had at the time of the Subject Incident;
(c)    Identify where (name and address of location) and when (date and time) the load was to be delivered;
(d)    Identify the location, time, duration and reason for each stop William Lamb made from the time he picked up the load until the time of the Subject Incident; and
(e)    Identify the route William Lamb intended to follow from the point of origin to the point of destination.

**ANSWER:**    **Objection.** Defendant objects to this Interrogatory to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Interrogatory to the extent it seeks information that is confidential or proprietary. Specifically, Defendant objects to this Interrogatory to the extent it requests information related to all parties involved, trip and company information, in addition to the intended route and point of origin to the point of the destination. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery.

8.    With respect to William Lamb's Hours of Service (HOS) in the eight (8) days leading up to the date of the Subject Incident, provide the following information:

(a)    Identify all errors on William Lamb's logs of which you are aware;
(b)    Identify all HOS violations of which you are aware;
(c)    Explain what you have done, if anything, to audit or verify the accuracy of William Lamb's logs and identify all persons involved in the process; and,
(d)    Identify all documents and data of any kind that you used to audit or verify the accuracy of William Lamb's logs.

5

**ANSWER:**    **Objection.** Defendant objects to this Interrogatory to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Interrogatory to the extent it seeks information that is confidential or proprietary. Specifically, Defendant objects to this Interrogatory to the extent it requests information related to William Lamb's HOS eight days prior to the Subject Incident— well outside of the relevance and purview of this action.

9.    For the 72 hours leading up to the Subject Incident, provide the following information regarding William Lamb:

    (a)    Identify all driving hours
    (b)    Identify all on-duty not driving hours (location and activities)
    (c)    Identify all stops (time and location) and the reason for them;
    (d)    Identify when and where meals were eaten
    (e)    Identify when and where William Lamb slept
    (f)    Identify when and where and in what dosages all medications (prescription and over the counter) were ingested.

    **ANSWER:**    **Objection.** Defendant objects to this Interrogatory to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Specifically, Defendant William Lamb's driving hours, on-duty not driving hours, stops, location of meals that were eaten, medications ingested, and places where Defendant William Lamb slept is well outside of the relevance and purview of this action. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery.

10.    Did William Lamb have any health issues that affected or could have affected his ability to drive in any way in the 72 hours leading up to the Subject Incident? If so, explain.

    **ANSWER:**    **Objection.** Defendant objects to this Interrogatory to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense.

    Subject to and without waiving the above objections, Defendant is not aware of any health issues that could have affected Defendant William Lamb's ability to drive in any way leading up to the Subject Incident.

11.    If XPO performs hours of service log audits on drivers:

(a)     Explain what is entailed in the auditing process;
(b)     Identify all documents and data used in the process;
(c)     Identify who performs the audits (in-house or outsourced);
(d)     Identify when, if ever, William Lamb's logs were audited; and
(e)     Identify all Hours of Service violations of which you are aware for William Lamb while he was working with your company.

**ANSWER:**     **Objection.** Defendant objects to this Interrogatory to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Specifically, Defendant objects to this Interrogatory to the extent it requests information related to other drivers of XPO—other than Defendant William Lamb. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery.

Subject to and without waiving the above objections, Defendant references and directs Plaintiff to the personnel file produced alongside Defendant's Responses to Plaintiff's First Set of Requests for Production of Documents.

12.     With respect to William Lamb, provide the following information:

(a)     Explain the relationship between XPO and William Lamb at the time of the Subject Incident (e.g., leased driver, company driver, etc.);
(b)     Explain how William Lamb was paid for driving (by hour, by load, by mile, salary or other);
(c)     Explain all steps XPO undertook to qualify William Lamb in accord with the Federal Motor Carrier Safety Regulations; and
(d)     Identify when XPO's relationship with William Lamb began and ended.

**ANSWER:**     **Objection.** Defendant objects to this Interrogatory to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery.

Subject to and without waiving the above objections, Defendant William Lamb was employed by XPO as a Driver Sales Representative, joining the XPO Lumberton, North Carolina (US-NC) team. Additionally, and with respect to the remaining requested information, Defendant references and directs Plaintiff to the personnel file produced alongside Defendant's Responses to Plaintiff's First Set of Requests for Production of Documents.

7

13. Was William Lamb acting within the course and scope of his employment or agency at the time of the Subject Incident? If not, explain the basis for your contention and identify documents and witnesses that support your contention.

> **ANSWER:** **Objection.** Defendant objects to this Interrogatory to the extent it seeks a legal conclusion, as to which no response is required.
>
> Subject to and without waiving the above objection—and to the extent a response is required, Defendant was employed by XPO at the time of the Subject Incident and completing a job to the benefit of XPO.

14. Identify and describe all formal and informal disciplinary and/or counseling actions undertaken by XPO regarding William Lamb at any time.

> **ANSWER:** **Objection.** Defendant objects to this Interrogatory to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery.
>
> Subject to and without waiving the above objections, Defendant references and directs Plaintiff to the personnel file produced alongside Defendant's Responses to Plaintiff's First Set of Requests for Production of Documents.

15. Describe in detail all training and education (including on the job training) provided by or on behalf of XPO to William Lamb at any time and in any way related to the operation of a commercial motor vehicle.

> **ANSWER:** **Objection.** Defendant objects to this Interrogatory to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery.
>
> Subject to and without waiving the above objections, Defendant references and directs Plaintiff to the personnel file produced alongside Defendant's Responses to Plaintiff's First Set of Requests for Production of Documents.

16. Identify all traffic violations committed by William Lamb, either while in your employment or in previous employment.

8

**ANSWER:** **Objection.** Defendant objects to this Interrogatory as vague and ambiguous and to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery.

Subject to and without waiving the above objections, Defendant references and directs Plaintiff to the personnel file produced alongside Defendant's Responses to Plaintiff's First Set of Requests for Production of Documents.

17.     If William Lamb has ever been arrested or charged with any crime to your knowledge, for each arrest or charge identify the charge, date, jurisdiction and disposition.

**ANSWER:** **Objection.** Defendant objects to this Interrogatory to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense.

Subject to and without waiving the above objections, Defendant is not aware of any prior arrest or criminal charges with respect to Defendant William Lamb.

18.     For each motor vehicle collision/accident involving William Lamb of which you are aware, provide the collision/accident date, location, jurisdiction, names of other parties involved and a brief description of what happened.

**ANSWER:** **Objection.** Defendant objects to this Interrogatory to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense.

Subject to and without waiving the above objections, Defendant references and directs Plaintiff to the personnel file produced alongside Defendant's Responses to Plaintiff's First Set of Requests for Production of Documents.

19.     If William Lamb had ever been disqualified from driving a commercial motor vehicle while in your employ, please describe when and under what circumstances.

**ANSWER:** **Objection.** Defendant objects to this Interrogatory as vague and ambiguous and to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant further objects to this interrogatory to the extent "disqualified" is unclear and/or vague.

9

20.     Identify and explain all communications of any kind between William Lamb and anyone acting for or on behalf of XPO during the twenty-four (24) hours before and after the Subject Incident.  For each communication, identify the method of communication (cell phone, QualComm, other), time of communication, persons involved, and the general subject.

> **ANSWER:**    **Objection.** Defendant objects to this Interrogatory as vague and ambiguous and to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Further, Defendant objects to this Interrogatory to the extent it requires information protected by privilege, including without limitation the attorney-client privilege and/or the work-product doctrine.

21.     If you maintain that the Federal Motor Carrier Safety Regulations did not apply to William Lamb at the time of the Subject Incident, explain the basis for your contention and identify all facts, witnesses, and documents that support your contention.

> **ANSWER:**    **Objection.** Defendant objects to this Interrogatory to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Interrogatory to the extent it seeks a legal conclusion, as to which no response is required.
>
> Subject to and without waiving the above objections, Defendant does not contend that Defendant William Lamb was not subject to any federal or state laws at the time of the Subject Incident.

22.     Identify all XPO policies, procedures, rules, guidelines, directives, manuals, handbooks and instructions that were in effect for William Lamb at the time of the Subject Incident.

> **ANSWER:**    **Objection.** Defendant objects to this Interrogatory to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Specifically, Defendant objects to the broad nature of identifying all company,   policies,   rules, guidelines, directives, manuals, handbooks and other information irrespective or pertinent to this action as irrelevant. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery. Defendant also objects to the extent that this request seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other privilege

23.    Describe in detail when and how you first became aware that William Lamb was involved in the Subject Incident. Please include the identification of all persons involved and what information was conveyed.

ANSWER:    **Objection.** Defendant objects to this Interrogatory to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense.

24.    Explain your understanding of how and why the Subject Incident occurred.

ANSWER:    **Objection.** Defendant objects to this Interrogatory to the extent it seeks a legal conclusion, as to which no response is required.

Subject to and without waiving the above objection—On October 11, 2023, Mark Smith ("Smith") was operating a 2018 Chevrolet pickup truck. Further, and on October 11, 2023, around 7:00am traffic was light and it was clear with good visibility. While traveling on US-74 in Lumberton County, North Carolina, Smith crashed into XPO's truck while traveling at a speed higher than the posted speed limit. Upon information and belief, the brakes in the 2018 Chevrolet were operable on or around 7:00am on October 11, 2023. Following the accident, no tire marks were found in the road indicating that Smith's brakes were being applied five (5) to forty (40) feet away from where he crashed into XPO's truck. Smith was negligent, grossly negligent, reckless, and careless in that he: (a) Operated a motor vehicle in a negligent, reckless, and careless manner endangering the lives of those lawfully on the roadway in violation of N.C. Gen. Stat. § 20-140 and 49 C.R.F. 393, *et seq*; (b) Operated a motor vehicle without due cation and circumspection and in a manner as to endanger persons or property in violation of N.C. Gen. Stat. § 20-140 and 49 C.F.R. 393, *et seq.*; (c) Negligently, recklessly, and carelessly drove a motor vehicle into a highway and failed to stop when Lamb was entering the highway; (d) Drove careless in a manner ignoring the rights and safety of others in violation of N.C. Gen. Stat. § 20-141.6 and 49 C.F.R. 393, *et seq.*; and (e) Negligently failed to maintain a proper lookout in violation of N.C. Gen. Stat. § 20-141 and 49 C.F.R. 393, *et seq.*

25.    Identify all persons who to your knowledge were present at the scene of the Subject Incident at any time in the 48 hours after the collision and explain their role, why they were at the scene and what actions they took.

ANSWER:    **Objection.** Defendant objects to this Interrogatory to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant further objects to this Interrogatory to the extent it is vague, specifically, requesting

11

Defendant to identify people's "role" and why they were at the scene. Additionally, Defendant objects to this Interrogatory to the extent it requires information protected by privilege, including without limitation the attorney-client privilege and/or the work-product doctrine.

Subject to and without waiving the above objections, other than Decedent, Defendant William Lamb, local law enforcement, and Towing Company personnel—Defendant is believes a school bus driver and individual named Michael Hunt were present at the scene around the time of the incident. Defendant is not aware of their "role" or what action s they took, if any, at the scene.

26.     Identify each person (name and employer) who has been involved in the investigation of the Subject Incident. For each person identified, describe their role and involvement in the investigation.

**ANSWER:**     **Objection.** Defendant objects to this Interrogatory to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant further objects to this Interrogatory to the extent it is vague, specifically, requesting Defendant to identify people's "role" and why they were at the scene. Additionally, Defendant objects to this Interrogatory to the extent it requires information protected by privilege, including without limitation the attorney-client privilege and/or the work-product doctrine. Defendant objects to this Interrogatory to the extent it seeks the premature discovery of expert testimony, inconsistent with North Carolina Rules of Civil Procedure. Defendant further objects to this Interrogatory to the extent it seeks discovery of expert information not required to be disclosed by the North Carolina Rules of Civil Procedure relating to experts, a Discovery Scheduling Order to be entered in this case, and/or case law interpreting the North Carolina Rules of Civil Procedure relating to expert disclosure.

Subject to and without waiving the above objections, Defendant is aware of local law enforcement investigating the Subject Incident.

27.     Identify all person(s) who you to your knowledge have or may have any relevant information regarding: the Subject Incident; the facts leading up to the Subject Incident; the investigation of the Subject Incident; any party to this action; any vehicles involved in the Subject Incident; and/or any claims or defenses raised in this action. The purpose of this Interrogatory is to identify all witnesses whom XPO believes may have relevant testimony of any kind in connection with this case.

**ANSWER:**     **Objection.** Defendant objects to this Interrogatory to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and

subjects Defendant to undue burden and expense. Additionally, Defendant objects to this Interrogatory to the extent it requires information protected by privilege, including without limitation the attorney-client privilege and/or the work-product doctrine. Defendant objects to this Interrogatory to the extent it seeks the premature discovery of expert testimony, inconsistent with North Carolina Rules of Civil Procedure. Defendant further objects to this Interrogatory to the extent it seeks discovery of expert information not required to be disclosed by the North Carolina Rules of Civil Procedure relating to experts, a Discovery Scheduling Order to be entered in this case, and/or case law interpreting the North Carolina Rules of Civil Procedure relating to expert disclosure.

Subject to and without waiving the above objections, Defendant is aware of local law enforcement investigating the Subject Incident, Defendant William Lamb, Michael Hunt, the school bus driver at the scene, Plaintiff and/or Decedent's family.

28. Identify all persons who to your knowledge have given a statement **in any form** (written, oral, recorded or otherwise) in connection with this case. For each person identified, provide the date and time of the statement, identify to whom the statement was made and who was present when the statement was made, identify whether the statement was written, oral, recorded, and/or transcribed, and identify all persons presently having custody of the statement.

**ANSWER:** **Objection.** Defendant objects to this Interrogatory to the extent it requires information protected by privilege, including without limitation the attorney-client privilege and/or the work-product doctrine. Defendant objects to this Interrogatory to the extent it seeks the premature discovery of expert testimony, inconsistent with North Carolina Rules of Civil Procedure. Defendant further objects to this Interrogatory to the extent it seeks discovery of expert information not required to be disclosed by the North Carolina Rules of Civil Procedure relating to experts, a Discovery Scheduling Order to be entered in this case, and/or case law interpreting the North Carolina Rules of Civil Procedure relating to expert disclosure. Defendant further objects to this Interrogatory to the extent it's premature and discovery is on-going.

Subject to and without waiving the above objections, Defendant identifies Defendant William Lamb, the school bus driver, Michael Hunt, and law enforcement.

29. Identify and explain all interaction and communication between anyone working for or on behalf of XPO and any federal and/or state law enforcement personnel/agency regarding the Subject Incident. Please include the identification of all persons involved and what information was conveyed.

**ANSWER:** **Objection.** Defendant objects to this Interrogatory to the extent it requires information protected by privilege, including without limitation the attorney-client privilege and/or the work-product doctrine. Defendant objects to this Interrogatory to the extent it seeks the premature discovery of expert testimony, inconsistent with North Carolina Rules of Civil Procedure. Defendant further objects to this Interrogatory to the extent it seeks discovery of expert information not required to be disclosed by the North Carolina Rules of Civil Procedure relating to experts, a Discovery Scheduling Order to be entered in this case, and/or case law interpreting the North Carolina Rules of Civil Procedure relating to expert disclosure. Defendant further objects to this Interrogatory to the extent it's premature and discovery is on-going.

30.     Identify and explain all interaction and communication between anyone working for or on behalf of XPO and anyone employed with or acting on behalf of any other Defendant named in this action in connection with the Subject Incident.

**ANSWER:** **Objection.** Defendant objects to this Interrogatory to the extent it requires information protected by privilege, including without limitation the attorney-client privilege and/or the work-product doctrine. Defendant objects to this Interrogatory to the extent it seeks the premature discovery of expert testimony, inconsistent with North Carolina Rules of Civil Procedure. Defendant further objects to this Interrogatory to the extent it seeks discovery of expert information not required to be disclosed by the North Carolina Rules of Civil Procedure relating to experts, a Discovery Scheduling Order to be entered in this case, and/or case law interpreting the North Carolina Rules of Civil Procedure relating to expert disclosure. Defendant further objects to this Interrogatory to the extent it's premature and discovery is on-going. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery.

31.     Please state whether any drug and/or alcohol tests (blood, urine or otherwise) performed on William Lamb after the Subject Incident occurred. If so, please state the time at which the test was administered, the name, address and phone number of the persons, firms, or entities who administered said test(s) and all such persons, firms, or entities in possession of a copy of the results of said test(s).

**ANSWER:** **Objection.** Defendant objects to this Interrogatory to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense.

Subject to and without waiving the above objections, other than tests conducted by local law enforcement, Defendant is unaware of any other drug and/or alcohol test performed on William Lamb.

14

32. As to any tests, inspections, measurements and/or investigations performed by or on behalf of XPO, or of which you are at all aware regarding in any way the Subject Incident and/or any other matter raised in this case, identify all person(s) who ordered and/or who participated in performing each and describe in detail the subject(s), purpose(s), methodologies and conclusions of each.

**ANSWER:**    **Objection.** Defendant objects to this Interrogatory to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Interrogatory to the extent it requires information protected by privilege, including without limitation the attorney-client privilege and/or the work-product doctrine. Defendant objects to this Interrogatory to the extent it seeks the premature discovery of expert testimony, inconsistent with North Carolina Rules of Civil Procedure. Defendant further objects to this Interrogatory to the extent it seeks discovery of expert information not required to be disclosed by the North Carolina Rules of Civil Procedure relating to experts, a Discovery Scheduling Order to be entered in this case, and/or case law interpreting the North Carolina Rules of Civil Procedure relating to expert disclosure. Defendant further objects to this Interrogatory to the extent it's premature and discovery is on-going.

33. Identify all photographs, motion pictures, maps, plats, drawings, diagrams, videotapes, or other tangible or documentary evidence depicting the scene of the Subject Incident and/or any person or vehicle involved in the Subject Incident.

**ANSWER:**    **Objection.** Defendant objects to this Interrogatory to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Interrogatory to the extent it requires information protected by privilege, including without limitation the attorney-client privilege and/or the work-product doctrine. Defendant objects to this Interrogatory to the extent it seeks the premature discovery of expert testimony, inconsistent with North Carolina Rules of Civil Procedure. Defendant further objects to this Interrogatory to the extent it seeks discovery of expert information not required to be disclosed by the North Carolina Rules of Civil Procedure relating to experts, a Discovery Scheduling Order to be entered in this case, and/or case law interpreting the North Carolina Rules of Civil Procedure relating to expert disclosure. Defendant further objects to this Interrogatory to the extent it's premature and discovery is on-going. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery.

Subject to and without waiving the above objections, Defendant incorporates and references the documents produced alongside Defendant's responses to Plaintiff's First Set of Requests for Production of Documents.

34. If you maintain that any non-party has any responsibility of any kind for causing the Subject Incident, and/or for causing any of the damages alleged in the Complaint, identify each such person and or entity, describe in detail the basis for their responsibility and identify all person(s) who have any knowledge regarding this issue.

**ANSWER:** **Objection.** Defendant objects to this Interrogatory to the extent it seeks a legal conclusion, as to which no response is required. Defendant further objects to this Interrogatory to the extent it's premature and discovery is on-going.

Subject to and without waiving the above objection, Defendant is not aware of any non-party that has any responsibility of any kind for causing the Subject Incident.

35. If you maintain that Decedent Mark Smith has any responsibility of any kind for causing the Subject Incident, and/or for causing any of the damages alleged in the Plaintiff's Complaint, describe in detail the basis for this responsibility and identify all person(s) who have any knowledge regarding this issue.

**ANSWER:** **Objection.** Defendant objects to this Interrogatory to the extent it seeks a legal conclusion, as to which no response is required.

Subject to and without waiving the above objection—On October 11, 2023, Mark Smith ("Smith") was operating a 2018 Chevrolet pickup truck. Further, and on October 11, 2023, around 7:00am traffic was light and it was clear with good visibility. While traveling on US-74 in Lumberton County, North Carolina, Smith crashed into XPO's truck while traveling at a speed higher than the posted speed limit. Upon information and belief, the brakes in the 2018 Chevrolet were operable on or around 7:00am on October 11, 2023. Following the accident, no tire marks were found in the road indicating that Smith's brakes were being applied five (5) to forty (40) feet away from where he crashed into XPO's truck. Smith was negligent, grossly negligent, reckless, and careless in that he: (a) Operated a motor vehicle in a negligent, reckless, and careless manner endangering the lives of those lawfully on the roadway in violation of N.C. Gen. Stat. § 20-140 and 49 C.R.F. 393, *et seq*; (b) Operated a motor vehicle without due cation and circumspection and in a manner as to endanger persons or property in violation of N.C. Gen. Stat. § 20-140 and 49 C.F.R. 393, *et seq.*; (c) Negligently, recklessly, and carelessly drove a motor vehicle into a highway and failed to stop when Lamb was entering the highway; (d) Drove careless in a manner ignoring the rights and safety of others in violation of N.C. Gen. Stat. § 20-141.6 and 49 C.F.R. 393, *et seq.*; and (e) Negligently failed to

16

maintain a proper lookout in violation of N.C. Gen. Stat. § 20-141 and 49 C.F.R. 393, *et seq.*

36.     If XPO has performed any review (e.g., accident review board, preventability determination) of the Subject Incident to determine preventability and/or fault, identify all persons involved in the review, the dates of the review and the conclusions that were reached.

> **ANSWER:**     **Objection**. Defendant objects to this Interrogatory to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Interrogatory to the extent it requires information protected by privilege, including without limitation the attorney-client privilege and/or the work-product doctrine. Defendant objects to this Interrogatory to the extent it seeks the premature discovery of expert testimony, inconsistent with North Carolina Rules of Civil Procedure. Defendant further objects to this Interrogatory to the extent it seeks discovery of expert information not required to be disclosed by the North Carolina Rules of Civil Procedure relating to experts, a Discovery Scheduling Order to be entered in this case, and/or case law interpreting the North Carolina Rules of Civil Procedure relating to expert disclosure. Defendant further objects to this Interrogatory to the extent it's premature and discovery is on-going. Defendant objects to this Interrogatory to the extent it seeks information that is confidential or proprietary.

37.     Identify each person XPO expects to call as an expert witness at trial and for each expert identified: (a) summarize each opinion the expert holds in regards to this case; (b) identify the factual basis for each such opinion; (c) identify all documents and evidence of any kind provided to the expert for review; and (d) identify all documents and evidence of any kind that support each opinion.

> **ANSWER:**     **Objection**. Defendant further objects to this Interrogatory to the extent it seeks discovery of expert information not required to be disclosed by the North Carolina Rules of Civil Procedure relating to experts, a Discovery Scheduling Order to be entered in this case, and/or case law interpreting the North Carolina Rules of Civil Procedure relating to expert disclosure. Defendant further objects to this Interrogatory to the extent it's premature and discovery is on-going. Defendant objects to this Interrogatory to the extent it seeks information that is confidential or proprietary.

38.     For each insurance policy of any kind that does or may provide any coverage on behalf of any XPO (whether it is your policy or anyone else's policy) for damages/injuries alleged in this case, provide: name of insurer; policy number; limits of coverage; the name(s) of all insureds; and state whether any insurer has offered a defense under a reservation of rights or otherwise contested coverage for the subject case.

Case 7:25-cv-01545-D-BM     Document 16-24     Filed 10/10/25     Page 69 of 301

**ANSWER:**    Objection. Defendant objects to this Interrogatory to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Further, Defendant objects to this Interrogatory to the extent it assumes facts either not true or proven. Specifically, Defendant objects to Plaintiff's statement that Plaintiff's injuries were caused in whole or in part by Defendant. Defendant objects to this Interrogatory to the extent it seeks information that is confidential or proprietary.

Subject to and without waiving these objections, Defendant is in possession of a policy that is available for inspection upon request.

18

## REQUEST FOR PRODUCTION TO DEFENDANT XPO

1. A copy of each document utilized by you in any way in responding to Plaintiff's First Interrogatories to XPO.

    **RESPONSE:** **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery. Defendant also objects to the extent that this request seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other privilege.

    Subject to and without waiving the above objection, Defendant incorporates and references the documents produced alongside these responses.

2. A copy of each document retention policy in effect for XPO at any time between the time of the Subject Incident and present.

    **RESPONSE:** **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

    Subject to and without waiving these objections, Defendant will supplement its response following the submission of a Protective Order in this action.

3. A copy of each insurance policy (and declarations page for each policy) that provides or may provide coverage for damages sustained in the Subject Incident.

    **RESPONSE:** **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

19

Subject to and without waiving these objections, Defendant is in possession of a policy that is available for inspection upon request.

4. Copies of all reservation of rights letters and/or agreements regarding insurance coverage for the Subject Incident.

   **RESPONSE:**     **Objection**. Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

   Subject to and without waiving these objections, Defendant is in possession of a policy that is available for inspection upon request.

5. All documents setting forth the relationship between William Lamb and XPO. This includes, but is not limited to all leases, employment contracts, and independent contractor agreements and other contracts, agreements, memorandum and the like.

   **RESPONSE:**     **Objection**. Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

   Subject to and without waiving these objections, Defendant will supplement its response following the submission of a Protective Order in this action.

6. The contents of William Lamb's driver qualification file, driver investigation file, driver history file and all documents that demonstrate compliance with federal and state driver qualification laws and regulations. The requested documents include, but are not limited to all documents required by FMCSR, 49 CFR Part 391, and the state equivalent thereto. If any responsive documents have been removed from the driver qualification file, these should be produced nonetheless.

   **RESPONSE:**     **Objection**. Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

20

Subject to and without waiving these objections, Defendant will supplement its response following the submission of a Protective Order in this action.

7. All documents of any kind that relate to any pre-employment background investigation of William Lamb, including without limitation any investigation of William Lamb's qualifications, character, driving history, training, criminal history, drug use, financial responsibility, medical conditions, health conditions, and/or any other matter relevant to employment with XPO. This specifically includes all data and information obtained through FMCSA's Pre-Employment Screening Program.

**RESPONSE:**     **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

Subject to and without waiving these objections, Defendant will supplement its response following the submission of a Protective Order in this action.

8. All documents that relate in any way to your recruiting of William Lamb.

**RESPONSE:**     **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

Subject to and without waiving these objections, Defendant will supplement its response following the submission of a Protective Order in this action.

9. All documents that relate in any way to you hiring William Lamb.

**RESPONSE:**     **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

Subject to and without waiving these objections, Defendant will supplement its response following the submission of a Protective Order in this action.

10. All documents that relate in any way to any orientation provided by XPO to William Lamb.

**RESPONSE:**    **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

Subject to and without waiving these objections, Defendant will supplement its response following the submission of a Protective Order in this action.

11. All documents that relate in any way to training of William Lamb. This includes but is not limited to all documents that show all training received by William Lamb; when, where and who provided the training and all materials used for training.

**RESPONSE:**    **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

Subject to and without waiving these objections, Defendant will supplement its response following the submission of a Protective Order in this action.

12. All quizzes, tests and/or other assessments (questions and answers) ever given by or on behalf of XPO to William Lamb at any time. An answer key should also be provided.

**RESPONSE:**    **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

Subject to and without waiving these objections, Defendant will supplement its response following the submission of a Protective Order in this action.

22

13. Copies of all documents (a) explaining how William Lamb was compensated for the one month leading up to and including the date of the Subject Incident and extending one week after the date of the Subject Incident; and (b) showing any detention of wages over the same time period.

RESPONSE: **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

Subject to and without waiving these objections, Defendant will supplement its response following the submission of a Protective Order in this action.

14. A copy of the front and back of every driver's license issued to William Lamb (regardless of name used) in your possession, custody and/or control.

RESPONSE: **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

Subject to and without waiving these objections, Defendant will supplement its response following the submission of a Protective Order in this action.

15. All documents placing you on notice of any violation by William Lamb of any law, ordinance or regulation. This includes, but is not limited to, reports of violations pursuant to Section 391.27(a) of the Federal Motor Carrier Safety Regulations, as well as copies of citations, warnings and inspection reports.

RESPONSE: **Objection.** Defendant objects to this Request to the extent it assumes facts either not true or proven. Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery.

23

Subject to and without waiving the above objection, Defendant is not in possession of the above requested information.

16. All documents relating to any and all blood, urine, hair or other type of drug or alcohol testing of William Lamb in your possession, custody and/or control.

**RESPONSE:**      **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

Subject to and without waiving these objections, Defendant will supplement its response following the submission of a Protective Order in this action.

17. A copy of all documents relating to any violation of any safety rule or principle by William Lamb at any time.

**RESPONSE:**      **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

Subject to and without waiving these objections, Defendant will supplement its response following the submission of a Protective Order in this action.

18. All documents of any kind that relate to any action (formal or informal) by any supervisor or manager or anyone working by or on behalf of XPO directed to William Lamb for the purpose of teaching, counseling, disciplining, correcting or otherwise managing William Lamb in any way relating to the safe operation of a commercial vehicle. This includes but is not limited to all disciplinary actions and the contents of all disciplinary folders or files of any kind by whatever name called.

**RESPONSE:**      **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

24

Subject to and without waiving these objections, Defendant will supplement its response following the submission of a Protective Order in this action.

19. A copy of all documents in your possession relating in any way to any motor vehicle collision and/or accident of any kind in which William Lamb has been involved.

  **RESPONSE:**   **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense.

       Subject to and without waiving these objections, Defendant will supplement its response following the submission of a Protective Order in this action.

20. Copies of all documents relating to any complaint, criticism or concern raised by any person or entity regarding the driving performance and/or safety of William Lamb. This should include, but is not limited to, customer complaints and call-ins by motorists either to company directly or to any service (i.e., How's My Driving? Call 800…).

  **RESPONSE:**   **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense.

       Subject to and without waiving the above objections, Defendant is not in possession of the above reference documents.

21. For each communication device (e.g., cell phones, PDAs, smartphones, texting and e-mailing devices, etc.) that was in the tractor that William Lamb's was operating at the time of the Subject Incident, produce all documents reflecting usage and billing for the time period time period beginning 48 hours before the Subject Incident and ending 48 hours after the Subject Incident. This includes all devices, whether owned by William Lamb or not, and whether it was in use at the time of the Subject Incident or not.

  **RESPONSE:**   **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

       Subject to and without waiving these objections, Defendant will supplement its response following the submission of a Protective Order in this action.

22. Copies of all documents prepared by William Lamb that describes the Subject Incident or the circumstances leading up to the subject incident.

RESPONSE: **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

Subject to and without waiving these objections, Defendant will supplement its response following the submission of a Protective Order in this action.

23. All documents evidencing any evaluation of the driving abilities, safety, and/or performance of William Lamb that has not been produced in response to the preceding Requests.

RESPONSE: **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

Subject to and without waiving these objections, Defendant will supplement its response following the submission of a Protective Order in this action.

24. A complete copy of the contents of each and every file (whether maintained physically or electronically), regardless of what the file is called, regarding or addressing William Lamb in any way, that has not been produced in response to other Requests above.

RESPONSE: **Objection.** Defendant objects to this Request to the extent it is vague, ambiguous, overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

25. A copy of all William Lamb's hours of service logs and any other driving logs and/or time sheets for the period beginning 180 days before the Subject Incident and ending 7 days following the Subject Incident.

26

**RESPONSE:** **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

26. In addition to the documents responsive to the preceding Request, produce all documents in your possession custody or control that demonstrate what William Lamb was doing for the time period beginning 14 days before the Subject Incident and ending two days following the Subject Incident. The requested documents include all documents that a motor carrier division officer might use to audit the logs of this driver, including, but not but are not limited to:

   a. All documents evidencing hours of service not produced above (e.g., daily logs and time sheets as well as log audits and letters regarding hours of service);
   b. All documents that could be used to check the accuracy of Hours of Service logs and/or time sheets;
   c. All documents related to trips (including driver's trip envelopes, trip reports, work reports, bills of lading, manifests, cargo documents of any kind, load documents of any kind, loading and unloading records of any kind, load detention records of any kind, freight bills, pick-up and delivery records of any kind, directions (e.g., routes to take), instructions (delivery notes, times, special handling), driver's trip check and settlement sheets, dispatch records, mileage reports, weight and scale records, and receipts for fuel, food, tolls, lodging, permits, repairs, and/or other purchases and expenses of any kind whether reimbursable or not, final trip accounting documents and printouts, as well as any and all reports and/or summaries of any kind referencing the above information);
   d. All documents evidencing any and all stops; and
   e. All driver call in reports and any other documentation of any communications between you and William Lamb.

   **RESPONSE:** **Objection.** Defendant objects to this Request to the extent it is vague, ambiguous, overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

27. A copy of all audits and summaries of William Lamb's hours of service covering the period beginning one year prior to the Subject Incident and ending 14 days following the Subject Incident.

   **RESPONSE:** **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible

27

evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

28. For the <u>tractor</u> involved in the Subject Incident, produce the following documents:

    a.    Title;
    b.    Registration;
    c.    Operators manual;
    d.    Maintenance Schedules;
    e.    All documents evidencing maintenance performed on the tractor at any time within 6 months before the Subject Incident;
    f.    All documents evidencing any inspections of the tractor during the 6 months before the Subject Incident;
    g.    All documents evidencing any repairs and/or modifications to the tractor at any time within 6 months before the Subject Incident;
    h.    All documents evidencing any repairs made to the tractor as a result of the subject collision (including insurance submissions);
    i.    All leases involving the vehicle;
    j.    Documents evidencing the purchase of the vehicle;
    k.    Documents evidencing the sale of the vehicle if it has been sold;
    l.    Documents evidencing mileage and weight at time of the Subject Incident; and
    m.    Copies of each and every logbook, ledger, file or the like maintained for any reason regarding the vehicle.

**RESPONSE:**    **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

29. For the <u>trailer</u> involved in the Subject Incident, produce the following documents:

    n.    Title;
    o.    Registration;
    p.    Operators manual;
    q.    Maintenance and service manuals;
    r.    All documents evidencing maintenance performed on the trailer at any time within 6 months before the Subject Incident;
    s.    All documents evidencing any inspections of the trailer during the 6 months before the Subject Incident;
    t.    All documents evidencing any repairs and/or modifications to the trailer at any time within 6 months before the Subject Incident;
    u.    All documents evidencing any repairs made to the trailer as a result of the

subject collision (including insurance submissions);

v. All leases involving the vehicle;
w. Documents evidencing the purchase of the vehicle;
x. Documents evidencing the sale of the vehicle if it has been sold;
y. Documents evidencing mileage and weight at time of the Subject Incident; and
z. Copies of each and every logbook, ledger, file or the like maintained for any reason regarding the vehicle.

RESPONSE: **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

30. If any data is available (whether or not downloaded or retrieved) from the tractor or any part or system from the tractor (e.g., engine control module (ECM), event data recorder (EDR), Sensing Diagnostic Module (SDM), drive-train or transmission control unit, power steering unit, airbag module, ABS or other brake system, or any EOBR), please produce both the printout of the data and the data file in its original format. This request is intended to cover data for as long as it was recorded before during and after the Subject Incident.

RESPONSE: **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense.

Subject to and without waiving these objections, Defendant will supplement its response with the above-requested information, if any.

31. If any data is available (whether or not downloaded or retrieved) from the trailer or any part or system from the trailer (e.g., event data recorder, ABS or other brake system, or any EOBR), please produce both the printout of the data and the data file in its original format. This request is intended to cover data for as long as it was recorded before during and after the Subject Incident.

RESPONSE: **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense.

Subject to and without waiving these objections, Defendant will supplement its response with the above-requested information, if any.

29

32. If the tractor at issue was equipped with a lane departure warning system or collision warning system (e.g., VORAD), please produce the printout of the downloaded data and to the degree possible produce the data file in its original format.

    **RESPONSE:**     **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense.

    Subject to and without waiving these objections, Defendant will supplement its response with the above-requested information, if any.

33. Produce copies of all e-mails between William Lamb and XPO for the time period beginning 90 days prior to the Subject Incident and present.

    **RESPONSE:**     **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it requires information protected by privilege, including without limitation the attorney-client privilege and/or the work-product doctrine. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery.

34. Produce copies of all communications and transmissions between William Lamb and XPO that were transmitted through any system on-board of the tractor or trailer involved in the Subject Incident for the period beginning 30 days before the Subject Incident and ending seven days after the Subject Incident. This includes any and all satellite or cellular systems, regardless of manufacturer, and includes, without limitation, all electronic on-board recorders (EOBRs) and system such as those made available by Qualcomm, TransCore, SkyBitz, Fluensee, Fleetilla, Teletrac, Lat-Lon, Telogis, GeoLogic, Cheetah, Xata, PeopleNet and other transportation service and product providers.

    **RESPONSE:**     **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

30

35. If the tractor was equipped with any on-board audio or video recording or monitoring devices and/or any other driver or driver safety monitoring system, please produce everything that was retrieved or could be retrieved from such devices and systems.

**RESPONSE:** **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

Subject to and without waiving these objections, Defendant incorporates and references documents produced alongside these responses.

36. To the degree that it has not been produced in response to other Requests above, produce all data of any kind that was recovered from the tractor, the trailer and/or anything inside or connected to any part or system of the tractor and/or trailer that were involved in the Subject Incident.

**RESPONSE:** **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

Subject to and without waiving these objections, Defendant incorporates and references documents produced alongside these responses.

37. A copy of each out of service report or violation concerning the tractor and/or the trailer involved in the Subject Incident from the period beginning one year prior to the Subject Incident through present. This request includes any supplements, responses, amendments and dispositions regarding any violation.

**RESPONSE:** **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

38. Produce all documents evidencing damage to any vehicle or other property as a result of the Subject Incident, including but not limited to repair estimates, appraisals, purchase invoices, repair bills, and checks or drafts reflecting payment for repair or replacement,

31

and any other documents concerning or establishing the value of any item of property before or after the Subject Incident.

**RESPONSE:**     **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

Subject to and without waiving these objections, Defendant incorporates and references documents produced alongside these responses.

39. Produce all documents given to any person or entity, including any insurance company in return for payment in whole or in part for property damage, e.g., loan receipt*(s)*, release*(s)*, assignment*(s)*, etc.

**RESPONSE:**     **Objection.** Defendant objects to this Request to the extent it seeks the premature discovery of expert testimony, inconsistent with North Carolina Rules of Civil Procedure. Defendant further objects to this Request to the extent it seeks discovery of expert information not required to be disclosed by the North Carolina Rules of Civil Procedure relating to experts, a Discovery Scheduling Order to be entered in this case, and/or case law interpreting the North Carolina Rules of Civil Procedure relating to expert disclosure. Defendant objects to this Request to the extent it requires information protected by privilege, including without limitation the attorney-client privilege and/or the work-product doctrine. Defendant further objects to this Request to the extent it's premature and discovery is on-going. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

40. For the tractor and trailer involved in the Subject Incident, produce all the Driver Vehicle Inspection Reports (DVIR) from the period beginning six months before the Subject Incident and ending one week after the Subject Incident.

**RESPONSE:**     **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery.

32

41. Produce all pre-trip inspection reports for the trip in question and three months prior to the date of the Subject Incident for the <u>tractor</u> and <u>trailer</u>.

    **RESPONSE:**     **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery.

42. All documents that relate to the load being hauled by William Lamb at the time of the Subject Incident, including, by way of example and without limitation, all manifests, bills of lading, weight receipts, dispatch documents, content summaries, and documents that address the contents, ownership, pick-up, detainment, and delivery of the load.

    **RESPONSE:**     **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery.

43. A copy of every document related to any investigation done by or on behalf of XPO of the scene of the Subject Incident.

    **RESPONSE:**     **Objection.** Defendant objects to this Request to the extent it seeks the premature discovery of expert testimony, inconsistent with North Carolina Rules of Civil Procedure. Defendant further objects to this Request to the extent it seeks discovery of expert information not required to be disclosed by the North Carolina Rules of Civil Procedure relating to experts, a Discovery Scheduling Order to be entered in this case, and/or case law interpreting the North Carolina Rules of Civil Procedure relating to expert disclosure. Defendant objects to this Request to the extent it requires information protected by privilege, including without limitation the attorney-client privilege and/or the work-product doctrine. Defendant further objects to this Request to the extent it's premature and discovery is on-going. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery.

44. All documents authored by anyone working for or on behalf of XPO that set forth any facts relating to the Subject Incident.

**RESPONSE:**     **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery. Defendant also objects to the extent that this request seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other privilege. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery.

Subject to and without waiving the above objections, Defendant is not in possession of the above-referenced documents.

45. All documents that explain what caused the Subject Incident.

**RESPONSE:**     **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant further objects to this Request to the extent it's premature and discovery is on-going. Defendant objects to this Request to the extent it seeks the premature discovery of expert testimony, inconsistent with North Carolina Rules of Civil Procedure. Defendant further objects to this Request to the extent it seeks discovery of expert information not required to be disclosed by the North Carolina Rules of Civil Procedure relating to experts, a Discovery Scheduling Order to be entered in this case, and/or case law interpreting the North Carolina Rules of Civil Procedure relating to expert disclosure. Defendant objects to this Request to the extent it requires information protected by privilege, including without limitation the attorney-client privilege and/or the work-product doctrine. Defendant further objects to this Request to the extent it seeks a legal conclusion.

Subject to and without waiving the above objections, Defendant will produce all reports created for disclosure by Defendant's retained expert(s) when appropriate. Further, Defendant will produce, if any, documents responsive to the above-referenced Request.

46. All documents assessing preventability of and/or fault for the Subject Incident.

**RESPONSE:**     **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant

34

nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant further objects to this Request to the extent it's premature and discovery is on-going. Defendant objects to this Request to the extent it seeks the premature discovery of expert testimony, inconsistent with North Carolina Rules of Civil Procedure. Defendant further objects to this Request to the extent it seeks discovery of expert information not required to be disclosed by the North Carolina Rules of Civil Procedure relating to experts, a Discovery Scheduling Order to be entered in this case, and/or case law interpreting the North Carolina Rules of Civil Procedure relating to expert disclosure. Defendant objects to this Request to the extent it requires information protected by privilege, including without limitation the attorney-client privilege and/or the work-product doctrine. Defendant further objects to this Request to the extent it seeks a legal conclusion. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery.

Subject to and without waiving the above objections, Defendant will produce all reports created for disclosure by Defendant's retained expert(s) when appropriate. Further, Defendant will produce, if any, documents responsive to the above-referenced Request.

47. If the scene of the Subject Incident was mapped (with a total station or other survey equipment) within 14 days of the Subject Incident, please produce a copy of the survey data files and all diagrams produced therefrom.

**RESPONSE:**    **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant further objects to this Request to the extent it's premature and discovery is on-going. Defendant objects to this Request to the extent it seeks the premature discovery of expert testimony, inconsistent with North Carolina Rules of Civil Procedure. Defendant further objects to this Request to the extent it seeks discovery of expert information not required to be disclosed by the North Carolina Rules of Civil Procedure relating to experts, a Discovery Scheduling Order to be entered in this case, and/or case law interpreting the North Carolina Rules of Civil Procedure relating to expert disclosure. Defendant objects to this Request to the extent it requires information protected by privilege, including without limitation the attorney-client privilege and/or the work-

35

product doctrine. Defendant further objects to this Request to the extent it seeks a legal conclusion.

Subject to and without waiving the above objections, Defendant will produce all reports created for disclosure by Defendant's retained expert(s) when appropriate. Further, Defendant will produce, if any, documents responsive to the above-referenced Request.

48. Copies of all photographs, video, computer simulations, and any other documents depicting:

   a. Any vehicle involved in the Subject Incident;
   b. Any person involved in the Subject Incident;
   c. The scene of the Subject Incident; and/or
   d. Any evidence (roadway markings or other) relevant to the Subject Incident.

**RESPONSE:**   **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant further objects to this Request to the extent it's premature and discovery is on-going. Defendant objects to this Request to the extent it seeks the premature discovery of expert testimony, inconsistent with North Carolina Rules of Civil Procedure. Defendant further objects to this Request to the extent it seeks discovery of expert information not required to be disclosed by the North Carolina Rules of Civil Procedure relating to experts, a Discovery Scheduling Order to be entered in this case, and/or case law interpreting the North Carolina Rules of Civil Procedure relating to expert disclosure. Defendant objects to this Request to the extent it requires information protected by privilege, including without limitation the attorney-client privilege and/or the work-product doctrine. Defendant further objects to this Request to the extent it seeks a legal conclusion. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery.

Subject to and without waiving the above objections, Defendant will produce all reports created for disclosure by Defendant's retained expert(s) when appropriate. Further, Defendant will produce, if any, documents responsive to the above-referenced Request.

49. Copies of all reports (you know what this means and it is not vague) relating to the Subject Incident including those prepared by William Lamb and those prepared by anyone working for or on behalf of XPO (except lawyers).

**RESPONSE:** **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant further objects to this Request to the extent it's premature and discovery is on-going. Defendant objects to this Request to the extent it seeks the premature discovery of expert testimony, inconsistent with North Carolina Rules of Civil Procedure. Defendant further objects to this Request to the extent it seeks discovery of expert information not required to be disclosed by the North Carolina Rules of Civil Procedure relating to experts, a Discovery Scheduling Order to be entered in this case, and/or case law interpreting the North Carolina Rules of Civil Procedure relating to expert disclosure. Defendant objects to this Request to the extent it requires information protected by privilege, including without limitation the attorney-client privilege and/or the work-product doctrine. Defendant further objects to this Request to the extent it seeks a legal conclusion. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery.

Subject to and without waiving the above objections, Defendant will produce all reports created for disclosure by Defendant's retained expert(s) when appropriate. Further, Defendant will produce, if any, documents responsive to the above-referenced Request.

50. A copy of all correspondence and other communications (including e-mail) that you have had with any person other than your lawyer involving the Subject Incident.

**RESPONSE:** **Objection.** Defendant objects to this Request to the extent it seeks the premature discovery of expert testimony, inconsistent with North Carolina Rules of Civil Procedure. Defendant further objects to this Request to the extent it seeks discovery of expert information not required to be disclosed by the North Carolina Rules of Civil Procedure relating to experts, a Discovery Scheduling Order to be entered in this case, and/or case law interpreting the North Carolina Rules of Civil Procedure relating to expert disclosure. Defendant objects to this Request to the extent it requires information protected by privilege, including without limitation the attorney-client privilege and/or the work-product doctrine. Defendant further objects to this Interrogatory to the extent it's premature and discovery is on-going. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

37

51. All tapes and transcripts of conversations, interviews, and/or statements of any person who purports to know any facts or circumstances relevant to the issues of liability, comparative fault, causation and/or damages in this case.

    **RESPONSE:**    **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant further objects to this Request to the extent it's premature and discovery is on-going. Defendant objects to this Request to the extent it seeks the premature discovery of expert testimony, inconsistent with North Carolina Rules of Civil Procedure. Defendant further objects to this Request to the extent it seeks discovery of expert information not required to be disclosed by the North Carolina Rules of Civil Procedure relating to experts, a Discovery Scheduling Order to be entered in this case, and/or case law interpreting the North Carolina Rules of Civil Procedure relating to expert disclosure. Defendant objects to this Request to the extent it requires information protected by privilege, including without limitation the attorney-client privilege and/or the work-product doctrine. Defendant further objects to this Request to the extent it seeks a legal conclusion. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery.

                            Subject to and without waiving the above objections, Defendant will produce all reports created for disclosure by Defendant's retained expert(s) when appropriate. Further, Defendant will produce, if any, documents responsive to the above-referenced Request.

52. If an Accident Review Board or similar entity reviewed the Subject Incident, produce the following:

    a. A copy of all documents (as defined) and other materials of any kind reviewed by said board or entity;
    b. A copy of all reports and documents (as defined) of any kind generated by said board or entity;
    c. Documents evidencing who was on the board;
    d. Documents evidencing all criteria for review; and
    e. Determination of preventability and all other conclusions reached by said board or entity.

    **RESPONSE:**    **Objection.** Defendant objects to this Request to the extent it seeks the premature discovery of expert testimony, inconsistent with North Carolina Rules of Civil Procedure. Defendant further objects

to this Request to the extent it seeks discovery of expert information not required to be disclosed by the North Carolina Rules of Civil Procedure relating to experts, a Discovery Scheduling Order to be entered in this case, and/or case law interpreting the North Carolina Rules of Civil Procedure relating to expert disclosure. Defendant objects to this Request to the extent it requires information protected by privilege, including without limitation the attorney-client privilege and/or the work-product doctrine. Defendant further objects to this Interrogatory to the extent it's premature and discovery is on-going. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

Subject to and without waiving these objections, Defendant will supplement its response following the submission of a Protective Order in this action.

53. Copies of all documents sent to or received from any governmental agency regarding the Subject Incident, the driver involved in the Subject Incident, or any subject that is part of the basis of this lawsuit.

**RESPONSE:** **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery. Defendant also objects to the extent that this request seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other privilege.

Subject to and without waiving the above objections, Defendant is not in possession of the above-referenced documents.

54. Copy of all documents and communications of any kind related to any CSA Intervention against your company in the past two years.

**RESPONSE:** **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery. Defendant also objects to the extent that this request seeks information protected from

39

disclosure by the attorney-client privilege, work product doctrine, or other privilege.

55. Copies of all XPO policies, procedures, rules, guidelines, directives, manuals, handbooks and instructions that were in effect at the time of the Subject Incident, relating to:

    a. Working for or with trucking company generally (e.g., employee manual or handbook);
    b. Operation of any motor vehicle (e.g., driving manuals or handbooks, and the like);
    c. Operation of a commercial vehicle;
    d. Driving safety;
    e. Defensive driving;
    f. Compliance with federal and state laws and regulations;
    g. Accident investigation;
    h. Accident review boards;
    i. Determination of preventability of accidents;
    j. Hiring, training and supervising drivers; and
    k. Disciplinary actions.

**RESPONSE:** **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary. Defendant also objects to the extent that this request seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other privilege.

Subject to and without waiving these objections, Defendant will supplement its response following the submission of a Protective Order in this action.

56. Copies of each document that William Lamb signed to prove that William Lamb received and/or agreed to be bound by any policies, procedures, rules, guidelines and/or standards of XPO.

**RESPONSE:** **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

Subject to and without waiving these objections, Defendant will supplement its response following the submission of a Protective Order in this action.

57. To the degree that XPO has any rules, policies, procedures, guidelines, driving manuals, employee handbooks or manuals, or other similar documents that were not provided to William Lamb before the Subject Incident, please produce them now.

**RESPONSE:** **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary. Defendant also objects to the extent that this request seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other privilege.

Subject to and without waiving these objections, Defendant will supplement its response following the submission of a Protective Order in this action.

58. A complete copy of, or in the alternative, access to, each driver safety training film, video, videotape, videocassette, audio cassette, computer program, simulator, driver diagnostic record or test, maintained by your company, or used by XPO, its personnel, agents, or employees during the year of the Subject Incident and three years prior.

**RESPONSE:** **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

Subject to and without waiving these objections, Defendant will supplement its response following the submission of a Protective Order in this action.

59. Copies of all industry and/or other guidelines and/or practices that you rely upon to support your contentions in this case.

**RESPONSE:** **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense.

41

Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

Subject to and without waiving these objections, Defendant will supplement its response following the submission of a Protective Order in this action.

60. Copy of documents showing the hierarchy of managerial positions at XPO and who occupied such positions as of the time of the subject incident and presently.

    **RESPONSE:**    **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

        Subject to and without waiving these objections, Defendant will supplement its response following the submission of a Protective Order in this action.

61. A copy of each document (including articles and presentations) prepared and/or presented by any XPO representative relating to the safe operation of a commercial motor vehicle and/or the safe operation of a trucking company in the past five years.

    **RESPONSE:**    **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary. Defendant also objects to the extent that this request seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other privilege.

62. All company newsletters distributed during the time period beginning two years before the Subject Incident and present.

    **RESPONSE:**    **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

63. A copy of all lease and trip lease contracts applicable to William Lamb and/or any vehicle involved in the Subject Incident.

**RESPONSE:** **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

64. Copies of any contract under which your company was operating the truck in question at the time of the Subject Incident.

**RESPONSE:** **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

65. A copy of XPO's accident register maintained as required by 49 CFR § 390.35.

**RESPONSE:** **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

66. Transcripts or recordings of all depositions of corporate designees for XPO given in the past five years in cases where it was alleged that a driver working for XPO caused injury or death to another person.

**RESPONSE:** **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery. Defendant also objects to the extent that this request seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other privilege.

67. Copies of all documents putting any third party on notice of a claim arising from the Subject Incident.

43

**RESPONSE:** **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it requires information protected by privilege, including without limitation the attorney-client privilege and/or the work-product doctrine. Defendant further objects to this Interrogatory to the extent it's premature and discovery is on-going.

68. All correspondence and other communication of any kind between you and any other Defendant to this Action.

**RESPONSE:** **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense.

Subject to and without waiving the above objections, Defendant references and incorporates the documents produced alongside these responses.

69. With respect to each expert witness who may provide testimony at the trial of this case, provide:

    a. A copy of all documents (as that term is defined above) and items of any kind produced <u>to</u> said expert;
    b. A copy of all documents (as that term is defined above) and items of any kind generated or produced <u>by</u> said expert;
    c. A copy of the entire file of said expert;
    d. A current résumé or curriculum vitae for said expert; and
    e. All billing records and work logs for said expert.

**RESPONSE:** **Objection.** Defendant objects to this Request to the extent it seeks the premature discovery of expert testimony, inconsistent with North Carolina Rules of Civil Procedure. Defendant further objects to this Request to the extent it seeks discovery of expert information not required to be disclosed by the North Carolina Rules of Civil Procedure relating to experts, a Discovery Scheduling Order to be entered in this case, and/or case law interpreting the North Carolina Rules of Civil Procedure relating to expert disclosure. Defendant objects to this Request to the extent it requires information protected by privilege, including without limitation the attorney-client privilege and/or the work-product doctrine. Defendant further objects to this Interrogatory to the extent it's premature and

44

discovery is on-going. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

Subject to and without waiving the above objections, Defendant will produce the above-requested information when appropriate.

70. A copy of any and all documents and other materials which support any contention that the Subject Incident was the fault of anyone other than the Defendants.

**RESPONSE:**    **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary. Defendant also objects to the extent that this request seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other privilege.

Defendant incorporates and references the documents produced alongside these responses.

71. Copies of all diagrams, graphs, illustrations, photographs, charts, pictures, models, blow-ups, or any other document or thing, including electronically created charts, animations, or data that you intend to utilize as an exhibit, demonstrative exhibit, or aid in the trial of this case not previously supplied.

**RESPONSE:**    **Objection.** Defendant objects to this Request to the extent it seeks the premature discovery of expert testimony, inconsistent with North Carolina Rules of Civil Procedure. Defendant further objects to this Request to the extent it seeks discovery of expert information not required to be disclosed by the North Carolina Rules of Civil Procedure relating to experts, a Discovery Scheduling Order to be entered in this case, and/or case law interpreting the North Carolina Rules of Civil Procedure relating to expert disclosure. Defendant objects to this Request to the extent it requires information protected by privilege, including without limitation the attorney-client privilege and/or the work-product doctrine. Defendant further objects to this Interrogatory to the extent it's premature and discovery is on-going. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

Subject to and without waiving the above objections, Defendant will produce the above-requested information when appropriate.

45

72. Produce each document or thing that you contend is evidence, proof, or support of your claims on any issue of negligence or causation as to the Subject Incident, including but not limited to admissions of fault, engineering analysis, scientific tests, and official or unofficial reports.

**RESPONSE:** **Objection.** Defendant objects to this Request to the extent it seeks the premature discovery of expert testimony, inconsistent with North Carolina Rules of Civil Procedure. Defendant further objects to this Request to the extent it seeks discovery of expert information not required to be disclosed by the North Carolina Rules of Civil Procedure relating to experts, a Discovery Scheduling Order to be entered in this case, and/or case law interpreting the North Carolina Rules of Civil Procedure relating to expert disclosure. Defendant objects to this Request to the extent it requires information protected by privilege, including without limitation the attorney-client privilege and/or the work-product doctrine. Defendant further objects to this Interrogatory to the extent it's premature and discovery is on-going. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

Subject to and without waiving the above objections, Defendant will produce the above-requested information when appropriate.

73. Produce each document or thing that you contend evidences or supports your denial of any of Plaintiff's Requests for Admissions.

**RESPONSE:** **Objection.** Defendant objects to this Request to the extent it seeks the premature discovery of expert testimony, inconsistent with North Carolina Rules of Civil Procedure. Defendant further objects to this Request to the extent it seeks discovery of expert information not required to be disclosed by the North Carolina Rules of Civil Procedure relating to experts, a Discovery Scheduling Order to be entered in this case, and/or case law interpreting the North Carolina Rules of Civil Procedure relating to expert disclosure. Defendant objects to this Request to the extent it requires information protected by privilege, including without limitation the attorney-client privilege and/or the work-product doctrine. Defendant further objects to this Interrogatory to the extent it's premature and discovery is on-going. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

Subject to and without waiving the above objections, Defendant incorporates and references the documents produced alongside these responses. Further, Defendant will provide a supplemental production with available documents, if any, and/or when appropriate.

46

74. If any surveillance has been undertaken by or on behalf of XPO, produce a copy of all reports, photographs, video and anything else generated through that investigation.

**RESPONSE:**     **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks the premature discovery of expert testimony, inconsistent with North Carolina Rules of Civil Procedure. Defendant further objects to this Request to the extent it seeks discovery of expert information not required to be disclosed by the North Carolina Rules of Civil Procedure relating to experts, a Discovery Scheduling Order to be entered in this case, and/or case law interpreting the North Carolina Rules of Civil Procedure relating to expert disclosure. Defendant objects to this Request to the extent it requires information protected by privilege, including without limitation the attorney-client privilege and/or the work-product doctrine. Defendant further objects to this Interrogatory to the extent it's premature and discovery is on-going.

Subject to and without waiving the above objection, Defendant will produce all reports created for disclosure by Defendant's retained expert(s) when appropriate.

47

# REQUESTS FOR ADMISSION

1. Admit that the DOT number for XPO is 241829.

   **RESPONSE:** **Admitted**

2. Admit that the MC ICC number for XPO is 165377.

   **RESPONSE:** **Admitted**

3. Admit that Decedent Mark Smith is a member of the public.

   **RESPONSE:** **Denied**

4. Admit that XPO was involved in intrastate transport at the time of the Subject Incident.

   **RESPONSE:** **Admitted**

5. Admit that XPO was involved in interstate transport at the time of the Subject Incident.

   **RESPONSE:** **Admitted**

6. Admit that XPO is a "motor carrier" as defined by the Federal Motor Carrier Safety Regulations.

   **RESPONSE:** **Objection.** Defendant objects to this Request for Admission to the extent it calls for a legal conclusion. Subject to and without waiving these objections, admitted.

7. Admit that XPO was a motor carrier as defined by the Federal Motor Carrier Safety Regulations at the time of the Subject Incident.

   **RESPONSE:** **Objection.** Defendant objects to this Request for Admission to the extent it calls for a legal conclusion. Subject to and without waiving these objections, admitted.

8. Admit that on October 11, 2023, XPO was the owner of a tractor involved in the Subject Incident.

   **RESPONSE:** **Admitted**

9. Admit that on October 11, 2023, XPO was the owner of a trailer involved in the Subject Incident.

   **RESPONSE:** **Admitted**

48

10. Admit that the tractor-trailer, VIN 3AKBGADV9GSHB2477, was involved in the Subject Incident.

**RESPONSE: Admitted**

11. Admit that on October 11, 2023, William Lamb was an agent of XPO.

**RESPONSE: Objection.** Defendant objects to this Request for Admission to the extent it calls for a legal conclusion. Subject to and without waiving these objections and to the extent any response is deemed required, Defendant admits that William Lamb worked for XPO on October 11, 2023 as a commercial driver.

12. Admit that on October 11, 2023, William Lamb was an employee of XPO.

**RESPONSE: Admitted**

13. Admit that at the time of the Subject Incident, William Lamb was acting within the course and scope of his employment or agency with XPO.

**RESPONSE: Objection.** Defendant objects to this Request for Admission to the extent it calls for a legal conclusion. Subject to and without waiving these objections and to the extent any response is deemed required, Defendant admits that William Lamb worked for XPO on October 11, 2023 as a commercial driver.

14. Admit that on October 11, 2023, William Lamb was operating the tractor-trailer owned by XPO.

**RESPONSE: Admitted**

15. Admit that on October 11, 2023, William Lamb was operating the tractor-trailer with the permission of XPO.

**RESPONSE: Admitted**

16. Admit that on October 11, 2023, William Lamb was operating the tractor-trailer with the knowledge of XPO.

**RESPONSE: Admitted**

17. Admit that on October 11, 2023, William Lamb was operating the tractor-trailer as trained by XPO.

49

**RESPONSE: Admitted**

18. Admit that on October 11, 2023, William Lamb was not operating the tractor-trailer as trained by XPO.

    **RESPONSE: Denied**

19. Admit that William Lamb is fully responsible for causing the Subject Incident.

    **RESPONSE: Denied**

20. Admit that William Lamb was a professional driver on the date and time of the Subject Incident.

    **RESPONSE: Admitted**

21. Admit that XPO is properly named in the Complaint.

    **RESPONSE: Admitted**

22. Admit that venue is proper in Robeson County Superior Court.

    **RESPONSE: Objection.** Defendant objects to this Request for Admission to the extent it calls for a legal conclusion. Subject to and without waiving these objections, admitted.

23. Admit that jurisdiction is proper in this Court.

    **RESPONSE: Objection.** Defendant objects to this Request for Admission to the extent it calls for a legal conclusion. Subject to and without waiving these objections, admitted.

24. Admit that service was proper upon XPO.

    **RESPONSE: Admitted**

25. Admit that the person answering these questions has authority from XPO to do so.

    **RESPONSE: Admitted**

This the 6th day of August, 2024.

                                        Gordon Rees Scully Mansukhani, LLP

                    By:     _____
                                        Megan M. Stacy
                                        North Carolina Bar No. 47108
                                        Le'Ron A. Byrd
                                        North Carolina Bar No. 55732
                                        150 Fayetteville Street, Suite 1120
                                        Raleigh, NC 27602
                                        Phone: 919-787-4555
                                        Fax: 919-741-5840
                                        E-mail: mstacy@grsm.com
                                        E-mail: lbyrd@grsm.com
                                        *Counsel for Defendant XPO Logistics*
                                        *Freight, Inc. and William Lamb*

51

## CERTIFICATE OF SERVICE

This is to certify that I caused the foregoing **Responses to Plaintiff's First Set of Discovery Requests** served upon all counsel of record by email pursuant to the North Carolina Rules of Civil Procedure addressed as follows:

J. William Owen
Musselwhite, Musselwhite, Branch & Grantham, P.A.
P.O. Box 1448
Lumberton, NC 28359
wowen@mmbglaw.com
*Counsel for Plaintiff Cindy Smith,*
*Administratrix of the Estate of Mark K. Smith*

Jennifer Welch
Cranfill Sumner
P.O. Box 27808
Raleigh, NC 27611-7808
jwelch@cshlaw.com
*Counsel for Counterclaim-Defendant Cindy Smith,*
*Administratrix of the Estate of Mark K. Smith*

This the 6th day of August, 2024.

Gordon Rees Scully Mansukhani, LLP

By: _____
Le'Ron A. Byrd

J.W. Musselwhite

W Edward Musselwhite, Jr

David F. Branch, Jr.

Norris Musselwhite Grantham

J. William Owen

# MUSSELWHITE | MUSSELWHITE
# BRANCH & GRANTHAM

### ATTORNEYS AT LAW

William E. Musselwhite Sr.
(1930-1987)
Fred L. Musselwhite
(1939-2017)

August 6, 2024

<u>VIA EMAIL AND US MAIL</u>

Megan Stacy
Le'Ron Byrd
Gordon Rees Scully Mansukhani
150 Fayetteville Street, Suite 1120
Raleigh, NC 27601

> *Re:* **Cindy Soles Smith, Administratrix of the Estate of Mark K. Smith v. William Bratty Lamb and XPO Logistics Freight, Inc. 24 CVS 468 (Robeson County)**

Dear Le'Ron:

I am in receipt of two emails dated August 6, 2024, wherein you produced XPO Logistics Freight, Inc.'s Responses to Plaintiff's First Set of Interrogatories, First Request for Production of Documents and First Request for Admission and Defendant William B. Lamb's Responses to First Set of Interrogatories, First Request for Production of Documents and First Request for Admission.

As I am sure you are aware, the foregoing First Set of Interrogatories, First Request for Production of Documents and First Request for Admission directed to Defendant XPO Logistics Freight, Inc. and Defendant William B. Lamb were served upon you pursuant to Rule 5 on June 5, 2024. You then moved for an extension of time through the Court and were granted an extension, <u>through the Court</u>, to respond to Plaintiff's discovery request on or before <u>August 5, 2024</u>.

Your email today seems to indicate that you were granted an additional extension of time to respond to Plaintiff's First Set of Interrogatories, First Request for Production of Documents and First Request for Admission directed to Defendant XPO Logistics Freight, Inc. and Defendant William B. Lamb. That is not accurate as **we never granted Defendant XPO Logistics Freight, Inc. or Defendant William B. Lamb an extension of time to respond to Plaintiff's discovery request.** The only extension was granted by the Court on July 1, 2024, which provided a production date of <u>August 5, 2024.</u>

The discovery responses were not served within the time prescribed by the Order dated July 1, 2024 and by the Rules of Civil Procedure. Accordingly, it is our position that all of the Request for Admissions directed to Defendants XPO Logistics Freight, Inc. and Defendant William B. Lamb are <u>deemed admitted</u>.



**PLAINTIFF'S EXHIBIT 5**

It is also our position that <u>all objections to Interrogatories, Request for Production of Documents and Request for Admission are untimely and were thereby waived</u>. This includes waiver of all general objections, attorney-client privilege and work product objections (*See e.g.,* Kean v. Kean 2022-NCCOA-275). Defendants likewise failed to move for a protective order within the prescribed period since the underlying objections were waived.

I am still in the process of reviewing Defendant XPO Logistics Freight, Inc.'s and Defendant William B. Lamb's Responses to Plaintiff's First Set of Interrogatories, First Request for Production of Documents and First Request for Admission – however upon initial review, the responses appear to be lacking in substance, invasive and otherwise incomplete. The responses also contain improper objections. By way of example, Defendants failed to produce basic insurance policy information that is clearly discoverable under Rule 26(b)(2).

In light of the foregoing, please produce complete responses, <u>without objection</u>, to Plaintiff's First Set of Interrogatories and First Request for Production of Documents directed to Defendant XPO Logistics Freight, Inc. and Defendant William B. Lamb <u>within ten (10) business days</u>. Please also let me know your position regarding the admissions of Defendant XPO Logistics Freight, Inc. and Defendant William B. Lamb.

If we cannot agree on the above–I will have no choice but to move the Court for relief under Rule 36 and Rule 37. Please consider this correspondence as Plaintiff's good faith attempt to resolve this discovery dispute amicably without the Court's intervention.

Sincerely yours,

MUSSELWHITE, MUSSELWHITE, BRANCH & GRANTHAM

J. William Owen

Enclosures

Cc: Jennfier Welch (via email only).

J.W. Musselwhite

W. Edward Musselwhite, Jr.

David F. Branch, Jr.

Norris Musselwhite Grantham

J. William Owen

William E. Musselwhite Sr.
(1930-1987)

Fred L. Musselwhite
(1939-2017)

# MUSSELWHITE | MUSSELWHITE
# BRANCH & GRANTHAM

### ATTORNEYS AT LAW

August 22, 2024

VIA EMAIL AND US MAIL

Megan Stacy
Le'Ron Byrd
Gordon Rees Scully Mansukhani
150 Fayetteville Street, Suite 1120
Raleigh, NC 27601

> *Re:* **Cindy Soles Smith, Administratrix of the Estate of Mark K. Smith v. William Bratty Lamb and XPO Logistics Freight, Inc. 24 CVS 468 (Robeson County)**

Dear Megan:

In our letter dated August 6, 2024, we addressed several concerns that we had with Defendant XPO and Defendant Lamb's discovery responses. As you know, on June 5, 2024, we served 74 specific Request for Production of Documents on Defendant XPO and 52 specific Request for Production of Documents on Defendant Lamb.

The past-due discovery responses from Defendant XPO and Defendant Lamb obtained multiple improper objections. Despite them being improper, since the responses were served late, it remains our position that as a matter of law all objections are now waived.

Moreover, the past-due responses obtained extremely limited document production, mainly consisting of publicly accessible collision reports, 911 calls and photographs. Defendants likewise failed to move for a protective order within the prescribed period since the underlying objections were waived. In the spirit of compromise, we agreed to the potential entry of a consent protective order with the understanding that it should obtain a sharing provision. We will still agree to a protective order for truly confidential and proprietary information. However we cannot continue to delay this matter as many of the documents requested are simply *not* confidential.

In our letter of August 6, 2024 and subsequent phone conversation, we requested full and complete discovery responses prior to involving the Court. We requested that these responses be expeditiously supplemented within 10 business days, which would have been by August 20, 2024. We have received no supplemental

606 North Elm Street      Post Office Box 1448      Lumberton, NC 28359-1448
Telephone: (910) 738-5277      Fax: (910) 738-3678



PLAINTIFF'S
EXHIBIT
6

or otherwise substantive response to our discovery despite our good faith attempts to resolve these discovery disputes without the Court's intervention.

I want to reiterate our position regarding the waiver of the objections in your past-due discovery responses. We expect full and complete discovery responses, without objection on or before August 30, 2024 by 5:00pm EST. If we cannot agree on the above—I will have no choice but to move the Court for relief under Rule 36 and Rule 37 and request appropriate sanctions. Please consider this correspondence as Plaintiff's second good faith attempt to resolve this discovery dispute amicably without the Court's intervention.

Sincerely yours,

MUSSELWHITE, MUSSELWHITE, BRANCH & GRANTHAM

J. William Owen

Enclosures

Cc: Jennfier Welch (via email only)

**Will Owen**

| | |
|---|---|
| **From:** | Will Owen |
| **Sent:** | Friday, August 30, 2024 4:48 PM |
| **To:** | Le'Ron Byrd |
| **Cc:** | Brandi Davis; Jennifer A. Welch; Stacy Frazier; Megan Stacy |
| **Subject:** | Re: Estate of Smith v. Lamb, et al. | Defendants' Responses to Plaintiff's First Set of Discovery Requests |

Le'Ron:

Thanks for letting me know, I can extend the deadline to 5pm EST on Tuesday (September 3rd) with all other conditions outlined in my recent correspondence remaining the same. Enjoy your holiday.

Will

**J. William Owen**
Musselwhite, Musselwhite, Branch & Grantham, P.A.
T: +1 910 738 5277 | F: +1 910 738 3678

---

**From:** Le'Ron Byrd <lbyrd@grsm.com>
**Sent:** Friday, August 30, 2024 4:26:10 PM
**To:** Will Owen <wowen@mmbglaw.com>
**Cc:** Brandi Davis <bldavis@grsm.com>; Jennifer A. Welch <JWelch@cshlaw.com>; Stacy Frazier <sfrazier@cshlaw.com>; Megan Stacy <mstacy@grsm.com>
**Subject:** RE: Estate of Smith v. Lamb, et al. | Defendants' Responses to Plaintiff's First Set of Discovery Requests

Will:

I just called your line and it went to voicemail. By way of update, I wanted to send you a note prior to the deadline identified in your letter. We're currently finalizing our supplemental written responses and production to send to your office. Given that a lot of folks have already left for the holiday, we're doing a lot of heavy lifting on our end with less than usual help. That said, and in response to your letter, we will get you supplemental responses later today. It just won't be before the 5pm deadline.

If you have any questions, please feel free to reach out to my cell phone listed below.

As always, thank you for your professionalism and courtesy.

Regards,
Le'Ron

---

**LE'RON A. BYRD** | Associate

**GORDON REES SCULLY MANSUKHANI | GRSM50**
**YOUR 50 STATE LAW FIRM™**
**CELEBRATING 50 YEARS OF EXCELLENCE**



1

Electronically Filed Date: 2/26/2025 2:27 PM Robeson Superior Court County Clerk of Superior Court

STATE OF NORTH CAROLINA
COUNTY OF ROBESON

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
24-CVS-468

CINDY SOLES SMITH, Administratrix of the
ESTATE OF MARK KEANNAN SMITH,

          Plaintiff/Counterclaim-
          Defendant,

    v.

WILLIAM BRATTY LAMB,

          Defendant,

    and

XPO LOGISTICS FREIGHT, INC.

          Defendant/Counterclaim-
          Plaintiff.

**DEFENDANT XPO LOGISTICS FREIGHT,
INC.'s _SUPPLEMENTAL_ RESPONSES TO
PLAINTIFF'S FIRST SET OF
INTERROGATORIES, REQUESTS FOR
PRODUCTION OF DOCUMENTS, and
REQUESTS FOR ADMISSION**

      Pursuant to Rules 26, 33, 34, and 36 of the North Carolina Rules of Civil Procedure, Defendant/Counterclaim Plaintiff XPO Logistics Freight, Inc. ("XPO" or "Defendant"), by and through the undersigned counsel, hereby supplements[1] its responses to the First Set of Interrogatories, Requests for Production of Documents, and Requests for Admission served by Plaintiff/Counterclaim-Defendant Cindy Soles Smith, Administratrix of the Estate of Mark Keannan Smith ("Plaintiff").

<u>INTERROGATORIES</u>

    1.    If you contend that Plaintiff has sued the wrong party or that your name is incorrectly stated in this lawsuit, please explain the basis for your contention and identify the correct legal entity for the correct party in interest to this suit.

    **ANSWER:**    **Objection. Defendant objects to this Interrogatory to the extent it requires information protected by privilege, including without**

---

[1] All responses that have been revised and/or supplemented in connection with these Supplemental Responses are indicated in **bold**.

PLAINTIFF'S
EXHIBIT
8
tabbies

limitation the attorney-client privilege and/or the work-product doctrine.

Subject to and without waiving the above objection, Defendant does not allege that it is incorrectly named in this lawsuit.

2.    Identify the following people: (a) The Safety Director/Chief Safety Officer for XPO on the date of the Subject Incident and now; (b) The person(s) primarily responsible for compliance with state and federal safety regulations at XPO on the date of the Subject Incident and now; (c) The person(s) responsible for training William Lamb; and (d) William Lambs' supervisor and manager on the date of the Subject Incident.

**ANSWER:**    Objection. Defendant objects to this Interrogatory to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery.

Subject to and without waiving the above objection, Defendant William Lamb's supervisor at the time of the Subject Incident and now is Brad Lutz. Brad Lutz was in charge of supervising and training Defendant William Lamb. Chad Mitchell was the inbound supervisor on the date of the Subject Incident. Riley Anderson was the safety manager on the date of the Subject Incident.

3.    For each claim (formal or informal) and lawsuit wherein it is/was suggested or alleged that any person was injured or killed as a result of XPO's driver's actions in the past three years, provide the style of the case (or name of parties, jurisdiction and case number), and describe briefly the circumstances of each suit/claim and the disposition.

**ANSWER:**    Objection. Defendant objects to this Interrogatory to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant further objects to this Interrogatory to the extent it seeks information in the possession of or equally accessible to Plaintiff. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery. Defendant also objects to the extent that this request seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other privilege.

Subject to and without waiving these objections, Defendant identifies the instant litigation, which is the only civil lawsuit involving the co-defendant William Lamb. By way of further response, any additional

2

lawsuits involving XPO are a matter of public record and are equally accessible to the Plaintiff.

4.  Identify and explain each communication of any kind between any federal and/or state agency and XPO that involved compliance (or noncompliance) with state and/or federal laws and/or regulations in the past 5 years. This would include, but is not limited to, all letters, interventions, complaints, warnings, citations, and safety ratings.

ANSWER:  Objection. Defendant objects to this Interrogatory to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Specifically, this Interrogatory requests XPO to gather and compile information related to compliance or noncompliance for an entire span of 5 years, well outside of the relevance and purview of this action. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery. Defendant also objects to the extent that this request seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other privilege.

Subject to and without waiving these objections, Defendant has produced relevant, responsive, non-privileged documents containing information responsive to this request and references and incorporates same in its response to this request.

5.  With respect to the <u>tractor</u> operated by William Lamb at the time of the Subject Incident, provide the following information:

(a)  Identify the registered owner, leasor (if any) and leasee (if any) on the date of the Subject Incident and presently.
(b)  Provide the mileage and gross weight at the time of the Subject Incident;
(c)  For the engine, identify the manufacturer, year, model and identification number;
(d)  Identify all systems and devices in/on the tractor that have the capability of recording and or transmitting any data about the operation of the tractor (including without limitation Engine Control Module, Event Data Recorder, Airbag Control Module, Brake Control Module, Electronic On-Board Recorder, VORAD, etc.), state whether or not that data has been preserved and/or downloaded, and if so, when and by whom.
(e)  Identify all systems and devices of any kind in or on the tractor that allowed for communication between the driver and any other person or entity, state whether the data for the time period surrounding the Subject Incident has been preserved, and identify the person who has custody of the data and of the system from which the data was acquired.
(f)  Identify all systems and devices of any kind in or on the tractor that has the

3

capability to monitor, record, and/or transmit data (this includes, but is not limited to, Qualcomm, TransCore, SkyBitz, Fluensee, Fleetilla, Teletrac, Lat-Lon, Telogis, GeoLogic, Cheetah, Xata, PeopleNet or similar system; any collision or lane departure warning system; any driver safety monitoring or hours of service monitoring system; any transponders or tachographs; any onboard cameras or video devices; any bar code or toll pass systems; and any other tracking system, logging unit, trip monitor, trip recorder, GPS system, satellite systems, or cellular systems), state whether the data for the time period surrounding the Subject Incident has been preserved, and identify the person who has custody of the data and of the system from which the data was acquired.

(g)     Identify all maintenance and repairs performed for the time period from 12 months before the Subject Incident to present.

**ANSWER:**     **Objection.** Defendant objects to this Interrogatory to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Interrogatory to the extent it requests XPO to gather and compile information related to maintenance for a period of 12 months before the Subject Incident, as this information is well outside of the relevance and purview of this action. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery. Defendant also objects to the extent that this request seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other privilege

Subject to and without waiving the above objections, Defendant is the owner of the tractor operated by Defendant William Lamb at the time of the Subject Incident. Defendant further references and incorporates the documents produced in connection with Defendant's Responses to Plaintiff's First Set of Request for Production of Documents.

6.     With respect to the <u>trailer</u> operated by William Lamb at the time of the Subject Incident, provide the following information:

(a)     Identify the registered owner, leasor (if any) and leasee (if any) on the date of the Subject Incident and presently.

(b)     Provide the mileage and gross weight at the time of the Subject Incident;

(c)     Identify all systems and devices in/on the trailer that have the capability of recording any data about the operation of the trailer (including without limitation ABS control module, etc.), state whether or not that data has been preserved and/or downloaded, and if so, when and by whom.

(d)     Identify all systems and devices of any kind in or on the trailer that has the capability to monitor, record, and/or transmit data (this includes, but is not limited to, any transponders or tachographs; any bar code systems; and any other tracking system, logging unit, GPS system, satellite systems, or cellular systems), state

4

whether the data for the time period surrounding the Subject Incident has been preserved, and identify the person who has custody of the data and of the system from which the data was acquired.

(e) Identify all maintenance and repairs performed for the time period from 12 months before the Subject Incident to present.

**ANSWER:** **Objection.** Defendant objects to this Interrogatory to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Interrogatory to the extent it requests XPO to gather and compile information related to maintenance for a period of 12 months before the Subject Incident, as this information is well outside of the relevance and purview of this action. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery.

Subject to and without waiving the above objections, Defendant is the owner of the trailer operated by Defendant William Lamb at the time of the Subject Incident. Defendant further references and incorporates the documents produced in connection with Defendant's Responses to Plaintiff's First Set of Request for Production of Documents.

7. With respect to the trip that William Lamb was on at the time of the Subject Incident, provide the following information:

(a) Identify all shippers and brokers involved;

(b) Explain where and when (date and time) William Lamb picked up the load he had at the time of the Subject Incident;

(c) Identify where (name and address of location) and when (date and time) the load was to be delivered;

(d) Identify the location, time, duration and reason for each stop William Lamb made from the time he picked up the load until the time of the Subject Incident; and

(e) Identify the route William Lamb intended to follow from the point of origin to the point of destination.

**ANSWER:** **Objection. Defendant objects to this Interrogatory to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Interrogatory to the extent it seeks information that is confidential or proprietary. Specifically, Defendant objects to this Interrogatory to the extent it requests information related to all parties involved, trip and company information, in addition to the intended route and point of origin to the point of the destination. Defendant further objects to this request to the extent that**

5

it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery.

Subject to and without waiving these objections, Defendant has produced relevant, responsive, non-privileged documents containing information responsive to this request and references and incorporates same in its response to this request.

8.    With respect to William Lamb's Hours of Service (HOS) in the eight (8) days leading up to the date of the Subject Incident, provide the following information:

(a)    Identify all errors on William Lamb's logs of which you are aware;
(b)    Identify all HOS violations of which you are aware;
(c)    Explain what you have done, if anything, to audit or verify the accuracy of William Lamb's logs and identify all persons involved in the process; and,
(d)    Identify all documents and data of any kind that you used to audit or verify the accuracy of William Lamb's logs.

**ANSWER:**    Objection. Defendant objects to this Interrogatory to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Interrogatory to the extent it seeks information that is confidential or proprietary. Specifically, Defendant objects to this Interrogatory to the extent it requests information related to William Lamb's HOS eight days prior to the Subject Incident— well outside of the relevance and purview of this action.

Subject to and without waiving these objections, Defendant has produced relevant, responsive, non-privileged documents containing information responsive to this request and references and incorporates same in its response to this request.

9.    For the 72 hours leading up to the Subject Incident, provide the following information regarding William Lamb:

(a)    Identify all driving hours
(b)    Identify all on-duty not driving hours (location and activities)
(c)    Identify all stops (time and location) and the reason for them;
(d)    Identify when and where meals were eaten
(e)    Identify when and where William Lamb slept
(f)    Identify when and where and in what dosages all medications (prescription and over the counter) were ingested.

**ANSWER:**    Objection. Defendant objects to this Interrogatory to the extent it is overbroad as to scope and seeks information that is neither relevant

6

nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Specifically, Defendant William Lamb's driving hours, on-duty not driving hours, stops, location of meals that were eaten, medications ingested, and places where Defendant William Lamb slept is well outside of the relevance and purview of this action. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery.

Subject to and without waiving these objections, Defendant has produced relevant, responsive, non-privileged documents containing information responsive to this request and references and incorporates same in its response to this request.

10. Did William Lamb have any health issues that affected or could have affected his ability to drive in any way in the 72 hours leading up to the Subject Incident? If so, explain.

**ANSWER:** Objection. Defendant objects to this Interrogatory to the extent it is overbroad as to scope.

Subject to and without waiving the above objections, Defendant is not aware of any health issues that could have affected Defendant William Lamb's ability to drive in any way leading up to the Subject Incident.

11. If XPO performs hours of service log audits on drivers:

(a) Explain what is entailed in the auditing process;
(b) Identify all documents and data used in the process;
(c) Identify who performs the audits (in-house or outsourced);
(d) Identify when, if ever, William Lamb's logs were audited; and
(e) Identify all Hours of Service violations of which you are aware for William Lamb while he was working with your company.

**ANSWER:** Objection. Defendant objects to this Interrogatory to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Specifically, Defendant objects to this Interrogatory to the extent it requests information related to other drivers of XPO—other than Defendant William Lamb. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery.

Subject to and without waiving the above objections, Defendant references and directs Plaintiff to the personnel file produced alongside

7

Defendant's Responses to Plaintiff's First Set of Requests for Production of Documents.

12. With respect to William Lamb, provide the following information:

(a) Explain the relationship between XPO and William Lamb at the time of the Subject Incident (e.g., leased driver, company driver, etc.);

(b) Explain how William Lamb was paid for driving (by hour, by load, by mile, salary or other);

(c) Explain all steps XPO undertook to qualify William Lamb in accord with the Federal Motor Carrier Safety Regulations; and

(d) Identify when XPO's relationship with William Lamb began and ended.

**ANSWER:** **Objection.** Defendant objects to this Interrogatory to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery.

Subject to and without waiving the above objections, Defendant William Lamb was employed by XPO as a Driver Sales Representative, joining the XPO Lumberton, North Carolina (US-NC) team. Additionally, and with respect to the remaining requested information, Defendant references and directs Plaintiff to the personnel file produced alongside Defendant's Responses to Plaintiff's First Set of Requests for Production of Documents.

13. Was William Lamb acting within the course and scope of his employment or agency at the time of the Subject Incident? If not, explain the basis for your contention and identify documents and witnesses that support your contention.

**ANSWER:** **Objection.** Defendant objects to this Interrogatory to the extent it seeks a legal conclusion, as to which no response is required.

Subject to and without waiving the above objection—and to the extent a response is required, Defendant was employed by XPO at the time of the Subject Incident and completing a job to the benefit of XPO.

14. Identify and describe all formal and informal disciplinary and/or counseling actions undertaken by XPO regarding William Lamb at any time.

**ANSWER:** **Objection. Defendant objects to this Interrogatory to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this request to the extent that it**

8

seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery.

Subject to and without waiving the above objections, none. By way of further response, Defendant references and directs Plaintiff to the personnel file produced alongside Defendant's Responses to Plaintiff's First Set of Requests for Production of Documents.

15. Describe in detail <u>all</u> training and education (including on the job training) provided by or on behalf of XPO to William Lamb at any time and in any way related to the operation of a commercial motor vehicle.

 **ANSWER:** **Objection.** Defendant objects to this Interrogatory to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery.

Subject to and without waiving the above objections, Defendant references and directs Plaintiff to the personnel file produced alongside Defendant's Responses to Plaintiff's First Set of Requests for Production of Documents.

16. Identify all traffic violations committed by William Lamb, either while in your employment or in previous employment.

 **ANSWER:** **Objection. Defendant objects to this Interrogatory as vague and ambiguous and to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense.**

**Subject to and without waiving the above objections, Defendant is not aware of any "violations." Defendant references and directs Plaintiff to the personnel file produced alongside Defendant's Responses to Plaintiff's First Set of Requests for Production of Documents.**

17. If William Lamb has ever been arrested or charged with any crime to your knowledge, for each arrest or charge identify the charge, date, jurisdiction and disposition.

 **ANSWER:** **Objection. Defendant objects to this Interrogatory to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense.**

9

Subject to and without waiving the above objections, Defendant is not aware of any prior arrest or criminal charges with respect to Defendant William Lamb. Defendant is aware of criminal charges against Lamb in connection with the subject incident. By way of further response, Defendant has produced relevant, responsive, non-privileged documents containing information responsive to this request and references and incorporates same in its response to this request

18.    For each motor vehicle collision/accident involving William Lamb of which you are aware, provide the collision/accident date, location, jurisdiction, names of other parties involved and a brief description of what happened.

ANSWER:    Objection. Defendant objects to this Interrogatory to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense.

Subject to and without waiving the above objections, Defendant XPO Defendant is only aware of personal and minor driving incidents concerning Defendant Lamb made prior to his employment with XPO. Those incidents involved incidentally colliding with a deer and scraping a pole in a local town. Defendant also identifies the incident that is the subject of this litigation. By way of further response, Defendant has produced relevant, responsive, non-privileged documents containing information responsive to this request and references and incorporates same in its response to this request. Specifically, Defendant references and directs Plaintiff to the personnel file produced alongside Defendant's Responses to Plaintiff's First Set of Requests for Production of Documents.

19.    If William Lamb had ever been disqualified from driving a commercial motor vehicle while in your employ, please describe when and under what circumstances.

ANSWER:    Objection. Defendant objects to this Interrogatory as vague and ambiguous and to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this interrogatory to the extent "disqualified" is unclear and/or vague.

Subject to and without waiving these objections, Defendant is not aware of any such "disqualification." By way of further response, Defendant has produced relevant, responsive, non-privileged documents containing information responsive to this request and references and incorporates same in its response to this request.

10

20.     Identify and explain all communications of any kind between William Lamb and anyone acting for or on behalf of XPO during the twenty-four (24) hours <u>before</u> and <u>after</u> the Subject Incident.  For each communication, identify the method of communication (cell phone, QualComm, other), time of communication, persons involved, and the general subject.

**ANSWER:**     **Objection. Defendant objects to this Interrogatory as vague and ambiguous and to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Further, Defendant objects to this Interrogatory to the extent it requires information protected by privilege, including without limitation the attorney-client privilege and/or the work-product doctrine.**

**Subject to and without waiving the above objections, Lamb communicated with dispatch, Chad Mitchell, to tell them that the incident occurred. Defendant Lamb also participated in an internal investigation process as reflected in the documents produced alongside Defendant XPO's written responses. Namely, Lamb was asked to complete forms for XPO's files. Lamb also spoke to a co-worker at XPO, Ron Kaczkowsky, regarding the lawsuit who suggested Mr. Lamb contact an attorney following the incident. Defendant also had privileged conversations with the undersigned counsel that are not subject to disclosure. By way of further response, Defendant has produced relevant, responsive, non-privileged documents containing information responsive to this request and references and incorporates same in its response to this request.**

21.     If you maintain that the Federal Motor Carrier Safety Regulations did not apply to William Lamb at the time of the Subject Incident, explain the basis for your contention and identify all facts, witnesses, and documents that support your contention.

**ANSWER:**     **Objection. Defendant objects to this Interrogatory to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Defendant objects to this Interrogatory to the extent it seeks a legal conclusion and/or the mental impressions and conclusions of Defendant and its counsel, as to which no response is required.**

**Subject to and without waiving the above objections, at this time Defendant does not contend that Defendant William Lamb was not subject to any particular federal or state laws at the time of the Subject Incident, however, discovery and investigation are ongoing.**

22.     Identify all XPO policies, procedures, rules, guidelines, directives, manuals, handbooks and instructions that were in effect for William Lamb at the time of the Subject Incident.

11

**ANSWER:** Objection. Defendant objects to this Interrogatory to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Specifically, Defendant objects to the broad nature of identifying all company, policies, rules, guidelines, directives, manuals, handbooks and other information irrespective or pertinent to this action as irrelevant. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery. Defendant also objects to the extent that this request seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other privilege.

Subject to and without waiving the above objections, Defendant has produced relevant, responsive, non-privileged documents containing information responsive to this request and references and incorporates same in its response to this request.

23. Describe in detail when and how you first became aware that William Lamb was involved in the Subject Incident. Please include the identification of all persons involved and what information was conveyed.

**ANSWER:** Objection. Defendant objects to this Interrogatory to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the above objections, upon information and belief Lamb communicated with dispatch, Chad Mitchell, to tell them that the incident occurred.

24. Explain your understanding of how and why the Subject Incident occurred.

**ANSWER:** Objection. Defendant objects to this Interrogatory to the extent it seeks a legal conclusion, as to which no response is required.

Subject to and without waiving the above objection—On October 11, 2023, Mark Smith ("Smith") was operating a 2018 Chevrolet pickup truck. Further, and on October 11, 2023, around 7:00am traffic was light and it was clear with good visibility. While traveling on US-74 in Lumberton County, North Carolina, Smith crashed into XPO's truck while traveling at a speed higher than the posted speed limit. Upon information and belief, the brakes in the 2018 Chevrolet were operable on or around 7:00am on October 11, 2023. Following the accident, no tire marks were found in the

12

road indicating that Smith's brakes were being applied five (5) to forty (40) feet away from where he crashed into XPO's truck. Smith was negligent, grossly negligent, reckless, and careless in that he: (a) Operated a motor vehicle in a negligent, reckless, and careless manner endangering the lives of those lawfully on the roadway in violation of N.C. Gen. Stat. § 20-140 and 49 C.R.F. 393, *et seq*; (b) Operated a motor vehicle without due cation and circumspection and in a manner as to endanger persons or property in violation of N.C. Gen. Stat. § 20-140 and 49 C.F.R. 393, *et seq*.; (c) Negligently, recklessly, and carelessly drove a motor vehicle into a highway and failed to stop when Lamb was entering the highway; (d) Drove careless in a manner ignoring the rights and safety of others in violation of N.C. Gen. Stat. § 20-141.6 and 49 C.F.R. 393, *et seq*.; and (e) Negligently failed to maintain a proper lookout in violation of N.C. Gen. Stat. § 20-141 and 49 C.F.R. 393, *et seq*.

25.     Identify all persons who to your knowledge were present at the scene of the Subject Incident at any time in the 48 hours after the collision and explain their role, why they were at the scene and what actions they took.

**ANSWER:**     **Objection. Defendant objects to this Interrogatory to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant further objects to this Interrogatory to the extent it is vague, specifically, requesting Defendant to identify people's "role" and why they were at the scene. Additionally, Defendant objects to this Interrogatory to the extent it requires information protected by privilege, including without limitation the attorney-client privilege and/or the work-product doctrine.**

**Subject to and without waiving the above objections, other than Decedent, Defendant William Lamb, local law enforcement, emergency response personnel, and Towing Company personnel—Defendant is believes a school bus driver and individual named Michael Hunt were present at the scene around the time of the incident. Defendant is not aware of their "role" or what actions they took, if any, at the scene. By way of further response, Defendant has produced relevant, responsive, non-privileged documents containing information responsive to this request and references and incorporates same in its response to this request.**

26.     Identify each person (name and employer) who has been involved in the investigation of the Subject Incident. For each person identified, describe their role and involvement in the investigation.

13

**ANSWER:** Objection. Defendant objects to this Interrogatory to the extent it is overbroad as to scope and subjects Defendant to undue burden and expense. Defendant further objects to this Interrogatory to the extent it is vague, specifically, requesting Defendant to identify people's "role" and why they were at the scene. Additionally, Defendant objects to this Interrogatory to the extent it requires information protected by privilege, including without limitation the attorney-client privilege and/or the work-product doctrine. Defendant objects to this Interrogatory to the extent it seeks the premature discovery of expert testimony, inconsistent with North Carolina Rules of Civil Procedure. Defendant further objects to this Interrogatory to the extent it seeks discovery of expert information not required to be disclosed by the North Carolina Rules of Civil Procedure relating to experts, a Discovery Scheduling Order to be entered in this case, and/or case law interpreting the North Carolina Rules of Civil Procedure relating to expert disclosure.

Subject to and without waiving the above objections, Defendant is aware of local law enforcement investigating the Subject Incident as well as an internal XPO investigation, the non-privileged records of which are produced herewith. By way of further response, Defendant has produced relevant, responsive, non-privileged documents containing information responsive to this request and references and incorporates same in its response to this request.

27. Identify all person(s) who you to your knowledge have or may have any relevant information regarding: the Subject Incident; the facts leading up to the Subject Incident; the investigation of the Subject Incident; any party to this action; any vehicles involved in the Subject Incident; and/or any claims or defenses raised in this action. The purpose of this Interrogatory is to identify all witnesses whom XPO believes may have relevant testimony of any kind in connection with this case.

**ANSWER:** Objection. Defendant objects to this Interrogatory to the extent it is overbroad as to scope and subjects Defendant to undue burden and expense. Additionally, Defendant objects to this Interrogatory to the extent it requires information protected by privilege, including without limitation the attorney-client privilege and/or the work-product doctrine. Defendant objects to this Interrogatory to the extent it seeks the premature discovery of expert testimony, inconsistent with North Carolina Rules of Civil Procedure. Defendant further objects to this Interrogatory to the extent it seeks discovery of expert information not required to be disclosed by the North Carolina Rules of Civil Procedure relating to experts, a Discovery Scheduling Order to be entered in this case, and/or case law interpreting the North Carolina Rules of Civil Procedure relating to expert disclosure.

14

Subject to and without waiving the above objections, Defendant is aware of local law enforcement investigating the Subject Incident as well as an internal XPO investigation. Defendant also identifies Defendant William Lamb, Michael Hunt, the school bus driver at the scene, Plaintiff and/or Decedent's family. By way of further response, Defendant also identifies the tow truck driver and facility where the vehicles were stored, emergency response personnel, and any XPO employees with whom Lamb communicated including Chad Mitchell and Ron Kaczkowsky. Defendant also has produced relevant, responsive, non-privileged documents containing information responsive to this request and references and incorporates same in its response to this request. Defendant also incorporates all other individuals identifies throughout the course of discovery in this litigation including, without limitation, persons identified in the documents produced herewith, by other parties to this litigation, and otherwise produced during the course of third-party discovery.

28.     Identify all persons who to your knowledge have given a statement in any form (written, oral, recorded or otherwise) in connection with this case. For each person identified, provide the date and time of the statement, identify to whom the statement was made and who was present when the statement was made, identify whether the statement was written, oral, recorded, and/or transcribed, and identify all persons presently having custody of the statement.

**ANSWER:**     Objection. Defendant objects to this Interrogatory to the extent it requires information protected by privilege, including without limitation the attorney-client privilege and/or the work-product doctrine. Defendant objects to this Interrogatory to the extent it seeks the premature discovery of expert testimony, inconsistent with North Carolina Rules of Civil Procedure. Defendant further objects to this Interrogatory to the extent it seeks discovery of expert information not required to be disclosed by the North Carolina Rules of Civil Procedure relating to experts, a Discovery Scheduling Order to be entered in this case, and/or case law interpreting the North Carolina Rules of Civil Procedure relating to expert disclosure.

Subject to and without waiving the above objections, Defendant identifies Defendant William Lamb, the school bus driver, Michael Hunt, and law enforcement. By way of further response, Defendant also identifies the tow truck driver and facility where the vehicles were stored. Defendant also has produced relevant, responsive, non-privileged documents containing information responsive to this request and references and incorporates same in its response to this request. Defendant also incorporates all other individuals identifies throughout the course of discovery in this litigation including, without limitation, persons identified in the documents produced herewith, by other

15

parties to this litigation, and otherwise produced during the course of third-party discovery.

29. Identify and explain all interaction and communication between anyone working for or on behalf of XPO and any federal and/or state law enforcement personnel/agency regarding the Subject Incident. Please include the identification of all persons involved and what information was conveyed.

**ANSWER:** Objection. Defendant objects to this request to the extent it seeks information that is privileged or otherwise not subject to disclosure and to the extent that it seeks the legal conclusions of Defendant and/or its counsel.

Subject to and without waiving the above objections, the undersigned counsel spoke with a member of law enforcement by telephone after the incident for the purposes of discussing the status of the investigation and law enforcement's request for an interview with Defendant Lamb. Defendant Lamb also spoke with law enforcement. By way of further response, Defendant has produced relevant, responsive, non-privileged documents containing information responsive to this request and references and incorporates same in its response to this request.

30. Identify and explain all interaction and communication between anyone working for or on behalf of XPO and anyone employed with or acting on behalf of any other Defendant named in this action in connection with the Subject Incident.

**ANSWER:** Objection. Defendant objects to this Interrogatory to the extent it requires information protected by privilege, including without limitation the attorney-client privilege and/or the work-product doctrine. Defendant objects to this Interrogatory to the extent it seeks the premature discovery of expert testimony, inconsistent with North Carolina Rules of Civil Procedure. Defendant further objects to this Interrogatory to the extent it seeks discovery of expert information not required to be disclosed by the North Carolina Rules of Civil Procedure relating to experts, a Discovery Scheduling Order to be entered in this case, and/or case law interpreting the North Carolina Rules of Civil Procedure relating to expert disclosure. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery.

Subject to and without waiving the above objections, Defendant incorporates its response to the preceding Interrogatory No. 20. By way of further response, Defendant has produced relevant, responsive, non-privileged documents containing information responsive to this request and references and incorporates same in its response to this request.

16

31.    Please state whether any drug and/or alcohol tests (blood, urine or otherwise) performed on William Lamb after the Subject Incident occurred.  If so, please state the time at which the test was administered, the name, address and phone number of the persons, firms, or entities who administered said test(s) and all such persons, firms, or entities in possession of a copy of the results of said test(s).

> **ANSWER:**    **Objection. Defendant objects to this Interrogatory to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense.**
>
> **Subject to and without waiving the above objections, other than tests conducted by local law enforcement, Defendant is unaware of any other drug and/or alcohol test performed on William Lamb. By way of further response, Defendant has produced relevant, responsive, non-privileged documents containing information responsive to this request and references and incorporates same in its response to this request.**

32.    As to any tests, inspections, measurements and/or investigations performed by or on behalf of XPO, or of which you are at all aware regarding in any way the Subject Incident and/or any other matter raised in this case, identify all person(s) who ordered and/or who participated in performing each and describe in detail the subject(s), purpose(s), methodologies and conclusions of each.

> **ANSWER:**    **Objection. Defendant objects to this Interrogatory to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Interrogatory to the extent it requires information protected by privilege, including without limitation the attorney-client privilege and/or the work-product doctrine. Defendant objects to this Interrogatory to the extent it seeks the premature discovery of expert testimony, inconsistent with North Carolina Rules of Civil Procedure. Defendant further objects to this Interrogatory to the extent it seeks discovery of expert information not required to be disclosed by the North Carolina Rules of Civil Procedure relating to experts, a Discovery Scheduling Order to be entered in this case, and/or case law interpreting the North Carolina Rules of Civil Procedure relating to expert disclosure.**
>
> **Subject to and without waiving the above objections, the undersigned counsel has conducted a privileged investigation. XPO also conducted its own internal investigation and all non-privileged documents relative to this investigation are being produced. By way of further response, Defendant has produced relevant, responsive, non-privileged**

17

documents containing information responsive to this request and references and incorporates same in its response to this request.

33.    Identify all photographs, motion pictures, maps, plats, drawings, diagrams, videotapes, or other tangible or documentary evidence depicting the scene of the Subject Incident and/or any person or vehicle involved in the Subject Incident.

**ANSWER:**    **Objection.** Defendant objects to this Interrogatory to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Interrogatory to the extent it requires information protected by privilege, including without limitation the attorney-client privilege and/or the work-product doctrine. Defendant objects to this Interrogatory to the extent it seeks the premature discovery of expert testimony, inconsistent with North Carolina Rules of Civil Procedure. Defendant further objects to this Interrogatory to the extent it seeks discovery of expert information not required to be disclosed by the North Carolina Rules of Civil Procedure relating to experts, a Discovery Scheduling Order to be entered in this case, and/or case law interpreting the North Carolina Rules of Civil Procedure relating to expert disclosure. Defendant further objects to this Interrogatory to the extent it's premature and discovery is on-going. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery.

Subject to and without waiving the above objections, Defendant incorporates and references the documents produced alongside Defendant's responses to Plaintiff's First Set of Requests for Production of Documents.

34.    If you maintain that any non-party has any responsibility of any kind for causing the Subject Incident, and/or for causing any of the damages alleged in the Complaint, identify each such person and or entity, describe in detail the basis for their responsibility and identify all person(s) who have any knowledge regarding this issue.

**ANSWER:**    **Objection.** Defendant objects to this Interrogatory to the extent it seeks a legal conclusion, as to which no response is required. Defendant further objects to this Interrogatory to the extent it's premature and discovery is on-going.

Subject to and without waiving the above objection, Defendant is not aware of any non-party that has any responsibility of any kind for causing the Subject Incident.

35.    If you maintain that Decedent Mark Smith has any responsibility of any kind for causing the Subject Incident, and/or for causing any of the damages alleged in the Plaintiff's

18

Complaint, describe in detail the basis for this responsibility and identify all person(s) who have any knowledge regarding this issue.

**ANSWER:** **Objection.** Defendant objects to this Interrogatory to the extent it seeks a legal conclusion, as to which no response is required.

Subject to and without waiving the above objection—On October 11, 2023, Mark Smith ("Smith") was operating a 2018 Chevrolet pickup truck. Further, and on October 11, 2023, around 7:00am traffic was light and it was clear with good visibility. While traveling on US-74 in Lumberton County, North Carolina, Smith crashed into XPO's truck while traveling at a speed higher than the posted speed limit. Upon information and belief, the brakes in the 2018 Chevrolet were operable on or around 7:00am on October 11, 2023. Following the accident, no tire marks were found in the road indicating that Smith's brakes were being applied five (5) to forty (40) feet away from where he crashed into XPO's truck. Smith was negligent, grossly negligent, reckless, and careless in that he: (a) Operated a motor vehicle in a negligent, reckless, and careless manner endangering the lives of those lawfully on the roadway in violation of N.C. Gen. Stat. § 20-140 and 49 C.R.F. 393, *et seq*; (b) Operated a motor vehicle without due cation and circumspection and in a manner as to endanger persons or property in violation of N.C. Gen. Stat. § 20-140 and 49 C.F.R. 393, *et seq.*; (c) Negligently, recklessly, and carelessly drove a motor vehicle into a highway and failed to stop when Lamb was entering the highway; (d) Drove careless in a manner ignoring the rights and safety of others in violation of N.C. Gen. Stat. § 20-141.6 and 49 C.F.R. 393, *et seq.*; and (e) Negligently failed to maintain a proper lookout in violation of N.C. Gen. Stat. § 20-141 and 49 C.F.R. 393, *et seq.*

36.     If XPO has performed any review (e.g., accident review board, preventability determination) of the Subject Incident to determine preventability and/or fault, identify all persons involved in the review, the dates of the review and the conclusions that were reached.

**ANSWER:** **Objection. Defendant objects to this Interrogatory to the extent it is overbroad as to scope. Defendant objects to this Interrogatory to the extent it requires information protected by privilege, including without limitation the attorney-client privilege and/or the work-product doctrine. Defendant objects to this Interrogatory to the extent it seeks the premature discovery of expert testimony, inconsistent with North Carolina Rules of Civil Procedure. Defendant further objects to this Interrogatory to the extent it seeks discovery of expert information not required to be disclosed by the North Carolina Rules of Civil Procedure relating to experts, a Discovery Scheduling Order to be entered in this case, and/or case law interpreting the North Carolina Rules of Civil Procedure relating to expert disclosure. Defendant objects to this**

19

Interrogatory to the extent it seeks information that is confidential or proprietary.

Subject to and without waiving the above objections, Defendant has produced relevant, responsive, non-privileged documents containing information responsive to this request and references and incorporates same in its response to this request.

37.     Identify each person XPO expects to call as an expert witness at trial and for each expert identified: (a) summarize each opinion the expert holds in regards to this case; (b) identify the factual basis for each such opinion; (c) identify all documents and evidence of any kind provided to the expert for review; and (d) identify all documents and evidence of any kind that support each opinion.

**ANSWER:**     Objection. Defendant objects to this Interrogatory to the extent it seeks discovery of expert information not required to be disclosed by the North Carolina Rules of Civil Procedure relating to experts, a Discovery Scheduling Order to be entered in this case, and/or case law interpreting the North Carolina Rules of Civil Procedure relating to expert disclosure. Defendant further objects to this Interrogatory to the extent it's premature and discovery is on-going. Defendant objects to this Interrogatory to the extent it seeks information that is confidential or proprietary.

Subject to and without waiving the above objections, Defendant has not yet identified any expert witnesses that it will call at trial; Defendant will supplement this response in accordance with the applicable rules at the appropriate time.

38.     For each insurance policy of any kind that does or may provide any coverage on behalf of any XPO (whether it is your policy or anyone else's policy) for damages/injuries alleged in this case, provide: name of insurer; policy number; limits of coverage; the name(s) of all insureds; and state whether any insurer has offered a defense under a reservation of rights or otherwise contested coverage for the subject case.

**ANSWER:**     Objection. Defendant objects to this Interrogatory to the extent it is overbroad as to scope. Further, Defendant objects to this Interrogatory to the extent it assumes facts either not true or proven. Specifically, Defendant objects to Plaintiff's statement that Plaintiff's injuries were caused in whole or in part by Defendant. Defendant objects to this Interrogatory to the extent it seeks information that is confidential or proprietary. Defendant also objects to this interrogatory to the extent that it seeks a legal opinion concerning coverage; the undersigned makes no representations concerning coverage.

20

Subject to and without waiving these objections, Defendant has requested a copy of the responsive policy(ies) and will produce to Plaintiff upon receipt of same.

## REQUEST FOR PRODUCTION TO DEFENDANT XPO

1. A copy of each document utilized by you in any way in responding to Plaintiff's First Interrogatories to XPO.

   **RESPONSE:**     **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery. Defendant also objects to the extent that this request seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other privilege.

   Subject to and without waiving the above objection, Defendant incorporates and references the documents produced alongside these responses.

2. A copy of each document retention policy in effect for XPO at any time between the time of the Subject Incident and present.

   **RESPONSE:**     **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

   Subject to and without waiving these objections, Defendant will supplement its response following the submission of a Protective Order in this action.

3. A copy of each insurance policy (and declarations page for each policy) that provides or may provide coverage for damages sustained in the Subject Incident.

   **RESPONSE:**     **Objection. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.**

21

**Subject to and without waiving these objections, Defendant has requested a copy of the responsive policy(ies) and will produce to Plaintiff upon receipt of same.**

4. Copies of all reservation of rights letters and/or agreements regarding insurance coverage for the Subject Incident.

  **RESPONSE:**    **Objection. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.**

         **Subject to and without waiving these objections, Defendant has requested a copy of the responsive policy(ies) and will produce to Plaintiff upon receipt of same.**

5. All documents setting forth the relationship between William Lamb and XPO. This includes, but is not limited to all leases, employment contracts, and independent contractor agreements and other contracts, agreements, memorandum and the like.

  **RESPONSE:**    **Objection. Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.**

         **Subject to and without waiving these objections, Defendant has produced relevant, responsive, non-privileged documents in response to this request.**

6. The contents of William Lamb's driver qualification file, driver investigation file, driver history file and all documents that demonstrate compliance with federal and state driver qualification laws and regulations. The requested documents include, but are not limited to all documents required by FMCSR, 49 CFR Part 391, and the state equivalent thereto. If any responsive documents have been removed from the driver qualification file, these should be produced nonetheless.

  **RESPONSE:**    **Objection. Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.**

         **Subject to and without waiving these objections, Defendant has produced relevant, responsive, non-privileged documents in response to this request.**

22

7. All documents of any kind that relate to any pre-employment background investigation of William Lamb, including without limitation any investigation of William Lamb's qualifications, character, driving history, training, criminal history, drug use, financial responsibility, medical conditions, health conditions, and/or any other matter relevant to employment with XPO. This specifically includes all data and information obtained through FMCSA's Pre-Employment Screening Program.

**RESPONSE:** Objection. Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

Subject to and without waiving these objections, Defendant has produced relevant, responsive, non-privileged documents in response to this request.

8. All documents that relate in any way to your recruiting of William Lamb.

**RESPONSE:** Objection. Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

Subject to and without waiving these objections, none.

9. All documents that relate in any way to you hiring William Lamb.

**RESPONSE:** Objection. Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

Subject to and without waiving these objections, Defendant has produced relevant, responsive, non-privileged documents in response to this request.

10. All documents that relate in any way to any orientation provided by XPO to William Lamb.

**RESPONSE:** Objection. Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither

23

relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

Subject to and without waiving these objections, Defendant has produced relevant, responsive, non-privileged documents in response to this request.

11. All documents that relate in any way to training of William Lamb. This includes but is not limited to all documents that show all training received by William Lamb; when, where and who provided the training and all materials used for training.

RESPONSE: Objection. Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

Subject to and without waiving these objections, Defendant has produced relevant, responsive, non-privileged documents in response to this request.

12. All quizzes, tests and/or other assessments (questions and answers) ever given by or on behalf of XPO to William Lamb at any time. An answer key should also be provided.

RESPONSE: Objection. Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

Subject to and without waiving these objections, Defendant has produced relevant, responsive, non-privileged documents in response to this request.

13. Copies of all documents (a) explaining how William Lamb was compensated for the one month leading up to and including the date of the Subject Incident and extending one week after the date of the Subject Incident; and (b) showing any detention of wages over the same time period.

RESPONSE: Objection. Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of

24

admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

Subject to and without waiving these objections, Defendant has produced relevant, responsive, non-privileged documents in response to this request.

14. A copy of the front and back of every driver's license issued to William Lamb (regardless of name used) in your possession, custody and/or control.

RESPONSE:      Objection. Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

Subject to and without waiving these objections, Defendant has produced relevant, responsive, non-privileged documents in response to this request.

15. All documents placing you on notice of any violation by William Lamb of any law, ordinance or regulation. This includes, but is not limited to, reports of violations pursuant to Section 391.27(a) of the Federal Motor Carrier Safety Regulations, as well as copies of citations, warnings and inspection reports.

RESPONSE:      Objection. Defendant objects to this Request to the extent it assumes facts either not true or proven. Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery.

Subject to and without waiving the above objection, Defendant is not in possession of the above requested information.

16. All documents relating to any and all blood, urine, hair or other type of drug or alcohol testing of William Lamb in your possession, custody and/or control.

RESPONSE:      Objection. Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of

25

admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

Subject to and without waiving these objections, Defendant has produced relevant, responsive, non-privileged documents in response to this request.

17. A copy of all documents relating to any violation of any safety rule or principle by William Lamb at any time.

**RESPONSE:**    Objection. Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

Subject to and without waiving these objections, Defendant has produced relevant, responsive, non-privileged documents in response to this request.

18. All documents of any kind that relate to any action (formal or informal) by any supervisor or manager or anyone working by or on behalf of XPO directed to William Lamb for the purpose of teaching, counseling, disciplining, correcting or otherwise managing William Lamb in any way relating to the safe operation of a commercial vehicle. This includes but is not limited to all disciplinary actions and the contents of all disciplinary folders or files of any kind by whatever name called.

**RESPONSE:**    Objection. Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

Subject to and without waiving these objections, Defendant has produced relevant, responsive, non-privileged documents in response to this request.

19. A copy of all documents in your possession relating in any way to any motor vehicle collision and/or accident of any kind in which William Lamb has been involved.

**RESPONSE:**    Objection. Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of

26

admissible evidence and subjects Defendant to undue burden and expense.

Subject to and without waiving these objections, Defendant has produced relevant, responsive, non-privileged documents in response to this request.

20. Copies of all documents relating to any complaint, criticism or concern raised by any person or entity regarding the driving performance and/or safety of William Lamb. This should include, but is not limited to, customer complaints and call-ins by motorists either to company directly or to any service (i.e., How's My Driving? Call 800…).

**RESPONSE:** Objection. Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense.

Subject to and without waiving the above objections, Defendant has produced relevant, responsive, non-privileged documents in response to this request.

21. For each communication device (e.g., cell phones, PDAs, smartphones, texting and e-mailing devices, etc.) that was in the tractor that William Lamb's was operating at the time of the Subject Incident, produce all documents reflecting usage and billing for the time period time period beginning 48 hours before the Subject Incident and ending 48 hours after the Subject Incident. This includes all devices, whether owned by William Lamb or not, and whether it was in use at the time of the Subject Incident or not.

**RESPONSE:** Objection. Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

Subject to and without waiving these objections, Defendant has produced relevant, responsive, non-privileged documents in response to this request.

22. Copies of all documents prepared by William Lamb that describes the Subject Incident or the circumstances leading up to the subject incident.

**RESPONSE:** Objection. Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of

27

admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

Subject to and without waiving these objections, Defendant has produced relevant, responsive, non-privileged documents in response to this request.

23. All documents evidencing any evaluation of the driving abilities, safety, and/or performance of William Lamb that has not been produced in response to the preceding Requests.

**RESPONSE:** Objection. Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

Subject to and without waiving these objections, Defendant has produced relevant, responsive, non-privileged documents in response to this request.

24. A complete copy of the contents of each and every file (whether maintained physically or electronically), regardless of what the file is called, regarding or addressing William Lamb in any way, that has not been produced in response to other Requests above.

**RESPONSE:** Objection. Defendant objects to this Request to the extent it is vague, ambiguous, overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

Subject to and without waiving these objections, Defendant has produced relevant, responsive, non-privileged documents in response to this request.

25. A copy of all William Lamb's hours of service logs and any other driving logs and/or time sheets for the period beginning 180 days before the Subject Incident and ending 7 days following the Subject Incident.

**RESPONSE:** Objection. Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of

28

admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

Subject to and without waiving these objections, Defendant has produced relevant, responsive, non-privileged documents in response to this request.

26. In addition to the documents responsive to the preceding Request, produce all documents in your possession custody or control that demonstrate what William Lamb was doing for the time period beginning 14 days before the Subject Incident and ending two days following the Subject Incident. The requested documents include all documents that a motor carrier division officer might use to audit the logs of this driver, including, but not but are not limited to:

   a. All documents evidencing hours of service not produced above (e.g., daily logs and time sheets as well as log audits and letters regarding hours of service);
   b. All documents that could be used to check the accuracy of Hours of Service logs and/or time sheets;
   c. All documents related to trips (including driver's trip envelopes, trip reports, work reports, bills of lading, manifests, cargo documents of any kind, load documents of any kind, loading and unloading records of any kind, load detention records of any kind, freight bills, pick-up and delivery records of any kind, directions (e.g., routes to take), instructions (delivery notes, times, special handling), driver's trip check and settlement sheets, dispatch records, mileage reports, weight and scale records, and receipts for fuel, food, tolls, lodging, permits, repairs, and/or other purchases and expenses of any kind whether reimbursable or not, final trip accounting documents and printouts, as well as any and all reports and/or summaries of any kind referencing the above information);
   d. All documents evidencing any and all stops; and
   e. All driver call in reports and any other documentation of any communications between you and William Lamb.

RESPONSE:     Objection. Defendant objects to this Request to the extent it is vague, ambiguous, overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

Subject to and without waiving these objections, Defendant has produced relevant, responsive, non-privileged documents in response to this request.

29

27. A copy of all audits and summaries of William Lamb's hours of service covering the period beginning one year prior to the Subject Incident and ending 14 days following the Subject Incident.

**RESPONSE:** **Objection. Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.**

**Subject to and without waiving these objections, Defendant has produced relevant, responsive, non-privileged documents in response to this request.**

28. For the <u>tractor</u> involved in the Subject Incident, produce the following documents:

    a.    Title;
    b.    Registration;
    c.    Operators manual;
    d.    Maintenance Schedules;
    e.    All documents evidencing maintenance performed on the tractor at any time within 6 months before the Subject Incident;
    f.    All documents evidencing any inspections of the tractor during the 6 months before the Subject Incident;
    g.    All documents evidencing any repairs and/or modifications to the tractor at any time within 6 months before the Subject Incident;
    h.    All documents evidencing any repairs made to the tractor as a result of the subject collision (including insurance submissions);
    i.    All leases involving the vehicle;
    j.    Documents evidencing the purchase of the vehicle;
    k.    Documents evidencing the sale of the vehicle if it has been sold;
    l.    Documents evidencing mileage and weight at time of the Subject Incident; and
    m.    Copies of each and every logbook, ledger, file or the like maintained for any reason regarding the vehicle.

**RESPONSE:** **Objection. Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.**

> Subject to and without waiving these objections, Defendant has produced relevant, responsive, non-privileged documents in response to this request.

29. For the <u>trailer</u> involved in the Subject Incident, produce the following documents:

    n.    Title;

    o.    Registration;

    p.    Operators manual;

    q.    Maintenance and service manuals;

    r.    All documents evidencing maintenance performed on the trailer at any time within 6 months before the Subject Incident;

    s.    All documents evidencing any inspections of the trailer during the 6 months before the Subject Incident;

    t.    All documents evidencing any repairs and/or modifications to the trailer at any time within 6 months before the Subject Incident;

    u.    All documents evidencing any repairs made to the trailer as a result of the subject collision (including insurance submissions);

    v.    All leases involving the vehicle;

    w.    Documents evidencing the purchase of the vehicle;

    x.    Documents evidencing the sale of the vehicle if it has been sold;

    y.    Documents evidencing mileage and weight at time of the Subject Incident; and

    z.    Copies of each and every logbook, ledger, file or the like maintained for any reason regarding the vehicle.

**RESPONSE:**     Objection. Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

    Subject to and without waiving these objections, Defendant has produced relevant, responsive, non-privileged documents in response to this request.

30. If any data is available (whether or not downloaded or retrieved) from the tractor or any part or system from the tractor (e.g., engine control module (ECM), event data recorder (EDR), Sensing Diagnostic Module (SDM), drive-train or transmission control unit, power steering unit, airbag module, ABS or other brake system, or any EOBR), please produce both the printout of the data and the data file in its original format. This request is intended to cover data for as long as it was recorded before during and after the Subject Incident.

**RESPONSE:**     Objection. Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither

31

relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense.

Subject to and without waiving these objections, Defendant has produced relevant, responsive, non-privileged documents in response to this request.

31. If any data is available (whether or not downloaded or retrieved) from the trailer or any part or system from the trailer (e.g., event data recorder, ABS or other brake system, or any EOBR), please produce both the printout of the data and the data file in its original format. This request is intended to cover data for as long as it was recorded before during and after the Subject Incident.

RESPONSE: Objection. Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense.

Subject to and without waiving these objections, Defendant is not in possession of any responsive documents.

32. If the tractor at issue was equipped with a lane departure warning system or collision warning system (e.g., VORAD), please produce the printout of the downloaded data and to the degree possible produce the data file in its original format.

RESPONSE: Objection. Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense.

Subject to and without waiving these objections, Defendant is not in possession of any responsive documents.

33. Produce copies of all e-mails between William Lamb and XPO for the time period beginning 90 days prior to the Subject Incident and present.

RESPONSE: Objection. Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it requires information protected by privilege, including without limitation the attorney-client privilege and/or the work-product doctrine.

32

Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery.

34. Produce copies of all communications and transmissions between William Lamb and XPO that were transmitted through any system on-board of the tractor or trailer involved in the Subject Incident for the period beginning 30 days before the Subject Incident and ending seven days after the Subject Incident. This includes any and all satellite or cellular systems, regardless of manufacturer, and includes, without limitation, all electronic on-board recorders (EOBRs) and system such as those made available by Qualcomm, TransCore, SkyBitz, Fluensee, Fleetilla, Teletrac, Lat-Lon, Telogis, GeoLogic, Cheetah, Xata, PeopleNet and other transportation service and product providers.

   **RESPONSE:**  **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

35. If the tractor was equipped with any on-board audio or video recording or monitoring devices and/or any other driver or driver safety monitoring system, please produce everything that was retrieved or could be retrieved from such devices and systems.

   **RESPONSE:**  **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

   Subject to and without waiving these objections, Defendant incorporates and references documents produced alongside these responses.

36. To the degree that it has not been produced in response to other Requests above, produce all data of any kind that was recovered from the tractor, the trailer and/or anything inside or connected to any part or system of the tractor and/or trailer that were involved in the Subject Incident.

   **RESPONSE:**  **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

33

Subject to and without waiving these objections, Defendant incorporates and references documents produced alongside these responses.

37. A copy of each out of service report or violation concerning the tractor and/or the trailer involved in the Subject Incident from the period beginning one year prior to the Subject Incident through present. This request includes any supplements, responses, amendments and dispositions regarding any violation.

   **RESPONSE:** **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

38. Produce all documents evidencing damage to any vehicle or other property as a result of the Subject Incident, including but not limited to repair estimates, appraisals, purchase invoices, repair bills, and checks or drafts reflecting payment for repair or replacement, and any other documents concerning or establishing the value of any item of property before or after the Subject Incident.

   **RESPONSE:** **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

   Subject to and without waiving these objections, Defendant incorporates and references documents produced alongside these responses.

39. Produce all documents given to any person or entity, including any insurance company in return for payment in whole or in part for property damage, e.g., loan receipt(s), release(s), assignment(s), etc.

   **RESPONSE:** **Objection.** Defendant objects to this Request to the extent it seeks the premature discovery of expert testimony, inconsistent with North Carolina Rules of Civil Procedure. Defendant further objects to this Request to the extent it seeks discovery of expert information not required to be disclosed by the North Carolina Rules of Civil Procedure relating to experts, a Discovery Scheduling Order to be entered in this case, and/or case law interpreting the North Carolina Rules of Civil Procedure relating to expert disclosure. Defendant

34

objects to this Request to the extent it requires information protected by privilege, including without limitation the attorney-client privilege and/or the work-product doctrine. Defendant further objects to this Request to the extent it's premature and discovery is on-going. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

40. For the tractor and trailer involved in the Subject Incident, produce all the Driver Vehicle Inspection Reports (DVIR) from the period beginning six months before the Subject Incident and ending one week after the Subject Incident.

   **RESPONSE:** **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery.

41. Produce all pre-trip inspection reports for the trip in question and three months prior to the date of the Subject Incident for the tractor and trailer.

   **RESPONSE:** **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery.

42. All documents that relate to the load being hauled by William Lamb at the time of the Subject Incident, including, by way of example and without limitation, all manifests, bills of lading, weight receipts, dispatch documents, content summaries, and documents that address the contents, ownership, pick-up, detainment, and delivery of the load.

   **RESPONSE:** **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery.

43. A copy of every document related to any investigation done by or on behalf of XPO of the scene of the Subject Incident.

35

**RESPONSE:** Objection. Defendant objects to this Request to the extent it seeks the premature discovery of expert testimony, inconsistent with North Carolina Rules of Civil Procedure. Defendant further objects to this Request to the extent it seeks discovery of expert information not required to be disclosed by the North Carolina Rules of Civil Procedure relating to experts, a Discovery Scheduling Order to be entered in this case, and/or case law interpreting the North Carolina Rules of Civil Procedure relating to expert disclosure. Defendant objects to this Request to the extent it requires information protected by privilege, including without limitation the attorney-client privilege and/or the work-product doctrine. Defendant further objects to this Request to the extent it's premature and discovery is on-going. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery.

Subject to and without waiving these objections, Defendant has produced relevant, responsive, non-privileged documents in response to this request.

44. All documents authored by anyone working for or on behalf of XPO that set forth any facts relating to the Subject Incident.

**RESPONSE:** Objection. Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery. Defendant also objects to the extent that this request seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other privilege. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery.

Subject to and without waiving these objections, Defendant has produced relevant, responsive, non-privileged documents in response to this request.

45. All documents that explain what caused the Subject Incident.

36

**RESPONSE:**     Objection. Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant further objects to this Request to the extent it's premature and discovery is on-going. Defendant objects to this Request to the extent it seeks the premature discovery of expert testimony, inconsistent with North Carolina Rules of Civil Procedure. Defendant further objects to this Request to the extent it seeks discovery of expert information not required to be disclosed by the North Carolina Rules of Civil Procedure relating to experts, a Discovery Scheduling Order to be entered in this case, and/or case law interpreting the North Carolina Rules of Civil Procedure relating to expert disclosure. Defendant objects to this Request to the extent it requires information protected by privilege, including without limitation the attorney-client privilege and/or the work-product doctrine. Defendant further objects to this Request to the extent it seeks a legal conclusion.

Subject to and without waiving the above objections, Defendant will produce all reports created for disclosure by Defendant's retained expert(s) when appropriate. Further, Defendant has produced relevant, responsive, non-privileged documents in response to this request

46. All documents assessing preventability of and/or fault for the Subject Incident.

**RESPONSE:**     Objection. Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant further objects to this Request to the extent it's premature and discovery is on-going. Defendant objects to this Request to the extent it seeks the premature discovery of expert testimony, inconsistent with North Carolina Rules of Civil Procedure. Defendant further objects to this Request to the extent it seeks discovery of expert information not required to be disclosed by the North Carolina Rules of Civil Procedure relating to experts, a Discovery Scheduling Order to be entered in this case, and/or case law interpreting the North Carolina Rules of Civil Procedure relating to expert disclosure. Defendant objects to this Request to the extent it requires information protected by privilege, including without limitation the attorney-client privilege and/or the work-product doctrine. Defendant further objects to this Request to the extent it seeks a

37

legal conclusion. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery.

Subject to and without waiving the above objections, Defendant will produce all reports created for disclosure by Defendant's retained expert(s) when appropriate. Further, Defendant has produced relevant, responsive, non-privileged documents in response to this request

47. If the scene of the Subject Incident was mapped (with a total station or other survey equipment) within 14 days of the Subject Incident, please produce a copy of the survey data files and all diagrams produced therefrom.

**RESPONSE:**     Objection. Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant further objects to this Request to the extent it's premature and discovery is on-going. Defendant objects to this Request to the extent it seeks the premature discovery of expert testimony, inconsistent with North Carolina Rules of Civil Procedure. Defendant further objects to this Request to the extent it seeks discovery of expert information not required to be disclosed by the North Carolina Rules of Civil Procedure relating to experts, a Discovery Scheduling Order to be entered in this case, and/or case law interpreting the North Carolina Rules of Civil Procedure relating to expert disclosure. Defendant objects to this Request to the extent it requires information protected by privilege, including without limitation the attorney-client privilege and/or the work-product doctrine. Defendant further objects to this Request to the extent it seeks a legal conclusion.

Subject to and without waiving the above objections, Defendant will produce all reports created for disclosure by Defendant's retained expert(s) when appropriate. Further, Defendant has produced relevant, responsive, non-privileged documents in response to this request.

48. Copies of all photographs, video, computer simulations, and any other documents depicting:

   a. Any vehicle involved in the Subject Incident;
   b. Any person involved in the Subject Incident;

38

c.  The scene of the Subject Incident; and/or

d.  Any evidence (roadway markings or other) relevant to the Subject Incident.

**RESPONSE:**          **Objection. Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant further objects to this Request to the extent it's premature and discovery is on-going. Defendant objects to this Request to the extent it seeks the premature discovery of expert testimony, inconsistent with North Carolina Rules of Civil Procedure. Defendant further objects to this Request to the extent it seeks discovery of expert information not required to be disclosed by the North Carolina Rules of Civil Procedure relating to experts, a Discovery Scheduling Order to be entered in this case, and/or case law interpreting the North Carolina Rules of Civil Procedure relating to expert disclosure. Defendant objects to this Request to the extent it requires information protected by privilege, including without limitation the attorney-client privilege and/or the work-product doctrine. Defendant further objects to this Request to the extent it seeks a legal conclusion. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery.**

**Subject to and without waiving the above objections, Defendant will produce all reports created for disclosure by Defendant's retained expert(s) when appropriate. Further, Defendant has produced relevant, responsive, non-privileged documents in response to this request.**

49. Copies of all reports (you know what this means and it is not vague) relating to the Subject Incident including those prepared by William Lamb and those prepared by anyone working for or on behalf of XPO (except lawyers).

**RESPONSE:**          **Objection. Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant further objects to this Request to the extent it's premature and discovery is on-going. Defendant objects to this Request to the extent it seeks the premature discovery of expert testimony, inconsistent with North Carolina Rules of Civil Procedure. Defendant further objects to this Request to the extent it seeks discovery of expert information**

not required to be disclosed by the North Carolina Rules of Civil Procedure relating to experts, a Discovery Scheduling Order to be entered in this case, and/or case law interpreting the North Carolina Rules of Civil Procedure relating to expert disclosure. Defendant objects to this Request to the extent it requires information protected by privilege, including without limitation the attorney-client privilege and/or the work-product doctrine. Defendant further objects to this Request to the extent it seeks a legal conclusion. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery.

Subject to and without waiving the above objections, Defendant will produce all reports created for disclosure by Defendant's retained expert(s) when appropriate. Further, Defendant has produced relevant, responsive, non-privileged documents in response to this request.

50. A copy of all correspondence and other communications (including e-mail) that you have had with any person other than your lawyer involving the Subject Incident.

    **RESPONSE:**    Objection. Defendant objects to this Request to the extent it seeks the premature discovery of expert testimony, inconsistent with North Carolina Rules of Civil Procedure. Defendant further objects to this Request to the extent it seeks discovery of expert information not required to be disclosed by the North Carolina Rules of Civil Procedure relating to experts, a Discovery Scheduling Order to be entered in this case, and/or case law interpreting the North Carolina Rules of Civil Procedure relating to expert disclosure. Defendant objects to this Request to the extent it requires information protected by privilege, including without limitation the attorney-client privilege and/or the work-product doctrine. Defendant further objects to this Interrogatory to the extent it's premature and discovery is on-going. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

Subject to and without waiving the above objections, Defendant has produced relevant, responsive, non-privileged documents in response to this request.

51. All tapes and transcripts of conversations, interviews, and/or statements of any person who purports to know any facts or circumstances relevant to the issues of liability, comparative fault, causation and/or damages in this case.

**RESPONSE:** Objection. Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant further objects to this Request to the extent it's premature and discovery is on-going. Defendant objects to this Request to the extent it seeks the premature discovery of expert testimony, inconsistent with North Carolina Rules of Civil Procedure. Defendant further objects to this Request to the extent it seeks discovery of expert information not required to be disclosed by the North Carolina Rules of Civil Procedure relating to experts, a Discovery Scheduling Order to be entered in this case, and/or case law interpreting the North Carolina Rules of Civil Procedure relating to expert disclosure. Defendant objects to this Request to the extent it requires information protected by privilege, including without limitation the attorney-client privilege and/or the work-product doctrine. Defendant further objects to this Request to the extent it seeks a legal conclusion. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery.

Subject to and without waiving the above objections, Defendant will produce all reports created for disclosure by Defendant's retained expert(s) when appropriate. Further, Defendant has produced relevant, responsive, non-privileged documents in response to this request.

52. If an Accident Review Board or similar entity reviewed the Subject Incident, produce the following:

   a. A copy of all documents (as defined) and other materials of any kind reviewed by said board or entity;
   b. A copy of all reports and documents (as defined) of any kind generated by said board or entity;
   c. Documents evidencing who was on the board;
   d. Documents evidencing all criteria for review; and
   e. Determination of preventability and all other conclusions reached by said board or entity.

**RESPONSE:** Objection. Defendant objects to this Request to the extent it seeks the premature discovery of expert testimony, inconsistent with North Carolina Rules of Civil Procedure. Defendant further objects to this Request to the extent it seeks discovery of expert information not required to be disclosed by the North

Carolina Rules of Civil Procedure relating to experts, a Discovery Scheduling Order to be entered in this case, and/or case law interpreting the North Carolina Rules of Civil Procedure relating to expert disclosure. Defendant objects to this Request to the extent it requires information protected by privilege, including without limitation the attorney-client privilege and/or the work-product doctrine. Defendant further objects to this Interrogatory to the extent it's premature and discovery is on-going. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

Subject to and without waiving these objections, Defendant has produced relevant, responsive, non-privileged documents in response to this request.

53. Copies of all documents sent to or received from any governmental agency regarding the Subject Incident, the driver involved in the Subject Incident, or any subject that is part of the basis of this lawsuit.

RESPONSE: Objection. Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery. Defendant also objects to the extent that this request seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other privilege.

Subject to and without waiving the above objections, Defendant has produced relevant, responsive, non-privileged documents in response to this request.

54. Copy of all documents and communications of any kind related to any CSA Intervention against your company in the past two years.

RESPONSE: Objection. Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery. Defendant also objects to the extent that this request seeks information protected from

42

disclosure by the attorney-client privilege, work product doctrine, or other privilege.

55. Copies of all XPO policies, procedures, rules, guidelines, directives, manuals, handbooks and instructions that were in effect at the time of the Subject Incident, relating to:

   a. Working for or with trucking company generally (e.g., employee manual or handbook);
   b. Operation of any motor vehicle (e.g., driving manuals or handbooks, and the like);
   c. Operation of a commercial vehicle;
   d. Driving safety;
   e. Defensive driving;
   f. Compliance with federal and state laws and regulations;
   g. Accident investigation;
   h. Accident review boards;
   i. Determination of preventability of accidents;
   j. Hiring, training and supervising drivers; and
   k. Disciplinary actions.

   **RESPONSE:**     **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary. Defendant also objects to the extent that this request seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other privilege.

   Subject to and without waiving these objections, Defendant will supplement its response following the submission of a Protective Order in this action.

56. Copies of each document that William Lamb signed to prove that William Lamb received and/or agreed to be bound by any policies, procedures, rules, guidelines and/or standards of XPO.

   **RESPONSE:**     **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

43

Subject to and without waiving these objections, Defendant will supplement its response following the submission of a Protective Order in this action.

57. To the degree that XPO has any rules, policies, procedures, guidelines, driving manuals, employee handbooks or manuals, or other similar documents that were not provided to William Lamb before the Subject Incident, please produce them now.

**RESPONSE:** **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary. Defendant also objects to the extent that this request seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other privilege.

Subject to and without waiving these objections, Defendant will supplement its response following the submission of a Protective Order in this action.

58. A complete copy of, or in the alternative, access to, each driver safety training film, video, videotape, videocassette, audio cassette, computer program, simulator, driver diagnostic record or test, maintained by your company, or used by XPO, its personnel, agents, or employees during the year of the Subject Incident and three years prior.

**RESPONSE:** **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

Subject to and without waiving these objections, Defendant will supplement its response following the submission of a Protective Order in this action.

59. Copies of all industry and/or other guidelines and/or practices that you rely upon to support your contentions in this case.

**RESPONSE:** **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense.

44

Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

Subject to and without waiving these objections, Defendant will supplement its response following the submission of a Protective Order in this action.

60. Copy of documents showing the hierarchy of managerial positions at XPO and who occupied such positions as of the time of the subject incident and presently.

**RESPONSE:** **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

Subject to and without waiving these objections, Defendant will supplement its response following the submission of a Protective Order in this action.

61. A copy of each document (including articles and presentations) prepared and/or presented by any XPO representative relating to the safe operation of a commercial motor vehicle and/or the safe operation of a trucking company in the past five years.

**RESPONSE:** **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary. Defendant also objects to the extent that this request seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other privilege.

62. All company newsletters distributed during the time period beginning two years before the Subject Incident and present.

**RESPONSE:** **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

45

63. A copy of all lease and trip lease contracts applicable to William Lamb and/or any vehicle involved in the Subject Incident.

    **RESPONSE:**    **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

64. Copies of any contract under which your company was operating the truck in question at the time of the Subject Incident.

    **RESPONSE:**    **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

65. A copy of XPO's accident register maintained as required by 49 CFR § 390.35.

    **RESPONSE:**    **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

66. Transcripts or recordings of all depositions of corporate designees for XPO given in the past five years in cases where it was alleged that a driver working for XPO caused injury or death to another person.

    **RESPONSE:**    **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery. Defendant also objects to the extent that this request seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other privilege.

67. Copies of all documents putting any third party on notice of a claim arising from the Subject Incident.

46

**RESPONSE:** Objection. Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it requires information protected by privilege, including without limitation the attorney-client privilege and/or the work-product doctrine. Defendant further objects to this Interrogatory to the extent it's premature and discovery is on-going.

Subject to and without waiving these objections, Defendant has produced relevant, responsive, non-privileged documents in response to this request.

68. All correspondence and other communication of any kind between you and any other Defendant to this Action.

**RESPONSE:** Objection. Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense.

Subject to and without waiving the above objections, Defendant references and incorporates the documents produced alongside these responses.

69. With respect to each expert witness who may provide testimony at the trial of this case, provide:

    a. A copy of all documents (as that term is defined above) and items of any kind produced <u>to</u> said expert;
    b. A copy of all documents (as that term is defined above) and items of any kind generated or produced <u>by</u> said expert;
    c. A copy of the entire file of said expert;
    d. A current résumé or curriculum vitae for said expert; and
    e. All billing records and work logs for said expert.

**RESPONSE:** Objection. Defendant objects to this Request to the extent it seeks the premature discovery of expert testimony, inconsistent with North Carolina Rules of Civil Procedure. Defendant further objects to this Request to the extent it seeks discovery of expert information not required to be disclosed by the North Carolina Rules of Civil Procedure relating to experts, a Discovery Scheduling Order to be entered in this case, and/or case law interpreting the North Carolina Rules of Civil Procedure relating to expert disclosure. Defendant

47

objects to this Request to the extent it requires information protected by privilege, including without limitation the attorney-client privilege and/or the work-product doctrine. Defendant further objects to this Interrogatory to the extent it's premature and discovery is on-going. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

Subject to and without waiving the above objections, Defendant will produce the above-requested information when appropriate.

70. A copy of any and all documents and other materials which support any contention that the Subject Incident was the fault of anyone other than the Defendants.

**RESPONSE:** **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary. Defendant also objects to the extent that this request seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other privilege.

Subject to and without waiving these objections, Defendant incorporates and references the documents produced alongside these responses.

71. Copies of all diagrams, graphs, illustrations, photographs, charts, pictures, models, blow-ups, or any other document or thing, including electronically created charts, animations, or data that you intend to utilize as an exhibit, demonstrative exhibit, or aid in the trial of this case not previously supplied.

**RESPONSE:** **Objection.** Defendant objects to this Request to the extent it seeks the premature discovery of expert testimony, inconsistent with North Carolina Rules of Civil Procedure. Defendant further objects to this Request to the extent it seeks discovery of expert information not required to be disclosed by the North Carolina Rules of Civil Procedure relating to experts, a Discovery Scheduling Order to be entered in this case, and/or case law interpreting the North Carolina Rules of Civil Procedure relating to expert disclosure. Defendant objects to this Request to the extent it requires information protected by privilege, including without limitation the attorney-client privilege and/or the work-product doctrine. Defendant further objects to this Interrogatory to the extent it's premature and

48

discovery is on-going. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

Subject to and without waiving the above objections, Defendant will produce the above-requested information when appropriate. By way of further response, Defendant has produced relevant, responsive, non-privileged documents in response to this request.

72. Produce each document or thing that you contend is evidence, proof, or support of your claims on any issue of negligence or causation as to the Subject Incident, including but not limited to admissions of fault, engineering analysis, scientific tests, and official or unofficial reports.

RESPONSE: Objection. Defendant objects to this Request to the extent it seeks the premature discovery of expert testimony, inconsistent with North Carolina Rules of Civil Procedure. Defendant further objects to this Request to the extent it seeks discovery of expert information not required to be disclosed by the North Carolina Rules of Civil Procedure relating to experts, a Discovery Scheduling Order to be entered in this case, and/or case law interpreting the North Carolina Rules of Civil Procedure relating to expert disclosure. Defendant objects to this Request to the extent it requires information protected by privilege, including without limitation the attorney-client privilege and/or the work-product doctrine. Defendant further objects to this Interrogatory to the extent it's premature and discovery is on-going. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

Subject to and without waiving the above objections, Defendant will produce the above-requested information when appropriate. By way of further response, Defendant has produced relevant, responsive, non-privileged documents in response to this request.

73. Produce each document or thing that you contend evidences or supports your denial of any of Plaintiff's Requests for Admissions.

RESPONSE: Objection. Defendant objects to this Request to the extent it seeks the premature discovery of expert testimony, inconsistent with North Carolina Rules of Civil Procedure. Defendant further objects to this Request to the extent it seeks discovery of expert information not required to be disclosed by the North Carolina Rules of Civil Procedure relating to experts, a Discovery Scheduling Order to be entered in this case, and/or case law interpreting the North Carolina

49

Rules of Civil Procedure relating to expert disclosure. Defendant objects to this Request to the extent it requires information protected by privilege, including without limitation the attorney-client privilege and/or the work-product doctrine. Defendant further objects to this Interrogatory to the extent it's premature and discovery is on-going. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

Subject to and without waiving the above objections, Defendant incorporates and references the documents produced alongside these responses. Further, Defendant will provide a supplemental production with available documents, if any, and/or when appropriate.

74. If any surveillance has been undertaken by or on behalf of XPO, produce a copy of all reports, photographs, video and anything else generated through that investigation.

**RESPONSE:** **Objection. Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks the premature discovery of expert testimony, inconsistent with North Carolina Rules of Civil Procedure. Defendant further objects to this Request to the extent it seeks discovery of expert information not required to be disclosed by the North Carolina Rules of Civil Procedure relating to experts, a Discovery Scheduling Order to be entered in this case, and/or case law interpreting the North Carolina Rules of Civil Procedure relating to expert disclosure. Defendant objects to this Request to the extent it requires information protected by privilege, including without limitation the attorney-client privilege and/or the work-product doctrine. Defendant further objects to this Interrogatory to the extent it's premature and discovery is on-going.**

**Subject to and without waiving the above objection, Defendant will produce all reports created for disclosure by Defendant's retained expert(s) when appropriate. By way of further response, Defendant has produced relevant, responsive, non-privileged documents in response to this request.**

50

## REQUESTS FOR ADMISSION

1. Admit that the DOT number for XPO is 241829.

   **RESPONSE: Admitted**

2. Admit that the MC ICC number for XPO is 165377.

   **RESPONSE: Admitted**

3. Admit that Decedent Mark Smith is a member of the public.

   **RESPONSE: Denied**

4. Admit that XPO was involved in intrastate transport at the time of the Subject Incident.

   **RESPONSE: Admitted**

5. Admit that XPO was involved in interstate transport at the time of the Subject Incident.

   **RESPONSE: Admitted**

6. Admit that XPO is a "motor carrier" as defined by the Federal Motor Carrier Safety Regulations.

   **RESPONSE: Objection.** Defendant objects to this Request for Admission to the extent it calls for a legal conclusion. Subject to and without waiving these objections, admitted.

7. Admit that XPO was a motor carrier as defined by the Federal Motor Carrier Safety Regulations at the time of the Subject Incident.

   **RESPONSE: Objection.** Defendant objects to this Request for Admission to the extent it calls for a legal conclusion. Subject to and without waiving these objections, admitted.

8. Admit that on October 11, 2023, XPO was the owner of a tractor involved in the Subject Incident.

   **RESPONSE: Admitted**

9. Admit that on October 11, 2023, XPO was the owner of a trailer involved in the Subject Incident.

   **RESPONSE: Admitted**

51

10. Admit that the tractor-trailer, VIN 3AKBGADV9GSHB2477, was involved in the Subject Incident.

**RESPONSE: Admitted**

11. Admit that on October 11, 2023, William Lamb was an agent of XPO.

**RESPONSE: Objection.** Defendant objects to this Request for Admission to the extent it calls for a legal conclusion. Subject to and without waiving these objections and to the extent any response is deemed required, Defendant admits that William Lamb worked for XPO on October 11, 2023 as a commercial driver.

12. Admit that on October 11, 2023, William Lamb was an employee of XPO.

**RESPONSE: Admitted**

13. Admit that at the time of the Subject Incident, William Lamb was acting within the course and scope of his employment or agency with XPO.

**RESPONSE: Objection.** Defendant objects to this Request for Admission to the extent it calls for a legal conclusion. Subject to and without waiving these objections and to the extent any response is deemed required, Defendant admits that William Lamb worked for XPO on October 11, 2023 as a commercial driver.

14. Admit that on October 11, 2023, William Lamb was operating the tractor-trailer owned by XPO.

**RESPONSE: Admitted**

15. Admit that on October 11, 2023, William Lamb was operating the tractor-trailer with the permission of XPO.

**RESPONSE: Admitted**

16. Admit that on October 11, 2023, William Lamb was operating the tractor-trailer with the knowledge of XPO.

**RESPONSE: Admitted**

17. Admit that on October 11, 2023, William Lamb was operating the tractor-trailer as trained by XPO.

**RESPONSE:** **Admitted**

18. Admit that on October 11, 2023, William Lamb was not operating the tractor-trailer as trained by XPO.

    **RESPONSE:** **Denied**

19. Admit that William Lamb is fully responsible for causing the Subject Incident.

    **RESPONSE:** **Denied**

20. Admit that William Lamb was a professional driver on the date and time of the Subject Incident.

    **RESPONSE:** **Admitted**

21. Admit that XPO is properly named in the Complaint.

    **RESPONSE:** **Admitted**

22. Admit that venue is proper in Robeson County Superior Court.

    **RESPONSE:** **Objection.** Defendant objects to this Request for Admission to the extent it calls for a legal conclusion. Subject to and without waiving these objections, admitted.

23. Admit that jurisdiction is proper in this Court.

    **RESPONSE:** **Objection.** Defendant objects to this Request for Admission to the extent it calls for a legal conclusion. Subject to and without waiving these objections, admitted.

24. Admit that service was proper upon XPO.

    **RESPONSE:** **Admitted**

25. Admit that the person answering these questions has authority from XPO to do so.

    **RESPONSE:** **Admitted**

This the 3rd day of September, 2024.

Gordon Rees Scully Mansukhani, LLP

By: _____

Megan M. Stacy
North Carolina Bar No. 47108
Le'Ron A. Byrd
North Carolina Bar No. 55732
150 Fayetteville Street, Suite 1120
Raleigh, NC 27602
Phone: 919-787-4555
Fax: 919-741-5840
E-mail: mstacy@grsm.com
E-mail: lbyrd@grsm.com
*Counsel for Defendant XPO Logistics
Freight, Inc. and William Lamb*

## CERTIFICATE OF SERVICE

This is to certify that I caused the foregoing **Supplemental Responses to Plaintiff's First Set of Discovery Requests** served upon all counsel of record by email pursuant to the North Carolina Rules of Civil Procedure addressed as follows:

J. William Owen
Musselwhite, Musselwhite, Branch & Grantham, P.A.
P.O. Box 1448
Lumberton, NC 28359
wowen@mmbglaw.com
*Counsel for Plaintiff Cindy Smith,*
*Administratrix of the Estate of Mark K. Smith*

Jennifer Welch
Cranfill Sumner
P.O. Box 27808
Raleigh, NC 27611-7808
jwelch@cshlaw.com
*Counsel for Counterclaim-Defendant Cindy Smith,*
*Administratrix of the Estate of Mark K. Smith*

This the 3rd day of September, 2024.

**Gordon Rees Scully Mansukhani, LLP**

By: _____

Le'Ron A. Byrd

55

| | |
|---|---|
| **From:** | Will Owen |
| **Sent:** | Wednesday, September 04, 2024 9:39 AM |
| **To:** | Brandi Davis; Le'Ron Byrd |
| **Cc:** | Jennifer A. Welch; Stacy Frazier; Megan Stacy |
| **Subject:** | RE: Estate of Smith v. Lamb, et al. | Defendants' Responses to Plaintiff's First Set of Discovery Requests |

Megan & Le'Ron:

Thank you for your correspondence and supplemental discovery. I am still in the process of reviewing your supplementation but wanted to get back with you in an expeditious manner.

At first glance, I was surprised to see that the following were not produced:

(1) Insurance policy for XPO Logistics Freight, Inc. – given that we served our discovery back on June 5, 2024, I find it hard to understand why this still has not been produced. We will need a copy of the <u>entire tower</u> of coverage as well. I can imagine that XPO has multiple layers of coverage. This is not confidential or proprietary and is specifically discoverable (see Rule 26(b)(2)).

(2) XPO Training Materials and Employee Handbook – I noticed that you produced the redacted personnel file for William Lamb but no training materials or employee handbook. These items are highly relevant and are discoverable.

(3) Shipping documents – at minimum, we need the Bill of Lading and Manifest. Again, these are very basic shipping documents and are not confidential or proprietary.

I will send a more detailed deficiency letter once I review the responses and production from yesterday and any supplementation that you plan to make on September 6th per your letter. Your correspondence yesterday seems to suggest that we are seeking items that are wholly unrelated to the subject litigation. We strongly disagree. This is a very serious death case and XPO is a large and sophisticated motor carrier with 9,955 power units and 12,806 drivers. As I am sure you are aware, items that pre-date the subject collision can be highly relevant (i.e., logs, lytx data, samsara data, prior accidents, loading/unloading, etc.). All of our highly specific discovery request were reasonable calculated to lead to potentially relevant and discoverable information and we expect substantive responses to each request.

I am likewise surprised that XPO cannot seem to formulate a response to our Request for Monetary Relief Sought with respect to the counterclaim of XPO against my client's estate. The XPO tractor was damaged in October 2023— why the delay? I must again emphasize that this matter will likely appear on the next administrative calendar in Robeson County, and we plan to set it for trial in Spring 2025, hence our urgency and persistence. I look forward to continuing to work with both of you on this exceptionally tragic case.

Will

**J. William Owen**
Musselwhite, Musselwhite, Branch & Grantham, P.A.
T: +1 910 738 5277 | F: +1 910 738 3678



PLAINTIFF'S EXHIBIT
9
exhibitsticker.com

**From:** Brandi Davis <bldavis@grsm.com>
**Sent:** Tuesday, September 03, 2024 4:24 PM
**To:** Will Owen <wowen@mmbglaw.com>; Le'Ron Byrd <lbyrd@grsm.com>

1

J.W. Musselwhite
W. Edward Musselwhite, Jr.
David F. Branch, Jr.

Norris Musselwhite Grantham
J. William Owen

# MUSSELWHITE | MUSSELWHITE
## BRANCH & GRANTHAM

### ATTORNEYS AT LAW

William E. Musselwhite Sr.
(1930-1987)
Fred L. Musselwhite
(1939-2017)

October 10, 2024

<u>VIA EMAIL AND US MAIL</u>

Megan Stacy
Le'Ron Byrd
Gordon Rees Scully Mansukhani
150 Fayetteville Street, Suite 1120
Raleigh, NC 27601

**Re:**   **Cindy Soles Smith, Administratrix of the Estate of Mark K. Smith
v. William Bratty Lamb and XPO Logistics Freight, Inc.
24 CVS 468 (Robeson County)**

Dear Megan & Le'Ron:

I have reviewed XPO's supplemental discovery responses dated September 3, 2024.

As you know, Plaintiff served 74 specific Request for Production of Documents on XPO on June 5, 2024. In your supplemental responses, <u>XPO objected 74 times</u> – to every single Request for Production served by Plaintiff. It is noteworthy that nearly all of the objections are identical boilerplate objections. In the same set of discovery, Plaintiff served 38 Interrogatories on XPO. In the supplemental responses, <u>XPO objected 38 times</u> – to every single interrogatory served by Plaintiff. Likewise, nearly all of these objections are identical boilerplate objections.

As you know, Courts routinely grant motions to compel and even sanctions where a party responding to discovery utilizes general, boilerplate objections. Courts in this state have uniformly expressed disfavor for general boilerplate objections and these objections do not comply with the Rules of Civil Procedure. As you will recall from our previous correspondence, the discovery responses of XPO were past-due when they were served beyond the time set forth in the Order issued by the Clerk and without any extensions from our office. It remains our position that as a matter of law, all of XPO's objections to the past-due written discovery were thereby waived.

Notwithstanding the waiver issue, in an effort to move this matter forward – I have summarized our position regarding some of the more serious written discovery deficiencies below:


PLAINTIFF'S
EXHIBIT
10

o  **RFP No. 2:** Plaintiff requested a copy of the document retention policies for XPO. XPO indicated that these policies would be supplemented. We have not received responsive documents.

o  **RFP No. 3 and No. 4:** Plaintiff requested copies of each insurance policy and the corresponding declaration page for *each policy* that provides coverage for the Subject Incident. XPO provided one policy from Chubb which appears to insure XPO Logistics, Inc, up to $10,000,000. As you know, we sued XPO Logistics Freight, Inc. and their employee-driver (Lamb). The policy that you provided appears to only insure XPO Logistics, Inc. – not XPO Logistics Freight, Inc. We need declaration pages for the entire tower of coverage for XPO Logistics Freight, Inc. It is my understanding that the tower is well into the 9-figure range. We have not received these highly relevant and discoverable insurance documents, please supplement your response accordingly.

o  **RFP No. 6:** Plaintiff requested the Driver Qualification File, Driver Investigation File and Driver History File that is required under federal law. Plaintiff has not received responsive documents to this request.

o  **RFP No. 33:** Plaintiff seeks email communications between Lamb and XPO for the 90 days prior to the subject collision to present. Plaintiff has not received any responsive documents. If documents are being withheld pursuant to privilege, please provide a privilege log.

o  **RFP No. 34:** Plaintiff seeks communications between Lamb and XPO that were transmitted through any system on-board the tractor and trailer involved in the subject collision for 30-days before the Subject Incident and ending 7 days after the Subject incident. Plaintiff has not received responsive documents. To the extent that said communications are confidential or proprietary, we now have a protective order in place and we ask that these documents be produced.

o  **RFP No. 35:** Plaintiff seeks all on-board audio and video from the on-board monitoring devices. We now know that XPO uses the telematics program provided through Lytx to monitor, train and "coach" its employee-drivers. We need all of the Lytx data from the subject tractor and all Lytx data that in any way relates to Defendant Lamb.

o  **RFP No. 40:** Plaintiff seeks Driver Vehicle Inspection Reports (DVIR) from the period of 6-months before the Subject Incident until one week following the Subject Incident for the tractor and trailer involved in this collision. XPO objected to this request as overly broad – Plaintiff is only seeking DVIR's for the subject tractor and trailer involved in this collision. This is not overly broad or unduly burdensome.

o  **RFP No, 42:** Plaintiff seeks basic shipping documents from XPO, including the bill of lading, manifest and dispatch documents related to

the load that Defendant Lamb was transporting at the time of the subject collision. No documents have been produced. These are clearly relevant and discoverable.

o **RFP No. 46**: Plaintiff seeks documents related to the Preventability Reports/Analysis prepared by XPO following the subject collision. Plaintiff has not received any responsive documents relating to the preventability analysis that was completed by XPO in the ordinary course of business. Please supplement this response accordingly.

o **RFP No. 55-59**: These requests seek all training materials provided to XPO drivers. While you produce the purported "employee handbook" for XPO –we need all *training materials* that were provided to Defendant Lamb or that should have been provided to Defendant Lamb during his employment with XPO.

o **RFP No. 60**: Plaintiff seeks *documents* – not counsel-created summaries – of the hierarchy at XPO at the time of the subject collision and presently.

o **RFP No. 61**: Plaintiff seeks documents that were prepared and/or presented by XPO representatives concerning the *safe operation of commercial vehicles* during the last 5 years. Plaintiff has not received any documents responsive to this request. This request is not overly broad as it relates specifically to safety.

o **RFP No. 63-64**: Plaintiff seeks any contracts or agreements applicable to Defendant Lamb or the subject tractor and trailer. Defendant objected to this request. If documents are being withheld pursuant to privilege, please produce a privilege log.

o **RFP No. 65**: Plaintiff seeks XPO's "Accident Register" which is required by federal law. Plaintiff has not received any responsive documents to this specific request. It is not overly broad or unduly burdensome to produce this highly relevant information.

o **RFP No. 66**: Plaintiff seeks deposition transcripts from XPO corporate designees concerning accidents where it was alleged that XPO's employee caused an injury or death to another person during the last 5 years. Plaintiff has not received any responsive documents. This is not overly broad or burdensome. If documents are being withheld pursuant to privilege, please produce a privilege log.

o Interrogatory No. 3: Plaintiff seeks information concerning claims and lawsuits filed against XPO wherein a person was injured or killed as a result of XPO drivers. No responsive documents were produced. This is highly relevant information that is discoverable. XPO alleges that this information is public. Keep in mind that Plaintiff seeks pre-suit *claim*

information that is not public. Please supplement this response accordingly.

o **Interrogatory No. 5:** Plaintiff seeks actual written responses to (a)-(g) – none were provided. Please supplement with written responses to each subsection. These questions are not overbroad or unduly burdensome to answer.

o **Interrogatory No. 6:** Plaintiff seeks actual written responses to (a)-(e) –none were provided. Please supplement with written responses to each subsection. These questions are not overbroad or unduly burdensome to answer.

o **Interrogatory No. 7:** Plaintiff seeks actual written responses to (a)-(e) –none were provided. Please supplement with written responses to each subsection. These questions are not overbroad or unduly burdensome to answer.

o **Interrogatory No. 12:** Plaintiff seeks actual written responses to (b)-(d). Please supplement with written responses to each subsection. These questions are not overbroad. These questions are not overbroad or unduly burdensome to answer.

o **Interrogatory No. 14:** Plaintiff seeks actual written responses to the question asked. XPO only provided a direction to documents produced rather than written responses as required by the Rules. These questions are not overbroad or unduly burdensome to answer.

o **Interrogatory No. 15:** Plaintiff seeks actual written responses to the question asked. XPO only provided a direction to files produced rather than written responses as required by the Rules. These questions are not overbroad or unduly burdensome to answer.

o **Interrogatory No. 20:** Please produce the "internal investigation documents" that XPO references in this response. If documents are being withheld pursuant to privilege, please product a privilege log.

o **Interrogatory No. 22:** Plaintiff seeks actual written responses to the question asked. XPO only provided a direction to documents produced rather than written responses as required by the Rules. These questions are not overbroad or unduly burdensome to answer.

o **Interrogatory No. 26:** Please produce the "internal investigation documents" that XPO references in this response. If documents are being withheld pursuant to privilege, please product a privilege log.

o **Interrogatory No. 32:** Please produce the "internal investigation documents" that XPO references in this response. If documents are being withheld pursuant to privilege, please product a privilege log.

- o **Interrogatory No. 36:** Plaintiff seeks actual written responses to the question asked. XPO only provided a direction to documents that were allegedly produced rather than written responses as required by the Rules. These questions are not overbroad or unduly burdensome to answer. Plaintiff is not seeking information concerning experts hired by XPO. This Interrogatory ask for written answers concerning XPO's accident review board and preventability determination, which are conducted in the ordinary course of business.

- o **Interrogatory No. 38:** Plaintiff seeks actual written answers to the question posed regarding the identity of insurance carriers for XPO, policy numbers, limits of coverages and names of all insureds. Please supplement this response as this information is clearly and specifically discoverable under the Rules.

In addition to the above, please produce the following:

- o Unredacted version of XPO-000058;
- o XPO-000091 does not appear to relate to this case (wrong employee);
- o Please provide a legible copy of XPO- 000109.

Lastly, we have not received any meaningful response to our Request for Monetary Relief Sought. I understand that XPO has sued my client for damages to the trailer owned by XPO. The computation for the exact monetary relief sought should not be difficult to ascertain. Please supplement the foregoing responses in the next fifteen (15) business days. Once again, please consider this correspondence as Plaintiff's good faith attempt under Rule 37 to resolve these discovery deficiencies without the need for the Court's intervention. I look forward to continuing to work with you on this incredibly tragic matter.

Sincerely yours,

MUSSELWHITE, MUSSELWHITE, BRANCH & GRANTHAM

J. William Owen

Cc: Jennfier Welch (via email only)

J.W. Musselwhite
W. Edward Musselwhite, Jr.
David F. Branch, Jr.

Norris Musselwhite Grantham
J. William Owen

William E. Musselwhite Sr.
(1930-1987)
Fred L. Musselwhite
(1939-2017)

# MUSSELWHITE | MUSSELWHITE
# BRANCH & GRANTHAM

### ATTORNEYS AT LAW

October 22, 2024

<u>VIA EMAIL AND US MAIL</u>

Megan Stacy
Le'Ron Byrd
Gordon Rees Scully Mansukhani
150 Fayetteville Street, Suite 1120
Raleigh, NC 27601

**Re:** **Cindy Soles Smith, Administratrix of the Estate of Mark K. Smith**
**v. William Bratty Lamb and XPO Logistics Freight, Inc.**
**24 CVS 468 (Robeson County)**

Dear Megan & Le'Ron:

Enclosed please find Plaintiff's Second Request for Production of Documents to Defendant XPO Logistics Freight, Inc.

Sincerely yours,

MUSSELWHITE, MUSSELWHITE, BRANCH & GRANTHAM

J. William Owen

Cc: Jennfier Welch (via email only)



**PLAINTIFF'S EXHIBIT**
_____ 11

606 North Elm Street        Post Office Box 1448        Lumberton, NC 28359-1448
Telephone: (910) 738-5277        Fax: (910) 738-3678

STATE OF NORTH CAROLINA

COUNTY OF ROBESON

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
24 CVS 468

CINDY SOLES SMITH, Administratrix of the )
ESTATE OF MARK KEANNAN SMITH )
                                )
             Plaintiff, )
                                  )
v. )
                                    )
WILLIAM BRATTY LAMB )
                                    )
             Defendant )
                                  )
and )
                                  )
XPO LOGISTICS FREIGHT, INC. )
                                  )
             Defendant/Counterclaim )
             Plaintiff )

## PLAINTIFF'S SECOND REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT XPO LOGISTICS FREIGHT, INC.

Pursuant to Rules 26 and 34 of the North Carolina Rules of Civil Procedure, you are hereby required to answer under oath within thirty (30) days the following requests for discovery. Each of the Request for Production is continuing so as to require you to file supplemental answers if you obtain further or different information between the time your answers are served and the time of the trial. These Request for Production request documents and data which is known by you or is available to you, or is in the possession of your representatives, servants, or agents, insurance carriers and their representatives, including your attorney and his investigators, unless such information is clearly privileged.

For each document responsive to this request that is withheld under claim of privilege or work-product immunity, provide a statement under oath by a person having knowledge setting forth as to each document:

    1.    The name and title of the author;
    2.    The name and title of each person to whom the document was addressed;
    3.    The name and title of each person to whom a copy of the document was sent;
    4.    The date of the document;
    5.    The number of pages of the document;
    6.    A brief description of the nature and subject matter of the document;
    7.    The nature of the claimed privilege or immunity;

8. The category or categories of the request to which the document is responsive; and

9. The exact location of the original and each copy as of the date and receipt of this request, along with the name and address of the custodian of said originals and copies.

If you are aware of any document otherwise responsive to these requests, which document is no longer in your custody or control, identify the name and title of the author, name and title of the addressee, date of the document, subject matter of the document or documents, the last date on which the document was in your control, the person or entity, if any, now in control of the document, the reasons for your disposition or release of the document, all persons who have knowledge of the circumstances surrounding its disposition and state what knowledge each person has.

Pursuant to Rule 34 of the North Carolina Rules of Civil Procedure, the plaintiff hereby requests that the defendant produce the originals of all documents herein requested and permit the plaintiff to inspect and copy the same, at the law office of Musselwhite, Musselwhite, Branch & Grantham, P.A. (606 N. Elm Street Lumberton, NC 28358) on the thirtieth (30) day following service of these Interrogatories, Requests for Production of Documents, and Requests for Admissions. In the alternative, the defendant may comply with these requests by attaching legible copies of all such documents and clearly designating the request to which each document or group of documents pertains.

In the event the defendant should fail to answer or should provide evasive or incomplete answers to any of the discovery requests set forth below, or in the event the defendant should fail or refuse to produce any of the documents requested herein, the plaintiff puts the defendant on notice that the plaintiff will move the Court, pursuant to Rule 37(a)(4) of the North Carolina Rules of Civil Procedure, for the reasonable expenses, including attorney's fees, incurred by the plaintiff to move the Court to compel the defendant to provide answers or to provide adequate or complete answers to all such discovery requests and to produce all such documents requested herein.

For the purposes of these discovery requests, the meaning of the word "document" shall include, but not be limited to, writings, drawings, graphs, charts, photographs, reports, phonograph records, computer records, digital recordings, and other data compilations from which information can be obtained or translated, if necessary, through detection devices or other equipment, into usable form.

You are required and have a lawful duty to supplement, update and amend your responses and answers to these discovery requests in the following instances:

1. Any requests or questions directly addressed to:
   a. The identity and location of persons having knowledge of discoverable matter; and

2

    b.      The identity of each person expected to be called as an expert witness at the trial, the subject matter on which he is to testify and the substance of his testimony.

2.    Any responses or answers to questions or requests if you obtain information upon the basis of which:

    a.      You know or discover that the prior response was incorrect or incomplete when made; or

    b.      You know that the response, though correct when made is no longer true and the circumstances are such that a failure to amend the response is in substance a knowing concealment.

## DEFINITIONS

Unless otherwise indicated, the following definitions shall be applicable to these Requests for Production of Documents to Defendant XPO Logistics Freight, Inc.:

1. The term **"Document"** as used herein shall be given a very broad definition to include every type of paper, writing, data, record, graphic, drawing, photograph, audio recording and video recording. The term includes material in all forms, including printed, written, recorded, or other. The term includes all files, records and data contained in any computer system, computer component and/or computer storage (e.g., hard drive, disc, magnetic tape, backup system, etc.). This term includes, but is not limited to, correspondence, reports, meeting minutes, memoranda, stenographic or handwritten notes, diaries, notebooks, account books, orders, invoices, statements, bills, checks, vouchers, purchase orders, studies, surveys, charts, maps, analyses, publications, books, pamphlets, periodicals, catalogues, brochures, schedules, circulars, bulletins, notices, instructions, manuals, journals, e-mails, e-mail attachments, data sheets, work sheets, statistical compilations, data processing cards, microfilms, computer records (including printouts, disks or other magnetic storage media), tapes, photographs (positive or negative prints), drawings, films, videotapes, hard drive recordings, pictures, and voice recordings. Plaintiff expressly intends for the term "Document" to include every copy of such writing, etc. when such copy contains any commentary or notation whatsoever that does not appear on the original and any attachments or exhibits to the requested document or any other documents referred to in the requested document or incorporated by reference.

2. **"Person"** means any natural person, corporation, partnership, proprietorship, association, organization, group of persons, or any governmental body or subdivision thereof.

3. **"Identify"** with respect to any **"person"** or any reference to stating the **"identity"** of any **"person"** means to provide the name, home address, telephone number, business name, business address, and business telephone number of such person, and a description of each such person's connection with the events

3

in question.

4. **"Identify"** with respect to any **"document"** or any reference to stating the "identification" of any **"document"** means to provide the title and date of each such document, the name and address of the party or parties responsible for the preparation of each such document, the name and address of the party who requested or required the preparation of the document or on whose behalf it was prepared, the name and address of the recipient or recipients of each such document, and the names and addresses of any and all persons who have custody or control of each such document, or copies thereof.

5. **"Subject Incident"** means the collision between William Bratty Lamb, driver for XPO Logistics Freight, Inc and Mark K. Smith, which occurred on October 11, 2023 in Robeson County, North Carolina.

6. **"You," "Your,"** or **"XPO"** means Defendant XPO Logistics Freight, Inc.

7. **"William Lamb"** means Defendant William Bratty Lamb.

8. **"Similar"** shall have the meaning given in the American Heritage Dictionary, which is "showing some resemblance; related in appearance or nature; alike but not identical." As used here, the word "similar" shall not be limited as if modified by the word "substantially" and shall not mean "the same". If you limit the information provided because you use another interpretation of the word "similar," please state the interpretation you are using and reveal the nature of the information withheld.

9. The terms **"and"** as well as **"or"** shall be each construed conjunctively and disjunctively as necessary to bring within the scope of each request for documents all information and documents that might otherwise be construed to be outside its scope. The term **"and/or"** shall be construed likewise.

10. Whenever necessary to bring within the scope of a request for production of documents any information or document that might otherwise be construed to be outside its scope: (i) the use of a verb in any tense shall be construed as the use of the verb in all other tenses; (ii) the use of the singular shall be construed as the use of the plural and vice versa; and (iii) **"any"** includes "all," and **"all"** includes "any."

11. **"Telematics Data"** or **"Telematics Software"** as that term is used herein includes but is not limited to all underlying data relating to: stationary and in motion updates, all notifications and alerts, trip reports, maintenance notifications, hours of service records and notifications mapping and navigating records, critical event notifications, video, audio, safety scorecards and associated data, collision notification, in-vehicle driver coaching, training records, re-training records, targeted training, documentation that self-coaching was completed, and driver

4

behavior notifications (including but not limited to erratic steering pattern detection, signs of fatigue, acceleration, braking, cornering, idling, close following, U-turns, speeding, cell phone use, risky behaviors, distracted driving and lane departures).

## SECOND REQUEST FOR PRODUCTION TO DEFENDANT XPO LOGISTICS FREIGHT, INC.

PURSUANT to Rule 34 of the Rules of Civil Procedure, you are requested to produce for copying and inspection those items listed below. These items are to be produced at the offices of Musselwhite, Musselwhite, Branch & Grantham 606 N. Elm Street Lumberton, NC 28358 Monday through Friday within the time limit provided by the Rules of Civil Procedure. The items to be produced include:

1. All telematics data (specifically including but not limited to: videos, screenshots, coaching sessions, behaviors coached, event coached, comments, event notes and session notes) for William Lamb from date of hire (09-09-20) through present.

### RESPONSE:

2. Any documents that reflect the identity of employees of XPO Logistics Freight Inc. (or any third parties) who regularly monitored or reviewed telematics data (including but not limited to Lytx software) for employee William Lamb from the date of hire (09-09-20) through present.

### RESPONSE:

3. Produce copies of all communications and transmissions between William Lamb and any entity transmitted through any system on-board the tractor and trailer involved in the Subject Incident for the period of 30-days before the Subject Incident and ending 7-days after the Subject Incident. This includes any and all satellite or cellular systems or telematics systems, regardless of manufacturer, and includes without limitation, all electronic on-board recorders (EOBRs) and systems such as those made available by Geotab, Teletrac Navman, Verizon Connect, Samsara, Fleet Complete, Motive, GPS Insight, ORBCOMM or some other system or the like.

### RESPONSE:

4. With respect to any telematics software being used by XPO Logistics Freight, Inc, produce the log of all safety alerts received in the safety inbox or other location designated for William Lamb for 6-months prior to the Subject Incident through present.

### RESPONSE:

5

5. With respect to any telematics software being used by XPO Logistics Freight, Inc., produce any and all electronic log violations or notifications for William Lamb for 6-months prior to the Subject Incident.

   **RESPONSE:**

6. With respect to any telematics software being used by XPO Logistics Freight, Inc., produce a printout of the Safety Score and the configuration page for William Lamb for 3-months prior to the Subject Incident through present.

   **RESPONSE:**

7. With respect to any telematics software being used by XPO Logistics Freight, Inc., produce a printout of the speeding settings page for the transportation management system used by XPO Logistics Freight, Inc. on the date of the Subject Incident.

   **RESPONSE:**

8. With respect to any telematics software being used by XPO Logistics Freight, Inc., produce a printout of the alert configuration page for the date of the Subject Incident.

   **RESPONSE:**

9. With respect to any telematics software being used by XPO Logistics Freight, Inc, produce all notifications in the inbox (or other similar location) for William Lamb for 6-months prior to the Subject Incident through present.

   **RESPONSE:**

10. With respect to any telematics software being used by XPO Logistics Freight, Inc, produce the safety setting in the transportation management system utilized for William Lamb's individual vehicle/person on the date of Subject Incident.

    **RESPONSE:**

6

11. Produce the safety setting in the transportation management system utilized for fleet wide vehicles on the date of the Subject Incident (these include: harsh event sensitivity, forward collision warning, distracted driving detection, tailgating detection, following distance, audio recording, camera height calibration, in-cab voice coaching for policy violations, in-cab coaching for driver speeding and in-cab nudges or alerts).

**RESPONSE:**

12. Produce the electronics audit log for William Lamb's electronic logging device for 6-months before the Subject Incident.

**RESPONSE:**

13. With respect to any telematics software being used by XPO Logistics Freight, Inc., produce the administrative username and password for Plaintiff's expert(s) to access XPO Logistic Freight Inc.'s transportation management system account for data and information related to the Subject Incident and William Lamb.

**RESPONSE:**

14. Produce the complete video footage, from the Video Library in the telematics system cloud or wherever it is located, of the forward-facing and driver-facing video footage from the date of the Subject Incident.

**RESPONSE:**

15. With respect to any telematics software being used by XPO Logistics Freight, Inc., produce the Video Audit Log for the video produced of the Subject Incident, which may show which administrator viewed the video, when they viewed it, when it was downloaded, and any pinned notes saved with the video.

**RESPONSE:**

7

This the 22nd day of October, 2024

MUSSELWHITE, MUSSELWHITE,
BRANCH & GRANTHAM, P.A.

_____

J. William Owen
NC State Bar No. 47994
606 N. Elm Street
Lumberton, NC 28358
wowen@mmbglaw.com
_Counsel for Plaintiff_

8

<u>CERTIFICATE OF SERVICE</u>

This certifies that a copy of the foregoing *Plaintiff's Second Request for Production of Documents to Defendant XPO Logistics Freight, Inc.* was served on all counsel of record, <u>via electronic mail only</u> addressed as follows:

Megan M. Stacy
Gordon Rees Scully Mansukhani, LLP
Le'Ron A. Byrd
150 Fayetteville St., Suite 1120
Raleigh, NC 27602
mstacy@grsm.com
lbyrd@grsm.com
*Counsel for Defendant XPO Logistics Freight, Inc. and Defendant Lamb*

Jennifer Welch
Cranfill Sumner
P.O. Box 27808
Raleigh, NC 27611-7808
JWelch@cshlaw.com
*Counsel for Counterclaim Defendant Cindy Smith, Adminsitratrix of the Estate of Mark K. Smith.*

This the 24 day of October, 2024

MUSSELWHITE, MUSSELWHITE,
BRANCH & GRANTHAM, P.A.

J. William Owen
NC State Bar No. 47994
606 N. Elm Street
Lumberton, NC 28358
wowen@mmbglaw.com
*Counsel for Plaintiff*

9

J.W. Musselwhite
W. Edward Musselwhite, Jr.
David F. Branch, Jr.

Norris Musselwhite Grantham
J. William Owen

William E. Musselwhite Sr.
(1930-1987)
Fred L. Musselwhite
(1939-2017)

# MUSSELWHITE | MUSSELWHITE BRANCH & GRANTHAM

### ATTORNEYS AT LAW

October 29, 2024

<u>VIA EMAIL AND US MAIL</u>

Megan Stacy
Le'Ron Byrd
Gordon Rees Scully Mansukhani
150 Fayetteville Street, Suite 1120
Raleigh, NC 27601

> *Re:* **Cindy Soles Smith, Administratrix of the Estate of Mark K. Smith v. William Bratty Lamb and XPO Logistics Freight, Inc. 24 CVS 468 (Robeson County)**

Dear Megan & Le'Ron:

I am in receipt of your letter dated October 25, 2024, and will specifically respond to any request that Plaintiff supplement her discovery responses in a future correspondence.

With respect to the total available insurance coverage for XPO Logistics Freight, Inc. and Defendant Lamb – know that both of you have an obligation to make sure that all layers of coverage are on <u>notice of their potential exposure which I believe is as high as $100,000,000.</u> Of course, if you decide not to do so, then you are making that decision at your own peril and I hope that you have E&O coverage high enough to back you up if you make the wrong decision. If despite this warning your position remains that the only applicable policy of coverage whatsoever is the single policy from Chubb that has been produced in discovery (with a per occurrence limit of $10,000,000) – please complete a sworn affidavit confirming this under oath and provide it to me on or before the deadline set forth in my previous correspondence of October 10, 2024, which is on or before Friday November 1, 2024 by 5pm EST.

You and your client should know that Robeson County juries have a long and deeply rooted history of awarding large verdicts in personal injury and wrongful death cases. This is attributable in large part to the uniquely diversified population. Robeson County is 41.7% American Indian, 30.9% White, 23.8% African American and 3.6% Hispanic/Latino. Since 2008, Robeson County has been identified as among the 10% of the United States counties that are "majority-minority." Robeson County is also among one of the poorest counties in the United States. Further, as you are aware, since COVID, juries have found for the plaintiff more often than in the past, and when they have found for the plaintiff, have issued substantial verdicts. For example, a Pitt County jury awarded $34,000,000 in a wrongful death case mere months ago.

606 North Elm Street    Post Office Box 1448    Lumberton, NC 28359-1
Telephone: (910) 738-5277    Fax: (910) 738-3678



PLAINTIFF'S EXHIBIT
12

It is also important to appreciate that our firm was founded in 1955 and has represented tens of thousands of Robeson County residents and has successfully tried more cases to verdict than anyone in the area. This case has evidence of significant actual physcial pain and mental suffering along with potential punitive exposures, among other aggravating factors.

In the spirit of transparency, note that this matter will appear on the next Administrative Calendar which is scheduled for December 2, 2024. Know that I will request a Spring 2025 trial setting with a peremptory setting. The facts, circumstances, posture and potential exposure that this tragic case presents should give pause to your clients. We look forward to receiving the requested supplementation from Defendant XPO Logistics Freight, Inc. on or before Friday November 1, 2024, by 5pm EST.

Sincerely yours,

MUSSELWHITE, MUSSELWHITE, BRANCH & GRANTHAM

J. William Owen

Cc: Jennfier Welch (via email only)

J.W. Musselwhite
W. Edward Musselwhite, Jr.
David F. Branch, Jr.

Norris Musselwhite Grantham
J. William Owen

# MUSSELWHITE | MUSSELWHITE
# BRANCH & GRANTHAM

### ATTORNEYS AT LAW

William E. Musselwhite Sr.
(1930-1987)
Fred L. Musselwhite
(1939-2017)

November 1, 2024

<u>VIA EMAIL AND US MAIL</u>

Megan Stacy
Le'Ron Byrd
Gordon Rees Scully Mansukhani
150 Fayetteville Street, Suite 1120
Raleigh, NC 27601

> **Re:** **Cindy Soles Smith, Administratrix of the Estate of Mark K. Smith v.**
> **William Bratty Lamb and XPO Logistics Freight, Inc.**
> **24 CVS 468 (Robeson County)**

Dear Le'Ron:

Thank you for taking my call on Wednesday to discuss this case and the ongoing written discovery deficiencies for XPO Logistics Freight, Inc. As discussed, we are wanting to move forward with depositions in the near future, including the deposition of Defendant Lamb and the 30(b)(6) deposition of XPO Logistics Freight, Inc. While I appreciate that I can obtain oral testimony concerning many of the topics referenced below, I need responsive *documents* and actual written interrogatory responses prior to these depositions.

Per your request, I have included additional details concerning each of the written discovery request that needs further supplementation. As you know, Rule 26(a)(1) allows "parties to obtain discovery regarding <u>any matter</u>, not privileged, which is <u>relevant to the subject matter</u> involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, electronically stored information, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears <u>reasonably calculated</u> to lead to the discovery of admissible evidence nor is it grounds for objection that the examining party has knowledge of the information as to which discovery is sought. "

The purpose and intent of this Rule is to prevent a party who has discoverable information from making evasive, incomplete, or untimely responses to request for discovery. *Green, ex rel. Green v. Maness*, 69 N.C. App. 292, 316 S.E.2d 917, cert. denied. 312 N.C. 621, 323 S.E.2d 922 (1984). To be relevant for purposes of discovery, the information need only be "reasonably calculated" to lead to the discovery of admissible evidence. *Shellhorn v. Brad Ragan, Inc.* 38 N.C. App 310, 248 S.E.2d 103, cert. denied, 295 N.C. 735, 249 S.E.2d 804 (1978). Simply put, the relevancy test for discovery is not

606 North Elm Street     Post Office Box 1448     Lumberton, NC 28359-14[...]
Telephone: (910) 738-5277     Fax: (910) 738-3678



PLAINTIFF'S
EXHIBIT
13

the same as the relevancy test for admissibility into evidence. Moreover, the scope of discovery is not limited to matters relevant to claims for relief, but also includes matters relevant to defenses. Below please find Plaintiff's responses to the concerns raised in your October 25, 2024 letter in bold.

- RFP No. 2: Plaintiff requests a copy of the document retention policies for XPO. XPO will supplement now that a Protective Order has been entered. **Please promptly produce the Document Retention Policy for XPO Logistics Freight, Inc.**

- RFP Nos. 3 and 4: Plaintiff requested copies of each insurance policy and the corresponding declaration page for each policy that provides coverage for the Subject Incident ("Incident"). Plaintiff now seeks the "entire tower" of coverage for XPO Logistics Freight, Inc. It is our position that the policy and declaration page provided on September 3, 2024 is the only applicable and relevant insurance policy for this matter and we have not received any information to date that would suggest otherwise. **Plaintiff did not make a new request for the "tower" of coverage. The initial request for production made on June 5, 2024 asked for any and all insurance coverage for XPO Logistics Freight, Inc. and Defendant Lamb. I direct you and your client to Rule 26(b)(2), which addresses the discoverability of insurance coverage. The Rule states as follows: "Insurance Agreements. - A party may obtain discovery of the existence and contents of any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment. Information concerning the insurance agreement is not by reason of disclosure admissible in evidence at trial. For purposes of this subsection, an application for insurance shall not be treated as part of an insurance agreement." Although I believe there is coverage well beyond $100,000,000, in our letter dated October 29, 2024, we asked that XPO Logistics Freight, Inc. produce insurance coverage documents (i.e., policy declaration pages and policy information) for liability coverage up to $100,000,000. We hereby reiterate that request. If it remains XPO's position that the "only applicable and relevant coverage" for this loss whatsoever is the single Chubb policy produced on September 3, 2024, please have your client produce a signed affidavit concerning this declaration and promptly produce same in response to our June 5, 2024 discovery request.**

- RFP No. 6: Plaintiff requested the Driver Qualification File, Driver Investigation File and Driver History File. As noted by our supplemental responses, XPO has produced the entire personnel file for William Lamb which includes all information related in its possession related to his qualifications and investigations. XPO has also produced all driving history information contained in Defendant Lamb's personnel file. **We have reviewed the employee file produced by XPO concerning William Lamb. As you know, 49 CFR § 391.51 sets forth the requirements of the "Driver Qualification File" that must be maintained pursuant to federal law. We have not received all of the documents that are set forth in 49 CFR § 391.51. Likewise, the requirements for a "Driver Inspection History File" are set forth in detail in 49 CFR § 391.53. It does not appear that we have received complete responses concerning these federally required files that should be in the possession and control of XPO.**

This request is discoverable and relevant given the nature the allegations in Plaintiff's First Amended Complaint. It is also relevant to defenses alleged by XPO.

- RFP No. 33: Plaintiff seeks email communications between Lamb and XPO for the 90 days prior to the Incident. Further, Plaintiff brazenly concludes that this is relevant. We simply do not see the relevance in William Lamb's email communications with XPO for the 90 days prior to the Incident. If there are specific emails that Plaintiff seeks that can potentially be related to this litigation, please let us know and we will conduct a good faith search. Otherwise, we simply see no reasonable basis for producing 3-months' worth of business related emails to Plaintiff. Plaintiff has also not provided a cohesive response as to why it would be entitled to this type of information or the relevance to the Incident and/or this matter. **This request is reasonably calculated to lead to the discovery of admissible information and is relevant given the nature the allegations in Plaintiff's First Amended Complaint. It is also relevant to defenses alleged by XPO. For purposes of clarity, Plaintiff will limit the scope of RFP 33 to all communications between Lamb and XPO for 90 days prior to the incident concerning the following – any safety violations (including warnings or concerns), training, driver fitness, use of cellular or electronic devices, distracted driving, close calls, licensure, left turns, speeding, texting, unsafe driving and video telematics.**

- RFP No. 34: Plaintiff seeks communications between Lamb and XPO that were transmitted through any system on-board the tractor and trailer involved in the Incident for 30-days before the Incident and ending 7 days after the Incident. Like 3 the above, we do not see the relevance of communications between Lamb and XPO that 30-days before the Incident and 7 days after the Incident. Please let us know if there are specific types of communications that Plaintiff seeks that can potentially be related to this litigation. **This request is reasonably calculated to lead to the discovery of admissible information and is relevant given the nature the allegations in Plaintiff's First Amended Complaint. It is also relevant to defenses alleged by XPO. For purposes of clarity, Plaintiff will limit the scope of RFP 34 to all communications between Lamb and XPO for 30 days prior to the incident and ending 7 days after the subject incident, concerning the following – the subject collision, discipline, preventability, any safety violations (including warnings or concerns), training, driver fitness, use of cellular or electronic devices, distracted driving, left turns, close calls, licensure, speeding, texting, unsafe driving and video telematics.**

- RFP No. 35: Plaintiff seeks all on-board audio and video from the on-board monitoring devices. Specifically, the telematics program provided through Lytx to monitor, train and "coach" its employee-drivers. XPO sees absolutely no reason for it to provide all on-board audio and video from on-board monitoring devices provided to Lytx to monitor and coach all of its employee-drivers globally. Plaintiff has also not provided a cohesive response as to why it would be entitled to this type of information or the relevance to the Incident and/or this matter. **For clarity and in the spirit of cooperation and compromise, Plaintiff will limit RFP 35 in scope to Defendant Lamb. This request includes all telematics data and footage whatsoever in the possession and control of XPO that in any way relates to Defendant Lamb. For instance, the video from inside the XPO cab**

that has been provided is only 30 seconds. Typically, when there is a harsh event, the lookback period is one minute before the harsh event. We need the entire (at least one minute) video clip from the date of the subject collision together with all other telematics data and video footage concerning Defendant Lamb.

- RFP No. 40: Plaintiff seeks Driver Vehicle Inspection Reports (DVIR) from the period of 6-months before the Incident until one week following the Incident for the tractor and trailer involved in the Incident. Plaintiff further conclusively claims that this is not "overly broad or unduly burdensome." To add more than a conclusive claim as Plaintiff seemingly alleges—this information is overly broad and burdensome because it covers a time period well beyond and prior to the Incident. We simply see no reasonable basis for why DVIR information 6-months prior to the Incident for the tractor and trailer could potentially be relevant. However, if there is specific information that Plaintiff seeks that could reasonably be related to this litigation concerning the tractor and trailer, XPO welcomes a more detailed response. In the sprit of compromise and cooperation, Plaintiff will limit the scope of RFP No. 40 to 30-days prior to the subject collision and 2-days following the subject collision. A DVIR is a pre and post inspection report that is required by federal law.

- RFP No. 42: Plaintiff seeks basic shipping documents from XPO, including the bill of lading, manifest and dispatch documents related to the load that Defendant Lamb was transporting at the time of the Incident. Plaintiff claims these are "clearly" relevant and discoverable. We disagree. Again, for similar reasons discussed above concerning XPO's personal business and clients, we see no reasonable basis for producing bill of lading, manifest, and dispatch documents which have nothing to do with the Incident. To the extent Plaintiff can articular a reasonable basis for why that information is relevant, XPO requests it to do so or narrow its request. A Bill of Lading (BOL) is an important legal document that is highly relevant in all trucking cases. It will show the items being transported by Defendant Lamb when the incident occurred. At this point, we have no information concerning the contents of the trailer being hauled by Defendant Lamb when the subject incident occurred. The BOL will identify the motor carrier, the shipper, a description of the goods, the number of goods, the weight and measurements of the goods and other critical evidence that Plaintiff is entitled to under the Rules. Like a BOL, the Manifest is also an important legal document that provides records of the cargo, passengers and crew in the vehicle for transportation. The Manifest is even more critical in an LTL transport. Lastly, dispatch records are important documents in legal cases as they can indicate if a driver was under pressure to meet tight deadlines. This request is reasonably calculated to lead to the discovery of admissible information and is relevant given the nature the allegations in Plaintiff's First Amended Complaint. It is also relevant to defenses alleged by XPO

- RFP No. 46: Plaintiff seeks documents related to the Preventability Reports/Analysis prepared by XPO following the Incident. Plaintiff claims it has not received any responsive documents relating to the preventability analysis that was completed by XPO in the ordinary course of business. We disagree. XPO provided all documents related to the Incident in its previous productions. If already

produced as stated above, please provide the bates numbers for the complete Preventability Analysis completed by XPO concerning the subject incident.

- RFP Nos. 55-59: Plaintiff seeks documents related to all training materials provided to XPO drivers. We simply do not see the reasonable basis for providing training materials provided to XPO drivers globally. However, and to the extent Plaintiff seeks training materials provided to drivers like Defendant William Lamb— and those provided to William Lamb—please see the documents produced in XPO's first and supplemental production of documents. **Plaintiff will limit RFP 55-59 to training materials provided to Defendant Lamb and other XPO drivers at the Lumberton, NC terminal from the date Defendant Lamb was hired by XPO until present. These materials are highly relevant to allegations contained in Plaintiff's First Amended Complaint and Defendant XPO's Answer.**

- RFP No. 60: Plaintiff seeks documents—not counsel-created summaries—of the hierarchy at XPO at the time of the Incident and presently. XPO is not in possession of formal hierarchy charts which show the relationship between its executives and drivers like William Lamb. Further, and to the best of our knowledge, XPO counsel did not create summaries and produce them to Plaintiff. To the extent Plaintiff believes XPO produced work-product detailing XPO hierarchy information, please identify the bates-number so we can evaluate whether that document needs to be clawed back. **Produce documents that are in the possession and control of XPO. If these documents do not exist, please state that in your response. We reserve the right to revisit this RFP once XPO produces the Document Retention Policies.**

- RFP No. 61: Plaintiff seeks documents that were prepared and/or presented by XPO representatives concerning the safe operation of commercial vehicles during the last 5 years. Plaintiff claims this request is not overly broad solely because it relates to "safety." While we agree that documents that discuss the safe operation of commercial vehicles relate to "safety" that does not automatically correlate to relevance here—especially, where Plaintiff requests documents that are circulated and/or presented by "XPO representatives" worldwide. **Plaintiff will limit RFP 61 to safety presentations provided to Defendant Lamb, other XPO drivers at the Lumberton, NC terminal and any managers at the Lumberton, NC terminal from the date Defendant Lamb by XPO was hired until present.**

- RFP Nos. 63-64: Plaintiff seeks any contracts or agreements applicable to Defendant Lamb or the subject tractor and trailer. As noted above, XPO does not see the point or relevance in providing driving history related to William Lamb's everyday travels for its clients and business. These files do not contain any information regarding driver safety or analysis. XPO has, however, produced all contracts or agreements related to Defendant Lamb. **Plaintiff limits RDP No. 63-64 to any documents that in any way relates to safety, training, production requirements, speed of production, dispatch requirements and any expectations concerning timing of delivery and the expected speed of deliveries.**

- RFP No. 65: Plaintiff seeks XPO's Accident Register. Plaintiff claims this is not overly broad or unduly burdensome. We see no reasonable basis for providing XPO's Accident Register for all of their global drivers. Please provide your basis as to how this is relevant to this action or narrow the request. **As you know, an Accident Register is required by federal law (See 49 CFR § 390.15). Plaintiff will agree to narrow the request to XPO's Accident Register for a period of 2 years prior to the subject collision for all accidents resulting in serious injury or death to a third party.**

- RFP No. 66: Plaintiff seeks deposition transcripts from XPO corporate designees concerning accidents where it was alleged that XPO's employee caused an injury or death to another person during the last 5 years. XPO is not in possession of deposition transcripts and these materials can be obtained by Plaintiff's counsel via other means that are as readily available to Plaintiff as they are to Defendants. **Plaintiff does not have access to deposition transcripts as you describe. Plaintiff agrees to limit this request to 30(b)(6) deposition transcripts from XPO designees within the last 5-years for incidents involving an XPO driver making a left turn that resulted in serious injuries or death to third parties.**

- .Interrogatory No. 3: Plaintiff seeks information concerning claims and lawsuits filed against XPO wherein a person was injured or killed as a result of XPO drivers. Plaintiff now apparently wants "pre-suit" claim information. This was not a part of Plaintiff's initial Interrogatory. Given that, XPO does not intend to detail any "pre suit" claim information. **We respectfully disagree. Interrogatory No. 3 served on June 5, 2024 stated exactly as follows: "For each claim (formal or informal) and lawsuit wherein it is/was suggested or alleged that any person was injured or killed as a result of XPO's driver's actions in the past three years, provide the style of the case (or name of parties, jurisdiction and case number), and describe briefly the circumstances of each suit/claim and the disposition." As you know, this Interrogatory specifically addresses pre-suit informal claims. Please supplement this interrogatory with an actual written response. This request is reasonable calculated to lead to the discovery of admissible information and is within the scope of permissible discovery. It also directly relates to the claims alleged in Plaintiff's First Amended Complaint.**

- Interrogatory No. 5: Plaintiff seeks supplemental written responses to (a)-(g), i.e., information related to the tractor operated by William Lamb at the time of the Incident, including, without limitation, all maintenance and repairs from 12 months prior to the Incident. XPO has provided all relevant information related to the tractor operated by William Lamb. However, we will supplement our prior response in a forthcoming supplemental response with information that is in XPO's possession and not unduly burdensome to locate. **Plaintiff will limit this Interrogatory to (a)-(f) which eliminates the maintenance/repair request. Plaintiff seeks actual written responses to (a)-(e). These requests are very specific and are reasonably calculated to lead to potentially admissible information. By way of example, this interrogatory seeks information concerning the legal owner of the tractor. It also seeks information concerning telematics and other**

monitoring systems and devices that were installed and used on the subject tractor. Clearly this is discoverable.

- Interrogatory No. 6: Plaintiff seeks supplemental written responses to (a)-(e), i.e., information related to the <u>trailer</u> operated by William Lamb at the time of the Incident, including, without limitation, all maintenance and repairs from 12 months prior to the Incident. XPO has provided all relevant information related to the trailer operated by William Lamb. However, we will supplement our prior is in XPO's possession and not unduly burdensome to locate. **Plaintiff will limit this Interrogatory to (a)-(d) which eliminates the maintenance/repair request. Plaintiff seeks actual written responses to (a)-(e). These requests are very specific and are reasonably calculated to lead to potentially admissible information. By way of example, this interrogatory seeks information concerning the legal owner of the trailer. It also seeks information concerning telematics and other monitoring systems and devices that were installed and used on the subject trailer. Clearly this is discoverable.**

- <u>Interrogatory No. 7</u>: Plaintiff seeks supplemental written responses to (a)-(e), i.e., Re: the trip that William Lamb was on—"Identify all shippers and brokers involved; Explain where and when (date and time) William Lamb picked up the load he had at the time of the Subject Incident; Identify where (name and address of location) and when (date and time) the load was to be delivered; Identify the location, time, duration and reason for each stop William Lamb made from the time he picked up the load until the time of the Subject Incident; and Identify the route William Lamb intended to follow from the point of origin to the point of destination." We do not see any reasonable basis for Plaintiff to know "all shippers and brokers" involved in the load William Lamb had at the time of the Incident. Please provide the basis as to how information related to XPO business clients and contacts are relevant to this action. **Although not likely in this particular case, the identity of potential shippers and brokers can reveal other potential Defendants, which is relevant to Plaintiff's causes of action. The other subsections request basic information on when and where Defendant Lamb obtained the subject load. We see no reason why this information is not discoverable as it is clearly relevant to the allegations contained in Plaintiff's First Amended Complaint.**

- <u>Interrogatory No. 12:</u> Plaintiff seeks information related to (b)-(d), i.e., "Explain how William Lamb was paid for driving (by hour, by load, by mile, salary or other); Explain all steps XPO undertook to qualify William Lamb in accord with the Federal Motor Carrier Safety Regulations; and Identify when XPO's relationship with William Lamb began and ended." XPO provided all information related to how William Lamb was paid in their supplemental production of documents. Further, directing a party to written documents detailing the answers to an Interrogatory is an appropriate practice in North Carolina. However, and to the extent there is information Plaintiff feels it is not in possession of, please apprise us of that information. We will supplement in forthcoming supplemental responses. **Again, the purpose of this interrogatory was to obtain actual written responses, not a direction to documents. Please supplement your response accordingly. Rule 33 requires each interrogatory to be "answered separately and fully in writing under oath." It is not proper to direct Plaintiff to documents.**

- Interrogatory No. 14: Plaintiff seeks information related to information produced in response to the Requests for Production of Documents. Specifically, Plaintiff seeks written responses to all formal and informal disciplinary and/or counseling actions undertaken by XPO. Like the above, we will provide supplemental responses. **Please promptly supplement with a written response, not a direction to documents or the employee file.**

- Interrogatory No. 15: Plaintiff seeks information related to information produced in response to the Requests for Production of Documents re: all training and education provided or on behalf of XPO to William Lamb. We will provide supplemental responses. **Please promptly supplement with a written response, not a direction to documents or the employee file.**

- Interrogatory No. 20: Plaintiff requests XPO to "produce" documents related to the internal investigation documents referenced in XPO's written responses. XPO has produced all documents related to the internal investigation. **Interrogatory No. 20 stated exactly as follows: "Identify and explain all communications of any kind between William Lamb and anyone acting for or on behalf of XPO during the twenty-four (24) hours before and after the Subject Incident. For each communication, identify the method of communication (cell phone, QualComm, other), time of communication, persons involved, and the general subject."**

- Interrogatory No. 22: Plaintiff seeks information related to XPO policies, procedures, rules, guidelines, directives, manual, handbooks and instructions. We will provide supplemental responses. **Please promptly supplement with a written response, not a direction to documents or the employee file.**

- Interrogatory No. 26: Plaintiff requests XPO to "produce" information related to the "internal investigation documents" that XPO references in its response. XPO has produced all documents related to the internal investigation. **Please promptly supplement with a written response, not a direction to documents or the employee file.**

- Interrogatory No. 32: Plaintiff requests XPO to "produce" information, again, related to the "internal investigation documents" that XPO references in its written response. XPO has produced all documents related to the internal investigation. **Please promptly supplement with a written response, not a direction to documents or the employee file.**

- Interrogatory No. 36: Plaintiff seeks supplemental written responses to Interrogatory No. 36. Specifically, Plaintiff seeks information concerning XPO's "accident review board" and preventability determination that are conducted in the ordinary course of business. XPO does not identify folks who participated in the internal investigation of this Incident as the formal "accident review board." However, all documents related to an investigation have been discussed in Defendant William Lamb's written responses. **Please promptly supplement with a written response, not a direction to documents or the employee file.**

- Interrogatory No. 38: Plaintiff seeks supplemental responses to questions regarding the identity of insurance carriers for XPO, policy numbers, limits of coverages and names of all insureds. As stated above, Plaintiff requested copies of each insurance policy and the corresponding declaration page for each policy that provides coverage for the Incident. Plaintiff now seeks the "entire tower" of coverage for XPO Logistics Freight, Inc. However, the entire tower of coverage is not applicable or relevant to the "Subject Incident." The policy and declaration page provided on September 3, 2024, however, is the applicable insurance policy for this matter. **Plaintiff did not make a new request for the "tower" of coverage. The initial request for production made on June 5, 2024 asked for any and <u>all insurance coverage</u> for XPO Logistics Freight, Inc. and Defendant Lamb. I direct you and your client to Rule 26(b)(2), which addresses the discoverability of insurance coverage. The Rule states as follows: "Insurance Agreements. - A party may obtain discovery of the existence and contents of <u>any</u> insurance agreement under which any person carrying on an insurance business may be <u>liable to satisfy part or all of a judgment which may be entered in the action</u> or to <u>indemnify or reimburse for payments made to satisfy the judgment</u>. Information concerning the insurance agreement is not by reason of disclosure admissible in evidence at trial. For purposes of this subsection, an application for insurance shall not be treated as part of an insurance agreement." Although I believe there is coverage beyond $100,000,000, in our letter dated October 29, 2024, we asked that XPO Logistics Freight, Inc. produce insurance coverage documents (i.e., policy declaration pages and policy information) for liability coverage up to $100,000,000. We hereby reiterate that request. If it remains XPO's position that the "only applicable and relevant coverage" for this loss whatsoever is the single Chubb policy produced on September 3, 2024, please have your client produce a signed affidavit concerning this declaration and promptly produce same in response to our June 5, 2024 discovery request.**

- Unredacted Version of XPO000058 and a legible copy of XPO000109: We will review and provide our position regarding these documents in a supplemental response. **Please supplement with a legible copy of these documents.**

Given the updated and narrowed scope of the above, we would expect XPO Logistics Freight, Inc. to be able to respond fully and completely within the next 30 days. Please provide supplemental responses on or before Monday December 2, 2024 by 5pm EST. Please consider this correspondence as Plaintiff's final good faith attempt to resolve the discovery deficiencies stemming from the June 5, 2024 Interrogatories and Request for Production of Documents served on Defendant XPO Logistics Freight, Inc. without the need for the Court's intervention under Rule 37. Thanking you in advance for your prompt response and cooperation.

Sincerely yours,

MUSSELWHITE, MUSSELWHITE, BRANCH & GRANTHAM

J. William Owen

Cc: Jennfier Welch (via email only)

| | |
|---|---|
| **From:** | Will Owen |
| **Sent:** | Tuesday, December 10, 2024 5:05 PM |
| **To:** | Le'Ron Byrd; Jennifer A. Welch |
| **Cc:** | Brandi Davis; Megan Stacy |
| **Subject:** | Re: Estate of Smith v. XPO, et al. | Discovery and Requests for Monetary Statement for Relief |

Le'Ron:

Thanks for the update. Today I received information concerning the identity of the bus driver who can be heard speaking in the video of the accident. I am reviewing my file to see if there are any other potential witnesses/statements that will require supplemental responses. I will of course promptly supplement Plaintiff's responses accordingly.

As a professional courtesy, since the second RFPs served on XPO are due on 12/23/24, I would be willing to push the deadline for **all** written discovery to <u>12/23/24 by 5pm EST.</u> I would rather wait a little longer to get meaningful and detailed responses.

I will want to start setting depositions in January. How is your schedule looking in January/February?

**J. William Owen**
Musselwhite, Musselwhite, Branch & Grantham, P.A.
T: +1 910 738 5277 | F: +1 910 738 3678

---

**From:** Le'Ron Byrd <lbyrd@grsm.com>
**Sent:** Tuesday, December 10, 2024 4:46:53 PM
**To:** Will Owen <wowen@mmbglaw.com>; Jennifer A. Welch <JWelch@cshlaw.com>
**Cc:** Brandi Davis <bldavis@grsm.com>; Megan Stacy <mstacy@grsm.com>
**Subject:** RE: Estate of Smith v. XPO, et al. | Discovery and Requests for Monetary Statement for Relief

Will:

I'm still working on finalizing these responses with our client. I need their responses on a few of the Interrogatories we discussed, not many. I'm also waiting for additional files/documentation in response to the RFPs. Given that, I'm hoping to get these to you tomorrow. Again, we apologize for the additional delay. We're working hard to get these to you as soon as possible especially in light of our recent discussion to wrap up discovery.

In the meantime, do you have any updates on supplementation of Plaintiff's responses to Defendant's First Set of Discovery Requests? The last time we spoke regarding out letter, you mentioned there being a small set of documents that would be responsive for you all to produce.

Regards,
Le'Ron



1

STATE OF NORTH CAROLINA
COUNTY OF ROBESON

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
24-CVS-468

CINDY SOLES SMITH, Administratrix of the
ESTATE OF MARK KEANNAN SMITH,

        Plaintiff/Counterclaim-
        Defendant,

v.

WILLIAM BRATTY LAMB,

        Defendant,

and

XPO LOGISTICS FREIGHT, INC.

        Defendant/Counterclaim-
        Plaintiff.

**DEFENDANT XPO LOGISTICS
FREIGHT, INC.'s _SECOND SET OF
SUPPLEMENTAL_ RESPONSES TO
PLAINTIFF'S FIRST SET OF
INTERROGATORIES AND REQUESTS
FOR PRODUCTION OF DOCUMENTS**

        Pursuant to Rules 26, 33, 34, and 36 of the North Carolina Rules of Civil Procedure,

Defendant/Counterclaim-Plaintiff XPO Logistics Freight, Inc. ("XPO" or "Defendant"), by and

through the undersigned counsel, hereby provides its second set of supplements to the First Set of

Interrogatories and Requests for Production of Documents, served by Plaintiff/Counterclaim-

Defendant Cindy Soles Smith, Administratrix of the Estate of Mark Keannan Smith ("Plaintiff").

<u>**INTERROGATORIES**</u>

        3.     For each claim (formal or informal) and lawsuit wherein it is/was suggested or
alleged that any person was injured or killed as a result of XPO's driver's actions in the past three
years, provide the style of the case (or name of parties, jurisdiction and case number), and describe
briefly the circumstances of each suit/claim and the disposition.

        <u>**ANSWER:**</u>    **Objection.** Defendant objects to this Interrogatory to the extent it is
                overbroad as to scope and seeks information that is neither relevant nor
                reasonably calculated to lead to the discovery of admissible evidence and
                subjects Defendant to undue burden and expense. Defendant further objects
                to this Interrogatory to the extent it seeks information in the possession of



or equally accessible to Plaintiff. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery. Defendant also objects to the extent that this request seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other privilege.

Subject to and without waiving these objections, Defendant identifies the instant litigation, which is the only civil lawsuit involving the Co-Defendant William Lamb. By way of further response, any additional lawsuits involving XPO are a matter of public record and are equally accessible to the Plaintiff.

**SUPPLEMENTAL RESPONSE** (12/23/24):

**Objection**. As an initial matter, XPO does not keep a registrar of informal claims where a person was injured or killed as a result of XPO's driver's actions. XPO is a provider of freight transportation services. It moves goods through its customers supply chains in North America and Europe. A basic Westlaw search will reveal that there are 800+ cases with opinions drafted by Courts around the nation detailing XPO matters as of the date of these responses. Further, and more notably, any written response detailing <u>every</u> suit over the last three years with a detailed description would be an extremely inefficient and ineffective task for information not related to this action. Simply put, any request for the undersigned counsel to briefly describe the circumstances of each suit, claim, and disposition <u>is</u> undoubtedly overbroad, neither relevant, and would easily subject XPO to undue burden and expense. Given that, and unless counsel for Plaintiff provides an extremely narrowed scope with respect to this request, and/or absent Court Order, XPO will not provide an egregiously long summary detailing <u>every</u> formal or informal claim or suit where an individual has been injured as a result of XPO's driver's actions.

5.      With respect to the <u>tractor</u> operated by William Lamb at the time of the Subject Incident, provide the following information:

(a)    Identify the registered owner, leasor (if any) and leasee (if any) on the date of the Subject Incident and presently.

(b)    Provide the mileage and gross weight at the time of the Subject Incident;

(c)    For the engine, identify the manufacturer, year, model and identification number;

(d)    Identify all systems and devices in/on the tractor that have the capability of recording and or transmitting any data about the operation of the tractor (including without limitation Engine Control Module, Event Data Recorder, Airbag Control Module, Brake Control Module, Electronic On-Board Recorder, VORAD, etc.), state whether or not that data has been preserved and/or downloaded, and if so, when and by whom.

(e)    Identify all systems and devices of any kind in or on the tractor that allowed for communication between the driver and any other person or entity, state whether the data for the time period surrounding the Subject Incident has been preserved, and

2

identify the person who has custody of the data and of the system from which the data was acquired.

(f) Identify all systems and devices of any kind in or on the tractor that has the capability to monitor, record, and/or transmit data (this includes, but is not limited to, Qualcomm, TransCore, SkyBitz, Fluensee, Fleetilla, Teletrac, Lat-Lon, Telogis, GeoLogic, Cheetah, Xata, PeopleNet or similar system; any collision or lane departure warning system; any driver safety monitoring or hours of service monitoring system; any transponders or tachographs; any onboard cameras or video devices; any bar code or toll pass systems; and any other tracking system, logging unit, trip monitor, trip recorder, GPS system, satellite systems, or cellular systems), state whether the data for the time period surrounding the Subject Incident has been preserved, and identify the person who has custody of the data and of the system from which the data was acquired.

(g) Identify all maintenance and repairs performed for the time period from 12 months before the Subject Incident to present.

**ANSWER:** **Objection.** Defendant objects to this Interrogatory to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Interrogatory to the extent it requests XPO to gather and compile information related to maintenance for a period of 12 months before the Subject Incident, as this information is well outside of the relevance and purview of this action. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery. Defendant also objects to the extent that this request seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other privilege

Subject to and without waiving the above objections, Defendant is the owner of the tractor operated by Defendant William Lamb at the time of the Subject Incident. Defendant further references and incorporates the documents produced in connection with Defendant's Responses to Plaintiff's First Set of Request for Production of Documents.

**SUPPLEMENTAL RESPONSE** (12/23/24):

XPO is the registered owner of the tractor that was operated by Co-Defendant William Lamb at the time of the Subject Incident. XPO no longer has access to the mileage and gross weight of the vehicle at the time of the Subject Incident. The serial number for the vehicle is 7F21D4823L2000426. The tech spec number for the 48' Large Trailer was 20XPO4PLG. The Vin Number is 3AKBGADV9GSHB2477. The tractor had devices and systems that were capable of recording and/or transmitting data about the operation of the tractor. Those systems included an Engine Control Module (ECM) which records and monitors engine performance data. Additionally, the tractor included an Electronic On-Board Recorder (EOBR). Following the incident, XPO downloaded a print out (produced

3

alongside these supplemental responses) of recorded information on or around December 14, 2023. The vehicle model is a 2016 Freightliner Cascadia. The engine S/N No. is 471927S0368009.

6.     With respect to the <u>trailer</u> operated by William Lamb at the time of the Subject Incident, provide the following information:

(a)     Identify the registered owner, leasor (if any) and leasee (if any) on the date of the Subject Incident and presently.

(b)     Provide the mileage and gross weight at the time of the Subject Incident;

(c)     Identify all systems and devices in/on the trailer that have the capability of recording any data about the operation of the trailer (including without limitation ABS control module, etc.), state whether or not that data has been preserved and/or downloaded, and if so, when and by whom.

(d)     Identify all systems and devices of any kind in or on the trailer that has the capability to monitor, record, and/or transmit data (this includes, but is not limited to, any transponders or tachographs; any bar code systems; and any other tracking system, logging unit, GPS system, satellite systems, or cellular systems), state whether the data for the time period surrounding the Subject Incident has been preserved, and identify the person who has custody of the data and of the system from which the data was acquired.

(e)     Identify all maintenance and repairs performed for the time period from 12 months before the Subject Incident to present.

**ANSWER:**     **Objection.** Defendant objects to this Interrogatory to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Interrogatory to the extent it requests XPO to gather and compile information related to maintenance for a period of 12 months before the Subject Incident, as this information is well outside of the relevance and purview of this action. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery.

Subject to and without waiving the above objections, Defendant is the owner of the trailer operated by Defendant William Lamb at the time of the Subject Incident. Defendant further references and incorporates the documents produced in connection with Defendant's Responses to Plaintiff's First Set of Request for Production of Documents.

**SUPPLEMENTAL RESPONSE** (12/10/24):

XPO is the registered owner of the trailer that was operated by Co-Defendant William Lamb at the time of the Subject Incident. XPO no longer has access to the mileage and gross weight of the vehicle at the time of the Subject Incident. The serial number for

the vehicle is 7F21D4823L2000426. The tech spec number for the 48' Large Trailer was 20XPO48PLG. The Vin Number is 3AKBGADV9GSHB2477. The vehicle model is a 2016 Freightliner Cascadia. The tractor is equipped with systems capable of monitoring, recording, and/or transmitting data. Namely, the Engine Control Module, Electronic On-Board Recorder. The data for the time period surrounding the Subject Incident, namely, the DVIR data has been preserved as a part of standard record-keeping for vehicle inspections and produced herewith.

7.    With respect to the trip that William Lamb was on at the time of the Subject Incident, provide the following information:

(a)    Identify all shippers and brokers involved;
(b)    Explain where and when (date and time) William Lamb picked up the load he had at the time of the Subject Incident;
(c)    Identify where (name and address of location) and when (date and time) the load was to be delivered;
(d)    Identify the location, time, duration and reason for each stop William Lamb made from the time he picked up the load until the time of the Subject Incident; and
(e)    Identify the route William Lamb intended to follow from the point of origin to the point of destination.

**ANSWER:**    **Objection.** Defendant objects to this Interrogatory to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Interrogatory to the extent it seeks information that is confidential or proprietary. Specifically, Defendant objects to this Interrogatory to the extent it requests information related to all parties involved, trip and company information, in addition to the intended route and point of origin to the point of the destination. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery.

Subject to and without waiving these objections, Defendant has produced relevant, responsive, non-privileged documents containing information responsive to this request and references and incorporates same in its response to this request.

**SUPPLEMENTAL RESPONSE** (12/10/24):

XPO maintains its objection with respect to this Interrogatory, specifically, given that it seeks information that is not relevant to the claims or defenses in this case and is not reasonably calculated to lead to the discovery of admissible evidence. Specifically, the incident in question involves Plaintiff crashing into the Defendant's truck, and the Plaintiff's requests for detailed information about the trip, including shipping, brokers, and specific route details, do not pertain to the liability or circumstances surrounding the crash.

5

Further the information requested is overly broad, speculative, and concerns the operational details of the trip that are unrelated to the facts of the crash itself. The request for information on stops, route, and load details is especially irrelevant as it does not address the causation of the collision or the Plaintiff's conduct in the incident. Therefore, these requests are disproportionate to the needs of the case and are unduly burdensome. As suggested in Defendant's initial responses, Defendant will provide any relevant, non-privilege documents or information regarding the tractor and trailer involved in the incident, but objects to this Interrogatory as it seeks irrelevant information beyond the scope of the issues raised by Plaintiff's own claims.

12.    With respect to William Lamb, provide the following information:

(a)    Explain the relationship between XPO and William Lamb at the time of the Subject Incident (e.g., leased driver, company driver, etc.);

(b)    Explain how William Lamb was paid for driving (by hour, by load, by mile, salary or other);

(c)    Explain all steps XPO undertook to qualify William Lamb in accord with the Federal Motor Carrier Safety Regulations; and

(d)    Identify when XPO's relationship with William Lamb began and ended.

**ANSWER:**    **Objection.** Defendant objects to this Interrogatory to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery.

Subject to and without waiving the above objections, Defendant William Lamb was employed by XPO as a Driver Sales Representative, joining the XPO Lumberton, North Carolina (US-NC) team. Additionally, and with respect to the remaining requested information, Defendant references and directs Plaintiff to the personnel file produced alongside Defendant's Responses to Plaintiff's First Set of Requests for Production of Documents.

**SUPPLEMENTAL RESPONSE** (12/23/24):

Co-Defendant William Lamb was paid weekly based on an hourly rate which encompassed the miles driven. Specifically, he was paid at a rate of $21.45 per hours or $0.494 per mile, depending on the job function performed, paid weekly. His pay was later increased to $23.16 on or around January 2021. XPO took several steps to make sure William Lamb was qualified in accord with the Federal Motor Carrier Safety Regulations such as on-boarding, training, and retention of the appropriate documents such as licenses (e.g., CDL License) and Department of Transportation files. XPO's relationship with William Lamb began on September 28, 2020 following an official offer letter on September 10, 2020. William Lamb remains employed by XPO as a Driver Sales Representative.

6

14.   Identify and describe all formal and informal disciplinary and/or counseling actions undertaken by XPO regarding William Lamb at any time.

**ANSWER:**   **Objection.** Defendant objects to this Interrogatory to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery.

Subject to and without waiving the above objections, none. By way of further response, Defendant references and directs Plaintiff to the personnel file produced alongside Defendant's Responses to Plaintiff's First Set of Requests for Production of Documents.

**SUPPLEMENTAL RESPONSE** (12/23/24):

Co-Defendant William Lamb was never the subject of any informal or formal disciplinary action. On occasions, William Lamb was notified of tardiness or driving corrections but not informal or formal disciplinary actions.

15.   Describe in detail all training and education (including on the job training) provided by or on behalf of XPO to William Lamb at any time and in any way related to the operation of a commercial motor vehicle.

**ANSWER:**   **Objection.** Defendant objects to this Interrogatory to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery.

Subject to and without waiving the above objections, Defendant references and directs Plaintiff to the personnel file produced alongside Defendant's Responses to Plaintiff's First Set of Requests for Production of Documents.

**SUPPLEMENTAL RESPONSE** (12/23/24):

XPO Logistics provides a comprehensive driver training program to ensure William Lamb meets safety standards and operational efficiency. The program includes hands-on training and on-going development to support professional growth and safety on the road. On or around December 2020 and January 2021, XPO through personnel member, Bradley Lutz, engaged in a coaching session to make sure Co-Defendant William Lamb followed proper protocols when operating an XPO vehicle. Mr. Lutz ensured Mr. Lamb

7

was trained in defensive driving techniques, hazard recognition, accident-avoidance strategies, and emergency procedures. Further, and during the process, Mr. Lutz emphasized compliance with federal and state safety regulations, including hours of service, weight limits, and vehicle inspections. During those coaching sessions, Mr. Lutz would inform Mr. Lamb of his driving speed, vehicle awareness, and safety. Mr. Lamb also underwent an initial training program on the use of technology such as electronic logging devices (ELDs).

20.    Identify and explain all communications of any kind between William Lamb and anyone acting for or on behalf of XPO during the twenty-four (24) hours before and after the Subject Incident. For each communication, identify the method of communication (cell phone, QualComm, other), time of communication, persons involved, and the general subject.

**ANSWER:**    **Objection.** Defendant objects to this Interrogatory as vague and ambiguous and to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Further, Defendant objects to this Interrogatory to the extent it requires information protected by privilege, including without limitation the attorney-client privilege and/or the work-product doctrine.

Subject to and without waiving the above objections, Lamb communicated with dispatch, Chad Mitchell, to tell them that the incident occurred. Defendant Lamb also participated in an internal investigation process as reflected in the documents produced alongside Defendant XPO's written responses. Namely, Lamb was asked to complete forms for XPO's files. Lamb also spoke to a co-worker at XPO, Ron Kaczkowsky, regarding the lawsuit who suggested Mr. Lamb contact an attorney following the incident. Defendant also had privileged conversations with the undersigned counsel that are not subject to disclosure. By way of further response, Defendant has produced relevant, responsive, non-privileged documents containing information responsive to this request and references and incorporates same in its response to this request.

**SUPPLEMENTAL RESPONSE** (12/23/24):

XPO Logistics provides a comprehensive driver training program to ensure William Lamb meets safety standards and operational efficiency. The program includes hands-on training and on-going development to support professional growth and safety on the road. On or around December 2020 and January 2021, XPO through personnel member, Bradley Lutz, engaged in a coaching session to make sure Co-Defendant William Lamb followed proper protocols when operating an XPO vehicle. Mr. Lutz ensured Mr. Lamb was trained in defensive driving techniques, hazard recognition, accident-avoidance strategies, and emergency procedures. Further, and during the process, Mr. Lutz emphasized compliance with federal and state safety regulations, including hours of service, weight limits, and vehicle inspections. During those coaching sessions, Mr. Lutz would inform Mr. Lamb of his driving speed, vehicle awareness, and safety. Mr. Lamb

8

also underwent an initial training program on the use of technology such as electronic logging devices (ELDs).

22.    Identify all XPO policies, procedures, rules, guidelines, directives, manuals, handbooks and instructions that were in effect for William Lamb at the time of the Subject Incident.

**ANSWER:**    **Objection.** Defendant objects to this Interrogatory to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Specifically, Defendant objects to the broad nature of identifying all company, policies, rules, guidelines, directives, manuals, handbooks and other information irrespective or pertinent to this action as irrelevant. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery. Defendant also objects to the extent that this request seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other privilege.

Subject to and without waiving the above objections, Defendant has produced relevant, responsive, non-privileged documents containing information responsive to this request and references and incorporates same in its response to this request.

**SUPPLEMENTAL RESPONSE** (12/23/24):

XPO Logistics provides an Employee Handbook and Supplement that includes XPO policies, procedures, rules, guidelines, directives, and instructions. These documents were produced alongside XPO's First Set of Supplemental Responses to Plaintiff's First Set of Discovery Requests.

26.    Identify each person (name and employer) who has been involved in the investigation of the Subject Incident. For each person identified, describe their role and involvement in the investigation.

**ANSWER:**    **Objection.** Defendant objects to this Interrogatory to the extent it is overbroad as to scope and subjects Defendant to undue burden and expense. Defendant further objects to this Interrogatory to the extent it is vague, specifically, requesting Defendant to identify people's "role" and why they were at the scene. Additionally, Defendant objects to this Interrogatory to the extent it requires information protected by privilege, including without limitation the attorney-client privilege and/or the work-product doctrine. Defendant objects to this Interrogatory to the extent it seeks the premature discovery of expert testimony, inconsistent with North Carolina Rules of Civil Procedure. Defendant further objects to this Interrogatory to the extent

9

it seeks discovery of expert information not required to be disclosed by the North Carolina Rules of Civil Procedure relating to experts, a Discovery Scheduling Order to be entered in this case, and/or case law interpreting the North Carolina Rules of Civil Procedure relating to expert disclosure.

Subject to and without waiving the above objections, Defendant is aware of local law enforcement investigating the Subject Incident as well as an internal XPO investigation, the non-privileged records of which are produced herewith. By way of further response, Defendant has produced relevant, responsive, non-privileged documents containing information responsive to this request and references and incorporates same in its response to this request.

### SUPPLEMENTAL RESPONSE (12/10/24):

With respect to XPO personnel, William Lamb communicated with dispatch, Chad Mitchell, to tell them that the incident occurred. William Lamb also participated in an internal investigation process as reflected in the documents produced alongside Defendant XPO's written responses. Namely, William Lamb was asked to complete forms for XPO's files. William Lamb also spoke to a co-worker at XPO, Ron Kaczkowsky, regarding the lawsuit who suggested Mr. Lamb contact an attorney following the incident. William Lamb also spoke with Carl Goodyear and Vince Hall regarding the incident generally expressing immediate account and feelings of incident.

36.     If XPO has performed any review (e.g., accident review board, preventability determination) of the Subject Incident to determine preventability and/or fault, identify all persons involved in the review, the dates of the review and the conclusions that were reached.

**ANSWER:**     **Objection**. Defendant objects to this Interrogatory to the extent it is overbroad as to scope. Defendant objects to this Interrogatory to the extent it requires information protected by privilege, including without limitation the attorney-client privilege and/or the work-product doctrine. Defendant objects to this Interrogatory to the extent it seeks the premature discovery of expert testimony, inconsistent with North Carolina Rules of Civil Procedure. Defendant further objects to this Interrogatory to the extent it seeks discovery of expert information not required to be disclosed by the North Carolina Rules of Civil Procedure relating to experts, a Discovery Scheduling Order to be entered in this case, and/or case law interpreting the North Carolina Rules of Civil Procedure relating to expert disclosure. Defendant objects to this Interrogatory to the extent it seeks information that is confidential or proprietary.

Subject to and without waiving the above objections, Defendant has produced relevant, responsive, non-privileged documents containing information responsive to this request and references and incorporates same in its response to this request.

10

SUPPLEMENTAL RESPONSE (12/23/24):

Other than retention of counsel and an internal review of all statements submitted by William Lamb to the police, criminal charges, drug tests results, and dash cam video, XPO did not perform any review specifically to determine fault. However, XPO did conduct preventability review as defined by XPO.

38.     For each insurance policy of any kind that does or may provide any coverage on behalf of any XPO (whether it is your policy or anyone else's policy) for damages/injuries alleged in this case, provide: name of insurer; policy number; limits of coverage; the name(s) of all insureds; and state whether any insurer has offered a defense under a reservation of rights or otherwise contested coverage for the subject case.

**ANSWER:**     **Objection.** Defendant objects to this Interrogatory to the extent it is overbroad as to scope. Further, Defendant objects to this Interrogatory to the extent it assumes facts either not true or proven. Specifically, Defendant objects to Plaintiff's statement that Plaintiff's injuries were caused in whole or in part by Defendant. Defendant objects to this Interrogatory to the extent it seeks information that is confidential or proprietary. Defendant also objects to this interrogatory to the extent that it seeks a legal opinion concerning coverage; the undersigned makes no representations concerning coverage.

Subject to and without waiving these objections, Defendant has requested a copy of the responsive policy(ies) and will produce to Plaintiff upon receipt of same.

**SUPPLEMENTAL RESPONSE** (12/23/24):

As noted in XPO's document production, XPO is currently insured with Chubb. XPO is not aware of any additional insurance policy that would allow for coverage based on Plaintiff's allegations detailed in its Complaint and Plaintiff's response to XPO's Request for Statement of Monetary Relief.

11

## REQUESTS FOR PRODUCTION OF DOCUMENTS

2.    A copy of each document retention policy in effect for XPO at any time between the time of the Subject Incident and present.

<table>
<tr><td><strong><u>RESPONSE:</u></strong></td><td><strong>Objection.</strong> Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.</td></tr>
<tr><td></td><td>Subject to and without waiving these objections, Defendant will supplement its response following the submission of a Protective Order in this action.</td></tr>
</table>

**SUPPLEMENTAL RESPONSE** (12/23/24):

XPO does have a document retention policy. XPO will supplement with its policy.

3.    A copy of each insurance policy (and declarations page for each policy) that provides or may provide coverage for damages sustained in the Subject Incident.

<table>
<tr><td><strong><u>RESPONSE:</u></strong></td><td><strong>Objection.</strong> Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.</td></tr>
<tr><td></td><td>Subject to and without waiving these objections, Defendant has requested a copy of the responsive policy(ies) and will produce to Plaintiff upon receipt of same.</td></tr>
</table>

**SUPPLEMENTAL RESPONSE** (12/23/24):

XPO produced all responsive documents to the above-referenced request in its first set of supplemental responses to Plaintiff's First Set of Requests for Production of Documents.

4.    Copies of all reservation of rights letters and/or agreements regarding insurance coverage for the Subject Incident.

<table>
<tr><td><strong><u>RESPONSE:</u></strong></td><td><strong>Objection.</strong> Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.</td></tr>
<tr><td></td><td>Subject to and without waiving these objections, Defendant has requested a copy of the responsive policy(ies) and will produce to Plaintiff upon receipt of same.</td></tr>
</table>

12

<u>SUPPLEMENTAL RESPONSE</u> (12/23/24):

XPO produced all responsive documents to the above-referenced request in its first set of supplemental responses to Plaintiff's First Set of Requests for Production of Documents.

6.     The contents of William Lamb's driver qualification file, driver investigation file, driver history file and all documents that demonstrate compliance with federal and state driver qualification laws and regulations. The requested documents include, but are not limited to all documents required by FMCSR, 49 CFR Part 391, and the state equivalent thereto. If any responsive documents have been removed from the driver qualification file, these should be produced nonetheless.

<u>RESPONSE:</u>     **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

Subject to and without waiving these objections, Defendant has produced relevant, responsive, non-privileged documents in response to this request.

<u>SUPPLEMENTAL RESPONSE</u> (12/23/24):

To the best of its knowledge, XPO produced all responsive documents to the above-referenced request in its first set of supplemental responses to Plaintiff's First Set of Requests for Production of Documents. To the extent responsive documents become available, XPO will supplement in connection with these supplemental responses.

33.     Produce copies of all e-mails between William Lamb and XPO for the time period beginning 90 days prior to the Subject Incident and present.

<u>RESPONSE:</u>     **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it requires information protected by privilege, including without limitation the attorney-client privilege and/or the work-product doctrine. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery.

<u>SUPPLEMENTAL RESPONSE</u> (12/23/24):

13

On November 1, 2024, Plaintiff limited the scope to "all communications between Lamb and XPO for 90 days prior to the incident concerning any safety violations (including warnings or concerns), training, driver fitness, use of cellular or electronic devices, distracted driving, close calls, licensure, left turns, speeding, texting, unsafe driving and video telematics. With respect to the limited scope, XPO is not in possession of any responsive documents.

34.     Produce copies of all communications and transmissions between William Lamb and XPO that were transmitted through any system on-board of the tractor or trailer involved in the Subject Incident for the period beginning 30 days before the Subject Incident and ending seven days after the Subject Incident. This includes any and all satellite or cellular systems, regardless of manufacturer, and includes, without limitation, all electronic on-board recorders (EOBRs) and system such as those made available by Qualcomm, TransCore, SkyBitz, Fluensee, Fleetilla, Teletrac, Lat-Lon, Telogis, GeoLogic, Cheetah, Xata, PeopleNet and other transportation service and product providers.

**RESPONSE:**     **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

**SUPPLEMENTAL RESPONSE** (12/23/24):

On November 1, 2024, Plaintiff limited the scope to "all communications between Lamb and XPO for 30 days prior to the incident and ending 7 days after the subject incident, concerning the following – the subject collision, discipline, preventability, any safety violations (including warnings or concerns), training, driver fitness, use of cellular or electronic devices, distracted driving, left turns, close calls, licensure, speeding, texting, unsafe driving and video telematics. With respect to the limited scope, XPO is not in possession of any responsive documents.

35.     If the tractor was equipped with any on-board audio or video recording or monitoring devices and/or any other driver or driver safety monitoring system, please produce everything that was retrieved or could be retrieved from such devices and systems.

**RESPONSE:**     **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

14

Subject to and without waiving these objections, Defendant incorporates and references documents produced alongside these responses.

**SUPPLEMENTAL RESPONSE** (12/23/24):

XPO produced all responsive documents to the above-referenced request in its first set of supplemental responses to Plaintiff's First Set of Requests for Production of Documents.

40.    For the tractor and trailer involved in the Subject Incident, produce all the Driver Vehicle Inspection Reports (DVIR) from the period beginning six months before the Subject Incident and ending one week after the Subject Incident.

**RESPONSE:**    **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery.

**SUPPLEMENTAL RESPONSE** (12/23/24):

On November 1, 2024, Defendant limited the scope of the above-referenced request to "30-days prior to the subject collision and 2-days following the subject collision." Specifically, and additionally noting that a "DVIR is a pre and post inspection report that is required by federal law." With respect to Plaintiff's limited request, XPO produced DVIR documents in connection with these supplemental responses.

42.    All documents that relate to the load being hauled by William Lamb at the time of the Subject Incident, including, by way of example and without limitation, all manifests, bills of lading, weight receipts, dispatch documents, content summaries, and documents that address the contents, ownership, pick-up, detainment, and delivery of the load.

**RESPONSE:**    **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery.

15

**SUPPLEMENTAL RESPONSE** (12/23/24):

XPO will supplement its document production to include Bill of Lading (BOL) documents, as requested in Plaintiff's November 1, 2024 meet and conferral letter, to the extent, if any in XPO's possession.

46.    All documents assessing preventability of and/or fault for the Subject Incident.

**RESPONSE:**    **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant further objects to this Request to the extent it's premature and discovery is on-going. Defendant objects to this Request to the extent it seeks the premature discovery of expert testimony, inconsistent with North Carolina Rules of Civil Procedure. Defendant further objects to this Request to the extent it seeks discovery of expert information not required to be disclosed by the North Carolina Rules of Civil Procedure relating to experts, a Discovery Scheduling Order to be entered in this case, and/or case law interpreting the North Carolina Rules of Civil Procedure relating to expert disclosure. Defendant objects to this Request to the extent it requires information protected by privilege, including without limitation the attorney-client privilege and/or the work-product doctrine. Defendant further objects to this Request to the extent it seeks a legal conclusion. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery.

Subject to and without waiving the above objections, Defendant will produce all reports created for disclosure by Defendant's retained expert(s) when appropriate. Further, Defendant has produced relevant, responsive, non-privileged documents in response to this request.

**SUPPLEMENTAL RESPONSE** (12/23/24):

XPO is not in possession of the above-referenced documents.

55.    Copies of all XPO policies, procedures, rules, guidelines, directives, manuals, handbooks and instructions that were in effect at the time of the Subject Incident, relating to:

a.  Working for or with trucking company generally (e.g., employee manual or handbook);
b.  Operation of any motor vehicle (e.g., driving manuals or handbooks, and the like);

16

c. Operation of a commercial vehicle;
d. Driving safety;
e. Defensive driving;
f. Compliance with federal and state laws and regulations;
g. Accident investigation;
h. Accident review boards;
i. Determination of preventability of accidents;
j. Hiring, training and supervising drivers; and
k. Disciplinary actions.

**RESPONSE:** **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary. Defendant also objects to the extent that this request seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other privilege.

Subject to and without waiving these objections, Defendant will supplement its response following the submission of a Protective Order in this action.

**SUPPLEMENTAL RESPONSE** (12/23/24):

XPO produced all responsive documents to the above-referenced request in its first set of supplemental responses to Plaintiff's First Set of Requests for Production of Documents.

56.  Copies of each document that William Lamb signed to prove that William Lamb received and/or agreed to be bound by any policies, procedures, rules, guidelines and/or standards of XPO.

**RESPONSE:** **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

Subject to and without waiving these objections, Defendant will supplement its response following the submission of a Protective Order in this action.

17

**SUPPLEMENTAL RESPONSE** (12/23/24):

XPO produced all responsive documents to the above-referenced request in its first set of supplemental responses to Plaintiff's First Set of Requests for Production of Documents.

57.    To the degree that XPO has any rules, policies, procedures, guidelines, driving manuals, employee handbooks or manuals, or other similar documents that were not provided to William Lamb before the Subject Incident, please produce them now.

> **RESPONSE:**    **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary. Defendant also objects to the extent that this request seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other privilege.
>
> Subject to and without waiving these objections, Defendant will supplement its response following the submission of a Protective Order in this action.

**SUPPLEMENTAL RESPONSE** (12/23/24):

XPO produced all responsive documents to the above-referenced request in its first set of supplemental responses to Plaintiff's First Set of Requests for Production of Documents.

58.    A complete copy of, or in the alternative, access to, each driver safety training film, video, videotape, videocassette, audio cassette, computer program, simulator, driver diagnostic record or test, maintained by your company, or used by XPO, its personnel, agents, or employees during the year of the Subject Incident and three years prior.

> **RESPONSE:**    **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.
>
> Subject to and without waiving these objections, Defendant will supplement its response following the submission of a Protective Order in this action.

18

**SUPPLEMENTAL RESPONSE** (12/23/24):

XPO will supplement its document production, to the extent any supplemental files exist.

59.     Copies of all industry and/or other guidelines and/or practices that you rely upon to support your contentions in this case.

**RESPONSE:**     **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

Subject to and without waiving these objections, Defendant will supplement its response following the submission of a Protective Order in this action.

**SUPPLEMENTAL RESPONSE** (12/23/24):

XPO will supplement its document production, to the extent any responsive documents exist.

60.     Copy of documents showing the hierarchy of managerial positions at XPO and who occupied such positions as of the time of the subject incident and presently.

**RESPONSE:**     **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

Subject to and without waiving these objections, Defendant will supplement its response following the submission of a Protective Order in this action.

**SUPPLEMENTAL RESPONSE** (12/23/24):

XPO is not in possession of documents other than those created by counsel detailing the hierarchy at XPO at the time of the incident and presently.

61.     A copy of each document (including articles and presentations) prepared and/or presented by any XPO representative relating to the safe operation of a commercial motor vehicle and/or the safe operation of a trucking company in the past five years.

**RESPONSE:**     Objection. Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary. Defendant also objects to the extent that this request seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other privilege.

**SUPPLEMENTAL RESPONSE** (12/23/24):

XPO produced all responsive documents to the above-referenced request in its first set of supplemental responses to Plaintiff's First Set of Requests for Production of Documents.

63.     A copy of all lease and trip lease contracts applicable to William Lamb and/or any vehicle involved in the Subject Incident.

**RESPONSE:**     Objection. Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

**SUPPLEMENTAL RESPONSE** (12/23/24):

Plaintiff limited the scope of the above referenced request to "any documents that in any way relates to safety, training, production requirements, speed of production, dispatch requirements and any expectations concerning timing of delivery and the expected speed of deliveries. With respect to the limited scope of the above referenced request, XPO produced all responsive documents to the above-referenced request in its first set of supplemental responses to Plaintiff's First Set of Requests for Production of Documents.

64.     Copies of any contract under which your company was operating the truck in question at the time of the Subject Incident.

**RESPONSE:**     Objection. Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

20

Plaintiff limited the scope of the above referenced request to "any documents that in any way relates to safety, training, production requirements, speed of production, dispatch requirements and any expectations concerning timing of delivery and the expected speed of deliveries. With respect to the limited scope of the above referenced request, XPO produced all responsive documents to the above-referenced request in its first set of supplemental responses to Plaintiff's First Set of Requests for Production of Documents.

65.  A copy of XPO's accident register maintained as required by 49 CFR § 390.35.

**RESPONSE:**  **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

**SUPPLEMENTAL RESPONSE** (12/23/24):

XPO maintains its objection to producing an entire copy of its accident register. Specifically, Defendant objects to the request for production of an "accident registrar" of XPO as it seeks documents that are not relevant to the claims or defenses in this case. The incident in question involves the Plaintiff crashing into to the Defendant's truck, and the Plaintiff's request for an accident registrar is overly broad and not related to the facts of the crash or the Plaintiff's conduct leading to the incident. An accident registrar may document past incidents that are not connected to this specific case or the actions of the Plaintiff. Further, the requested documents are likely irrelevant to the cause of the accident or determining liability in this matter. Further, the request is disproportionate to the needs of the case, as it involves a general catalog of past accidents, which do not provide relevant information regarding the subject incident. Therefore, the Defendant objects to this request on grounds of relevance and proportionality under the applicable rules of civil procedure.

66.  Transcripts or recordings of all depositions of corporate designees for XPO given in the past five years in cases where it was alleged that a driver working for XPO caused injury or death to another person.

**RESPONSE:**  **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery. Defendant also objects to the extent that this request seeks information protected from

disclosure by the attorney-client privilege, work product doctrine, or other privilege.

**SUPPLEMENTAL RESPONSE** (12/23/24):

November 1, 2024, Plaintiff limited the scope of the above-referenced request to 30(b)(6) deposition transcripts from XPO designees within the last 5-years for incidents involving an XPO driver making a left turn that resulted in serious injuries or death to third parties. As noted above, XPO is a provider of freight transportation services. It moves goods through its customers supply chains in North America and Europe. A basic Westlaw search will reveal that there are 800+ cases with opinions drafted by Courts around the nation detailing XPO matters as of the date of these responses. Further, and more notably, even with Plaintiff's limited scope, the request **is** still undoubtedly overbroad, neither relevant, and would easily subject XPO to undue burden and expense. Given that, and/or absent Court Order, XPO will not produce a plethora of 30(b)(6) transcripts where it can conduct its own 30(b)(6) concerning the facts relevant and pertinent to this case concerning the Subject Collision.

This the 23rd day of December, 2024.

Gordon Rees Scully Mansukhani, LLP

By:

Megan M. Stacy
North Carolina Bar No. 47108
Le'Ron A. Byrd
North Carolina Bar No. 55732
150 Fayetteville Street, Suite 1120
Raleigh, NC 27602
Phone: 919-787-4555
Fax: 919-741-5840
E-mail: mstacy@grsm.com
E-mail: lbyrd@grsm.com
*Counsel for Defendant XPO Logistics
Freight, Inc. and William Lamb*

## CERTIFICATE OF SERVICE

This is to certify that I caused the foregoing **Second Set of Supplemental Responses to Plaintiff's First Set of Discovery Requests** served upon all counsel of record by email pursuant to the North Carolina Rules of Civil Procedure addressed as follows:

J. William Owen
Musselwhite, Musselwhite, Branch & Grantham, P.A.
P.O. Box 1448
Lumberton, NC 28359
wowen@mmbglaw.com
***Counsel for Plaintiff Cindy Smith,***
***Administratrix of the Estate of Mark K. Smith***

Jennifer Welch
Cranfill Sumner
P.O. Box 27808
Raleigh, NC 27611-7808
jwelch@cshlaw.com
***Counsel for Counterclaim-Defendant Cindy Smith,***
***Administratrix of the Estate of Mark K. Smith***

This the 23rd day of December, 2024.

**Gordon Rees Scully Mansukhani, LLP**

By: _____
Le'Ron A. Byrd

23

STATE OF NORTH CAROLINA
COUNTY OF ROBESON

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
24-CVS-468

CINDY SOLES SMITH, Administratrix of the
ESTATE OF MARK KEANNAN SMITH,

        Plaintiff/Counterclaim-
        Defendant,

v.

WILLIAM BRATTY LAMB,

        Defendant,

and

XPO LOGISTICS FREIGHT, INC.

        Defendant/Counterclaim-
        Plaintiff.

**DEFENDANT XPO LOGISTICS
FREIGHT, INC.'s RESPONSES TO
PLAINTIFF'S SECOND SET OF
REQUESTS FOR PRODUCTION OF
DOCUMENTS**

Pursuant to Rules 26, and 34 of the North Carolina Rules of Civil Procedure, Defendant/Counterclaim-Plaintiff XPO Logistics Freight, Inc. ("XPO" or "Defendant"), by and through the undersigned counsel, hereby provides its responses to the Second Set of Requests for Production of Documents, served by Plaintiff/Counterclaim-Defendant Cindy Soles Smith, Administratrix of the Estate of Mark Keannan Smith ("Plaintiff").

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.     All telematics data (specifically including but not limited to: videos, screenshots, coaching sessions, behaviors coached, event coached, comments, event notes and session notes) for William Lamb from date of hire (09-09-20) through present.

    **RESPONSE:**    **Objection.** Defendant objects to this Interrogatory as vague and ambiguous and to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

                    To the best of its knowledge, XPO produced all responsive documents to the above-referenced request in its first set of

1

supplemental responses to Plaintiff's First Set of Requests for Production of Documents. To the extent responsive documents become available, XPO will supplement in connection with these supplemental responses.

2.     Any documents that reflect the identity of employees of XPO Logistics Freight Inc. (or any third parties) who regularly monitored or reviewed telematics data (including but not limited to Lytx software) for employee William Lamb from the date of hire (09-09-20) through present.

      **RESPONSE:**      **Objection.** Defendant objects to this Interrogatory as vague and ambiguous and to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

                                  There is not a single individual specifically assigned to regularly review all telematics data for employee William Lamb. Further, telematics is not routinely reviewed for every employee on a continuous basis, and as such, no one individual is tasked with monitoring or reviewing all of the data generated. The Defendant does not maintain a centralized list of employees or third parties who regularly reviewed telematics data.

3.     Produce copies of all communications and transmissions between William Lamb and any entity transmitted through any system on-board the tractor and trailer involved in the Subject Incident for the period of 30-days before the Subject Incident and ending 7-days after the Subject Incident. This includes any and all satellite or cellular systems or telematics systems, regardless of manufacturer, and includes without limitation, all electronic on-board recorders (EOBRs) and systems such as those made available by Geotab, Teletrac Navman, Verizon Connect, Samsara, Fleet Complete, Motive, GPS Insight, ORBCOMM or some other system or the like.

      **RESPONSE:**      **Objection.** Defendant objects to this Interrogatory as vague and ambiguous and to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

                                  To the best of its knowledge, XPO produced all responsive documents to the above-referenced request in its first set of supplemental responses to Plaintiff's First Set of Requests for Production of Documents. To the extent responsive documents become available, XPO will supplement in connection with these supplemental responses.

2

4.      With respect to any telematics software being used by XPO Logistics Freight, Inc, produce the log of all safety alerts received in the safety inbox or other location designated for William Lamb for 6-months prior to the Subject Incident through present.

**RESPONSE:**      Objection. Defendant objects to this Interrogatory as vague and ambiguous and to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. The request seeks the production of logs for all safety alerts received in the safety inbox or any other location designated for employee William Lamb for a six-month period prior to the Subject Incident through the present. This request is overly broad and seeks information that is not relevant to the issues at hand, which involve the Plaintiff's collision with the Defendant's truck. The requested safety alerts pertain to operational data that does not have a direct bearing on the causation of the subject incident, or the actions of the parties involved in the crash. The request for a six-month period of alerts is excessive, as it extends well beyond the specific circumstances of the incident. The data sought is not pertinent to establishing liability or understanding the events leading up to the crash. Moreover, complying with this request would impose an undue burden, as it would require the review and production of a potentially vast amount of data that may not be relevant to the claims or defenses in this case.

5.      With respect to any telematics software being used by XPO Logistics Freight, Inc., produce any and all electronic log violations or notifications for William Lamb for 6-months prior to the Subject Incident.

**RESPONSE:**      Objection. Defendant objects to this Interrogatory as vague and ambiguous and to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. The request seeks the production of all electronic log violations or notifications for William Lamb for a six-month period prior to the Subject Incident. However, this request is not relevant to the claims or defenses in this case, which center around the Plaintiff's crash into the Defendant's truck. The electronic log violations or notifications requested are unrelated to the specific facts of the incident or the conduct of either party involved in the collision. The request for a six-month period of data is excessively broad and does not have a direct bearing on the cause of the subject incident, nor does it pertain to any material fact in dispute. This is particularly the case as the violation data pertains to driver log compliance, which does not directly address the issue of the Plaintiff's actions or the circumstances surrounding the crash. Furthermore, producing such a broad range of data would

3

impose an undue burden on the Defendant, as it would require
extensive review and production of records that may not be relevant
to the case at hand.

6.     With respect to any telematics software being used by XPO Logistics Freight, Inc.,
produce a printout of the Safety Score and the configuration page for William Lamb for 3-months
prior to the Subject Incident through present.

    **RESPONSE:**    **Objection.** Defendant objects to this Interrogatory as vague and
ambiguous and to the extent it is overbroad as to scope and seeks
information that is neither relevant nor reasonably calculated to lead
to the discovery of admissible evidence.

                      Defendant is not in possession of these documents containing Safety
Score to the best of its knowledge. Defendant will supplement this
response to the extent these documents become available.

7.     With respect to any telematics software being used by XPO Logistics Freight, Inc.,
produce a printout of the speeding settings page for the transportation management system used
by XPO Logistics Freight, Inc. on the date of the Subject Incident.

    **RESPONSE:**    **Objection.** Defendant objects to this Interrogatory as vague and
ambiguous and to the extent it is overbroad as to scope and seeks
information that is neither relevant nor reasonably calculated to lead
to the discovery of admissible evidence.

                      Subject to and without waiving these objections, please see the
documents produced in connection with these responses.

8.     With respect to any telematics software being used by XPO Logistics Freight, Inc.,
produce a printout of the alert configuration page for the date of the Subject Incident.

    **RESPONSE:**    **Objection.** Defendant objects to this Interrogatory as vague and
ambiguous and to the extent it is overbroad as to scope and seeks
information that is neither relevant nor reasonably calculated to lead
to the discovery of admissible evidence.

                      Subject to and without waiving these objections, please see the
documents produced in connection with these responses.

9.     With respect to any telematics software being used by XPO Logistics Freight, Inc,
produce all notifications in the inbox (or other similar location) for William Lamb for 6-months
prior to the Subject Incident through present.

    **RESPONSE:**    **Objection.** Defendant objects to this Interrogatory as vague and
ambiguous and to the extent it is overbroad as to scope and seeks
information that is neither relevant nor reasonably calculated to lead

4

to the discovery of admissible evidence. The request seeks the production of all notifications in the inbox (or other similar location) for William Lamb for a six-month period prior to the Subject Incident through the present. However, this request is not relevant to the claims or defenses in this case, which concern the Plaintiff's collision with the Defendant's truck. The notifications sought by the Plaintiff, which likely pertain to operational or procedural communications unrelated to the subject incident, do not have a direct bearing on the events surrounding the crash or the actions of either party involved. The focus of the case is on the cause and circumstances of the crash, not on unrelated communications that may be stored in a telematics inbox. Further, the request is overly broad and burdensome, as it asks for all notifications over a six-month period, which could include a significant volume of irrelevant data. The production of such a large quantity of notifications would require time-consuming review and could result in the production of numerous documents that are not material to any issue in the case.

10.     With respect to any telematics software being used by XPO Logistics Freight, Inc, produce the safety setting in the transportation management system utilized for William Lamb's individual vehicle/person on the date of Subject Incident.

**RESPONSE:**          **Objection.** Defendant objects to this Interrogatory as vague and ambiguous and to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving these objections, Defendant is not in possession of the above referenced documents. Defendant will supplement this response to the extent these documents become available.

11.     Produce the safety setting in the transportation management system utilized for fleet wide vehicles on the date of the Subject Incident (these include: harsh event sensitivity, forward collision warning, distracted driving detection, tailgating detection, following distance, audio recording, camera height calibration, in-cab voice coaching for policy violations, in-cab coaching for driver speeding and in-cab nudges or alerts).

**RESPONSE:**          **Objection.** Defendant objects to this Interrogatory as vague and ambiguous and to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving these objections, Defendant is not in possession of the above referenced documents. Defendant will

5

supplement this response to the extent these documents become available.

12.    Produce the electronics audit log for William Lamb's electronic logging device for 6-months before the Subject Incident.

RESPONSE:        **Objection.** Defendant objects to this Interrogatory as vague and ambiguous and to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. The request seeks the production of the electronic audit log for William Lamb's electronic logging device (ELD) for a six-month period prior to the Subject Incident. However, this request is not relevant to the claims or defenses in this case, which involve the Plaintiff's crash into the Defendant's truck. The requested electronic audit log primarily pertains to the recording of hours of service (HOS) and other operational data, which do not directly address the circumstances or causation of the incident in question. The crash itself occurred as a result of the Plaintiff's actions, not due to any alleged violation or issue with William Lamb's hours of service or related ELD data. Furthermore, the request for a six-month period is overly broad and unnecessary, as it spans a timeframe that is irrelevant to the events immediately surrounding the Subject Incident. The production of such a large volume of data would place an undue burden on the Defendant, requiring a time-consuming review of potentially irrelevant information that does not contribute to determining the cause of the crash or the liability issues at hand.

13.    With respect to any telematics software being used by XPO Logistics Freight, Inc., produce the administrative username and password for Plaintiffs expert(s) to access XPO Logistic Freight Inc.'s transportation management system account for data and information related to the Subject Incident and William Lamb.

RESPONSE:        **Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant further objects to this Request to the extent it's premature and discovery is on-going. Defendant objects to this Request to the extent it seeks the premature discovery of expert testimony, inconsistent with North Carolina Rules of Civil Procedure. Defendant further objects to this Request to the extent it seeks discovery of expert information not required to be disclosed by the North Carolina Rules of Civil Procedure relating to experts, a Discovery Scheduling Order to be entered in this case, and/or case

6

law interpreting the North Carolina Rules of Civil Procedure relating to expert disclosure.

Subject to and without waiving the above objections, Defendant will produce relevant telematic data with respect to William Lamb.

14. Produce the complete video footage, from the Video Library in the telematics system cloud or wherever it is located, of the forward-facing and driver-facing video footage from the date of the Subject Incident.

> **RESPONSE:** **Objection.** Defendant objects to this Interrogatory as vague and ambiguous and to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.
>
> Subject to and without waiving the above objections, Defendant produced all video footage in its possession from the Subject Incident.

15. With respect to any telematics software being used by XPO Logistics Freight, Inc., produce the Video Audit Log for the video produced of the Subject Incident, which may show which administrator viewed the video, when they viewed it, when it was downloaded, and any pinned notes saved with the video.

> **RESPONSE:** **Objection.** Defendant objects to this Interrogatory as vague and ambiguous and to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.
>
> Subject to and without waiving the above objections, Defendant does not have video metadata showing which administrator viewed any videos produced in its response to Plaintiff's First Set of Discovery Requests.

7

This the 23rd day of December, 2024.

Gordon Rees Scully Mansukhani, LLP

By: _____

Megan M. Stacy
North Carolina Bar No. 47108
Le'Ron A. Byrd
North Carolina Bar No. 55732
150 Fayetteville Street, Suite 1120
Raleigh, NC 27602
Phone: 919-787-4555
Fax: 919-741-5840
E-mail: mstacy@grsm.com
E-mail: lbyrd@grsm.com
*Counsel for Defendant XPO Logistics
Freight, Inc. and William Lamb*

## CERTIFICATE OF SERVICE

This is to certify that I caused the foregoing **Responses to Plaintiff's Second Set of Requests for Production of Documents** served upon all counsel of record by email pursuant to the North Carolina Rules of Civil Procedure addressed as follows:

J. William Owen
Musselwhite, Musselwhite, Branch & Grantham, P.A.
P.O. Box 1448
Lumberton, NC 28359
wowen@mmbglaw.com
*Counsel for Plaintiff Cindy Smith,*
*Administratrix of the Estate of Mark K. Smith*

Jennifer Welch
Cranfill Sumner
P.O. Box 27808
Raleigh, NC 27611-7808
jwelch@cshlaw.com
*Counsel for Counterclaim-Defendant Cindy Smith,*
*Administratrix of the Estate of Mark K. Smith*

This the 23rd day of December, 2024.

**Gordon Rees Scully Mansukhani, LLP**

By: _____
Le'Ron A. Byrd

J.W. Musselwhite

W. Edward Musselwhite, Jr.

David F. Branch. Jr.

# MUSSELWHITE | MUSSELWHITE
# BRANCH & GRANTHAM

### ATTORNEYS AT LAW

Norris Musselwhite Grantham

J. William Owen

William E. Musselwhite Sr.
(1930-1987)

Fred L. Musselwhite
(1939-2017)

December 24, 2024

<u>VIA EMAIL ONLY</u>

Megan Stacy
Le'Ron Byrd
Gordon Rees Scully Mansukhani
150 Fayetteville Street, Suite 1120
Raleigh, NC 27601

> **Re**: **Cindy Soles Smith, Administratrix of the Estate of Mark K. Smith**
> **v. William Bratty Lamb and XPO Logistics Freight, Inc.**
> **24 CVS 468 (Robeson County)**

Dear Megan & Le'Ron:

I have now had an opportunity to review Defendant XPO Logistics Freight, Inc.'s Supplemental Responses to Plaintiff's First Set of Interrogatories and Request for Production of Documents. I have also reviewed Defendant XPO Logistics Freight, Inc.'s Responses to Plaintiff's Second Request for Production of Documents, both of which were served by email on 12/23/24 at 4:41PM – a mere 19 minutes before their due date, and after multiple extensions of time. You will also recall that in a detailed correspondence dated November 1, 2024, Plaintiff voluntarily narrowed the scope of the initial Interrogatories and Request for Production of Documents in a good faith effort to obtain relevant and responsive documents from XPO. To date, these various good faith efforts have proven to be a waste of time.

I must inform you that both sets of discovery responses are woefully insufficient and lacking. For instance, XPO only produced the "DDEC Report" (ECM printout) from the subject tractor instead of the actual telematics data related specifically to Defendant Lamb that was requested throughout the Second Request for Production of Documents. In fact, Defendant XPO failed to produce any additional documents whatsoever that pertain to the actual telematics systems that were onboard the subject tractor (i.e, Lytx and/or Samsara). The boilerplate objections throughout the responses are likewise unavailing. Under Rule 26(b)(1) we may obtain discovery from XPO regarding:

> "Any matter, not privileged, which is relevant to the subject matter involved in the pending action, <u>whether it relates to the claim</u> or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any



PLAINTIFF'S
EXHIBIT
16

books, documents, electronically stored information, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears <u>reasonably calculated</u> to lead to the discovery of admissible evidence nor is it grounds for objection that the examining party has knowledge of the information as to which discovery is sought."

For instance, XPO's general objections throughout the responses seem to suggest that Plaintiff is only entitled to documents or data that relate to the subject crash and nothing else. I would urge you to review the First Amended Complaint in further detail as we have asserted <u>multiple claims for relief</u> including independent negligence claims against XPO for negligent hiring, training, retention, supervision and the like. We are also seeking punitive damages for the willful and wanton conduct of both Defendant Lamb and XPO. Simply put, we are entitled to written discovery pertaining to acts or omissions that occurred ***prior to the subject collision*** as those request relate squarely to our various claims and causes of action. Moreover, by way of example, Defendant XPO Logistics Freight, Inc. failed to produce the declaration pages for excess layers of insurance coverage that have been requested multiple times. We are not asking for your opinion regarding coverage – we are simply entitled to the insurance policies that <u>may</u> provide coverage for a verdict obtained in this wrongful death case – not whether you or XPO believes that this claim warrants that particular value.

I regret to inform you that given the ongoing discovery abuse and deficiencies, we will be filing a motion to compel and will notice the hearing for **January 13, 2025 at 10:00am.** Our filed motion and notice of hearing are forthcoming. To the extent that additional supplementation are forthcoming, I suggest that XPO serve the supplementation as soon as possible.

Sincerely yours,

MUSSELWHITE, MUSSELWHITE, BRANCH & GRANTHAM

J. William Owen

Cc: Jennfier Welch (via email only)

STATE OF NORTH CAROLINA

COUNTY OF ROBESON

FILED

2025 JAN -2 A 11: 17

[illegible] COUNTY, C.S.C.

BY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
24-CVS-468

CINDY SOLES SMITH, Administratrix of the
ESTATE OF MARK KEANNAN SMITH,

         Plaintiff/Counterclaim-
         Defendant,

    v.

WILLIAM BRATTY LAMB,

         Defendant,

    and

XPO LOGISTICS FREIGHT, INC.

         Defendant/Counterclaim-
         Plaintiff.

**PLAINTIFF'S MOTION TO COMPEL
AGAINST DEFENDANT XPO
LOGISTICS FREIGHT, INC.**

    **NOW COMES** Plaintiff Cindy Soles Smith, by and through undersigned counsel, pursuant to Rules 26, 33, 34, and 37 of the North Carolina Rules of Civil Procedure, who moves for an Order compelling Defendant XPO Logistics Freight, Inc. (hereafter, "XPO") to respond fully, completely, and without further objection to Plaintiff's First Interrogatories and First Request for Production, and to fully respond without further objection to Plaintiff's Second Request for Production of Documents and to produce all documents responsive thereto. In support of this Motion, Plaintiff states as follows:

    1.    This Action arises out of the horrific suffering and death of Mark Smith, who was tragically killed in a serious motor vehicle collision on U.S. 74 Alternate on October 11, 2023, in Robeson County involving a commercial vehicle owned by XPO – a shipping and transportation conglomerate based in Greenwich, Connecticut.

PLAINTIFF'S EXHIBIT 17

2.     Plaintiff served XPO with Plaintiff's First Interrogatories and First Request for Production of Documents and First Request for Admission on June 5, 2024. *(Plaintiff's Exhibit 1)*

3.     On June 27, 2024, XPO moved the Clerk for an extension of time to respond to Plaintiff's first set of discovery. *(Plaintiff's Exhibit 2)*

4.     The Clerk granted an Order enlarging the time for XPO to respond to Plaintiff's First Set of Interrogatories, First Request for Production and First Request for Admission to and including August 5, 2024. *(Plaintiff's Exhibit 3)*

5.     On August 6, 2024, XPO served its <u>untimely</u> responses to Plaintiff's First Interrogatories, First Request for Production of Documents and First Request for Admission. *(Plaintiff's Exhibit 4)*

6.     XPO's responses contained numerous improper objections and refusals to substantively answer, improper limitations of their responses and XPO improperly withheld clearly responsive documents and materials.

7.     On August 6, 2024, counsel for Plaintiff sent a detailed correspondence to counsel for XPO advising counsel for XPO of the consequences of its untimely discovery responses and requested supplementation – without objection – within 10 business days. *(Plaintiff's Exhibit 5)*

8.     On August 22, 2024, counsel for Plaintiff again sent a detailed correspondence to XPO advising of the improper objections and past-due discovery and further advised XPO that its objections were waived as a matter of law and again requested complete responses on or before August 30, 2024. *(Plaintiff's Exhibit 6)*

9.     On August 30, 2024, counsel for XPO requested another extension of time to fully respond to Plaintiff's discovery, as requested in the correspondence dated August 6,

2024 and August 30, 2024. In a show of good faith and cooperation, counsel for Plaintiff allowed this extension and moved the deadline to September 3, 2024. *(Plaintiff's Exhibit 7)*

10.     XPO served its First Supplemental Responses to Plaintiff's First Set of Interrogatories, First Request for Production of Documents and First Request for Admission on September 3, 2024. *(Plaintiff's Exhibit 8)*

11.     After reviewing the production and responses from XPO, on September 4, 2024, counsel for Plaintiff again advised counsel for XPO of the various ongoing discovery deficiencies – including the production of XPO's insurance policies, declaration pages, training materials, the employee handbook and basic shipping documents (e.g., Bill of Lading and Manifest). *(Plaintiff's Exhibit 9)*

12.     On October 10, 2024, counsel for Plaintiff sent counsel for XPO a detailed correspondence which requested supplemental discovery responses to the following specific request:

      a. Request for Production 2 (request for the document retention policy of XPO);

      b. Request for Production 3 and 4 (request for all insurance policies for XPO, including all excess policies);

      c. Request for Production 6 (request for the Driver Qualification File, Driver Investigation File and Driver History File);

      d. Request for Production 33 (email communications between Lamb and XPO for 90 days prior to the subject collision);

      e. Request for Production 34 (request for communications between XPO and Lamb from any onboard communication systems);

      f. Request for Production 35 (request for all onboard audio and visual telematics data and videos);

g. Request for Production 40 (request for DVIR reports);

h. Request for Production of 42 (request for basic shipping documents including the manifest, bill of lading and dispatch documents);

i. Request for Production 46 (documents concerning preventability analysis completed on behalf of XPO and the conclusions of such analysis);

j. Request for Production 55-59 (request for training materials that were provided to Defendant Lamb);

k. Request for Production 60 (request for documents related to hierarchy of supervisors and management at XPO);

l. Request for Production 61 (request for training documents provided to XPO employees) ;

m. Request for Production 63-64 (request for contracts or agreements between XPO, its driver (Lamb) and any other entities involved in the subject transport);

n. Request for Production 65 (request for XPO's "Accident Register" which is required to be maintained under federal law);

o. Request for Production 66 (request for 30(b)(6) deposition transcripts from XPO corporate designee(s) for injury or death claims in last 5 years);

p. Interrogatory 3 (information requested concerning injury and death claims and lawsuits involving XPO);

q. Interrogatory 5 (seeking actual written responses to (a)-(g));

r. Interrogatory 6 (seeking actual written responses to (a)-(e));

s. Interrogatory 7 (seeking actual written responses to (a)-(e));

t. Interrogatory 12 (seeking actual written responses to (b)-(d));

u. Interrogatory 14 (seeking actual written responses to the question asked);

v. Interrogatory 15 (seeking actual written responses to the question asked);

w. Interrogatory 20 (seeking written responses to internal investigation documents referenced by XPO);

x. Interrogatory 22 (seeking actual written responses, not direction to documents referenced by XPO);

y. Interrogatory 26 (seeking written responses to internal investigation documents referenced by XPO);

z. Interrogatory 32 (seeking written responses to internal investigation documents referenced by XPO);

aa. Interrogatory 36 (seeking written responses concerning XPO's accident review board and preventability determination completed by XPO);

bb. Interrogatory 38 (seeking actual written responses concerning all liability insurance coverage for XPO)

13. In the detailed correspondence of October 10, 2024, counsel for Plaintiff further requested supplementation of the following XPO Bates:

a. XPO – 000058

b. XPO – 000091

c. XPO – 000109

14. In the detailed correspondence of October 10, 2024, counsel for Plaintiff requested supplemental responses within 15 business days and once again certified that Plaintiff would seek the Court's intervention if substantive responses were not received in a timely manner. *(Plaintiff's Exhibit 10)*

15. On October 22, 2024, counsel for Plaintiff served its Second Request for Production of Documents on XPO, which related specifically to telematics software used by XPO. *(Plaintiff's Exhibit 11)*

16.     On October 29, 2024, counsel for Plaintiff sent counsel for XPO a detailed correspondence again requesting the insurance coverage and declaration pages for XPO. In this letter, counsel for Plaintiff alternatively requested an affidavit from XPO concerning the existence of excess insurance coverage that would be potentially applicable to this wrongful death case. *(Plaintiff's Exhibit 12)*

17.     On November 1, 2024, as a final show of good faith and cooperation, counsel for Plaintiff sent counsel for XPO a detailed letter and ***agreed to voluntarily limit the scope of its request for supplementation*** with an updated due date of December 2, 2024. *(Plaintiff's Exhibit 13)*

18.     After multiple requests for further extensions of time by XPO, counsel for Plaintiff agreed to a new due date of December 23, 2024, for all supplemental discovery responses as it correlated with XPO's due date for responses to Plaintiff's Second Request for Production of Documents. *(Plaintiff's Exhibit 14)*

19.     On December 23, 2024, at 4:41pm, XPO served its responses to Plaintiff's November 1, 2024 supplementation request and also served its responses to Plaintiff's Second Request for Production of Documents. *(Plaintiff's Exhibit 15)*

20.     As with all responses served by XPO in this litigation to date, XPO's responses contained numerous improper objections and refusals to provide relevant and discoverable documents and information. XPO also refused to produce responsive and discoverable documents, materials, and files requested which were related to the telematics systems on board the subject tractor trailer.

21.     On December 24, 2024, counsel for Plaintiff advised counsel for XPO that the responses to Plaintiff's Second Request for Production of Documents and the supplementation in response to the November 1, 2024 correspondence were both woefully insufficient and counsel for Plainrtiff advised XPO that this Motion was forthcoming. *(Plaintiff's*

*Exhibit 16)*

22.     Throughout this litigation, XPO has continually and egregiously violated their obligations to Plaintiff and to this Court under the North Carolina Rules of Civil Procedure. XPO has exhibited a pattern of doing so over the course of the past six months, despite many attempts by Plaintiff's counsel to resolve these issues without judicial intervention.

23.     Plaintiff therefore request that the Court enter an Order:

    a. Compelling XPO to respond fully, completely, and without further objection to Plaintiff's First Interrogatories and First Requests for Production of Documents, and to produce all responsive documents, files, videos, photographs, and materials which are responsive thereto;

    b. Compelling XPO to respond fully, completely, and without further objection to Plaintiff's Second Request for Production of Documents, and to produce all responsive telematics documents, files, videos, photographs, and materials which are responsive thereto;

    c. Ordering that XPO produce declaration pages for the <u>entire tower of liability insurance coverage</u> as of the date of the subject collision which forms the basis of Plaintiff's First Amended Complaint;

    d. Overruling XPO's objections contained in XPO's Responses to Plaintiff's First Set of Interrogatories, First Request for Production of Documents and First Request for Admission as they were untimely;

    e. Entering any further relief available to Plaintiff under Rule 37(a).

24.     To the extent that Defendant XPO's violations of their obligations under these Rules are so egregious as to constitute failure to answer discovery, pursuant to Rule 37(d), Plaintiff further seeks that the Court enter any relief available under Rule 37(b).

**WHEREFORE**, Plaintiff moves that the Court enter an Order pursuant to Rule 37(a) of the North Carolina Rules of Civil Procedure:

1. Compelling XPO to respond fully, completely, and without further objection to Plaintiff's First Interrogatories and First Request for Production of Documents, and to produce all responsive documents, files, videos, photographs, and materials;

2. Compelling XPO to respond fully, completely, and without further objection to Plaintiff's Second Request for Production of Documents, and to produce all responsive documents, files, videos, photographs, and materials;

3. Ordering that XPO produce declaration pages for the entire tower of liability insurance coverage as of the date of the subject collision that forms the basis of Plaintiff's First Amended Complaint;

4. Overruling XPO's objections contained in XPO's Responses to Plaintiff's First Set of Interrogatories, First Request for Production of Documents and First Request for Admission as they were untimely;

5. Any further relief available to the Plaintiff under Rule 37(a).

6. Any further relief available to the Plaintiff under Rule 37(b) for any conduct for which the Court determines constitutes conduct so evasive that it constitutes the failure to answer discovery; and

7. For any further relief that the Court deems just and fit.

*[Signature on Next Page]*

This the 2nd day of January, 2025.

MUSSELWHITE, MUSSELWHITE,
BRANCH & GRANTHAM

J. William Owen, Esq.
N.C. Bar No. 47994
P.O. Box 1448
Lumberton, NC 28359
(910) 738-5277
wowen@mmbglaw.com

*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

This certifies that a copy of the foregoing *Plaintiff's Motion to Compel Against Defendant XPO Logistics Freight, Inc.* was served on all counsel of record, <u>via electronic mail only</u> addressed as follows:

Megan M. Stacy
Gordon Rees Scully Mansukhani, LLP
Le'Ron A. Byrd
150 Fayetteville St., Suite 1120
Raleigh, NC 27602
mstacy@grsm.com
lbyrd@grsm.com
*Counsel for Defendant XPO Logistics Freight, Inc. and Defendant* Lamb

Jennifer Welch
Cranfill Sumner
P.O. Box 27808
Raleigh, NC 27611-7808
JWelch@cshlaw.com
*Counsel for Counterclaim Defendant Cindy Smith, Adminsitratrix of the Estate of Mark K. Smith.*

This the 2nd day of January, 2025.

MUSSELWHITE, MUSSELWHITE,
BRANCH & GRANTHAM, P.A.

J. William Owen
NC State Bar No. 47994
606 N. Elm Street
Lumberton, NC 28358
wowen@mmbglaw.com
*Counsel for Plaintiff*

FILED
2025 JAN -2 A II: 17
ROBESON COUNTY, C.S.C.
BY

STATE OF NORTH CAROLINA

ROBESON COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
2025 JAN 21 P 12:23 34-CVS 468

ROBESON CO., C.S.C.
BY

CINDY SOLES SMITH, Administratrix
of the ESTATE OF MARK KEANNAN
SMITH

        Plaintiff,

v.

WILLIAM BRATTY LAMB and
XPO LOGISTICS FREIGHT, INC.

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

## ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL AGAINST DEFENDANT XPO LOGISTICS FREIGHT, INC.

THIS CAUSE came before the Undersigned on Plaintiff's Motion to Compel, and this Court, having read the pleadings, motion, and submissions of the Parties, and having heard the arguments of Counsel, and having concluded that Plaintiff's Motion to Compel should be granted, hereby issues the following Order pursuant to Rule 37(a) of the North Carolina Rules of Civil Procedure:

1.    Defendant XPO Logistics Freight, Inc.'s ("XPO") Responses to Plaintiff's First Interrogatories and First Requests for Production of Documents, XPO's First Supplemental Reponses to Plaintiff's First Interrogatories and Request for Production of Documents and XPO's Second Supplemental Responses to Plaintiff's First Interrogatories and First Request for Production of Documents contained numerous improper objections and did not comply with the North

1



Carolina Rules of Civil Procedure.

2. With respect to Plaintiff's First Set of Interrogatories and First Request for Production of Documents, Defendant XPO shall further supplement the following specific discovery request with full, complete, and substantive responses, without further objection, within thirty (30) days of the entry of this Order, specifically as follows:

a. Interrogatory No. 3 – XPO shall provide Plaintiff with a list of all claims or lawsuits filed against XPO involving serious injury or death for the past three years. This list should include a brief description of the parties, jurisdiction and the circumstances of each suit/claim and the disposition of each suit/claim.

b. Interrogatory No. 5: XPO shall provide Plaintiff with a detailed response to subsections (e)-(f) – which specifically includes information concerning any telematics software being used by XPO at the time of the subject crash on October 11, 2023.

c. Interrogatory No 6: XPO shall provide Plaintiff with a detailed and substantive response to subsections (c) and (d).

d. Interrogatory No. 7: XPO shall provide Plaintiff with detailed and substantive responses to subsections (a)-(e), which specifically includes the identities of any shippers, brokers, intended route, and when and how the load was to be delivered.

2

e. Interrogatory No. 14: XPO shall provide Plaintiff with a detailed and substantive response that sets forth and describes all formal and informal disciplinary and/or counseling actions regarding William Lamb undertaken by XPO at any time.

f. Interrogatory No. 15: XPO shall provide Plaintiff a detailed and substantive response setting forth all training and education (including on job training) provided by or on behalf of XPO to William Lamb relating to the operation of a commercial motor vehicle.

g. Interrogatory No. 22: XPO shall, in detail, identity of all policies, procedures, rules, guidelines, directives, manuals, handbooks and instructions that were in effect for William Lamb at the time of the subject crash.

h. Interrogatory No. 36: XPO shall provide the identities of all persons involved with the preventability analysis/determination concerning the subject crash of October 11, 2023, the dates of the review, and the conclusions that were reached.

i. Interrogatory No. 38: XPO shall identify and list the insurer, insured and policy limit(s) for any and all layers of liability insurance coverage that does or may provide coverage on behalf of XPO as of the date of the subject crash on October 11, 2023. This includes excess/layered liability coverage of any kind that would

3

or may provide coverage for this case, including disclosure of documents that reveal or relate to the entire tower of liability coverage afforded to XPO as of October 11, 2023.

j. <u>First Request for Production No. 2:</u> XPO shall provide Plaintiff a complete, unredacted copy of all document retention policies that were in effect at time of the subject crash of October 11, 2023.

k. <u>First Request for Production No. 3-4:</u> XPO shall provide declaration pages for all layers of coverage in the tower of liability coverage for XPO as of October 11, 2023 that does or may provide coverage for the subject crash of October 11, 2023. XPO shall also provide any reservation of rights letters or agreements regarding insurance coverage for the subject crash.

l. <u>First Request for Production No. 6:</u> XPO shall provide Plaintiff the contents of William Lamb's Driver Qualification File, Driver Investigation File, Driver History File and all documents that demonstrate compliance with federal and state driver qualification laws and regulations.

m. <u>First Request for Production No. 35:</u> XPO shall provide Plaintiff with all telematics data, videos, photos, and coaching sessions involving William Lamb from the date of hire through present.

n. <u>First Request for Production No. 42:</u> XPO shall provide Plaintiff with the Bill of Lading, Manifest, weight receipts, dispatch

4

documents/records and content summaries relating to the load

being transported by William Lamb on October 11, 2023.

o.  <u>First Request for Production No. 46:</u> XPO shall provide Plaintiff
with all documents relating to the preventability analysis and
determination relating to the subject crash of October 11, 2023,
including the conclusions of the preventability review/analysis.

p.  <u>First Request for Production No. 55-59:</u> XPO shall further
supplement its responses to First Request for Production No. 55-
59 and provide Plaintiff with all training materials, manuals,
policies, directives, handbooks, rules and other training materials
provided or used by its CDL drivers, including William Lamb. This
includes safety training videos, PowerPoints or other
demonstrative training materials used by XPO for its drivers,
including William Lamb.

q.  <u>First Request for Production 61</u>: XPO shall produce to Plaintiff
any document, article or presentation prepared and/or presented
by any XPO representative relating to the safe operation of a
commercial motor vehicle during the past five years.

r.  <u>First Request for Production No. 65</u>: XPO shall produce to Plaintiff
a fully unredacted version of XPO's Accident Register, which is
required to be maintained by federal law (49 CFR 390.15).

s.  <u>Request for Production 66:</u> XPO shall produce to Plaintiff all Rule

5

30(b)(6) deposition transcripts from corporate designees from XPO for litigation within the last 5 years that involve the following: (a) serious injury or death and (b) a left turn by XPO's driver. These transcripts shall be produced in an unredacted format.

3. Defendant XPO's Responses to Plaintiff's Second Requests for Production of Documents contained numerous improper objections and did not comply with the North Carolina Rules of Civil Procedure.

4. With respect to Plaintiff's Second Request for Production of Documents, Defendant XPO shall supplement the following specific responses with full, complete, and substantive responses without further objection, within thirty (30) days of the entry of this Order, specifically as follows:

    a. <u>Second Request for Production No. 1</u>: XPO shall produce to Plaintiff all telematics videos, datasets, photos, screenshots, comments, coaching sessions, events coached and session notes relating to William Lamb from the date of hire (09/09/20-present).

    b. <u>Second Request for Production No. 2:</u> XPO shall provide Plaintiff any documents that identify employees of XPO (or third parties) who have monitored telematics programs and/or telematics data for employee William Lamb from the date of hire (09/09/20-present).

    c. <u>Second Request for Production No. 4</u>: XPO shall produce to Plaintiff logs of all safety alerts received in the telematics safety

6

inbox or other location designated for William Lamb for 6-months prior to the subject crash on October 11, 2023 through present.

d. Second Request for Production No. 6: XPO shall produce to Plaintiff a printout of the Safety Score (or its equivalent) and the configuration page under any telematics program used by XPO for the 3-months prior to the subject crash of October 11, 2023 through present.

e. Second Request for Production No. 8: XPO shall produce to Plaintiff a printout of the alert configuration page for any telematics software used by XPO for the date of the subject crash (October 11, 2023).

f. Second Request for Production No. 9: XPO shall produce to Plaintiff all notifications in the telematics software inbox (or other similar location) for William Lamb for 6-months prior to the subject crash of October 11, 2023 through present.

g. Second Request for Production No. 10: XPO shall produce to Plaintiff documents relating to the telematics safety settings utilized for William Lamb's commercial vehicle.

h. Second Request for Production No. 11: XPO shall produce to Plaintiff documents relating to the safety settings in any telematics transportation management system or software as of the date of the subject crash of October 11, 2023.

7

i. <u>Second Request for Production No. 13:</u> XPO shall produce to Plaintiff the administrative username and password for any telematics software /safety management system being used by XPO as of the date of the subject crash of October 11, 2023 in order for Plaintiff's consultant(s) to assess the transportation management system account for data and information relating specifically to (a) the subject crash of October 11, 2023 and (b) William Lamb.

j. <u>Second Request for Production No. 14</u>: XPO shall produce a complete full-length, uncut and unredacted version of any and all video footage from the date of the subject crash of October 11, 2023.

5. To the extent that Defendant XPO claims that a document or set of documents is not within their possession or control, Defendant XPO shall specifically identify the document(s), the custodian of the document(s), the efforts made to obtain the document(s), and, to the extent that any document was destroyed, the date of destruction and the identity of the individual(s) who authorized the destruction of any such document(s).

6. To the extent that Defendant XPO claims that a document or documents are protected from disclosure pursuant to the attorney-client or work product privileges, Defendant XPO shall provide detailed privilege logs that set forth with particularity the document or documents, the author of the

8

document(s), the recipient of the document(s), and a description of the document(s) being withheld sufficient for the Plaintiff to evaluate the claim of privilege.

7. To the extent that the Parties cannot agree on whether a document is subject to the attorney-client or work-product privileges, the Party that is asserting the privilege shall submit the materials to the Undersigned for *in camera* review.

8. The Court finds and concludes that the Consent Protective Order previously entered in this Action provides adequate protection for any materials subject to any alleged trade secret, confidential, or proprietary privileges.


**IT IS SO ORDERED.**

This the 21 day of January, 2025.


HONORABLE JAMES GREGORY BELL
Senior Resident Superior Court Judge
Presiding

9

STATE OF NORTH CAROLINA
COUNTY OF ROBESON

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
24-CVS-468

CINDY SOLES SMITH, Administratrix of the
ESTATE OF MARK KEANNAN SMITH,

    Plaintiff/Counterclaim-Defendant,

    v.

WILLIAM BRATTY LAMB,

    Defendant,

    and

XPO LOGISTICS FREIGHT, INC.

    Defendant/Counterclaim-Plaintiff.

**DEFENDANT XPO LOGISTICS
FREIGHT, INC.'s**

**THIRD SUPPLEMENTAL RESPONSES
TO PLAINTIFF'S FIRST SET OF
INTERROGATORIES AND REQUESTS
FOR PRODUCTION OF DOCUMENTS**

**-and-**

**FIRST SUPPLEMENTAL RESPONSES
TO PLAINTIFF'S SECOND SET OF
REQUESTS FOR PRODUCTION**

Pursuant to the North Carolina Rules of Civil Procedure and the Court's Order on Plaintiff's Motion to Compel, Defendant/Counterclaim-Plaintiff XPO Logistics Freight, Inc. ("XPO" or "Defendant"), by and through the undersigned counsel, hereby provides its third supplemental responses to the First Set of Interrogatories and Requests for Production of Documents and first supplemental responses to the Second Set of Requests for Production of Documents, both served by Plaintiff/Counterclaim-Defendant Cindy Soles Smith, Administratrix of the Estate of Mark Keannan Smith ("Plaintiff").

## FIRST SET OF INTERROGATORIES

**3.     For each claim (formal or informal) and lawsuit wherein it is/was suggested or alleged that any person was injured or killed as a result of XPO's driver's actions in the past three years, provide the style of the case (or name of parties, jurisdiction and case number), and describe briefly the circumstances of each suit/claim and the disposition.**

**ANSWER:** Objection. Defendant objects to this Interrogatory to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant further objects to this Interrogatory to the extent it seeks information in the possession of or equally accessible to Plaintiff. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery. Defendant also objects to the extent that this request seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other



privilege. Subject to and without waiving these objections, Defendant identifies the instant litigation, which is the only civil lawsuit involving the Co-Defendant William Lamb. By way of further response, any additional lawsuits involving XPO are a matter of public record and are equally accessible to the Plaintiff.

**SUPPLEMENTAL RESPONSE** (12/23/24): Objection. As an initial matter, XPO does not keep a registrar of informal claims where a person was injured or killed as a result of XPO's driver's actions. XPO is a provider of freight transportation services. It moves goods through its customers supply chains in North America and Europe. A basic Westlaw search will reveal that there are 800+ cases with opinions drafted by Courts around the nation detailing XPO matters as of the date of these responses. Further, and more notably, any written response detailing <u>every</u> suit over the last three years with a detailed description would be an extremely inefficient and ineffective task for information not related to this action. Simply put, any request for the undersigned counsel to briefly describe the circumstances of each suit, claim, and disposition **is** undoubtedly overbroad, neither relevant, and would easily subject XPO to undue burden and expense. Given that, and unless counsel for Plaintiff provides an extremely narrowed scope with respect to this request, and/or absent Court Order, XPO will not provide an egregiously long summary detailing <u>every</u> formal or informal claim or suit where an individual has been injured as a result of XPO's driver's actions.

> **Supplemental Response** (Feb. 2025): In response to the Court's Order on Plaintiff's Motion to Compel, XPO filed a Motion for Reconsideration that includes a request for the Court to Reconsider the provision of the Order pertaining to this Interrogatory. XPO will revise and/or supplement this response, as necessary, upon receipt of the Court's ruling on its Motion for Reconsideration.

    **5.** With respect to the <u>tractor</u> operated by William Lamb at the time of the Subject Incident, provide the following information:

    **E)** Identify all systems and devices of any kind in or on the tractor that allowed for communication between the driver and any other person or entity, state whether the data for the time period surrounding the Subject Incident has been preserved, and identify the person who has custody of the data and of the system from which the data was acquired.

    **F)** Identify all systems and devices of any kind in or on the tractor that has the capability to monitor, record, and/or transmit data (this includes, but is not limited to, Qualcomm, TransCore, SkyBitz, Fluensee, Fleetilla, Teletrac, Lat-Lon, Telogis, GeoLogic, Cheetah, Xata, PeopleNet or similar system; any collision or lane departure warning system; any driver safety monitoring or hours of service monitoring system; any transponders or tachographs; any onboard cameras or video devices; any bar code or toll pass systems; and any other tracking system, logging unit, trip monitor, trip recorder, GPS system, satellite systems, or cellular systems), state whether the data for the time period surrounding the Subject Incident has been preserved, and identify the person who has custody of the data and of the system from which the data was acquired.

**ANWSWER:** Objection. Defendant objects to this Interrogatory to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Interrogatory to the extent it requests XPO to gather and compile information related to maintenance for a period of 12 months before the Subject Incident, as this information is well outside of the relevance and purview of this action. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery. Defendant also objects to the extent that this request seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other privilege

Subject to and without waiving the above objections, Defendant is the owner of the tractor operated by Defendant William Lamb at the time of the Subject Incident. Defendant further references and incorporates the documents produced in connection with Defendant's Responses to Plaintiff's First Set of Request for Production of Documents.

**SUPPLEMENTAL RESPONSE** (12/23/24): XPO is the registered owner of the tractor that was operated by Co-Defendant William Lamb at the time of the Subject Incident. XPO no longer has access to the mileage and gross weight of the vehicle at the time of the Subject Incident. The serial number for the vehicle is 7F21D4823L2000426. The tech spec number for the 48' Large Trailer was 20XPO48PLG. The Vin Number is 3AKBGADV9GSHB2477. The tractor had devices and systems that were capable of recording and/or transmitting data about the operation of the tractor. Those systems included an Engine Control Module (ECM) which records and monitors engine performance data. Additionally, the tractor included an Electronic On-Board Recorder (EOBR). Following the incident, XPO downloaded a print out (produced alongside these supplemental responses) of recorded information on or around December 14, 2023. The vehicle model is a 2016 Freightliner Cascadia. The engine S/N No. is 471927S0368009.

---

**Supplemental Response** (Feb. 2025): With respect to subsections (e) and (f) of this request, XPO previously identified all systems and devices in the tractor at the time of the incident (ECM and EOBR). The material from the date of the incident was preserved and is in the custody of XPO. These materials were also previously produced at Bates XPO000052-0056, XPO00001786-1794, and XPO00001795-1814. All responsive information in XPO's possession, custody, or control have been produced.

---

6. **With respect to the <u>trailer</u> operated by William Lamb at the time of the Subject Incident, provide the following information:**

C) **Identify all systems and devices in/on the trailer that have the capability of recording any data about the operation of the trailer (including without limitation ABS control module, etc.), state whether or not that data has been preserved and/or downloaded, and if so, when and by whom.**

D) **Identify all systems and devices of any kind in or on the trailer that has the capability to monitor, record, and/or transmit data (this includes, but is not limited**

3

to, any transponders or tachographs; any bar code systems; and any other tracking system, logging unit, GPS system, satellite systems, or cellular systems), state whether the data for the time period surrounding the Subject Incident has been preserved, and identify the person who has custody of the data and of the system from which the data was acquired.

**ANSWER:** Objection. Defendant objects to this Interrogatory to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Interrogatory to the extent it requests XPO to gather and compile information related to maintenance for a period of 12 months before the Subject Incident, as this information is well outside of the relevance and purview of this action. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery.

Subject to and without waiving the above objections, Defendant is the owner of the trailer operated by Defendant William Lamb at the time of the Subject Incident. Defendant further references and incorporates the documents produced in connection with Defendant's Responses to Plaintiff's First Set of Request for Production of Documents.

**SUPPLEMENTAL RESPONSE** (12/10/24): XPO is the registered owner of the trailer that was operated by Co-Defendant William Lamb at the time of the Subject Incident. XPO no longer has access to the mileage and gross weight of the vehicle at the time of the Subject Incident. The serial number for the vehicle is 7F21D4823L2000426. The tech spec number for the 48' Large Trailer was 20XPO48PLG. The Vin Number is 3AKBGADV9GSHB2477. The vehicle model is a 2016 Freightliner Cascadia. The tractor is equipped with systems capable of monitoring, recording, and/or transmitting data. Namely, the Engine Control Module, Electronic On-Board Recorder. The data for the time period surrounding the Subject Incident, namely, the DVIR data has been preserved as a part of standard record-keeping for vehicle inspections and produced herewith.

> **Supplemental Response** (Feb. 2025): With respect to subsections (c) and (d) of this request, XPO previously identified all systems and devices in the trailer at the time of the incident (ECM and EOBR). The material from the date of the incident was preserved and is in the custody of XPO. These materials were also previously produced at Bates XPO000052-0056, XPO00001786-1794, and XPO00001795-1814. All responsive information in XPO's possession, custody, or control have been produced.

7.      With respect to the trip that William Lamb was on at the time of the Subject Incident, provide the following information:

(a)     Identify all shippers and brokers involved;
(b)     Explain where and when (date and time) William Lamb picked up the load he had at the time of the Subject Incident;
(c)     Identify where (name and address of location) and when (date and time) the load was to be delivered;
(d)     Identify the location, time, duration and reason for each stop William Lamb

4

> made from the time he picked up the load until the time of the Subject Incident; and

   (e)   Identify the route William Lamb intended to follow from the point of origin to the point of destination.

**ANSWER: Objection.** Defendant objects to this Interrogatory to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Interrogatory to the extent it seeks information that is confidential or proprietary. Specifically, Defendant objects to this Interrogatory to the extent it requests information related to all parties involved, trip and company information, in addition to the intended route and point of origin to the point of the destination. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery.

Subject to and without waiving these objections, Defendant has produced relevant, responsive, non-privileged documents containing information responsive to this request and references and incorporates same in its response to this request.

**SUPPLEMENTAL RESPONSE** (12/10/24): XPO maintains its objection with respect to this Interrogatory, specifically, given that it seeks information that is not relevant to the claims or defenses in this case and is not reasonably calculated to lead to the discovery of admissible evidence. Specifically, the incident in question involves Plaintiff crashing into the Defendant's truck, and the Plaintiff's requests for detailed information about the trip, including shipping, brokers, and specific route details, do not pertain to the liability or circumstances surrounding the crash. Further the information requested is overly broad, speculative, and concerns the operational details of the trip that are unrelated to the facts of the crash itself. The request for information on stops, route, and load details is especially irrelevant as it does not address the causation of the collision or the Plaintiff's conduct in the incident. Therefore, these requests are disproportionate to the needs of the case and are unduly burdensome. As suggested in Defendant's initial responses, Defendant will provide any relevant, non-privilege documents or information regarding the tractor and trailer involved in the incident, but objects to this Interrogatory as it seeks irrelevant information beyond the scope of the issues raised by Plaintiff's own claims.

> **Supplemental Response** (Feb. 2025): XPO is producing a manifest for the date of the incident as well as a bill of lading that includes the date of the incident, both of which contain information responsive to this request. All responsive information in XPO's possession, custody, or control have been produced.

   14.   **Identify and describe all formal and informal disciplinary and/or counseling actions undertaken by XPO regarding William Lamb at any time.**

**ANSWER: Objection.** Defendant objects to this Interrogatory to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during

Subject to and without waiving the above objections, none. By way of further response, Defendant references and directs Plaintiff to the personnel file produced alongside Defendant's Responses to Plaintiff's First Set of Requests for Production of Documents.

**SUPPLEMENTAL RESPONSE** (12/23/24): Co-Defendant William Lamb was never the subject of any informal or formal disciplinary action. On occasions, William Lamb was notified of tardiness or driving corrections but not informal or formal disciplinary actions.

**Supplemental Response** (Feb. 2025): XPO previously produced the complete personnel file for William Lamb, which contains all responsive information in its possession, custody, or control.

15. **Describe in detail <u>all</u> training and education (including on the job training) provided by or on behalf of XPO to William Lamb at any time and in any way related to the operation of a commercial motor vehicle.**

**ANSWER: Objection.** Defendant objects to this Interrogatory to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery.

Subject to and without waiving the above objections, Defendant references and directs Plaintiff to the personnel file produced alongside Defendant's Responses to Plaintiff's First Set of Requests for Production of Documents.

**SUPPLEMENTAL RESPONSE** (12/23/24): XPO Logistics provides a comprehensive driver training program to ensure William Lamb meets safety standards and operational efficiency. The program includes hands-on training and on-going development to support professional growth and safety on the road. On or around December 2020 and January 2021, XPO through personnel member, Bradley Lutz, engaged in a coaching session to make sure Co-Defendant William Lamb followed proper protocols when operating an XPO vehicle. Mr. Lutz ensured Mr. Lamb was trained in defensive driving techniques, hazard recognition, accident-avoidance strategies, and emergency procedures. Further, and during the process, Mr. Lutz emphasized compliance with federal and state safety regulations, including hours of service, weight limits, and vehicle inspections. During those coaching sessions, Mr. Lutz would inform Mr. Lamb of his driving speed, vehicle awareness, and safety. Mr. Lamb also underwent an initial training program on the use of technology such as electronic logging devices (ELDs).

**Supplemental Response** (Feb. 2025): XPO previously produced the complete personnel file for William Lamb, which contains all responsive information in its possession, custody, or control. All responsive information in XPO's possession, custody, or control have been produced.

**22.** Identify all XPO policies, procedures, rules, guidelines, directives, manuals, handbooks and instructions that were in effect for William Lamb at the time of the Subject Incident.

**ANSWER: Objection.** Defendant objects to this Interrogatory to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Specifically, Defendant objects to the broad nature of identifying all company, policies, rules, guidelines, directives, manuals, handbooks and other information irrespective or pertinent to this action as irrelevant. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery. Defendant also objects to the extent that this request seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other privilege.

Subject to and without waiving the above objections, Defendant has produced relevant, responsive, non-privileged documents containing information responsive to this request and references and incorporates same in its response to this request.

**SUPPLEMENTAL RESPONSE** (12/23/24): XPO Logistics provides an Employee Handbook and Supplement that includes XPO policies, procedures, rules, guidelines, directives, and instructions. These documents were produced alongside XPO's First Set of Supplemental Responses to Plaintiff's First Set of Discovery Requests.

> **Supplemental Response** (Feb. 2025): XPO previously produced responsive materials. XPO also produces additional responsive non-privileged policies, procedures, rules, guidelines, directives, manuals, handbooks, and instructions that were in effect for William Lamb at the time of the incident and contain information responsive to this request. All responsive information in XPO's possession, custody, or control has been produced.

**36.** If XPO has performed any review (e.g., accident review board, preventability determination) of the Subject Incident to determine preventability and/or fault, identify all persons involved in the review, the dates of the review and the conclusions that were reached.

**ANSWER: Objection.** Defendant objects to this Interrogatory to the extent it is overbroad as to scope. Defendant objects to this Interrogatory to the extent it requires information protected by privilege, including without limitation the attorney-client privilege and/or the work-product doctrine. Defendant objects to this Interrogatory to the extent it seeks the premature discovery of expert testimony, inconsistent with North Carolina Rules of Civil Procedure. Defendant further objects to this Interrogatory to the extent it seeks discovery of expert information not required to be disclosed by the North Carolina Rules of Civil Procedure relating to experts, a Discovery Scheduling Order to be entered in this case, and/or case law interpreting the North Carolina Rules of Civil Procedure relating to expert disclosure. Defendant objects to this Interrogatory to the extent it seeks information that is confidential or proprietary.

Subject to and without waiving the above objections, Defendant has produced relevant, responsive, non-privileged documents containing information responsive to this request and references and incorporates same in its response to this request.

**SUPPLEMENTAL RESPONSE** (12/23/24): Other than retention of counsel and an internal review of all statements submitted by William Lamb to the police, criminal charges, drug tests results, and dash cam video, XPO did not perform any review specifically to determine fault. However, XPO did conduct preventability review as defined by XPO.

> **Supplemental Response** (Feb. 2025): XPO did perform an internal preventability analysis is producing all non-privileged documents relative to same.

    **38.** For each insurance policy of any kind that does or may provide any coverage on behalf of any XPO (whether it is your policy or anyone else's policy) for damages/injuries alleged in this case, provide: name of insurer; policy number; limits of coverage; the name(s) of all insureds; and state whether any insurer has offered a defense under a reservation of rights or otherwise contested coverage for the subject case.

**ANSWER: Objection.** Defendant objects to this Interrogatory to the extent it is overbroad as to scope. Further, Defendant objects to this Interrogatory to the extent it assumes facts either not true or proven. Specifically, Defendant objects to Plaintiff's statement that Plaintiff's injuries were caused in whole or in part by Defendant. Defendant objects to this Interrogatory to the extent it seeks information that is confidential or proprietary. Defendant also objects to this interrogatory to the extent that it seeks a legal opinion concerning coverage; the undersigned makes no representations concerning coverage.

Subject to and without waiving these objections, Defendant has requested a copy of the responsive policy(ies) and will produce to Plaintiff upon receipt of same.

**SUPPLEMENTAL RESPONSE** (12/23/24): As noted in XPO's document production, XPO is currently insured with Chubb. XPO is not aware of any additional insurance policy that would allow for coverage based on Plaintiff's allegations detailed in its Complaint and Plaintiff's response to XPO's Request for Statement of Monetary Relief.

> **Supplemental Response** (Feb. 2025): XPO is producing four additional documents that contain information responsive to this request including, without limitation, Reservation of Rights letters, self insured retention and excess policies as well as an SIR deductible endorsement.

### FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS

    **2.** A copy of each document retention policy in effect for XPO at any time between the time of the Subject Incident and present.

**RESPONSE: Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the

discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

Subject to and without waiving these objections, Defendant will supplement its response following the submission of a Protective Order in this action.

**SUPPLEMENTAL RESPONSE** (12/23/24): XPO does have a document retention policy. XPO will supplement with its policy.

**Supplemental Response** (Feb. 2025): All responsive documents in XPO's possession, custody, or control have been produced.

    3.    **A copy of each insurance policy (and declarations page for each policy) that provides or may provide coverage for damages sustained in the Subject Incident.**

**RESPONSE: Objection.** Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

Subject to and without waiving these objections, Defendant has requested a copy of the responsive policy(ies) and will produce to Plaintiff upon receipt of same.

**SUPPLEMENTAL RESPONSE** (12/23/24): XPO produced all responsive documents to the above-referenced request in its first set of supplemental responses to Plaintiff's First Set of Requests for Production of Documents.

**Supplemental Response** (Feb. 2025): All responsive documents in XPO's possession, custody, or control have been produced.

    4.    **Copies of all reservation of rights letters and/or agreements regarding insurance coverage for the Subject Incident.**

**RESPONSE: Objection.** Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

Subject to and without waiving these objections, Defendant has requested a copy of the responsive policy(ies) and will produce to Plaintiff upon receipt of same.

**SUPPLEMENTAL RESPONSE** (12/23/24): XPO produced all responsive documents to the above-referenced request in its first set of supplemental responses to Plaintiff's First Set of Requests for Production of Documents.

**Supplemental Response** (Feb. 2025): All responsive documents in XPO's possession, custody, or control have been produced.

    6.    **The contents of William Lamb's driver qualification file, driver investigation file, driver history file and all documents that demonstrate compliance with federal and state**

9

driver qualification laws and regulations. **The requested documents include, but are not limited to all documents required by FMCSR, 49 CFR Part 391, and the state equivalent thereto. If any responsive documents have been removed from the driver qualification file, these should be produced nonetheless.**

**RESPONSE: Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

Subject to and without waiving these objections, Defendant has produced relevant, responsive, non-privileged documents in response to this request.

**SUPPLEMENTAL RESPONSE** (12/23/24): To the best of its knowledge, XPO produced all responsive documents to the above-referenced request in its first set of supplemental responses to Plaintiff's First Set of Requests for Production of Documents. To the extent responsive documents become available, XPO will supplement in connection with these supplemental responses.

**Supplemental Response** (Feb. 2025): All responsive documents in XPO's possession, custody, or control have been produced.

   **35. If the tractor was equipped with any on-board audio or video recording or monitoring devices and/or any other driver or driver safety monitoring system, please produce everything that was retrieved or could be retrieved from such devices and systems.**

**RESPONSE: Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

Subject to and without waiving these objections, Defendant incorporates and references documents produced alongside these responses.

**SUPPLEMENTAL RESPONSE** (12/23/24): XPO produced all responsive documents to the above-referenced request in its first set of supplemental responses to Plaintiff's First Set of Requests for Production of Documents.

**Supplemental Response** (Feb. 2025): All responsive documents in XPO's possession, custody, or control have been produced. XPO does not maintain data unless there is a triggering event.

   42.   **All documents that relate to the load being hauled by William Lamb at the time of the Subject Incident, including, by way of example and without limitation, all manifests, bills of lading, weight receipts, dispatch documents, content summaries, and documents that address the contents, ownership, pick-up, detainment, and delivery of the load.**

10

**RESPONSE: Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery.

**SUPPLEMENTAL RESPONSE** (12/23/24): XPO will supplement its document production to include Bill of Lading (BOL) documents, as requested in Plaintiff's November 1, 2024 meet and conferral letter, to the extent, if any in XPO's possession.

> **Supplemental Response** (Feb. 2025): XPO is producing a manifest for the date of the incident as well as a bill of lading that includes the date of the incident, both of which contain information responsive to this request. All responsive documents in XPO's possession, custody, or control have been produced.

46.    **All documents assessing preventability of and/or fault for the Subject Incident.**

**RESPONSE: Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant further objects to this Request to the extent it's premature and discovery is on-going. Defendant objects to this Request to the extent it seeks the premature discovery of expert testimony, inconsistent with North Carolina Rules of Civil Procedure. Defendant further objects to this Request to the extent it seeks discovery of expert information not required to be disclosed by the North Carolina Rules of Civil Procedure relating to experts, a Discovery Scheduling Order to be entered in this case, and/or case law interpreting the North Carolina Rules of Civil Procedure relating to expert disclosure. Defendant objects to this Request to the extent it requires information protected by privilege, including without limitation the attorney-client privilege and/or the work-product doctrine. Defendant further objects to this Request to the extent it seeks a legal conclusion. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery.

Subject to and without waiving the above objections, Defendant will produce all reports created for disclosure by Defendant's retained expert(s) when appropriate. Further, Defendant has produced relevant, responsive, non-privileged documents in response to this request.

**SUPPLEMENTAL RESPONSE** (12/23/24): XPO is not in possession of the above-referenced documents.

> **Supplemental Response** (Feb. 2025): All responsive documents in XPO's possession, custody, or control have been produced.

55.    **Copies of all XPO policies, procedures, rules, guidelines, directives, manuals, handbooks and instructions that were in effect at the time of the Subject Incident, relating to:**

11

    a. **Working for or with trucking company generally (e.g., employee manual or handbook);**
    b. **Operation of any motor vehicle (e.g., driving manuals or handbooks, and the like);**
    c. **Operation of a commercial vehicle;**
    d. **Driving safety;**
    e. **Defensive driving;**
    f. **Compliance with federal and state laws and regulations;**
    g. **Accident investigation;**
    h. **Accident review boards;**
    i. **Determination of preventability of accidents;**
    j. **Hiring, training and supervising drivers; and**
    k. **Disciplinary actions.**

**RESPONSE: Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary. Defendant also objects to the extent that this request seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other privilege.

Subject to and without waiving these objections, Defendant will supplement its response following the submission of a Protective Order in this action.

**SUPPLEMENTAL RESPONSE** (12/23/24): XPO produced all responsive documents to the above-referenced request in its first set of supplemental responses to Plaintiff's First Set of Requests for Production of Documents.

> **Supplemental Response** (Feb. 2025): In response to the Court's Order on Plaintiff's Motion to Compel, XPO filed a Motion for Reconsideration that includes a request for the Court to Reconsider the provision of the Order pertaining to this Interrogatory. XPO will revise and/or supplement this response, as necessary, upon receipt of the Court's ruling on its Motion for Reconsideration.

    56.    **Copies of each document that William Lamb signed to prove that William Lamb received and/or agreed to be bound by any policies, procedures, rules, guidelines and/or standards of XPO.**

**RESPONSE: Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

Subject to and without waiving these objections, Defendant will supplement its response following the submission of a Protective Order in this action.

**SUPPLEMENTAL RESPONSE** (12/23/24): XPO produced all responsive documents to the above-referenced request in its first set of supplemental responses to Plaintiff's First Set of Requests for Production of Documents.

> **Supplemental Response** (Feb. 2025): In response to the Court's Order on Plaintiff's Motion to Compel, XPO filed a Motion for Reconsideration that includes a request for the Court to Reconsider the provision of the Order pertaining to this Interrogatory. XPO will revise and/or supplement this response, as necessary, upon receipt of the Court's ruling on its Motion for Reconsideration.

57. **To the degree that XPO has any rules, policies, procedures, guidelines, driving manuals, employee handbooks or manuals, or other similar documents that were not provided to William Lamb before the Subject Incident, please produce them now.**

**RESPONSE: Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary. Defendant also objects to the extent that this request seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other privilege.

Subject to and without waiving these objections, Defendant will supplement its response following the submission of a Protective Order in this action.

**SUPPLEMENTAL RESPONSE** (12/23/24): XPO produced all responsive documents to the above-referenced request in its first set of supplemental responses to Plaintiff's First Set of Requests for Production of Documents.

> **Supplemental Response** (Feb. 2025): In response to the Court's Order on Plaintiff's Motion to Compel, XPO filed a Motion for Reconsideration that includes a request for the Court to Reconsider the provision of the Order pertaining to this Interrogatory. XPO will revise and/or supplement this response, as necessary, upon receipt of the Court's ruling on its Motion for Reconsideration.

58. **A complete copy of, or in the alternative, access to, each driver safety training film, video, videotape, videocassette, audio cassette, computer program, simulator, driver diagnostic record or test, maintained by your company, or used by XPO, its personnel, agents, or employees during the year of the Subject Incident and three years prior.**

**RESPONSE: Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

Subject to and without waiving these objections, Defendant will supplement its response following the submission of a Protective Order in this action.

13

**SUPPLEMENTAL RESPONSE** (12/23/24): XPO will supplement its document production, to the extent any supplemental files exist.

> **Supplemental Response** (Feb. 2025): In response to the Court's Order on Plaintiff's Motion to Compel, XPO filed a Motion for Reconsideration that includes a request for the Court to Reconsider the provision of the Order pertaining to this Interrogatory. XPO will revise and/or supplement this response, as necessary, upon receipt of the Court's ruling on its Motion for Reconsideration.

    59.    **Copies of all industry and/or other guidelines and/or practices that you rely upon to support your contentions in this case.**

**RESPONSE: Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

Subject to and without waiving these objections, Defendant will supplement its response following the submission of a Protective Order in this action.

**SUPPLEMENTAL RESPONSE** (12/23/24): XPO will supplement its document production, to the extent any responsive documents exist.

> **Supplemental Response** (Feb. 2025): In response to the Court's Order on Plaintiff's Motion to Compel, XPO filed a Motion for Reconsideration that includes a request for the Court to Reconsider the provision of the Order pertaining to this Interrogatory. XPO will revise and/or supplement this response, as necessary, upon receipt of the Court's ruling on its Motion for Reconsideration.

    **61. A copy of each document (including articles and presentations) prepared and/or presented by any XPO representative relating to the safe operation of a commercial motor vehicle and/or the safe operation of a trucking company in the past five years.**

**RESPONSE: Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary. Defendant also objects to the extent that this request seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other privilege.

**SUPPLEMENTAL RESPONSE** (12/23/24): XPO produced all responsive documents to the above-referenced request in its first set of supplemental responses to Plaintiff's First Set of Requests for Production of Documents.

14

> **Supplemental Response** (Feb. 2025): In response to the Court's Order on Plaintiff's Motion to Compel, XPO filed a Motion for Reconsideration that includes a request for the Court to Reconsider the provision of the Order pertaining to this Interrogatory. XPO will revise and/or supplement this response, as necessary, upon receipt of the Court's ruling on its Motion for Reconsideration.

### 65. A copy of XPO's accident register maintained as required by 49 CFR § 390.35.

**RESPONSE: Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

**SUPPLEMENTAL RESPONSE** (12/23/24): XPO maintains its objection to producing an entire copy of its accident register. Specifically, Defendant objects to the request for production of an "accident registrar" of XPO as it seeks documents that are not relevant to the claims or defenses in this case. The incident in question involves the Plaintiff crashing into to the Defendant's truck, and the Plaintiff's request for an accident registrar is overly broad and not related to the facts of the crash or the Plaintiff's conduct leading to the incident. An accident registrar may document past incidents that are not connected to this specific case or the actions of the Plaintiff. Further, the requested documents are likely irrelevant to the cause of the accident or determining liability in this matter. Further, the request is disproportionate to the needs of the case, as it involves a general catalog of past accidents, which do not provide relevant information regarding the subject incident. Therefore, the Defendant objects to this request on grounds of relevance and proportionality under the applicable rules of civil procedure.

> **Supplemental Response** (Feb. 2025): XPO is producing relevant materials in response to this request.

### 66. Transcripts or recordings of all depositions of corporate designees for XPO given in the past five years in cases where it was alleged that a driver working for XPO caused injury or death to another person.

**RESPONSE: Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery. Defendant also objects to the extent that this request seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other privilege.

**SUPPLEMENTAL RESPONSE** (12/23/24): November 1, 2024, Plaintiff limited the scope of the above-referenced request to 30(b)(6) deposition transcripts from XPO designees within the last 5-years for incidents involving an XPO driver making a left turn that resulted in serious injuries or death to third parties. As noted above, XPO is a provider of freight transportation services. It moves goods through its customers supply chains in North America and Europe. A basic Westlaw

15

search will reveal that there are 800+ cases with opinions drafted by Courts around the nation detailing XPO matters as of the date of these responses. Further, and more notably, even with Plaintiff's limited scope, the request **is** still undoubtedly overbroad, neither relevant, and would easily subject XPO to undue burden and expense. Given that, and/or absent Court Order, XPO will not produce a plethora of 30(b)(6) transcripts where it can conduct its own 30(b)(6) concerning the facts relevant and pertinent to this case concerning the Subject Collision.

> **Supplemental Response** (Feb. 2025): In response to the Court's Order on Plaintiff's Motion to Compel, XPO filed a Motion for Reconsideration that includes a request for the Court to Reconsider the provision of the Order pertaining to this Interrogatory. XPO will revise and/or supplement this response, as necessary, upon receipt of the Court's ruling on its Motion for Reconsideration.

## SECOND REQUESTS FOR PRODUCTION OF DOCUMENTS

1.     All telematics data (specifically including but not limited to:  videos, screenshots, coaching sessions, behaviors coached, event coached, comments, event notes and session notes) for William Lamb from date of hire (09-09-20) through present.

**RESPONSE: Objection.** Defendant objects to this Interrogatory as vague and ambiguous and to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

To the best of its knowledge, XPO produced all responsive documents to the above-referenced request in its first set of supplemental responses to Plaintiff's First Set of Requests for Production of Documents. To the extent responsive documents become available, XPO will supplement in connection with these supplemental responses.

> **Supplemental Response** (Feb. 2025): All responsive documents in XPO's possession, custody, or control have been produced. XPO does not maintain data unless there is a triggering event.

2.     Any documents that reflect the identity of employees of XPO Logistics Freight Inc. (or any third parties) who regularly monitored or reviewed telematics data (including but not limited to Lytx software) for employee William Lamb from the date of hire (09-09-20) through present.

**RESPONSE: Objection.** Defendant objects to this Interrogatory as vague and ambiguous and to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

There is not a single individual specifically assigned to regularly review all telematics data for employee William Lamb. Further, telematics is not routinely reviewed for every employee on a continuous basis, and as such, no one individual is tasked with monitoring or reviewing all of the data generated. The Defendant does not maintain a centralized list of employees or third parties who regularly reviewed telematics data.

> **Supplemental Response** (Feb. 2025): All responsive documents in XPO's possession, custody, or control have been produced.

    4.      With respect to any telematics software being used by XPO Logistics Freight, Inc, produce the log of all safety alerts received in the safety inbox or other location designated for William Lamb for 6-months prior to the Subject Incident through present.

**RESPONSE: Objection.** Defendant objects to this Interrogatory as vague and ambiguous and to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. The request seeks the production of logs for all safety alerts received in the safety inbox or any other location designated for employee William Lamb for a six-month period prior to the Subject Incident through the present. This request is overly broad and seeks information that is not relevant to the issues at hand, which involve the Plaintiff's collision with the Defendant's truck. The requested safety alerts pertain to operational data that does not have a direct bearing on the causation of the subject incident, or the actions of the parties involved in the crash. The request for a six-month period of alerts is excessive, as it extends well beyond the specific circumstances of the incident. The data sought is not pertinent to establishing liability or understanding the events leading up to the crash. Moreover, complying with this request would impose an undue burden, as it would require the review and production of a potentially vast amount of data that may not be relevant to the claims or defenses in this case.

> **Supplemental Response** (Feb. 2025): All responsive documents in XPO's possession, custody, or control have been produced.

    6. With respect to any telematics software being used by XPO Logistics Freight, Inc., produce a printout of the Safety Score and the configuration page for William Lamb for 3-months prior to the Subject Incident through present.

**RESPONSE: Objection.** Defendant objects to this Interrogatory as vague and ambiguous and to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

Defendant is not in possession of these documents containing Safety Score to the best of its knowledge. Defendant will supplement this response to the extent these documents become available.

> **Supplemental Response** (Feb. 2025): XPO's safety score is a matter of public record via the Federal Motor Carrier Safety Administration website fmcsa.gov and XPO is producing this material as well.

    8.      With respect to any telematics software being used by XPO Logistics Freight, Inc., produce a printout of the alert configuration page for the date of the Subject Incident.

17

**RESPONSE: Objection.** Defendant objects to this Interrogatory as vague and ambiguous and to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving these objections, please see the documents produced in connection with these responses.

> **Supplemental Response** (Feb. 2025): All responsive documents in XPO's possession, custody, or control have been produced.

9.      With respect to any telematics software being used by XPO Logistics Freight, Inc, produce all notifications in the inbox (or other similar location) for William Lamb for 6-months prior to the Subject Incident through present.

**RESPONSE: Objection.** Defendant objects to this Interrogatory as vague and ambiguous and to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. The request seeks the production of all notifications in the inbox (or other similar location) for William Lamb for a six-month period prior to the Subject Incident through the present. However, this request is not relevant to the claims or defenses in this case, which concern the Plaintiff's collision with the Defendant's truck. The notifications sought by the Plaintiff, which likely pertain to operational or procedural communications unrelated to the subject incident, do not have a direct bearing on the events surrounding the crash or the actions of either party involved. The focus of the case is on the cause and circumstances of the crash, not on unrelated communications that may be stored in a telematics inbox. Further, the request is overly broad and burdensome, as it asks for all notifications over a six-month period, which could include a significant volume of irrelevant data. The production of such a large quantity of notifications would require time-consuming review and could result in the production of numerous documents that are not material to any issue in the case.

> **Supplemental Response** (Feb. 2025): All responsive documents in XPO's possession, custody, or control have been produced.

10.     With respect to any telematics software being used by XPO Logistics Freight, Inc, produce the safety setting in the transportation management system utilized for William Lamb's individual vehicle/person on the date of Subject Incident.

**RESPONSE: Objection.** Defendant objects to this Interrogatory as vague and ambiguous and to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving these objections, Defendant is not in possession of the above referenced documents. Defendant will supplement this response to the extent these documents become available.

> **Supplemental Response** (Feb. 2025): All responsive documents in XPO's possession, custody, or control have been produced.

18

11.     Produce the safety setting in the transportation management system utilized for fleet wide vehicles on the date of the Subject Incident (these include: harsh event sensitivity, forward collision warning, distracted driving detection, tailgating detection, following distance, audio recording, camera height calibration, in-cab voice coaching for policy violations, in-cab coaching for driver speeding and in-cab nudges or alerts).

**RESPONSE: Objection.** Defendant objects to this Interrogatory as vague and ambiguous and to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving these objections, Defendant is not in possession of the above referenced documents. Defendant will supplement this response to the extent these documents become available.

> **Supplemental Response** (Feb. 2025): In response to the Court's Order on Plaintiff's Motion to Compel, XPO filed a Motion for Reconsideration that includes a request for the Court to Reconsider the provision of the Order pertaining to this Request. XPO will revise and/or supplement this response, as necessary, upon receipt of the Court's ruling on its Motion for Reconsideration.

13.     With respect to any telematics software being used by XPO Logistics Freight, Inc., produce the administrative username and password for Plaintiffs expert(s) to access XPO Logistic Freight Inc.'s transportation management system account for data and information related to the Subject Incident and William Lamb.

**RESPONSE: Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant further objects to this Request to the extent it's premature and discovery is on-going. Defendant objects to this Request to the extent it seeks the premature discovery of expert testimony, inconsistent with North Carolina Rules of Civil Procedure. Defendant further objects to this Request to the extent it seeks discovery of expert information not required to be disclosed by the North Carolina Rules of Civil Procedure relating to experts, a Discovery Scheduling Order to be entered in this case, and/or case law interpreting the North Carolina Rules of Civil Procedure relating to expert disclosure.

Subject to and without waiving the above objections, Defendant will produce relevant telematic data with respect to William Lamb.

> **Supplemental Response** (Feb. 2025): In response to the Court's Order on Plaintiff's Motion to Compel, XPO filed a Motion for Reconsideration that includes a request for the Court to Reconsider the provision of the Order pertaining to this Request. XPO will revise and/or supplement this response, as necessary, upon receipt of the Court's ruling on its Motion for Reconsideration.

14. Produce the complete video footage, from the Video Library in the telematics system cloud or wherever it is located, of the forward-facing and driver-facing video footage from the date of the Subject Incident.

**RESPONSE: Objection.** Defendant objects to this Interrogatory as vague and ambiguous and to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the above objections, Defendant produced all video footage in its possession from the Subject Incident.

> **Supplemental Response** (Feb. 2025): All responsive documents in XPO's possession, custody, or control have been produced.

This the 26th day of February, 2025.

**Gordon Rees Scully Mansukhani, LLP**

By: _____

Megan M. Stacy
N.C. State Bar No. 47108
Austin R. Kessler
North Carolina Bar No. 53124
Devin Honbarger
North Carolina Bar No. 59513
150 Fayetteville Street, Suite 1120
Raleigh, North Carolina 27601
Telephone: (919) 787-4555
Facsimile: (919) 741-5840
E-mail: mstacy@grsm.com
E-mail: akessler@grsm.com
E-mail: dhonbarger@grsm.com
*Counsel for Defendant XPO Logistics Freight, Inc.
and William Lamb*

## CERTIFICATE OF SERVICE

This is to certify that I caused the foregoing **Supplemental Discovery Responses** to be served upon all counsel of record by email pursuant to the North Carolina Rules of Civil Procedure addressed as follows:

J. William Owen
Musselwhite, Musselwhite, Branch & Grantham, P.A.
P.O. Box 1448
Lumberton, NC 28359
wowen@mmbglaw.com
***Counsel for Plaintiff Cindy Smith,***
***Administratrix of the Estate of Mark K. Smith***

Jennifer Welch
Cranfill Sumner
P.O. Box 27808
Raleigh, NC 27611-7808
jwelch@cshlaw.com
***Counsel for Counterclaim-Defendant Cindy Smith,***
***Administratrix of the Estate of Mark K. Smith***

This the 26th day of February, 2025.

**Gordon Rees Scully Mansukhani, LLP**

By: _____
Megan M. Stacy
N.C. State Bar No. 47108
Austin R. Kessler
North Carolina Bar No. 53124
Devin Honbarger
North Carolina Bar No. 59513
150 Fayetteville Street, Suite 1120
Raleigh, North Carolina 27601
Telephone: (919) 787-4555
Facsimile: (919) 741-5840
E-mail: mstacy@grsm.com
E-mail: akessler@grsm.com
E-mail: dhonbarger@grsm.com
*Counsel for Defendant XPO Logistics Freight, Inc.*
*and William Lamb*

21



**Chubb Group of Insurance Companies**
202B Hall's Mill Road
Whitehouse Station, NJ 08889

**Declarations**
Enhanced Commercial Umbrella
Liability Policy

| | |
|---|---|
| Policy Symbol: XEU | Previous Policy Symbol: XEU |
| Policy Number: G28165730 007 | Previous Policy Number: G28165730 006 |

COVERAGE IS PROVIDED IN THE COMPANY SHOWN BELOW
ACE Property and Casualty Insurance Company
436 Walnut Street
Philadelphia, Pennsylvania 19106

| Named Insured and Address | Producer Name and Address |
|---|---|
| XPO Logistics, Inc.<br>Five American Lane<br>Greenwich, Connecticut 06831 | LOCKTON COMPANIES LLC<br>717 N HARWOOD STREET<br>SUITE 2500<br>DALLAS, TEXAS 75201<br>Producer Code 271111 |

Policy
Period:  From 11/01/2022  to 11/01/2023   12:01 A.M Standard Time at the Address of
the Named Insured as stated herein

### Limits of Insurance

| | | | |
|---|---|---|---|
| $10,000,000 | Each Occurrence | N/A | Umbrella Coverage Self- Insured Retention - Each Occurrence |
| $10,000,000 | General Aggregate | $5,000,000 | Enhanced Coverage Self- Insured Retention - Each Occurrence |
| $10,000,000 | Products Completed- Operations Aggregate | $10,000,000 | Enhanced Coverage Self- Insured Retention - Aggregate (not applicable to coverage provided by any exception to the Pollution Exclusion) |
| $250,000 | Catastrophe Management Each Occurrence | | |
| $250,000 | Catastrophe Management Aggregate | | |

### Annual Premium

|  | Premium | | |
|---|---|---|---|
| ▮ | Premium | | |
| ▮ | State Surcharge | ▮ | Premium, including all Surcharges and Assessments |

### Pollution Time Element Timeframes:

Pollution Knowledge Timeframe: 20 day(s)     Pollution Reporting Timeframe: 80 day(s)

Case 7:25-cv-01545-D-BM    Document 16-24    Filed 10/10/25    Page 268 of 301



| Policy Period Premium | | |
|---|---|---|
| ███ | Premium | |
| ██ | State Surcharge | ████ Premium, including all Surcharges and Assessments |

**Schedule of Underlying Insurance**

Refer to the attached Schedule of Underlying Insurance, which forms a part of this Policy's Declarations.

**Endorsements and Forms**

Refer to the attached Schedule of Endorsements for the forms and endorsements forming this policy at inception.

# CHUBB®

**ACE American Insurance Company**
436 Walnut Street
Philadelphia PA

# Business Auto Declarations

**POLICY NUMBER:** ISA H25574874

**EXPIRING POLICY NUMBER:** ISA H25542046

RENEWAL

## ITEM ONE

**Named Insured:** XPO Logistics, Inc.

**Address:** Five American Lane
Greenwich CT 06831

**Producer Number:** 272474
**Producer Name:** LOCKTON COMPANIES LLC
**Producer Address:** 3657 BRIARPARK DRIVE
HOUSTON TX 77042

**Form of Business:** [X] Corporation  [ ] Limited Liability Company

[ ] Other:

**Named Insured's business:** Arrgmnt of trans of freight&ca

**Policy Period:** Policy covers from 11/01/2022 to 11/01/2023 12:01 am standard time at the named insured's address stated above.

**Audit Period: Annual, unless otherwise stated:** [ ] Semi-Annual [ ] Quarterly [ ]
**Total Advance Premium (Including surcharges):** ███████
**Refer to Surcharge Schedule for surcharge amounts and rates.**

In return for the payment of premium and subject to all the terms of this policy we agree with you to provide the insurance as stated in this policy.

DA-19661a (12/2008)

Copyright, Insurance Services Office, Inc. 2000

Page 1 of 12
XPO - 001817

| POLICY NUMBER: ISA H25574874 |
|---|

## ITEM TWO - SCHEDULE OF COVERAGES AND COVERED AUTOS

This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those "autos" shown as covered "autos". "Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the Covered Autos Section of the Business Auto Coverage Form next to the name of the coverage.

| COVERAGES | COVERED AUTOS (Entry of one or more of the symbols from the COVERED AUTO Section of the Business Auto Coverage Form shows which autos are covered autos) | LIMIT<br><br>THE MOST WE WILL PAY FOR ANY ONE ACCIDENT OR LOSS | | PREMIUM |
|---|---|---|---|---|
| LIABILITY | 10 | $10,000,000 | | ▇▇▇▇ |
| PERSONAL INJURY PROTECTION (or equivalent No fault Coverage) | 5 | SEPARATELY STATED IN EACH P.I.P ENDORSEMENT $ N/A DED | | ▇▇▇▇ |
| ADDED PERSONAL INJURY PROTECTION (or equivalent Added No fault Coverage) | | SEPARATELY STATED IN EACH ADDED P.I.P. ENDORSEMENT. | | $ |
| OPTIONAL BASIC ECONOMIC LOSS COVERAGE (New York Only) | | $ | | $ |
| ADDITIONAL PERSONAL INJURY PROTECTION (New York Only) | | $ | | |
| | | Maximum Monthly Work Loss | $ | |
| | | Death Benefit | $ | |
| | | Other Necessary Expense (per day) | $ | |
| PROPERTY PROTECTION INSURANCE (Michigan only) | 5 | SEPARATELY STATED IN THE P.P.I ENDORSEMENT. MINUS $N/A DED FOR EACH ACCIDENT. | | ▇▇▇▇ |
| MEDICAL PAYMENTS | | $ | | $ |
| MEDICAL EXPENSE AND INCOME LOSS BENEFITS | | SEPARATELY STATED IN THE P.P.I ENDORSEMENT. MEDICAL EXPENSE BENEFITS $ EACH PERSON INCOME LOSS BENEFITS $ EACH PERSON | | $ |
| UNINSURED MOTORISTS | 10 | $ See DA40002 | | ▇▇▇▇ |
| UNDERINSURED MOTORISTS (When not included in Uninsured Motorists) (Not Applicable in New York) | 10 | $ See DA40002 | | ▇▇▇▇ |

Case 7:25-cv-01545-D-BM    Document 16-24    Filed 10/10/25    Page 271 of 301

# CHUBB®

**ACE American Insurance Company**
436 Walnut Street
Philadelphia PA

# Business Auto Declarations

**POLICY NUMBER:** ISA H25574874

## ITEM TWO - SCHEDULE OF COVERAGES AND COVERED AUTOS (Continued)

| COVERAGES | COVERED AUTOS (Entry of one or more of the symbols from the COVERED AUTO Section of the Truckers Coverage Form shows which autos are covered autos) | LIMIT THE MOST WE WILL PAY FOR ANY ONE ACCIDENT OR LOSS | PREMIUM |
|---|---|---|---|
| SUPPLEMENTARY UNINSURED/ UNDERINSURED MOTORIST (New York only) | | $ The maximum amount payable under SUM coverage shall be the policy's SUM limits reduced and thus offset by the motor vehicle Bodily Injury liability insurance and policy or bond payments received from, or on behalf of, any negligent party involved in the accident as specified in the SUM endorsement. | $ |
| PHYSICAL DAMAGE COMPREHENSIVE COVERAGE | | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS $ DED. FOR EACH COVERED AUTO, BUT NO DEDUCTIBLE APPLIES TO LOSS CAUSED BY FIRE OR LIGHTNING. (N/A to private passenger type vehicles in NY). **See Schedule On File With Company For Vehicle Deductibles.** See ITEM FOUR For Hired Or Borrowed "Autos". | $ |
| PHYSICAL DAMAGE SPECIFIED CAUSES OF LOSS COVERAGE | | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS MINUS $ DED. FOR EACH COVERED AUTO FOR LOSS CAUSED BY MISCHIEF OR VANDALISM. **See Schedule On File With Company For Vehicle Deductibles.** See ITEM FOUR For Hired Or Borrowed "Autos." | $ |
| PHYSICAL DAMAGE COLLISION COVERAGE | | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS $ DED FOR EACH COVERED AUTO FOR LOSS CAUSED BY COLLISION **See Schedule On File With Company For Vehicle Deductibles.** See ITEM FOUR For Hired Or Borrowed "Autos." | $ |
| PHYSICAL DAMAGE TOWING AND LABOR | | $ for each disablement of a private passenger auto. | $ |

Case 7:25-cv-01545-D-BM    Document 16-24    Filed 10/10/25    Page 272 of 301

# CHUBB®

**Business Auto Declarations**

ACE American Insurance Company
436 Walnut Street
Philadelphia PA

---

**POLICY NUMBER:** ISA H25574874

---

**ITEM THREE - SCHEDULE OF COVERED AUTOS YOU OWN**

### DESCRIPTION

| Covered Auto No | Year, Model, Trade Name, Serial Number or Vehicle Identification Number (VIN) | Original Cost New | Terr Code |
|---|---|---|---|
| | **AS PER SCHEDULE ON FILE WITH COMPANY** | | |

---

**ITEM FOUR - SCHEDULE OF HIRED OR BORROWED AUTO COVERAGE AND PREMIUMS**

LIABILITY COVERAGE - RATING BASIS, COST OF HIRE

| STATE | ESTIMATED COST OF HIRE FOR EACH STATE | RATE PER EACH $100 COST OF HIRE | FACTOR (if liab. cov. is primary) | PREMIUM |
|---|---|---|---|---|
| | $ | $ | | $ |
| | | | **TOTAL PREMIUM** | $ |

Cost of hire means the total amount you incur for the hire of "autos" you don't own (not including 'autos" you borrow or rent from your partners or employees or their family members). Cost of hire does not include charges for services performed by motor carriers of property or passengers.

---

**PHYSICAL DAMAGE COVERAGE**

| COVERAGES | LIMIT OF INSURANCE THE MOST WE WILL PAY DEDUCTIBLE | ESTIMATED ANNUAL COST OF HIRE | RATE PER EACH $100 ANNUAL COST OF HIRE | PREMIUM |
|---|---|---|---|---|
| COMPREHENSIVE | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS $ DED. FOR EACH COVERED AUTO, BUT NO DEDUCTIBLE APPLIES TO LOSS CAUSED BY FIRE OR LIGHTNING. (N/A to Private Passenger type vehicles in NY). | $ | $ | $ |
| SPECIFIED CAUSES OF LOSS | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS $ DED. FOR EACH COVERED AUTO FOR LOSS CAUSED BY MISCHIEF OR VANDALISM. | $ | $ | $ |
| COLLISION | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS $ DED. FOR EACH COVERED AUTO. | $ | $ | $ |

Case 7:25-cv-01545-D-BM     Document 16-24     Filed 10/10/25     Page 273 of 301

# CHUBB®

**Business Auto Declarations**

ACE American Insurance Company
436 Walnut Street
Philadelphia PA

| | |
|---|---|
| **POLICY NUMBER:** ISA H25574874 | |

## ITEM FIVE - SCHEDULE FOR NON-OWNERSHIP LIABILITY

| NAMED INSURED'S BUSINESS | RATING BASIS | NUMBER | PREMIUM |
|---|---|---|---|
| Other Than A Social Service Agency | Number of Employees | 25 | $Included |
| | Number of Partners | | $ |
| Social Service Agency | Number of Employees | | $ |
| | Number of Volunteers | | $ |
| Garage Service Operations | Number of Employees | | $ |
| | Number of Partners | | $ |
| | TOTAL PREMIUM | | $Included |

DA-19661a (12/2008)       Copyright, Insurance Services Office, Inc. 2000

XPO - 001821

Case 7:25-cv-01545-D-BM       Document 16-24       Filed 10/10/25       Page 274 of 301

# CHUBB®

**ACE American Insurance Company**
436 Walnut Street
Philadelphia PA

# Business Auto Declarations

**POLICY NUMBER:** ISA H25574874

FORMS AND ENDORSEMENTS ATTACHED TO POLICY AT INCEPTION

## SCHEDULE OF NOTICES

| Form No. | Description |
|---|---|
| ALL23445b0713 | Policyholder Notice Commercial Lines Deregulation New York |
| ALL2Y31c032020 | Arkansas Notice To Policyholders |
| ILN1191015 | California Auto Body Repair Consumer Bill Of Rights |
| ILN1180110 | California Automotive Repair Dealer Recommendation Notice |
| ALL208871006 | Chubb Producer Compensation Practices & Policies |
| ALL223680607 | Colorado Fraud Statement |
| ILN1751111 | Illinois Notice To Policyholders Regarding The Religious Freedom Protection And Civil Union Act |
| ALL301520710 | Important Information To Idaho Policyholders Regarding Your Insurance |
| ALL7X47a0206 | Important Information To Virginia Policyholders Regarding Your Insurance |
| DA1K19 | Important Message To Our Pennsylvania Auto Insurance Policyholders |
| ALL389690812 | Important Notice - Wisconsin |
| DA3E53a | Important Notice To Our Connecticut Policyholders |
| DA9T21 | Important Notice To Our Oregon Policyholders |
| ALL2Y810514 | Indiana Notice To Policyholders |
| ILN0430116 | Kansas Fraud Statement |
| ALL387110812 | Maryland Notice Of Underwriting Period |
| DA18607 | Massachusetts Compulsory Premium Policyholder Notice |
| ILP0100721 | Michigan Revised Attendant Care Coverage Advisory Notice To Policyholders |
| DA410710913 | Minnesota Policyholder Notice Of Election To Have Two Or More Autos Added Together |
| ALL512200918 | Missouri Disclaimer Notice Commercial Lines Deregulation |
| ILN0021110 | New York Rental Reimbursement Coverage Disclosure |
| DA504041018 | North Carolina Reinsurance Facility Surcharge |
| ALL2U78b | Notice To All Oklahoma Policyholders |
| ALL398220413 | Notice To Our Florida Property And Casualty Policyholders Guidelines For Loss Control Plans |
| DA3H93b0613 | Notice To Our New York Policyholders Optional Basic Economic Loss Coverage |
| DA8S71c0919 | Notice To Our Texas Policyholders Motor Vehicle Crime Prevention Authority Pass Through Fee |
| DA504030518 | Policyholder Notice - New York Dmv Reporting |

Case 7:25-cv-01545-D-BM     Document 16-24     Filed 10/10/25     Page 275 of 301

**POLICY NUMBER:** ISA H25574874

| Form No. | Description |
|---|---|
| ALL5W06(07/95) | Policyholder Notice - Ohio |
| ALL18653d0714 | Questions About Your Insurance? |
| ALL5X45 | Questions About Your Insurance? |
| ALL11559e0716 | Risk Control Services For Texas Policyholders |
| DA395930113 | State Of New Hampshire Uninsured Motorists Policyholder Notice |
| ALL4Y30g0520 | Texas Notice Information And Complaints |
| ILP0010104 | U.S. Treasury Department's Office Of Foreign Assets Control ("OFAC") Advisory Notice To Policyholders |
| DA400020413 | Uninsured Motorists/Underinsured Motorist Coverage Summary |
| ALL5X51a0206 | Wisconsin Notice To Policyholders |

## SCHEDULE OF COVERAGE FORMS

| Form No. | Description |
|---|---|
| CA00011120 | Business Auto Coverage Form |
| IL00171198 | Common Policy Conditions |

## SCHEDULE OF ENDORSEMENTS

| Endt. No. | Form No. | Description |
|---|---|---|
| 1 | ALL32677a0412 | Kentucky Local Government Premium Tax Schedule |
| 2 | ALL22421 | Surcharge Schedule |
| 3 | CC1K11j0321 | Signatures |
| 4 | DA9U74c0316 | Additional Insured – Designated Persons Or Organizations |
| 5 | DA9U74c0316 | Additional Insured – Designated Persons Or Organizations |
| 6 | ALL18845c0612 | Difference In Conditions/Difference In Limits |
| 7 | ALL44289c1116 | Direct Action Expenses |
| 8 | ALL10617b0614 | Earlier Notice Of Cancellation And Non-Renewal Endorsement |
| 9 | DA39210a0116 | GPS Global Program Solutions Endorsement |
| 10 | DA474870216 | Loss Payment - Physical Damage Coverages Condition |
| 11 | ALL326880111 | Notice To Others Endorsement - Specific Parties |
| 12 | ALL180571211 | Notification Of Premium Adjustment |
| 13 | DA25934a0113 | Physical Damage Reimbursement Endorsement |
| 14 | DA196270206 | Pyramiding Of Coverage Limits Endorsement |
| 15 | DA19479e052017 | Reimbursement Of Deductible Endorsement Allocated Loss Adjustment Expense ("ALAE") Included In The Deductible Amount |
| 16 | DA13118a0614 | Schedule Of Named Insureds |
| 17 | ALL211011106 | Trade Or Economic Sanctions Endorsement |
| 18 | DA13115a0614 | Waiver Of Transfer Of Rights Of Recovery Against Others |

Case 7:25-cv-01545-D-BM          Document 16-24          Filed 10/10/25          Page 276 of 301

# CHUBB®

ACE American Insurance Company
436 Walnut Street
Philadelphia PA

# Business Auto Declarations

**POLICY NUMBER:** ISA H25574874

| Endt. No. | Form No. | Description |
|-----------|----------|-------------|
| 19 | MS33282120921 | Reimbursement Of Deductible Endorsement Allocated Loss Adjustment Expense ("ALAE") Included In The Deductible Amount |
| 20 | IL09130498 | Insurance Inspection Services Exemption From Liability |
| 21 | IL00210908 | Nuclear Energy Liability Exclusion Endorsement |
| 22 | CA99541013 | Covered Auto Designation Symbol |
| 23 | CA99331013 | Employees As Insureds |
| 24 | CA20551013 | Fellow Employee Coverage |
| 25 | CA99161013 | Hired Autos Specified As Covered Autos You Own |
| 26 | CA20011120 | Lessor – Additional Insured And Loss Payee |
| 27 | CA99481013 | Pollution Liability – Broadened Coverage For Covered Autos – Business Auto And Motor Carrier Coverage Forms |
| 28 | DA475470216 | Loss Payment - Physical Damage Coverages Condition |
| 29 | DA249860508 | New Mexico Amendatory Endorsement: Uninsured/Underinsured Motorists |
| 30 | DA27455a1013 | State Of North Dakota Amendatory Endorsement Uninsured/Underinsured Motorists Coverage Rejection |
| 31 | CA21591013 | Alabama Uninsured Motorists Coverage |
| 32 | CA04231013 | Arizona – Full Glass Coverage |
| 33 | CA01751013 | Arizona Changes |
| 34 | CA02050514 | Arizona Changes – Nonrenewal |
| 35 | CA01621013 | Arkansas Changes |
| 36 | CA01430517 | California Changes |
| 37 | CA01131013 | Colorado Changes |
| 38 | IL01251113 | Colorado Changes – Civil Union |
| 39 | CA01071013 | Connecticut Changes |
| 40 | CA01901013 | Connecticut Changes – Liability Of Municipalities |
| 41 | CA21570316 | Connecticut Uninsured And Underinsured Motorists Coverage |
| 42 | CA01280121 | Florida Changes |
| 43 | CA02670121 | Florida Changes – Cancellation And Nonrenewal |
| 44 | CA22100121 | Florida Personal Injury Protection |
| 45 | CA01091013 | Georgia Changes |
| 46 | IL02620215 | Georgia Changes – Cancellation And Nonrenewal |
| 47 | CA01181013 | Idaho Changes |
| 48 | CA01200115 | Illinois Changes |
| 49 | CA02700118 | Illinois Changes – Cancellation And Nonrenewal |
| 50 | IL01621013 | Illinois Changes – Defense Costs |
| 51 | CA21300115 | Illinois Uninsured Motorists Coverage |
| 52 | CA01191013 | Indiana Changes |

Case 7:25-cv-01545-D-BM     Document 16-24     Filed 10/10/25     Page 277 of 301

ACE American Insurance Company
436 Walnut Street
Philadelphia PA

**POLICY NUMBER:** ISA H25574874

| Endt. No. | Form No. | Description |
|-----------|----------|-------------|
| 53 | CA01601013 | Iowa Changes |
| 54 | CA01220619 | Kansas Changes |
| 55 | CA02650116 | Kansas Changes – Cancellation And Nonrenewal |
| 56 | CA22141013 | Kansas Personal Injury Protection |
| 57 | CA21370220 | Kansas Uninsured Motorists Coverage |
| 58 | CA01251013 | Kentucky Changes |
| 59 | CA22161013 | Kentucky Personal Injury Protection |
| 60 | CA01030221 | Louisiana Changes |
| 61 | CA01341013 | Maine Changes |
| 62 | CA21741013 | Maine Uninsured Motorists Coverage |
| 63 | CA02151217 | Maryland Cancellation Changes |
| 64 | CA01700121 | Maryland Changes |
| 65 | CA22191013 | Maryland Personal Injury Protection Endorsement |
| 66 | CA21131013 | Maryland Uninsured Motorists Coverage |
| 67 | MM99670411 | Massachusetts Changes |
| 68 | MM99111011 | Massachusetts Mandatory Endorsement |
| 69 | CA01101120 | Michigan Changes |
| 70 | IL02860417 | Michigan Changes – Cancellation And Nonrenewal |
| 71 | CA22200722 | Michigan Personal Injury Protection |
| 72 | CA22240720 | Michigan Property Protection Coverage |
| 73 | CA01380520 | Minnesota Changes |
| 74 | CA02181013 | Minnesota Changes – Cancellation And Nonrenewal |
| 75 | CA22250221 | Minnesota Personal Injury Protection |
| 76 | CA21240520 | Minnesota Uninsured And Underinsured Motorists Coverage |
| 77 | CA01650716 | Missouri Changes |
| 78 | CA02190116 | Missouri Changes – Cancellation And Nonrenewal |
| 79 | CA01661013 | Missouri Changes – Pollution Exclusion |
| 80 | CA02201013 | Montana Changes – Cancellation And Nonrenewal |
| 81 | IL01671013 | Montana Changes – Conformity With Statutes |
| 82 | CA01561013 | Nebraska Changes |
| 83 | CA02211217 | Nebraska Changes – Cancellation |
| 84 | CA21701013 | Nebraska Uninsured And Underinsured Motorists Coverage |
| 85 | CA01361013 | Nevada Changes |
| 86 | CA02620119 | New Hampshire Changes – Cancellation And Nonrenewal |
| 87 | CA01111220 | New Hampshire Changes In Policy |
| 88 | CA31260215 | New Hampshire Uninsured Motorists Coverage |
| 89 | CA01881013 | New Jersey Changes |

Case 7:25-cv-01545-D-BM    Document 16-24    Filed 10/10/25    Page 278 of 301

# CHUBB®

**Business Auto Declarations**

ACE American Insurance Company
436 Walnut Street
Philadelphia PA

**POLICY NUMBER:** ISA H25574874

| Endt. No. | Form No. | Description |
|---|---|---|
| 90 | CA01841116 | New Jersey Changes – Physical Damage Inspection |
| 91 | CA22300120 | New Jersey Personal Injury Protection |
| 92 | CA21141016 | New Jersey Uninsured And Underinsured Motorists Coverage |
| 93 | CA01391013 | New Mexico Changes |
| 94 | CA02500515 | New Mexico Changes – Cancellation And Nonrenewal |
| 95 | CA02250620 | New York Changes – Cancellation |
| 96 | CA01121215 | New York Changes In Business Auto And Motor Carrier Coverage Forms |
| 97 | CA22321118 | New York Mandatory Personal Injury Protection Endorsement |
| 98 | CA31071118 | New York Supplementary Uninsured/Underinsured Motorists Endorsement |
| 99 | CA01261013 | North Carolina Changes |
| 100 | CA21161013 | North Carolina Uninsured Motorists Coverage |
| 101 | CA01611013 | North Dakota Changes |
| 102 | CA22341013 | North Dakota Personal Injury Protection Endorsement |
| 103 | CA21861013 | North Dakota Underinsured Motorists Coverage |
| 104 | CA21831013 | North Dakota Uninsured Motorists Coverage |
| 105 | CA01321013 | Oklahoma Changes |
| 106 | CA01491013 | Oregon Changes |
| 107 | CA22361116 | Oregon Personal Injury Protection |
| 108 | CA21050116 | Oregon Uninsured Motorists Coverage – Bodily Injury |
| 109 | CA22371013 | Pennsylvania Basic First-Party Benefit |
| 110 | CA01800321 | Pennsylvania Changes |
| 111 | IL01201013 | Pennsylvania Changes – Defense Costs |
| 112 | MM99350411 | Personal Injury Liability Coverage |
| 113 | CA01480214 | Rhode Island Changes |
| 114 | CA02731013 | Rhode Island Changes -- Cancellation And Nonrenewal |
| 115 | CA21430615 | Rhode Island Uninsured Motorists Coverage – Bodily Injury |
| 116 | CA21191213 | South Carolina Uninsured Motorists Coverage |
| 117 | CA01231013 | South Dakota Changes |
| 118 | CA21411018 | South Dakota Uninsured And Underinsured Motorists Coverage |
| 119 | CA01461013 | Tennessee Changes |
| 120 | CA01961120 | Texas Changes |
| 121 | CA02431113 | Texas Changes – Cancellation And Nonrenewal |
| 122 | MM99281013 | Uninsured Motorists Coverage - Massachusetts |
| 123 | CA31131118 | Uninsured Motorists Endorsement – New York |
| 124 | CA21211102 | Uninsured Motorists Endorsement (Virginia) |

Case 7:25-cv-01545-D-BM      Document 16-24      Filed 10/10/25      Page 279 of 301

# CHUBB®

**Business Auto Declarations**

ACE American Insurance Company
436 Walnut Street
Philadelphia PA

**POLICY NUMBER:** ISA H25574874

| Endt. No. | Form No. | Description |
|-----------|----------|-------------|
| 125 | CA01590517 | Utah Changes |
| 126 | CA22441021 | Utah Personal Injury Protection |
| 127 | CA04290808 | Virginia Changes - Non-Dealers' Provisions |
| 128 | CA02680121 | Virginia Changes In Policy – Cancellation And Nonrenewal |
| 129 | CA22461116 | Virginia Medical Expense And Income Loss Benefits Endorsement |
| 130 | CA01351013 | Washington Changes |
| 131 | IL01231113 | Washington Changes – Defense Costs |
| 132 | CA01830116 | West Virginia Changes |
| 133 | CA01891013 | West Virginia Changes – Coverage Extension For Temporary Substitute Autos |
| 134 | CA02520917 | West Virginia Changes – Nonrenewal |
| 135 | CA21221113 | West Virginia Uninsured And Underinsured Motorists Coverage |
| 136 | CA99241013 | Wisconsin Auto Medical Payments Coverage |
| 137 | CA01171013 | Wisconsin Changes |
| 138 | CA21031013 | Wisconsin Uninsured Motorists Coverage |
| 139 | IL02310908 | Arkansas Changes - Cancellation And Nonrenewal |
| 140 | IL09090398 | Arkansas Notice |
| 141 | IL02700720 | California Changes – Cancellation And Nonrenewal |
| 142 | IL02280907 | Colorado Changes - Cancellation And Nonrenewal |
| 143 | IL01690907 | Colorado Changes - Concealment, Misrepresentation Or Fraud |
| 144 | IL02600119 | Connecticut Changes – Cancellation And Nonrenewal |
| 145 | IL01400908 | Connecticut Changes - Civil Union |
| 146 | IL02040908 | Idaho Changes - Cancellation And Nonrenewal |
| 147 | IL01470911 | Illinois Changes - Civil Union |
| 148 | IL01580908 | Indiana Changes |
| 149 | IL02721121 | Indiana Changes – Cancellation And Nonrenewal |
| 150 | IL01561117 | Indiana Changes – Concealment, Misrepresentation Or Fraud |
| 151 | IL01171210 | Indiana Changes - Workers' Compensation Exclusion |
| 152 | IL02760908 | Iowa Changes - Cancellation And Nonrenewal |
| 153 | IL02630908 | Kentucky Changes - Cancellation And Nonrenewal |
| 154 | IL02771020 | Louisiana Changes – Cancellation And Nonrenewal |
| 155 | IL02470211 | Maine Changes - Cancellation And Nonrenewal |
| 156 | IL01890907 | Maine Changes - Concealment, Misrepresentation Or Fraud |
| 157 | IL02820908 | Mississippi Changes - Cancellation And Nonrenewal |
| 158 | IL02510907 | Nevada Changes - Cancellation And Nonrenewal |
| 159 | IL01100907 | Nevada Changes - Concealment, Misrepresentation Or Fraud |
| 160 | IL01150110 | Nevada Changes - Domestic Partnership |

Case 7:25-cv-01545-D-BM    Document 16-24    Filed 10/10/25    Page 280 of 301

# CHUBB®

ACE American Insurance Company
436 Walnut Street
Philadelphia PA

# Business Auto Declarations

**POLICY NUMBER:** ISA H25574874

| Endt. No. | Form No. | Description |
|---|---|---|
| 161 | IL01450908 | New Hampshire Changes - Civil Union |
| 162 | IL01870907 | New Hampshire Changes - Concealment, Misrepresentation Or Fraud |
| 163 | IL02080907 | New Jersey Changes - Cancellation And Nonrenewal |
| 164 | IL01410908 | New Jersey Changes - Civil Union |
| 165 | IL01830808 | New York Changes - Fraud |
| 166 | IL02340917 | North Dakota Changes – Cancellation And Nonrenewal |
| 167 | IL01650908 | North Dakota Changes - Examination Of Your Books And Records |
| 168 | IL02440907 | Ohio Changes - Cancellation And Nonrenewal |
| 169 | IL02360907 | Oklahoma Changes - Cancellation And Nonrenewal |
| 170 | IL01771010 | Oklahoma Changes - Concealment, Misrepresentation Or Fraud |
| 171 | IL01791002 | Oklahoma Notice |
| 172 | IL02790908 | Oregon Changes - Cancellation And Nonrenewal |
| 173 | IL01420908 | Oregon Changes - Domestic Partnership |
| 174 | IL02460907 | Pennsylvania Changes - Cancellation And Nonrenewal |
| 175 | IL09101203 | Pennsylvania Notice |
| 176 | IL01610312 | Rhode Island Changes - Civil Union |
| 177 | IL01840907 | South Dakota Changes - Appraisal |
| 178 | IL02320908 | South Dakota Changes - Cancellation And Nonrenewal |
| 179 | IL02500908 | Tennessee Changes - Cancellation And Nonrenewal |
| 180 | IL02660721 | Utah Changes – Cancellation And Nonrenewal |
| 181 | IL01460810 | Washington Common Policy Conditions |
| 182 | IL02810489 | West Virginia Changes - Cancellation |
| 183 | IL02831118 | Wisconsin Changes – Cancellation And Nonrenewal |

THIS DECLARATION AND THE BUSINESS AUTO POLICY AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY

COUNTERSIGNED BY _____

AUTHORIZED AGENT

**THE TOTAL AMOUNT DUE INCLUDES A PREMIUM SURCHARGE PURSUANT TO SECTION 136.392 OF THE KENTUCKY REVISED STATUTES.**

# Business Ethics Policy
## Record Retention Policy



*"Driven by Integrity"*

HQL-0350 (10/15)

XPO - 001829

# 1   Purpose

During the conduct of Company business, certain records must be maintained for referral purposes as specified by applicable law and/or contract requirements. The purpose of the Record Retention Guide (the "Guide") is to help the Company reduce the cost of record-keeping and to ensure that those records that have outlived their usefulness are destroyed and those records that may be useful for further reference are retained appropriately and stored economically. This Guide provides for the systematic review, retention and destruction of certain records.

The primary goal of this Guide is to ensure that guidelines are in place to effectively manage the information generated and received by the Company and to reduce the expense and risk of liability associated with the maintenance of this information. Therefore, this Guide and the associated Record Retention Schedule(s) (the "Schedule(s)") shall identify specific records to be preserved for an applicable retention period. The Schedule(s) may not cover all of the records generated or received by the Company. For records that are not specifically covered by the Schedule(s), the following Policy and Exceptions should be used as a guide to help decide whether to retain or destroy the records in question.

This Guide and the following policy are applicable to all XPO Logistics, Inc. employees who were employees of any entity or business unit in the former Con-way family of companies, including the entities formerly called Con-way Inc., Menlo Worldwide, LLC, Con-way Freight Inc., Con-way Truckload Inc., Con-way Enterprise Services Inc., Con-way Multimodal Inc., Con-way Manufacturing and each of their respective former subsidiaries (collectively referred to as "Company" throughout this policy).

Due to XPO Logistics' recent acquisition of the Con-way family of companies, there may be more than one policy that could apply to a particular employee or situation. In any situation where more than one policy could apply, employees, including officers, should adhere to the requirements of all applicable policies. If it's not possible to comply with all applicable policies, consult with the Legal Department or Compliance Office for further guidance.

# 2   Policy

It is the Company's policy and practice to maintain complete, accurate and high-quality records. Records are to be retained for the period of their immediate business use, unless longer retention is required for historical reference, contractual or legal requirements, or for other purposes as set forth in this Guide.

Records that are no longer required and have satisfied their required periods of retention should be destroyed in an appropriate manner.

Specific requirements, responsibilities and retention periods applicable to the Company's records are described in this Guide. Copies of this Guide are available from the Company's Legal department or on the Company's intranet.

The Company's Internal Audit department oversees compliance with this Guide and will conduct periodic compliance audits to ensure the Guide and the Schedule(s) are being adhered to.

All employees are responsible for ensuring accurate and complete records are identified, retained, stored, protected and subsequently destroyed, within their area of responsibility and in accordance with the requirements outlined in this Guide.

2

XPO - 001830

**3    Exceptions**

Records must be retained for a longer period than specified herein if the requirements of one or more of the following exceptions are met:

➢ Relevant federal or state statutes and/or regulations require a longer retention period than specified for the record(s) in question;
➢ The record(s) in question must be retained longer than specified as necessary to fulfill the Company's or subsidiary's specific business purpose;
➢ Notification is received from management that ongoing litigation and/or cooperation with a governmental agency require the record(s) in question be retained for a longer period than specified.

**4    Questions**

Questions regarding the content of this Guide or the Schedule(s) should be directed to the Company's Legal department.

**5    Guidelines for Retention of Correspondence and Internal Memoranda**

As a general rule, correspondence should not be retained for longer than one year past its period of immediate business use. However, correspondence may be retained for a shorter or longer period of time if it meets any of the following criteria. The term "correspondence," as used herein, means paper as well as electronic correspondence (including, but not limited to, email and instant messaging):

**5.1    Correspondence to be Destroyed within 30 Days**
Unimportant correspondence that requires no acknowledgement or follow-up, or any correspondence of inconsequential subject matter to which no further reference will be necessary, including duplicate correspondence.

**5.2    Correspondence to be Destroyed within One Year**
Correspondence that has no business value or purpose within a reasonable period of time, such as correspondence of various types that might be referred to shortly after it is sent or received, but that soon cease to have a business value or purpose.

**5.3    Correspondence to be Retained for the Life of the Principal Record It Supports**
If the correspondence materially supports a record that is being retained under the Record Retention Schedule, then the supporting correspondence should be retained for the same period of time as the principal record it supports. Examples might include correspondence pertaining to patents, copyrights, exports, licensing agreements, bills of sale or permits; correspondence that constitutes all or a part of a contract, or that is important in the clarification of certain points in a contract; correspondence denying liability of the Company; and transmittals or cover sheets that support the principal record by proving the date and/or time of transmittal or receipt where such proof may be necessary for legal or contractual reasons.

**5.4    Correspondence to be Retained under the Record Retention Schedule**
If the correspondence is itself a record that is required to be retained under the Record Retention Schedule, then the correspondence must be retained in accordance with the Schedule. For example, correspondence relating to an export or import license application is an Export Control Regulation Record that is required to be retained as a principal record.

XPO - 001831

**Abbreviations**

AC - After Completion
ACT - While Employed or Active
AF - After End of Fiscal Year
AT - After Termination
OBS - Obsolete
P – Permanent
SUP - Until Superseded

**I. General Corporate Records (Including Documents Processed or Received by the Office of the Corporate Secretary**

***General Principle -*** The Office of the Corporate Secretary shall keep all such documents that might have business significance, and shall keep or provide for the retention of such other documents as may have historical value.

| | |
|---|---|
| A. All SEC and SEC-related material and financing documents, credit agreements, loan agreements, commitments, etc. | P |
| B. Articles of incorporation, code of regulations and amendments thereto, corporate charter | P |
| C. Bylaws | P |
| D. Permits to do business | P |
| E. Minutes of meetings of directors and shareholders | P |
| F. Minutes of meetings of sub-boards or other internal committee meetings | P |
| G. Certificate of inspector of elections for shareholder meetings | P |

**II. Shareholder Records**

***General Principle -*** The Office of the Corporate Secretary shall keep such records as will enable the Company to ascertain who its existing shareholders are, who its shareholders were at any time in the past, and whether or not any person was ever a shareholder of the Company. The Office of the Corporate Secretary also shall keep an adequate record of the payment of all dividends so the Company's dividend liability to any shareholder or group of shareholders can be ascertained.

| | |
|---|---|
| A. Stockholder and stock transfer records | P |
| B. Stock savings plan records | P |
| C. Cancelled stock certificates | 7 years |
| D. Transfer agent dividend payment letters | P |
| E. Shareholder correspondence | P |

**III. General Corporate Communication and Related Records**

| | |
|---|---|
| A. Advertising copy (bound) | 7 years |
| B. Advertising plan, budget production statistics | 4 years |
| C. Company newsletters | 2 years |
| D. Photographs | P |
| E. Mailing lists | SUP |

**IV. Tax Records**

***General Principle -*** The Tax department must keep such permanent books of account or records, including inventories, as are sufficient to establish the amount of gross income, deductions, credits or other matters required to be shown in any Company tax return.

These documents and records should be kept for as long as the contents thereof may become material in the administration of an Internal Revenue law.

The Tax department should keep all records used to compute earnings and profits permanently.

| | |
|---|---|
| A. Depreciation schedules | P |
| B. Tax bills and statements | P |
| C. One copy of all income and franchise tax returns and supporting worksheets and related schedules | P |
| D. One copy of Social Security tax records and worksheets | P |
| E. One copy of Social Security tax records and worksheets | 7 years |
| F. Unemployment tax records | Until statute of limitations on tax has expired |
| G. Sales and use tax | Until statute of limitations on tax has expired |
| H. Excise tax records | Until statute of limitations on tax has expired |
| I. Payroll tax records | 4 years |
| J. Fuel tax receipts | 3 years |

Work papers for each of the above should be kept for corresponding periods. But if the retention period is permanent, then retain only until the related tax period is closed for purposes of assessment or claim for refund.

**V. Employee Benefit Plan Documents and Supporting Employee Data (ERISA Documents)**

***General Principle -*** Employee benefit plan documents and supporting employee data shall be

4

kept in such manner and for such periods that the Company can establish at all times whether or not any benefit is payable to any person, and if so the amount of such benefit. Where possible, records may be stored electronically.

| | |
|---|---|
| A. Plan documents and all amendments thereto | P |
| B. Records of employee service and eligibility for benefits (including hours worked and any breaks in service) | P |
| C. Required personal information on employees and former employees (name, address Social Security number, period of employment, pay [hourly or salary]) | P |
| D. Records of plan administrator setting forth authority to pay | P |
| E. Records of benefits paid to employees or their beneficiaries | P |
| F. Plan documents and supporting documentation (such as actuarial calculations and Form 5500s) filed with the Internal Revenue Service, Department of Labor and Pension Benefit Guaranty Corporation | P |
| G. Certificates of creditable coverage (available to health benefit plan participants and dependents upon request) | P |
| H. COBRA notices (Consolidated Omnibus Budget Reconciliation Act of 1985) | 6 years |
| I. Employee 401(k) matching contributions | 7 years |
| J. Health Insurance Portability and Accountability Act documentation | 7 years |
| K. Benefit plan audit reports | 7 years |
| L. Vendor SAS 70 reports | 3 years |

## VI. Payroll Documents

*General Principle* - Payroll documents and supporting data should be kept in such a manner that the Company's responsibilities under the Wage and Hour Rules of the Department of Labor, as well as the rules of the Walsh-Healey Act, can be shown. Also, payroll records must be such as to enable the Company to compute the payment of any pension.

| | |
|---|---|
| A. Earnings records (general) | 7 years |
| B. Online pay stubs | AF + 2 |
| C Paycheck detail in PeopleSoft | 7 years |
| D. Time cards and time sheets | 7 years |
| E. Kronos detailed weekly reports | 3 months at local facility; 7 years at general office |

## VII. Safety Documents (including Occupational Safety and Health Administration Records)

*General Principle* - The Company must keep all documents relating to employee health and safety for such periods as will enable it to demonstrate compliance with an applicable regulation or standard.

These regulations and standards are in a state of continual expansion and change and states impose various record-keeping regulations. Following is a current list of the most widely applicable federal rules.

| | |
|---|---|
| A. OSHA 300 log and summary of occupational injuries and illnesses | 5 years |
| B. OSHA 301 Injury and Illness report | 5 years |
| C. OSHA 300-A annual summary of occupational related injuries and illnesses | 5 years |
| D. OSHA reporting documentation | 30 years |
| E. Hazard Communication Rule training documentation, compliance materials, etc. | SUP |
| F. Documentation that employees have been trained in hazard communication, etc. | 3 years |
| G. Employee exposure records | ACT + 30 years |
| H. Process Safety Management Standard (for highly hazardous chemicals) training, compliance materials, etc. | SUP |
| I. Asbestos records pertaining to exposure measurement | ACT + 30 years |
| J. Respiratory protection records pertaining to employee exposure | ACT + 30 years |
| K. Respirator fit testing records | ACT until next test |
| L. Workplace violence records | 6 years |
| M. Material safety data sheets | SUP |
| N. Permit-required confined space entry permits | 1 year |
| O. PCB spill cleanup records | 5 years |
| P. PCB transfer maintenance records | 3 years |
| Q. Portable fire extinguisher testing certifications | ACT until next test |
| R. Asbestos training records | AT + 1 year |
| S. Lead employee exposure/ monitoring records | AT + 40 years or ACT + 20 years |
| T. Accident reports | P |
| U. Driver investigation history file | AT + 3 years |

5

V. Request and response for driver history     1 year

W. DOT reporting documentation     30 years

X. Driver files     ACT + 3 years

Y. Driver logs     6 months

Z. Truck files

AA. Forklift inspection

    ACT + 18 months

BB. MHE service records     Life of equipment

CC. SIMS     3 years

DD. TSA training documentation     AT + 4 years

EE. Video distributions     6 years

**VIII. Accounting and Finance**

A. All ledgers     20 years

B. All balance sheets and other SUP financial statements     P

C. Estimates, projections, planning memos, etc.     10 years

D. Banking records, including deposit and withdrawal records, bank statements     20 years

E. Checking records, including account statements, check register and cancelled checks     20 years

F. Expense accounts, approvals, petty cash records, sales force commission records     10 years

G. Records of accounting practices and procedures     10 years

H. Bankruptcy records     7 years

I. Capital expenditure requests (ERs)     2 years

J. Cash applications     3 years

K. Cash collection records     3 years

L. Cash management records     2 years

M. Debit/credit memos     3 years

N. ICP history (general)     P

O. Shrinkage reports     7 years

P. Software capitalization records     5 years

Q. Vendor ledger     7 years

R. Vendor purchase log     3 years

**IX. Patents, Trademarks, Copyrights, Trade Secrets and Software**

A. Original patents and trademarks, related documents, work papers     Life of patent or trademark + 5 years

B. Royalty records     Life of patent or trademark + 5 years

C. All copyright permissions for use of others' copyrighted material     P

D. All permissions to use any photographs, including photos of employees     P

E. All copyright registrations     P

F. Documents relating to the acquisition of any rights in any creative work where the Company's right to remove such work from its buildings or property has been addressed     P

G. Requests for potential trade secret information made pursuant to statutes such as the Freedom of Information Act or OSHA's Hazard Communication Rule     P

H. Documents related to security measures taken to protect trade secrets     P

I. Confidentiality and nondisclosure agreements relating to trade secrets, including agreements with employees, vendors, suppliers and customers     P

J. Licensing agreements (Company licensing to an outside entity)     P

K. Records describing trade secrets     P

L. Idea submissions, both from employees and from solicited and unsolicited outside sources     P

M. Records of efforts not to infringe any copyright, patent, trademark, trade secret, etc.     P

N. Records showing the Company has licensed the right to use any software that is on any Company computer As long as software is in use or agreement is active     + 6 years

**X. Insurance Records**

A. Insurance policies and records     P

B. General insurance reports and records     5 years

C. Insurance claims - liability and equipment     AC + 7 years

D. Underwriter reports and audits     10 years

E. Surety bonds and letters of credit     P

6

F. State workers compensation records, audits
10 years

G. Workers compensation claims, records
AC + 7 years

H. Insurance records (employees)        AT + 11 years

I. Property insurance policies and records        P

J. Fidelity bonds        P

**XI. Location/Plant and Property Records**

A. Depreciation schedules        P

B. Inventory records        P

C. Maintenance and repair, building        10 years

D. Maintenance and repair, machinery and equipment
5 years

E. Property deeds, easements, licenses, right of way
P

F. Facility purchase or lease records        P

G. Space allocation records        1 year

H. Mortgages        Until recording of cancellation
+5 years

I. Records relating to the disposal of waste at any
facility        P

J. Property management data        1 year

K. Appraisals        1 year

L. Accident reports/insurance claims        7 years

M. Equipment inventory        ACT

N. Office layouts        ACT

O. Blueprints        P

P. Building plans and specifications        ACT + 1 year

Q. Certificate of occupancy (should be displayed at
site)        Until vacated

**XII. Personnel**

A. Employees' personnel records, including form
190, application forms, performance reviews; FRCA
records, offer letters, W-4, resume, reference letters,
contracts of employment (including confidentiality,
non-disclosure and invention and copyright
assignment agreements), performance evaluations,
alcohol, drug testing, discipline records, promotions,
demotions, pay rate, termination papers, exit
interview records

B. Individual incentive award payments (ICP)
6 years

C. Garnishments (general)        ACT + 3 years

D. Education and training records        AT + 10 years

E. Request and response for driver history        1 year

F. Employee medical file (including records of leave
granted under FMLA and records of accommodation
to a disabled employee requesting such
accommodation)        AT+6

G. Records showing employee exposure to
potentially hazardous substances (removed from
medical file AT)        P

H. Invention and copyright assignment agreements
(removed from personnel file AT)        P

I. Fingerprints        AT + 10 years

J. Safety or injury frequency reports        10 years

K. Job file, including applications for the specific job,
resumes of all applicants, advertisements, interview
questions, test results, notes, etc.        1 year

L. Employee handbooks and policies        SUP + 6 years

M. Training manuals        SUP

N. Job and market analysis        3 years

O. Reduction in force records        2 years

P. Job descriptions        SUP + 2 years

Q. Affirmative action programs        SUP + 1 year

R. EEO-1        5 years

S. Records of any sexual harassment complaints and
investigations and actions taken in response
ACT of all
employees involved
+ 3 years

T. Records showing employment eligibility under the
Immigration Reform and Control Act (1-9 and
supporting documentation)        The later of
3 years after
hiring or 1 year AT

U. Records for preparing certificates of creditable
coverage, including the name of the group health
plan, name of each participant and dependent under
the plan, the name, address and telephone number of
the party responsible for providing the certificate
(e.g., the plan admin or issuer)  Until coverage ceases
+ 2 years

XPO - 001835

| | |
|---|---|
| V. Employee travel | 13 months |
| W. Video distributions | 6 years |

**XIII. Printing and Duplication**

| | |
|---|---|
| A. Copies of documents produced by print shop | OBS |
| B. Negatives | OBS |
| C. Plates | OBS |
| D. Drawings and/or artwork | OBS |
| E. Printing orders | AT + 2 years |
| F. Form files | 10 years |

**XIV. Manufacturing**

| | |
|---|---|
| A. Bills of material | 2 years |
| B. Drafting records | P |
| C. Drawings | 15 years |
| D. Inspection records | 15 years |
| E. Lab test reports | P |
| F. Memos, production | AC |
| G. Products tooling, design, engineering research, experiment and specs, records | 20 years |
| H. Production reports | 3 years |
| I. Reliability records | P |
| J. Tool control | AT + 3 years |
| K. Work orders | 3 years |
| L. Work status reports | AC |

**XV. Office Supplies and Service**

| | |
|---|---|
| A. Inventories | AF + 1 year |
| B. Office equipment records | AF + 6 years |
| C. Requests for service | |
| D. Requisitions for supplies | |

**XVII. Sales and Marketing**

| | |
|---|---|
| A. Customer file | ACT + 5 years |
| B. Customer data sheets | Life of account |
| C. Customer surveys | 1 year |
| D. Goldmine electronic reports | As long as customer exists in CIS |
| E. A&B account activity report | 1 year |
| F. Sales invoices | Until payment + 1 year |
| G. Sales analysis reports | 5 years |

| | |
|---|---|
| H. Sales expenses | 5 years |
| I. Daily inbound manifests | 1 year |
| J. Daily outbound manifests | 1 year |
| K. Account data sheets | 1 year |
| L. Customer pricing files (cancelled) | 3 years |
| M. Customer pricing requests (never implemented; bids not awarded) | 3 years |
| N. Customer requests (certificates of insurance, operating authority, etc.) | 1 year |
| O. Quality process requests | 1 year |
| P. Market investigations and reports | 7 years |
| Q. Competitor files | 5 years |
| R. Market research data | 7 years |
| S. Presentations and proposals | 7 years |
| T. BDM asset checklist | AT + 6 years |
| U. Monthly sales lead registers | 90 days |
| V. Returned/overdue leads | 1 week |
| W. Service center sales lead recap | 1 year |
| X. Week That Was report | 3 years |
| Y. Conference reports | 1 year |
| Z. News centers (on CD) | P |

**XVII. Credit Relating to Customers**

| | |
|---|---|
| A. Application for credit, approvals, qualification reports | ACT + 1 year |
| B. Collections - correspondence | 2 years |
| C. Customer financial statements | 3 years |
| D. Guarantees and subordination agreements | ACT + 3 years |
| E. Security agreements and financing statements | ACT + 3 years |
| F. Trade clearances | 3 years |
| G. Marginal accounts | |
| H. Disputed accounts | |
| I. Embarrassed debtors | |

8

XPO - 001836

## XVIII. Contracts and Agreements

*General Principle* - The Company must keep all contracts, including, but not limited to customer and supplier contracts, government contracts, service agreements, leases, owner/operator agreements, information technology contracts and carrier contracts.

While the contract is in effect, the contract file should be continually reviewed and duplicates destroyed. After termination, all nonessential papers should be destroyed prior to filing in storage.

A. Contracts (non-governmental) AC or AT + 6 years

B. Contracts – government (prime and subcontract) 3 years after final payment or, for certain records, the period specified in Federal Acquisition Regulation (FAR) section 4.705 through 4.703.

## XIX. Operations

| | |
|---|---|
| A. Aircraft operating and maintenance | P |
| B. Bills of lading, waybills | Until delivery + 6 years |
| C. Freight bills | Until payment + 3 years |
| D. Freight claims | Until settlement + 3 years |
| E. Motor operating and maintenance | 5 years |
| F. Rates and tariffs | SUP |
| G. Receiving documents | 6 years |
| H. Shipping and related documents | 6 years |
| I. Facility operating statistics | 1 year |
| J. Drivers sign-in/sign-out sheets | 3 years |
| K. Hazardous material load sheets | 3 years |
| L. NLM load sheets | 1 year |
| M. Port of entry border manifest | 2 years |
| N. GO access control program | P |
| O. Comcheck records | 6 years |
| P. Collections – c.o.d./driver collect | 3 years |
| Q. Deadhead mileage pay sheet | 3 years |
| R. Outbound projection audits | 2 years |
| S. Monthly load factor/king of the hill | 13 months |
| T. Dispatch report (late shipments) | 1 year |
| U. ESL reports | 1 month |
| V. FAC reports | 1 month |
| W. Monthly service report | 13 months |
| X. Morning reports | 1 year |
| Y. Region morning reports | 1 month |
| Z. Week That Was reports | 2 years |
| AA. Video distributions | 13 months |
| BB. Daily linehaul lineup | 5 days |
| CC. Direct run reports | 5 days |
| DD. FAC VIA reports | 5 days |
| EE. Meet and turn finals | 5 days |
| FF. Via reports | 5 days |
| GG. Admin messages sent to and received from the field | 5 days |

## XX. Security

| | |
|---|---|
| A. Employee case files | AT + 5 years |
| B. Employee badge records | AT + 5 years |
| C. Visitor records | 2 years |
| D. Subcontractor badge records | AT + 2 years |
| E. Vendor badge records | ACT + 2 years |
| F. Fire, theft investigations | P |

## XXI. Other Records

### A. Litigation Files and Court Record**

*General Principle* - The Company must retain litigation and court-related documents necessary to support the outcome of a litigated case, court proceeding or any government or agency investigation.

| | |
|---|---|
| 1. Complaints and charges filed and responses | ACT + 3 years |
| 2. Depositions | ACT + 3 years |
| 3. Discovery requests and responses | ACT + 3 years |
| 4. Case related correspondence between attorneys | ACT + 3 years |
| 5. Other court or agency records (including court orders or decisions, filings, and motions) | ACT + 3 years |
| 6. Privileged document logs | ACT + 3 years |

9

XPO - 001837

7. All records (including court filings, cancelled checks, summary documents, stipulations and/or dismissals) showing satisfaction of any claim, judgment, or lien                                                10 years

**B. Business Development Center Records**

1. BDC call reports                                        1 year

2. CRM files                                        As long as customer exists In CIS

3. STAR score sheets                                        1 year

4. STAR worksheets                                        1 year

5. TIAS – hardcopy                                        1 year

6. TIOS – hardcopy                                        1 year

7. Agency payroll drafts                                        1 year

8. Annual review of driver record
                                                    P (in personnel file)

9. City dispatch records                                        1 year

10. City mileage report P&D equipment        3 months

11. Credit exception reports                        1 month

12. Delivery receipts                                        6 years

13. Disaster recovery plans                                        P

14. Dock write up                                        3 days

15. Driver's instruction checklist on hazardous material loads                                        2 years

16. Equipment daily inspection and condition report                                        90 days

17. Equipment interchange receipt and safety inspection report                                        3 years

18. Freight delivery exception log                        1 year

19. Inspection request/damage notification log  1 year

20. Loading manifests                                        2 years

21. Miscellaneous equipment disposition record
                                                                1 year

22. Miscellaneous invoices                                        1 year

23. Miscellaneous miles report                        3 months

24. Port of entry border manifest                        2 years

25. Purchase orders                                        3 years

26. Invoices                                        6 years

27. Register turnpike tickets                                        2 years

28. Service center unloading check sheet        2 years

29. SIMS (on-line security loss report) message
                                                                3 years

30. Special activities report                                        2 years

31. Statement of service center income and expense
                                                    1 year (in service center)

32. Terminal drafts                        1 year (in service center)

33. Terminal recap listing (TCRD)        1 to 8 years
                                    (depending on state requirements)

34. Service center statistics                        1 month
                                                    (in service center)

35. Transportation entry and manifest of goods subject to customs inspection and permit        5 years

**C. Products Liability-Related Records**

*General Principle* - Retain records supporting corporate decisions regarding the safety of a particular product.

1. Policies on product safety                        SUP

2. Product design information (including 90 days design decisions, industry standards, alternative designs, etc.)                                        P

3. Safety test data                                        P

4. Manuals, promotional material                        P

5. Letters, litigation related materials (including customer complaints, reports)                        P

6. Product-recall related information                        P

**D. Email or Electronic Records**

*General Principle* - Material retained in electronic or digital form should be retained for the same period as the equivalent material in printed form. This includes, but is not limited to, email and instant messaging records.

**E. Immigration Reform and Control Act Records (1-9)**

*General Principle* - The Company must keep 1-9 documents for three years from the date of hiring or one year after the date that the individual's employment is terminated, whichever is later. Also retain supporting documents for the same period.

**F. Export Control Regulation Records****

1. Export control documents*, memoranda, notes, correspondence, contracts, invitations to bid, books of account, financial records, restrictive trade practices or boycott documents and reports, dock receipts, SED or AES records, and packing slips.        5 years

 *Export control documents include any documents relating to the transportation of U.S.-origin goods outside the United States, including domestic*

10

XPO - 001838

*transfers or shipments of goods intended for export from the United States and shipments of U.S.-origin goods within or among countries other than the United States.*

2. Records pertaining to the Trading with the Enemy Act and the International Emergency Economic Powers Act, to include records pertaining to any destination subject to a U.S. embargo or sanctions or parties restricted from engaging in activities pursuant to those statutes. 5 years

3. Arms Export Control Act/International Traffic in Arms Regulations records pertaining to the manufacture, acquisition, and disposition of defense articles and the provision of defense services, to include warehousing and transportation of defense articles outside the United States. 5 years

*\*\*All Export Control Regulation Records must be kept for 5 years from the latest of the following date:*

*a. Export from the United States;*

*b. Any known re-export, retransfer, or diversion of the item from the United States; or*

*c. Any termination of the transaction.*

4. Atomic Energy Act records 5 years

**G. Importation Activity Records**

1. Information that pertains directly or indirectly to importation activities and information required for the entry of merchandise (the "(A)(1)(A)" list) 5 years

2. Packing lists 60 days

**H. Federal Election Campaign Act**

1. Political Action Committee reports (including statement, disclosure report, and notices filed with the Federal Election Commission 3 years after filed

**I. Anti-Boycott Regulations**

1. Export control documents (including a license, application for a license, application for international import certificates, international import certificates, shipper's export declaration, a dock receipt or bill of lading in connection with an export, Customs Form 7512, other written information pertaining to an export such as memoranda, notes, correspondence, contracts, financial records, books of account, restrictive trade practices or boycott documents and reports, etc.) 5 years\*

*\*Records must be kept for a period of 5 years from the date of receipt of the boycott-related request or requirement.*

**J. Foreign Corrupt Practices Act**

1. Books, records and accounts that reflect that the Company complied with the law (these include such things as Company policies, documentation showing when the FCPA was discussed in meetings, procedures used to inform new employees, employee certifications, employee discipline records, etc.) P

---

*\* Files to be retained at the discretion of the credit manager.*

*\*\* Records pertaining to outstanding exceptions, unsettled claims, incomplete investigations, cases pending or under litigation shall be retained until final clearance from Company Legal department*

11

**Annex A**

**Environmental Record Retention Schedule**

## 1 Policy Statement

It is the Company's policy to destroy all environmental records, except those specifically authorized to be preserved in this Schedule. Those records specifically authorized to be preserved are as follows:

**Abbreviations**

P – Permanent
SUP – Until Superseded

**I. General Environmental Records**

A. Judicial, administrative orders; consent decrees; Potentially Responsible Party designations
P or duration of order or decree +6 years

B Environmental Protection Agency reporting documentation — 30 years

C. Correspondence with government environmental agencies — 6 years

D. Permits (including applications and supporting documentation); continuous emission monitoring system (CEMS) records; reports of GEMS startup, shutdown, or malfunction; and written quarterly reports of excess emissions — As long as the facility is operating + 5 years

E. Monitoring reports — As long as the facility is operating + 5 years

F. Material safety data sheets (MSDS) — SUP

G. Facility audit reports — P

H. Phase I and 11 property records — P

I. Phase I, II and III audits — P

**II. Emergency Planning and Community Right-to-Know**

A. Toxic chemical release inventory forms (Form Rs) (including supporting documentation) — 3 years

B. Supplier notifications — 3 years

C. Tier I and H reports — 3 years

**III. Toxic Substances Control Act**

A. § 8(a) Information gathering reports of order (including supporting documentation, or decree notices that must be sent to customers, and all return receipts signed by customers if applicable) — 3 years

B. Inventory reporting rule reports (40 C.F.R. part 710) — 4 years

C. Significant new use notices (including supporting documentation) — 5 years

D. Pre-manufacture notices (including supporting documentation) — 5 years

E. Allegations of significant adverse reactions (by Company employees) — 30 years

F. Allegations of significant adverse reactions (by non-employees such as site neighbors or customers) — 5 years

G. Hazardous material load sheets — 3 years

H. Hazardous materials disposal records — 5 years

I. Hazardous materials storage records — 3 years

J. Hazardous materials incident reports — P

**IV. Comprehensive Environmental Response, Compensation and Liability Act (CERCLA)**

A. Toxic chemical release reporting records — 3 years

B. Records regarding onsite disposal of toxic chemicals under CERCLA § 103(d) (U.S. Code Title 42) — 50 years

## V. Resource Conservation and Recovery Act (including underground storage tanks)

*Note:* It is important to note that many states have their own reporting requirements in this area. Contact the Legal department if you have questions regarding your state's reporting requirements.

A. Waste manifests, exception reports biennial reports, laboratory test data, inspection records and reports, annual reviews — 3 years

B. Hazardous waste determinations — 3 years

C. Treatment, storage, and disposal facility inspection records (operating log) — 3 years

D. Employee training records — For current employee's retain until closure of facility. For former employee's, retain 3 years from date employee left facility

E. Closure and post closure records — Retain closure plan until closure complete and certified. Retain post-closure plan-closure care begins.

F. Underground storage tanks (USTs) (records documenting proper operation of the tank) — Operating life of tank

G. UST release detection system: manufacturer claims pertaining to system — 5 years from date of install

H. UST release detection system: results of sampling, testing or monitoring of system — 1 year

I. UST release detection system records documenting calibration, maintenance and repair — 1 year

J. UST closure records — 3 years after completion of permanent closure or change in service.

## VI. Storm Water Pollution Prevention Plan (SWPPP)

A. Refer to the individual Plan/Permit of each location to determine the retention timeframe

## VII. Spill Prevention Control and Countermeasure (SPCC)

A. Above ground storage records — life of tank

B. Monthly and annual inspection checklists — 3 years from date of inspection

C. SPCC plan — 3 years after facility is no longer subject to regulation

**Original BEP Effective Date: June 4, 2012**      **Updated: October 28, 2015**

**Replaces Version Updated: June 4, 2012**

XPO - 001841



**SMS** Safety Measurement System

## Learn About the CSA Prioritization Preview

FMCSA is proposing a new prioritization methodology to keep enforcement efforts focused on the carriers in most need of intervention. Learn more about these changes and how they will improve highway safety.

**Visit the CSA Prioritization Preview**

### XPO LOGISTICS FREIGHT INC

U.S. DOT#: 241829
Address: 2211 OLD EARHART ROAD
ANN ARBOR, MI 48105-2751
Number of Vehicles: 9,955
Number of Drivers: 12,806
Number of Inspections: 5,490

### Safety Rating & OOS Rates

(As of 02/20/2025 updated daily from SAFER )

**SATISFACTORY**
(Rating Date: 12/22/1994)

#### Out of Service Rates

| Type | OOS % | National Avg % |
|------|-------|----------------|
| Vehicle | 15.2 | 21.4 |
| Driver | 1.0 | 6.0 |
| Hazmat | 2.7 | 4.5 |

### Licensing and Insurance

(As of 02/20/2025 updated hourly from L&I )

**Active For-Hire Authority**

| Type | Yes/No | MC#/MX# |
|------|--------|---------|
| Property | Yes | MC-165377 |
| Passenger | No | |
| Household Goods | No | |
| Broker | Yes | MC-165377 |

## BASIC Status (Public Property Carrier View) ?

Behavior Analysis & Safety Improvement Categories (BASICs)

View CSA Prioritization Preview →    Based on a 24-month record ending January 31, 2025

|  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|
| | Not Public | Hours-of-Service Compliance | Vehicle Maintenance | Controlled Substances and Alcohol | Not Public Hazardous Materials Compliance | |
| Unsafe Driving | Crash Indicator | | | | | Driver Fitness |

### On-Road Performance

| 0.44 | NOT PUBLIC | 0.07 | 2.47 | 0 | NOT PUBLIC | 0.06 |
|------|-----------|------|------|---|-----------|------|
| Measure | | Measure | Measure | Measure | | Measure |

#### On-Road Performance Detail

| **Driver Inspections with Unsafe Driving Violations:** 448 | NOT PUBLIC | **Driver Inspections:** 5,378 | **Vehicle Inspections:** 3,822 | **Driver Inspections:** 5,378 | NOT PUBLIC | **Driver Inspections:** 5,378 |
|---|---|---|---|---|---|---|
| **Safety Event Group:** 150+ driver inspections with Unsafe Driving Violations | | with HOS Compliance Violations: 121 | with Vehicle Maint. Violations: 1,232 | with Drugs/Alcohol Violations: 2 | | with Driver Fitness Violations: 45 |
| **Avg. PU × UF:** 9,570 | | **Safety Event Group:** 501+ relevant driver inspections | **Safety Event Group:** 501+ relevant vehicle inspections | **Safety Event Group:** 2 driver inspections with Controlled Substances/Alcohol Violations | | **Safety Event Group:** 501+ relevant driver inspections |
| **Segment:** Combination Carrier | | | | | | |

### Investigation Results

| No Acute/Critical Violations Discovered | N/A | No Acute/Critical Violations Discovered | No Acute/Critical Violations Discovered | No Acute/Critical Violations Discovered | NOT PUBLIC | No Acute/Critical Violations Discovered |
|---|---|---|---|---|---|---|

Select a BASIC icon above to get details, or view your Complete SMS Profile.

XPO - 001842

## Summary of Activities

The summary includes information on the 5 most recent investigations and 24 months of inspections and crash history.

Most Recent Investigation: 10/18/2023 (Non-Ratable Review)
Total Inspections: 5,490
  Total Inspections without Violations used in SMS: 3,678
  Total Inspections with Violations used in SMS: 1,812
Total Crashes* : 712

*Crashes listed represent a motor carrier's involvement in reportable crashes, regardless of the carrier's or driver's role in the crash.
Continue for details.

## Carrier Registration

Subject to Hazmat Threshold

## Enforcement Cases

(Six years as of 02/20/2025 updated monthly from FMCSA )

No penalties found

## USE OF SMS DATA/INFORMATION

**FAST Act of 2015:**

Readers should not draw conclusions about a carrier's overall safety condition simply based on the data displayed in this system. Unless a motor carrier has received an UNSATISFACTORY safety rating under part 385 of title 49, Code of Federal Regulations, or has otherwise been ordered to discontinue operations by the Federal Motor Carrier Safety Administration, it is authorized to operate on the Nation's roadways.

**Safety Measurement System:**

The data in the Safety Measurement System (SMS) is performance data used by the Agency and Enforcement Community. A ⚠ symbol, based on that data, indicates that FMCSA may prioritize a motor carrier for further monitoring.

The ⚠ symbol is not intended to imply any federal safety rating of the carrier pursuant to 49 USC 31144. Readers should not draw conclusions about a carrier's overall safety condition simply based on the data displayed in this system. Unless a motor carrier in the SMS has received an UNSATISFACTORY safety rating pursuant to 49 CFR Part 385, or has otherwise been ordered to discontinue operations by the FMCSA, it is authorized to operate on the nation's roadways.

Motor carrier safety ratings are available at http://safer.fmcsa.dot.gov and motor carrier licensing and insurance status are available at http://li-public.fmcsa.dot.gov/.

XPO - 001843

**REIMBURSEMENT OF DEDUCTIBLE ENDORSEMENT ALLOCATED LOSS ADJUSTMENT EXPENSE ("ALAE")
INCLUDED IN THE DEDUCTIBLE AMOUNT**

| Named Insured XPO Logistics, Inc. | | | Endorsement Number<br>19 |
|---|---|---|---|
| Policy Symbol<br>ISA | Policy Number<br>H25574874 | Policy Period<br>11/01/2022 ᴛᴏ 11/01/2023 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:**

**BUSINESS AUTO COVERAGE FORM**

**I) DEDUCTIBLE AMOUNT**

$5,000,000; plus

50% of the amount in excess of $5,000,000 up to the Limit of Insurance shown on the Declarations

Per "Accident" including Allocated Loss Adjustment Expense, for all coverages except Physical Damage and Garagekeepers.

**II) ADDITIONAL PROVISIONS**

1) "We" will pay all sums that "we" become legally obligated to pay, up to the Limit of Insurance under this Policy.

2) "You" must reimburse us up to the Deductible Amount for any amounts we have paid under this policy.

3) The Deductible Amount shown in Section I of this endorsement will apply per "accident", regardless of the number of claimants, Insureds, claims made or "suits" brought, or persons or organizations making claims or bringing "suits".

4) If "you" fail to reimburse "us" for any amount due under this endorsement, or fail to provide "us" any collateral that "we" require, "you" will be in default of "your" obligations to "us", and "we" may take any steps "we" deem necessary to enforce our rights against "you", including but not limited to drawing on any amount of collateral "we" hold or canceling this policy, if permitted by law.

5) Each Named Insured is jointly and severally liable for all amounts reimbursable under this endorsement.

6) If "we" recover any payment "we" make under this policy from anyone liable for damages or "ALAE", the amount "we" recover will first be applied to any payments "we" made in excess of the Deductible Amount and to "our" expenses in obtaining the recovery. The remainder of the recovery, if any, will reduce the amount that is reimbursable by "you".

# REIMBURSEMENT OF DEDUCTIBLE ENDORSEMENT ALLOCATED LOSS ADJUSTMENT EXPENSE ("ALAE") INCLUDED IN THE DEDUCTIBLE AMOUNT

## III) ALLOCATED LOSS ADJUSTMENT EXPENSE DEFINITION

**"Allocated Loss Adjustment Expense(s)" or "ALAE"** means such claim expenses, costs and any interest provided for under the Supplementary Payments of this policy, that are incurred in connection with the investigation, administration, adjustment, settlement or defense of any claim or lawsuit that we, under our accounting practices, directly allocate to a particular claim, whether or not a payment indemnifying the claimant(s) is made. Such expenses include, but are not limited to, subrogation, all court costs, fees and expenses; fees for service of process; fees and expenses to attorneys for legal services; the cost of services of undercover operations and detectives; fees to obtain medical cost containment services; the cost of employing experts for the purpose of preparing maps, photographs, diagrams, and chemical or physical analysis, or for expert advice or opinion; the cost of obtaining copies of any public records; and the cost of depositions and court reporters or recorded statements, provided, however, that Allocated Loss Adjustment Expense shall not include the salaries and traveling expenses of our employees or our overhead and adjusters' fees.

## IV) NO OTHER CHANGES

All other terms of this policy remain unchanged, including those with respect to:

(a) Our right and duty to defend any "insured" against a "suit" asking for damages to which this insurance applies, and

(b) Limit of Insurance, and

(c) Your duties in the event of an accident, claim, suit or loss.

Chubb NA Casualty
P.O. Box 5113
Scranton, PA 18505-0530

M  +1 (678) 795.4398
E  emily.goodson@chubb.com

November 25, 2024

XPO Logistics, Inc.
Attn: Jessica Supernaw / Bob Pickard
Five American Lane
Greenwich CT 06831

*Sent via Electronic Mail Only:* <u>*jessica.supernaw@xpo.com*</u> / bob.pickard@xpo.com

**CHUBB**

| | |
|---|---|
| Insured: | XPO Logistics, Inc. |
| Policy No: | XSA H25575039 |
| Policy Period: | 11/01/2022 - 11/01/2023 |
| Date of Loss: | 10/11/2023 |
| Chubb Claim: | KY24K2979713 |
| Case: | Cause No. 24-CVS-468; *The Estate of Mark Smith v. XPO Logistics Freight, Inc., William Bratty Lamb* |

Dear Ms. Supernaw and Mr. Pickard,

ACE American Insurance Company ("ACE") acknowledges receipt of the above referenced claim from Sedgwick, the third-party claims administrator for XPO Logistics, Inc. ("XPO"), for a complaint initiated by the Estate of Mark Smith ("Plaintiff"). We are directing this letter to you as the authorized representative for XPO. ACE has reviewed this matter for the purpose of analyzing coverage under the above referenced policy. As discussed in greater detail below, we are covering this claim at this time, however subject to a reservation of rights.

**The Complaint**
This action is currently pending in the General Court of Justice, Superior Court Division, Robeson County, North Carolina under Case 24-CVS-468 and is entitled *The Estate of Mark Smith v. XPO Logistics Freight, Inc., William Bratty Lamb.* In the complaint, Plaintiff alleges on October 11, 2023, an XPO driver failed to yield the right of way and negligently caused the death of Mark Smith. The suit seeks both compensatory and punitive damages.

**The Policy**
ACE issued an Excess Business Auto Liability policy, number XSA H25575039, effective 11/01/2022 - 11/01/2023, to XPO with a per accident limit of $5M (Subject to a 50% deductible) excess a $5M retained limit.

**Analysis of Policy Provisions Relevant to Plaintiff's Claim**
Please note that it may be considered against public policy and impermissible for punitive damages to be covered by insurance. Accordingly, as the Complaint contains a prayer for punitive damages, Chubb reserves its rights in this regard.

**Additional Information**
There may be additional Policy provisions that apply to this matter. This letter addresses only those provisions that appear pertinent at this time in light of the facts currently known and available to us, without accepting or implying that the allegations have any factual or legal merit. If there is any additional information that may affect ACE's position or analysis, please forward such information.

Also, ACE's investigation of this matter is continuing. ACE therefore must reserve all rights with regard to the above referenced provisions, as well as all other rights, remedies, and defenses under the Policy, at law, and in equity. These reservations include, but are not limited to, the right to amend this letter to address additional coverage issues as they may arise, based upon the Policy and/or any additional facts that may come

1

to ACE's attention. Nothing contained in this letter, and no action on our part in investigating these matters, should be construed as an admission of coverage or as a waiver of any right, remedy, or defense that may be available to ACE.

If you have any questions, or would like to discuss this matter further, please contact me directly at (678) 795-4398 during normal business hours or by email emily.goodson@chubb.com.

Sincerely,

Emily Goodson
ACE American Insurance Company
Senior Claim Director, TPA Oversight

CHUBB

CC:     jdaugherty@lockton.com
        Ash.kilada@xpo.com
        kristen.svalstad@sedgwick.com

2

XPO - 001847

## Will Owen

| | |
|---|---|
| **From:** | Will Owen |
| **Sent:** | Monday, February 24, 2025 5:27 PM |
| **To:** | Megan Stacy; Brandi Davis; Jennifer A. Welch |
| **Cc:** | Austin Kessler; Sabrina Rockwell |
| **Subject:** | Re: Estate of Smith v. Lamb, et al. - Subpoena - Robeson County District Attorney and Lumberton Rescue and EMS, Inc. |
| **Attachments:** | Est. Mark Smith v. XPO - Order to Compel (01.21.25).pdf |

Megan,

XPO has failed to comply with the attached Order.

Please state your clients' intentions with respect to compliance. Otherwise, I will have no choice but to file a second motion to compel and motion for sanctions. Please consider this email as our good faith attempt to resolve this amicably without the Court's intervention under Rule 37.

**J. William Owen**
Musselwhite, Musselwhite, Branch & Grantham, P.A.
T: +1 910 738 5277 | F: +1 910 738 3678

---

**From:** Will Owen
**Sent:** Monday, February 24, 2025 10:48:19 AM
**To:** Megan Stacy <mstacy@grsm.com>; Brandi Davis <bldavis@grsm.com>; Jennifer A. Welch <JWelch@cshlaw.com>
**Cc:** Austin Kessler <akessler@grsm.com>; Sabrina Rockwell <srockwell@grsm.com>
**Subject:** RE: Estate of Smith v. Lamb, et al. - Subpoena - Robeson County District Attorney and Lumberton Rescue and EMS, Inc.

Thanks, Megan.

When can we expect to receive the supplemental responses pursuant to the Court's Order to Compel?

**J. William Owen**
Musselwhite, Musselwhite, Branch & Grantham, P.A.
T: +1 910 738 5277 | F: +1 910 738 3678

**From:** Megan Stacy <mstacy@grsm.com>
**Sent:** Thursday, February 20, 2025 11:46 PM
**To:** Will Owen <wowen@mmbglaw.com>; Brandi Davis <bldavis@grsm.com>; Jennifer A. Welch <JWelch@cshlaw.com>
**Cc:** Austin Kessler <akessler@grsm.com>; Sabrina Rockwell <srockwell@grsm.com>
**Subject:** Re: Estate of Smith v. Lamb, et al. - Subpoena - Robeson County District Attorney and Lumberton Rescue and EMS, Inc.

Good evening Will: I am uploading XPO's supplemental responses and documents to a shared file and will have a link over to you shortly. I appreciate your patience as I troubleshoot.

**Megan M. Stacy**

PLAINTIFF'S EXHIBIT 20