IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:25-cv-01545-D-BM

| | |
|---|---|
| CINDY SOLES SMITH, Administratrix of the ESTATE OF MARK KEANNAN SMITH, <br><br> Plaintiff, <br><br> v. <br><br> XPO LOGISTICS FREIGHT, INC., <br><br> Defendant. | MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND 28 U.S.C. § 1447(c) |

XPO Logistics has spent the last eighteen months doing everything possible to avoid accountability in this wrongful death case. After systematically stonewalling discovery, violating court orders, and earning scathing sanctions from the state trial court for its "continual, intentional and egregious" misconduct, XPO has now decided that it would rather litigate in federal court.

But the law doesn't allow XPO's thirteenth-hour removal. When cases become removable later in the litigation, defendants must promptly remove within 30 days of the case becoming removable. Complete diversity existed in July 2025, but XPO waited three months before removing, which was two months too late. And the amount-in-controversy was clear from the outset of this case, back in 2024.

Worse still for XPO, this case never became removable because of the one-year cap on removal for diversity actions like this one. To overcome the one-year cap, a defendant must prove that the plaintiff acted in bad faith to prevent removal. But the

state court's orders, and the procedural history of this case show that XPO is the only bad actor. Everyone else involved has sought to mitigate the prejudice of XPO's meritless filings and discovery misconduct.

Finally, XPO's conduct in state court waived its right to remove, if it ever had one. It was only when the Court of Appeals finally denied stay relief that XPO turned to removal as a solution for its problems. But XPO's extensive state-court litigation worked a waiver of any removal right that may have existed.

This removal is what it appears to be: a defendant's attempt to escape the consequences of adverse state-court rulings. But forum-shopping to avoid state court sanctions is not a valid basis for removal. The appropriate remedy is remand—with an award of costs and attorney's fees to compensate Plaintiff for XPO's latest delay tactic.

## STATEMENT OF THE FACTS AND PROCEDURAL HISTORY

### A.    XPO's Employee Kills Mark Smith.

This case arises out of the tragic death of Plaintiff's decedent and husband, Mark Smith, who was killed in a motor vehicle collision on October 11, 2023 in Robeson County, North Carolina. (Ex. 5, ¶¶ 19-29). At the time of the fatal collision, William Bratty Lamb was operating a tractor-trailer owned by his employer, Defendant XPO Logistics Freight, Inc. (*Id.*, ¶ 16). Lamb pulled directly into the path of the decedent and suddenly stopped, causing Lamb's 53-foot trailer to block all westbound lanes of travel on Interstate 74 Alternate in the dark early morning hours. (*Id.*, ¶¶ 19-29). Lamb is a citizen and resident of Robeson County, North Carolina and

Plaintiff is a citizen and resident of Brunswick County, North Carolina. (Ex. 7, ¶¶ 2, 4).

On October 18, 2023, following an extensive law enforcement investigation, including the review of video footage of the collision and witness interviews, Lamb was charged with misdemeanor death by motor vehicle (N.C. Gen. Stat. § 20-141.4) and failure to yield right of way (N.C. Gen. Stat. § 20-155). (Ex. 89). All of Lamb's criminal charges arising from this fatal collision remain active and pending in Robeson County District Criminal Court (23CR438001-770). (*Id.*). Lamb's next court date for his pending criminal charges is December 8, 2025. (*Id.*).

Lamb's employer, XPO, is a global transportation and logistics company with a shipping terminal on Interstate-95 in Robeson County. (Ex. 5, ¶ 11-15). XPO is a wholly owned subsidiary of its publicly traded parent corporation, XPO, Inc., which generates substantial revenue and profit from its trucking operations. (*Id.*, ¶ 13). For instance, in 2024 XPO, Inc.'s revenue exceeded eight billion dollars. Given its sophistication and size, XPO uses advanced telematics technology to monitor and "coach" its 14,000 commercial vehicle operators worldwide (Ex. 88). Importantly, this safety technology provides audio and video footage from "harsh events," such as vehicle and pedestrian collisions, among others. (*Id.*, ¶ 8). It also provides XPO with detailed data and digital analysis of driver behaviors such as speeding, texting, failure to wear a seatbelt and hard braking, among other variables. (*Id.* ¶ 6).

## B.    The Estate Sues XPO and Lamb in North Carolina Superior Court.

Lamb was acting as an employee for XPO when he killed Smith with an XPO truck. (Ex. 7, ¶ 20). Plaintiff filed a wrongful death action in Robeson County Superior

Court against Lamb on February 15, 2024. (Ex. 3). Counsel for Lamb accepted service of the summons and Complaint on February 20, 2024. (Ex. 4).

Plaintiff then amended her complaint as a matter of course under Rule 15(a) of the North Carolina Rules of Civil Procedure and added XPO to the same civil action. (Ex. 5). The Robeson County Clerk issued a summons to XPO on February 22, 2024. (Ex. 75). Counsel for XPO accepted service of the Summons and First Amended Complaint on February 28, 2024. (Ex. 6). Lamb and XPO were and remain represented by the same counsel.

When it answered the complaint, XPO filed a counterclaim against Plaintiff for property damage to their tractor-trailer in Robeson County Superior Court (Ex. 7).

## C.   XPO Is Sanctioned for Discovery Abuse.

On June 5, 2024, Plaintiff served separate sets of discovery on Lamb and XPO, which consisted of Plaintiff's First Set of Interrogatories, First Request for Production of Documents and First Request for Admission. (Ex. 77). On June 27, 2024, XPO and Lamb moved for an extension of time to respond to Plaintiff's initial set of discovery directed to Lamb and XPO. (Ex. 12). The clerk extended the response deadline to August 5, 2024. (Ex. 13).

Despite the deadline, on August 6, 2024, Defendant XPO and Lamb served untimely responses to Plaintiff's initial discovery request. (Ex. 77). Since Lamb was an employee of XPO, many of the requested documents, data and training materials were in the possession and control of XPO and not in the possession and control of Lamb, individually. (Ex. 80). Accordingly, the ensuing discovery dispute was

primarily between Plaintiff and XPO, Lamb's employer, which were represented by the same counsel.

On August 6, 2024, counsel for Plaintiff sent a detailed letter to counsel for XPO advising counsel of the consequences of its untimely discovery responses and requested prompt supplementation without objection to both sets of discovery requests. (Ex. 77). On August 22, 2024, counsel for Plaintiff sent another letter to counsel for XPO about the numerous improper objections and past-due discovery and again requested complete responses on or before August 30, 2024. (Ex. 78).

On August 30, 2024, counsel for XPO requested from Plaintiff an informal extension of time to fully respond to Plaintiff's initial discovery requests. (Ex. 79). Counsel for Plaintiff allowed this extension and voluntarily enlarged the deadline to September 3, 2024 for XPO to respond to the initial discovery served by Plaintiff 90 days earlier. (*Id.*).

On September 3, 2024, XPO served its first supplemental response to Plaintiff's initial discovery requests. But despite the multiple conferral attempts, the responses still contained multiple improper objections and refusals to substantively respond. (Ex. 80). On September 4, 2024, counsel for Plaintiff again advised counsel for XPO of the discovery deficiencies, including the production of XPO's insurance policies, declaration pages, training materials, the employee handbook and basic shipping documents (e.g., bill of lading and manifest). (*Id.*). XPO produced none of these routine, discoverable documents.

On October 10, 2024, counsel for Plaintiff again sent counsel for XPO a detailed correspondence which requested supplemental discovery responses which were squarely related to Plaintiff's claims within 15 business days. (Ex. 81). Plaintiff made clear that she would have to seek the trial court's intervention if substantive responses were not timely received. (*Id.*). On October 22, 2024, counsel for Plaintiff served her Second Request for Production on XPO, which specifically related to telematics software used by XPO at the time of the fatal collision. (Ex. 92).

**D.      XPO's Refusal To Participate In Discovery.**

On November 1, 2024, as a final show of good faith and cooperation, counsel for Plaintiff sent counsel for XPO detailed correspondence and agreed to voluntarily limit the scope of her request for supplementation with an updated due date of December 2, 2024. (Ex. 83). After multiple additional requests for further extensions of time by XPO, counsel for Plaintiff voluntarily agreed to new due date of December 23, 2024, for all outstanding supplemental discovery responses, since that date correlated with XPO's due date for its responses to Plaintiff's Second Request for Production of Documents. (Ex. 84). The telematics data being sought by Plaintiff in her Second Request for Production of Documents related to Lamb specifically. (Ex. 85).

On December 23, 2024, XPO served its responses to Plaintiff's November 1, 2024 detailed request for supplementation and served its responses to Plaintiff's Second Request for Production of Documents. (Ex. 85). XPO's supplementation and responses to Plaintiffs Second Request for Production of Documents contained numerous improper objections, refusals to substantively answer and improper

limitations of their response. (*Id.*). XPO continued to withhold basic, responsive documents from Plaintiff without justification. (*Id.*).

On December 24, 2024, counsel for Plaintiff advised counsel for XPO that the responses were deficient, and Plaintiff would be filing a motion to compel. (*Id.*, ¶ 4).

### E.     First Order to Compel Against XPO.

On January 2, 2025, Plaintiff filed a Motion to Compel Against XPO, which was heard on January 13, 2025. (Ex. 21). On January 21, 2025, the trial court entered an Order compelling XPO to respond fully without objection to certain discovery requests within 30 days from the entry of the Order. (Ex. 23). The trial court unambiguously ordered production and supplementation no later than February 21, 2025. (*Id.* ¶¶ 2, 4).

XPO ignored the Court order. It did not serve any discovery by the February 21 deadline. (Ex. 40, ¶ 30). Nor did XPO seek an extension. (*Id.*, ¶¶ 31-32).

Counsel for Plaintiff emailed XPO's counsel on February 24, 2025 and advised that they were violating the Court's January 21, 2025 Order and asked counsel to "state their intentions prior to Plaintiff moving for sanctions and further moving to compel." (*Id.* ¶ 33). On February 26, 2025, past the deadline set by the trial court, XPO served extremely limited and vague supplemental discovery responses, which were not signed by counsel or verified by anyone at XPO, in violation of the North Carolina Rules of Civil Procedure. (*Id.* ¶¶ 34-36).

In XPO's limited supplemental responses dated February 26, 2025, XPO stated that it had "filed Motion for Reconsideration that includes request for the Court to reconsider [certain] provisions of the Order." (*Id.*, ¶ 38). However, the Motion for

7

Reconsideration referenced in the supplemental responses was not actually filed until two days later on February 28, 2025. (*Id.*, ¶ 39).

In correspondence dated March 17, 2025, 24 days after the mandatory deadline set by the January 21, 2025 Order, counsel for Plaintiff unequivocally warned counsel for XPO that the January 21, 2025 Order "was not tolled" by the purported reconsideration motion, and that the "ongoing violation of the Court's Order would likely result in *severe sanctions* under Rule 37(b)." (Ex. 87).

Meanwhile, XPO's discovery abuses required a continuance of the trial date. Trial was originally set for May 12, 2025 but was continued. (Ex. 40, ¶ 46).

## F. Sanctions Order and Second Order to Compel.

Having witnessed firsthand the ongoing discovery misconduct, the trial court sanctioned XPO in an Order dated April 25, 2025. (Ex. 40). The trial court found that "XPO has continually, intentionally and egregiously violated its obligations to Plaintiff and to this Court under the North Carolina Rules of Civil Procedure." (*Id.*, ¶ 43). The Court also found that "XPO has exhibited a deliberate and calculated pattern of doing so, despite many attempts by Plaintiff's counsel to resolve these discovery issues and deficiencies without judicial intervention." (*Id.*, ¶ 44). The trial court determined that "Plaintiff is unable to fairly and fully prosecute her various claims without the critical and relevant materials being intentionally and unjustly withheld by XPO." (*Id.*, ¶ 45). As a sanction, the Court established certain facts in the litigation as true for purposes of trial. (*Id.*, ¶ 56).

The Sanctions Order also granted Plaintiff's Second Motion to Compel and the trial court reiterated that XPO was to produce very specific and highly relevant documents and data being withheld from Plaintiff. (*Id.*, ¶¶ 59-64).

## G. XPO Unsuccessfully Attempted to Stay Further Proceedings.

Rather than complying with the interlocutory sanctions order, XPO filed a notice of appeal to the North Carolina Court of Appeals, but only for itself and not Lamb. (Ex. 47). XPO then attempted to further delay and obstruct Plaintiff's discovery efforts by filing a sweeping motion for a "global stay of all proceedings" in the trial court—for both XPO and Lamb. (Ex. 49). The trial court denied the motion for a global stay. (Ex. 58). XPO then filed a motion for a temporary stay and petition for a writ of supersedeas with the North Carolina Court of Appeals, which that Court denied. (Ex. 63).

Thus, XPO's appeal only had the effect of staying an actual trial against XPO in the case. (Ex. 58, ¶ 36).

## H. The Court Severs the Claims Against Each Defendant.

On June 5, 2025, Plaintiff moved to sever the claims against Lamb and XPO, since only XPO was a party to the appeal and not Lamb. (Ex. 52, ¶¶ 18-20). This procedure allowed Plaintiff to continue to prosecute her wrongful death case against Lamb while XPO's interlocutory appeal was pending. (*Id.*, ¶¶ 32-33). It would also allow Lamb to be separated from the fact-established sanctions that were imposed against his employer for its own discovery misconduct. (*Id.*, ¶¶ 10, 20-26). The trial court found that the sanctions were not directed to Lamb and that Lamb himself was

being prejudiced by the conduct of his counsel and that a jury would likely be confused about to whom the sanctions and established facts apply. (Ex. 59, ¶ 32).

On July 8, 2025, the trial court ordered that the case against XPO remain under the original civil file number *Estate of Mark Keannan Smith v. XPO Logistics Freight, Inc.* (24CV000468-770) and severed the case against Lamb. (Ex. 59). The trial court ordered that the case against Lamb continue under a separate civil file number, *Estate of Mark Keannan Smith v. William Bratty Lamb* (25CV003758-770). (*Id.*).

The trial court found that "XPO should not be able to further delay and obstruct the administration of justice and Plaintiff's rights to discovery and ultimately a trial by jury as to Defendant Lamb, who is a separate and distinct party from Defendant XPO." (Ex. 59, ¶ 30). The trial court also reasoned that "Defendant XPO's continuing failure to comply with the Rules of Civil Procedure and the Orders of this Court has resulted in substantial and prejudicial delay to Plaintiff." (*Id.*, ¶ 9). Lastly, the trial court found that "Plaintiff and Defendant Lamb would be prejudiced at trial without severance." (*Id.*, ¶ 32).

## GOVERNING STANDARDS

"The burden of establishing federal jurisdiction is placed upon the party seeking removal." *Mulcahey v. Columbia Organic Chemicals Co., Inc.*, 29 F.3d 148, 151 (4th Cir. 1994). That burden falls on the removing party in cases of removal from state court. *Id.*

Removal jurisdiction is "strictly construe[d]." *Id.* "If federal jurisdiction is doubtful, a remand is necessary." *Id.* "Defendant bears the burden of establishing the

right to removal, including compliance with the requirements of § 1446(b)." *Marler v. Amoco Oil Co.*, 793 F. Supp. 656, 658 (E.D.N.C. 1997).

## ARGUMENT

XPO's removal of this action is improper and invalid for multiple independent reasons, any of which requires remand to state court.

First, XPO's removal is untimely because it was filed and served well after the thirty days since the case became removable.

Second, removal was also untimely under the one-year cap for removals. To overcome that removal, XPO claims that Plaintiff has acted in bad faith to prevent removal earlier. The claim of bad-faith flies in the face of this case's procedural history. As the superior court found, XPO is the only one that has acted in bad faith. Plaintiff has merely attempted to preserve her right to an expeditious trial on the merits.

Third, XPO waived its right to remove, if it acted timely. XPO waited until it suffered a string of adverse state court rulings before removing this action. Removal doesn't let defendants test the state-court waters before choosing a federal forum.

Finally, because this removal was objectively unreasonable, Plaintiff respectfully requests that the Court award attorney's fees and costs incurred for seeking remand.

## I. XPO's Removal Was Untimely Under the 30-Day Deadline in § 1446(b)(3).

This Court should remand this case because the Notice of Removal filed by XPO was untimely.

To exercise a right of removal, a defendant must file a notice of removal "within thirty days" of the defendant's receipt of the complaint, "through service or otherwise." 28 U.S.C. § 1446(b)(1). If a case is not removable based on the initial complaint, the defendant may still be able to remove if the case later becomes "removable." *Id.* § 1446(b)(3). However, the defendant must still file its notice of appeal within 30 days of receiving "an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." *Id.* This Court has held that "the 30-day time limit provided in § 1446(b) must be strictly applied." *Marler*, 793 F. Supp. at 659. Even then, in diversity cases like this one, there is an upper limit of one year from the commencement of the action for filing a notice of removal. 28 U.S.C. § 1446(c)(1); *see infra* Argument § II.

XPO's theory of removal is that the case became removable when the claims against XPO were severed on July 9, 2025. (ECF No. 2 ¶¶ 16-17). After Plaintiff's claims against XPO were severed, there was complete diversity. But XPO did not file a notice of removal within thirty days of the severance order. Instead, XPO filed its notice of removal three months later, on October 8, 2025. (ECF No. 1). To account for that untimeliness, XPO is stuck arguing that it did not know that the amount in controversy for this wrongful death action exceeded $75,000 until September 8, 2025 at the earliest. If XPO could have ascertained the amount in controversy before September 8, then its removal was untimely under § 1446(b)(3).

XPO could and should have ascertained the amount in controversy long before September 8, 2025, and even before 2025.

First, XPO should have known from the outset that the amount in controversy well exceeded $75,000 because of the nature of the complaint. This is a wrongful death action. Complaints that allege wrongful death and catastrophic injuries are virtually always seeking more than $75,000, as courts have often held when analyzing the amount-in-controversy requirement. *See, e.g.*, *Menendez v. Wal-Mart Stores, Inc.*, 364 F. App'x 62, 67 (5th Cir. 2010) ("We conclude that it is facially apparent that each plaintiff's wrongful death claim satisfies the amount in controversy requirement."); *Rodgers v. Wolfe*, No. 4:05CV01600ERW, 2006 WL 335716, at *3 (E.D. Mo. Feb. 14, 2006); *Johnston v. Chubb Grp. of Ins. Companies*, No. 4:20-CV-00048-JHM, 2020 WL 3415874, at *2 (W.D. Ky. June 22, 2020); *Wolfe v. Lincoln Gen. Ins. Co.*, No. C2-01-660, 2002 WL 484638, at *2 (S.D. Ohio Mar. 18, 2002); *Pigg v. Progressive Cas. Ins. Co.*, No. 3:06 CV 125-H, 2006 WL 1789145, at *4 (W.D.N.C. June 27, 2006); *Turpin v. Cooper Tire & Rubber Co.*, No. 6:12-CV-02007, 2012 WL 4758113, at *3 (W.D. La. Oct. 5, 2012), *report and recommendation adopted*, No. CIV.A. 12-2007, 2012 WL 6705816 (W.D. La. Dec. 21, 2012) ("Furthermore, there are certain situations in which the nature of the alleged injury or the type of damages claimed will support a conclusion that the amount-in-controversy threshold has been crossed.").

The mere numbers in the complaint satisfy two-thirds of the amount-in-controversy requirement. In the prayer for relief, the complaint sought compensatory

damages in excess of $25,000 and punitive damages in excess of $25,000. (Ex. 5 at 15-16).

And the nature of the claims make clear that this sum far exceeds $75,000. As the amended complaint alleged, multiple eyewitnesses and first responders personally observed Plaintiff's decedent moaning and moving his extremities following the collision as he remained helplessly trapped under the XPO trailer. (*Id.*, ¶¶ 29, 35, 49). Plaintiff asserted claims for her husband's actual physical pain, mental suffering, pre-impact terror, and fear of impending death. (*Id.*). Plaintiff also set forth detailed claims for punitive damages against both Lamb and XPO for their willful and wanton conduct. (*Id.*, ¶¶ 38-43).

In addition to the various noneconomic damages such as loss of comfort, guidance and companionship, Plaintiff also seeks compensatory damages for the loss of decedent's six-figure income. (*Id.*, ¶¶ 35, 49). The First Amended Complaint also alleges that Plaintiff seeks to punish and deter XPO, a multibillion-dollar corporation, with punitive damages under Chapter 1D of the North Carolina General Statutes for its willful and wanton conduct. (*Id.*, ¶¶ 38-43). There is no universe in which the nature of the tragic death described in the complaint would put less than $75,000 into controversy.

Second, even if the amount-in-controversy requirement was not satisfied by the amended complaint, it was satisfied by discovery responses.[1]

---

[1] Interrogatory responses fall within the "other paper" requirement of § 1446(b). *See, e.g.*, *Chapman v. Powermatic, Inc.*, 969 F.2d 160, 164 (5th Cir. 1992).

Plaintiff served a response to XPO's Request for Monetary Relief Sought under Rule 8(a)(2) of the North Carolina Rules of Civil Procedure. (Ex. 20). This document was served on December 5, 2024, long before severance and removal. (*Id.* at 3). Although that response did not give an exact dollar number, it stated that Plaintiff was seeking loss of income due to Smith's death, damages for actual pain and pre-death terror suffered by Smith, medical expenses for Smith, loss of consortium, funeral bills, and punitive damages. (*Id.* at 1-2).

In discovery responses from 2024, Plaintiff disclosed that Plaintiff was seeking Smith's lost income, and that Smith was making $175,000 per year at the time of his death. (Ex. 90 at 5-6). Thus, an award of just six months of lost income would exceed the amount-in-controversy requirement.

Third, even if XPO couldn't ascertain that the amount in controversy exceeded $75,000 from the complaint and discovery responses, it should have ascertained the massive exposure through the parties' informal correspondence.[2] Among the numerous deficiency letters XPO received, one letter from Plaintiff's counsel revealed early on that Plaintiff was seeking damages well in excess of $75,000. On October 29, 2024, counsel for Plaintiff sent counsel for XPO detailed correspondence, once again requesting the insurance coverage and declaration pages that were being intentionally withheld without justification. (Ex. 82). In this same letter, counsel for

---

[2] "The 'motion, order or other paper' requirement is broad enough to include any information received by the defendant, whether communicated in a formal or informal manner." *Yarnevic v. Brink's, Inc.*, 102 F.3d 753, 755 (4th Cir. 1996) (cleaned up).

Plaintiff warned counsel for XPO that their client's insurance carriers needed to be on notice of their potential exposure in this case which counsel for Plaintiff "believed was as high as $100,000,000." (*Id.*, ¶ 2).

XPO received all of these papers long before the trial court severed XPO's claims on July 9, 2025. Thus, XPO's 30-day clock to remove began ticking on the day that the severance order was entered. That clock expired on August 8, 2025. Thus, XPO's October 8 removal was untimely.

It was unnecessary for any of these papers to outright state that the damages sought exceeded $75,000 because XPO had a duty "*assess and ascertain* the amount in controversy within the thirty-day time limit for removal provided in § 1446(b)." *Marler*, 793 F. Supp. at 659 (emphasis added). In *Marler*, this Court granted a plaintiff's motion to remand a case where the initial complaint's prayer for damages mirrored the one presently before the Court, in asking for "damages in excess of $10,000," the amount giving North Carolina Superior Courts jurisdiction over a civil action in negligence cases.[3] *Id.* at 656-57. Two and a half months following the filing of the complaint, the defendants attempted to remove the case to this district. *Id.* at 657.

This Court then held that "the burden is on defendant to *assess and ascertain* the amount in controversy within the thirty-day time limit for removal provided in § 1446(b)" following service of the complaint. *Id.* at 659 (emphasis added). "From a

---

[3] Rule 8(a)(2) of the North Carolina Rules of Civil Procedure has since been amended to permit litigants to state that the amount in controversy is "in excess of $25,000."

review of all of the materials submitted to the court, all the evidence strongly suggests that defendant had ample notice at the time of the filing of the suit, if not soon thereafter, that more than $50,000 was in controversy."[4] *Id.* This Court remanded for failure to remove within the 30-day deadline. *Id.*

Here, *Marlar* is on point because XPO should have been able to determine the amount in controversy at the time it was served with the amended complaint, the statement of monetary relief sought, the interrogatories, or the deficiency letter on insurance coverage. Thus, XPO had to file its notice of removal within 30 days of the severance order—by August 8, 2025. XPO missed that deadline by two months since it filed its notice of removal on October 8, 2025.

## II.     XPO's Removal Was Untimely Under the One-Year Cap in § 1446(c)(1).

Even if the Court found that XPO somehow met the 30-day removal deadline, XPO still missed the one-year outer cap on removal. That cap provides an independent basis for remand.

XPO removed this case based on diversity jurisdiction (28 U.S.C. § 1332). (ECF No. 2 ¶ 1). That triggers a one-year cap on removal from the commencement of the action: "A case may not be removed under subsection (b)(3) on the basis of jurisdiction conferred by section 1332 more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." 28 U.S.C. § 1446(c)(1).

---

[4] At the time of *Marler*, 28 U.S.C. § 1332 set the amount in controversy for diversity jurisdiction at $50,000. This has since been amended to $75,000.

The state court action commenced on February 15, 2024, when the original complaint was filed. (Ex. 3 at 1).[5] XPO filed its notice of removal over a year and a half later, on October 8, 2025. (ECF No. 2).

Understanding the cap would bar removal, XPO alleges in its notice of removal that Plaintiff acted in bad faith to prevent the removal of this action by fraudulently joining Lamb, the truck driver who killed Smith. (ECF No. 2 ¶¶ 22-23). Given the procedural history, that is an astonishing claim.

Meeting the bad-faith standard is a heavy lift. XPO cannot just allege bad faith but must prove it. *See Strawn v. AT & T Mobility LLC*, 530 F.3d 293, 297 (4th Cir. 2008). To prove fraudulent joinder of a nondiverse defendant, "the removing party must establish either: [1] 'that there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or [2] that there has been outright fraud in the plaintiff's pleading of jurisdictional facts.'" *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993) (cleaned up). The burden to prove either element is "heavy." *Id.* As other courts in our circuit have noted, proof of bad faith requires some showing that a plaintiff "engaged in forum manipulation specifically to prevent removal." *Shorraw v. Bell*, No. 4:15-CV-03998(JMC, 2016 WL 3586675, at *5 (D.S.C. July 5, 2016) (collecting cases); *accord*

_____

[5] The one-year cap would apply even if commencement were determined based on the date of the amended complaint, when XPO was added, since that date was February 22, 2024. (Ex. 5 at 1).

18

*Dreamworks Motorsports, Inc. v. Klein*, No. 1:24-CV-0008, 2024 WL 1860153, at *3 (M.D.N.C. Apr. 29, 2024) (Schroeder, J.).

The procedural history of this case shows that the claims were severed only because of XPO's own misconduct. The superior court found that XPO had engaged in egregious discovery violations and sanctioned it. XPO then appealed from that sanctions order only for itself, leaving the claims against Lamb behind. That interlocutory appeal effectuated an automatic stay of any trial against XPO. (Ex. 58 ¶ 36).

Plaintiff did not want to be prejudiced with delay due to this interlocutory appeal. Therefore, she asked the trial court to sever her claims against XPO so that she could proceed to trial against Lamb during XPO's appeal. As Plaintiff explained in her motion, she sought severance "so that Plaintiff can continue to prosecute this case as to Defendant Lamb, separate and distinct from Defendant XPO." (Ex. 52 ¶ 25). The trial court agreed in its order granting severance. (Ex. 59 at 6-7). The court further found that severing the claims was necessary to protect Lamb from the effect of the discovery sanctions that were entered just against XPO and not Lamb. (*Id.*). Although the same counsel purport to represent Lamb and XPO, XPO's actions were highly "prejudicial to Lamb without severance." (*Id.*, ¶ 32).

Under the procedure for removal, these trial court orders have become the orders of this Court. 28 U.S.C. § 1450 (all pre-removal orders of the state court "shall remain in full force and effect until dissolved or modified by the district court");

*Lindsey v. Highwoods Realty Ltd. P'ship*, No. 3:11CV447-HEH, 2011 WL 5326291, at *2-3 (E.D. Va. Nov. 4, 2011).

Thus, the orders in force in this Court reveal that neither the inclusion of Lamb nor the severance of claims against XPO were in bad faith or were otherwise done to manipulate removal jurisdiction. Rather, these actions show the exact opposite: Plaintiff intends to pursue her claims against Lamb without delay. If Plaintiff didn't intend to pursue Lamb to judgment, Plaintiff would never have moved to sever. When factors other than forum-manipulation prevent or allow removal, a defendant cannot meet the bad-faith standard. *Mansilla-Gomez v. Mid-S. Erectors, Inc.*, No. 0:14-CV-00308-JFA, 2014 WL 1347485, at *2 (D.S.C. Apr. 3, 2014) (no bad faith when "other factors might have motivated Plaintiff's decisions").

XPO's notice of removal ignores all of this. Instead, the notice theorizes that Plaintiff never intended to pursue Lamb to judgment because Plaintiff has not deposed Lamb. (ECF No. 2 ¶ 10).

Of course, Plaintiff is not required to depose Lamb. XPO's theory also ignores the pending criminal charges against Lamb. If Plaintiff were to depose Lamb before his criminal trial, the deposition would almost certainly be a waste of time because Lamb would invoke the Fifth Amendment privilege against self-incrimination in response to every material question.

In any event, Plaintiff has pursued written discovery from Lamb since the beginning of this case, which was more likely to be fruitful and efficient given the pending criminal charges. Plaintiff served extensive discovery on Lamb and has

vigorously pursued Lamb's training records and other highly relevant materials from Lamb's employer, XPO. (Ex. 93).

As these points show, the procedural posture of this case at the time of removal was not the result of Plaintiff's manipulation, but XPO's own discovery misconduct and appeal. Plaintiff's actions support, rather than undermine, her intent to seek a judgment against Lamb. XPO filed this notice of removal for the same reason it begged the superior court and North Carolina Court of Appeals for a stay: It wants to avoid trial and responsibility for its misconduct. That's not what the removal procedure is for.

## III. XPO Waived Its Right to Remove Through Its Extensive Litigation in State Court.

The right to remove, even if exercised timely, can be waived by a defendant's conduct in state court. Even if XPO acted timely, its state-court conduct waived any right to removal.

A defendant waives its right to remove by demonstrating a clear intent to remain in state court. *Northrop Grumman Tech. Servs., Inc. v. DynCorp Int'l LLC*, 865 F.3d 181, 186 (4th Cir. 2017). Although usually shown by extreme situations, a plaintiff can show the required intent if the defendant engaged "in 'substantial defensive action' in state court before filing a notice of removal." *Id.* (quoting *Aqualon Co. v. Mac Equip., Inc.*, 149 F.3d 262, 264 (4th Cir. 1998)). XPO engaged in two steps that constitute substantial defensive action in state court.

First, XPO extensively litigated a stay dispute in the superior court and then the North Carolina Court of Appeals. (Ex. 94). It was only after those efforts failed

that XPO turned its sights on removal. The Court of Appeals put the final kibosh on XPO's stay request on August 15, 2025, when that Court denied XPO's petition for a writ of supersedeas. (Ex. 65). Almost a month later, XPO changed course, deciding that it would instead try to remove the case to federal court to slow the litigation down. On September 17, 2025, XPO filed requests for admissions to purportedly settle the amount in controversy for removal purposes. (Ex. 73 at 1-7). But if XPO had intended to litigate in federal court instead of state court, it would have served those requests for admission immediately after severance was ordered in July 2025.

XPO didn't do that because it first wanted to see whether it would be successful in state court in pursuit of stay relief. That kind of inconsistent conduct constitutes waiver: "The most obvious example of when a finding of waiver is appropriate is where a defendant removes a case to federal court after receiving an unfavorable determination on the merits of the case in state court." *Curl v. Beltsville Adventist Sch.*, No. GJH-15-3133, 2016 WL 4382686, at *5 (D. Md. Aug. 15, 2016). Defendants should not be encouraged to litigate in state court until they get bad answers, and only then start asking what is needed to make a case removable to federal court.

Second, XPO waived its right to remove by filing a permissive counterclaim in state court. That's a recognized form of waiver of the right to remove. *Aqualon Co. v. Mac Equip., Inc.*, 149 F.3d 262, 264 (4th Cir. 1998); *Va. Beach Resort & Conf. Ctr. Hotel Ass'n Condo. v. Certain Interested Underwriters at Lloyd's*, 812 F. Supp. 2d 762, 764 (E.D. Va. 2011). XPO filed a permissive counterclaim, alleging that the decedent

damaged its tractor-trailer in the collision in an amount exceeding \$25,000. (Ex. 7 at 9-11).

Waiver is another independent ground for remand. A finding of waiver is appropriate on the facts of this case, for either of these reasons.

## IV. Plaintiff Is Entitled to Her Costs and Attorney's Fees.

XPO's removal was objectively unreasonable for multiple, independent reasons. XPO has used removal as a tool to obtain a stay of proceedings that it could not achieve in state court. That is not what removal is for. By statute, therefore, an award of attorney's fees and costs is called for.

The remand statute provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorneys' fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "The process of removing a case to federal court and then having it remanded back to state court delays resolution of the case, imposes additional costs on both parties, and wastes judicial resources." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 140 (2005). The standard for fees "turn[s] on the reasonableness of the removal." *Id.* at 141. If the removing party "lacked an objectively reasonable basis for seeking removal," it can be ordered to pay fees, even if the removal was not taken in "bad faith." *Colo. Bankers Life Ins. Co. v. AT Denmark Invs., ApS*, 526 F. Supp. 3d 118, 129 (E.D.N.C. 2021) (Dever, J.).

Here, XPO lacked an objectively reasonable basis for removal, warranting an award of reasonable attorney's fees and costs. XPO discovery misconduct and interlocutory appeal in state court necessitated the original severance order that created complete diversity. But even when that order was entered, XPO kept

litigating in state court and neither removed the case nor sought to assess removability. Instead, it was apparent since 2024 that this wrongful death action seeks far more than $75,000 in damages, as would be expected of most wrongful death actions.

Although bad faith isn't required to award fees, XPO's conduct permits that inference to be drawn. XPO decided to pursue removal only after it received serious, merits-based discovery sanctions, and then failed to get a stay from state court. The drawing of that inference lies in this Court's discretion.

Regardless, XPO should never have removed this case, and Plaintiff should never have incurred the fees and costs incurred in pursuing remand. An award of those fees and costs is warranted.

## CONCLUSION

Plaintiff respectfully requests that the Court remand this case to the Superior Court of Robeson County, North Carolina. Plaintiff also requests her costs and fees incurred in seeking remand.

This the 3rd day of November, 2025.

**MUSSELWHITE, MUSSELWHITE, BRANCH & GRANTHAM, P.A.**

*/s/ J. William Owen*
_____
J. William Owen
N.C. Bar No. 47994
wowen@mmbglaw.com
P.O. 1448
Lumberton, NC 28359
*Co-Counsel for Plaintiff*

**DOWLING PLLC**

*/s/ Troy D. Shelton*

_____

Troy D. Shelton
N.C. Bar No. 48070
tshelton@dowlingfirm.com
3801 Lake Boone Trail, Suite 260
Raeligh, NC 27607
*Co-Counsel for Plaintiff*

## CERTIFICATE OF WORD COUNT

Pursuant to Local Rule 7.2(f)(3), undersigned counsel certifies that this memorandum complies with the applicable word limit. Per the word processing software, this memorandum contains 6,326 words.

*/s/ J. William Owen*

———————————————————
J. William Owen