# Exhibit 83
# 11/01/24 Letter to XPO

J.W. Musselwhite
W. Edward Musselwhite, Jr.
David F. Branch, Jr.

# MUSSELWHITE | MUSSELWHITE
# BRANCH & GRANTHAM

ATTORNEYS AT LAW

Norris Musselwhite Grantham
J. William Owen

William E. Musselwhite Sr.
(1930-1987)

Fred L. Musselwhite
(1939-2017)

November 1, 2024

VIA EMAIL AND US MAIL

Megan Stacy
Le'Ron Byrd
Gordon Rees Scully Mansukhani
150 Fayetteville Street, Suite 1120
Raleigh, NC 27601

Re: Cindy Soles Smith, Administratrix of the Estate of Mark K. Smith v. William Bratty Lamb and XPO Logistics Freight, Inc.
24 CVS 468 (Robeson County)

Dear Le'Ron:

Thank you for taking my call on Wednesday to discuss this case and the ongoing written discovery deficiencies for XPO Logistics Freight, Inc. As discussed, we are wanting to move forward with depositions in the near future, including the deposition of Defendant Lamb and the 30(b)(6) deposition of XPO Logistics Freight, Inc. While I appreciate that I can obtain oral testimony concerning many of the topics referenced below, I need responsive *documents* and actual written interrogatory responses prior to these depositions.

Per your request, I have included additional details concerning each of the written discovery request that needs further supplementation. As you know, Rule 26(a)(1) allows "parties to obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, electronically stored information, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence nor is it grounds for objection that the examining party has knowledge of the information as to which discovery is sought."

The purpose and intent of this Rule is to prevent a party who has discoverable information from making evasive, incomplete, or untimely responses to request for discovery. *Green, ex rel. Green v. Maness*, 69 N.C. App. 292, 316 S.E.2d 917, cert. denied. 312 N.C. 621, 323 S.E.2d 922 (1984). To be relevant for purposes of discovery, the information need only be "reasonably calculated" to lead to the discovery of admissible evidence. *Shellhorn v. Brad Ragan, Inc.* 38 N.C. App 310, 248 S.E.2d 103, cert. denied, 295 N.C. 735, 249 S.E.2d 804 (1978). Simply put, the relevancy test for discovery is not

606 North Elm Street    Post Office Box 1448    Lumberton, NC 28359-14
Telephone: (910) 738-5277    Fax: (910) 738-3678



PLAINTIFF'S EXHIBIT 13

the same as the relevancy test for admissibility into evidence. Moreover, the scope of discovery is not limited to matters relevant to claims for relief, but also includes matters relevant to defenses. Below please find Plaintiff's responses to the concerns raised in your October 25, 2024 letter in bold.

- RFP No. 2: Plaintiff requests a copy of the document retention policies for XPO. XPO will supplement now that a Protective Order has been entered. **Please promptly produce the Document Retention Policy for XPO Logistics Freight, Inc.**

- RFP Nos. 3 and 4: Plaintiff requested copies of each insurance policy and the corresponding declaration page for each policy that provides coverage for the Subject Incident ("Incident"). Plaintiff now seeks the "entire tower" of coverage for XPO Logistics Freight, Inc. It is our position that the policy and declaration page provided on September 3, 2024 is the only applicable and relevant insurance policy for this matter and we have not received any information to date that would suggest otherwise. Plaintiff did not make a new request for the "tower" of coverage. **The initial request for production made on June 5, 2024 asked for any and all insurance coverage for XPO Logistics Freight, Inc. and Defendant Lamb. I direct you and your client to Rule 26(b)(2), which addresses the discoverability of insurance coverage. The Rule states as follows: "Insurance Agreements. - A party may obtain discovery of the existence and contents of any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment. Information concerning the insurance agreement is not by reason of disclosure admissible in evidence at trial. For purposes of this subsection, an application for insurance shall not be treated as part of an insurance agreement." Although I believe there is coverage well beyond $100,000,000, in our letter dated October 29, 2024, we asked that XPO Logistics Freight, Inc. produce insurance coverage documents (i.e., policy declaration pages and policy information) for liability coverage up to $100,000,000. We hereby reiterate that request. If it remains XPO's position that the "only applicable and relevant coverage" for this loss whatsoever is the single Chubb policy produced on September 3, 2024, please have your client produce a signed affidavit concerning this declaration and promptly produce same in response to our June 5, 2024 discovery request.**

- RFP No. 6: Plaintiff requested the Driver Qualification File, Driver Investigation File and Driver History File. As noted by our supplemental responses, XPO has produced the entire personnel file for William Lamb which includes all information related in its possession related to his qualifications and investigations. XPO has also produced all driving history information contained in Defendant Lamb's personnel file. **We have reviewed the employee file produced by XPO concerning William Lamb. As you know, 49 CFR § 391.51 sets forth the requirements of the "Driver Qualification File" that must be maintained pursuant to federal law. We have not received all of the documents that are set forth in 49 CFR § 391.51. Likewise, the requirements for a "Driver Inspection History File" are set forth in detail in 49 CFR § 391.53. It does not appear that we have received complete responses concerning these federally required files that should be in the possession and control of XPO.**

This request is discoverable and relevant given the nature the allegations in Plaintiff's First Amended Complaint. It is also relevant to defenses alleged by XPO.

- RFP No. 33: Plaintiff seeks email communications between Lamb and XPO for the 90 days prior to the Incident. Further, Plaintiff brazenly concludes that this is relevant. We simply do not see the relevance in William Lamb's email communications with XPO for the 90 days prior to the Incident. If there are specific emails that Plaintiff seeks that can potentially be related to this litigation, please let us know and we will conduct a good faith search. Otherwise, we simply see no reasonable basis for producing 3-months' worth of business related emails to Plaintiff. Plaintiff has also not provided a cohesive response as to why it would be entitled to this type of information or the relevance to the Incident and/or this matter. This request is reasonably calculated to lead to the discovery of admissible information and is relevant given the nature the allegations in Plaintiff's First Amended Complaint. It is also relevant to defenses alleged by XPO. For purposes of clarity, Plaintiff will limit the scope of RFP 33 to all communications between Lamb and XPO for 90 days prior to the incident concerning the following – any safety violations (including warnings or concerns), training, driver fitness, use of cellular or electronic devices, distracted driving, close calls, licensure, left turns, speeding, texting, unsafe driving and video telematics.

- RFP No. 34: Plaintiff seeks communications between Lamb and XPO that were transmitted through any system on-board the tractor and trailer involved in the Incident for 30-days before the Incident and ending 7 days after the Incident. Like 3 the above, we do not see the relevance of communications between Lamb and XPO that 30-days before the Incident and 7 days after the Incident. Please let us know if there are specific types of communications that Plaintiff seeks that can potentially be related to this litigation. This request is reasonably calculated to lead to the discovery of admissible information and is relevant given the nature the allegations in Plaintiff's First Amended Complaint. It is also relevant to defenses alleged by XPO. For purposes of clarity, Plaintiff will limit the scope of RFP 34 to all communications between Lamb and XPO for 30 days prior to the incident and ending 7 days after the subject incident, concerning the following – the subject collision, discipline, preventability, any safety violations (including warnings or concerns), training, driver fitness, use of cellular or electronic devices, distracted driving, left turns, close calls, licensure, speeding, texting, unsafe driving and video telematics.

- RFP No. 35: Plaintiff seeks all on-board audio and video from the on-board monitoring devices. Specifically, the telematics program provided through Lytx to monitor, train and "coach" its employee-drivers. XPO sees absolutely no reason for it to provide all on-board audio and video from on-board monitoring devices provided to Lytx to monitor and coach all of its employee-drivers globally. Plaintiff has also not provided a cohesive response as to why it would be entitled to this type of information or the relevance to the Incident and/or this matter. For clarity and in the spirit of cooperation and compromise, Plaintiff will limit RFP 35 in scope to Defendant Lamb. This request includes all telematics data and footage whatsoever in the possession and control of XPO that in any way relates to Defendant Lamb. For instance, the video from inside the XPO cab

that has been provided is only 30 seconds. Typically, when there is a harsh event, the lookback period is one minute before the harsh event. We need the entire (at least one minute) video clip from the date of the subject collision together with all other telematics data and video footage concerning Defendant Lamb.

- RFP No. 40: Plaintiff seeks Driver Vehicle Inspection Reports (DVIR) from the period of 6-months before the Incident until one week following the Incident for the tractor and trailer involved in the Incident. Plaintiff further conclusively claims that this is not "overly broad or unduly burdensome." To add more than a conclusive claim as Plaintiff seemingly alleges—this information is overly broad and burdensome because it covers a time period well beyond and prior to the Incident. We simply see no reasonable basis for why DVIR information 6-months prior to the Incident for the tractor and trailer could potentially be relevant. However, if there is specific information that Plaintiff seeks that could reasonably be related to this litigation concerning the tractor and trailer, XPO welcomes a more detailed response. In the sprit of compromise and cooperation, Plaintiff will limit the scope of RFP No. 40 to 30-days prior to the subject collision and 2-days following the subject collision. A DVIR is a pre and post inspection report that is required by federal law.

- RFP No. 42: Plaintiff seeks basic shipping documents from XPO, including the bill of lading, manifest and dispatch documents related to the load that Defendant Lamb was transporting at the time of the Incident. Plaintiff claims these are "clearly" relevant and discoverable. We disagree. Again, for similar reasons discussed above concerning XPO's personal business and clients, we see no reasonable basis for producing bill of lading, manifest, and dispatch documents which have nothing to do with the Incident. To the extent Plaintiff can articular a reasonable basis for why that information is relevant, XPO requests it to do so or narrow its request. A Bill of Lading (BOL) is an important legal document that is highly relevant in all trucking cases. It will show the items being transported by Defendant Lamb when the incident occurred. At this point, we have no information concerning the contents of the trailer being hauled by Defendant Lamb when the subject incident occurred. The BOL will identify the motor carrier, the shipper, a description of the goods, the number of goods, the weight and measurements of the goods and other critical evidence that Plaintiff is entitled to under the Rules. Like a BOL, the Manifest is also an important legal document that provides records of the cargo, passengers and crew in the vehicle for transportation. The Manifest is even more critical in an LTL transport. Lastly, dispatch records are important documents in legal cases as they can indicate if a driver was under pressure to meet tight deadlines. This request is reasonably calculated to lead to the discovery of admissible information and is relevant given the nature the allegations in Plaintiff's First Amended Complaint. It is also relevant to defenses alleged by XPO

- RFP No. 46: Plaintiff seeks documents related to the Preventability Reports/Analysis prepared by XPO following the Incident. Plaintiff claims it has not received any responsive documents relating to the preventability analysis that was completed by XPO in the ordinary course of business. We disagree. XPO provided all documents related to the Incident in its previous productions. If already

produced as stated above, please provide the bates numbers for the complete Preventability Analysis completed by XPO concerning the subject incident.

- RFP Nos. 55-59: Plaintiff seeks documents related to all training materials provided to XPO drivers. We simply do not see the reasonable basis for providing training materials provided to XPO drivers globally. However, and to the extent Plaintiff seeks training materials provided to drivers like Defendant William Lamb—and those provided to William Lamb—please see the documents produced in XPO's first and supplemental production of documents. Plaintiff will limit RFP 55-59 to training materials provided to Defendant Lamb and other XPO drivers at the Lumberton, NC terminal from the date Defendant Lamb was hired by XPO until present. These materials are highly relevant to allegations contained in Plaintiff's First Amended Complaint and Defendant XPO's Answer.

- RFP No. 60: Plaintiff seeks documents—not counsel-created summaries—of the hierarchy at XPO at the time of the Incident and presently. XPO is not in possession of formal hierarchy charts which show the relationship between its executives and drivers like William Lamb. Further, and to the best of our knowledge, XPO counsel did not create summaries and produce them to Plaintiff. To the extent Plaintiff believes XPO produced work-product detailing XPO hierarchy information, please identify the bates-number so we can evaluate whether that document needs to be clawed back. Produce documents that are in the possession and control of XPO. If these documents do not exist, please state that in your response. We reserve the right to revisit this RFP once XPO produces the Document Retention Policies.

- RFP No. 61: Plaintiff seeks documents that were prepared and/or presented by XPO representatives concerning the safe operation of commercial vehicles during the last 5 years. Plaintiff claims this request is not overly broad solely because it relates to "safety." While we agree that documents that discuss the safe operation of commercial vehicles relate to "safety" that does not automatically correlate to relevance here—especially, where Plaintiff requests documents that are circulated and/or presented by "XPO representatives" worldwide. Plaintiff will limit RFP 61 to safety presentations provided to Defendant Lamb, other XPO drivers at the Lumberton, NC terminal and any managers at the Lumberton, NC terminal from the date Defendant Lamb by XPO was hired until present.

- RFP Nos. 63-64: Plaintiff seeks any contracts or agreements applicable to Defendant Lamb or the subject tractor and trailer. As noted above, XPO does not see the point or relevance in providing driving history related to William Lamb's everyday travels for its clients and business. These files do not contain any information regarding driver safety or analysis. XPO has, however, produced all contracts or agreements related to Defendant Lamb. Plaintiff limits RDP No. 63-64 to any documents that in any way relates to safety, training, production requirements, speed of production, dispatch requirements and any expectations concerning timing of delivery and the expected speed of deliveries.

- RFP No. 65: Plaintiff seeks XPO's Accident Register. Plaintiff claims this is not overly broad or unduly burdensome. We see no reasonable basis for providing XPO's Accident Register for all of their global drivers. Please provide your basis as to how this is relevant to this action or narrow the request. As you know, an Accident Register is required by federal law (See 49 CFR § 390.15). Plaintiff will agree to narrow the request to XPO's Accident Register for a period of 2 years prior to the subject collision for all accidents <u>resulting in serious injury or death to a third party.</u>

- RFP No. 66: Plaintiff seeks deposition transcripts from XPO corporate designees concerning accidents where it was alleged that XPO's employee caused an injury or death to another person during the last 5 years. XPO is not in possession of deposition transcripts and these materials can be obtained by Plaintiff's counsel via other means that are as readily available to Plaintiff as they are to Defendants. Plaintiff does not have access to deposition transcripts as you describe. Plaintiff agrees to limit this request to 30(b)(6) deposition transcripts from XPO designees within the last 5-years for incidents involving an <u>XPO driver making a left turn</u> that resulted in serious injuries or death to third parties.

- Interrogatory No. 3: Plaintiff seeks information concerning claims and lawsuits filed against XPO wherein a person was injured or killed as a result of XPO drivers. Plaintiff now apparently wants "pre-suit" claim information. This was not a part of Plaintiff's initial Interrogatory. Given that, XPO does not intend to detail any "pre suit" claim information. We respectfully disagree. Interrogatory No. 3 served on June 5, 2024 stated exactly as follows: "For each claim (formal or informal) and lawsuit wherein it is/was suggested or alleged that any person was injured or killed as a result of XPO's driver's actions in the past three years, provide the style of the case (or name of parties, jurisdiction and case number), and describe briefly the circumstances of each suit/claim and the disposition." As you know, this Interrogatory specifically addresses pre-suit informal claims. Please supplement this interrogatory with an actual written response. This request is reasonable calculated to lead to the discovery of admissible information and is within the scope of permissible discovery. It also directly relates to the claims alleged in Plaintiff's First Amended Complaint.

- Interrogatory No. 5: Plaintiff seeks supplemental written responses to (a)-(g), i.e., information related to the <u>tractor</u> operated by William Lamb at the time of the Incident, including, without limitation, all maintenance and repairs from 12 months prior to the Incident. XPO has provided all relevant information related to the tractor operated by William Lamb. However, we will supplement our prior response in a forthcoming supplemental response with information that is in XPO's possession and not unduly burdensome to locate. Plaintiff will limit this Interrogatory to (a)-(f) which eliminates the maintenance/repair request. Plaintiff seeks actual written responses to (a)-(e). These requests are very specific and are reasonably calculated to lead to potentially admissible information. By way of example, this Interrogatory seeks information concerning the legal owner of the tractor. It also seeks information concerning telematics and other

monitoring systems and devices that were installed and used on the subject tractor. Clearly this is discoverable.

- Interrogatory No. 6: Plaintiff seeks supplemental written responses to (a)-(e), i.e., information related to the trailer operated by William Lamb at the time of the Incident, including, without limitation, all maintenance and repairs from 12 months prior to the Incident. XPO has provided all relevant information related to the trailer operated by William Lamb. However, we will supplement our prior is in XPO's possession and not unduly burdensome to locate. Plaintiff will limit this Interrogatory to (a)-(d) which eliminates the maintenance/repair request. Plaintiff seeks actual written responses to (a)-(e). These requests are very specific and are reasonably calculated to lead to potentially admissible information. By way of example, this interrogatory seeks information concerning the legal owner of the trailer. It also seeks information concerning telematics and other monitoring systems and devices that were installed and used on the subject trailer. Clearly this is discoverable.

- Interrogatory No. 7: Plaintiff seeks supplemental written responses to (a)-(e), i.e., Re: the trip that William Lamb was on—"Identify all shippers and brokers involved; Explain where and when (date and time) William Lamb picked up the load he had at the time of the Subject Incident; Identify where (name and address of location) the load was to be delivered; Identify the location, time, and when (date and time) the load was to be delivered; Identify the location, time, duration and reason for each stop William Lamb made from the time he picked up the load until the time of the Subject Incident; and Identify the route William Lamb intended to follow from the point of origin to the point of destination." We do not see any reasonable basis for Plaintiff to know "all shippers and brokers" involved in the load William Lamb had at the time of the Incident. Please provide the basis as to how information related to XPO business clients and contacts are relevant to this action. Although not likely in this particular case, the identity of potential shippers and brokers can reveal other potential Defendants, which is relevant to Plaintiff's causes of action. The other subsections request basic information on when and where Defendant Lamb obtained the subject load. We see no reason why this information is not discoverable as it is clearly relevant to the allegations contained in Plaintiff's First Amended Complaint.

- Interrogatory No. 12: Plaintiff seeks information related to (b)-(d), i.e., "Explain how William Lamb was paid for driving (by hour, by load, by mile, salary or other); Explain all steps XPO undertook to qualify William Lamb in accord with the Federal Motor Carrier Safety Regulations; and Identify when XPO's relationship with William Lamb began and ended." XPO provided all information related to how William Lamb was paid in their supplemental production of documents. Further, directing a party to written documents detailing the answers to an Interrogatory is an appropriate practice in North Carolina. However, and to the extent there is information Plaintiff feels it is not in possession of, please apprise us of that information. We will supplement in forthcoming supplemental responses. Again, the purpose of this interrogatory was to obtain actual written responses, not a direction to documents. Please supplement your response accordingly. Rule 33 requires each interrogatory to be "answered separately and fully in writing under oath." It is not proper to direct Plaintiff to documents.

- Interrogatory No. 14: Plaintiff seeks information related to information produced in response to the Requests for Production of Documents. Specifically, Plaintiff seeks written responses to all formal and informal disciplinary and/or counseling actions undertaken by XPO. Like the above, we will provide supplemental responses. Please promptly supplement with a written response, not a direction to documents or the employee file.

- Interrogatory No. 15: Plaintiff seeks information related to information produced in response to the Requests for Production of Documents re: all training and education provided or on behalf of XPO to William Lamb. We will provide supplemental responses. Please promptly supplement with a written response, not a direction to documents or the employee file.

- Interrogatory No. 20: Plaintiff requests XPO to "produce" documents related to the internal investigation documents referenced in XPO's written responses. XPO has produced all documents related to the internal investigation. Interrogatory No. 20 stated exactly as follows: "Identify and explain all communications of any kind between William Lamb and anyone acting for or on behalf of XPO during the twenty-four (24) hours before and after the Subject Incident. For each communication, identify the method of communication (cell phone, QualComm, other), time of communication, persons involved, and the general subject."

- Interrogatory No. 22: Plaintiff seeks information related to XPO policies, procedures, rules, guidelines, directives, manual, handbooks and instructions. We will provide supplemental responses. Please promptly supplement with a written response, not a direction to documents or the employee file.

- Interrogatory No. 26: Plaintiff requests XPO to "produce" information related to the "internal investigation documents" that XPO references in its response. XPO has produced all documents related to the internal investigation. Please promptly supplement with a written response, not a direction to documents or the employee file.

- Interrogatory No. 32: Plaintiff requests XPO to "produce" information, again, related to the "internal investigation documents" that XPO references in its written response. XPO has produced all documents related to the internal investigation. Please promptly supplement with a written response, not a direction to documents or the employee file.

- Interrogatory No. 36: Plaintiff seeks supplemental written responses to Interrogatory No. 36. Specifically, Plaintiff seeks information concerning XPO's "accident review board" and preventability determination that are conducted in the ordinary course of business. XPO does not identify folks who participated in the internal investigation of this incident as the formal "accident review board." However, all documents related to an investigation have been discussed in Defendant William Lamb's written responses. Please promptly supplement with a written response, not a direction to documents or the employee file.

- Interrogatory No. 38: Plaintiff seeks supplemental responses to questions regarding the identity of insurance carriers for XPO, policy numbers, limits of coverages and names of all insureds. As stated above, Plaintiff requested copies of each insurance policy and the corresponding declaration page for each policy that provides coverage for the Incident. Plaintiff now seeks the "entire tower" of coverage for XPO Logistics Freight, Inc. However, the entire tower of coverage is not applicable or relevant to the "Subject Incident." The policy and declaration page provided on September 3, 2024, however, is the applicable insurance policy for this matter. Plaintiff did not make a new request for the "tower" of coverage. The initial request for production made on June 5, 2024 asked for any and all insurance coverage for XPO Logistics Freight, Inc. and Defendant Lamb. I direct you and your client to Rule 26(b)(2), which addresses the discoverability of insurance coverage. The Rule states as follows: "Insurance Agreements. - A party may obtain discovery of the existence and contents of any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment. Information concerning the insurance agreement is not by reason of disclosure admissible in evidence at trial. For purposes of this subsection, an application for insurance shall not be treated as part of an insurance agreement." Although I believe there is coverage beyond $100,000,000, in our letter dated October 29, 2024, we asked that XPO Logistics Freight, Inc. produce insurance coverage documents (i.e., policy declaration pages and policy information) for liability coverage up to $100,000,000. We hereby reiterate that request. If it remains XPO's position that the "only applicable and relevant coverage" for this loss whatsoever is the single Chubb policy produced on September 3, 2024, please have your client produce a signed affidavit concerning this declaration and promptly produce same in response to our June 5, 2024 discovery request.

- Unredacted Version of XPO000058 and a legible copy of XPO000109: We will review and provide our position regarding these documents in a supplemental response. Please supplement with a legible copy of these documents.

Given the updated and narrowed scope of the above, we would expect XPO Logistics Freight, Inc. to be able to respond fully and completely within the next 30 days. Please provide supplemental responses on or before Monday December 2, 2024 by 5pm EST. Please consider this correspondence as Plaintiff's final good faith attempt to resolve the discovery deficiencies stemming from the June 5, 2024 Interrogatories and Request for Production of Documents served on Defendant XPO Logistics Freight, Inc. without the need for the Court's intervention under Rule 37. Thanking you in advance for your prompt response and cooperation.

Sincerely yours,

MUSSELWHITE, MUSSELWHITE, BRANCH & GRANTHAM

J. William Owen

Cc: Jennfier Welch (via email only)