# Exhibit 90

# Plaintiff's Responses to XPO's First Set of Interrogatories (June 10, 2024)

STATE OF NORTH CAROLINA                    IN THE GENERAL COURT OF JUSTICE
COUNTY OF ROBESON                                SUPERIOR COURT DIVISION
                                                        24-CVS-468

CINDY SOLES SMITH, Administratrix of the
ESTATE OF MARK KEANNAN SMITH,

        Plaintiff/Counterclaim-
        Defendant,                          **PLAINTIFF'S RESPSONSES TO**
                                           **DEFENDANT XPO LOGISTICS**
v.                                         **FREIGHT, INC.S' FIRST SET OF**
                                           **INTERROGATORIES TO PLAINTIFF**
WILLIAM BRATTY LAMB,

        Defendant,

and

XPO LOGISTICS FREIGHT, INC.

        Defendant/Counterclaim-
        Plaintiff.

Pursuant to Rule 33 of the North Carolina Rules of Civil Procedure, Defendant and Counterclaim-Plaintiff XPO Logistics Freight, Inc. ("**XPO**"), by and through counsel, serves the following requests for interrogatories upon Plaintiff Cindy Soles Smith, Administratrix of the Estate of Mark Keannan Smith ("**Plaintiff**") and request that Plaintiff answer the interrogatories under oath, separately and fully in writing, within (30) days from the date of service.

## INSTRUCTIONS AND DEFINITIONS

    1.    The period of time covered by these discovery requests (unless otherwise specified) is from **October 11, 2023** through the date of trial in this matter.

    2.    These requests call upon Plaintiff to furnish an answer thereto such information as is available to him or her, his or her agents, and/or his or her attorneys.

    3.    Each response must be as complete and straightforward as the information reasonably available to you permits. Each interrogatory calls not only for your knowledge but also for any information which is available to you by reasonable inquiry. If you do not have enough personal knowledge to fully answer an interrogatory, say so, but make a reasonable effort to get the information by asking other persons or organizations, unless the information is equally available to the asking party.

4.  If in responding to these discovery requests you claim any ambiguity in interpreting either the request or a definition or instruction applicable thereto, you shall not utilize such claim as a basis for refusing to respond. Rather, you shall identify in your response the language you deem ambiguous and the interpretation you used in your response. Further, if you object to any discovery propounded below claiming it is vague or overly burdensome, you should first seek clarification of the discovery request from the undersigned, who stands willing to clarify if the particular situation so requires.

5.  Whenever an interrogatory may be answered by referring to a document, the document should be referred to in the response by the specific bates label number and may be attached as an exhibit to the response. If the document has more than one page, refer to the page and section where the answer to the request can be found.

6.  These discovery requests are deemed continuing pursuant to the North Carolina Rules of Civil Procedure. You are under a continuing duty to timely correct and/or supplement any response to any Interrogatory when you learn that a prior response has become materially incomplete or incorrect.

7.  If you refuse to answer or object to any Interrogatory, in whole or in part, state clearly the basis for such refusal or objection. If a privilege or objection is claimed, identify the privilege or objection, and state the specific basis under which the privilege or objection is claimed. If you withhold otherwise responsive documents from production under claim of privilege or objection, identify any withheld documents in a privilege log by title or description, author, recipient(s), date and state the specific basis for your claim of privilege or objection.

8.  In lieu of producing physical copies of the requested documents, you may submit electronic copies so long as the documents are true and accurate, legible, and clearly indicate the discovery request(s) to which the document(s) relate.

9.  If any document that is responsive to an Interrogatory was, but is no longer, in existence or in your possession or control, state whether it:
    a. is missing or lost;
    b. has been destroyed;
    c. has been transferred, voluntarily or involuntarily, to others; or
    d. has been otherwise disposed of.
For each instance, explain the circumstances surrounding such disposition, including the identity of the person(s) who authorized and/or effected the destruction, transfer or disposition of the document(s), the approximate date of disposition, and, if known, the present location and custodian of the document(s).

10. **Identify** shall mean:

    a. With respect to a document - describe a document by date, author, addressee, bates label number and/or or other means, report title, page number, section number (if

applicable), including a statement as to the present location of the document, and state whether the document is in the possession, custody, or control of you.

    b. With respect to a communication - means to state the date of the communication and how and where it took place, the type of communication (e.g. oral, written, telephonic, etc.) state the substance of the communication, identify each person who took part in the communication and each person who was present during any part thereof, and to identify all documents relating thereto.

    c. With respect to a person – means to state the person's name and contact information including the last known mailing address, email address, and telephone number of such person.

11. **"Answer"** means the Defendants' most recently filed original, supplemental, or amended Answer in this action.

12. **"Complaint"** means Plaintiff's most recently filed original, supplemental, or amended complaint in this action.

13. **"Counterclaim"** means the recently filed original, supplemental, or amended Counterclaim filed by Defendants in this action.

14. **"Document"** shall be broadly construed, including without limitation, every writing or record of any type and description that is in your possession, custody, or control, including any and all records kept by electronic, photographic, or mechanical means, any drafts or revisions pertaining to any of the foregoing, and any other data compilations from which information can be obtained. For the purposes of these requests, any document that contains any note, comment, addition, deletion, insertion, annotation, or otherwise comprises a non-identical copy of another document shall be treated as a separate document. A document is deemed to be within your possession, custody, or control if you have either ownership, possession, or custody of the document or a copy, or if you have the right to secure the document or a copy from any person or public or private entity having physical possession of it. For avoidance of doubt, this definition requires you to search for and produce both hard-copy documents and electronically stored information within the scope of Fed. R. Civ. P. 26, and further includes documents maintained at any of Plaintiff's offices, including without limitation district offices, branch offices, regional offices, and home offices.

15. **"Mark Smith"** or **"Decedent"** means Mark Keannan Smith and any representatives, agents, and any other authority to act on his behalf.

16. **"Plaintiff"** or **"You"** means Plaintiff Cindy Soles Smith, Administratrix of the Estate of Mark Keannan Smith and any representatives, agents, and any other authority to act on her behalf.

17. **"Incident"** means the collision described in Plaintiff's Complaint on October 11, 2023.

18. **"XPO"** means XPO Logistics Freight Inc. together with its predecessors, successors, parents, subsidiaries, affiliates, related companies, and assigns, and any person or entity acting for on its behalf, including without limitation its past, present, and future members, managers, principals, representatives, agents, employees, and any other authority to act on its behalf.

19. **"Lamb"** means the individual Defendant in this lawsuit William Bratty Lamb.

20. **"Silverado"** means the 2018 Chevrolet pickup truck that the Decedent was driving at the time of the Incident.

## INTERROGATORIES

1. Identify all individuals that assisted, or with whom you consulted, in answering these Interrogatories.

**ANSWER: Cindy Soles Smith (surviving spouse) and Haithan Alsawadi (surviving son).**

2. Identify each individual known to you who is likely to have knowledge or information concerning the Incident and/or this lawsuit including, without limitation, persons who witnessed the Incident, persons who have knowledge or information concerning the Decedent's injuries and alleged damages, and persons who have knowledge or information concerning the facts and circumstances underlying this litigation and identify all documents that relate to your response.

**ANSWER: The following individuals have personal knowledge concerning Decedent Mark Smith's injuries immediately following the subject collision, including but not limited to Decedent Mark Smith's conscious actual physical pain and mental suffering:**

**Geavonia Lowery**
**1038 Mt. Olive Church Rd.**
**Lumberton, NC 28360**
**910-474-3612**

**John Alex Deese**
**176 Legend Rd.**
**Lumberton, NC**
**910-671-3250**
**910-258-2285**

**Jimmy McDonald**
**Employer- Robeson County Public Works**

4

3. Identify all individuals who were present at the scene of the Incident, either shortly before, during, or after the Incident, including emergency responders, tow truck personnel, family members, or any other persons, and specify their relationship to the Decedent, if any.

**ANSWER: Plaintiff is aware of the following:**

**Lumberton Rescue & EMS
Robeson County EMS
Lumberton Fire Department
Lumberton Police Department
Mitchell's Towing
Geavonia Lowery (see Interrogatory No. 2)
John Alex Deese (see Interrogatory No. 2)
Jimmy McDonald (see Interrogatory No. 2)**

**None of the above are related to the Decedent.**

4. Identify all expenses for care, treatment, and hospitalization, and reasonable funeral expenses resulting from the Incident that you are seeking to recover in this lawsuit and identify all documents that relate to your response.

**ANSWER: Funeral – Peacock, Newnam & White (Southport, NC -$11,000)—the funeral bill was paid for by Plaintiff Cindy Smith. There was also a bill from Robeson County EMS for paramedic services.**

5. Describe the support, society, companionship, comfort, protection, care, assistance, guidance, kindly offices, and advice that the Decedent provided for which you are seeking to recover as damages in this lawsuit and identify all documents that relate to your response.

**ANSWER: The loss of Decedent Mark Smith has left an unimaginable void in the hearts of his family and friends. It is difficult to describe the pain and anguish in words alone. Specifically, Plaintiff seeks damages to compensate the estate, pursuant to G.S. 28A-18-2 for the loss of support, companionship, guidance, comfort, protection, care, assistance, kindly offices, and advice of Mark Smith as to the following heirs.**

**Cindy Smith: Cindy Smith married Decedent Mark Smith on September 27, 1986 in Las Vegas, NV. Cindy and Mark started dating approximately 8-months prior to getting married. Mark and Cindy quickly feel in love and knew they wanted to spend the rest of their lives together. The happy couple met in Winston-Salem, NC but later moved to Battle Creek, Michigan. Cindy Smith already had a small child (Haithan Alsawadi), age 2, from a previous marriage (Haithan Alsawadi DOB 07-21-83). Mark was a father figure to Haithan and equitably adopted him during his lifetime. Mark and Cindy got pregnant with their daughter, Hannah Smith, then moved to Lafayette, Indiana in August 1987. Then the couple moved to King, NC (near Winston-Salem, NC). At the time, Mark was working as a project manager for RJ Reynolds Corporation. Cindy and Mark eventually moved to Southport, NC in the early 1990s and moved to Wilmington,**

5

NC in 1997. Mark started working for Jeff Jones of Robeson County, NC in 1995. Since 1995, Mark has served as the General Manager of National Erectors Rebar, Inc. and was the President Great Southeast Forming, Inc. (sister company to National Erectors). Jeff Jones and Mark Smith also opened National Reinforcing Systems (now called Harris Rebar) in Lumberton, NC which was eventually sold.

Throughout the years, Mark played a critical role with both National Erectors and Great Southeast Forming. Mark did all of the bids and billings for both companies and has coordinated multiple multimillion-dollar projects (e.g., Cooper River Bridge (Charleston), I-140 in Wilmington, NC, Interstate 485 (Charlotte), Interstate 440 (Raleigh).

Mark's successful career with National Erectors and Great Southeast Forming helped support Cindy Smith and the family financially. Mark was very caring and generous to his family. For instance, Mark helped his son, Haithan start his 501(c)(3) in Wilmington, NC. Mark helped Hannah pay for college and helped pay for his two son's education. By way of example, Mark helped Hayden Smith (Mark's youngest son) with a down payment on house. Not only was Mark very generous with his family, Mark also helped various employees of National Erectors and Great Southeast Forming with down payments with cars, houses, rent payments, etc. Mark played a critical role in the Robeson County community and left an impression of many hardworking men and women who came into contact with him during his construction career.

At the time of the subject collision, Mark was earning approximately $175,000 per year. Mark would also get the occasional bonus based on project production (e.g., $30,000), which could vary depending on the current project load.

Mark and Cindy enjoyed traveling together frequently and were truly best friends and sole mates. Cindy and Mark were also very close to Mark's family in Kansas. For instance, Mark and Cindy went to Topeka, KS every Christmas and would visit his family frequently. Mark was also very close to his parents, two bothers and one sister.

<u>Haithan Alsawadi</u> -- Haithan is the oldest (adopted) son of Mark Smith. Haithan's DOB is 07-21-83. Haithan was two years old when his mother (Cindy Smith) married Mark. Haithan was very close with Mark. For instance, Haithan would go to jobsites with Mark starting at a young age and through adulthood. Mark and Haithan would also frequently take trips together, including beloved trips to Disney in Orlando. Mark was there for birthday parties, other life events and the special Sunday dinners. Every week, the family would make a point to eat together on Sunday evenings at Mark and Cindy's home. Haithan has one daughter (Claire, DOB: 2-16-21). Mark was very close to all of his grandchildren.

<u>Hannah Smith (deceased)</u> – Hannah was Mark and Cindy's only daughter—DOB: 08-04-87. Hannah was never married and lived with Mark and Cindy in Leland, NC. Hannah did not have any children, Hannah very close with Mark throughout her life and they had a special father/daughter bond. Unfortunately, Hannah tragically and

6

Case 7:25-cv-01545-D-BM    Document 26-17    Filed 11/03/25    Page 7 of 18

suddenly passed away 10 months prior to the subject collision on December 20, 2022. Cindy and Mark were still grieving the sudden loss of Hannah when the subject collision occurred.

<u>Hayden Smith</u> – Hayden is the youngest son of Mark and Cindy Smith. Hayden's DOB: 12-23-89, currently resides in Lancaster, OH. Hayden has two small children (Bailey, 12) (Audrey, 9). Hayden and Mark were very close and spoke frequently. Hayden moved to Ohio in 2021. Before that, Hayden lived in Southport, NC and would see Mark daily. Mark had an extremely close relationship with Hayden and the two grandchildren.

**Cindy, Haithan and Hayden are all devastated by the sudden loss of their "rock" and hero—Mark Smith.**

6. Describe any pain or suffering that the Decedent experienced as a result of the Incident for which you are seeking to recover damages in this lawsuit and identify all documents that relate to your response.

**ANSWER: Plaintiff is aware of several witnesses who observed Mark moaning, groaning and moving his arm following the collision with the XPO tractor on October 11, 2023. The independent eyewitnesses to the conscious actual physical pain and mental suffering are as follows:**

**Geavonia Lowery**
**1038 Mt. Olive Church Rd.**
**Lumberton, NC 28360**
**910-474-3612**

**John Alex Deese**
**176 Legend Rd.**
**Lumberton, NC**
**910-671-3250**
**910-258-2285**

**Jimmy McDonald**
**Employer- Robeson County Public Works**

7. Identify whether the Decedent was acting within the course and scope of his employment or agency, *i.e.*, National Erectors Rebar, Inc., at the time of the Incident. If not, explain the basis for your contention and identify documents and witnesses that support your contention.

**ANSWER: Yes, Decedent was acting within the course and scope of his employment with National Erectors Rebar, Inc. when the subject collision occurred. Decedent had met with a subcontractor (Jeremy Bloom) earlier that morning in Southport, NC to obtain certain rebar equipment. Plaintiff believes Decedent was enroute to Harris Rebar in Robeson County, NC when the subject collision occurred (located at 2790 Kenny Biggs Rd. Lumberton, NC 28358).**

7

Jeremy Bloom
919-621-5977

8. Identify and describe the Decedent's employment with National Erectors Rebar, Inc. at the time of the Incident including, without limitation, his title, job description, compensation (e.g., hourly, salary, other), and tenure.

ANSWER:

General Manager—National Erectors Rebar, Inc. (Base Pay $1,800/week from National Erectors Rebar, Inc.)

President – Great Southeast Forming (Base Pay $1,000/week from Great Southeast Forming).

Mark would also receive other fringe benefits (heath insurance, life insurance, disability insurance) and incentive bonuses based upon production. On average—Decedent would earn $150,000-$175,000 in total compensation from both companies.

Mark was a critical leader in both companies and handled all of the bidding, construction details and contract details for large multimillion-dollar projects throughout the region.

9. Describe in full detail how and why the Incident occurred and identify all documents that relate to your response.

ANSWER: Plaintiff has already described in full detail how and why the Incident occurred in her First Amended Complaint.

Defendant Lamb was operating a tractor-trailer owned by XPO on October 11, 2023 at approximately 7:00am when Defendant Lamb suddenly, without warning, pulled directly into the path of Decedent Mark Smith and stopped, causing his trailer to block all westbound lanes of U.S. 74-Alternate. It appears Defendant Lamb was distracted when the collision occurred. Defendant Lamb describes stopping in the highway due to traffic approaching from his right, including a school bus. Defendant Lamb also describes observing Mark Smith approaching from his left immediately prior to pulling into the roadway and stopping, causing his trailer to block all westbound lanes of U.S. 74 Alternate. Defendant Lamb was charged with failure to yield right of way, failure to wear a seatbelt and misdemeanor death by motor vehicle.

The acts and omissions of Defendant Lamb were beyond ordinary negligence—they were *grossly* negligent for which Plaintiff seeks compensatory and punitive damages.

10. Identify and describe the Decedent's activities in the twenty-four hours preceding the Incident and identify all documents that relate to your response.

ANSWER: Mark had been working on a construction bid the day prior (October 10, 2023) and had been to the office in Lumberton, NC. On the evening of October 10, 2023, Cindy and Mark cooked tacos the watched television. Mark and Cindy were in bed by 11:00pm. On the morning of the subject incident, Decedent left the house very early (5:00am) and told Cindy he had a meeting in Southport early in the morning. Specifically, Mark told Cindy he was going meet someone for work before heading to Lumberton, NC.

11. Identify all medical conditions, health concerns, and/or any mental or physical issues of the Decedent that were present in the weeks, days, and moments leading up to and during the Incident and identify all documents that relate to your response.

ANSWER: Mark was in good general health at the time of the subject collision. There were no medical concerns in the weeks, days and moments leading up to the subject Incident.

12. Identify and describe all assessments, evaluations, or medical examinations conducted on the Decedent related to his ability to operate a motor vehicle safely, including but not limited to vision tests, hearing tests, cognitive assessments, or assessments of physical coordination and reaction time and identify all documents that relate to your response.

ANSWER: Mark was in good general health at the time of the subject Incident and there were no injuries or illnesses that would affect his ability to operate a motor vehicle when the subject collision occurred.

13. Identify all medications prescribed, recommended, or used by the Decedent within six months prior to the Incident and/or at the time of the Incident and identify all documents that relate to your response.

ANSWER: Mark was taking a medication for gout that was prescribed by Dr. Batish – PCP (Batish Family Medicine Leland, NC)

14. Describe any incidents, episodes, or occurrences prior to the Incident where the Decedent's medical condition(s) or medication use may have impacted his ability to operate a motor vehicle safely, react to hazards, or navigate traffic.

ANSWER: None.

15. State whether the Decedent was advised by any healthcare provider or medical professional regarding restrictions, limitations, or cautions related to operating a motor vehicle or engaging in activities requiring alertness, focus, or rapid reaction times due to his medical condition(s) or medication use.

ANSWER: None.

16. Identify all facts and circumstances that could have potentially impacted the Decedent's ability to operate a motor vehicle, observe his surroundings, or react appropriately to the circumstances leading up to the Incident and identify all documents that relate to your response.

**ANSWER: None.**

17. Identify all written or oral statements concerning the Incident of which you are aware that were given by You, any Defendant, any witnesses, any other parties involved in the Incident, anyone who investigated the Incident, or any other person known to you who has knowledge of the Incident and/or this lawsuit and identify all documents that relate to your response.

**ANSWER: Plaintiff is aware of two handwritten statements provided to Lumberton Police Department, one of Defendant Lamb and the other of Michael E. Hunt. Plaintiff is not aware of any other oral or written statements concerning the Incident.**

18. Identify each person whom you expect to call as an expert witness at the trial of this case, the subject matter concerning which the expert is expected to testify, the substance of the facts and opinions to which the expert is expected to testify, all documents provided to the expert for review and a summary of the grounds of each opinion to which the expert will testify. Identify and attach a copy of any reports prepared by any such expert(s) and identify all documents that relate to your response.

**ANSWER: Plaintiff objects to this Interrogatory as it seeks premature expert disclosures. No decisions have been made concerning expert witnesses. This response will be supplemented at the appropriate time and pursuant to the North Carolina Rules of Civil Procedure.**

19. Identify all investigations into the Incident by you, or someone at your direction and/or on your behalf including, without limitation: the identity of the person or entity performing the investigation, whether statements were taken, and whether written reports were prepared and identify all documents that relate to your response.

**ANSWER: Plaintiff objects to this Interrogatory as it seeks privileged attorney work product.**

20. Identify all efforts undertaken by you to mitigate your alleged damages and expenses incurred as a result of such mitigation and identify all documents that relate to your response.

**ANSWER: Plaintiff objects to this Interrogatory as it is not relevant or applicable to the subject litigation. Without waiving said objection, there was nothing Plaintiff could do to "mitigate" damages in this case.**

10

21. Identify all documents, witnesses, and other evidence that support your contention that Defendants were negligent and/or otherwise caused or contributed to the Incident and identify all documents that relate to your response.

**ANSWER:** Plaintiff objects to this Interrogatory as it seeks attorney work product and impressions. Without waiving said objection, Plaintiff has investigated the facts and circumstances surrounding the subject Incident, including but not limited to reviewing law enforcement records, video footage, photographs, etc. and has formed a detailed legal analysis based upon these finds that suggest Defendants were negligent and grossly negligent as is described in detail in the First Amended Complaint.

22. Identify all documents in your possession, custody, or control (or in your attorney's possession, custody, or control) related to the Incident including, but not limited to, any report, photograph, film, videotape, drawing, repair estimate or repair invoice, that is in any way related to the Incident or to the injuries suffered by the Plaintiff as a result of the Incident.

**ANSWER:** Plaintiff has attached all photos, videos and drawings that relate to the subject Incident that are currently in Plaintiff's possession and control and which are nonprivileged and subject to disclosure.

23. Identify all sources of evidence, including, but not limited to, witnesses, documents and/or tangible things, upon which you will rely to support each and every claim raised by you against Defendants in this matter and identify all documents that relate to your response.

**ANSWER:** Plaintiff objects to this Interrogatory as is seeks attorney work product. See Response to Interrogatory No. 21.

24. Identify all civil lawsuits in which you are or have been involved either as a plaintiff, defendant, witness, petitioner or respondent including the dates of the proceeding, the court in which the case was heard, the nature of the case and the outcome of the legal proceedings and identify all documents that relate to your response.

**ANSWER:** None.

25. Identify all policies of liability insurance, including any umbrella policy, which covered the Decedent and/or the Silverado the Decedent was operating at the time of the Incident and identify all documents that relate to your response.

**ANSWER:** The vehicle being operated by Decedent was owned by National Erectors Rebar, Inc. and was insured by Westfield Insurance Company (Policy No. CMM237911J). Plaintiff has requested a copy of the declaration page for this policy and will supplement this response accordingly.

11

26. Identify all policies of insurance under which coverage may be implicated by this lawsuit and/or those policies under which an insurer is funding the litigation of this lawsuit and identify all documents that relate to your response.

**ANSWER: The counterclaim asserted by Defendant XPO is being covered under a policy issued to National Erectors Rebar, Inc. (Westfield Insurance Company, Policy No. CMM237911J).**

27. Identify all persons that you contend have responsibility of any kind for causing the Incident and/or for causing any of the damages alleged in the Complaint and identify all documents that support your contentions.

**ANSWER: Defendant William Bratty Lamb and Defendant XPO Logistics Freight, Inc. (both independently and vicariously) are responsible for causing the subject collision and damages complained of in Plaintiff's First Amended Complaint. This response may be further supplemented as discovery continues in this matter.**

28. Describe the Decedent's educational background, including all schools attended, the dates of attendance, the dates of any graduation, and the degrees and honors received.

**ANSWER: Topeka West High School – High School Diploma (1976), Washburn University-transferred to Kansas State University (Construction Science, Site Soils and Testing), Bachelor Degree – 1983.**

29. Describe the Decedent's employment history for the last ten years, including the names, addresses, and telephone numbers of all employers, a description of each of the positions he held, the dates that he held such positions, and the names of his direct supervisor(s) in those positions.

**ANSWER: Since 1995, Mark served as the General Manager for National Erectors and President of Great Southeast Forming, both of Lumberton, NC. Mark was the supervisor/GM but would report directly to Jeff Jones (Owner).**

30. Identify the purpose of the Decedent's travel at the time of the Incident, his time and location of departure, intended destination and expected time of arrival, and whether the trip in any way involved his employment or work and identify all documents that relate to your response.

**ANSWER: The Decedent left his home in Leland around 5:00am on October 11, 2023, and traveled to Southport to meet Jeremy Bloom (consultant with another construction firm) regarding some equipment and rebar. Plaintiff believes Mark was enroute to Harris Rebar in Lumberton, NC when the subject collision occurred.**

31. State the speed at which the Decedent was traveling immediately prior to, and at the time of the Incident and identify all documents that relate to your response.

**ANSWER: Plaintiff is still investigating the speed of Decedent's vehicle. Plaintiff generally objects to this Interrogatory as it relates to the sufficiency and accuracy of the data collected from the subject Silverado and relevancy. However, without waving any**

objections to the sufficiency and accuracy of any data, or relevancy, it appears Plaintiff was traveling approximately 58MPH prior to impact. It has been indicated by investigating law enforcement that speed was <u>not</u> a factor in this collision and Plaintiff further reaffirms here contention that speed was <u>not</u> a proximate cause in the subject collision.

32. Identify all personal, business, and cellular telephone numbers and associated carriers for all cell phones that the Decedent owned, used, or was in possession of at the time of the Incident and identify all documents related to your response.

<u>ANSWER</u>: **Decedent had one cellular device –Verizon (910) 617-7272. The subject cellular device was owned and controlled by Mark's employer (National Erectors Rebar, Inc.).**

33. State whether the Decedent was using any electronic device(s), eating or drinking, holding or reaching for any object, operating or using any accessory or item in the Silverado, or was otherwise distracted at the time of the Incident and identify all documents that relate to your response.

<u>ANSWER</u>: **There is no evidence suggesting that Decedent Mark Smith was distracted in any way at the time of the subject collision or immediately prior to the subject collision.**

34. Identify every communication, whether oral or written, you had regarding the Incident and identify all documents that relate to your response.

<u>ANSWER</u>: **Plaintiff objects to this Interrogatory as it is overly broad and vague. This Interrogatory also seeks attorney-client and attorney work product privileged communications which are not discoverable or otherwise subject to disclosure.**

35. State and identify whether any drugs, alcohol, and/or other intoxicating substances were consumed by the Decedent within the twenty-four hours prior to the Incident and identify all documents that relate to your response.

<u>ANSWER</u>: **None.**

36. Identify all persons who had access to and/or who accessed the Silverado while it was at a tow facility after the Incident.

<u>ANSWER</u>: **Haithan (Decedent's oldest son) retrieved one bag from the Silverado that had important tax documents and site plans contained therein. No other object or items were removed.**

37. Identify and describe the contents of the Silverado after the Incident and identify all documents that relate to your response.

13

ANSWER: Plaintiff is not aware of the contents of the Silverado following the subject incident but it appears there were multiple site plans, construction documents and rebar materials in the subject Silverado.

38. Identify and describe all items that were removed from the Silverado after the Incident and identify all documents that relate to your response.

ANSWER: See Response to Interrogatory No. 36.

39. State whether any person removed items from the Silverado after the Incident, and if so, specify the dates and times of such removal, the circumstances under which the items were removed, and identify and describe any items that were removed from the Silverado and identify all documents that relate to your response.

ANSWER: See Response to Interrogatory No. 36. Specifically, two days after the subject incident, Haithan retrieved important tax documents from the bookbag in the Silverado. No other items were removed.

40. Describe all efforts made by you, or anyone at your direction and/or on your behalf, to retrieve or locate the Decedent's cell phone or electronic communication device following the Incident and identify all documents that relate to your response.

ANSWER: Decedent's cellular device is in the custody of law enforcement and Plaintiff has not had access to the device since the subject collision. Moreover, Plaintiff does not own or control the subject cellular device. The subject cellular device was owned by Decedent's employer, National Erectors Rebar, Inc.

41. Identify all applications or services installed on the Decedent's cell phone that may have stored data in the cloud or otherwise backed up the cell phone data including, but not limited to, email accounts, social media platforms, cloud storage services, location tracking services, backups, synchronization, device sharing, or data sharing settings configured on the Decedent's cell phone and identify all documents that relate to your response.

ANSWER: Plaintiff does not have sufficient information to respond to this Interrogatory as the subject cellular device was company phone owned and provided by National Erectors Rebar, Inc.

42. Describe all efforts made by family members, representatives, or any other persons to access or retrieve data from the Decedent's cell phone and identify all documents that relate to your response.

ANSWER: See Response to Interrogatory No. 40.

43. State whether you, or anyone at your direction and/or on your behalf, have obtained access to any data or information stored on the Decedent's cell phone after the Incident, including

without limitation through cooperation with cellular service providers, technology experts, or legal processes.

**ANSWER: No. See also response to Interrogatory No. 40.**

44. Identify all persons including, but not limited to, family members, friends, relatives, acquaintances, cellular service providers, technology companies, or forensic specialists, who have been engaged or consulted regarding the retrieval, analysis, or preservation of data from the Decedent's cell phone, and provide details of their involvement.

**ANSWER: Plaintiff objects to this Interrogatory as it seeks attorney work product. Without waiving said objection, see Response to Interrogatory No. 40.**

45. Identify and describe all contact, communications, or interaction between the Decedent and any person after the Incident.

**ANSWER: See Response to Interrogatory No. 6.**

46. Identify all persons who were involved in making decisions or arrangements on behalf of the Decedent following the Incident, including medical decisions, financial matters, or funeral arrangements, and specify their roles and responsibilities.

**ANSWER: Plaintiff Cindy Smith.**

47. Describe all efforts made by persons to gather information, evidence, or documentation related to the Incident or the Decedent's affairs including, without limitation, communications with law enforcement, insurance companies, investigators, witnesses, and legal representatives.

**ANSWER: Plaintiff objects to this Interrogatory as it seeks attorney work product and other privileged communications and documents.**

48. Describe all counseling, therapy, or mental health support services sought or received by friends or relatives of the Decedent after the Incident, including individual counseling, group therapy, grief counseling, or other forms of mental health intervention.

**ANSWER: Haithan went to grief counseling classes and one-on-one therapy in Wilmington, NC (Coastal Horizons in Wilmington, NC). Cindy Smith has several deacons from the church who have helped with grief counseling (Sacred Heart in Southport – Catholic Church).**

49. Describe in detail the observations made by family members, friends, or acquaintances of the Decedent regarding the physical, mental, or emotional condition of the Decedent after the Incident.

**ANSWER: Mark's body was observed at the funeral home the day after the subject collision by Cindy and Haithan. This was incredibly difficult for the family and Cindy**

15

had to be physically pulled away from Mark's body before departing the funeral home.

This the 10th day of June, 2024.

MUSSELWHITE, MUSSELWHITE, BRANCH &
GRANTHAM, P.A.

By: _____
J. William Owen
North Carolina Bar No. 47994
P.O. Box 1448
Lumberton, NC 28359
wowen@mmbglaw.com
*Counsel for Plaintiff*

16

## CERTIFICATE OF SERVICE

This is to certify that I caused the foregoing **PLAINTIFF'S RESPONSES TO DEFENDANT XPO LOGISTICS FREIGHT, INC.S' FIRST SET OF INTERROGATORIES TO PLAINTIFF** served upon all counsel of record by email pursuant to the North Carolina Rules of Civil Procedure addressed as follows:

Megan M. Stacy
mstacy@grsm.com
Le'Ron Byrd
lbyrd@grsm.com
Gordon Rees Scully Mansukhani, LLP
*Attorneys for Defendant Lamb and Defendant XPO*

Jennifer Welch
jwelch@cshlaw.com
Cranfill Sumner
*Attorney for Counterclaim Defendant Smith*

This the 10th day of June, 2024.

MUSSELWHITE, MUSSELWHITE, BRANCH & GRANTHAM, P.A.

By: _____
J. William Owen
North Carolina Bar No. 47994
P.O. Box 1448
Lumberton, NC 28359
wowen@mmbglaw.com
*Counsel for Plaintiff*

17