# Exhibit 94

# XPO's Writ of Supersedeas and Motion for Temporary Stay

# No. COAP25-506

NO. COA _____

## NORTH CAROLINA COURT OF APPEALS
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| CINDY SOLES SMITH, Administratrix of the ESTATE OF MARK KEANNAN SMITH, | |
| Plaintiff, | From Robeson County (24CVS000468-770, 25CV003758-770) |
| v. | |
| WILLIAM BRATTY LAMB and XPO LOGISTICS FREIGHT, INC., | |
| Defendants. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### Petition for Writ of Supersedeas and Motion for Temporary Stay

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## Index

Table of Cases and Authorities ................................................. iii

Factual and Procedural Background ........................................... 2

Argument – Why Writ Should Issue ............................................ 7

I. Section 1-294's stay was automatically triggered when XPO noticed its appeal because the Sanctions Order is immediately appealable ........................................ 9

II. A global stay is necessary and warranted under Section 1-294 ........................................................................ 11

    A. A global stay is warranted, under Section 1-294, because the pending appeal challenges the imposition of the dispositive factual issue common to each party's claim, defense, and counterclaim .......................................................... 12

    B. A global stay is also necessary to prevent irreparable harm to Defendants ............................. 15

    C. Plaintiff's anticipated arguments, opposing a global stay, should be rejected as unpersuasive .......................................................... 19

III. The Severance Order should be vacated ........................... 21

    A. The Severance Order should be vacated because Section 1-294 dictates that the trial court lacked subject matter jurisdiction to enter it. ................................................................... 21

    B. None of the recognized exceptions apply, which would otherwise allow the trial court to retain jurisdiction to enter the Severance Order ....................................................................... 24

    C. The Severance Order should be vacated, based on N.C. Supreme Court precedent in *Wiggins,* because it was entered in retaliation of XPO's lawfully pending appeal ........................... 25

    D. The Severance Order should be vacated as it significantly prejudices Defendants by requiring that two separate juries assess the same evidence and factual issues ........................... 26

Motion for Temporary Stay ..................................................... 30

Conclusion and Requested Relief ............................................ 33

Verification................................................................................... 36

Certificate of Service ................................................................. 38

## Table of Cases and Authorities

### Cases

*Am. Floor Mach. Co. v. Dixon*,
    260 N.C. 732, 133 S.E.2d 659 (1963) ..................................... 21

*Bowden v. Latta*,
    337 N.C. 794, 448 S.E.2d 503 (1994) ..................................... 16

*Crowell v. Crowell*,
    290 N.C. App. 1, 891 S.E.2d 468 (2023)................................. 21

*Davidson v. Knauff Ins. Agency, Inc.*,
    93 N.C. App. 20, 376 S.E.2d 488 (1989)............... 11, 12, 16, 26

*Dep't of Transportation v. Hutchinsons, LLC*,
    265 N.C. App. 155, 828 S.E.2d 552 (2019)............... 7, 8, 10, 24

*DiDonato v. Wortman*,
    320 N.C. 423, 358 S.E.2d 489 (1987) ..................................... 17

*Dunhill Holdings, LLC v. Lindberg*,
    282 N.C. App. 36, 870 S.E.2d 636 (2022)................................. 9

*Feeassco, LLC v. Steel Network, Inc.*,
    264 N.C. App. 327, 826 S.E.2d 202 (2019).............................. 9

*Hoots v. Pryor*,
    106 N.C. App. 397, 417 S.E.2d 269 (1992)............................ 17

*Jessey Sports, LLC v. Intercollegiate Men's Lacrosse
Coaches Ass'n, Inc.*,
    294 N.C. App. 562, 904 S.E.2d 161 (2024)............................ 22

*Lowder v. All Star Mills, Inc.*,
    301 N.C. 561, 273 S.E.2d 247 (1981) ....................................... 7

*OSI Rest. Partners, LLC v. Oscoda Plastics, Inc.*,
    266 N.C. App. 310, 831 S.E.2d 386 (2019)............................ 20

*Romulus v. Romulus*,
    216 N.C. App. 28, 715 S.E.2d 889 (2011)............................. 22

*SED Holdings, LLC v. 3 Star Props., LLC*,
    250 N.C. App. 215, 791 S.E.2d 914 (2016)........... 21, 22, 23, 24

*Taft v. Brinley's Grading Servs., Inc.,*
    225 N.C. App. 502, 738 S.E.2d 741 (2013)............................. 14

*Taylor v. Brinkman,*
    108 N.C. App. 767, 425 S.E.2d 429 (1993)....................... 15, 16

*Thorpe v. TJM Ocean Isle Partners LLC,*
    223 N.C. App. 201, 733 S.E.2d 185 (2012)............................. 14

*Walker v. Liberty Mut. Ins. Co.,*
    84 N.C. App. 552, 353 S.E.2d 425 (1987)................................. 9

*Wiggins v. Bunch,*
    280 N.C. 106, 184 S.E.2d 879 (1971) ...................................... 25

## Statutes

N.C. Gen. Stat. 1-294.................................................................. 23

N.C. Gen. Stat. § 1-277 ............................................................ 8, 9

N.C. Gen. Stat. § 1-294
    ..........1, 6, 7, 8, 10, 11, 12, 15, 16, 18, 19, 21, 22, 23, 26, 29, 33

N.C. Gen. Stat. § 1D-15 ............................................................. 13

N.C. Gen. Stat. § 7A-27 ............................................................... 9

N.C. Gen. Stat. § 28A-18-2 ........................................................ 17

## Rules

N.C. R. App. P. 23 ........................................................................ 1

N.C. R. App. P. 37 ............................................................... 1, 9, 32

NORTH CAROLINA COURT OF APPEALS
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

CINDY SOLES SMITH, Administratrix
of the ESTATE OF MARK KEANNAN
SMITH,

        Plaintiff,

v.

WILLIAM BRATTY LAMB and XPO
LOGISTICS FREIGHT, INC.,

        Defendants.

<u>From Robeson County</u>
(24CVS000468-770,
25CV003758-770)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### <u>Petition for Writ of Supersedeas and Motion for Temporary Stay</u>

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

TO THE HONORABLE COURT OF APPEALS OF NORTH CAROLINA:

        Pursuant to Rule 23 of the North Carolina Rules of Appellate Procedure and N.C. Gen. Stat. § 1-294, Defendant William Bratty Lamb and his employer, Defendant XPO Logistics Freight, Inc., respectfully petition this Court to issue a temporary stay and a writ of supersedeas. The appeal pending before this Court arises from the trial court's entry of Rule 37 discovery sanctions on 25 April 2025, which purport to strike XPO's contributory negligence defense and impute liability as a matter of law onto both XPO and Mr. Lamb. On 9 July 2025, the trial court entered two orders, denying Defendants' requested global stay pending appeal and

granting Plaintiff's request to sever the action into separate trials between the joint and severally liable Defendants. Defendants now respectfully request for this Court to intervene to prevent irreparable harm from occurring while the lawfully filed appeal is pending before this Court.

## Factual and Procedural Background

This action is based on a wrongful death dispute, arising from a trucking accident, which occurred on 11 October 2023 and involved Mr. Lamb and decedent Mark Keannan Smith. On behalf of her deceased husband, Plaintiff Cindy Soles Smith brought claims of negligence and gross negligence against Mr. Lamb, as well as vicarious liability claims against XPO, because Mr. Lamb was driving for XPO at the time of the accident. In her First Amended Complaint,[1] Plaintiff also asserted a claim for negligent hiring, training, retention, and supervision against XPO, which, similar to Plaintiff's vicarious liability claims, cannot be established absent proof of Mr. Lamb's negligence. In response, XPO asserted a counterclaim against Plaintiff, alleging that Mr. Smith's negligence caused the accident. Finally, Mr. Lamb and XPO also properly raised contributory negligence affirmative defenses, which would completely bar Plaintiff's recovery if Mr. Smith is found to be even partially liable for causing the accident.[2] Taken together, the entirety of this case, and the determination of each claim, counterclaim, and dispositive defense, will depend on the jury's answer

---

[1] A certified copy of Plaintiff's First Amended Complaint, which was filed on 22 February 2024, is attached as **Exhibit A**.

[2] A certified copy of XPO's Answer and Counterclaim is attached as **Exhibit B**, and a certified copy of Mr. Lamb's Answer is attached as **Exhibit C**.

to a single, common question of fact: who is responsible for causing the accident on 11 October 2023—Mr. Smith, Mr. Lamb, or both?

Throughout most of the underlying litigation, Plaintiff and XPO disputed each other's written discovery responses and document productions. These discovery disputes culminated in XPO and Plaintiff filing competing motions to compel. On 2 May 2025, the trial court summarily denied the Motion to Compel that XPO filed against Plaintiff on 18 March 2025.[3] Conversely, the trial court granted *both* Plaintiff's First and Second Motions to Compel against XPO in lengthy orders entered on 21 January 2025 and 25 April 2025, respectively. The trial court's 25 April 2025 Order both grants Plaintiff's Second Motion to Compel against XPO and imposes unlawful discovery sanctions against Mr. Lamb and XPO, which are unwarranted by the underlying record (hereinafter, the "Sanctions Order").[4]

More specifically, in its Sanctions Order, the trial court seeks to subvert the central question of fact in this matter—who caused the accident on 11 October 2023—away from the jury and answer it, as a matter of law, by the imposition of the most extraordinary of discovery sanctions. Most notably, the Sanctions Order states:

> 56. The Court, in its discretion pursuant to the North Carolina Rules of Civil Procedure, including Rules 26, 37(a), 37(b)(2), and 37(d), and its inherent authority to control proceedings before it, hereby finds and concludes that the following sanctions are

---

[3] On 22 May 2025, XPO filed a separate Notice of Appeal to appeal the trial court's 2 May 2025 Order, which summarily denies XPO's Motion to Compel and purports to relieve Plaintiff of her statutory duty to produce supplemental responses and documents to XPO's proper requests. XPO respectfully requests that its two pending appeals are *not* consolidated, as they raise unique issues for appellate review that will require separate briefing.

[4] A certified copy of the Sanctions Order is attached as **Exhibit D**.

necessary and appropriate to remedy the ongoing discovery violations by XPO:

    a. It is established as fact for all purposes in this Action, including dispositive motions and trial, that on October 11, 2023, XPO employee William Lamb, proceeded into the intersection of U.S. Highway 74 Alternate and W. 5th Street Extension and stopped his tractor-trailer directly in front of decedent Mark Smith and *such conduct of William Lamb was negligent, careless, reckless and grossly negligent.*

. . .

    e. It is established as fact for all purposes in this Action, including dispositive motions and trial, that XPO failed to properly train and supervise employee William Lamb in accordance with industry standards and that said conduct of XPO was negligent, careless, reckless and grossly negligent.

    f. This Court, in its discretion, hereby strikes the following defenses contained within Defendant XPO's Answer to Plaintiff's First Amended Complaint:
        i.    Second Defense (contributory negligence);
        ii.   Third Defense (general negligence denial);
        iii.  Sixth Defense (general negligence denial);
        iv.  Seventh Defense (causation denial);
        v.   Eighth Defense (contributory negligence)

(Ex. D, Sanctions Order ¶ 56 (emphasis added))

In sum, the Sanctions Order purports to render both Defendants liable for negligence and gross negligence and to strike XPO's contributory negligence defense. Importantly, the plain language of the Sanctions Order finds Mr. Lamb liable for negligence and gross negligence, even though Mr. Lamb was never accused of any discovery violations, was never the subject of any discovery dispute or motion to

compel, and was never notified that he may be subject to discovery sanctions. On 22 May 2025, XPO timely appealed from the entry of the Sanctions Order.[5]

As the outcome of this pending appeal significantly and directly impacts both Defendants XPO and Mr. Lamb, Defendants jointly filed a Motion to Stay all further proceedings at the trial court level on 30 May 2025.[6] In response to Defendants' Motion to Stay, Plaintiff filed what appears to be an unprecedented Motion to Sever, requesting to separate the trials of the joint and severally liable Defendants, halfway through litigation, to avoid any delay caused by XPO's appeal from the immediately appealable Sanctions Order.[7] (*See* Ex. G, Pl.'s Mot. to Sever ¶¶ 18-26, 29-33).

On 30 June 2025, the parties' conflicting Motion to Stay and Motion to Sever were heard before the Honorable James Gregory Bell of Robeson County Superior Court—the same judge who heard and entered all discovery-related orders in this matter, including the Sanctions Order. On 9 June 2025, Judge Bell entered the Order Denying Defendants' Motion to Stay All Proceedings Pending Appeal (the "Stay Order") and the Order Granting Plaintiff's Motion to Sever (the "Severance Order").[8]

Because the Stay and Severance Orders were entered simultaneously and the first several pages of both Orders are nearly identical, it appears that the two Orders were intended to be interpreted together. In the Severance Order, the trial court concluded: "that given the totality of the circumstances *and the pending interlocutory*

---

[5] A certified copy of XPO's Notice of Appeal is attached as **Exhibit E**.
[6] A certified copy of Defendants' Motion to Stay is attached as **Exhibit F**.
[7] A certified copy of Plaintiff's Motion to Sever is attached as **Exhibit G**.
[8] A certified copy of the Stay Order is attached as **Exhibit H**, and a certified copy of the Severance Order is attached as **Exhibit I**.

*appeal of Defendant XPO*, the claims and causes of action against Defendant XPO and Defendant Lamb should be severed." (Ex. I, Severance Order, p. 7 (emphasis added)) Consequently, Plaintiff's action against Mr. Lamb has been assigned a new Civil Action Number (25CV003758-770), while the suit between Plaintiff and XPO retains the parties' original Civil Action Number (24CVS000468-770).

In the Stay Order, the trial court concluded that Defendants' Motion to Stay "is DENIED," and the "parties may proceed with discovery and trial preparation under the Rules of Civil Procedure." (Ex. H, Stay Order, p. 7) Confusingly, this conclusory denial immediately follows several notable findings of fact, quoted here, wherein the trial court seems to recognize that a stay *is* warranted under N.C. Gen. Stat. § 1-294:

> 35.     The Court recognizes that the portion of the Court's "Order Granting Plaintiff's Second Motion to Compel and Motion for Sanctions" that grants sanctions against Defendant XPO is likely an appealable order.

> 36.     The issue before the Court, therefore, is whether any matter is pending before the Court that is "embraced" by this sanctions order [under N.C. Gen. Stat. § 1-294]. Although Defendants have argued that all other proceedings must be stayed in this case, that is not correct. The Court has reasonably concluded that Plaintiff's Motion to Sever, which was heard with Defendants' stay motion, is not embraced by the sanctions order. The Court also recognizes that further discovery and many or most other pretrial proceedings would not be embraced by the appealed sanctions order. The Court further recognizes that a trial on the claims against Defendant XPO is stayed under section 1-294 due to Defendant XPO's appeal of the sanctions order.

> 37.     This Court takes notice and finds that by consent of the Parties, there currently is no trial date, which allows sufficient time for meaningful discovery and trial preparation pending XPO's interlocutory appeals.

(Ex. H, Stay Order ¶¶ 35-37 (emphasis in original)) In sum, in the Stay Order, the trial court expressly admits that the Sanctions Order *is* immediately appealable, but it is unclear whether the trial court even recognizes that any stay exists under Section 1-294, and if so, the extent of said stay.

To avoid the irrevocable harm that will be caused by severing this action and by the internal inconsistencies and unclear parameters of the Stay Order, Defendants now jointly petition this Court to issue a temporary stay and writ of supersedeas to the Robeson County Superior Court, as specified herein and in the "Conclusion and Request for Relief" section below.

### Argument – Why Writ Should Issue

The governing North Carolina statute, N.C. Gen. Stat. § 1-294, codified a "well-established rule of law," which dictates "that an appeal from a judgment rendered in the Superior Court suspends all further proceedings in the cause in that court, pending the appeal." *Lowder v. All Star Mills, Inc.*, 301 N.C. 561, 580, 273 S.E.2d 247, 258 (1981) (citations and quotation marks omitted). Section 1-294 states:

> When an appeal is perfected as provided by this Article *it stays all further proceedings in the court below* upon the judgment appealed from, *or upon the matter embraced therein*, unless otherwise provided by the Rules of Appellate Procedure; but the court below may proceed upon any other matter included in the action and *not* affected by the judgment appealed from.

N.C. Gen. Stat. § 1-294 (emphasis added).

When a stay authorized by Section 1-294 applies, as here, "the general rule is that a valid appeal from an interlocutory order does generally divest the trial court

of jurisdiction in a matter, at least with respect with to any matter 'embraced' within the order." *Dep't of Transportation v. Hutchinsons, LLC*, 265 N.C. App. 155, 158, 828 S.E.2d 552, 555 (2019) (quoting N.C. Gen. Stat. § 1-294) (emphasis omitted). "Therefore, any order entered by the trial judge after a valid appeal from an interlocutory order . . . has been properly noticed is generally treated as void for want of jurisdiction." *Id.* at 158, 828 S.E.2d at 555-56 (citation omitted). An appeal is considered to be "valid" if the appealed interlocutory order is "immediately appealable, such as those which may affect a substantial right." *See id.* at 158, 828 S.E.2d at 555 (citing N.C. Gen. Stat. § 1-277).

Here, the trial court expressly and correctly recognizes in its Stay Order that the appealed Sanctions Order is immediately appealable. (*See* Ex. H, Stay Order ¶ 35) Because the trial court admits that XPO has initiated a "valid" appeal, Section 1-294's automatic stay should apply. Because of the significant inconsistencies within the Stay Order, however, it is currently uncertain whether the trial court correctly recognizes that Section 1-294's automatic stay applies; if so, the stay's parameters are also unclear. Moreover, even if the current Stay Order can be construed as recognizing a partial stay, Section 1-294 dictates that a global, rather than a partial, stay is necessary and warranted in this matter. Finally, because Section 1-294 automatically triggered a stay after XPO noticed its appeal, the trial court's subsequently entered Severance Order should be vacated for lack of subject matter jurisdiction.

The following addresses: (1) why the Sanctions Order is immediately appealable, (2) why Section 1-294 prescribes a global stay of all trial court proceedings against all parties, and (3) why the Severance Order should be vacated.

## I.  Section 1-294's stay was automatically triggered when XPO noticed its appeal because the Sanctions Order is immediately appealable.

"Appeal may be had from either a final judgment or an interlocutory order which affects a substantial right." *Walker v. Liberty Mut. Ins. Co.*, 84 N.C. App. 552, 554, 353 S.E.2d 425, 426 (1987) (citing N.C. Gen. Stat. § 1-277(a)). This Court has repeatedly recognized that "an order imposing sanctions under Rule 37(b) [of the North Carolina Rules of Civil Procedure] is appealable as a final judgment." *Dunhill Holdings, LLC v. Lindberg*, 282 N.C. App. 36, 53, 870 S.E.2d 636, 652 (2022); *see also Walker*, 84 N.C. App. at 554–55, 353 S.E.2d at 426 (similar). This Court has also concluded that interlocutory orders, which impose Rule 37(b) discovery sanctions, are immediately appealable because they "affect a substantial right." *See Feeassco, LLC v. Steel Network, Inc.*, 264 N.C. App. 327, 331, 826 S.E.2d 202, 206-07 (2019).

The appealed Sanctions Order at issue falls squarely within this Court's precedent governing the appealability of interlocutory orders that enter Rule 37 discovery sanctions. As reflected in its title and body, the Sanctions Order enters discovery-related sanctions, which expressly impute liability onto both XPO and Mr. Lamb and strike several of XPO's asserted defenses, "pursuant to the North Carolina Rules of Civil Procedure, including Rules 26, 37(a), *37(b)(2)*, and 37(d)." (*See* Ex. D, Sanctions Order ¶ 56 (emphasis added)) Therefore, pursuant to this Court's precedent and N.C. Gen. Stat. §§ 1-277(a) and 7A-27(b)(1), (b)(3)(a), the Sanctions Order is

"immediately appealable" on both recognized grounds—as it is a "final judgment" and because it "affects a substantial right."

Indeed, in the Stay Order, the trial court admits "that the portion of [the Sanctions Order] that grants sanctions against Defendant XPO is likely an appealable order." (Ex. H, Stay Order ¶ 35) Stated differently, there is no dispute that the Sanctions Order is "immediately appealable." Therefore, XPO initiated a "valid" appeal, which triggered the automatic stay that is statutorily authorized by Section 1-294. *See Hutchinsons*, 265 N.C. App. at 158, 828 S.E.2d at 555.

However, due to the internal inconsistencies of the Stay Order, it is currently unclear whether the trial court will even recognize a stay under Section 1-294.[9] In the Stay Order, the trial court confusingly concludes that Defendants' Motion to Stay "is DENIED" after listing several findings of fact, which seem to recognize that a stay *is* warranted under Section1-294. (*See* Ex. H, Stay Order, p. 7)

With regard to the severed matter between Plaintiff and Mr. Lamb, the stay Order's supporting findings seem to suggest that all litigation and trial should continue as if XPO's appeal did not exist. (*See id.*) As will be discussed, it is impractical to continue Mr. Lamb's litigation because the issues raised in the pending appeal implicate all three parties equally, and because such an approach is in direct contrast to the purpose of Section 1-294's codified appellate stay.

---

[9] Quoted portions of some of the Stay Order's inconsistent findings are reflected above in the "Factual & Procedural Background" section.

With regard to the severed matter between Plaintiff and XPO, the trial court admits in the Stay Order that it "recognizes that a trial on the claims against Defendant XPO *is stayed* under section 1-294 due to Defendant XPO's appeal of the sanctions order." (Ex. H, Stay Order ¶ 36 (emphasis added)) However, in the sentence immediately prior, the trial court states that it also "recognizes that further discovery and many or most other pretrial proceedings would not be embraced by the appealed sanctions order." (*Id.*) Combined, these two sentences could be interpreted in two ways. On one hand, the Stay Order seems to suggest that any and all further action should cease in the XPO litigation until XPO's appeal has been decided. Alternatively, the Stay Order could be interpreted narrowly to mean that all litigation, including discovery and pre-trial motions, may continue in the XPO action, but trial should not proceed until XPO's appeal has been decided. (*See id.*)

Given the significant internal inconsistencies of the Stay Order, Defendants now respectfully request that this Court make clear that the scope of Section 1-294's automatic stay applies to all parties and causes of action and order the trial court to enforce the stay equally as to all further litigation against both Defendants.

## II. <u>A global stay is necessary and warranted under Section 1-294.</u>

The following will address three related topics: (A) why a global stay is warranted under Section 1-294; (B) why a global stay is necessary to avoid irreparable harm to Defendants; and (C) why Plaintiff's anticipated counterarguments should be rejected as unpersuasive.

### A. A global stay is warranted, under Section 1-294, because the pending appeal challenges the imposition of the dispositive factual issue common to each party's claim, defense, and counterclaim.

"Under Section 1-294, perfecting an appeal stays further proceedings upon the judgment appealed from '*and upon the matters embraced therein.*'" *Davidson v. Knauff Ins. Agency, Inc.*, 93 N.C. App. 20, 25, 376 S.E.2d 488, 491 (1989) (quoting N.C. Gen. Stat. § 1-294) (emphasis added). "This general proposition is based on the following rationale: when *common fact issues* overlap the claim appealed and any remaining claims, delaying the appeal until all claims have been adjudicated creates the possibility the appellant will undergo a second trial of the same fact issues if the appeal is eventually successful. This possibility in turn creates the possibility that a party will be prejudiced by different juries in separate trials rendering inconsistent verdicts on the same factual issue." *Id.* (quotation marks, brackets, and citations omitted; emphasis added). For example, in *Davidson*, this Court importantly explained that the underlying "trial of any remaining factually related claims *is presumably stayed* under Section 1-294," as such a stay would have been necessary to "avert" even "the possibility of two trials of the same factual issues." *See id.* (citations omitted; emphasis added).

Here, a global stay is warranted under Section 1-294 because the primary issue on appeal addresses the dispositive factual issue common to each party's asserted claim, defense, and counterclaim. The plain language of the appealed Sanctions Order seeks, among other things, to strike XPO's contributory negligence defense and impute liability on both XPO and Mr. Lamb. The Sanctions Order does so by dictating

that several assertions should be "established as a fact for all purposes in this Action, including dispositive motions and trial." (*See* Ex. D, Sanctions Order ¶ 56(a)-(f)) In sum, the Sanctions Order dictates that the following facts should be assumed to be true: Mr. Lamb caused the accident on 11 October 2023 by acting in both a negligent and grossly negligent manner, and XPO also independently acted in a negligent and grossly negligent matter by failing to "properly train and supervise employee William Lamb." (*See id.*)

In its pending appeal, XPO challenges the validity of the Sanctions Order and the assumption of these facts. Whether the Sanctions Order's imposition of liability onto Defendants is ultimately upheld will directly affect and relates to all three of Plaintiff's claims, both Defendants' contributory negligence defenses, and XPO's negligence counterclaim.

In her first and second claims, Plaintiff seeks to collect "all available compensatory and punitive damages pursuant to N.C. Gen. Stat. § 28A-18-2(b) [North Carolina's wrongful death statute]," and "[p]ursuant to N.C. Gen. Stat. § 1D-15 [North Carolina's punitive damages statute]." (*See* Ex. A, First Am. Compl. ¶¶ 35, 43) Plaintiff alleges that she is entitled to collect these claimed compensatory and punitive damages equally from both Defendants because Mr. Lamb was "acting as an agent or employee of Defendant XPO Logistics at all relevant times, [so] the negligent, grossly negligent and willful and wanton acts or omissions of Defendant Lamb are imputed to Defendant XPO Logistics by operation of law." (*See id.* ¶ 36) As demonstrated by her own allegations in her First Amended Complaint, Plaintiff fully

understands that XPO can only be held liable if, and only if, Mr. Lamb is found to have negligently caused the accident on 11 October 2023. In other words, there is no dispute that XPO's liability is entirely derivative to a finding that Mr. Lamb is responsible for causing the accident.

This same reasoning applies to Plaintiff's third and final claim of her First Amended Complaint. In her third cause of action, Plaintiff claims that XPO is also independently liable for "all available compensatory and punitive damages" under North Carolina's wrongful death statute because XPO was allegedly negligent in hiring, retaining, training, and providing "ongoing supervision of employe William Bratty Lamb." (*See* Ex. A, First Am. Compl. ¶¶ 45-49) However, in order to hold XPO liable under this claim, Plaintiff must prove, among other things, that Mr. Lamb, XPO's hired employee, actually committed "the specific negligent act on which the action is founded." *See Taft v. Brinley's Grading Servs., Inc.*, 225 N.C. App. 502, 516, 738 S.E.2d 741, 750 (2013) (defining the elements that must be proven to support a "claim for negligent hiring, supervision and retention" in North Carolina). In other words, XPO cannot be found liable under *any* of Plaintiff's three asserted claims, including her separate negligent hiring claim, unless Plaintiff proves, among other things, that Mr. Lamb negligently caused the accident on 11 October 2023.

In response to Plaintiff's First Amended Complaint, both Defendants XPO and Mr. Lamb properly raised contributory negligence affirmative defenses. (*See* Ex. B, XPO's Ans. & Countercl. pp. 7-8; Ex. C, Lamb's Ans. pp. 8-9) "Under North Carolina law, a plaintiff is completely barred from recovering for any injury proximately

caused by the plaintiff's contributory negligence." *Thorpe v. TJM Ocean Isle Partners LLC*, 223 N.C. App. 201, 205, 733 S.E.2d 185, 188 (2012) (citation omitted). Stated differently, even if Mr. Lamb was found liable for causing the accident on 11 October 2023, Plaintiff would be completely barred from recovering under any of her three causes of action, if the jury concludes that Mr. Smith was also at least partially liable for causing the accident.

Finally, XPO independently asserted a counterclaim against Plaintiff, alleging that Mr. Smith's negligence caused the accident on 11 October 2023, wherein "XPO's truck was significantly damaged." (*See* Ex. B, XPO's Ans. & Countercl. pp. 10-11) Under this counterclaim, XPO has an independent burden of proving that Mr. Smith negligently caused the accident on 11 October 2023.

Taken together, the entire underlying action, including Plaintiff's three claims, both Defendants' contributory negligence defenses, and XPO's counterclaim, all raise a shared dispositive question of fact: who caused the accident on 11 October 2023— Mr. Smith, Mr. Lamb, or both? Since XPO challenges the validity of the trial court's purported answer to this exact dispositive question on appeal, all further litigation between Plaintiff, XPO, and Mr. Lamb are "embraced within" XPO's pending appeal. Accordingly, Section 1-294 mandates that a global stay is warranted here until the pending appeal is resolved.

### B. A global stay is also necessary to prevent irreparable harm to Defendants.

As discussed, XPO's appeal will address the validity of the dispositive issue central to every asserted claim, defense, and counterclaim in the underlying trial

court matter. Therefore, it would be a waste of judicial time and resources and an undue burden on the parties if litigation continued at the trial-court level while XPO's valid appeal was pending. Depending on the outcome of this appeal, discovery may need to begin anew, subsequent appeals may be necessary, and new trials may be ordered if litigation continues in the now-severed matters while the appeal is pending. The additional cost and time associated with each of these duplicative efforts can be avoided if a global stay were entered; this is exactly why appellate stays exist. *See Bowden v. Latta*, 337 N.C. 794, 448 S.E.2d 503 (1994) (per curiam) (choosing to address the validity of an interlocutory order that purported to bar evidence of defendants' negligence and plaintiff's contributory negligence, as a matter of "judicial economy," because a "trial on damages" alone would be negated if defendants were permitted to assert and prove contributory negligence).

Most importantly, without a global stay, it is highly likely that inconsistent verdicts will be rendered in direct violation of Defendants' "substantial right" to have the same factual issues "be determined by the same jury." *See Davidson*, 93 N.C. App. at 26, 376 S.E.2d at 491-92 (citation omitted); *see also Taylor v. Brinkman*, 108 N.C. App. 767, 770, 425 S.E.2d 429, 431 (1993) (finding, in a negligent driving action, that a "substantial right" existed "to avoid the possibility of two trials on the same issues" because "identical factual issues are present in both claims" asserted against the driver defendant and vicariously liable defendant).

Inconsistent verdicts are especially likely in this matter because, at the same time that the trial court denied Defendants' request for a global stay, the trial court

also entered the Severance Order. In so doing, the trial court granted Plaintiff's request to circumvent Section 1-294's mandated stay by separating the remaining litigation and trials between each Defendant, whom Plaintiff alleges are jointly and severally liable for the same conduct. The trial court's Severance Order flies in the face of Defendants' substantial right to have the same factual issues be determined by the same jury. Without this Court's intervention now to enter a global stay and vacate the Severance Order (as will be discussed further below), inconsistent verdicts are all but guaranteed to occur in the now severed trials for several reasons.

First and foremost, XPO's liability for each of Plaintiff's asserted claims is derivative and entirely dependent on a finding that Mr. Lamb solely caused the accident on 11 October 2023. Therefore, separating Plaintiff's nearly identical wrongful death claims against Defendants XPO and Mr. Lamb, whom Plaintiff alleges are jointly and severally liable for both compensatory and punitive damages, into two trials will create dozens of possibilities for inconsistent verdicts. See below chart for examples of some of these possible inconsistent verdicts.

Additionally, inconsistent verdicts are also more likely in this matter because both Defendants properly asserted contributory negligence affirmative defenses. For example, even if only Mr. Lamb is permitted to raise this defense at trial, inconsistent verdicts would arise if even one jury concludes that Plaintiff is completely barred from recovery because Mr. Smith was contributorily negligent. *See, e.g., Hoots v. Pryor,* 106 N.C. App. 397, 402, 417 S.E.2d 269, 273 (1992) (finding that an interlocutory order dismissing two of the three defendants in a negligent driving matter affected a

substantial right because "dismissal now would raise the possibility of inconsistent verdicts in later proceedings" if the plaintiff was found to be contributorily negligent).

Finally, inconsistent verdicts are even more likely in this matter because North Carolina's wrongful death statute, N.C. Gen. Stat. § 28A-18-2, permits several types of damages, but only if Plaintiff is able to satisfy the statute's heightened burden of proof. *See DiDonato v. Wortman*, 320 N.C. 423, 431, 358 S.E.2d 489, 493 (1987) (explaining that damages awarded under Section 28A-18-2 "must be proved to a reasonable level of certainty, and may not be based on pure conjecture" (citations and quotation marks omitted)). Therefore, here, even if all odds are defied and consistent verdicts were rendered between the separate trials as to Mr. Lamb's liability and XPO's derivative liability, inconsistent verdicts are still likely to result as to the amount, if any, of damages actually awarded.

Taken together, the likelihood of inconsistent verdicts is exceptionally high in this case, especially in light of the trial court's denial of Defendants' request for a global stay and simultaneous grant of Plaintiff's responding request for severed trials. By intervening now to enter the global stay prescribed by Section 1-294 and vacate the Severance Order, this Court can remedy the trial court's direct violation of Defendants' substantial right to have the same jury determine the same factual issues. In so doing, the parties and the trial court will also be relieved of the undue burden and costs associated with the need for duplicative litigation, new trials, and subsequent appeals, which would likely be necessary if litigation were permitted to continue while XPO's valid appeal was pending. Section 1-294's appellate stay exists

to avoid and prevent the exact situation that the trial court has now created in the underlying litigation.

### C. Plaintiff's anticipated arguments, opposing a global stay, should be rejected as unpersuasive.

In opposition of Defendants' request for a global stay, Plaintiff seems to argue that (1) she will be prejudiced by a global stay, so Plaintiff should be able to proceed with litigation and trial against Mr. Lamb while XPO's appeal is pending because (2) the Stay Order attempts to clarify that the appealed Sanctions Order does not apply to Mr. Lamb, and (3) Mr. Lamb did not jointly appeal from the Sanctions Order. Each counterargument is without merit and will be addressed briefly in turn.

First and foremost, a global stay does not prejudice Plaintiff. A global stay is statutorily authorized under Section 1-294; it is the legal system operating exactly as it is designed, to ensure certainty for all parties. Additionally, as highlighted in the trial court's Stay Order, "by consent of the Parties, there is currently no trial date, which allows sufficient time for meaningful discovery and trial preparation pending XPO's interlocutory appeals." (Ex. E, Stay Order ¶ 37 (emphasis in original)) Accordingly, there is no pressing need for the underlying litigation to move forward while XPO's appeal is pending. Plaintiff is not prejudiced by the operation of law, and the trial has not been delayed by XPO's appeal.

Second, any further clarifications noted in the trial court's subsequent Stay Order do not rectify the fatal flaws inherent in the appealed Sanctions Order. In the Stay Order, which Plaintiff drafted and the trial court executed without revisions, the trial court attempts to clarify that the Sanctions Order, "including [the] sanctions

entered pursuant to Rule 37(b), do <u>not</u> apply to Defendant Lamb." (Ex. H, Stay Order ¶ 18 (emphasis in original)) This attempt at clarification by both Plaintiff and the trial court only amplifies the issues with the Sanctions Order as written and bolsters the validity of XPO's appeal.

The plain language of the Sanctions Order directly violates Mr. Lamb's due process rights as it purports to establish Mr. Lamb's liability as a fact under Rule 37, even though Mr. Lamb was never accused of any discovery violations, was never the subject of any discovery dispute or motion to compel, and was never notified that he may be subject to discovery sanctions. *See OSI Rest. Partners, LLC v. Oscoda Plastics, Inc.*, 266 N.C. App. 310, 315, 831 S.E.2d 386, 390 (2019) ("In order for a trial court to impose [Rule 37] sanctions against a party, the Due Process Clause requires that the party was first afforded the right to notice both (1) of the fact that sanctions may be imposed, and (2) the alleged grounds for the imposition of sanctions." (citation and quotation marks omitted)). The trial court's subsequently entered Stay Order cannot circumvent the clear notice requirements prescribed in *OSI*; nor can it rectify the significant due process violation committed against Mr. Lamb when sanctions were entered against him without affording him *any* prior notice or an opportunity to defend himself.

Finally, despite Plaintiff's contentions to the contrary, it is irrelevant that only XPO initiated the pending appeal. Only XPO appealed because Plaintiff's Motion for Sanctions was only asserted against XPO, and therefore, as demonstrated by its title, the corresponding Sanctions Order was directed to XPO. However, the substantive

content and effect of the Sanctions Order directly impacts both XPO *and* Mr. Lamb. By its own language, the Sanctions Order seems to acknowledge that the liability issues between Mr. Lamb and XPO are so inextricably linked that they cannot be separated; XPO simply could not be found liable in this matter without an underlying finding that Mr. Lamb was also liable. Therefore, regardless of whether Mr. Lamb joined XPO's Notice of Appeal or not, the outcome of XPO's pending appeal will directly affect all three parties.

In sum, the question of Mr. Lamb's individual liability is too inextricably intertwined with XPO's pending appeal for Plaintiff to proceed with litigation and trial against Mr. Lamb while XPO's appeal is pending. Plaintiff's arguments to the contrary are unpersuasive.

## III. The Severance Order should be vacated.

The Severance Order should be vacated for lack of subject matter jurisdiction, as the Severance Order (A) is "embraced within" the pending appeal, pursuant to Section 1-294; (B) does not fall within the recognized exceptions; (C) was entered in an attempt to circumvent the statutorily authorized stay of XPO's lawful appeal; and (D) significantly prejudices Defendants by guaranteeing at least two separate trials on the same set of facts and, thereby, increasing the already high likelihood that inconsistent verdicts will be rendered even more.

### A. The Severance Order should be vacated because Section 1-294 dictates that the trial court lacked subject matter jurisdiction to enter it.

"Whether a trial court has subject-matter jurisdiction is a question of law, reviewed de novo on appeal." *Crowell v. Crowell*, 290 N.C. App. 1, 7–8, 891 S.E.2d 468, 472 (2023) (citation and quotation marks omitted).

The North Carolina Supreme Court has long held that "an appeal takes a case out of the jurisdiction of the trial court. Thereafter, pending the appeal, the judge is *functus officio*." *Am. Floor Mach. Co. v. Dixon*, 260 N.C. 732, 735, 133 S.E.2d 659, 662 (1963). "The principle behind the common law doctrine of *functus officio*," which was later codified by N.C. Gen. Stat. § 1-294, "stems from the general rule that two courts cannot ordinarily have jurisdiction of the same case at the same time." *SED Holdings, LLC v. 3 Star Props., LLC*, 250 N.C. App. 215, 219–20, 791 S.E.2d 914, 918 (2016) (citation and quotation marks omitted).

Section 1-294 dictates that "[w]hen a party gives notice of appeal from an appealable order, the trial court is divested of jurisdiction and the related proceedings are stayed in the lower court." *See Jessey Sports, LLC v. Intercollegiate Men's Lacrosse Coaches Ass'n, Inc.*, 294 N.C. App. 562, 569, 904 S.E.2d 161, 167 (2024) (citations and quotation marks omitted). Therefore, in general, "any proceedings in the trial court after the notice of appeal *are void* for lack of jurisdiction." *Romulus v. Romulus*, 216 N.C. App. 28, 33, 715 S.E.2d 889, 892 (2011) (citation omitted; emphasis added). Stated differently, "the trial court's jurisdiction is removed and it may not proceed on any matters embraced by the order" **if** (1) "a party appeals from an interlocutory order that is immediately appealable," *SED Holdings*, 250 N.C. App. at 220, 791 S.E.2d at 919 (citations and quotation marks omitted), **and when** (2) the Notice of Appeal is

filed, *see Romulus*, 216 N.C. App. at 33, 715 S.E.2d at 892 (explaining that an "appeal is not 'perfected' [per Section 1-294] until it is docketed in the appellate court, but when it is docketed, the perfection relates back to the time of notice of appeal" (citation omitted)).

Here, the trial court lacked subject matter jurisdiction to enter the Severance Order because the Severance Order was entered after XPO filed its Notice of Appeal and is "embraced within" XPO's pending appeal. XPO filed its Notice of Appeal on 22 May 2025, and the trial court entered its Severance Order on 9 July 2025—seven weeks after XPO initiated its appeal. Plaintiff admitted in her own filings that she is seeking severance, so "Plaintiff can continue to prosecute this case as to Defendant Lamb," while XPO's appeal is pending. (*See* Ex. G, Pl.'s Mot. to Sever ¶ 25; *see also id.* ¶¶ 18-24, 26, 29-33 (reiterating the same)). By its own terms, the Severance Order, which was drafted by Plaintiff and entered by the trial court without revision, appears to concede that the main factor the trial court considered when severing the actions was the pending appeal. For example, the Severance Order states its ultimate conclusion as follows: "[G]iven the totality of the circumstances *and the pending interlocutory appeal of Defendant XPO*, the claims and causes of action against Defendant XPO and Defendant Lamb should be severed." (Ex. I, Severance Order, p. 7 (emphasis added)) It is inapposite for Plaintiff to now contend that the Severance Order is distinguishable enough from the pending appeal to support a finding that the Severance Order lies outside the purview of Section 1-294's automatic stay.

**B. None of the recognized exceptions apply, which would otherwise allow the trial court to retain jurisdiction to enter the Severance Order.**

This Court appears to recognize two exceptions to the general rule that the trial court is divested of subject matter jurisdiction pending appeal. These exceptions permit the trial court to act, under limited circumstances, after an appeal has been initiated. First, "even when a party has noted an appeal, the trial court retains jurisdiction to take action *which aids the appeal*, and to hear motions and grant orders, when those matters are 'not affected by the judgment appealed from.'" *SED Holdings*, 250 N.C. App. at 220, 791 S.E.2d at 919 (quoting N.C. Gen. Stat. 1-294) (additional quotation marks, ellipses, and citations omitted; emphasis added). Second, "a trial court's orders entered following a validly noticed appeal of an interlocutory order may still be valid if (1) the trial court continued to exercise jurisdiction under a *reasonable belief* that the interlocutory order was not immediately appealable *and (2) the appealing party was not prejudiced* by the trial court's continued exercise of jurisdiction." *Hutchinsons*, 265 N.C. App. at 158, 828 S.E.2d at 556 (citations and original emphasis omitted; emphasis added).

The Severance Order should be vacated because neither of the two recognized exceptions apply to justify its entry. As previously discussed, clear precedent dictates that the Sanctions Order is immediately appealable. Indeed, the trial court even admits "that the portion of [the Sanctions Order] that grants sanctions against Defendant XPO is likely an appealable order." (Ex. H, Stay Order ¶ 35) Therefore, there can be no argument that the trial court was "under a reasonable belief that the

interlocutory order was not immediately appealable." *See Hutchinsons*, 265 N.C. App. at 158, 828 S.E.2d at 556 (citations omitted). Additionally, the Severance Order cannot be seen as the trial court's attempt to "aid the appeal"—if anything, it complicates the appeal. *See SED Holdings*, 250 N.C. App. at 220, 791 S.E.2d at 919. Rather, as will be discussed further below, the Severance Order will cause irreparable harm if it is not vacated. The Severance Order unnecessarily complicates the underlying trial court matter and pending appeal, flies in the face of judicial economy principles, unduly burdens the parties with additional costs and duplicative litigation, and prejudices Defendants by effectively guaranteeing that inconsistent verdicts will be rendered by separate juries tasked with analyzing the same evidence and factual issues.

        **C.    The Severance Order should be vacated, based on N.C. Supreme Court precedent in *Wiggins*, because it was entered in retaliation of XPO's lawfully pending appeal.**

The Severance Order should also be vacated based on the precedent set by the North Carolina Supreme Court in *Wiggins v. Bunch*, 280 N.C. 106, 184 S.E.2d 879 (1971). In *Wiggins,* the trial court entered a final judgment after it "allowed defendants' motion to dismiss at the close of plaintiff's evidence" during the parties' bench trial. *Id.* at 107, 184 S.E.2d at 879. The plaintiff timely noticed their appeal from this final judgment. *Id.* Nearly two months after the final judgment was entered, the plaintiff moved to set aside the judgment, "on the grounds of newly discovered evidence." *Id.* The trial court entered its post-trial order, granting plaintiff's request for a new trial; thereby, rendering plaintiff's appeal from the final judgment of the

original trial moot. *See id.* Upon appeal of one of the defendants, the North Carolina Supreme Court vacated the post-trial order. *See id.* at 111, 184 S.E.2d at 882. The *Wiggins* Court reasoned that this post-trial order was entered weeks after the plaintiff noticed his appeal from the final judgment, and therefore, "after the trial court was divested of jurisdiction." *See id.* at 107, 111, 184 S.E.2d at 879, 882. In so holding, the *Wiggins* Court prevented the trial court from acting in a manner that was intended to circumvent and render the lawfully filed appeal moot, even though the same party both noticed the appeal and subsequently moved for the trial court to enter the post-trial order to negate the need for his own pending appeal.

Similar to the plaintiff who filed a motion that was intended to render the pending appeal moot in *Wiggins*, here, Plaintiff expressly admits in her Motion to Sever, and the Severance Order reiterates, that Plaintiff requested severance solely to circumvent Section 1-294's automatic stay and the implications of XPO's lawfully filed appeal. Therefore, just as the North Carolina Supreme Court vacated the post-trial order to protect the lawfully pending appeal in *Wiggins*, this Court should similarly vacate the Severance Order to prevent the trial court and Plaintiff's attempts to further punish Defendants and undermine the pending appeal.

> **D.** **The Severance Order should be vacated as it significantly prejudices Defendants by requiring that two separate juries assess the same evidence and factual issues.**

The Severance Order should be vacated because regardless of the outcome of XPO's pending appeal, the Severance Order irreparably harms Defendants by directly violating their "substantial right" to have the same factual issues "be

determined by the same jury." *See Davidson*, 93 N.C. App. at 26, 376 S.E.2d at 491-92 (citation omitted). Absent this Court's intervention now, Plaintiff's nearly identical wrongful death claims against XPO and Mr. Lamb will be tried by two different juries. Both juries will be presented with nearly identical evidence and tasked with answering the same series of questions to assess whether Mr. Lamb, Mr. Smith, or both drivers negligently caused the accident on 11 October 2023. It is highly likely that different juries will come to different conclusions about some or all of the same issues, as it is impossible to present the same evidence in the exact same manner twice and different people can perceive the same information differently.

Therefore, as a general rule, separating the trials between the alleged tortfeasor and his vicariously liable employer significantly increases the likelihood that inconsistent verdicts will be rendered by the two different juries. As previously discussed, inconsistent verdicts are even more likely in vicarious liability matters like this one, when multiple defendants have asserted contributory negligence defenses in a North Carolina wrongful death case, given the variety of statutorily authorized damages available and the different evidentiary burdens applicable to each. Taken together, all of these factors make it nearly impossible that *consistent* verdicts will be rendered here from the severed jury trials.

To illustrate, the following chart reflects just *some* examples of the numerous possible inconsistent verdicts that could be rendered in this matter if the Severance Order is not vacated. Importantly, this chart assumes, for the sake of argument, that this Court will grant Defendants' request for a global stay, so the chart does not even

take into account all of the additional possibilities created if litigation and trial were permitted to proceed while XPO's appeal was pending. This chart also only addresses some of the potential outcomes of the near identical wrongful death claims that Plaintiff asserted against Defendants, so it does not take into account Plaintiff's related negligent hiring claim against XPO or XPO's negligence counterclaim. Finally, this chart does not take into account the infinite number of different damages calculations that each potential jury could award for the same alleged conduct, especially in light of the variety of damages available under North Carolina's wrongful death statute.

| *Some* of Mr. Lamb's Possible Outcomes | *Some* of XPO's Possible Outcomes |
|---|---|
| **If the Sanctions Order is vacated on appeal, but the matters remain severed (*i.e.* the Severance Order is not vacated):** ||
| Lamb is liable for negligence and gross negligence; jury rejects Lamb's contributory negligence defense<br>➜ Lamb owes compensatory and punitive damages | Lamb is liable for negligence and gross negligence; XPO is vicariously liable; jury rejects XPO's contributory negligence defense<br>➜ XPO owes compensatory and punitive damages |
| Lamb is liable for negligence, but not gross negligence; jury rejects Lamb's contributory negligence defense<br>➜ Lamb owes compensatory damages | Lamb is liable for negligence, but not gross negligence; XPO is vicariously liable; jury rejects XPO's contributory negligence defense<br>➜ XPO owes compensatory damages |
| Lamb is liable for negligence or gross negligence; jury also finds Mr. Smith liable for contributory negligence, which completely bars Plaintiff's recovery<br>➜ Lamb owes $0 | Lamb is liable for negligence or gross negligence; XPO would be vicariously liable, but jury also finds Mr. Smith liable for contributory negligence, which completely bars Plaintiff's recovery<br>➜ XPO owes $0 |

| Lamb is not liable because Plaintiff failed to prove her case; jury does not address Lamb's contributory negligence defense<br>   ➔ Lamb owes $0 | Lamb is not liable because Plaintiff failed to prove her case; jury does not address XPO's contributory negligence defense<br>   ➔ XPO owes $0 |
| --- | --- |
| **If the <u>Sanctions Order is affirmed</u> on appeal, and the matters remain severed (*i.e.* the Severance Order is not vacated):** | |
| Lamb is liable for negligence and gross negligence as a matter of law; jury rejects Lamb's contributory negligence defense<br>   ➔ Lamb owes compensatory and<br>      punitive damages<br><br>Lamb is liable for negligence and gross negligence as a matter of law; jury also finds Mr. Smith liable for contributory negligence, which completely bars Plaintiff's recovery<br>   ➔ Lamb owes $0 | XPO is vicariously liable for Lamb's negligence and gross negligence, as a matter of law; XPO's contributory negligence defense is stricken<br>   ➔ XPO owes compensatory and<br>      punitive damages |

In sum, Section 1-294 dictates that the trial court lacked subject matter jurisdiction to enter the Severance Order. By its own terms, the Severance Order directly relates to the pending appeal, recognizes that the Sanctions Order is immediately appealable, and was entered to circumvent the statutorily authorized stay. Additionally, Defendants are significantly prejudiced by the exceptionally high likelihood that inconsistent verdicts will be rendered when the same evidence and factual issues are presented to two separate juries. Accordingly, Defendants respectfully request for this Court to vacate the Severance Order.

## Motion for Temporary Stay

In addition to their Petition for Writ of Supersedeas, which is incorporated by reference herein, Defendants respectfully request for this Court to enter an order temporarily staying all trial court proceedings in both of the now-severed matters,[10] until this Court determines whether it shall issue the requested Writ of Supersedeas and vacate the Severance Order. In support of this request, Defendants show:

1. An immediate stay will not prejudice Plaintiff.

   a. As highlighted in the trial court's Stay Order, "by consent of the Parties, there is currently no trial date, which allows sufficient time for meaningful discovery and trial preparation pending XPO's interlocutory appeals." (Ex. E, Stay Order ¶ 37 (emphasis in original))

   b. Accordingly, there is no pressing need for the underlying litigation to move forward while XPO's appeal is pending.

2. Conversely, Defendants will be irreparably harmed without this global stay and immediate direction from this Court.

   a. Without this Court's timely intervention, Defendants anticipate that Plaintiff will seek to take advantage of the vague language of the Stay Order and proceed with all aspects of litigation, discovery, and trial against both Defendants, as if the pending appeal didn't exist. Indeed, Plaintiff has already requested to take Mr. Lamb's deposition in the

---

[10] Plaintiff's action against Mr. Lamb was assigned a new Civil Action Number (25CV003758-770), while the suit between Plaintiff and XPO retains the parties' original Civil Action Number (24CVS000468-770).

severed case. Mr. Lamb runs the risk of being deposed twice on the same set of facts in two different cases if an immediate stay is not entered in both cases while this Court considers Defendants' Petition.

b. As previously discussed, the pending appeal seeks to challenge the validity of the trial court's attempt to impute liability onto both Defendants and strike XPO's contributory negligence defense. Liability is the heart of every claim, counterclaim, and defense asserted here.

c. Accordingly, the result of this pending appeal will significantly affect both Defendants' *entire* litigation strategy, including but not limited to, who they chose to depose, what additional written discovery requests they serve, what dispositive and pre-trial motions they make, which evidence they move to exclude before trial, and what issues and evidence they actually present at trial.

d. Continued litigation, while XPO's appeal is pending, would be a waste of judicial time and resources and will unduly burden the parties with duplicative litigation and potential new trials and subsequent appeals.

3. Finally, a temporary stay is immediately necessary to prevent further confusion and complications that are expected to arise if full litigation continues in the now separated matters.

a. As of the date of this filing, the Severance Order has already been enforced, and separate Civil Action Numbers have been assigned to each Defendant at the trial-court level. Therefore, if this Court later decides

        to vacate the Severance Order and rejoin the parties, then rejoining may prove to be even more complex if a variety of court filings and discovery have been served in the now separated matters in the interim.

b.      Additionally, as previously discussed, the Severance Order all but guarantees that inconsistent verdicts will be rendered as to the nearly identical wrongful death claims that Plaintiff asserted against both Defendants. All this prejudice to Defendants can be avoided if a global stay is entered, however, with no actual prejudice to Plaintiff.

4.      Pursuant to N.C. Appellate Rule 37(c), Defendants' counsel notified Plaintiff's counsel of their intent to file this Petition for Writ of Supersedeas and Motion to Stay via email on 10 July 2025. Plaintiff's counsel, William Owen, replied the same day and requested that Defendants quote his response as follows: "Plaintiff opposes any request for supersedeas relief or a temporary stay. Before the Court rules on any request for a temporary stay, Plaintiff requests an opportunity to respond."

WHEREFORE, Defendants respectfully request for this Court to enter an order temporarily staying all trial court proceedings in both of the now-severed matters. This temporary stay order should freeze all further litigation including, but not limited to, the enforcement of the Sanctions Order and the Plaintiff's pending request for Mr. Lamb's deposition, until this Court determines whether it shall issue Defendants' requested Writ of Supersedeas and vacate the Severance Order.

## Conclusion and Requested Relief

To avoid the irrevocable harm that will be caused by severing this action and the unclear parameters of the Stay Order, Defendants jointly petition this Court to issue a temporary stay and writ of supersedeas to the Robeson County Superior Court, which stays all further proceedings, between *all* parties, in both underlying trial court matters, pending the appeal outcome. Defendants further request for this Court to specify that this global stay will retroactively become effective on 22 May 2025—*i.e.,* the day XPO noticed its appeal—pursuant to Section 1-294. Thereby, the subsequently entered Severance Order should be vacated for lack of subject matter jurisdiction, and the trials between Defendants should be rejoined.

Assuming, for the sake of argument, that this Court does not agree that a global stay of all further trial court proceedings is warranted, Defendants alternatively petition this Court to issue a temporary stay and writ of supersedeas, which stays the enforcement of the Sanctions Order and sets clear parameters regarding which, if any, litigation activities may continue in both matters at the trial-court level while the appeal is pending.

This the 10th day of July, 2025.

**GORDON REES SCULLY
MANSUKHANI, LLP**

By: _____

Caitlin A. Mitchell
N.C. State Bar No. 53050
camitchell@grsm.com

N.C. R. App. P. 33(b) Certification: I certify
that all of the attorneys listed below have
authorized me to list their names on this
document as if they had personally signed it.

Allison J. Becker
N.C. State Bar No. 41993
abecker@grsm.com
150 Fayetteville Street, Suite 1120
Raleigh, North Carolina 27601
Telephone: (919) 787-4555
Fax: (919) 741-5840
*Attorneys for Defendant-Appellant
XPO Logistics Freight, Inc.*

## Attachments

Attached to this Petition for Writ of Supersedeas and Motion for Temporary Stay are certified copies of the following trial court filings (in chronological order), which were filed in the above-captioned matter (24CVS000468-770):

| | |
|---|---|
| **Exhibit A.** | Certified copy of **Plaintiff's First Amended Complaint** (filed 22 February 2024) |
| **Exhibit B.** | Certified copy of **XPO's Answer and Counterclaim** (entitled "Answer, Defenses, and Counterclaim of XPO Logistics Freight, Inc. to First Amended Complaint"; filed 25 March 2024) |
| **Exhibit C.** | Certified copy of **Mr. Lamb's Answer** (entitled "Answer and Defenses of William Bratty Lamb to First Amended Complaint"; filed 27 March 2024) |
| **Exhibit D.** | Certified copy of the **Sanctions Order** (entitled "Order Granting Plaintiff's Motion for Sanctions and Second Motion to Compel Against Defendant XPO Logistics Freight, Inc."; filed 25 April 2025) |
| **Exhibit E.** | Certified copy of **XPO's Notice of Appeal** (entitled, "Defendant XPO Logistics Freight, Inc.'s Notice of Appeal"; filed 22 May 2025) |
| **Exhibit F.** | Certified copy of **Defendants' Motion to Stay** (entitled, "Defendants XPO Logistics Freight, Inc. and William Bratty Lamb's Motion to Stay All Proceedings Pending the Outcome of the Appeal"; filed 30 May 2025) |
| **Exhibit G.** | Certified copy of **Plaintiff's Motion to Sever** (filed 5 June 2025) |
| **Exhibit H.** | Certified copy of the **Stay Order** (entitled, "Order Denying Defendant XPO Logistics Freight, Inc. and Defendant William Bratty Lamb's Motion to Stay All Proceedings Pending Appeal," entered 9 July 2025) |
| **Exhibit I.** | Certified copy of the **Severance Order** (entitled, "Order Granting Plaintiff's Motion to Sever," entered 9 July 2025) |

## Verification

The undersigned counsel for petitioner, after being duly sworn, attests:

    1.    The contents of the foregoing Petition for Writ of Supersedeas and Motion for Temporary Stay are true to my knowledge, except those matters stated upon information and belief, and, as to those matters, I believe them to be true.

    2.    Pursuant to Rule 23 of the North Carolina Rules of Appellate Procedure, I also hereby certify that the documents attached to this Petition for Writ of Supersedeas and Motion for Temporary Stay are true, correct, and certified copies of the documents filed in the Robeson County Superior Court in the above-captioned matter. Each attached exhibit was provided to me by the Clerk of Robeson County Superior Court upon request to receive certified copies of the same.

Caitlin A. Mitchell
*Attorney for Defendant William Bratty Lamb and Defendant-Appellant XPO Logistics Freight, Inc.*

STATE OF NORTH CAROLINA
COUNTY OF WAKE

Sworn to and subscribed before me
by Caitlin A. Mitchell
Date: 7/18/2025
Notary Public, _____

My Commission expires: _____ My Commission Expires 10-24-2027

LAUREN J TUCKER
NOTARY PUBLIC
WAKE COUNTY, NC

I signed the notarial certificate on 18 July 2025, according to the emergency video notarization requirements contained in N.C.G.S. 10B-25. I was located in Wake County, North Carolina, during the emergency video notarization. Caitlin A. Mitchell was physically located in Cumberland County, North Carolina.

## Certificate of Compliance with Word-Count Limit

Pursuant to Rule 28(j) of the North Carolina Rules of Appellate Procedure, the undersigned counsel certifies that, combined, the Petition for Writ of Supersedeas and Motion for Temporary Stay, which were prepared using a 12-point proportionally spaced font with serifs, is less than 8,750 words, as reported by the word-processing software, including footnotes and citations but excluding covers, captions, indexes, tables of authorities, and counsel's signature blocks, verifications, and certificates.

Caitlin A. Mitchell
*Attorney for Defendant William Bratty Lamb and Defendant-Appellant XPO Logistics Freight, Inc.*

## Certificate of Service

The undersigned attorney hereby certifies that a copy of the foregoing **Petition for Writ of Supersedeas and Motion for Temporary Stay** was served on the following parties to this action on this day by email, addressed to:

J. William Owen
Musselwhite, Musselwhite, Branch &
Grantham, P.A.
PO Box 1448
Lumberton, NC 28359
wowen@mmbhlaw.com
*Counsel fort Plaintiff-Appellee*

Jennifer Welch
Cranfill Sumner
PO Box 27808
Raleigh, NC 27611-7808
jwelch@cshlaw.com
*Counsel for Counterclaim-Defendant
Cindy Smith, Administratrix of the
Estate of Mark K. Smith*

This the 10th day of July, 2025.

**GORDON REES SCULLY
MANSUKHANI, LLP**

By: _____
Caitlin A. Mitchell
N.C. State Bar No. 53050
camitchell@grsm.com

N.C. R. App. P. 33(b) Certification: I certify that all of the attorneys listed below have authorized me to list their names on this document as if they had personally signed it.

Allison J. Becker
N.C. State Bar No. 41993
abecker@grsm.com
150 Fayetteville Street, Suite 1120
Raleigh, North Carolina 27601
Telephone: (919) 787-4555
Fax: (919) 741-5840
*Attorneys for Defendant William Bratty
Lamb and Defendant-Appellant XPO
Logistics Freight, Inc.*

# EXHIBIT A

STATE OF NORTH CAROLINA

COUNTY OF ROBESON

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
24 CVS 468

2024 FEB 22 P 3:21

ROBESON CO., C.S.C.

BY _____

CINDY SOLES SMITH, Administratrix of the
ESTATE OF MARK KEANNAN SMITH

          Plaintiff,

v.

WILLIAM BRATTY LAMB
XPO LOGISTICS FREIGHT, INC.

          Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

## FIRST AMENDED COMPLAINT

**(Jury Trial Demanded)**

NOW COMES Plaintiff CINDY SOLES SMITH, and hereby amends her Complaint, as a matter of course, pursuant to Rule 15(a) of the North Carolina Rules of Civil Procedure, acting in her fiduciary capacity as the Administratrix of the Estate of MARK KEANNAN SMITH, complaining of Defendants WILLIAM BRATTY LAMB and XPO LOGISTICS FREIGHT, INC. and alleges as follows:

### PARTIES AND JURISDICTION

1.    Plaintiff **Cindy Soles Smith** (hereafter, "Plaintiff") has applied for, and has been duly appointed as, Administratrix of the Estate of Mark Keannan Smith by the Brunswick County Clerk of Superior Court.

2.    Plaintiff is a citizen and resident of Brunswick County, North Carolina.

3.    Acting in her fiduciary capacity, Plaintiff files this wrongful death action pursuant to Chapter 28A of the General Statutes of North Carolina, including section 28A-18-2, within two years of the date of death of her husband, Mark Keannan Smith.

4. Upon information and belief, Defendant **William Bratty Lamb** (hereafter, "Defendant Lamb") is a citizen and resident of Robeson County, North Carolina, residing at 557 Emma Jane Rd. St. Pauls, North Carolina 28384.

5. Defendant **XPO Logistics Freight, Inc.** (hereafter, "XPO Logistics") is a Delaware corporation with its principal office located at 2211 Old Earhart Rd. Ann Arbor, MI 48105. At all relevant times, Defendant XPO Logistics maintained a registered office in the State of North Carolina and can be served through its registered agent, Registered Agent Solutions, Inc. located at 176 Mine Lake Court, Ste. 100 Raleigh, North Carolina 27615.

6. Venue is proper in Robeson County Superior Court pursuant to G.S. § 1-82.

7. This Court has subject matter jurisdiction over this civil action in that the amount in controversy exceeds the sum of Twenty-Five Thousand Dollars ($25,000.00) pursuant to G.S. § 7A-243.

8. This Court likewise has personal jurisdiction over the Defendants under both statutory and common law.

## STATEMENT OF THE FACTS

9. Paragraphs 1 through 8 of the First Amended Complaint are incorporated herein by reference.

10. On information and belief, on or about October 11, 2023 at approximately 7:00am, Defendant Lamb was acting as an employee or agent of XPO Logistics Freight, Inc. and within the course and scope of his employment with XPO Logistics Freight, Inc.

11. XPO Logistics Freight, Inc. is a wholly owned subsidiary of XPO, Inc., formally known as XPO Logistics, Inc.

2

12.     XPO, Inc. maintains approximately 145 subsidiaries, many of which are incorporated in the State of Delaware.

13.     XPO, Inc. is the second largest provider of less-than-truckload (LTL) services in North America with 564 locations globally. "LTL" is a freight model which involves shipping smaller quantities of goods for multiple customers at a time.

14.     XPO Logistics Freight, Inc. is a corporation organized under the laws of the State of Delaware with its headquarters located at 2211 Old Earhart Rd. Ann Arbor, Michigan 48105.

15.     XPO Logistics Freight, Inc. engages in substantial business operations in Robeson County, North Carolina, which includes a large shipping terminal located at 4715 W. 5th Street Lumberton, NC 28358.

16.     At the date and time above stated, Defendant Lamb was operating a 2016 Freightliner tractor that was owned by XPO Logistics Freight, Inc. and being operated under U.S. DOT No. 241829.

17.     The 2016 Freightliner was a commercial motor vehicle and was being operated in commerce at the time of the subject collision referenced below. As a result, the subject 2016 Freightliner was subject to North Carolina and federal laws and regulations concerning the operation of the commercial vehicle, including that the commercial vehicle must be operated under the motor carrier authority of one or more motor carriers authorized under the Federal Motor Carrier Administration pursuant to Title 40 of the Code of Federal Regulations.

18.     Upon information and belief, XPO Logistics Freight, Inc. maintained operating authority for commercial motor vehicles with the United States Department of Transportation (US DOT # 241829) at all times relevant herein for the 2016 Freightliner being operated by Defendant William Bratty Lamb.

3

19. Upon information and belief, in the early morning hours of October 11, 2023, Defendant Lamb departed XPO Logistics Freight, Inc.'s terminal located at 4715 W. 5th Street Lumberton, NC 28358 and traveled south on W. 5th Street Extension towards the intersection of US-74 Alternate carrying multiple items of freight in an LTL transport.

20. At all relevant times herein, Defendant Lamb was acting within the course and scope of his employment with XPO Logistics Freight, Inc. and was acting as an employee, agent and/or servant of XPO Logistics Freight when the collision referenced herein occurred.

21. On or about October 11, 2023 at approximately 7:00am, Mark Keannan Smith (hereafter, "Mark Smith" or "Decedent") was operating a 2018 Chevrolet pickup truck that was owned by his employer, National Erectors Rebar, Inc.

22. Upon information and belief, it was still dark when the collision occurred and the sun was starting to rise and all vehicular traffic in the area had their headlights activated due to the darkness.

23. At the time and date above stated, Mark Smith was traveling west on US-74 Alternate and was traveling in the left lane.

24. At the time and date above stated, Defendant Lamb was sitting still at the stop sign at the intersection of US-74 Alternate and W. 5th Street Extension in Robeson County, NC and Defendant Lamb admitted that he looked to his left and saw Mark Smith's vehicle approaching with his headlights on prior to Defendant Lamb wantonly and heedlessly proceeding into the subject highway and intersection directly in front of Mark Smith.

25. At the time and date above stated, Defendant Lamb also admitted that he observed a school bus to his right along with another passenger vehicle to his right that was behind the subject school bus.

4

26.     Both observations, admitted by Defendant Lamb, and described above were made *prior* to Defendant Lamb wantonly and heedlessly pulling out into the highway and blocking all westbound lanes of travel on US Highway 74 Alternate with his tractor and trailer.

27.     At the time and date above stated, notwithstanding the foregoing admitted observations of Defendant Lamb, Defendant Lamb willfully, wantonly, carelessly and heedlessly proceeded into the subject highway with his tractor and trailer and proceeded to stop completely in the roadway thereby blocking all westbound lanes of travel on US Highway 74 Alternate, directly in front of Mark Smith.

28.     At the time and date above stated, Defendant Lamb failed to yield right of way to Mark Smith thereby causing Mark Smith to collide with the subject XPO trailer, which caused Mark Smith to be pinned in his vehicle and suffer severe actual physical pain and mental suffering prior to him being later being pronounced deceased at the scene.

29.     Following the impact described above, Mark Smith was seen moving his arm, moaning, crying and significantly suffering prior to him later being pronounced deceased at the scene.

## FIRST CLAIM FOR RELIEF

## NEGLIGENT, GROSSLY NEGLIGENT, RECKLESS, WILLFUL AND WANTON CONDUCT OF WILLIAM BRATTY LAMB, IMPUTED TO DEFENDANT XPO LOGISTICS

30.     Paragraphs 1-29 of this First Amended Complaint are reincorporated as if fully set forth herein.

31.     On October 11, 2023, at the aforementioned time and place, William Bratty Lamb owed a duty of reasonable care to those lawfully on the roadway, including but not limited to Mark Smith, to operate the subject commercial motor vehicle in a reasonable and safe manner.

5

32. On October 11, 2023, at the above-mentioned time and place, Defendant William Bratty Lamb operated the subject commercial motor vehicle owned by XPO Logistics Freight, Inc. in a negligent, grossly negligent, reckless, careless, willful and wanton manner endangering the lives of those lawfully on the roadway, including but not limited to decedent Mark Smith.

33. At all times relevant herein, Defendant William Bratty Lamb was an employee, agent, or servant of XPO Logistics Freight, Inc. and was operating the 2016 Freightliner tractor and attached trailer within the course and scope of said employment, agency and servitude and was subject to the control of XPO Logistics Freight, Inc. at all times relevant to the subject transportation of freight and in furtherance of the business interest of XPO Logistics Freight, Inc.

34. Specifically, Defendant William Bratty Lamb, an employee and/or agent of XPO Logistics Freight, Inc. was negligent, negligent *per se,* grossly negligent, reckless, careless, willful and wanton in that Defendant William Bratty Lamb:

      a. Operated the 2016 Freightliner tractor and attached trailer carelessly, negligently, grossly negligently, willfully and recklessly in willful and wanton disregard for the rights and safety of others in violation of N.C. Gen. Stat. § 20-140;

      b. Operated the 2016 Freightliner tractor and attached trailer without due caution and circumspection and in a manner as to endanger persons or property in violation of N.C. Gen. Stat. § 20-140;

      c. Negligently, grossly negligently, heedlessly, willfully and wantonly drove the subject commercial motor vehicle into a busy highway intersection and stopped when Defendant Lamb was aware of the presence of Mark Smith's vehicle approaching from the left, and a school bus and another passenger vehicle approaching from the right;

6

d. Drove carelessly and heedlessly in willful and wanton disregard of the rights and safety of others in violation of N.C. Gen. Stat. § 20-141.6;

e. Negligently, grossly negligently, willfully and wantonly failed to yield right of way to the vehicle being driven by decedent Mark Smith, in violation of N.C. Gen. Stat. § 20-160.1;

f. Negligently, grossly negligently, willfully and wantonly failed to maintain a proper lookout in violation of N.C. Gen. Stat. § 20-141;

g. Negligently, grossly negligently, carelessly, willfully and wantonly suddenly and without warning stopped the commercial vehicle in the subject intersection, which cased his attached trailer to block all westbound lanes of U.S. 74 Alternate;

h. Negligently, grossly negligently, willfully, and wantonly failed to operate the subject commercial motor vehicle in accordance with North Carolina laws, ordinances, and regulations, in violation of 49 C.F.R. § 392.2;

i. Negligently, grossly negligently, willfully, and wantonly operated the subject tractor-trailer in a condition as to likely cause an accident or a breakdown of the subject tractor-trailer, in violation of 49 C.F.R. § 396.9;

j. Negligently, grossly negligently, willfully, and wantonly operated the subject tractor while his ability or alertness was impaired through fatigue, illness, or any other cause as to make it unsafe for him to operate the truck, in violation of 49 C.F.R. § 392.3;

k. Negligently, grossly negligently, willfully, and wantonly operated the subject vehicle in violation of 49 C.F.R. § 325-399;

7

l.  Negligently, grossly negligent, reckless, carelessly, willfully and wanton made an extremely unsafe left-turn in violation of the standards of care and training requirements of commercial vehicle operators, as those standards are prescribed in the Commercial Drivers' License (CDL) manual.

m.  Was negligent, grossly negligent, reckless, willful and wanton in other manners as will be determined through discovery and proven at trial.

35.  As a direct and proximate result of the negligent, grossly negligent, reckless, careless, willful and wanton conduct of Defendant William Bratty Lamb, jointly and severally with the negligent, grossly negligent, reckless, careless and willful and wanton conduct of Defendant XPO Logistics, decedent Mark Smith, became trapped in his vehicle and was unable to be rescued, which resulted in his slow and painful death. Decedent Mark Smith was alive, moaning and moving his arm after impact and sustained unimaginable physical pain and mental suffering prior to his death. Accordingly, the Estate of Mark Keannan Smith, by and through Adminsitratrix Cindy Soles Smith, is seeking all available compensatory and punitive damages pursuant to N.C. Gen. Stat. § 28A-18-2(b), including:

a.  Expenses for care, treatment and hospitalization incident to the injury resulting in death of Mark Smith;

b.  Compensation for pain and suffering of the decedent Mark Smith;

c.  The reasonable funeral expenses of the decedent Mark Smith;

d.  The present monetary value of decedent Mark Smith to the persons entitled to receive the damages recovered, including but not limited to compensation for the loss of the reasonably expected;

8

e. Net income of the decedent Mark Smith;

f. Compensation for the loss of services, protection, care and assistance of the decedent Mark Smith, whether voluntary or obligatory, to the persons entitled to the damages recovered;

g. Compensation for loss of society, companionship, comfort, guidance, kindly offices and advice of decedent Mark Smith to the persons entitled to the damages recovered;

h. Such punitive damages as decedent Mark Smith could have recovered pursuant to Chapter 1D of the General Statutes had decedent Mark Smith survived, and punitive damages for wrongfully causing the death of the decedent Mark Smith through malice or willful or wanton conduct, as defined in G.S. 1D-5;

36. In that Defendant Lamb was acting as an agent or employee of Defendant XPO Logistics at all relevant times, the negligent, grossly negligent and willful and wanton acts or omissions of Defendant Lamb are imputed to Defendant XPO Logistics by operation of law and Defendant XPO Logistics is vicariously liable in all respects, under theories of *respondeat superior*, agency, joint enterprise, and vicarious liability, among others.

37. Upon information at all times relevant herein, Defendant Lamb was operating under the employment, agency and servitude of Defendant XPO Logistics and was at all times subject to the control of Defendant XPO Logistics.

## SECOND CLAIM FOR RELIEF

## PUNITIVE DAMAGES AGAINST DEFENDANT WILLIAM BRATTY LAMB AND DEFENDANT XPO LOGISTICS

9

38.     Paragraphs 1-37 of this Complaint, including all subparts, are reincorporated as if fully set forth herein.

39.     The foregoing conduct of Defendant William Bratty Lamb, imputed to Defendant XPO Logistics by operation of law, specifically complained of above and incorporated herein by reference, is so egregious as to be reckless, willful and wanton.

40.     Pursuant to Chapter 1D of the North Carolina General Statutes, Plaintiff seeks punitive damages against Defendant William Lamb and Defendant XPO Logistics, jointly and severally, as allowed under N.C. Gen. Stat. § 28A-18-2(b), in addition to compensatory damages, against Defendant William Bratty Lamb and Defendant XPO Logistics given the aforementioned willful and/or wanton conduct of Defendant William Bratty Lamb and Defendant XPO Logistics on or before October 11, 2023.

41.     Defendant William Bratty Lamb's conduct on October 11, 2023, was "willful and wanton conduct" as that term is defined under G.S. § 1D-5(7), in that Defendant William Bratty Lamb's conduct in operating the commercial vehicle was made with intentional disregard of and indifference to the rights and safety of others, including Decedent Mark Smith, which Defendant William Bratty Lamb knew, or should know, is reasonably likely to result in injury, damage or other harm.

42.     The conduct of Defendant Lamb, imputed to Defendant XPO Logistics, was reckless, willful and wanton, in that Defendant Lamb:

   a. Drove the tractor-trailer carelessly and heedlessly in and willful or wanton disregard of the rights and safety of others in violation of N.C. Gen. Stat. § 20-140;

   b. Drove the subject tractor-trailer without due caution and circumspection and in a manner as to endanger or be likely to

10

endanger persons or property in violation of N.C. Gen. Stat. § 20-140;

c. Drove carelessly and heedlessly in willful and wanton disregard of the rights and safety of others in violation of N.C. Gen. Stat. § 20-141.6;

d. Wantonly engaged in aggressive driving in violation of N.C. Gen. Stat. § 20-141.6;

e. Wantonly failed to yield right of way to the vehicle being driven by Decedent Mark Smith, causing serious bodily injury, in violation of N.C. Gen. Stat. § 20-160.1;

f. Wantonly failed to operate the tractor-trailer in accordance with North Carolina laws, ordinances, and regulations and in violation of 49 C.F.R. § 392.2;

g. Wantonly operated the subject tractor-trailer in a condition as to likely cause an accident or a breakdown of the subject tractor-trailer, in violation of 49 C.F.R. § 396.9;

h. Wantonly operated the tractor-trailer while his ability or alertness was impaired through fatigue, illness, or any other cause as to make it unsafe for him to operate the tractor-trailer in violation of 49 C.F.R. § 392.3;

i. Defendant XPO Logistics aided, abetted and condoned Defendant William Lamb's willful and wanton conduct complained above;

11

j.  Was reckless, willful and wanton in such other ways as will be determined through discovery and proven at trial.

43.    Pursuant to N.C. Gen. Stat. § 1D-15, Plaintiff is entitled to recover from Defendant William Bratty Lamb and Defendant XPO Logistics, jointly and severally, punitive damages for the willful and wanton misconduct of Defendants, that proximately caused and/or related to the injuries suffered by the Plaintiff, in an amount to be determined by the jury but in any event exceeding $25,000.00.

### THIRD CLAIM FOR RELIEF

### NEGLIGENT HIRING, NEGLIGENT SUPERVISION, NEGLIGENT TRAINING, NEGLIGENT RETENTION, NEGLIGENT ENTRUSTMENT CLAIMS AGAINST DEFENDANT XPO LOGISTICS

44.    Paragraphs 1-43 of this Complaint, including all subparts, are reincorporated as if fully set forth herein.

45.    On or before October 11, 2023, Defendant XPO Logistics owed a duty of reasonable and ordinary care to those lawfully on the roadway, including but not limited to Mark Smith, to hire, supervise, train, retain and entrust the operators of its commercial motor vehicles to drive in a reasonable and safe manner on public streets and highways.

46.    Defendant XPO Logistics failed to exercise reasonable and ordinary care in the hiring and retaining of Defendant William Bratty Lamb as a commercial vehicle operator.

47.    Defendant XPO Logistics likewise failed to exercise reasonable and ordinary care in the training and ongoing supervision of employee William Bratty Lamb.

12

48.     Defendant XPO Logistics was directly and independently negligent in that Defendant XPO Logistics:

a.  Negligently hired Defendant William Lamb as a commercial vehicle operator when Defendant XPO Logistics knew or should have known William Lamb was unfit or otherwise unqualified;

b.  Negligently retained Defendant William Lamb as a commercial vehicle operator as Defendant William Lamb when Defendant XPO Logistics knew or should have known William Lamb was unfit or otherwise unqualified;

c.  Negligently supervised Defendant William Lamb as a commercial vehicle operator when Defendant XPO Logistics knew or should have known William Lamb was unfit or otherwise unqualified;

d.  Negligently trained Defendant William Lamb as a commercial vehicle operator, specifically including negligently training Defendant Lamb with respect to safe left turns, and other important safety training which is contained in the Commercial Drivers' License (CDL) Manual.

e.  Negligently trained Defendant William Lamb with respect to industry standards and safety standards contained in the Commercial Drivers' License (CDL) Manual.

f.  Negligently aided and abetted Defendant Lamb in violating multiple Federal Motor Carrier Safety Administration (FMCSA) regulations and standards as well as North Carolina state laws with respect to motor carrier safety regulations, including but not limited to, violations of 49 CFR § 396.9; 49 CFR § 392.3; 49 CFR § 392.2.

13

g. Negligently entrusted and furnished the commercial motor vehicle to Defendant Lamb when Defendant XPO Logistics, knew or should have known, that Defendant Lamb was unfit to operate the commercial vehicle and his operation of said commercial vehicle was likely to result in injury or death to others;

h. Was otherwise negligent and/or grossly negligent as will be further shown in discovery.

49.     As a direct and proximate result of the negligent, grossly negligent, reckless, careless, willful and wanton conduct of Defendant XPO Logistics, jointly and severally with the negligent, grossly negligent, reckless, carless and willful and wanton conduct of Defendant William Lamb, decedent Mark Smith, became trapped in his vehicle and was unable to be rescued, which resulted in his slow and painful death. Decedent Mark Smith was alive, moaning and moving his arm after impact and sustained unimaginable physical pain and mental suffering prior to his death. Accordingly, the Estate of Mark Keannan Smith, by and through Adminsitratrix Cindy Soles Smith, is seeking all available compensatory and punitive damages pursuant to N.C. Gen. Stat. § 28A-18-2(b), including:

a. Expenses for care, treatment and hospitalization incident to the injury resulting in death of Mark Smith;

b. Compensation for pain and suffering of the decedent Mark Smith;

c. The reasonable funeral expenses of the decedent Mark Smith;

d. The present monetary value of decedent Mark Smith to the persons entitled to receive the damages recovered, including but not limited to compensation for the loss of the reasonably expected;

e. Net income of the decedent Mark Smith;

f. Compensation for the loss of services, protection, care and assistance of the decedent Mark Smith, whether voluntary or obligatory, to the persons entitled to the damages recovered;

g. Compensation for loss of society, companionship, comfort, guidance, kindly offices and advice of decedent Mark Smith to the persons entitled to the damages recovered;

h. Such punitive damages as decedent Mark Smith could have recovered pursuant to Chapter 1D of the General Statutes had decedent Mark Smith survived, and punitive damages for wrongfully causing the death of the decedent Mark Smith through malice or willful or wanton conduct, as defined in G.S. 1D-5;

**THE PLAINTIFF RESPECTFULLY DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff Cindy Soles Smith, in her fiduciary capacity as Administratrix of the Estate of Mark Keannan Smith, pursuant to N.C. Gen. Stat. § 28A-18-2, prays that she will have and recover of Defendants William Bratty Lamb and Defendant XPO Logistics, jointly and severally, as follows:

1. Compensatory damages against Defendants, jointly and severally, in an amount to be determined by a jury, but in an event in *excess of* Twenty-Five Thousand Dollars ($25,000.00) plus interest thereon in favor of the Estate of Mark Keannan Smith;

2. Punitive damages against Defendants, jointly and severally, to the extent that the jury finds by clear and convincing evidence that the conduct of any of the

15

Defendants proximately causing and/or related to the subject death complained of in this action were willful and/or wanton in nature, in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00) plus interest thereon in favor of the Estate of Mark Keannan Smith;

3. Cost incurred in bringing this action;
4. Any and all pre and post judgment interest as provided by law;
5. A trial by jury as to all of the issues so triable; and
6. Any other and further relief as the Court deems just, equitable and proper.

This the 22nd day of February, 2024.

**A TRUE COPY**
CLERK OF SUPERIOR COURT
ROBESON COUNTY



By: A. Howell
Date: 07/11/2025
Time: 10:09:18 AM

**MUSSELWHITE, MUSSELWHITE, BRANCH & GRANTHAM, P.A.**

J. WILLIAM OWEN
NC State Bar No. 47994
P.O. Box 1448
Lumberton, NC 28359
Telephone: (910) 738-5277
Facsimile: (910) 738-3678
wowen@mmbglaw.com

*Attorney for Plaintiff Cindy Soles Smith, Administratrix of the Estate of Mark Keannan Smith*

16

# EXHIBIT B

**STATE OF NORTH CAROLINA**
**COUNTY OF ROBESON**

F I L E D
2024 MAR 25 A 10: 35
BY

**IN THE GENERAL COURT OF JUSTICE**
**SUPERIOR COURT DIVISION**
**24-CVS-468**

CINDY SOLES SMITH, Administratrix of the,
ESTATE OF MARK KEANNAN SMITH,

          Plaintiff/Counterclaim-
          Defendant,

    v.

WILLIAM BRATTY LAMB,

          Defendant,

    and

XPO LOGISTICS FREIGHT, INC.

          Defendant/Counterclaim-
          Plaintiff.

**ANSWER, DEFENSES, AND**
**COUNTERCLAIM OF**
**XPO LOGISTICS FREIGHT INC. TO**
**FIRST AMENDED COMPLAINT**

       Defendant XPO Logistics Freight, Inc. ("XPO" or "Defendant") responds as follows to the Complaint filed against it by Plaintiff Cindy Soles Smith ("Plaintiff"), denying the claims asserted and the relief sought therein as set forth below:

*Parties and Jurisdiction*

       1.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 1 of Plaintiff's Complaint, and such allegations are therefore denied.

       2.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 2 of Plaintiff's Complaint, and such allegations are therefore denied.

       3.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 3 of Plaintiff's Complaint, and such allegations are therefore

denied.

    4.      Defendant admits the allegations of Paragraph 4.

    5.      Defendant admits the allegations of Paragraph 5.

    6.      The allegations of Paragraph 6 state conclusions of law as to which no response is required. To the extent any further response may be deemed required, Defendant does not dispute that venue is proper in Robeson County.

    7.      The allegations of Paragraph 7 state conclusions of law as to which no response is required. To the extent any further response may be deemed required, Defendant does not dispute that this Court has subject matter jurisdiction. Except as expressly admitted, Defendant denies the allegations of Paragraph 7.

    8.      The allegations of Paragraph 8 state conclusions of law as to which no response is required. To the extent any further response may be deemed required, Defendant does not dispute that this Court has personal jurisdiction over Defendants.

*Statement of the Facts*

    9.      Defendant incorporates the previous paragraphs of its Answer as if fully stated herein.

    10.      Defendant admits that on October 11, 2023 Defendant William Bratty Lamb ("Lamb") was operating a 2016 Freightliner tractor trailer owned by XPO. Defendant further admits that Lamb was driving in Lumberton County and was later involved in a collision. Additionally, Defendant admits that Mark Smith ("Smith" or "Decedent") drove his truck into the tractor trailer owned by XPO. Defendant further admits that Lamb was acting in the course and scope of his employment for Defendant at the time of the events alleged in Plaintiff's Complaint. Except as expressly admitted, Defendant denies the allegations of Paragraph 10.

11. Defendant admits the allegations of Paragraph 11.

12. Defendant admits the allegations of Paragraph 12.

13. Defendant admits the allegations of Paragraph 13.

14. Defendant admits the allegations of Paragraph 14.

15. Defendant admits the allegations of Paragraph 15.

16. Defendant admits the allegations of Paragraph 16.

17. Defendant admits that on October 11, 2023 Lamb was operating a 2016 Freightliner tractor trailer owned by XPO. The remaining allegations of Paragraph 17 state conclusions of law as to which no response is required. To the extent any further response is deemed required, Defendant admits that it is subject to certain North Carolina and federal laws, that such laws and regulations speak for themselves, and Defendant denies any allegations inconsistent therewith. Except as stated, denied.

18. Defendant admits the allegations of Paragraph 18.

19. Defendant admits that on October 11, 2023 Lamb was operating a 2016 Freightliner tractor trailer owned by XPO around 7:00am. Defendant admits that Lamb was acting in the course and scope of his employment for Defendant at the time of the events alleged in Plaintiff's Complaint. Defendant further admits that XPO Logistics Freight, Inc's terminal is located at 4715 W. 5th Street, Lumberton, North Carolina 28358. Except as expressly admitted, Defendant denies the allegations of Paragraph 19.

20. The allegations of Paragraph 20 state conclusions of law as to which no response is required. To the extent any further response may be deemed required, Defendant admits that Lamb was acting in the course and scope of his employment for Defendant at the time of the events alleged in Plaintiff's Complaint. Except as expressly admitted, Defendant denies the allegations of

Paragraph 20.

21.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 21 of Plaintiff's Complaint, and such allegations are therefore denied.

22.     Defendant admits that it was around 7:00am when the incident occurred. Defendant further admits that it was a clear day with good visibility. Except as expressly admitted, Defendant denies the remaining allegations in Paragraph 22.

23.     Defendant admits that Smith was traveling west on US-74 Alternate in the left lane at a rate higher than the posted speed limit. Except as expressly admitted, Defendant denies the allegations of Paragraph 23.

24.     Defendant denies the allegations of Paragraph 24.

25.     Defendant admits that Lamb completed a written statement to the Lumberton Police Department on October 11, 2023, and the contents of it speak for themselves. Except as expressly admitted, Defendant denies the allegations of Paragraph 25.

26.     Defendant denies the allegations of Paragraph 26.

27.     Defendant denies the allegations of Paragraph 27.

28.     Defendant denies the allegations of Paragraph 28.

29.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 29 of Plaintiff's Complaint, and such allegations are therefore denied.

*First Claim of Relief*
*Negligent, Grossly Negligent, Reckless, Willful and Wanton Conduct of William Bratty*
*Lamb, Imputed to XPO*
*(XPO)*

30.     Defendant incorporates the previous paragraphs of its Answer as if fully stated

herein.

31.     The allegations of Paragraph 31 state conclusions of law as to which no response is required. To the extent any further response may be deemed required, Defendant admits it owes certain duties of care and denies any allegations inconsistent with applicable law. Except as expressly admitted, Defendant denies the allegations of Paragraph 31.

32.     Defendant denies the allegations of Paragraph 32.

33.     The allegations of Paragraph 33 state conclusions of law as to which no response is required. To the extent any further response may be deemed required, Defendant admits that on October 11, 2023 Lamb was operating a 2016 Freightliner tractor trailer owned by XPO. Defendant further admits that Lamb was driving in Lumberton County and was later involved in a collision. Additionally, Defendant admits that Smith drove his truck into the tractor trailer owned by XPO. Defendant further admits that Lamb was acting in the course and scope of his employment for Defendant at the time of the events alleged in Plaintiff's Complaint. Except as expressly admitted, Defendant denies the allegations of Paragraph 33.

34.     Defendant denies the allegations of Paragraph 34.

35.     Defendant denies the allegations of Paragraph 35.

36.     Defendant denies the allegations of Paragraph 36.

37.     The allegations of Paragraph 37 state conclusions of law as to which no response is required. To the extent any further response may be deemed required, Defendant admits that Lamb was acting in the course and scope of his employment for Defendant at the time of the events alleged in Plaintiff's Complaint. Except as expressly admitted, Defendant denies the allegations of Paragraph 37.

*Second Claim for Relief*
*Punitive Damages Against Defendant William Bratty Lamb and Defendant XPO Logistics*

38.     Defendant incorporates the previous paragraphs of its Answer as if fully stated herein.

39.     Defendant denies the allegations of Paragraph 39.

40.     The allegations of Paragraph 40 state conclusions of law as to which no response is required. To the extent a response is deemed required, Defendant denies that Plaintiff is entitled to relief for the allegations stated.

41.     Defendant denies the allegations of Paragraph 41.

42.     Defendant denies the allegations of Paragraph 42.

43.     Defendant denies the allegations of Paragraph 43.

*Third Claim for Relief*
*Negligent Hiring, Negligent Supervision, Negligent Training, Negligent Retention,*
*Negligent Entrustment Claims Against Defendant XPO Logistics.*

44.     Defendant incorporates the previous paragraphs of its Answer as if fully stated herein.

45.     The allegations of Paragraph 45 state conclusions of law as to which no response is required. To the extent any further response may be deemed required, Defendant admits that it owes certain duties under applicable law and denies any allegations inconsistent therewith. Defendant denies the allegations of Paragraph 45 to the extent it purports to allege that Defendant did not comply with any duty owed under North Carolina law. Except as expressly admitted, Defendant denies the allegations of Paragraph 45.

46.     Defendant denies the allegations of Paragraph 46.

47.     Defendant denies the allegations of Paragraph 47.

48.     Defendant denies the allegations of Paragraph 48.

49.     Defendant denies the allegations of Paragraph 49.

No further response is required to the "WHEREFORE" or Prayer for Relief in Plaintiff's Complaint, but Defendant specifically denies that Plaintiff is entitled to any relief requested or any other relief at law or in equity. Any and all allegations of Plaintiff's Complaint that are not expressly admitted herein are denied.

## First Defense

One or more of Plaintiff's claims should be dismissed with prejudice pursuant to 12(b)(6) of the North Carolina Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

## Second Defense

To the extent that it is shown that Smith was negligent by failing to exercise reasonable care for his own safety or as otherwise shown during discovery in this action, and such negligence was a proximate cause of Plaintiff's alleged injuries, Plaintiff is completely barred from recovery from XPO.

## Third Defense

At all times relevant to the Complaint, XPO's actions were lawful and conducted in accordance with all applicable duties, laws, and regulations.

## Fourth Defense

Plaintiff's claims against Defendant may be barred, in whole or in part, by doctrines of intervening/superseding negligence. Plaintiff's alleged injuries, damages, or losses were directly and/or proximately caused by the intervening, superseding acts and conduct of others over whom XPO had no control, thereby precluding any recovery against XPO.

## Fifth Defense

To the extent that Plaintiff suffered any damages, which is expressly denied, Plaintiff's

damages are subject to mitigation and are barred, in whole or in part, by any failure to mitigate such damages.

## Sixth Defense

Defendant XPO denies that it was negligent in any manner or that any negligent act or omission on its part caused or contributed to any injuries or damages alleged to have been sustained by Plaintiff, the existence of which is denied.

## Seventh Defense

Defendant XPO states that Plaintiff's claims are barred, in whole or in part, by lack of causation, and the same is pled as a bar to Plaintiff's claims against XPO.

## Eighth Defense

Smith had an opportunity to avoid the collision and failed to do so; such failure is imputed to Smith.

## Ninth Defense

Defendant reserves the right to supplement and/or amend this Answer to assert additional defenses that may be revealed through further investigation and discovery.

## COUNTERCLAIM

Defendant/Counterclaim Plaintiff XPO Logistics Freight Inc. ("XPO") brings these counterclaims against Plaintiff/Counterclaim Defendant Cindy Soles Smith ("Counterclaim Defendant") seeking monetary and equitable relief for Decedent Mark Smith's ("Smith") damage to XPO's vehicle in connection with the October 11, 2023 accident. XPO has incurred significant fees in repairing its vehicle and now brings this Counterclaim and in support shows as follows:

## PARTIES

1. Counterclaim Plaintiff XPO is a corporation organized and existing under and by virtue of the laws of the State of Delaware and authorized to do business the State of North Carolina.

2. Upon information and belief, Counterclaim Defendant Cindy Soles Smith has applied for, and has been duly appointed as, Administratrix of the Estate of Mark Keannan Smith by Brunswick County Clerk of Superior Court. Further, and upon information and belief, Counterclaim Defendant is a citizen and resident of Brunswick County, North Carolina.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to N.C. Gen. Stat. §§ 7A-240 and 7A-243.

4. This Court has personal jurisdiction over Counterclaim Defendant in this matter pursuant to N.C. Gen. Stat. § 1-75.4.

5. Venue is proper in this Court pursuant to N.C. Gen. Stat. §§ 1-79 and 1-82.

## FACTUAL ALLEGATIONS

6. On October 11, 2023, Smith was operating a 2018 Chevrolet pickup truck.

7. Further, and on October 11, 2023, around 7:00am traffic was light and it was a clear day with good visibility.

8. While traveling on US-74 in Lumberton County, North Carolina, Smith crashed into XPO's truck (the "Accident") while traveling at a speed higher than the posted speed limit.

9. Upon information and belief, the brakes in the 2018 Chevrolet were operable on or around 7:00am on October 11, 2023.

10. Following the Accident, no tire marks were found in the road indicating that

Smith's brakes were being applied five (5) to forty (40) feet away from where he crashed into XPO's truck.

11.    XPO's truck was damaged when Smith crashed into XPO's truck, which was being operated by Defendant William Lamb ("Lamb").

### CLAIMS FOR RELIEF

<u>Count-One – Negligence</u>
*Cindy Smith as Administratrix of the Estate of*
*Mark Keannan Smith*

12.    The allegations contained in the prior paragraphs are hereby re-alleged and incorporated by reference as if fully set forth herein.

13.    On October11, 2023, Smith owed a duty of reasonable care to those lawfully on the roadway, including but not limited to Lamb, to operate the subject commercial motor vehicle in a reasonable manner.

14.    On October 11, 2023, Smith operated the 2018 Chevrolet vehicle in a negligent, reckless, and careless manner endangering the lives of those lawfully on the roadway, including but not limited to Lamb.

15.    Specifically, Smith was negligent, grossly negligent, reckless, and careless in that Smith:

      a.    Operated a motor vehicle in a negligent, reckless, and careless manner endangering the lives of those lawfully on the roadway in violation of N.C. Gen. Stat. § 20-140 and 49 C.F.R. 393, *et seq.*;

      b.    Operated a motor vehicle without due caution and circumspection and in a manner as to endanger persons or property in violation of N.C. Gen. Stat. § 20-140 and 49 C.F.R. 393, *et seq.*;

c.     Negligently, recklessly, and carelessly drove a motor vehicle into a highway and failed to stop when Lamb was entering the highway;

d.     Drove carelessly in a manner ignoring the rights and safety of others in violation of N.C. Gen. Stat. § 20-141.6 and 49 C.F.R. 393, *et seq.*; and

e.     Negligently failed to maintain a proper lookout in violation of N.C. Gen. Stat. § 20-141 and 49 C.F.R. 393, *et seq.*

16.     As a direct and proximate result of the negligent, reckless, and careless conduct of Smith, XPO's truck was significantly damaged.

## Relief Requested

Having fully responded to the allegations of Plaintiff's Complaint, XPO respectfully requests this Court to award it the following relief:

1.     That Plaintiff take nothing of and from Defendant;

2.     That Plaintiff's claims against Defendant be dismissed with prejudice;

3.     That this Court enter judgment in favor of Defendant/Counterclaim Plaintiff XPO for all compensatory damages, in an amount to be determined at trial, but in any event in excess of $25,000.00;

4.     That the costs of this action be taxed against Plaintiff;

5.     That Defendant recovers its attorney's fees in connection with this action as permitted by law;

6.     That Defendant have a trial by jury of all issues so triable; and

7.     That Defendant be awarded such further and additional relief as the Court may deem just and proper.

This the 20th day of March, 2024.

**A TRUE COPY**
**CLERK OF SUPERIOR COURT**
**ROBESON COUNTY**



By: A. Howell
Date: 07/11/2025
Time: 10:13:06 AM

**Gordon Rees Scully Mansukhani, LLP**

By:

Megan M. Stacy
North Carolina Bar No. 47108
Le'Ron A. Byrd
North Carolina Bar No. 55732
150 Fayetteville Street, Suite 1120
Raleigh, NC 27602
Phone: 919-787-4555
Fax: 919-741-5840
E-mail: mstacy@grsm.com
E-mail: lbyrd@grsm.com
*Counsel for Defendant XPO Logistics Freight, Inc. and William Lamb*

## CERTIFICATE OF SERVICE

This is to certify that I caused the foregoing **ANSWER, DEFENSES, AND COUNTERCLAIM OF XPO LOGISTICS FREIGHT, INC. TO FIRST AMENDED COMPLAINT** be filed and served upon all counsel of record by email pursuant to Rule 5 of the North Carolina Rules of Civil Procedure addressed as follows:

J. William Owen
Musselwhite, Musselwhite, Branch & Grantham, P.A.
P.O. Box 1448
Lumberton, NC 28359
wowen@mmbglaw.com
*Counsel for Plaintiff*

This the 20 day of March, 2024.

Gordon Rees Scully Mansukhani, LLP

By: _____
Le'Ron A. Byrd

# EXHIBIT C

**STATE OF NORTH CAROLINA**
**COUNTY OF ROBESON**

FILE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
24-CVS-468

2024 MAR 27 P 1: 19

ROBESON CO., C.S.C.

CINDY SOLES SMITH, Administratrix of the
ESTATE OF MARK KEANNAN SMITH,

BY _____

           Plaintiff/Counterclaim-
           Defendant,

v.

WILLIAM BRATTY LAMB,

           Defendant,

   and

XPO LOGISTICS FREIGHT, INC.

           Defendant/Counterclaim-
           Plaintiff.

**ANSWER AND DEFENSES OF
WILLIAM BRATTY LAMB TO FIRST
AMENDED COMPLAINT**

Defendant William Bratty Lamb ("Lamb" or "Defendant") responds as follows to the

Complaint filed against it by Plaintiff Cindy Soles Smith ("Plaintiff"), denying the claims asserted

and the relief sought therein as set forth below:

*Parties and Jurisdiction*

    1.    Defendant lacks knowledge or information sufficient to form a belief about the truth

of the allegations of Paragraph 1 of Plaintiff's Complaint, and such allegations are therefore

denied.

    2.    Defendant lacks knowledge or information sufficient to form a belief about the truth

of the allegations of Paragraph 2 of Plaintiff's Complaint, and such allegations are therefore

denied.

    3.    Defendant lacks knowledge or information sufficient to form a belief about the truth

of the allegations of Paragraph 3 of Plaintiff's Complaint, and such allegations are therefore

denied.

4.    Defendant admits the allegations of Paragraph 4.

5.    Defendant admits the allegations of Paragraph 5.

6.    The allegations of Paragraph 6 state conclusions of law as to which no response is required. To the extent any further response may be deemed required, Defendant does not dispute that venue is proper in Robeson County.

7.    The allegations of Paragraph 7 state conclusions of law as to which no response is required. To the extent any further response may be deemed required, Defendant does not dispute that this Court has subject matter jurisdiction. Except as expressly admitted, Defendant denies the allegations of Paragraph 7.

8.    The allegations of Paragraph 8 state conclusions of law as to which no response is required. To the extent any further response may be deemed required, Defendant does not dispute that this Court has personal jurisdiction in this Court.

### Statement of the Facts

9.    Defendant incorporates the previous paragraphs of its Answer as if fully stated herein.

10.    The allegations of Paragraph 10 state conclusions of law as to which no response is required. To the extent any further response may be deemed required, Defendant admits that on October 11, 2023 he was operating a 2016 Freightliner tractor trailer owned by XPO Logistics Freight, Inc. ("XPO"). Defendant further admits that he was driving in Lumberton County and was later involved in a collision. Additionally, Defendant admits that Mark Smith ("Smith" or "Decedent") drove his truck into the tractor trailer owned by XPO. Defendant further admits that he was acting in the course and scope of his employment for XPO at the time of the events alleged

2

in Plaintiff's Complaint. Except as expressly admitted, Defendant denies the allegations of Paragraph 10.

11.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 11 of Plaintiff's Complaint, and such allegations are therefore denied.

12.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 12 of Plaintiff's Complaint, and such allegations are therefore denied.

13.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 13 of Plaintiff's Complaint, and such allegations are therefore denied.

14.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 14 of Plaintiff's Complaint, and such allegations are therefore denied.

15.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 15 of Plaintiff's Complaint, and such allegations are therefore denied.

16.     Defendant admits the allegations of Paragraph 16.

17.     Defendant admits that on October 11, 2023 he was operating a 2016 Freightliner tractor trailer owned by XPO. The remaining allegations of Paragraph 17 state conclusions of law as to which no response is required. To the extent any further response is deemed required, Defendant does not dispute that its vehicle was subject to North Carolina and federal laws, but such laws speak for themselves and Defendant denies any allegations inconsistent therewith.

3

Except as stated, denied.

18. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 18 of Plaintiff's Complaint, and such allegations are therefore denied.

19. The allegations of Paragraph 19 state conclusions of law as to which no response is required. To the extent any further response may be deemed required, Defendant admits that on October 11, 2023 he was operating a 2016 Freightliner tractor trailer owned by XPO around 7:00am. Defendant admits that he was acting in the course and scope of his employment for XPO at the time of the events alleged in Plaintiff's Complaint. Defendant further admits that XPO Logistics Freight, Inc's terminal is located at 4715 W. 5th Street, Lumberton, North Carolina 28358. Except as expressly admitted, Defendant denies the allegations of Paragraph 19.

20. The allegations of Paragraph 20 state conclusions of law as to which no response is required. To the extent any further response may be deemed required, Defendant admits that he was acting in the course and scope of his employment for XPO at the time of the events alleged in Plaintiff's Complaint. Except as expressly admitted, Defendant denies the allegations of Paragraph 20.

21. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 21 of Plaintiff's Complaint, and such allegations are therefore denied.

22. Defendant admits that it was around 7:00am when the incident occurred and it was a clear day with good visibility. Defendant denies the remaining allegations of Paragraph 22.

23. Defendant admits that Smith was traveling west on US-74 Alternate in the left lane at a rate higher than the posted speed limit. Except as expressly admitted, Defendant denies the

4

allegations of Paragraph 23.

24. Defendant denies the allegations of Paragraph 24.

25. Defendant admits that he completed a written statement to the Lumberton Police Department on October 11, 2023, and the contents of it speak for themselves and Defendant denies any allegations inconsistent therewith. Except as expressly admitted, Defendant denies the allegations of Paragraph 25.

26. Defendant denies the allegations of Paragraph 26.

27. Defendant denies the allegations of Paragraph 27.

28. Defendant denies the allegations of Paragraph 28.

29. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 29 of Plaintiff's Complaint, and such allegations are therefore denied.

*First Claim of Relief*
*Negligent, Grossly Negligent, Reckless, Willful and Wanton Conduct of William Bratty Lamb, Imputed to XPO*
*(XPO)*

30. Defendant incorporates the previous paragraphs of its Answer as if fully stated herein.

31. The allegations of Paragraph 31 state conclusions of law as to which no response is required. To the extent any further response may be deemed required, Defendant admits that he and Smith had a duty of reasonable care to those lawfully on the roadway and to operate their motor vehicles in a reasonable and safe manner and denies any allegations inconsistent with applicable law. Except as expressly admitted, Defendant denies the allegations of Paragraph 31.

32. Defendant denies the allegations of Paragraph 32.

33. The allegations of Paragraph 33 state conclusions of law as to which no response

5

is required. To the extent any further response may be deemed required, Defendant admits that on October 11, 2023 he was operating a 2016 Freightliner tractor trailer owned by XPO. Defendant further admits that he was driving in Lumberton County and was later involved in a collision. Additionally, Defendant admits that Smith drove his truck into the tractor trailer owned by XPO. Defendant further admits that he was acting in the course and scope of his employment for XPO at the time of the events alleged in Plaintiff's Complaint. Except as expressly admitted, Defendant denies the allegations of Paragraph 33.

34. Defendant denies the allegations of Paragraph 34.

35. Defendant denies the allegations of Paragraph 35.

36. Defendant denies the allegations of Paragraph 36.

37. The allegations of Paragraph 37 state conclusions of law as to which no response is required. To the extent any further response may be deemed required, Defendant admits that he was acting in the course and scope of his employment for XPO at the time of the events alleged in Plaintiff's Complaint. Except as expressly admitted, Defendant denies the allegations of Paragraph 37.

*Second Claim for Relief*
*Punitive Damages Against Defendant William Bratty Lamb and Defendant XPO Logistics*

38. Defendant incorporates the previous paragraphs of its Answer as if fully stated herein.

39. Defendant denies the allegations of Paragraph 39.

40. The allegations of Paragraph 40 state conclusions of law as to which no response is required. To the extent a response is deemed required, Defendant denies that Plaintiff is entitled to relief for the allegations stated. Except as stated, denied.

41. Defendant denies the allegations of Paragraph 41.

6

42. Defendant denies the allegations of Paragraph 42.

43. Defendant denies the allegations of Paragraph 43.

*Third Claim for Relief*
*Negligent Hiring, Negligent Supervision, Negligent Training, Negligent Retention, Negligent Entrustment Claims Against Defendant XPO Logistics*

44. Defendant incorporates the previous paragraphs of its Answer as if fully stated herein.

45. The allegations of Paragraph 48 state conclusions of law as to which no response is required. To the extent any further response may be deemed required, Defendant denies any allegations inconsistent with applicable law. Defendant denies the allegations of Paragraph 45 to the extent it purports to allege that Defendant did not comply with any duty owed under North Carolina law. Except as expressly admitted, Defendant denies the allegations of Paragraph 45.

46. Defendant denies the allegations of Paragraph 46.

47. Defendant denies the allegations of Paragraph 47.

48. Defendant denies the allegations of Paragraph 48.

49. Defendant denies the allegations of Paragraph 49.

No further response is required to the "WHEREFORE" or Prayer for Relief in Plaintiff's Complaint, but Defendant specifically denies that Plaintiff is entitled to any relief requested or any other relief at law or in equity. Any and all allegations of Plaintiff's Complaint that are not expressly admitted herein are denied.

### First Defense

One or more of Plaintiff's claims should be dismissed with prejudice pursuant to 12(b)(6) of the North Carolina Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

## Second Defense

To the extent that it is shown that Smith was negligent by failing to exercise reasonable care for his own safety or as otherwise shown during discovery in this action, and such negligence was a proximate cause of Plaintiff's alleged injuries, Plaintiff is completely barred from recovery from XPO.

## Third Defense

At all times relevant to the Complaint, Defendant's actions were lawful and conducted in accordance with all applicable duties, laws, and regulations.

## Fourth Defense

Plaintiff's claims against Defendant may be barred, in whole or in part, by doctrines of intervening/superseding negligence. Plaintiff's alleged injuries, damages, or losses were directly and/or proximately caused by the intervening, superseding acts and conduct of others over whom Defendant had no control, thereby precluding any recovery against Defendant.

## Fifth Defense

To the extent that Plaintiff suffered any damages, which is expressly denied, Plaintiff's damages are subject to mitigation and are barred, in whole or in part, by any failure to mitigate such damages.

## Sixth Defense

Defendant denies that it was negligent in any manner or that any negligent act or omission on its part caused or contributed to any injuries or damages alleged to have been sustained by Plaintiff, the existence of which is denied.

## Seventh Defense

Defendant states that Plaintiff's claims are barred, in whole or in part, by lack of causation,

and the same is pled as a bar to Plaintiff's claims against Defendant.

### Eighth Defense

Smith had an opportunity to avoid the collision and failed to do so; such failure is imputed to Smith.

### Ninth Defense

Defendant reserves the right to supplement and/or amend this Answer to assert additional defenses that may be revealed through further investigation and discovery.

### Relief Requested

Having fully responded to the allegations of Plaintiff's Complaint, Lamb respectfully requests this Court to award it the following relief:

1. That Plaintiff take nothing of and from Defendant;

2. That Plaintiff's claims against Defendant be dismissed with prejudice;

3. That the costs of this action be taxed against Plaintiff;

4. That Defendant recovers its attorney's fees in connection with this action as permitted by law;

5. That Defendant have a trial by jury of all issues so triable; and

6. That Defendant be awarded such further and additional relief as the Court may deem just and proper.

**SIGNATURE PAGE TO FOLLOW:**

9

This the 20th day of March, 2024.

Gordon Rees Scully Mansukhani, LLP

*Megan M. Stacy*

By: _____

Megan M. Stacy
North Carolina Bar No. 47108
Le'Ron A. Byrd
North Carolina Bar No. 55732
150 Fayetteville Street, Suite 1120
Raleigh, NC 27602
Phone: 919-787-4555
Fax: 919-741-5840
E-mail: mstacy@grsm.com
E-mail: lbyrd@grsm.com
*Counsel for Defendant XPO Logistics*
*Freight, Inc. and William Lamb*

**A TRUE COPY**
CLERK OF SUPERIOR COURT
ROBESON COUNTY



By: A. Howell
Date: 07/11/2025
Time: 10:14:36 AM

10

## CERTIFICATE OF SERVICE

This is to certify that I caused the foregoing **ANSWER AND DEFENSES OF WILLIAM BRATTY LAMB TO FIRST AMENDED COMPLAINT** be filed and served upon all counsel of record by email pursuant to Rule 5 of the North Carolina Rules of Civil Procedure addressed as follows:

J. William Owen
Musselwhite, Musselwhite, Branch & Grantham, P.A.
P.O. Box 1448
Lumberton, NC 28359
wowen@mmbglaw.com
*Counsel for Plaintiff*

This the 20th day of March, 2024.

**Gordon Rees Scully Mansukhani, LLP**

By: _____
Megan M. Stacy



11

# EXHIBIT D

STATE OF NORTH CAROLINA

ROBESON COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
24 CVS 468

)
CINDY SOLES SMITH, Administratrix )
of the ESTATE OF MARK KEANNAN )
SMITH )
)
           Plaintiff, )
)
v. )
)
WILLIAM BRATTY LAMB and )
XPO LOGISTICS FREIGHT, INC. )
)
         Defendants. )

FILED
DATE: April 25, 2025
TIME: 12:50:27 PM
ROBESON COUNTY
CLERK OF SUPERIOR COURT
BY: W. Locklear

## ORDER GRANTING PLAINTIFF'S MOTION FOR SANCTIONS AND SECOND MOTION TO COMPEL AGAINST DEFENDANT XPO LOGISTICS FREIGHT, INC.

THIS CAUSE came before the Undersigned on Plaintiff's Motion for Sanctions and Second Motion to Compel Against Defendant XPO Logistics Freight, Inc ("XPO") on April 16, 2025. This Court, having read the Motion, heard the oral arguments of the parties, and having read the submissions of the parties, is of the opinion that Plaintiff's Motion for Sanctions and Second Motion to Compel should be **GRANTED** and hereby issues the following Order pursuant to Rules 26, 33, 34, and 37 of the North Carolina Rules of Civil Procedure:

1. This Action arises out of the horrific death of Mark Smith, who was killed in a collision on U.S. 74 Alternate on October 11, 2023, in Robeson County, North Carolina.

2. The subject collision occurred when decedent Mark Smith collided with a tractor-trailer owned by XPO, a logistics and transportation conglomerate headquartered in Greenwich, Connecticut.

1

3. XPO is one of the largest and most sophisticated "less-than-truckload" (LTL) transportation companies in the world, with nearly 10,000 power units and over 12,500 commercial vehicle operators.

4. On June 5, 2024, Plaintiff served XPO with her First Set of Interrogatories, First Request for Production of Documents and First Request for Admission.

5. On June 27, 2024, XPO moved for an extension of time to respond to Plaintiff's First Set of Interrogatories, First Request for Production of Documents and First Request for Admission.

6. The Clerk entered an Order enlarging the time for XPO to respond to Plaintiff's First Set of Interrogatories, First Request for Production and First Request for Admission to and including August 5, 2024.

7. On August 6, 2024, XPO served untimely responses to Plaintiff's First Set of Interrogatories, First Request for Production of Documents and First Request for Admission.

8. The Court finds and concludes that XPO's Responses to Plaintiff's First Interrogatories, First Request for Production of Documents and First Request for Admission contained numerous improper objections, refusals to substantively answer, improper limitations and XPO withheld clearly responsive documents and materials from Plaintiff.

9. On August 6, 2024, counsel for Plaintiff sent a detailed correspondence to counsel for XPO advising counsel of the consequences of its untimely discovery responses and requested prompt supplementation.

2

10.    On August 22, 2024, counsel for Plaintiff again sent a detailed correspondence to XPO advising counsel of the improper objections and past-due discovery and again requested complete responses on or before August 30, 2024.

11.    On August 30, 2024, counsel for XPO requested another extension of time to fully respond to Plaintiff's First Set of Interrogatories, First Request for Production of Documents and First Request for Admission, as requested in Plaintiff's correspondence dated August 6, 2024 and August 30, 2024.

12.    Counsel for Plaintiff allowed this extension and voluntarily enlarged the deadline to September 3, 2024 for XPO to respond to the initial discovery served by Plaintiff.

13.    On September 3, 2024, XPO served its First Supplemental Responses to Plaintiff's First Set of Interrogatories, First Request for Production of Documents and First Request for Admission.

14.    After reviewing the production and responses from XPO, on September 4, 2024, counsel for Plaintiff again advised counsel for XPO of the various ongoing discovery deficiencies – including the production of XPO's insurance policies, declaration pages, training materials, the employee handbook and basic shipping documents (e.g., Bill of Lading and Manifest) that were intentionally withheld from Plaintiff without justification.

15.    On October 10, 2024, counsel for Plaintiff sent counsel for XPO a detailed correspondence which requested supplemental discovery responses to the following specific request:

      a. <u>Request for Production 2</u> (request for the document retention policy of XPO);

      b. <u>Request for Production 3 and 4</u> (request for <u>all</u> insurance policies for XPO, including all excess policies);

3

c. <u>Request for Production 6</u> (request for the Driver Qualification File, Driver Investigation File and Driver History File);

d. <u>Request for Production 33</u> (email communications between Lamb and XPO for 90 days prior to the subject collision);

e. <u>Request for Production 34</u> (request for communications between XPO and Lamb from any onboard communication systems);

f. <u>Request for Production 35</u> (request for all onboard audio and visual telematics data and videos);

g. <u>Request for Production 40</u> (request for DVIR reports);

h. <u>Request for Production of 42</u> (request for basic shipping documents including the manifest, bill of lading and dispatch documents);

i. <u>Request for Production 46</u> (documents concerning preventability analysis completed on behalf of XPO and the conclusions of such analysis);

j. <u>Request for Production 55-59</u> (request for training materials that were provided to Defendant Lamb);

k. <u>Request for Production 60</u> (request for documents related to hierarchy of supervisors and management at XPO);

l. <u>Request for Production 61</u> (request for training documents provided to XPO employees) ;

m. <u>Request for Production 63-64</u> (request for contracts or agreements between XPO, its driver (Lamb) and any other entities involved in the subject transport);

n. <u>Request for Production 65</u> (request for XPO's "Accident Register" which is

4

required to be maintained under federal law);

o. Request for Production 66 (request for 30(b)(6) deposition transcripts from XPO corporate designee(s) for injury or death claims in last 5 years);

p. Interrogatory 3 (information requested concerning injury and death claims and lawsuits involving XPO);

q. Interrogatory 5 (seeking actual written responses to (a)-(g));

r. Interrogatory 6 (seeking actual written responses to (a)-(e));

s. Interrogatory 7 (seeking actual written responses to (a)-(e));

t. Interrogatory 12 (seeking actual written responses to (b)-(d));

u. Interrogatory 14 (seeking actual written responses to the question asked);

v. Interrogatory 15 (seeking actual written responses to the question asked);

w. Interrogatory 20 (seeking written responses to internal investigation documents referenced by XPO);

x. Interrogatory 22 (seeking actual written responses, not direction to documents referenced by XPO);

y. Interrogatory 26 (seeking written responses to internal investigation documents referenced by XPO);

z. Interrogatory 32 (seeking written responses to internal investigation documents referenced by XPO);

aa. Interrogatory 36 (seeking written responses concerning XPO's accident review board and preventability determination completed by XPO);

bb. Interrogatory 38 (seeking actual written responses concerning all liability insurance coverage for XPO)

5

16.     In the detailed correspondence of October 10, 2024, counsel for Plaintiff requested supplemental responses within 15 business days and once again certified that Plaintiff would seek the Court's intervention under Rule 37 if substantive responses were not received in a timely manner.

17.     On October 22, 2024, counsel for Plaintiff served its Second Request for Production of Documents on XPO, which related specifically to telematics software used by XPO.

18.     On October 29, 2024, counsel for Plaintiff sent counsel for XPO a detailed correspondence, once again requesting the insurance coverage and declaration pages for XPO, which were still being intentionally withheld from production without justification.

19.     In a letter dated October 29, 2024, counsel for Plaintiff alternatively requested an affidavit from XPO concerning the existence of excess insurance coverage that would be potentially applicable to this wrongful death action since XPO continued to withhold highly relevant insurance materials without justification.

20.     On November 1, 2024, as a final show of good faith and cooperation, counsel for Plaintiff sent counsel for XPO a detailed correspondence and agreed to voluntarily limit the scope of her request for supplementation with an updated due date of December 2, 2024.

21.     After multiple additional requests for further extensions of time by XPO, counsel for Plaintiff voluntarily agreed to a new due date of December 23, 2024, for all supplemental discovery responses, since that date correlated with XPO's due date for its responses to Plaintiff's Second Request for Production of Documents.

22.     On December 23, 2024, at 4:41pm, XPO served its responses to Plaintiff's November 1, 2024 detailed request for supplementation and also served its responses to

6

Plaintiff's Second Request for Production of Documents.

23. The Court finds and concludes that XPO's December 23, 2024 supplementation and December 23, 2024 responses to Plaintiff's Second Request for Production of Documents contained numerous improper objections, refusals to substantively answer, improper limitations of their responses and XPO withheld clearly responsive documents and materials from Plaintiff without justification.

24. The Court finds and concludes that as of the date of this Order, XPO has refused to produce responsive and discoverable documents, materials, data and files related to its telematics systems, including from Samara or Lytx.

25. On December 24, 2024, counsel for Plaintiff advised counsel for XPO that the responses to Plaintiff's Second Request for Production of Documents and the supplementation in response to the November 1, 2024 request from Plaintiff, were both woefully insufficient and counsel for Plaintiff advised XPO that a Rule 37 motion to compel was forthcoming.

26. The Court hereby finds and concludes that throughout the pendency of this Action, XPO has displayed a calculated pattern of discovery abuse and, on numerous occasions, has egregiously violated its obligations to Plaintiff and to this Court under the North Carolina Rules of Civil Procedure.

27. The Court further finds and concludes that XPO has exhibited a pattern of doing so, despite many attempts by Plaintiff's counsel to resolve these discovery deficiencies without the need for judicial intervention.

28. On January 2, 2025, Plaintiff filed a Motion to Compel Against XPO and that motion was heard by this Court on January 13, 2025.

7

29. On January 21, 2025, this Court entered an Order compelling XPO to respond fully to certain discovery – specifically set forth in the Order – within 30 days of the entry of the Order.

30. The Court finds and concludes that the January 21, 2025 Order unambiguously and unequivocally commanded certain production and supplementation on or before February 21, 2025.

31. The Court finds and concludes that XPO failed to serve *any* additional discovery whatsoever on or before February 21, 2025, despite being ordered to do so.

32. The Court finds and concludes that XPO failed to move to enlarge the time in which it was commanded to respond to the January 21, 2025 Order on or before February 21, 2025.

33. Counsel for Plaintiff communicated with counsel for XPO by electronic mail on February 24, 2025 and advised counsel for XPO that they were violating the Court's January 21, 2025 Order and asked counsel for XPO to "state their intentions prior to Plaintiff moving for sanctions and further moving to compel."

34. On February 26, 2025, past the deadline set by this Court in the Order dated January 21, 2025, XPO served extremely limited and vague supplemental discovery responses.

35. The Court finds and concludes that the February 26, 2025 supplemental responses of XPO were *unsigned* by counsel and remain *unsigned* by counsel in direct violation of Rule 11(a) of the North Carolina Rules of Civil Procedure.

36. Likewise, the Court finds and concludes that the February 26, 2025 supplemental responses of XPO were also *unverified* by anyone at XPO.

8

37.     The Court finds and concludes that the unsigned and unverified February 26, 2025 supplemental responses of XPO were woefully inadequate and clearly violated the Court's January 21, 2025 Order.

38.     In XPO's limited supplemental responses dated February 26, 2025, XPO stated that it had "filed a Motion for Reconsideration that includes a request for the Court to reconsider [certain] provisions of the Order."

39.     The Court finds and concludes that the Motion for Reconsideration referenced in the February 26, 2025 supplemental responses was not actually filed until <u>two days later</u> on February 28, 2025.

40.     XPO then attempted to have its Motion for Reconsideration heard on March 17, 2025, but failed to serve a Notice of Hearing at least five days before the hearing. Counsel for Plaintiff objected to XPO's attempt to circumvent the Rules of Civil Procedure and requested that the Court not hear the improperly noticed Motion for Reconsideration on March 17, 2025.

41.     Plaintiff originally noticed her Motion for Sanctions and Second Motion to Compel for March 17, 2025, however at the request of XPO, the Court continued the matter to April 16, 2025, to be heard by the Undersigned, who originally issued the January 21, 2025 Order to Compel.

42.     In a correspondence dated March 17, 2025, 24 days after the mandatory deadline set by the January 21, 2025 Order, counsel for Plaintiff unequivocally warned counsel for XPO that the January 21, 2025 Order "was <u>not</u> tolled and that the ongoing violation of the Court's Order would likely result in severe sanctions under Rule 37(b)."

9

43.     The Court finds and concludes that XPO has continually, intentionally and egregiously violated its obligations to Plaintiff and to this Court under the North Carolina Rules of Civil Procedure.

44.     The Cout further finds and concludes that XPO has exhibited a deliberate and calculated pattern of doing so, despite many attempts by Plaintiff's counsel to resolve these discovery issues and deficiencies without judicial intervention and despite the January 21, 2025 Order.

45.     The Court finds and concludes that Plaintiff is unable to fairly and fully prosecute her various claims without the critical and relevant materials being intentionally and unjustly withheld by XPO.

46.     The Court notes that this matter is currently set for trial on May 12, 2025 and that Plaintiff has been severely prejudiced by the ongoing discovery abuse and misconduct of XPO.

## ORDER FOR SANCTIONS

47.     XPO's violations of the January 21, 2025 Order resulted in the withholding of information, documents, materials, and files that are highly relevant towards necessary elements of proof for claims asserted by Plaintiff in her First Amended Complaint.

48.     XPO's misrepresentations to counsel regarding the existence or lack thereof of highly relevant and discoverable materials (e.g., insurance coverage, telematics data, prior serious injury and death claims/lawsuits, training materials, preventability analysis materials, among others) violated XPO's obligations to seasonably supplement and amend discovery responses pursuant to Rule 26(e).

10

49.     The Court further finds and concludes that XPO's conduct in making these misrepresentations, which it knew or should have known would be reasonably relied upon by Plaintiff, implicates the Court's inherent powers to control proceedings before it.

50.     XPO's answers to certain discovery request served by Plaintiff were so evasive and incomplete that, pursuant to Rule 37, the Court treats them as a failure to answer.

51.     The Court finds and concludes that, due to this failure to answer, sanctions are available under Rule 37(d) regarding these evasive and incomplete responses.

52.     The Court finds and concludes that XPO failed to comply with the Court's January 21, 2025 Order.

53.     The Court finds and concludes that, as of the date of this Order, XPO continues to violate the Court's January 21, 2025 Order.

54.     The Court has considered all sanctions available under Rules 26(e), 37(b), and 37(d), and the inherent power of the Court to control proceedings before it, including the striking of XPO's Answer in its entirety, the granting of a default judgment against XPO on the issue of liability, deeming Plaintiff's First Requests for Admission to be admitted as to XPO, and the imposition of contempt proceedings against XPO.

55.     The irreparable prejudice to Plaintiff's claims caused by the ongoing violations of the Court's January 21, 2025 Order squarely relate to various claims asserted by Plaintiff in the First Amended Complaint.

56.     The Court, in its discretion pursuant to the North Carolina Rules of Civil Procedure, including Rules 26, 37(a), 37(b)(2), and 37(d), and its inherent authority to control proceedings before it, hereby finds and concludes that the following sanctions are necessary and appropriate to remedy the ongoing discovery violations by XPO:

11

a. It is established as a fact for all purposes in this Action, including dispositive motions and trial, that on October 11, 2023, XPO employee William Lamb, proceeded into the intersection of U.S. Highway 74 Alternate and W. 5th Street Extension and stopped his tractor-trailer directly in front of decedent Mark Smith and such conduct of William Lamb was negligent, careless, reckless and grossly negligent.

b. It is established as a fact for all purposes in this Action, including dispositive motions and trial, that on October 11, 2023, XPO employee William Lamb drove the subject tractor-trailer into a busy highway intersection and suddenly stopped, when William Lamb was aware of the presence of decedent Mark Smith's vehicle approaching from his left, and a school bus approaching from his right and such conduct of William Lamb was negligent, careless, reckless and grossly negligent.

c. It is established as a fact for all purposes in this Action, including dispositive motions and trial, that on October 11, 2023, XPO employee William Lamb was distracted by a phone call when the subject collision occurred and such conduct of William Lamb was negligent, careless, reckless and grossly negligent.

d. It is established as a fact for all purposes in this Action, including dispositive motions and trial, that on October 11, 2023, XPO employee William Lamb violated policies of XPO with respect to distracted driving and such conduct of William Lamb was negligent, careless, reckless and grossly negligent.

e. It is established as a fact for all purposes in this Action, including dispositive motions and trial, that XPO failed to properly train and supervise employee

12

William Lamb in accordance with industry standards and that said conduct of XPO was negligent, careless, reckless and grossly negligent.

f.  The Court, in its discretion, hereby strikes the following defenses contained within Defendant XPO's Answer to Plaintiff's First Amended Complaint:

      i.  Second Defense (contributory negligence);

      ii.  Third Defense (general negligence denial);

      iii.  Sixth Defense (general negligence denial);

      iv.  Seventh Defense (causation denial);

      v.  Eighth Defense (contributory negligence)

57.  The Court, in its discretion, has determined that the sanctions entered under this Order are the only just and appropriate sanctions in view of the totality of the circumstances of this case.

58.  The Court has considered all lesser sanctions and finds and concludes that the imposition of lesser sanctions is inadequate given Defendant XPO's continuing discovery abuse and misconduct, the needs of the litigation, and the critically relevant nature of the documents and information that have been intentionally and unjustly withheld from Plaintiff.

## SECOND ORDER TO COMPEL

59.  The Court, in its discretion, pursuant to Rules 26, 33, 34, and 37 of the North Carolina Rules of Civil Procedure, hereby orders that XPO further supplement their responses to Plaintiff's discovery request, within thirty (30) days from the entry of this Order, specifically as follows:

a. <u>Interrogatory No. 3:</u> XPO shall provide a list of all claims or lawsuits filed against XPO involving serious injury or death for the past three (3) years. This list shall include a brief description of the parties, jurisdiction and the circumstances of each claim/suit and the disposition of each claim/suit. For purposes of this supplementation, the term "serious" shall include any of the following: fractures, traumatic brain injury, burns, amputation(s), paralysis, spinal cord injuries, loss of vision and loss of use of an upper or lower extremity.

b. <u>Interrogatory No. 5</u>: XPO shall provide a detailed description of all telematics software being used by XPO at the time of the collision on October 11, 2023.

c. <u>Interrogatory No. 14</u>: XPO shall provide a detailed response that sets forth all formal and informal disciplinary and/or counseling actions regarding employee William Lamb undertaken by XPO at any time.

d. <u>Interrogatory No. 22:</u> XPO shall, in detail, identify all policies, procedures, rules, guidelines, directives, manuals, handbooks and instructions that were in effect for employee William Lamb on October 11, 2023.

e. <u>Interrogatory No. 36:</u> XPO shall provide the identities of all persons involved with the preventability analysis/determination concerning the subject crash of October 11, 2023, including the dates of the review, and the conclusions that were reached.

f. <u>Interrogatory No. 38:</u> XPO shall identify and list the insurer, insured and policy limits for any and all layers of liability insurance that does or may provide coverage on or behalf of XPO, as of the date of the subject crash of October 11, 2023, up to Two Hundred and Fifty Million Dollars ($250,000,000).

14

This includes any excess/layered liability coverage of any kind that would or may provide coverage for this Action.

g. <u>First Request for Production No. 3-4:</u> XPO shall produce declaration pages for any and all layers of liability insurance that does or may provide coverage on or behalf of XPO as of the date of the subject crash of October 11, 2023, up to Two Hundred and Fifty Million Dollars ($250,000,000). This includes excess/layered liability coverage of any kind that would or may provide coverage for this Action.

h. <u>First Request for Production No. 6:</u> XPO shall provide William Lamb's Driver Qualification File, Driver Investigation File, Driver History File and all documents that demonstrate compliance with federal and state driver qualification laws and regulations.

i. <u>First Request for Production No. 35:</u> XPO shall provide Plaintiff with all telematics data, videos, photos, and coaching sessions involving William Lamb from the date of hire through present.

j. <u>First Request for Production No. 46:</u> XPO shall provide Plaintiff with all documents relating to the preventability analysis/review and determination relating to the subject crash of October 11, 2023.

k. <u>First Request for Production No. 55-59:</u> XPO shall further supplement its responses to Plaintiff's First Request for Production No. 55-59 and provide Plaintiff with all training materials, manuals, policies, directives, handbooks, rules and other training materials provided or used in the "XPO University" that were provided to William Lamb or used to train William Lamb. This

includes safety training videos, PowerPoints or other demonstrative training materials provided to William Lamb at any time.

l.  <u>First Request for Production 61</u>: XPO shall produce to Plaintiff any document, article or presentation prepared and/or presented by any XPO representative relating to the safe operation of a commercial motor vehicle that was provided or offered to William Lamb.

m.  <u>First Request for Production No. 65</u>: XPO shall produce to Plaintiff a fully unredacted version of XPO's Accident Register, which is required to be maintained by federal law (49 CFR 390.15).

n.  <u>Request for Production 66</u>: XPO shall produce to Plaintiff all Rule 30(b)(6) deposition transcripts, that are in the possession and control of XPO, from corporate designees from XPO for litigation within the last 5 years that involve the following: (a) serious injury (as the term "serious" is defined in this Order) or death and (b) a left turn by XPO's driver. These transcripts shall be produced in an unredacted format to Plaintiff.

o.  <u>Second Request for Production No. 1</u>: XPO shall produce to Plaintiff all telematics (Samsara or Lytx) videos, datasets, photos, screenshots, comments, coaching sessions, events coached and session notes relating to William Lamb from the date of hire (09/09/20-present).

p.  <u>Second Request for Production No. 2</u>: XPO shall provide Plaintiff any documents that identify employees of XPO (or third parties) who have monitored telematics programs (Samsara or Lytx) and/or telematics data for employee William Lamb from the date of hire (09/09/20- present).

16

q. <u>Second Request for Production No. 4</u>: XPO shall produce to Plaintiff logs of all safety alerts received in the telematics (Samsara or Lytx) safety inbox or other location designated for William Lamb for 6-months prior to the subject crash on October 11, 2023 through present.

r. <u>Second Request for Production No. 6</u>: XPO shall produce to Plaintiff a printout of the telematics (Samsara or Lytx) "Safety Score" (or its equivalent) and the configuration page under any telematics program used by XPO for the 3-months prior to the subject crash of October 11, 2023 through present.

s. <u>Second Request for Production No. 8</u>: XPO shall produce to Plaintiff a printout of the alert configuration page for any telematics software (Samsara or Lytx) used by XPO for the date of the subject crash (October 11, 2023).

t. <u>Second Request for Production No. 9</u>: XPO shall produce to Plaintiff all notifications in the telematics software (Samsara or Lytx) inbox (or other similar location) for William Lamb for 6-months prior to the subject crash of October 11, 2023 through present.

u. <u>Second Request for Production No. 10</u>: XPO shall produce to Plaintiff documents relating to the telematics (Samsara or Lytx) safety settings utilized for William Lamb's commercial vehicle.

v. <u>Second Request for Production No. 11</u>: XPO shall produce to Plaintiff documents relating to the safety settings in any telematics transportation management system or software (Samsara or Lytx) as of the date of the subject crash of October 11, 2023.

w. <u>Second Request for Production No. 13:</u> XPO shall produce to Plaintiff the administrative username and password for any telematics software/safety management system (Samsara or Lytx) being used by XPO as of the date of the subject crash of October 11, 2023 in order for Plaintiff's consultant(s) to assess the transportation management system account for data and information relating specifically to (a) the subject crash of October 11, 2023 and (b) William Lamb. Said consultant of Plaintiff shall be qualified and shall be allowed to access the telematics data at a mutually agreeable location and time.

x. <u>Second Request for Production No. 14:</u> XPO shall produce a complete full-length, uncut and unredacted version of any and all video footage from the date of the subject crash of October 11, 2023, regardless of the quality of the video footage.

60.    This Second Order to Compel is intended to expedite the litigation and is also intended to supplement and clarify certain provisions contained within the January 21, 2025 Order that were raised at the hearing on April 16, 2025.

61.    To the extent that XPO claims that a document or set of documents is not within their possession or control, XPO shall specifically identify the document(s), the custodian of the document(s), the efforts made to obtain the document(s), and, to the extent that any document was destroyed, the date of destruction and the identity of the individual(s) who authorized the destruction of any such document(s).

62.    To the extent that XPO claims that a document or documents are protected from disclosure pursuant to the attorney-client or work product privileges, XPO shall provide detailed privilege logs that set forth with particularity the document or documents,

the author of the document(s), the recipient of the document(s), and a description of the document(s) being withheld sufficient for the Plaintiff to evaluate the claim of privilege.

63. To the extent that the Parties cannot agree on whether a document is subject to the attorney-client or work-product privileges, the Party that is asserting the privilege shall submit the materials to the Undersigned for *in camera* review.

64. The Court finds and concludes that the Consent Protective Order previously entered in this Action provides adequate protection for any materials subject to any alleged trade secret, confidential, or proprietary privileges.

**IT IS SO ORDERED.**

April 25, 2025

This the _____ day of April, 2025.
4/25/2025 9:57:13 AM

**A TRUE COPY**
CLERK OF SUPERIOR COURT
ROBESON COUNTY

HONORABLE JAMES GREGORY BELL
*Senior Resident Superior Court Judge Presiding*

By: A. Howell
Date: 07/11/2025
Time: 4:14:31 PM

19

# EXHIBIT E

**STATE OF NORTH CAROLINA**
**ROBESON COUNTY**

**IN THE GENERAL COURT OF JUSTICE**
**SUPERIOR COURT DIVISION**
**24-CVS-468**

CINDY SOLES SMITH, Administratrix of the
ESTATE OF MARK KEANNAN SMITH,

Plaintiff,

v.

WILLIAM BRATTY LAMB and XPO
LOGISTICS FREIGHT, INC.,

Defendants.

**DEFENDANT XPO LOGISTICS**
**FREIGHT, INC.'S NOTICE OF**
**APPEAL**

TO THE HONORABLE NORTH CAROLINA COURT OF APPEALS:

Defendant XPO Logistics Freight, Inc., by and through undersigned counsel, hereby gives

Notice of Appeal to the North Carolina Court of Appeals from the Order entered on 25 April 2025

in the above-captioned matter by the Honorable James Gregory Bell, in the Superior Court for

Robeson County, granting Plaintiff's Motion for Sanctions and Second Motion to Compel Against

Defendant XPO Logistics Freight, Inc.

This appeal is pursuant to N.C Gen. Stat. § 1-277(a); N.C. Gen. Stat. § 1-294 (staying trial

court proceedings upon the judgment appealed from, or upon the matter embraced therein); N.C.

Gen. Stat. § 7A-27 (permitting appeal to the North Carolina Court of Appeals); and Rule 3 of the

North Carolina Rules of Appellate Procedure (providing a notice of appeal be filed with certain

information contained herein).

Respectfully submitted this 22nd day of May, 2025.

[SIGNATURE PAGE FOLLOWS]

GORDON REES SCULLY MANSUKHANI LLP

By: _Megan M Stacy_ _____

Megan M. Stacy
N.C. State Bar No. 47108
Austin R. Kessler
N.C. Bar No. 55732
Devin Honbarger
N.C. Bar No. 59513
150 Fayetteville Street, Suite 1120
Raleigh, North Carolina 27601
Telephone: (919) 787-4555
Facsimile: (919) 741-5840
E-mail: mstacy@grsm.com
E-mail: akessler@grsm.cmom
Email: dhonbarger@grsm.com
*Counsel for Defendant XPO Logistics Freight, Inc. and William Lamb*

**A TRUE COPY**
CLERK OF SUPERIOR COURT
ROBESON COUNTY



By: A. Howell
Date: 07/11/2025
Time: 4:42:51 PM

## CERTIFICATE OF SERVICE

This is to certify that I caused the foregoing **DEFENDANT XPO LOGISTICS FREIGHT, INC.'S NOTICE OF APPEAL** to be filed and served upon all counsel of record by email pursuant to Rule 5 of the North Carolina Rules of Civil Procedure addressed as follows:

J. William Owen
Musselwhite, Musselwhite, Branch & Grantham, P.A.
P.O. Box 1448
Lumberton, NC 28359
wowen@mmbglaw.com
***Counsel for Plaintiff***

Jennifer Welch
Cranfill Sumner
P.O. Box 27808
Raleigh, NC 27611-7808
jwelch@cshlaw.com
***Counsel for Counterclaim-Defendant Cindy Smith, Administratrix of the Estate of Mark K. Smith***

This the 22nd day of May, 2025.

GORDON REES SCULLY MANSUKHANI LLP

By: _____
    Megan M. Stacy

Electronically Filed Date: 5/22/2025 9:19 PM  Robeson Superior Court County Clerk of Superior Court

# EXHIBIT F

CINDY SOLES SMITH, Administratrix of
the ESTATE OF MARK KEANNAN
SMITH,

        Plaintiff/Counterclaim-
        Defendant,

v.

WILLIAM BRATTY LAMB,

        Defendant,

and

XPO LOGISTICS FREIGHT, INC.

        Defendant/Counterclai
        m-Plaintiff.

**DEFENDANTS
XPO LOGISTICS FREIGHT, INC. AND
WILLIAM BRATTY LAMB'S
MOTION TO STAY ALL PROCEEDINGS
PENDING THE OUTCOME OF APPEAL**

Defendants William Bratty Lamb ("Lamb") and XPO Logistics Freight, Inc. ("XPO") (collectively, "Defendants"), by and through undersigned counsel, respectfully move this Court to enter a global stay order, freezing all proceedings, between all parties, in the above-captioned matter, until the recently filed appeals in this case have been decided. In support of this global stay request, Defendants state:

1.     This case is based on a wrongful death dispute, arising from a trucking accident, which occurred on 11 October 2023 and involved Defendants Lamb and his employer, XPO. Plaintiff asserted negligence and vicarious liability claims against Defendants, and Defendants properly asserted contributory negligence affirmative defenses against Plaintiff. It is relevant to emphasize that Defendants' contributory negligence defense is a vital aspect of this case. This

affirmative defense imposes an independent burden of proof on Defendants. If contributory negligence is found, Plaintiff is barred from any recovery.

2.     Plaintiff and XPO have filed multiple motions to compel discovery against each other. These discovery disputes culminated in this Court's recent entries of its Order Granting Plaintiff's Motion for Sanctions and Second Motion to Compel Against Defendant XPO Logistics Freight, Inc. on 25 April 2025 ("Sanctions Order"), and its Order Denying Defendant XPO Logistic Freight, Inc's Motion to Compel Against Plaintiff on 2 May 2025 ("Discovery Order").

3.     On 22 May 2025, XPO timely filed two Notices of Appeal to the North Carolina Court of Appeals, appealing both the Sanctions Order and Discovery Order.

4.     Although XPO's appeal is interlocutory, it is immediately appealable because it affects a substantial right, N.C. Gen. Stat. §§ 1-277(a) and 7A-27(b). *See, e.g.*, *Bowden v. Latta*, 337 N.C. 794, 448 S.E.2d 503 (1994) (per curium) (concluding, in a wrongful death, trucking case, that an interlocutory order that barred evidence regarding defendants' negligence and plaintiff's contributory negligence affected a substantial right, and thus, was immediately appealable).

5.     "When an appeal is perfected," N.C. Gen. Stat. § 1-294 establishes an automatic stay of "all further proceedings in the court below upon the judgment appealed from, or upon the matter embraced therein."

6.     Given the limited claims and parties involved in this matter and the broad effects of the appealed Sanctions and Discovery Orders (as discussed further below), any and all further action in the above-captioned trial court matter should be automatically stayed pursuant to Section 1-294. However, for the sake of clarity for the parties and Court, Defendants respectfully request for this Court to proactively enter an order, expressing the terms of this global stay.

7.     First and foremost, a global stay is warranted in this matter because the Sanctions and Discovery Orders—*i.e.,* the issues on appeal—are written so broadly that they directly implicate *all* pending claims, evidence, and aspects of this matter.

  a.  Most notably, the Sanctions Order assumes liability (negligence and gross negligence) on behalf of both Defendants and expressly strikes XPO's contributory negligence affirmative defense. Since all pending claims in this matter are subject to the pending appeal, the entire matter falls within the purview of Section 1-294. *Compare with Jessey Sports, LLC v. Intercollegiate Men's Lacrosse Coaches Ass'n, Inc.,* 294 N.C. App. 562, 904 S.E.2d 161 (2024) (finding that the trial court retained jurisdiction to enter discovery sanctions, even after a notice of appeal was filed, because the interlocutory appeal was only regarding the dismissal of two of plaintiff's four claims, so discovery was permitted to continue as to the remaining two claims not subject to the appeal).

  b.  It is an ineffective use of judicial resources to proceed with discovery and trial as to plaintiff's damages alone, while the appeal regarding Defendants' liability and Plaintiff's contributory negligence is pending. *See Bowden,* 337 N.C. 794, 448 S.E.2d 503 (addressing interlocutory order that purported to bar evidence regarding defendants' negligence and plaintiff's contributory negligence, as a matter of "judicial economy," because a "trial on damages" alone would be negated if defendants were permitted to assert and prove contributory negligence).

3

8. Additionally, a global stay is warranted because the Orders and issues on appeal directly relate to and will affect all parties in this above-captioned matter, even though the Notices of Appeal were filed by XPO.

    a. Although the titles of the Sanctions Order and Discovery Order only reference XPO, the substantive content and effect of the Sanctions and Discovery Orders directly impact both Defendants XPO *and* Lamb. For example, the Sanctions Order seeks to "establish as fact for all purposes in this Action, including dispositive motions and trial," that "William Lamb was negligent, carless, reckless and grossly negligent." (Sanctions Order ¶ 56(a))

    b. A relevant issue in the pending appeal will address the fact that Plaintiff never moved for the entry of sanctions against Lamb, yet the harshest of discovery sanctions—the assumption of liability—was imposed against him, *sua sponte*.

    c. Finally, the stay must also freeze all proceedings between Plaintiff and Lamb because the negligence, contributory negligence, and vicarious liability issues raised in this matter are all too inexorably intertwined to be litigated separately. Therefore, a global stay is necessary to protect judicial economy and avoid "the possibility of inconsistent verdicts in later proceedings." *Hoots v. Pryor*, 106 N.C. App. 397, 402, 417 S.E.2d 269, 273 (1992) (finding that interlocutory order dismissing two of the three defendants in a negligent driving matter affected a substantial right, and thus was immediately appealable, because "a dismissal now would raise the possibility of inconsistent verdicts in later proceedings" if the plaintiff was found to be contributorily negligent).

4

9. In sum, a global stay is warranted under N.C. Gen. Stat. § 1-294, as well as this Court's broad discretion to protect judicial economy, preserve the parties' right to a full and fair hearing, and avoid the likelihood of multiple trials which render inconsistent verdicts.

10. Counsel for Defendants have conferred with Plaintiff's Counsel regarding their intent to file this Motion to Stay. Plaintiff objected to the requested stay.

WHEREFORE, based on the foregoing, Defendants respectfully request that this Court enter a global stay order, which will remain in effect until all avenues of appellate review have been exhausted, including any subsequent appeals to the Supreme Court of North Carolina, in relation to the Notices of Appeals filed on 22 May 2025. During that time, any and all proceedings, between all parties in the above-captioned matter, including but not limited to all discovery, motions, and trial, would be stayed.

This the 30th day of May, 2025.

GORDON REES SCULLY MANSUKHANI, LLP

**A TRUE COPY**
CLERK OF SUPERIOR COURT
ROBESON COUNTY



By: A. Howell
Date: 07/11/2025
Time: 4:53:24 PM

*/s/ Austin R. Kessler*

By: _____

Megan M. Stacy
N.C. State Bar No. 47108
Austin R. Kessler
N.C. Bar No. 55732
Devin Honbarger
N.C. Bar No. 59513
Allison J. Becker
N.C. Bar No. 41993
150 Fayetteville Street, Suite 1120
Raleigh, North Carolina 27601
Telephone: (919) 787-4555
Facsimile: (919) 741-5840
E-mail: mstacy@grsm.com
E-mail: akessler@grsm.cmom
Email: dhonbarger@grsm.com
Email: abecker@grsm.com
***Counsel for Defendant XPO Logistics***
***Freight, Inc. and William Lamb***

5

## CERTIFICATE OF SERVICE

This is to certify that I caused the foregoing **DEFENDANTS XPO LOGISTICS FREIGHT, INC. AND WILLIAM BRATTY LAMB'S MOTION TO STAY ALL PROCEEDINGS PENDING THE OUTCOME OF ITS APPEAL** to be filed served upon all counsel of record by email pursuant to the North Carolina Rules of Civil Procedure addressed as follows:

J. William Owen
Musselwhite, Musselwhite, Branch & Grantham, P.A.
P.O. Box 1448
Lumberton, NC 28359
wowen@mmbglaw.com
*Counsel for Plaintiff Cindy Smith,*
*Administratrix of the Estate of Mark K. Smith*

Jennifer Welch
Cranfill Sumner
P.O. Box 27808
Raleigh, NC 27611-7808
jwelch@cshlaw.com
*Counsel for Counterclaim-Defendant Cindy Smith,*
*Administratrix of the Estate of Mark K. Smith*

This the 30th day of May, 2025.

GORDON REES SCULLY MANSUKHANI, LLP

*/s/ Austin R. Kessler*
By: _____
Austin R. Kessler

6

# EXHIBIT G

STATE OF NORTH CAROLINA

ROBESON COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
24 CVS 468

| | |
|---|---|
| CINDY SOLES SMITH, Administratrix of the ESTATE OF MARK KEANNAN SMITH | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| WILLIAM BRATTY LAMB and XPO LOGISTICS FREIGHT, INC. | ) ) ) |
| Defendants. | ) ) |

## PLAINTIFF'S MOTION TO SEVER

NOW COMES Plaintiff, Cindy Soles Smith, by and through undersigned counsel, pursuant to Rules 20(b) and Rule 42(b), of the North Carolina Rules of Civil Procedure, and moves for an Order severing this case as to Defendant XPO Logistics Freight, Inc. (hereafter, "Defendant XPO") and Defendant William Bratty Lamb (hereafter, "Defendant Lamb"). In support of this Motion, Plaintiff states as follows:

1.    This Action arises out of the horrific death of Mark Smith, who was tragically killed in a serious motor vehicle collision on U.S. 74 Alternate on October 11, 2023 in Robeson County involving a commercial vehicle owned by XPO – a shipping and transportation conglomerate based in Greenwich, Connecticut.

2.    Plaintiff initially named and proceeded against both Defendant XPO and Defendant Lamb as co-defendants in the above-referenced civil action, which has been pending in Robeson County Superior Court since February 22, 2024.

3.    Defendant XPO and Defendant Lamb are currently represented by the same

counsel.

4. Defendant Lamb was the operator of the commercial vehicle that pulled directly in front of Plaintiff's Decedent on October 11, 2023.

5. There is no dispute that on October 11, 2023 Defendant XPO employed Defendant Lamb and that Defendant Lamb was acting in the course and scope of his employment with Defendant XPO.

6. Plaintiff and Defendant XPO have been involved in an extensive and ongoing discovery dispute since Plaintiff served her First Interrogatories and First Request for Production of Documents and First Request for Admission on Defendant XPO on June 5, 2024.

7. Despite multiple good faith attempts to confer with Defendant XPO and multiple motions to compel and Orders compelling the production of critical and relevant materials and documents, Defendant XPO has failed to comply with Plaintiff's discovery request, the Rules of Civil Procedure and Orders of this Honorable Court.

8. Defendant XPO's continuing failure to comply with Orders of this Honorable Court has resulted in substantial and prejudicial delay and unfairness to Plaintiff.

9. As with all responses served by XPO in this litigation to date, XPO's responses contained numerous improper objections and refusals to provide relevant and discoverable documents and information. Defendant XPO also refused to produce responsive and discoverable documents, materials, and files requested which were related to the telematics systems on board the subject tractor trailer.

10. Throughout this litigation, Defendant XPO has continually and egregiously violated their obligations to Plaintiff and to this Court under the North Carolina Rules of

Civil Procedure. XPO has exhibited a pattern of doing so, despite many attempts by Plaintiff's counsel to resolve these issues without judicial intervention.

11. Plaintiff filed a Motion to Compel Against Defendant XPO on January 2, 2025 that was heard by this Court on January 13, 2025.

12. This Court entered an Order on January 21, 2025 compelling Defendant XPO to respond fully to certain discovery – specifically set forth in the Order – within 30 days.

13. When Defendant XPO once again failed to produce responsive documents, despite being Ordered to do so, Plaintiff filed her Second Motion to Compel and Motion for Sanctions on February 26, 2025.

14. On April 16, 2025, the Honorable James Gregory Bell presided over Plaintiff's Second Motion to Compel and Motion for Sanctions.

15. At the April 16, 2025 hearing, Defendant XPO also argued their retaliatory and baseless Motion to Compel that was filed against Plaintiff.

16. On April 25, 2025, this Court entered an Order Granting Plaintiff's Second Motion to Compel and Motion for Sanctions.

17. On May 2, 2025 this Court entered an Order Denying Defendant XPO's Motion to Compel Against Plaintiff.

18. On May 22, 2025 at 9:19pm, Defendant XPO filed a Notice of Appeal of this Court's interlocutory Order Granting Plaintiff's Second Motion to Compel and Motion for Sanctions.

19. On May 22, 2025 at 9:19pm, Defendant XPO filed a Notice of Appeal of this Court's interlocutory Order Denying Defendant XPO's Motion to Compel Against Plaintiff.

20. Defendant XPO did not file a Notice of Appeal for Defendant Lamb.

21. Likewise, Defendant XPO did not file a Notice of Appeal as to the January 21, 2025 Order to Compel, which remains fully valid and enforceable.

22. Defendant XPO has erroneously suggested that there is an "automatic stay" of this Action under G.S.§ 1-294.

23. On May 30, 2025, Defendant XPO filed an overly broad and sweeping Motion to Stay the entire Action, as to both Defendant XPO and Defendant Lamb.

24. Defendant XPO is attempting to further delay the administration of justice and judicial economy of this Court by filing a baseless interlocutory appeal, requesting a broad stay of the entire Action, and failing to produce highly relevant materials that were referenced in the January 21, 2025 Order to Compel.

25. Pursuant to Rule 20(b) and Rule 42(b), Plaintiff moves this Court for severance of this Action between Defendant Lamb and Defendant XPO so that Plaintiff can continue to prosecute this case as to Defendant Lamb, separate and distinct from Defendant XPO.

26. Defendant Lamb is not a party to the pending interlocutory appeals filed by Defendant XPO and Defendant XPO should not be permitted to further delay and obstruct the administration of justice and Plaintiff's rights to discovery and ultimately a trial by jury.

27. Plaintiff is being severely prejudiced by the ongoing discovery misconduct of Defendant XPO, which is separate and distinct of Defendant Lamb.

28. This Court has broad direction under both Rule 20(b) and Rule 42(b) to order separate trials or make other orders to prevent a party from being embarrassed, delayed, or put to expense by the joinder of a party. This may be done on motion of either party, and

the decision whether to do so rest in the discretion of the trial judge. *See e.g.*, Aetna Ins. Co.

v. Carroll's Trans. Inc., 14 N.C. App. 481, 188 S.E. 2d 612 (1972).

29.     Allowing Defendant XPO to further delay discovery, denying Plaintiff justice

and her day in Court infringes upon the rules regulating interlocutory appeals.

30.     In these types of situations, our Supreme Court has found "[T]here is no more

effective way to procrastinate the administration of justice than that of bringing cases to an

appellate court piecemeal through the medium of successive appeals from intermediate

orders. The rules regulating appeals from the Superior Court to the Supreme Court are

designed to forestall the useless delay inseparable from unlimited fragmentary appeals, and

to enable courts to perform their real function, i.e., to administer 'right and justice without

sale, denial, or delay." *Veazey v. City of Durham*, 231 N.C. 357, 363-64, 57 S.E.2d 377, 382-

83 (1950) (citing N.C. Const. Art. I, Sec. 35).

31.     The law in this State, when applied correctly, impedes such dilatory tactics.

32.     The law should not permit Defendant XPO to further delay and obstruct

Plaintiff's journey to get justice for her beloved husband by appealing interlocutory Orders.

33.     Here, based upon the foregoing, Plaintiff seeks to continue her prosecution of

this Action against Defendant Lamb separately from Defendant XPO.

WHEREFORE, Plaintiff moves this Honorable Court to exercise its discretion and

enter an Order severing the Action as to Defendant Lamb and Defendant XPO, pursuant to

the Rule 20(b) and Rule 42(b) of the North Carolina Rules of Civil Procedure.

Respectfully submitted this the 5th day of June, 2025.

*[Signature on Next Page]*

5

**A TRUE COPY**
CLERK OF SUPERIOR COURT
ROBESON COUNTY



By: A. Howell
Date: 07/11/2025
Time: 4:57:09 PM

MUSSELWHITE, MUSSELWHITE,
BRANCH & GRANTHAM, P.A.

J. William Owen, Esq.
NC Bar # 47994
P.O. Box 1448
Lumberton, NC 28359
Telephone: (910) 738-5277
Facsimile: (910) 738-3678
wowen@mmbglaw.com
*Counsel for Plaintiff*

6

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing *PLAINTIFF'S MOTION TO SEVER* was served upon all parties by email and U.S. mail to the following:

Allison J. Becker
Megan M. Stacy
Austin Kessler
Devin L. Honbarger
Gordon Rees Scully Mansukhani, LLP
150 Fayetteville St., Suite 1120
Raleigh, NC 27602
abecker@grsm.com
mstacy@grsm.com
akessler@grsm.com
dhonbarger@grsm.com
*Counsel for Defendant XPO Logistics Freight, Inc. and Defendant Lamb*

Jennifer Welch
Cranfill Sumner
P.O. Box 27808
Raleigh, NC 27611-7808
JWelch@cshlaw.com
*Counsel for Counterclaim Defendant Cindy Smith, Adminsitratrix of the Estate of Mark K. Smith.*

This the 5th day of June, 2025.

MUSSELWHITE, MUSSELWHITE,
BRANCH & GRANTHAM, P.A.

J. William Owen
NC State Bar No. 47994
606 N. Elm Street
Lumberton, NC 28358
wowen@mmbglaw.com
*Counsel for Plaintiff*

7

# EXHIBIT H

STATE OF NORTH CAROLINA

ROBESON COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
24 CVS 468

CINDY SOLES SMITH, Administratrix
of the ESTATE OF MARK KEANNAN
SMITH

           Plaintiff,

v.

WILLIAM BRATTY LAMB and
XPO LOGISTICS FREIGHT, INC.

           Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

FILED
DATE: July 9, 2025
TIME: 10:35:02 AM
ROBESON COUNTY
CLERK OF SUPERIOR COURT
BY: E. Smith

## ORDER DENYING DEFENDANT XPO LOGISTICS FREIGHT, INC. AND DEFENDANT WILLIAM BRATTY LAMB'S MOTION TO STAY ALL PROCEEDINGS PENDING APPEAL

**THIS CAUSE** came before the Undersigned on June 30, 2025, on Defendant XPO Logistics Freight, Inc. (hereafter, "Defendant XPO") and Defendant William Bratty Lamb's (hereafter, "Defendant Lamb") Motion to Stay All Proceedings Pending Appeal. This Court, having read the pleadings, motion, and submissions of the Parties, and having heard the oral arguments of counsel, and having concluded that Defendant XPO and Defendant Lamb's Motion to Stay All Proceedings Pending Appeal should be **DENIED**, hereby issues the following Order:

1.     This Action arises out of the death of Mark Smith, who was killed in a motor vehicle collision on U.S. 74 Alternate on October 11, 2023, in Robeson County involving a tractor-trailer owned by Defendant XPO, a wholly owned subsidiary of XPO, Inc., a publicly traded shipping and transportation conglomerate based in

Greenwich, Connecticut.

2. Plaintiff filed this civil action against both Defendant XPO and Defendant Lamb, which has been pending in Robeson County Superior Court since February 22, 2024.

3. Defendant Lamb was the operator of the XPO tractor-trailer that pulled directly in front of Plaintiff's Decedent on U.S. Highway 74 Alternate on October 11, 2023.

4. There is no dispute that Defendant Lamb was an employee of Defendant XPO on October 11, 2023.

5. There is no dispute that Defendant Lamb was acting within the course and scope of his employment with Defendant XPO on October 11, 2023.

6. Plaintiff and Defendant XPO have been involved in an extensive, arduous, and ongoing discovery dispute since Plaintiff served her First Interrogatories, First Request for Production of Documents and First Request for Admission on Defendant XPO on June 5, 2024.

7. To date, Plaintiff has not been involved in any discovery disputes with Defendant Lamb.

8. Despite multiple good faith attempts to confer with Defendant XPO and multiple motions and orders compelling the production of critical and relevant materials and documents, Defendant XPO has failed to fully comply with Plaintiff's reasonable discovery requests, the Rules of Civil Procedure and Orders of this Court.

2

9. Defendant XPO's continuing failure to comply with the Rules of Civil Procedure and the Orders of this Court has resulted in substantial and prejudicial delay to Plaintiff and the administration of justice.

10. Throughout this litigation, Defendant XPO has continually and egregiously violated its obligations to Plaintiff and to this Court under the North Carolina Rules of Civil Procedure.

11. Defendant XPO has exhibited a calculated pattern of discovery abuse and misconduct, despite many attempts by Plaintiff's counsel to resolve such issues without judicial intervention.

12. Plaintiff filed her first Motion to Compel Against Defendant XPO on January 2, 2025, which was heard by this Court on January 13, 2025.

13. This Court entered an Order on January 21, 2025 compelling Defendant XPO to respond fully to certain discovery requests within 30 days.

14. When Defendant XPO once again failed to produce responsive documents, despite being ordered to do so in the January 21, 2025 Order, Plaintiff filed her Second Motion to Compel and Motion for Sanctions Against Defendant XPO on February 26, 2025.

15. As with Plaintiff's First Motion to Compel Against Defendant XPO, Defendant Lamb was <u>not</u> a party to Plaintiff's Second Motion to Compel and Motion for Sanctions, both of which were <u>only directed to Defendant XPO</u>. Although Defendant XPO has argued otherwise, that was not the Court's understanding of the

3

Plaintiff's motion or the Court's own order, either now or at the time of the motion and order.

16. On April 16, 2025, this Court heard Plaintiff's Second Motion to Compel and Motion for Sanctions against Defendant XPO and also heard Defendant XPO's First Motion to Compel Against Plaintiff.

17. On April 25, 2025, this Court entered an Order Granting Plaintiff's Second Motion to Compel and Motion for Sanctions against Defendant XPO. The part of that order relevant to sanctions against Defendant XPO established certain facts as true against Defendant XPO for purposes of trial. But the order did not sanction Defendant Lamb with the establishment of those facts.

18. And, again, even though Defendant XPO has argued that the order also ran against Defendant Lamb, that was not the Court's understanding of its own order, either now or at the time of the motion and order. The Court hereby finds and concludes that the April 25, 2025 Order Granting Plaintiff's Second Motion to Compel and Motion for Sanctions against Defendant XPO, including sanctions entered pursuant to Rule 37(b), do not apply to Defendant Lamb.

19. The Court hereby finds and concludes that the April 25, 2025 Order Granting Plaintiff's Second Motion to Compel and Motion for Sanctions against Defendant XPO only applies to Defendant XPO and is not to be construed, interpreted or applied to Defendant Lamb, who was not a party to Plaintiff's various motions to compel or motion for sanctions.

4

20.     On May 2, 2025, this Court entered an Order Denying Defendant XPO's Motion to Compel Against Plaintiff.

21.     On May 22, 2025 at 9:19pm, Defendant XPO filed a Notice of Appeal of this Court's interlocutory Order Granting Plaintiff's Second Motion to Compel and Motion for Sanctions.

22.     On May 22, 2025 at 9:19pm, Defendant XPO filed a Notice of Appeal of this Court's interlocutory Order Denying Defendant XPO's Motion to Compel Against Plaintiff.

23.     Defendant XPO did not file a Notice of Appeal for Defendant Lamb from any order at any time.

24.     Defendant XPO did not file a Notice of Appeal as to the January 21, 2025 Order to Compel, which remains fully valid and enforceable.

25.     Defendant XPO then filed a broad and sweeping global Motion to Stay this entire Action, as to both Defendant XPO and Defendant Lamb, specifically requesting that the entire Action be "frozen" pending the interlocutory appeals filed by Defendant XPO.

26.     As to Defendants' request for a global stay, this Court finds and concludes that a global stay is not warranted, necessary or justified, pending Defendant XPO's interlocutory appeals. Such a motion is directed at this Court's discretion, and, the Court, in its discretion, denies the motion.

27.     This Court finds and concludes that Defendant Lamb is not a party to the pending interlocutory appeals filed by Defendant XPO.

5

28.     This Court finds and concludes that a global stay, freezing all proceedings as to Defendant XPO and Defendant Lamb would further delay and obstruct the administration of justice, severely diminishing Plaintiff's rights to discovery and meaningful trial preparation.

29.     This Court hereby further finds and concludes that Plaintiff is being severely prejudiced by the ongoing discovery misconduct of Defendant XPO, which is a separate and distinct party from Defendant Lamb.

30.     By contrast, Defendants will not be prejudiced by the denial of a global stay.

31.     As to Defendants' motion for a stay, or to recognize a stay, under N.C. Gen. Stat. § 1-294, Defendants improperly ask the Court to order relief beyond that recognized by section 1-294.

32.     Section 1-294 only imposes a stay of proceedings embraced by the matter on appeal. Furthermore, the stay under section 1-294 applies only if the interlocutory order appealed from is actually appealable.

33.     The Court finds and concludes that the Court's "Order Denying Defendant XPO's Motion to Compel Against Plaintiff" is not an appealable order, and therefore does not trigger the automatic stay of section 1-294.

34.     The Court finds and concludes that the portion of the Court's "Order Granting Plaintiff's Second Motion to Compel and Motion for Sanctions" that grants the second motion to compel is not an appealable order, and therefore does not trigger the automatic stay of section 1-294.

6

35.     The Court recognizes that the portion of Court's "Order Granting Plaintiff's Second Motion to Compel and Motion for Sanctions" that grants sanctions against Defendant XPO is likely an appealable order.

36.     The issue before the Court, therefore, is whether any matter is pending before the Court that is "embraced" by this sanctions order. Although Defendants have argued that all other proceedings must be stayed in this case, that is not correct. The Court has reasonably concluded that Plaintiff's Motion to Sever, which was heard with Defendants' stay motion, is not embraced by the sanctions order. The Court also recognizes that further discovery and many or most other pretrial proceedings would also not be embraced by the appealed sanctions order. The Court further recognizes that a trial on the claims against Defendant XPO is stayed under section 1-294 due to Defendant XPO's appeal of the sanctions order.

37.     This Court takes notice and finds that by consent of the Parties, <u>there is currently no trial date</u>, which allows sufficient time for meaningful discovery and trial preparation pending XPO's interlocutory appeals.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that Defendant XPO and Defendant Lamb's Motion to Stay All Proceedings Pending Appeal is hereby **DENIED**. The Parties may proceed with discovery and trial preparation under the Rules of Civil Procedure.

*[Signature on Next Page]*

7

**IT IS SO ORDERED.**

This the ___8___ day of July, 2025. <sub>7/8/2025 10:37:34 AM</sub>



_____

**HONORABLE JAMES GREGORY BELL**
**Senior Resident Superior Court Judge**
**Presiding**

**A TRUE COPY**
CLERK OF SUPERIOR COURT
ROBESON COUNTY

By: E. Smith
Date: 07/09/2025
Time: 5:12:50 PM

# EXHIBIT I

STATE OF NORTH CAROLINA

ROBESON COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
24 CVS 468

CINDY SOLES SMITH, Administratrix )
of the ESTATE OF MARK KEANNAN )
SMITH )
       )
            Plaintiff, )
v. )
       )
WILLIAM BRATTY LAMB and )
XPO LOGISTICS FREIGHT, INC. )
       )
            Defendants. )

**FILED**
DATE: July 9, 2025
TIME: 10:34:38 AM
ROBESON COUNTY
CLERK OF SUPERIOR COURT
BY: E. Smith

## ORDER GRANTING PLAINTIFF'S MOTION TO SEVER

**THIS CAUSE** came before the Undersigned on June 30, 2025, on Plaintiff's

Motion to Sever pursuant to Rule 20(b) and Rule 42(b) of the North Carolina Rules of

Civil Procedure. This Court, having read the pleadings, motion, and submissions of

the Parties, and having heard the oral arguments of counsel, and having concluded

that Plaintiff's Motion to Sever should be **GRANTED**, hereby issues the following

Order:

       1.      This Action arises out of the death of Mark Smith, who was killed in a

motor vehicle collision on U.S. 74 Alternate on October 11, 2023, in Robeson County

involving a tractor-trailer owned by XPO Logistics Freight, Inc. (hereafter,

"Defendant XPO"), a wholly owned subsidiary of XPO, Inc., a shipping and

transportation conglomerate based in Greenwich, Connecticut.

2. Plaintiff filed this as a single action against both Defendant XPO and Defendant William Bratty Lamb (hereafter, "Defendant Lamb") as Co-Defendants in the above-entitled Action, which has been pending in Robeson County Superior Court since February 22, 2024.

3. Defendant Lamb was the operator of the XPO tractor-trailer that pulled directly in front of Plaintiff's Decedent on U.S. Highway 74 Alternate on October 11, 2023.

4. There is no dispute that Defendant Lamb was an employee of Defendant XPO on October 11, 2023.

5. There is no dispute that Defendant Lamb was acting within the course and scope of his employment with Defendant XPO on October 11, 2023.

6. Plaintiff and Defendant XPO have been involved in an extensive, arduous, and ongoing discovery dispute since Plaintiff served her First Interrogatories, First Request for Production of Documents and First Request for Admission on Defendant XPO on June 5, 2024.

7. To date, Plaintiff has <u>not</u> been involved in any discovery disputes with Defendant Lamb.

8. Despite multiple good faith attempts to confer with Defendant XPO and multiple motions and orders compelling the production of critical and relevant materials and documents, Defendant XPO has failed to fully comply with Plaintiff's reasonable discovery requests, the Rules of Civil Procedure and Orders of this Court.

2

9.     Defendant XPO's continuing failure to comply with the Rules of Civil Procedure and the Orders of this Court has resulted in substantial and prejudicial delay to Plaintiff.

10.     Throughout this litigation, Defendant XPO has continually and egregiously violated its obligations to Plaintiff and to this Court under the North Carolina Rules of Civil Procedure.

11.     Defendant XPO has exhibited a pattern of discovery abuse and misconduct, despite many attempts by Plaintiff's counsel to resolve these issues without judicial intervention.

12.     Plaintiff filed her first Motion to Compel Against Defendant XPO on January 2, 2025, which was heard by this Court on January 13, 2025.

13.     This Court entered an Order on January 21, 2025 compelling Defendant XPO to respond fully to certain discovery requests within 30 days.

14.     This Court finds and concludes that the January 21, 2025 Order Granting Plaintiff's First Motion to Compel was <u>not</u> directed to Defendant Lamb and Defendant Lamb was <u>not</u> a party to Plaintiff's First Motion to Compel Against Defendant XPO. Although Defendant XPO has argued otherwise, that was not the Court's understanding of the Plaintiff's motion or the Court's own order, either now or at the time of the motion and order.

15.     When Defendant XPO once again failed to produce responsive documents, despite being Ordered to do so in the January 21, 2025 Order, Plaintiff

3

filed her Second Motion to Compel and Motion for Sanctions Against Defendant XPO on February 26, 2025.

16.     As with Plaintiff's First Motion to Compel Against Defendant XPO, Defendant Lamb was <u>not</u> a party to Plaintiff's Second Motion to Compel and Motion for Sanctions, both of which were <u>only directed to Defendant XPO</u>. Although Defendant XPO has argued otherwise, that was not the Court's understanding of the Plaintiff's motion or the Court's own order, either now or at the time of the motion and order.

17.     On April 16, 2025, this Court heard Plaintiff's Second Motion to Compel and Motion for Sanctions against Defendant XPO and also heard Defendant XPO's First Motion to Compel Against Plaintiff.

18.     On April 25, 2025, this Court entered an Order Granting Plaintiff's Second Motion to Compel and Motion for Sanctions <u>against Defendant XPO</u>. The part of that order relevant to sanctions against Defendant XPO established certain facts as true against Defendant XPO for purposes of trial. But the order did not sanction Defendant Lamb with the establishment of those facts.

19.     <u>And, again, even though Defendant XPO has argued that the order also ran against Defendant Lamb, that was not the Court's understanding of its own order, either now or at the time of the motion and order</u>. The Court hereby finds and concludes that the April 25, 2025 Order Granting Plaintiff's Second Motion to Compel and Motion for Sanctions against Defendant XPO, including sanctions entered pursuant to Rule 37(b), does <u>not</u> apply to Defendant Lamb.

4

20.     The Court hereby finds and concludes that the April 25, 2025 Order Granting Plaintiff's Second Motion to Compel and Motion for Sanctions against Defendant XPO only applies to Defendant XPO and is not to be construed, interpreted or applied to Defendant Lamb, who was not a party to Plaintiff's various motions to compel or motion for sanctions.

21.     On May 2, 2025, this Court entered an Order Denying Defendant XPO's Motion to Compel Against Plaintiff.

22.     On May 22, 2025 at 9:19pm, Defendant XPO filed a Notice of Appeal of this Court's interlocutory Order Granting Plaintiff's Second Motion to Compel and Motion for Sanctions.

23.     On May 22, 2025 at 9:19pm, Defendant XPO filed a Notice of Appeal of this Court's interlocutory Order Denying Defendant XPO's Motion to Compel Against Plaintiff.

24.     Defendant XPO has not filed a Notice of Appeal for Defendant Lamb from any order at any time.

25.     Defendant XPO did not file a Notice of Appeal as to the January 21, 2025 Order to Compel, which remains fully valid and enforceable.

26.     Defendant XPO then filed a broad and sweeping global Motion to Stay this Action, as to both Defendant XPO and Defendant Lamb, requesting that the entire Action be "frozen" pending the interlocutory appeals filed by Defendant XPO.

27.     Pursuant to Rule 20(b) and Rule 42(b), Plaintiff moved this Court for a severance of this Action as to Defendant Lamb and Defendant XPO so that Plaintiff

could continue to prosecute this case as to Defendant Lamb, separate and distinct from Defendant XPO to avoid additional delay and prejudice.

28.     This Court has reasonably concluded that it has jurisdiction to enter this order, notwithstanding Defendant XPO's notices of appeal, because the orders appealed from are, in part, not appealable interlocutory orders. The Court also reasonably concludes that the issue of severance is not embraced by the orders from which Defendant XPO has appealed.

29.     This Court finds and concludes that Defendant Lamb is not a party to the pending interlocutory appeals filed by Defendant XPO.

30.     This Court finds and concludes that Defendant XPO should not be able to further delay and obstruct the administration of justice and Plaintiff's rights to discovery and ultimately a trial by jury as to Defendant Lamb, who is a separate and distinct party from Defendant XPO.

31.     This Court hereby further finds and concludes that Plaintiff is being severely prejudiced by the ongoing discovery misconduct of Defendant XPO, which is a separate and distinct party from Defendant Lamb.

32.     The Court notes that the same defense counsel purport to represent both Defendant XPO and Defendant Lamb. If the claims against the two defendants are not severed, there is also a risk of substantial prejudice to both Plaintiff and Defendant Lamb at trial. Because certain facts are deemed established against Defendant XPO but not Defendant Lamb, a jury would likely be confused about to whom the established facts apply. *Furr v. Pinoca Volunteer Fire Dep't of Paw Creek*

6

*Twp., Inc.*, 53 N.C. App. 458, 465, 281 S.E.2d 174, 179 (1981) (risk of jury confusion was ground for severance). Thus, the Court further finds that Plaintiff and Defendant Lamb likely would be prejudiced at trial without severance.

33. This Court takes notice that it has broad direction under both Rule 20(b) and Rule 42(b) of the Rules of Civil Procedure to order separate trials or make other orders to prevent a party from being embarrassed, delayed, or put to expense by the joinder of a party.

34. This Court takes notice and finds that severance may be requested by motion of either party, and the decision whether to do so rests in the discretion of the trial judge. *See, e.g., Aetna Ins. Co. v. Carroll's Trans. Inc.,* 14 N.C. App. 481, 188 S.E.2d 612 (1972).

35. This Court hereby finds and concludes that joinder of Defendant XPO and Defendant Lamb has resulted in substantial and unwarranted delays in written and oral discovery and has been severely prejudicial to Plaintiff.

36. This Court hereby finds and concludes that given the totality of the circumstances and the pending interlocutory appeal of Defendant XPO, the claims and causes of action against Defendant XPO and Defendant Lamb should be severed to ensure fairness to all parties, promote judicial economy and to prevent further unnecessary delay.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that this matter is hereby severed as to Defendant XPO and Defendant Lamb pursuant to Rule 20(b) and Rule 42(b) of the North Carolina Rules of Civil

7

Procedure and Plaintiff may proceed against Defendant XPO and Defendant Lamb, separately and distinctly.

To this end, following the entry of this Order, the Robeson County Clerk of Superior Court shall create a separate civil action file number for this matter as to Defendant Lamb.

With respect to Defendant XPO, the above-entitled civil action shall continue under the existing civil action number – 24 CVS 468.

**IT IS SO ORDERED.**

This the ___8___ day of July, 2025.  <sup>7/8/2025 10:38:31 AM</sup>



**HONORABLE JAMES GREGORY BELL**
**Senior Resident Superior Court Judge**
**Presiding**

**A TRUE COPY**
CLERK OF SUPERIOR COURT
ROBESON COUNTY

By: E. Smith
Date: 07/09/2025
Time: 5:11:46 PM

8