# EXHIBIT 3

```
NORTH CAROLINA                    IN THE GENERAL COURT OF JUSTICE
                                    SUPERIOR COURT DIVISION
ROBESON COUNTY                       FILE NO. 24 CVS 000468
_____
                               ]
CINDY SOLES SMITH, et al.,     ]
                               ]    TRANSCRIPT, Volume 1 of 1
                               ]         (Pages 1 - 17)
         PLAINTIFFS,           ]
vs.                            ]
                               ]      Monday, January 13, 2025
XPO LOGISTICS FREIGHT, INC.,   ]
et al.,                        ]
                               ]
         DEFENDANTS.           ]
_____

              Robeson County Civil Superior Court
                   January 13, 2025, Session
            The Honorable James G. Bell, Judge Presiding
                             Motions

APPEARANCES:

Will Owen, Esquire
Musselwhite & Branch
606 N. Elm Street
Lumberton, North Carolina 28358
(910) 738-5277
wowen@mmbglaw.com

Le'Ron Byrd, Esquire
Gordon Rees Scully Mansukhani, LLP
150 Fayetteville Street, Suite 1120
(919) 787-4555
mstacy@grsm.com
dhonbarger@grsm.com

Court Reporter:
Sherri Sealey, CVR-CM
Official Court Reporter
(910) 734-4535
```

# I N D E X

_____

Motions                                                    03

1  **PROCEEDINGS OF MONDAY, JANUARY 13, 2025:**

2           *(Proceedings began in open court on Monday, January*

3           *13, 2025, at 10:47 a.m.  The following proceedings*

4           *were held in open court, in the absence of any*

5           *jurors.  Present at the bar were Mr. Will Owen,*

6           *attorney for the plaintiff; and Mr. Le'Ron Byrd,*

7           *attorney for the defendants.)*

8           THE COURT: All right. Number six, Cindy Smith versus

9  William Lamb, that's 24 CVS 468.

10          MR. OWEN: Good morning, Your Honor, Will Owen for the

11 plaintiff. This is a wrongful death case. It arises out of a

12 motor vehicle collision that occurred on October 11, 2023, in

13 Robeson County. The incident occurred at US 74 Alternate and

14 West 5th Street. And it's an incredibly tragic case where my

15 client's husband was killed in a tractor trailer accident

16 involving XPO Logistics, which is a global transportation

17 company that employees over 12,000 drivers and has nearly

18 10,000 tractor trailers.

19          We served our initial request for production of

20 documents and interrogatories on defendant, XPO, on June 5,

21 2024. They got an extension of time through the Court and

22 ended up answering in early August of last year.

23          We've been going back and forth with them, Your

24 Honor, probably a dozen times, either phone or email or

25 written correspondence regarding the responses to our first

1  set of interrogatories. And I just wanted to briefly go
2  through those, Your Honor.
3         First of all, in our complaint, we seek not only
4  damages for the negligence of their employee drive, William
5  Lamb, but also direct negligence against the company, XPO, for
6  negligence hiring, retention, supervisor, and the like.
7  There's various claims that we've presented here. I wanted to
8  just go through this first set of discovery, and then point
9  out some of the deficiencies.
10         Interrogatory number three, for example, we were
11 seeking information concerning claims and lawsuits against
12 XPO, again, which is a substantial company. They didn't
13 respond to that.
14         On interrogatory number five, we are seeking
15 information concerning telematics software. Telematics is,
16 basically, AI software that monitors drivers in real time
17 through the drive cameras. So there's a camera mounted on this
18 tractor trailer that monitored this driver before the
19 accident, and it would send back data to XPO to their terminal
20 or wherever they monitor it. And it would say, you know, he
21 brakes really fast or he was speeding or he was texting or
22 whatever.
23         So there's a lot of information that we're seeking,
24 Your Honor, that has to do with telematics. There hasn't
25 really been any substantiative response to our various

1  interrogatories and requests regarding telematics.
2        We've asked for information concerning the identity
3  of any shippers and brokers involved in this accident. Again,
4  that's not been provided. The bill of lading, the manifest,
5  you know, we all know that in trucking accidents there's a lot
6  of documents that are required. And, to date, XPO has just
7  failed to produce some of these highly relevant documents that
8  directly relate to our claims of negligent training, hiring,
9  or supervision.
10       So there's also preventability analysis. When you've
11 got a company this size, they engage in their own internal
12 preventability determination. We've not received any identity
13 of the folks who did the preventability analysis nor have we
14 received the actual inclusions of that analysis or any
15 documents responsive to that, whether the accident was
16 preventable.
17       Another important issue that we're here today about
18 is insurance. And, you know, we've been going back and forth
19 with counsel in attempting to not come to this Court today,
20 but regarding insurance, Your Honor, one policy has been
21 produced. And I think the way that they're framing their
22 responses they only see that policy as quote/unquote relevant
23 to our claims.
24       We are seeking all policies that would provide, you
25 know, liability coverage if I can get a verdict. We're

1  entitled to that under Rule 26(b)(2). Insurance agreements are
2  specifically discoverable. And I'm not asking for their
3  opinion on the insurance or what they think my case is worth
4  or what the potential exposure is. I want the layers of
5  coverage.
6          Document retention policies, Your Honor, those have
7  not been provided, despite being promised. Specifically,
8  training materials, throughout our interrogatories and request
9  for production, Your Honor, we're seeking training materials,
10 not the employee handbook, not his--not defendant Lamb's
11 employee file. We want the actual training documents that XPO
12 provides to their employee drivers. We're entitled to that
13 under the rules, because it could lead to discoverable
14 information and it's highly relevant to our claims for
15 negligent hiring and training and retention. And we believe
16 we're entitled to any and all manuals, Powerpoints, booklets,
17 anything that they give to their drivers on a global basis,
18 especially that was given to William Lamb or should have been
19 given to him.
20         So a lot of our document requests have to do with
21 training. So we reiterate our request today, safety videos.
22 Let's see if there's anything else. I don't want to waste the
23 Court's time, Your Honor.
24         We also ask for 30(b)(6) transcripts as it relates to
25 left turns. So left turns are one of the most dangerous things

1  that a commercial motor vehicle does every day. This was a
2  left turn onto 74 Alternate. We think that we, you know, we
3  should be entitled to the 30(b)(6) transcripts over the last
4  five years as it relates to left turns.
5         See, we're limiting these requests. We know that they
6  got 10,000 trucks out there, but how many in the last five
7  years have killed or injured somebody from a left turn. We
8  want to limit it to that with request number sixty-six.
9         We also served a second request for production, Your
10 Honor. This has to do entirely with telematics where they--the
11 AI monitoring systems. All we got in response to our various
12 requests was a print off from the engine control module which
13 shows data from their diesel engine. And, yeah, it shows some
14 data, but it's not what we're seeking. And we believe XPO
15 knows that.
16        We're here today, Your Honor, after having tried and
17 tried and tried since August to resolve these issues without
18 the Court's involvement. We need, you know, the Court's help
19 in securing these--this vital information.
20        With respect to the second request for production,
21 they served their answers after another extension in late
22 December. We told them that their responses were wholly
23 inadequate, which was obvious from reading them and told them
24 this motion was forthcoming. We've emailed them since then and
25 ask if they want to discuss and just haven't had a chance to.

1    So we, frankly, don't have time to continue going
2 back and forth. Your Honor, we're set for trial in May of this
3 year, and we need to secure these documents and interrogatory
4 responses in order to prepare for trial. And we would seek an
5 order compelling the complete responses to the interrogatories
6 and requests that we set forth in a proposed order, Your
7 Honor.
8    THE COURT: All right.
9    MR. BYRD: Good morning, Your Honor, Le'Ron Byrd,
10 again, Wake County Bar on behalf of defendant XPO. As an
11 initial matter, I think I'll just start with the more easier
12 things to point out which is that the plaintiff has asked for
13 the telematics, but those requests are pursuant to the second
14 set of request for production of documents. I pointed it out
15 in a brief that we submitted to this Court that plaintiff
16 never did actually meet and confer with us regarding those. In
17 fact, that meet and confer wasn't even attempted until after
18 the day after we filed our memorandum in opposition to the
19 motion to compel for today.
20    So, as it pertains to that, I mean, we're happy to
21 talk with plaintiff's counsel regarding the telematics and the
22 information that he would like get across. But I can tell you
23 now, based off of our responses, we did object to--simply to
24 the broad nature of just how large or how far back plaintiff
25 is requesting in those requests.

1       And one misrepresentation, just towards some of the
2  other things that plaintiff mentioned, just the notion that we
3  just failed to respond is just simply inadequate one, Your
4  Honor. We did respond. We responded to--in fact, we actually
5  responded to plaintiff's request for production of documents
6  and interrogatories three times.
7       We've several times had conference calls. I've
8  probably had three conference calls with them. I've had two
9  letters back and forth with him he sent to us. I mean, we've
10 talked about this stuff. And really the issue that XPO is just
11 simply having is just the broad nature of these requests. I
12 mean, plaintiff has served 38 interrogatories, 74 requests for
13 production of documents, and 25 RFAs, the plaintiff, and this
14 is a case that just took place over one hour.
15      And so here, again, our thing is that a lot of stuff
16 that plaintiff is requesting is just entirely too broad. And
17 so the conclusion of today is us just having--compelling are
18 just two different orders coming to you, we're happy to do
19 that. But, again, our issue, as we've objected to in several
20 of our request or responses, rather, it's just the broad
21 nature and how irrelevant some of the stuff he's asking for.
22      Again, for example, just saying 30(b) transcripts as
23 it pertains to left turns, I mean, he just represented to this
24 Court that there's over 10,000 drivers on the road
25 internationally. I don't even know how we'd go about finding

1   30(b)(6) transcripts. I mean, I don't know if that means
2   contacting every lawyer, going into West Law and trying to
3   figure out every single case that XPO's had over time. I mean,
4   none of that really just makes any sense.
5           And so our thing is, again, just as it pertains to
6   these requests for production, as it pertains to these
7   interrogatories, they are severely overly broad. And a lot of
8   them would be unduly burdensome for not just me, but my own
9   client go and track and find all this information when all
10  we're talking about is an accident that took place in October
11  of 2023.
12          And so, Your Honor, again, I hear what he said today.
13  I mean, I read his motion. A lot of it is not detailed which--
14  a lot of it does not detail what, you know, interrogatories. I
15  mean, really I came today playing the same guessing game that
16  you're playing. I don't know what they're asking for. It just
17  sounds very broad in nature.
18          And so, Your Honor, if anything--again, if we need to
19  submit two compelling orders or whatever may be, that's fine.
20  But, again, we think we've responded fairly. We responded
21  adequately. As far as I'm concerned we've done our duties
22  under the rules, Your Honor.
23          MR. OWEN: There's more to this case than the day of
24  the accident, okay? We have substantial claims for negligent
25  training, hiring, retention, and the like. So if XPO has had,

1  you know, ten or fifteen or twenty or a hundred cases, you
2  know, in the last five years where left turns resulting in
3  someone's injury or death, then we would be entitled to that
4  information under the rules, Your Honor.
5           Everything we have sought is directly related to one
6  of our causes of action. We didn't ask for all 30(b)(6)
7  forever. We said five years involving XPO drivers making a
8  left turn that resulted in serious injury or death.
9           XPO knows what lawsuits involve serious injury or
10 death for the last five years. And they can provide these
11 transcripts. I don't think it would be that hard for them to
12 do that. They wouldn't be searching in West Law. This is their
13 own--these are cases against them. So I don't know why they'd
14 be searching West Law for cases against themselves. They
15 should be very familiar with these cases. It's serious injury
16 and death for the last five years, Your Honor. And we even
17 limited it to left turns.
18          Of course, there's multiple different causes of
19 accidents, but left turns will be what we will be focusing on
20 because that's relevant to our case.
21          As far as meeting to confer, Your Honor, we sent a
22 letter the day after the responses came in for the second
23 request for production. We told them that we were going to set
24 this for a hearing today, and basically told them to
25 supplement accordingly. We've received no supplementation.

1    So we've let them know on the day before Christmas,
2 which is the day after we received these responses, that, hey,
3 we're going to set this for hearing. These responses are
4 inadequate. That is telling them and warning them that if you
5 don't supplement we're going to set it for hearing, and that's
6 exactly what we did.
7    We have attempted to confer with them since then, but
8 they can also contact me and say, oh, I see you're going to
9 set it for a hearing. You told me to supplement. I'm not going
10 to supplement or I am going to supplement. They didn't do
11 anything. They just sat on it.
12    So we do think we've met our meet and confer for the
13 second request. Again, that second request is really limited
14 in telematics. And the first set of discovery that we've been
15 going back and forth on, Your Honor, we've exchanged multiple
16 letters and emails and phone calls since the onset. We have to
17 have this information, Your Honor. That's why we're here. This
18 information is obviously relevant or I wouldn't be standing up
19 here today asking for it. We're not just looking for
20 irrelevant information. This is all highly relevant to our
21 claims and causes of action in our first amended compliant.
22    We're set for trial in May, so we really don't have
23 time to just keep continuing and continuing and continuing to
24 talk and talk and talk. We need the documents. And they have
25 these documents, and they should produce them as they're

1  relevant and they're discoverable. Thank you, Your Honor.
2         MR. BYRD: Your Honor, once again, I think just, if I
3  could start back with the 30(b)(6) thing and all these
4  transcripts, I don't know where this information is coming
5  from that XPO just knows all the lawsuits that they've been
6  involved in, they have it organized via cases and what
7  injuries, but that's simply not the case.
8         I mean, there's no information that we've produced
9  that even said that we have things organized in that way. And,
10 quite frankly, as plaintiff's counsel has mentioned, discovery
11 is still open. The trial that--he asked for it to be in May,
12 again, we still have time and there's no depositions that have
13 happened.
14        So, respectfully, I mean, if plaintiff wanted to have
15 a deposition, a 30(b)(6), then ask the company some of the
16 things he's saying now. And if he comes to find out after that
17 deposition, sure, they have things organized in that way, I
18 would totally understand and I would be open to opening back
19 up the deposition based off of that information. But all I've
20 done, Your Honor, is my duties under the rules. I would just
21 respond, again, to plaintiff's request based off of my
22 clients.
23        The only thing that I failed to touch on, initially,
24 was the insurance component that plaintiff's counsel has
25 mentioned. Again, we have produced what we found to be

1  relevant in this case. Again, that's what my client has
2  represented. To the extent he thinks there's some other type
3  of insurance that comes into play, some other policy would
4  come into play, that's stuff I haven't learned. That's stuff
5  he can learn through a 30(b)(6). We're just not there yet in
6  discovery, Your Honor.
7          So I believe that covers, again, everything of--
8  plaintiff's counsel has mentioned. Thank you, Your Honor.
9          MR. OWEN: Just briefly, Your Honor, in follow up.
10 I'll keep it short. We're entitled to these documents before
11 the deposition. And we can control which order of discovery we
12 chose. We want to have these documents before we take a
13 30(b)(6). We're certainly entitled to that.
14         With the insurance issue, Your Honor, albeit creative
15 how they've responded to my request, we're entitled to any and
16 all insurance coverages and polices and declaration pages that
17 would apply for a verdict or a judgment that is entered in
18 this case.
19         So if I go get a huge verdict, I need to know who
20 needs to put on notice. And they're simply refusing to reply
21 to that information, then, you know, I don't know that until
22 we get an order issued, okay?
23         So I've been heard, Your Honor, and we'll be happy to
24 submit an order if you so please.
25         THE COURT: All right. So I'll take the matter under

1  advisement. You need to submit proposed orders by Wednesday at
2  5:00 p.m.
3           MR. OWEN: Yes, Your Honor.
4           MR. BYRD: This upcoming Wednesday?
5           MR. OWEN: Wednesday at 5:00 p.m.?
6           MR. BYRD: Did you say this upcoming Wednesday?
7           THE COURT: Yes. Is that a problem? Do you need
8  longer?
9           MR. BYRD: I do need longer only because I'm going to
10 be out of town for a different hearing in Arizona this week.
11 So if I could get at least until Friday that would work for
12 me.
13          THE COURT: Friday at 5:00?
14          MR. BYRD: I can do Friday at 5:00.
15          THE COURT: That's fine. Do you have Miss Gwen's
16 contact information?
17          MR. BYRD: I do not.
18          THE COURT: Do you have her phone number? She won't be
19 back until Wednesday. I think we've got phone number we can
20 give you.
21          MR. OWEN: We moved it to Friday at 5:00?
22          THE COURT: Yes, Friday at 5:00.
23          MR. OWEN: Just email it to Gwen?
24          THE COURT: Yes, email it to Gwen.
25          MR. OWEN: Thank you, Your Honor.

1        MR. BYRD: Thank you.

2        THE COURT: Yes, she'll be back Wednesday, and that's

3   when I'll know what I'm doing.

4        MR. OWEN: Okay. Thank you, Your Honor.

5        *(End of proceedings at 11:03 a.m.)*

6   _____

7        *(END OF TRANSCRIPT)*

NORTH CAROLINA                    IN THE GENERAL COURT OF JUSTICE
                                        SUPERIOR COURT DIVISION
ROBESON COUNTY                             FILE NO. 22 CVS 1328
_____

CINDY SOLES SMITH, et al.,     ]
                               ]
                               ]
         PLAINTIFFS,           ]
vs.                            ]
                               ]
XPO LOGISTICS FREIGHT, INC.,   ]
et al.,                        ]
         DEFENDANTS.           ]
                               ]

_____

    I, Sherri A. Sealey, CVR-CM, the officer before whom the foregoing proceeding was taken, do hereby certify that said transcript is a true, correct, and verbatim transcript of said proceeding. I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this proceeding was heard; and further, that I am not a relative or employee of any attorney or counsel employed by the parties thereto, and am not financially or otherwise interested in the outcome of the action. This the 25th day of September, 2025.

_____
Sherri A. Sealey, CVR-CM

Sherri A. Sealey, CVR-CM
Certified Court Reporter                          January 13, 2025