# EXHIBIT 6

```
NORTH CAROLINA              IN THE GENERAL COURT OF JUSTICE
                              SUPERIOR COURT DIVISION
ROBESON COUNTY                 FILE NO. 24 CVS 000468
_____

CINDY SOLES SMITH, et al.,    ]
                              ]      TRANSCRIPT, Volume 1 of 1
                              ]         (Pages 1 - 28)
          PLAINTIFFS,         ]
vs.                           ]
                              ]      Monday, June, 30, 2025
XPO LOGISTICS FREIGHT, INC.,  ]
et al.,                       ]
                              ]
          DEFENDANTS.         ]
_____
```

Robeson County Civil Superior Court
June 30, 2025, Session
The Honorable James G. Bell, Judge Presiding
Motions

APPEARANCES:

Will Owen, Esquire
Musselwhite & Branch
606 N. Elm Street
Lumberton, North Carolina 28358
(910) 738-5277
wowen@mmbglaw.com

Austin Kessler, Esquire
Gordon Rees Scully Mansukhani, LLP
150 Fayetteville Street, Suite 1120
(919) 787-4555
akessler@grsm.com


Court Reporter:
Sherri Sealey, CVR-CM
Official Court Reporter
(910) 734-4535

# **I N D E X**

_____

Motions                                                      03

Sherri A. Sealey, CVR-CM
Certified Court Reporter          June 30, 2025

1   ***PROCEEDINGS OF MONDAY, JUNE 30, 2025:***

2           *(Proceedings began in open court on Monday, June 30,*

3           *2025, at 2:30 p.m.  The following proceedings were*

4           *held in open court, in the absence of any jurors.*

5           *Present at the bar were Mr. Will Owen, attorney for*

6           *the plaintiff; and Mr. Austin Kessler, attorney for*

7           *the defendants.)*

8           THE COURT: All right. We've got Cindy Soles versus

9   William Bratty Lamb, is that the case?

10          MR. OWEN: That's correct, Your Honor.

11          THE COURT: All right. I've got the file up.

12          MR. OWEN: Good afternoon, Your Honor. Will Owen for

13  the plaintiff. I've got several motions before you today, and

14  I was going to start with the plaintiff's motion to sever.

15  It's probably in Odyssey, but, if it's not, I can hand one up,

16  if you'd like---

17          THE COURT: Yeah, to look at it, it's easier.

18          MR. OWEN: ---is that easier? If I may approach?

19          MR. KESSLER: And, Your Honor, I don't mean to

20  interrupt, but, just for the record, you--there's two

21  interrelated motions. This is a motion to sever. And within

22  this motion, it references our motion to stay, which is also

23  on the calendar for today. It was essentially made in response

24  to our motion. We would move to continue hearing on this

25  motion, for the record, for two reasons. Number one, it was

1  noticed in violation of Rule 6, rules of general practice,

2  which requires the attorneys to meet and confer about

3  availability. That didn't happen. This isn't the first time.

4  We've previously filed a motion to continue on th plaintiff's

5  motions. Based on the failure to comply with that, that motion

6  was granted.

7          But the second reason is more important. We had this

8  motion to stay. With that motion to stay, if Your Honor is

9  inclined to deny that motion to stay, Rule 23(a) of the Rules

10  of Appellate Procedure allows us to immediately appeal that.

11  And if Your Honor rules on the motion to sever and sever's

12  this case prior to us getting a decision back from the Court

13  of Appeals, and that decision comes back favorably to us, that

14  there should have been a stay, we now have severed parties

15  that never should have been severed in the first place. So,

16  for the record, I'd make that motion, Your Honor.

17          THE COURT: I guess I better have each of you

18  introduce yourself on the record.

19          MR. KESSLER: I apologize, Your Honor.

20          MR. OWEN: You going to introduce yourself?

21          MR. KESSLER: I apologize, Your Honor. Austin Kessler

22  for both defendants, XPO and Mr. Lamb.

23          MR. OWEN: Your Honor, we're here on two motions. I

24  did notice their motion to stay because they've been sitting

25  on it for about two months now. So I offered to have that

1  heard at calendar call about a month ago. They said no, we

2  want to have it briefed, and this was the next available

3  session, which is about a month later. And so we went ahead

4  and set it for today, because we can't have this motion to

5  stay just out here pending if it's never going to be heard by

6  the Court, because they're using that motion, Your Honor, in

7  order to attempt to stay all proceedings in this case,

8  including discovery.

9       It has nothing to do with this interlocutory appeal.

10  So I'm fine with having the motion to stay heard first, but

11  all these motions need to be heard today. I'm not sure what

12  counsel is referencing about immediately appealable. These are

13  totally separate issues about severing the case and staying

14  the case.

15       As far as a motion to stay, that's properly before

16  you, Your Honor. It has nothing to do with the appellate

17  courts. That motion to stay is proper in the trial court. And

18  I'm happy to go through all of those when we address the

19  motion to stay.

20       But I would like to go ahead--well, we can address

21  the motion to stay first. It's his motion, so if you want to

22  go ahead and be heard on that, then that would be fine. We can

23  go in that order.

24       MR. KESSLER: Thank you, Your Honor. Again, good

25  afternoon. I'm Austin Kessler for the defendants. Your Honor,

1  this would be our motion to stay all proceedings. On April 22,

2  2025, the Court entered an order granting the plaintiff's

3  motion to compel and a motion for sanctions. And in that order

4  the Court imposed several sanctions under Rule 37, one of

5  which was the entry of findings of fact that could be used for

6  the purposes of dispositive motions in trial. And two of those

7  findings of fact were that Mr. Lamb was grossly negligent and

8  also XPO was grossly negligent. So that certainly establishes

9  negligence at this point based on the pleadings. So we have

10  appealed that order to the Court of Appeals.

11          Ordinarily, as Your Honor knows, typically run-of-

12  the-mill discovery orders are not immediately appealable, but

13  they are if they affect a substantial right. And I have a

14  brief, if I could hand up to, Your Honor, at the appropriate

15  time.

16          THE COURT: Yes.

17          MR. KESSLER: May I approach, Your Honor?

18          THE COURT: Yes.

19          MR. KESSLER: It is a 2024 Court of Appeals case

20  that's referenced within the brief, the *Jessey Sports* case,

21  specifically held that a discovery order that imposes

22  sanctions under Rule 37 is immediately appealable. So that's

23  the first part of this analysis in the motion to stay is

24  whether the appeal was proper. And so, again, typically

25  discovery orders aren't. This is 2024, the Court of Appeals

1   case says this is just like our order. This is immediately

2   appealable.

3        The second part of the case goes to general statute

4   1-294, which operates as an automatic stay as to any issues

5   that are, quote--this is language from the statute--embraced

6   within that order and that appeal.

7        Again, Your Honor, in this case, liability has been

8   established as a final judgment based on that order.

9   Therefore, all of the issues in the case where all parties are

10  embraced within that order it must be stayed.

11       So I'm not sure exactly what the plaintiff's position

12  is. I'm assuming the plaintiff's position may be we can

13  continue with this case, continue discovery related to

14  damages, but you don't get to damages until you get to

15  liability. Since liability has been established, that's all

16  downstream. That is all embraced within this Court's order.

17       And so we would ask that all proceedings be stayed.

18  And if you just look at the way this would work in practice,

19  if we continue with discovery of damages, for example, then

20  the Court of Appeals comes back and overturns that order, and

21  we've had discovery in a trial on damages, we now have to

22  start over and we're at the very place the plaintiff doesn't

23  want to be, which is delays and prejudice.

24       So, again, Your Honor, based on the language of the

25  order, based on 1-294, we respectfully ask the Court to stay

1    all proceedings.

2         MR. OWEN: Your Honor, let me just give you a little

3    background, because we were before you several times in this

4    case.

5         We served discovery in June of 2024, okay? We sent

6    multiple meet and confers. We attempted to confer. We've

7    conferred multiple times.

8         As you know, there was a motion to compel that was

9    heard by you, Your Honor. There was an order to compel that

10   was issued by you. There were violations of that order that

11   were raised at the sanctions hearing in April. Then there's an

12   order issued against XPO Logistics Freight relating to that

13   conduct.

14        So think about it, they violate a court order, and

15   now they want to appeal it, interlocutory, and stop the whole

16   case. That's just not the public policy in this state.

17        And I disagree with counsel when he says liability

18   being established by this order somehow stops us from

19   undergoing discovery. I mean, we're not moving for summary

20   judgment right now. There's no trial date. In fact, we

21   actually agreed to have the trial continued. We agreed to that

22   in order for us to be fair litigants and let us proceed with

23   discovery.

24        We need to take depositions in this case of multiple

25   eyewitnesses, first responders. I mean, there's all kinds of

1  folks that need to be--that we need to talk to under oath. We
2  need to be able to engage in those--in that discovery without
3  there being a global stay. That makes no sense that you're
4  going to violate a court order and then be rewarded with a
5  stay for a year while the case in pending in the Court of
6  Appeals on an interlocutory order.

7      So a couple of things I want to point out, the order
8  that was entered--and I have a copy if I may approach. The
9  order that was entered, by Your Honor, on April 25, 2025, very
10 clearly in that caption--and I will read it, for the record--
11 order granting plaintiff's motion for sanctions and second
12 motion to compel against defendant XPO Logistics Freight, Inc.
13 It doesn't say against defendant Lamb, it says against
14 defendant XPO, and that's who we need to compel against. It's
15 not against Lamb, it's not implicating Lamb. I'm not trying to
16 use this order against Lamb. We'll get into that in a minute
17 with the severance issue.

18     But to act like this case should be totally frozen in
19 time is just not the law in this state. And if I may approach,
20 I've got a statute I'd like to pass up. It's 1-294. May I
21 approach, Your Honor?

22     THE COURT: Yes.

23     MR. OWEN: This is what they're referencing as their
24 basis for a stay. And, as you know, we've got an interlocutory
25 order, it's a discovery order. They argue it affects a

1    substantial right. We'll let the Appellate courts deal with

2    that. But you see where I have it highlighted that the Court

3    below may proceed upon any other matter included in the action

4    not affected by the judgment appealed from.

5           What this is is he's talking about embracing the

6    sanctions order. Well, the sanctions order is only going to be

7    used, number one, if we had a trial, right? We don't have a

8    trial setting yet, do we? No.

9           Number two would be if I was moving for summary

10   judgment or some dispositive motion. That would be embracing

11   the order and using it for liability. But just saying that

12   this order alone establishes liability, it's the facts have

13   been established by the Court. We have to use those facts in

14   order to get the dispositive motion, okay?

15          So this order alone doesn't establish liability. It

16   establishes facts, okay? And there's no issue that's been

17   admitted and there's no issue that Lamb was acting in the

18   course and scope of his employment with XPO. So, yeah, the

19   employee was acting in the course and scope. And certain facts

20   were found as to his conduct.

21          But to say that the entire case should be stayed

22   pending the interlocutory order for--I don't know--nine months

23   to a year just doesn't make sense, Your Honor, that I can't

24   depose eyewitnesses, I can't depose anybody, I can't send any

25   additional discovery requests. We're still waiting for these

1  documents, by the way, that have been requested over a year

2  ago.

3         So that just doesn't seem fair. We'd ask that that

4  motion be denied. There's no court date. There's no trial date

5  setting right now. This case was just continued until the next

6  admin session. So there's no threat of any kind of verdict or

7  dispositive motion. That's off the table.

8         But it would be highly prejudicial to the plaintiff

9  to allow the defendants to violate a court order, appeal it

10 after being sanctioned, and then get rewarded by having a stay

11 of the entire case.

12        So, Your Honor, we'd ask that that motion, that

13 global motion to stay, be denied.

14        And if we can, I'd like to move on, unless you want

15 to be heard on the motion to stay any further? Just move on?

16        MR. KESSLER: Just briefly, if it's acceptable to Your

17 Honor. So we have case law that says that this is immediately

18 appealable. That's this 2024 Court of Appeals case. I think we

19 already disagreed on that. And that--and the appeal relates

20 directly to 1-294 that this automatic stay arises. It

21 automatically arises because of this.

22        So I'm not sure how we proceed. It seems like the

23 plaintiff's position is we just proceed with everything,

24 discovery on liability, discovery on all these other things.

25 So when does 1-294 come in? It immediately comes in and stays

1  all proceedings once the appeal is perfected, which has

2  happened. So the stay should be--it should start immediately,

3  Your Honor.

4         MR. OWEN: Your Honor, we disagree. That's just not

5  the law in this state, but counsel and I are going to have to

6  agree to disagree. If that were the case, then folks would

7  just go out and disobey court orders, get sanctions, appeal

8  it, and then the case would come to an end for a year. You

9  can't get rewarded for your bad behavior. So we'd ask that it

10 be denied.

11        MR. KESSLER: There's certainly no reward, Your Honor,

12 based on positions of sanctions where liability has been

13 established.

14        MR. OWEN: So, briefly, we discussed severance. If I

15 may approach, Your Honor? And the reason that we're filing

16 this motion to sever the case as to the driver and the company

17 is for several reasons. One of them is XPO did not file an

18 appeal for defendant Lamb. They represent defendant Lamb as

19 one of their clients. He's not a party to that appeal.

20        And if I may approach, Your Honor, I've got their

21 notice of appeal. And it's very clear that defendant Lamb is

22 not a party to their appeal.

23        So just for clarity's sake, we've got an

24 interlocutory appeal that XPO has filed on behalf of XPO.

25 There's no appeal for Lamb. Lamb is not a party to the appeal.

 1   He's just not.

 2          So we've a case against defendant William Lamb and

 3   defendant XPO Logistics Freight, Inc. And what we're asking

 4   the Court to do in their discretion, which you do have

 5   discretion in this case, is to sever these two parties so we

 6   can proceed against defendant Lamb separately and defendant

 7   XPO.

 8          And for sake of clarity, we would also like you to

 9   clarify that the order that was entered by Your Honor only

10   applies to XPO so there's no more confusion about, well, does

11   it apply to Lamb, does it not apply. We don't think it

12   applies. And we want you to enter an order to that effect that

13   order that you entered only applies to defendant XPO and not

14   to defendant Lamb.

15          So we're not going to use the sanctions that don't

16   apply to him, don't apply to Lamb, against this newly severed

17   case. We're just severing the parties because they actually

18   have a conflict, at this point. Defendant Lamb is a separate

19   entity, person, than defendant XPO.

20          And, Your Honor, you have broad discretion under both

21   Rule 20(b) and 42(b) to sever this case. It is within the

22   discretion of the trial court to do so.

23          And I have a case that I'd like to hand up, if I may

24   approach, that talks about this. It discusses both of these

25   rules being the basis for severing the claim. In this case,

1   this is a great example of when severance should be used,

2   because you've got one party that appealed interlocutory and

3   you've got one party that did not appeal. You've got one

4   that's got sanctions against him and one that doesn't.

5        So we should be able to proceed against that party

6   separately and distinctly from XPO. And this case from the

7   Court of Appeals from 1972 is still the law in this state. It

8   says that it's the discretion of the trial court to do so and

9   to sever pursuant to these rules.

10       So, to summarize, we did send them both together

11  originally. However, the discovery dispute and the sanctions

12  and the motion to compel were against XPO. We've never once

13  moved for sanctions against defendant Lamb. We've not moved to

14  compel against defendant Lamb. We've only done it as to XPO.

15  The order was entered as to XPO.

16       So we would ask the Court, in its discretion, to

17  sever these two parties and to allow plaintiff to have a

18  separate, distinct case against defendant William Lamb and

19  defendant XPO. We believe this would solve a lot of the

20  problems that have been raised by counsel regarding this issue

21  of whether the sanctions apply or don't apply. Well, that's

22  something that you can go ahead and rule on. And then it's not

23  an issue any further because, number one, you've ruled on it,

24  and, number two, it's a severance--the case has been severed.

25  So they are no longer together.

1        And so we think that actually defendant Lamb is being

2   prejudiced, and there's a major conflict here. You know, that

3   conflict is not our problem. That's the defendant's problem,

4   but we think that there's some major conflicts there that--I

5   think that can be resolved through severance.

6        But, Your Honor, again, there's no pending motions,

7   dispositive motions, against either of these defendants. We

8   simply want to complete discovery on liability, damages, and

9   all these different things that we've been trying to do since

10  June of 2024. That's what we want to do. We think we're

11  entitled to that under the rules. The rules are very clear

12  that this Court has discretion to sever. And we think that

13  that would be in the best interest of judicial economy and

14  fairness, frankly, to both plaintiff and defendant Lamb.

15       MR. LANIER: So, Your Honor, again, we make the motion

16  again to continue. And we would also make a request that prior

17  to--you withhold ruling on this motion until--if Your Honor

18  denies that motion, that we hear back from the Court of

19  Appeals, just for the record.

20       Your Honor, I think where we can start is the

21  plaintiff's description of the order and saying it has nothing

22  to do with defendant Lamb. It establishes liability against

23  defendant Lamb. It establishes that he was grossly negligent.

24  He can't overcome liability. So they are directly related.

25  There's not doubt about that.

1            And if we look at the case that the plaintiff just

2    handed up, the first important part is that the motion to

3    sever was denied, and the Court of Appeals affirmed that.

4            And the Court of Appeals looked at Rule 20(b). And

5    Rule 20(b) basically has two tests, does the case--do the

6    defendants relate to the stay of transaction or occurrence,

7    are they the same questions of law or fact. And if they are,

8    severance is improper.

9            So the very case that the plaintiff handed up to Your

10   Honor they denied the motion to sever. So if we look at the

11   analysis of the plaintiff's motion, again, we start with 1-294

12   our position is that all proceedings are stayed and that no

13   motion can happen, no motion can be heard, nothing can sever.

14           But if we go beyond that, Your Honor, there's

15   absolutely no authority that supports what the plaintiff is

16   trying to do, which is circumventing 1-294. That's--it's

17   established. It's been in place.

18           The first place to look is the black letter law, the

19   rules that the plaintiff moves under, which is 42(b) and

20   20(b). If we look at the legislative comments in Rule 42, they

21   talk about a case of unmanageable size that's been thrust upon

22   the Court.

23           If you look at Rule 20, multiparty cases when

24   unfairness results from certain parties lack of interest or

25   involvement. We don't have that. We don't have any of that.

1   That's comments directly from the black letter law.

2           And if we look at some cases, these cases are

3   included in our brief, Your Honor. The *Hedley* (phonetic) case,

4   that was a wrongful death case, motor vehicle accident where

5   one party moved to sever claims that bifurcated, essentially,

6   at trial. And the Court directly referenced the language in

7   42(b) that talks about a manageable size. They said that's not

8   the case. That's not what we have here. We have three parties

9   here.

10          If we look at the Aetna case that the plaintiff just

11  handed up, again, that case examines whether or not the

12  parties are interconnected or related. And the Court of

13  Appeals affirmed the trial court's decision not to sever.

14          And then, Your Honor, finally we included up a White

15  case, *White v. City of Greensboro,* which is a federal case, a

16  North Carolina federal court. And, in that case, the Court

17  examined factors: number one, whether the issues sought to be

18  tried separately are significantly different from one another;

19  two, whether the separable issues require different witnesses

20  and different documentary proof; three, whether the party

21  opposing severance will be prejudiced if it is granted; and,

22  four, whether the party requesting severance will be

23  prejudiced if the claims are not severed.

24          So, again, this analysis is just like this analysis

25  in Aetna where the courts are looking at how connected are

1   these parties. If they are directly related, then you have the

2   same questions of fact, questions of law, the same

3   transactions are occurring, the Court denied severance. This

4   all suggested that if these parties are interrelated severance

5   should be denied.

6           And here we have two joint tortfeasors, who are,

7   again, jointly and severally liable based on the same

8   transactions or occurrences based on the same questions of

9   fact and law.

10          Your Honor, if we just look at this again in

11  practice, what will happen if the parties are severed. You're

12  staring right down the barrel of an inconsistent verdict

13  problem.

14          Say the order, the discovery sanctions order, is

15  overturned, liability comes back into the picture. There are

16  going to be two separate trials, two separate defendants based

17  on the same law, same facts and circumstances. There's a

18  significant concern for an inconsistent verdict. That's number

19  one.

20          And if the stay only applies to liability, which it's

21  the plaintiff's position, apparently, that no stay applies at

22  all, and we were to go with damages, you still have a trial on

23  damages. And you're still looking at the inconsistent jury

24  verdict, Your Honor.

25          That's why severance is improper in this case. I'll

1   just say it again. There's absolutely no authority that I

2   could find or that the plaintiff could find that would

3   demonstrate that severance is proper in this case.

4        MR. OWEN: Your Honor, a couple of things, 294 that's

5   been referenced a couple of times does not bring a stay to the

6   entire case. It just doesn't. It's not the law in this state.

7   It never has been the law and never will be the law.

8        There is only one party that has filed an appeal in

9   this case and that's defendant XPO. It did not file an appeal

10  for defendant Lamb. Defendant Lamb is not the subject of the

11  appeal.

12       We are asking the Court, in its discretion, it's at

13  the bottom of page one of the Aetna case, Rule 42(b) gives the

14  trial judge general power to sever and impose the same power

15  contemplated by Rule 20(b).

16       Whether or not there should be a severance rests in

17  the sound discretion of a trial judge. Here you've got a party

18  that violated a court order that was sanctioned. That party

19  filed a notice of appeal, an interlocutory order, as to

20  themselves. If they were worried about defendant Lamb they

21  should have filed an appeal for defendant Lamb. They didn't do

22  that.

23       We are moving to sever the case, as the--we have a

24  defendant that filed a notice of appeal and a defendant that

25  did not. They should have filed a notice of appeal for

1  defendant Lamb if they were worried about defendant Lamb.

2  Apparently, they weren't.

3         So these are different, distinct parties. They are

4  not the same. There's no threat of inconsistent verdicts. In

5  fact, there's not even a trial date. How are we going to get

6  an inconsistent verdict if we don't have a trial date. It's

7  not going to happen. When you see the inconsistent verdict

8  argument works is when you've got, like, a holding company and

9  a parent company, and all the companies are the same.

10        We've got a distinct party. Defendant Lamb is

11  distinct from defendant XPO. They did not file a notice of

12  appeal. That is very important. They did not file a notice of

13  appeal for defendant Lamb.

14        We are moving to sever the case as to these two

15  parties so that we can conduct discovery under the Rules of

16  Civil Procedure. We're not moving for dispositive motions.

17  We're not in a trial. We're not seeking a verdict right now.

18  We just want to have fair discovery, which we've been trying

19  to have for over a year. We've been stonewalled by defendant

20  Lamb's employer who got sanctioned. They should not be

21  rewarded for their conduct by getting a global stay and

22  getting the severance denied.

23        So you, Your Honor, you have all the discretion in

24  the world to look at the circumstances and make that

25  determination based on the facts in front of you. These other

 1  cases that have been referenced are not similar to this one.

 2  This is a very unique case. And we should be able to, you

 3  know, take depositions of witnesses, paramedics, fire fighters

 4  that were there, law enforcement. The defendant says we

 5  shouldn't be able to do any of that, no, the whole thing comes

 6  to an end until we hear back from the Court of Appeals. They

 7  even threatened to take it to the Supreme Court after that. So

 8  now you're looking at two years.

 9        So now my plaintiff is sitting here for two years and

10  can't even depose an eyewitness who says the accident right

11  after it happened. That makes no sense. And, for that reason,

12  the motion should be denied, motion for severance should be

13  granted, and we should be allowed to separate these parties.

14  One has filed an appeal and one has not. One was the subject

15  of a sanctions order, one was not. You can clarify that, Your

16  Honor. It was your order. So there will be no confusion about,

17  well, does this apply, can he use this against Lamb? No, we're

18  not trying to use that against Lamb and we want you to clarify

19  that, that they can't do that. They can't use those facts that

20  you established in the order against XPO against defendant

21  Lamb. That's why it needs to be separated. It actually makes

22  it easier for us to separate it and keep these parties

23  distinct, given the sanctions.

24        So we'd ask that the motion to stay be denied. 294

25  will keep the stay in place that's embraced by the order.

1   There isn't going to be a motion on that. They're asking for

2   the whole case to be stayed. That's what's being denied. I'm

3   not sure what they're talking about with the Court of Appeals.

4   They haven't filed anything with the Court of Appeals. That's

5   up to them to do that. This is before you. This is before this

6   Court. There's no delaying anything for the Court of Appeals.

7   This is properly before this Court. If they want to file

8   something with the Court of Appeals, do it.

9           So we'd ask for the motion to stay be denied and the

10  motion for severance be granted. And I'm happy--I'm at your

11  leisure, Your Honor, if you have any other questions.

12          MR. LANIER: Your Honor, all I'll say in response is I

13  think all Your Honor needs to know about the authority, as it

14  relates to this case, and the motion to sever, is that the

15  plaintiff handed up a case where severance was denied. He

16  picked a single point from it that hasn't been done before.

17  There's no case that has these facts and circumstances where

18  it's been done. Frankly, I don't know if it's ever been done,

19  because, again, the plaintiff can't even hand you a case where

20  it's been done.

21          MR. OWEN: Your Honor, I don't think it's been done

22  because I don't think it's ever happened where someone gets

23  sanctioned and doesn't appeal for one of the other parties.

24          So just because they messed it up doesn't mean they

25  should be rewarded for that.

1       And if I may, Your Honor, can I approach with some

2   statutory authority. I've got Rule 20 and Rule 42 that I'm

3   going to approach with, Your Honor, just for your--the record.

4   Both of these, separately and distinctly, give Your Honor the

5   authority to sever the case. Just because he says they can't

6   find a case, well, it's because they're so--frankly, probably

7   not a case like this. This is the first I've seen this. I've

8   been doing this a long time. And they've gotten themselves

9   into a bad spot, but I'm trying to help the Court help my

10  client get through these hardships by severing the case so we

11  can sever these issues and move forward, because, right now,

12  we're at a screeching halt, which is very unfair to my client.

13  And for her to have to wait for these appellate reviews of

14  these interlocutory orders is very unfair and it violates

15  public policy, frankly, because she should be able to depose

16  eyewitnesses, depose responding agencies. For that all to come

17  to an end, I mean, one of these witnesses could pass away,

18  right? I mean, all kinds of stuff could happen to this, to

19  this evidence out there. We would not be allowed to

20  potentially proceed under, because we can't just sit here and

21  wait. We don't even have a trial date. It's under their

22  circumstance, we would just be sitting here stalled for

23  probably a year or two with nothing going on. That makes no

24  sense. That's not the law in this state. Again, we'd ask that

25  the motion to stay be denied. 294 gives them their automatic

1  stay for anything embraced by the order. If I was moving for

2  summary judgment or trying the case, with these facts they may

3  have an argument under 294. We're not doing that. We want to

4  proceed with discovery. It's that simple. That's why we moved-

5  -that's why we allowed. We consented to the case letting go--

6  let the case go over for the calendar and not be set for the

7  fall. We initially wanted to set this for the fall. We said

8  you know what, we're not going to set the case. Let's just

9  proceed with discovery and get this thing knocked out. That's

10 what we've agreed to. We've been acting in good faith the

11 entire time. We still want our documents and we haven't gotten

12 them. We served discovery in June of 2024. We're almost in

13 July of 2025. I have yet to get a lot of these documents.

14       So that's what we have for you today, Your Honor. If

15 you have any other questions please let me know.

16       MR. KESSLER: Your Honor, the last thing I will say is

17 on the subject of 1-294, what is and what is not embraced by

18 this order, liability and gross negligence is not embraced by

19 the order. It is the order. And that is subject to automatic

20 appeal by established law.

21       MR. OWEN: Their argument it affects a substantial

22 right, and that's up to the appellate courts to review that.

23 But this order alone doesn't establish liability. It

24 establishes facts under Rule 37. We have to use those facts to

25 establish liability, okay? We're not doing that right now. We

1   want to have discovery. We want to be able to proceed under

2   the Rules of Civil Procedure as any other litigant can and

3   will, but they're trying to stop us from doing that. I'm not

4   sure why. And I'm not sure why they would oppose a severance.

5   Why would you oppose the sanctions not applying to your

6   driver. We're saying they don't apply. They're saying they do

7   apply. Wouldn't you want them not to apply if that was your

8   client? That doesn't make any sense.

9        So we are saying the sanctions order applies to XPO

10  as is in the title and is in the body of the entire order.

11  There's no question it applies to XPO. We're seeking

12  clarification that it does not apply to Lamb, and, therefore,

13  we're asking for a ruling on that, that it does not apply to

14  Lamb, Lamb was not a party to that sanctions order, and that

15  he should be separated and severed from this case, because XPO

16  is dragging Lamb through the mud. We want to end that and

17  separate these parties and bring that to an end so we can have

18  a distinct claim against each of them, which we do have our

19  own claims against each. They were joint tortfeasors, but we

20  have claims against both. So that's why we're asking for

21  severance. And the motion to stay doesn't make any sense that

22  we should be sitting here in limbo for two years and not be

23  able to depose someone who could die tomorrow and us not have

24  that testimony.

25       So that's really what we're asking for, Your Honor.

1  And I don't know if you want a proposed order sent to you or

2  how your want, or if you want to rule today, or however you

3  wish to proceed.

4          THE COURT: Let's send me a proposed order and give me

5  some time to think about it.

6          MR. OWEN: Okay. When you like that, Your Honor?

7          THE COURT: Friday is a holiday. You want to just say

8  by the early part of next week?

9          MR. OWEN: Sure.

10         THE COURT: Like Tuesday?

11         MR. OWEN: Tuesday?

12         THE COURT: Tuesday by 5:00 p.m.

13         MR. OWEN: Okay. And would you like us to submit it

14 via the portal or to Ms. Chavis or both?

15         THE COURT: Isn't it the best way to send it to you or

16 not?

17         MS. CHAVIS: Yeah, then we can tell you to put it in

18 the portal.

19         MR. OWEN: So you want us just to send it to you? So

20 we don't have to do an e-file or like a--you want us to put it

21 in the portal, too?

22         MS. CHAVIS: Well, send it to me first, and then we

23 can tell you to put it in the portal.

24         MR. OWEN: Okay. So Ms. Chavis first via email. This

25 is Tuesday, July 8, correct, Your Honor?

1          THE COURT: Right, yeah.

2          MR. OWEN: So email it to Ms. Chavis and then upload

3   as a proposed order?

4          THE COURT: Right.

5          MR. OWEN: Would you like these separate, like, two

6   separate orders, might be---

7          THE COURT: Yeah, that'd be better.

8          MR. KESSLER: Two separate orders. All right.

9          MR. OWEN: That's all I have for the plaintiff. I

10  don't know if the defendant has anything else.

11         THE COURT: Do you know how to get up with Miss Gwen?

12         MR. KESSLER: Yes, Your Honor.

13         THE COURT: You know how to send.

14         MR. KESSLER: Thank you, Your Honor. And we thank the

15  Court, and ask the Court, respectfully, to consider our briefs

16  in support.

17         THE COURT: All right. No problem. Thank you, guys.

18         MR. KESSLER: Thank you, Your Honor.

19         MR. OWEN: Thank you, Your Honor.

20         *(End of proceedings at 3:04 p.m.)*

21  _____

22         *(END OF TRANSCRIPT)*

NORTH CAROLINA                  IN THE GENERAL COURT OF JUSTICE
                                   SUPERIOR COURT DIVISION
ROBESON COUNTY                       FILE NO. 22 CVS 1328
_____

CINDY SOLES SMITH, et al.,     ]
                               ]
                               ]
          PLAINTIFFS,          ]
vs.                            ]
                               ]
XPO LOGISTICS FREIGHT, INC.,   ]
et al.,                        ]
          DEFENDANTS.          ]
                               ]

_____

     I, Sherri A. Sealey, CVR-CM, the officer before whom the
foregoing proceeding was taken, do hereby certify that said
transcript is a true, correct, and verbatim transcript of said
proceeding. I further certify that I am neither counsel for,
related to, nor employed by any of the parties to the action
in which this proceeding was heard; and further, that I am not
a relative or employee of any attorney or counsel employed by
the parties thereto, and am not financially or otherwise
interested in the outcome of the action. This the 3rd day of
October, 2025.


                              _____
                              Sherri A. Sealey, CVR-CM