IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:25-cv-01545-D-BM

CINDY SOLES SMITH, Administratrix of the ESTATE OF MARK KEANNAN SMITH,

    Plaintiff,

v.

XPO LOGISTICS FREIGHT, INC.,

    Defendant.

REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND
28 U.S.C. § 1447(c)

    The state court held that XPO engaged in "egregious" discovery misconduct. XPO now accuses Plaintiff of "bad faith." But XPO lies in a bed of its own making.

    First, XPO has no response to a critical piece of evidence for the 30-day removal rule. A year before XPO removed, it knew the amount in controversy exceeded $75,000 because Plaintiff's discovery responses stated that she was seeking Smith's lost wages based on a salary of $175,000. That objective, "four corners" proof is conclusive.

    Second, it makes little sense to accuse Plaintiff of acting in "bad faith" to prevent removal. Plaintiff severed Lamb's claims not because Lamb is an irrelevant party but because Plaintiff wanted to expedite the trial against Lamb during XPO's appeal. That is the opposite of the cases cited by XPO, where plaintiffs voluntarily dismissed jurisdictional "spoilers" right after the one-year deadline.

Finally, since the filing of the remand motion, XPO has continued to engage in misconduct that waives its right to remove. When XPO removed, it had an interlocutory appeal pending in the North Carolina Court of Appeals. Removal terminated that appeal and halted further state-court proceedings. But XPO is continuing to litigate the state-court appeal. On top of that, XPO still hasn't notified the Court of Appeals that the case was removed to federal court. This is waiver on top of waiver.

## ARGUMENT

### I. XPO Did Not Remove Within 30 Days of the Case Becoming Removable.

In her opening brief, Plaintiff showed the many ways in which XPO objectively knew or should have known the amount in controversy more than 30 days before XPO filed its notice of removal. Although XPO tries to explain away some of those points, it has little to say about one of the clearest pieces of evidence: XPO's knowledge that Plaintiff sought loss wages from Smith's $175,000 salary back in 2024.[1]

In written discovery responses, Plaintiff informed XPO that she was seeking the loss of Smith's $175,000 salary. (Ex. 20 at 1-2; Ex. 90 at 5-6). Although XPO learned on June 10, 2024 that the amount in controversy was at least $175,000, (Ex. 90 at 17), XPO didn't file it notice of removal until October 1, 2025, which was *85 days* after entry of the severance order on July 8, 2025.

---

[1] To be clear, Plaintiff stands by each of those points in the opening brief. Plaintiff simply points to the lost-income discovery response to highlight a straightforward and uncontested route to resolving the remand motion.

XPO recognized this argument in its brief but provided no counterargument. *See* Br. at 20. This evidence shows that XPO did not remove within 30 days of the case becoming removable, regardless of the one-year cap and its bad-faith exception.[2]

This damages disclosure satisfies XPO's so-called "four corners" standard. From the four corners of the discovery responses, XPO could "ascertain[]" that the case had become removable because the amount-in-controversy requirement was met.[3] 28 U.S.C. § 1446(b)(3). Defendants who wish to remove must act "promptly to investigate the factual requisites for diversity jurisdiction, including the citizenship of the plaintiff and the amount in controversy." *Lovern v. Gen. Motors Corp.*, 121 F.3d 160, 163 (4th Cir. 1997). Defendants cannot just "ignore pleadings or other documents from which removability may be ascertained and seek removal only when it becomes strategically advantageous for it to do so." *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1125 (9th Cir. 2013).

Yet that's what XPO did. The case was removable on July 8, 2025. But XPO waited until it lost a temporary stay motion and supersedeas petition in the Court of Appeals before it even served its damages discovery requests. That's not allowed.

---

[2] Even if a plaintiff engages in "bad faith" under subsection (c)(1), so that the one-year cap doesn't apply, a defendant must still file a notice of removal within 30 days of the case becoming removable. *See, e.g.*, *Babler v. Soo Line R.R. Co.*, No. 22-CV-560-JPS, 2022 WL 2712889, at *4 (E.D. Wis. July 13, 2022).

[3] XPO's citations to *Hall v. Hillen* No. 2:13-CV-00042-MR-DLH, 2014 WL 839074 (W.D.N.C. Mar. 4, 2014) have no relevance to this case. *Hall* held that "pre-litigation conduct" does not meet the definition of "other paper" within the meaning of § 1446(b), so the court would not consider "Plaintiff's pre-litigation demand letter." *Id.* at *2. Regardless of whether that holding is correct, Plaintiff has not relied on any pre-litigation papers to show removability.

*Northrop Grumman Tech. Servs., Inc. v. DynCorp Int'l LLC*, 865 F.3d 181, 187 (4th Cir. 2017) ("The removal rules do not permit such strategic delay interposed by a defendant in an effort to determine the state court's receptivity to his litigating position." (cleaned up)).

## II. The One-Year Cap Applies Because Plaintiff Has Not Acted in Bad Faith.

Even if XPO filed its notice of removal within 30 days, XPO still cannot escape the one-year cap on removal. XPO tries to circumvent the cap by proving that Plaintiff acted in "bad faith" to prevent removal. XPO makes two arguments. First, it argues that Lamb was joined as a "jurisdictional spoiler" against whom Plaintiff had no intent to litigate. Second, XPO argues that Plaintiff intentionally withheld the amount in controversy to prevent removal within the one-year deadline. Neither argument withstands scrutiny.

First, it is unreasonable to call Lamb a "jurisdictional spoiler" against whom Plaintiff never intended to litigate. If that were true, then Plaintiff would never have sought severance. As the superior court explained, XPO's solo appeal prevented Plaintiff from having a trial against Lamb, even though he was not a party to the appeal. (Ex. 59 at 5-6, ¶¶ 23-31, 36). By severing Lamb, Plaintiff was able to proceed to trial *more quickly* against Lamb, without awaiting the outcome of XPO's appeal. (*Id.*). By expediting Lamb's claims, Plaintiff was not using Lamb as a jurisdictional spoiler. Instead, Plaintiff showed the opposite intent: to litigate fully and immediately against Lamb.

Nonetheless, XPO concludes that "there is no plausible case-related explanation for Lamb's role." Br. at 17. That is an astounding conclusion given that Lamb drove the truck that killed Smith. To prove bad-faith joinder, a defendant "must also show the absence of a basis for a claim." *Willard v. United Parcel Serv.*, 413 F. Supp. 2d 593, 599 (M.D.N.C. 2006). But the basis for the claim against Lamb—the driver-tortfeasor—is quite obvious. XPO never says otherwise.

XPO likens this case to several others. Br at 18-19 & n.8. But in every one of those cases, an in-state defendant could at least plausibly be considered a jurisdictional spoiler because the plaintiff voluntarily dismissed or settled with the spoiler after expiration of the one-year cap. *Lawson v. Parker Hannifin Corp.*, No. 4:13-CV-923-O, 2014 WL 1158880, at *1 (N.D. Tex. Mar. 20, 2014); *Massey v. 21st Century Centennial Ins. Co.*, No. 2:17-CV-01922, 2017 WL 3261419, at *1 (S.D.W. Va. July 31, 2017); *In re Propulsid Prods. Liab. Litig.*, No. MDL 1355, 2007 WL 1668752, at *1 (E.D. La. June 6, 2007); *Davis v. Merck & Co.*, 357 F. Supp. 2d 974, 976-77 (E.D. Tex. 2005) (involuntary dismissal due to plaintiff's failure to prosecute); *Elsholtz v. Taser Int'l, Inc.*, 410 F. Supp. 2d 505, 506 (N.D. Tex. 2006); *Shiver v. Sprintcom, Inc.*, 167 F. Supp. 2d 962, 963 (S.D. Tex. 2001). Here, Plaintiff has expedited her claims against Lamb; she never dismissed them. A plaintiff in Mrs. Smith's shoes could do no more to show a genuine intent to litigate against a defendant.

XPO further points to Plaintiff's decision to not yet depose Lamb, and service of what XPO calls merely "token" written discovery. The written discovery wasn't token, but XPO's counsel treated it that way. Written discovery precedes depositions

because the deposing party needs documents for a productive deposition. Plaintiff requested numerous documents from Lamb to be used in a possible deposition and at trial. Lamb responded by saying that he was "not in possession" of virtually any relevant materials, leaving Plaintiff to get them from XPO. (Ex. 95). XPO, however, refused to participate in discovery, leading to the discovery sanctions entered against it. XPO's argument, therefore, smacks of unclean hands. A deposition of Lamb is useless without the documents, and XPO defied a court order to produce those documents.

What's more, XPO has no good response to the problem of Lamb's Fifth Amendment privilege against self-incrimination. XPO says the criminal charges are "no real obstacle" because Plaintiff "could have obtained an adverse inference in the civil case." Br. at 17. But an adverse inference is not won through a deposition. Rather, *juries* are *permitted* to draw adverse inferences. Plaintiff will need to call Lamb to testify at trial, let him invoke the privilege, and then ask the trial judge to instruct the jury that it can draw an adverse inference. *See, e.g.*, *Panos v. Timco Engine Ctr., Inc.*, 197 N.C. App. 510, 521, 677 S.E.2d 868, 876-77 (2009) (permissive adverse inference cannot be a basis to grant or deny a motion for summary judgment); *Stichting Ter Behartiging v. Schreiber*, 407 F.3d 34, 55 (2d Cir. 2005) (same for Fifth Amendment); *McKillop v. Onslow Cnty.*, 139 N.C. App. 53, 63, 532 S.E.2d 594, 601 (2000) (Fifth Amendment adverse to be drawn by the "finder of fact"). XPO's brief overlooks this basic aspect of trial procedure.

6

Second, XPO accuses Plaintiff of bad faith by intentionally withholding the amount in controversy to prevent removal. This theory ignores the specific procedural history of this case, as well as the law governing "bad faith." To prove "bad faith," XPO must prove that Plaintiff "deliberately failed to disclose the actual amount in controversy to prevent removal." 28 U.S.C. § 1446(c)(3)(B). That statutory mens rea requires proof of a very specific purpose, with an "inquiry on what motivated the plaintiff in the past." *TK Trailer Parts, LLC v. Long*, No. 4:20-CV-2864, 2020 WL 6747987, at *5 (S.D. Tex. Nov. 2, 2020), *report and recommendation adopted,* No. 4:20-CV-2864, 2020 WL 6743738 (S.D. Tex. Nov. 17, 2020). The high statutory bar is why a plaintiff's failure to quantify damages before the one-year cap, standing alone, does not constitute bad faith. *IVS Grp., Inc. v. Nat. Blend Vegetable Dehydration, LLC*, No. 2:18-CV-01456, 2019 WL 267730, at *4 (S.D.W. Va. Jan. 18, 2019).

On the facts, XPO served Plaintiff with a Request for Monetary Relief Sought on December 2, 2024. (Ex. 19). Plaintiff responded three days later. (Ex. 20). At that point, the case was not severed, so Plaintiff would have had no motive to give an inadequate response to deliberately prevent removal. Plaintiff's response identified her categories of damages,[4] including "[l]oss of income." (Ex. 20 at 1). Six months earlier, Plaintiff had already told XPO that she was seeking Smith's lost income pegged at a $175,000 salary. (Ex. 90 at 5-6). If XPO thought the explanation was

---

[4] That was an appropriate response in a wrongful death case: The "damages in any wrongful death action are to some extent uncertain and speculative." *DiDonato v. Wortman*, 320 N.C. 423, 431, 358 S.E.2d 489, 494 (1987) (quoting *Graf v. Taggert*, 204 A.2d 140, 144 (N.J. 1964)).

inadequate, it could've sought relief. *Harris v. Maready*, 311 N.C. 536, 551-52, 319 S.E.2d 912, 921-22 (1984).

XPO's re-served request for monetary relief sought is irrelevant because it was served long after the one-year cap. That request was served on September 8. (Ex. 71). Plaintiff responded the next day. (Ex. 72). XPO served damages admissions nine days later. (Ex. 73). Plaintiff responded within 24 hours stating the obvious: that damages in this wrongful death action well exceed $75,000. (Ex. 69). Even if these documents mattered, Plaintiff's rapid responses rebut an intent to deliberately prevent removal.

### III. XPO Has Waived and Continues to Waive Any Right to Remove.

Finally, XPO's continued litigation of the state-court appeal constitutes waiver of the right to remove.

On May 22, 2025, XPO filed a notice of appeal to the North Carolina Court of Appeals. (Exs. 46-47). On November 8, XPO filed its notice of removal in this Court. (ECF No. 2). On November 9, XPO also filed a notice of the removal in Robeson County Superior Court.[5] To date, however, XPO has not given the North Carolina Court of Appeals notice of its removal of this action to federal court.[6]

As it turns out, that is because XPO believes that it can continue to litigate the state appeal, despite removal. On November 4, 2025, XPO's state appellate counsel asked for a call to confer with Plaintiff's appellate counsel (Troy Shelton) about the record on appeal. The attorneys conferred about various issues related to the record

---

[5] The superior court docket is publicly available: https://shorturl.at/jPgjU.

[6] The docket and filings for the appeal are publicly available: https://www.ncappellatecourts.org/search-results.php?sDocketSearch=P25-506.

under the North Carolina Rules of Appellate Procedure. Surprised that XPO was proceeding with the appeal, Plaintiff's counsel asked what XPO thought the effect of the removal was on the appeal. XPO's counsel responded that she believed the appeal would continue despite the removal, and that XPO would await the result of the appeal. On November 7, XPO's counsel served the state-court proposed record on appeal. (Ex. 96). Now Plaintiff must serve her objections and amendments to the proposed record by December 8. N.C. R. App. P. 11(c).

XPO cannot litigate in both courts. When a case is removed while on appeal in state court, the pending state appeal terminates. *Resol. Tr. Corp. v. Allen*, 16 F.3d 568, 573 (4th Cir. 1994). The appealed-from order gets adopted as the federal district court's own order. *Id.* The would-be appellant can then file a timely notice of appeal from the order, if such order is appealable in federal court. XPO never sought to appeal the sanctions order to the United States Court of Appeals for Fourth Circuit.

This conduct constitutes waiver of the right to remove. Waiver occurs when a litigant "acts in a manner inconsistent" with his rights. *Berghuis v. Thompkins*, 560 U.S. 370, 385 (2010). In the removal context, waiver occurs if a district court finds a clear intent to litigate in state court. *Grubb v. Donegal Mut. Ins. Co.*, 935 F.2d 57, 59 (4th Cir. 1991). Initiating an appeal itself constitutes a waiver of the removal right. *Delaluz v. Mgmt. & Training Corp.*, No. 1:17-CV-16-CW-DBP, 2017 WL 3498682, at *4 (D. Utah Aug. 15, 2017).

A recent decision from the Eastern District of Michigan is instructive here. *See Rosas v. Mich. Dep't of Health & Hum. Servs.*, No. 1:24-CV-11400, 2024 WL 5298284,

at *2 (E.D. Mich. Nov. 20, 2024), *report and recommendation adopted*, 2024 WL 5136894 (E.D. Mich. Dec. 17, 2024). In *Rosas*, a subset of defendants properly removed the case and gave the state court notice of the removal. *Id.* at *2. But then the removing defendants continued letting non-removing defendants litigate in state court, while saying nothing to the federal court about the ongoing state-court litigation. *Id.* at *5. The federal court found that, "through their inaction," the removing defendants "waived their right to remove this case to federal court." *Id.*

The facts of this case are more egregious. In *Rosas*, the removing defendant actually notified the state court of the removal, and then merely stood silent while state-court proceedings continued. Here, XPO *never* notified the North Carolina Court of Appeals of the removal, and is *actively* pressing the state-court appeal forward.

XPO's conduct also violates the statute governing removal procedure. Upon removal, XPO was required to "promptly" notify the state court of the removal by filing a copy of the notice of removal with the state court. 28 U.S.C. § 1446(d). The purpose of notifying the state court is "so that it can stay its proceedings and thereby avoid duplicitous and possibly inconsistent results in the same case." *Delavigne v. Delavigne*, 530 F.2d 598, 601 n.5 (4th Cir. 1976). But XPO chose not to notify the Court of Appeals, in violation of the statute. That is grounds for remand. *See, e.g., Johnson v. Citibank, N.A.*, 63 F. Supp. 3d 545, 555 (D. Md. 2014).

XPO tested the state-court waters before it removed, and now tests this Court's patience by litigating in state and federal courts simultaneously. XPO has repeatedly

treated this litigation as a game in which it gets to make up the rules for everyone else. But as Judge Easterbrook has warned, "[l]awyers and litigants who decide that they will play by rules of their own invention will find that the game cannot be won." *Nw. Nat. Ins. Co. v. Baltes*, 15 F.3d 660, 663 (7th Cir. 1994).

## CONCLUSION

Plaintiff respectfully requests that the Court remand this case and award Plaintiff her reasonable attorney's fees.

This the 4th day of December, 2025.

**MUSSELWHITE, MUSSELWHITE, BRANCH & GRANTHAM, P.A.**

/s/ J. William Owen
J. William Owen
N.C. Bar No. 47994
wowen@mmbglaw.com
P.O. 1448
Lumberton, NC 28359
*Co-Counsel for Plaintiff*

**DOWLING PLLC**

/s/ Troy D. Shelton
Troy D. Shelton
N.C. Bar No. 48070
tshelton@dowlingfirm.com
3801 Lake Boone Trail, Suite 260
Raeligh, NC 27607
*Co-Counsel for Plaintiff*

## CERTIFICATE OF WORD COUNT

Pursuant to Local Rules 7.2(f)(3), undersigned counsel certifies that this memorandum complies with the applicable word limit. Per the word processing software, this memorandum contains 2767 words, excluding the case caption, the signature block, required certificates, table of contents, table of authorities, and any attachments, exhibits, affidavits, or other addenda.

/s/ J. William Owen
J. William Owen
