# Exhibit 95

# Lamb's First Supplemental Discovery Responses (September 3, 2024)

STATE OF NORTH CAROLINA        IN THE GENERAL COURT OF JUSTICE
COUNTY OF ROBESON              SUPERIOR COURT DIVISION
                                       24-CVS-468

CINDY SOLES SMITH, Administratrix of the
ESTATE OF MARK KEANNAN SMITH,

            Plaintiff/Counterclaim-
            Defendant,

      v.                              **DEFENDANT WILLIAM BRATTY**
                               **LAMB'S SUPPLEMENTAL RESPONSES**
WILLIAM BRATTY LAMB,          **TO PLAINTIFF'S FIRST SET OF**
                               **INTERROGATORIES, REQUESTS FOR**
            Defendant,          **PRODUCTION OF DOCUMENTS, and**
                               **REQUESTS FOR ADMISSION**
   and

XPO LOGISTICS FREIGHT, INC.

            Defendant/Counterclaim-
            Plaintiff.

Pursuant to Rules 26, 33, 34, and 36 of the North Carolina Rules of Civil Procedure, Defendant William Bratty Lamb ("Lamb" or "Defendant"), by and through the undersigned counsel, hereby supplements [1] his responses to the First Set of Interrogatories, Requests for Production of Documents, and Requests for Admission served by Plaintiff/Counterclaim-Defendant Cindy Soles Smith, Administratrix of the Estate of Mark Keannan Smith ("Plaintiff").

## INTERROGATORIES

1.    Please give the full name, address and telephone number of the person answering these Interrogatories.

    **ANSWER**:   Defendant identifies William Bratty Lamb, c/o Gordon Rees Scully Mansukhani, LLP, Raleigh, North Carolina 27601.

2.    Identify everyone who resides in your home with you, giving names, ages, and relationships. This information is needed for jury selection purposes.

---

[1] All responses that have been revised and/or supplemented in connection with these Supplemental Reponses are indicated in **bold**.

> **ANSWER**: The following individuals live with Defendant—Sandra Lamb (wife), 28 years old, and Carrie Lamb (daughter), 2 years old.

3.  Identify every person who you are related by blood or marriage who resides in Robeson County, North Carolina. For each person, identify their employer, job position, age and how they are related to you. This information is needed for jury selection purposes.

> **ANSWER**: The following individuals are family members of Defendant living in Roberson County—Nancy Fields (Aunt), April Scott (Aunt), Steve Scott (Uncle), Brandon Scott (Uncle), Beth Ange (Cousin), Chad Maxwell (Cousin), Kevin Britt (Cousin), Jason Britt (Cousin), Joy Britt (Cousin), and Steve Britt (Cousin). Defendant is not aware of their employers, job position, or exact ages.

4.  State the name and present address of each person who the Defendant expects may be called by the Defendant as an expert witness at this trial.

> **ANSWER**: Defendant will produce **and identify** the above-requested information when appropriate.

5.  Describe in detail the subject matter on which each expert retained by you may be expected to testify.

> **ANSWER**: Defendant will produce **and identify** the above-requested information when appropriate.

6.  State in detail the substance and content of all facts and opinions about which each expert may be expected to testify at trial.

> **ANSWER**: Subject to and without waiving the above objections, Defendant will produce the above-requested information when appropriate.

7.  Please identify, including the names, employers, job titles, telephone numbers and addresses, all persons or witnesses (other than expert witnesses) known to Defendant whom Defendant reasonably believes or expects to have personal knowledge of the underlying facts of this the Subject Incident, and for each such person please give a detailed explanation of what knowledge Defendant reasonably believes or expects each such person has.

> **ANSWER**: **Defendant identifies the following individuals:**
>
> - **Chad Mitchell c/o Gordon Rees Scully Mansukhani, LLP 150 Fayetteville St., Suite 1120, Raleigh, NC 27601 is believed to have knowledge of discoverable information relating to, *inter alia*, the immediate inbound incident phone call received from William Lamb following the October 2023.**

2

- Michael Hunt, [not aware of address] 910-733-4146, is believed to have knowledge of discoverable information relating to, *inter alia*, the events immediately leading up, during, and following the October 2023 incident—specifically, an eyewitness account of the events that transpired.

- Mitchell's Rollback & Wrecker Service LLC, 644 Bertha Jones Rd., Rowland, North Carolina 28383, is believed to have knowledge of discoverable information relating to, *inter alia*, the events following the October 2023 incident, damage to decedent's and XPO's vehicle, and decedent's family members visiting the tow yard to retrieve items from decedent's vehicle, photos and videos associated with the incident in addition to impound tickets for Plaintiff and Defendant XPO.

- National Erectors Rebar Inc., 2373 Kenric Rd., Lumberton, North Carolina is believed to have knowledge of discoverable information relating to, *inter alia*, communications and statements of decedent, personal belongings and effects retrieved from the decedent's vehicle.

- Plaintiff and/or Decedent's Family Members are believed to have knowledge of discoverable information relating to, *inter alia*, Plaintiff's global theory of the case, the basis for the events and claims alleged in the Complaint, communications and statements between witnesses of the October 2023 incident, personal belongings and effects retrieved from the decedent's vehicle, and the basis for affirmative defenses alleged in response to Defendant-Counterclaim Plaintiff XPO's counterclaim.

- Responding local law enforcement is believed to have knowledge of discoverable information relating to, *inter alia*, relevant communications and statements between witnesses of the October 2023 incident, personal belongings and effects retrieved from the decedent's vehicle, and Lamb's drug test results immediately following the October 2023 incident.

- William Lamb c/o Gordon Rees Scully Mansukhani, LLP 150 Fayetteville St., Suite 1120, Raleigh, NC 27601 is believed to have knowledge of discoverable information relating to, *inter alia*, Defendant's global theory of the case, the basis for the defenses and affirmative defenses alleged in response to the Complaint, XPO employee related policies, and the events immediately leading up, during, and following the October 2023 incident.

3

- **XPO Logistics Freight, Inc. c/o Gordon Rees Scully Mansukhani, LLP 150 Fayetteville St., Suite 1120, Raleigh, NC 27601** is believed to have knowledge of discoverable information relating to, *inter alia*, Defendant XPO's global theory of the cases, the basis for its defenses and affirmative defenses alleged in response to the Complaint, XPO employee related policies, and the events leading up to, during, and following the October 2023 incident.

**Defendant further reserves the right to supplement this response with additional individuals identified throughout the course of discovery among the parties in this litigation including, without limitation, any persons identified in the documents produced herewith and by other parties.**

8.      Are there any statements or reports by any of these persons or witnesses concerning any aspect of this case in the possession of Defendant? If so, please give the names of any such persons or witnesses, the detailed substance of their statements, and the name, title, address and telephone number of the persons whose statements were taken. Please attach copies of such reports or statements to the answers to these Interrogatories.

**ANSWER**:      Defendant is not in possession of the above-requested information. **Defendant incorporates and references any statements provided by documents produced by Defendant XPO—including without limitation Defendant's written statements provided to XPO and law enforcement, third parties, and/or Plaintiff.**

9.      State in detail how you allege the collision, which is the subject of this lawsuit, occurred. This includes your understanding of <u>how</u> and <u>why</u> the subject collision occurred.

**ANSWER**:      On October 11, 2023, Mark Smith ("Smith") was operating a 2018 Chevrolet pickup truck. Further, and on October 11, 2023, around 7:00am traffic was light and it was clear with good visibility. While traveling on US-74 in Lumberton County, North Carolina, Smith crashed into XPO's truck while traveling at a speed higher than the posted speed limit. Upon information and belief, the brakes in the 2018 Chevrolet were operable on or around 7:00am on October 11, 2023. Following the accident, no tire marks were found in the road indicating that Smith's brakes were being applied five (5) to forty (40) feet away from where he crashed into XPO's truck. Smith was negligent, grossly negligent, reckless, and careless in that he: (a) Operated a motor vehicle in a negligent, reckless, and careless manner endangering the lives of those lawfully on the roadway in violation of N.C. Gen. Stat. § 20-140 and 49 C.R.F. 393, *et seq*; (b) Operated a motor vehicle without due cation and circumspection and in a manner as to endanger persons or property in violation of N.C. Gen. Stat. § 20-140 and 49 C.F.R. 393, *et seq.*; (c) Negligently, recklessly, and carelessly drove a motor vehicle into a highway and failed to stop when Lamb was entering

4

the highway; (d) Drove careless in a manner ignoring the rights and safety of others in violation of N.C. Gen. Stat. § 20-141.6 and 49 C.F.R. 393, *et seq.*; and (e) Negligently failed to maintain a proper lookout in violation of N.C. Gen. Stat. § 20-141 and 49 C.F.R. 393, *et seq.*

10.     Have you prepared or given a statement or account of what happened in the subject collision to anyone? If so, identify all such statements and accounts by explaining when, where, in what form, and to whom the statement or account was given. If you claim privilege, please provide a privilege log.

<u>**ANSWER**</u>:     Defendant prepared a statement to local law enforcement produced alongside these responses. Defendant does not currently recall any other prepared or given statements. Defendant will supplement these responses to the extent any are discovered or later recalled.

11.     Identify each person with whom you communicated in any way regarding the subject collision at any time and provide the details of when, why, where and for what purpose these communications occurred. Communications for which you assert a privilege should be identified on a privilege log.

<u>**ANSWER**</u>:     **Other than the below-referenced counsel, Defendant has communicated with XPO personnel and his immediate family concerning the subject collision. Specifically, and with respect to XPO personnel, Defendant communicated with dispatch, Chad Mitchell, to tell them that the incident occurred. Defendant also participated in an internal investigation process as reflected in the documents produced alongside Defendant XPO's written responses. Namely, Defendant was asked to complete forms for XPO's files. Defendant also spoke to a co-worker at XPO, Ron Kaczkowsky, regarding the lawsuit who suggested Mr. Lamb contact an attorney following the incident. Defendant has had communications with his wife generally concerning the incident (e.g., notifying her that he was in an incident and that a lawsuit has been filed). Defendant also recalls speaking with Carl Goodyear and Vince Hall regarding the incident generally expressing immediate account and feelings of incident. Defendant does not recall any other individuals he spoke to regarding the incident.**

12.     Please give the names, title, present address and telephone numbers of all persons who made photographs, videotapes, measurements, diagrams, plats, drawings or other depictions of the subject accident scene, equipment, and/or any other objects or vehicles, involved in the October 11, 2023 collision that is the subject of this litigation.

<u>**ANSWER**</u>:     Defendant will produce all reports created for disclosure by Defendant's retained expert(s) when appropriate.

5

13.     List any factual errors you contend are contained in the police report of the subject collision. For each such alleged error, state the facts upon which you rely to support your contention and identify any persons and documents that support your contention.

      **ANSWER**:     Defendant is not aware of any factual errors in the police report. Defendant reserves the right to amend this response to the extent later facts are discovered and/or revealed.

14.     Do you accept responsibility for causing the subject collision? Explain why or why not.

      **ANSWER**:     Defendant does not claim responsibility for causing the subject incident. For avoidance of confusion, Defendant incorporates and references his response to Interrogatory No. 9.

15.     Please describe all photographs, videotapes, measurements, diagrams, plats, drawings or other depictions of the subject scene, equipment, vehicles, trailers, and any other objects or locations, involved in the Subject Incident that is the subject of this litigation made either for or on behalf of Defendant or of which Defendant is aware. Please further give the name, title, present address and telephone number of the person having custody over any such photographs, videotapes, measurements, diagrams, plats, drawings or other depictions, and attach copies of any such photographs, videotapes, measurements, diagrams, drawings or other depictions to your answers to these interrogatories.

      **ANSWER**:     Defendant will produce all reports created for disclosure by Defendant's retained expert(s) when appropriate. Further, **Defendant incorporates and references documents produced by Defendant XPO and otherwise those procured during the course of discovery to date.**

16.     Please state whether you contend you have not been properly named and served. If you so contend, please give the correct name and address of Defendant and give the name, title, and present address of the process agent for Defendant.

      **ANSWER**:     Defendant does not contend that he has been improperly named or served in this action.

17.     Please give the name, address, and telephone number of Defendant's supervisor(s) and manager(s) at XPO Logistics Freight, Inc. on October 11, 2023.

      **ANSWER**:     Defendant William Lamb's supervisor at the time of the Subject Incident and now is Brad Lutz. Brad Lutz was in charge of supervising and training Defendant William Lamb. Chad Mitchell was the inbound supervisor on the date of the Subject Incident. Riley Anderson was the safety manager on the date of the Subject Incident.

6

18.    Identify each and every policy of insurance, including excess insurance policies, which may provide coverage regarding any of the acts or omissions asserted against Defendant in Plaintiff's Complaint and for each such policy of insurance, identify the insurance company, the policy number, the coverage limits, and the coverage terms. This request shall include, but not be limited to any and all potential liability policies, umbrella policies, and layered coverage.

>    **ANSWER**:    Defendant is not an expert on insurance or its connection to liability and coverage. **Defendant is not aware of any personal insurance policy or its related coverage that would be applicable to this litigation.**

19.    Please give the name, address, and telephone number of anyone who was involved in the loading of the subject trailer being hauled by Defendant on October 11, 2023.

>    **ANSWER**:    Defendant is unaware of who was involved in the loading of the subject trailer on October 11, 2023.

20.    Explain in detail where you were and what you were doing during the 72 hours immediately prior to and the 48 hours immediately following the subject collision. This response should include the time and location of each pick up, delivery and stop and the reason for each stop (e.g., load, unload, fuel, rest, meal, inspection, repair, other) as well as what you were doing when off duty. Identify all documents that evidence your response and all people who can substantiate your response.

>    **ANSWER**:    **On Sunday, October 8, 2023 Defendant, to the best of his recollection, was likely spending time with his family at home or at church. On Friday, October 13, 2023 Defendant returned to work at XPO but not as a commercial driver given the recent incident. Instead, Defendant was not working and was likely at home. Defendant does not recall his exact activities. Defendant is not aware of what documents that would substantiate his activities 72 hours prior other than written testimony from his family. As for the time 48 hours immediately following the subject collision, Defendant is not aware of any documents that would substantiate his whereabouts.**

21.    With respect to your Hours of Service (HOS) in the eight (8) days leading up to the date of the subject collision, provide the following information:

>    a.    Identify all errors on your logs of which you are aware;
>    b.    Identify all HOS violations of which you are aware;
>    c.    Are you aware of any audits of your HOS for the 8 days leading up to the subject collision?

>    **ANSWER**:    **Defendant incorporates and references the HOS logs produced by Defendant XPO in response to Plaintiff's First Set of Requests for Production of Documents.**

7

22.     With respect to the trip that you were on at the time of the subject collision, provide the following information:

      a.  Identify where and when (date and time) you picked up the load you had at the time of the subject collision;

      b.  Identify where (name and address of location) and when (date and time) the load was to be delivered;

      c.  Identify the location, time, duration, and reason for each stop you made from the time you picked up the load until the time of the subject collision; and

      d.  Identify the route you intended to follow from the point of origin to the point of destination.

**ANSWER:**     **Based on Defendant's recollection, Defendant was headed to Jacksonville, North Carolina during the morning of the subject incident. Defendant does not recall the load that he was delivering. Defendant's trip originated from the Lumberton, North Carolina location and had not made any stops yet.**

23.     For each communication device (cell phone, text message device, email device, etc.) that was in the tractor you were operating on the day of the subject collision, explain whether or not it was in use at any time in the hour preceding the subject collision and identify the service provider, account number, phone number, email address and owner of the device(s).

**ANSWER:**     Defendant had a personal cell phone in the vehicle at the time of the incident. At the time of the Subject Incident, Defendant was on the cell phone using, upon information and belief, a Department of Transportation approved hands-free headset. **Defendant's cell phone provider is Verizon Wireless and his personal cell phone number is 910-827-1910.**

24.     Please identify who you were talking to on your cellular device when the subject collision occurred on October 11, 2023.

**ANSWER:**     Defendant was on a phone call with Vince and Donna Hall.

25.     Please identify the cellular number and cellular provider for the device in which you were talking on at the time of the subject collision on October 11, 2023.

**ANSWER:**     Defendant was using his personal cell phone. Defendant's cell phone provider is Verizon Wireless and the phone number is 910-827-1910.

26.     Identify each motor vehicle collision(s) that you have been involved in during the past 15 years and for each collision describe what happened, where the collision occurred, the names of the other individuals involved, who was at fault and whether there were any injuries.

**ANSWER:**     Defendant **does not recall being in a motor vehicle collision in the past 15 years.**

8

27. For every instance where your driving privileges have been suspended, revoked, cancelled or otherwise restricted in any way, explain why, when and by whom.

**ANSWER**: Defendant has not had his driving privileges suspended, revoked, cancelled, or otherwise restricted.

28. Have you had any medical condition in the past five years that could affect your ability to operate a motor vehicle (including without limitation any condition affecting vision, hearing, blood pressure, nervous system, endocrine system, motor skills, sensory abilities, etc.)? If so, please describe in detail each condition, who has treated you for the condition and the nature and dates of these treatments.

**ANSWER**: Defendant was in good general health at the time of the Subject Incident and there were no injuries or illnesses that would affect his ability to operate a motor vehicle when the subject collision occurred.

29. Please identify any and all employers that you have worked for in the last fifteen (15) years. This would include places in which you have worked as an employee, independent contractor, leased driver or otherwise. Please provide the following information: name of entity or person for whom you worked, addresses, dates you worked there, job position, supervisors name and the reason you left.

**ANSWER**: **Between May 2009 and September 2014, Defendant worked as a Customer Service Clerk, Produce Clerk at Lowes Foods in Lumberton, North Carolina. Between August 2012 to July 2014, Defendant worked at Earle C. Clements Job Corps Academy in Morganfield, Kentucky. Between August 2014 and August 2016 Defendant worked as a Welder in Mueller Steam in Saint Pauls, North Carolina. Between September 2016 and October 2016 Defendant was as a CDL Student in Carolina Trucking Academy in Raleigh, North Carolina. Between November 2016 and May 2019 Defendant worked as a Truck Driver (OTR) for Schneider in Charlotte, North Carolina. Between May 2019 and December 2019, Defendant worked as a TEAM OTR Driver for Quest Global, Inc. in Cartersville, Georgia. Prior to working for XPO, Defendant worked as a Food Delivery Driver for Door Dash and Uber Eats in Lumberton, North Carolina. Driver moved from each job due to either family or additional income.**

30. Please identify the safety director/manager that you or your supervisor would report to at XPO Logistics Freight, Inc. as of October 11, 2023.

**ANSWER**: Riley Anderson was the safety director during the time of the Subject Incident. Further, Defendant reported directly to Brad Lutz.

9

31.     Please describe in detail all training and education (including on the job training) provided to you by or on behalf of XPO Logistics Freight, Inc. at any time and in any way related to the operation of a commercial motor vehicle.

> **ANSWER:** **Defendant incorporates and references the documents detailing Defendant's training at XPO alongside Defendant's responses to Plaintiff's First Set of Requests for Production of Documents. Additionally, Defendant obtained his CDL licensed and later received additional certifications alongside his CDL, namely, the HazMat endorsement, doubles endorsement, and tanker endorsement.**

32.     Please describe all criminal and traffic offenses in which you have been <u>charged</u> and/or <u>convicted</u> in the last ten (10) years. For such charges, please describe the disposition of the charges and what county the charges were disposed of. This specifically includes traffic infractions and citations for which you were *charged*.

> **ANSWER:** **Defendant has not been charged with any criminal or traffic offenses in the last 10 years.**

33.     Have you ever reviewed or otherwise familiarized yourself with the federal trucking regulations that are enforced by the Federal Motor Carrier Safety Administration (FMCSA)?

> **ANSWER:** Defendant at some point reviewed and familiarized himself with regulations in the FMCSA in addition to other rules in order to become and operate as a commercial driver.

34.     Have you ever reviewed or otherwise familiarized yourself with the North Carolina Commercial Driver License (CDL) Manual?

> **ANSWER:** Defendant, on or around 10 years ago, reviewed and familiarized himself with the CDL manual in addition to other rules in order to become and operate as a commercial driver.

35.     On what date did you receive your Commercial Driver License (CDL)?

> **ANSWER:** Defendant received his CDL roughly 10 years ago. Defendant requested exact details regarding this information and will supplement upon receipt.

36.     Identify all training you have received in connection with operating a commercial motor vehicle, including courses taken to obtain your Commercial Driver's License (CDL) and training received since obtaining your CDL.

> **ANSWER:** Defendant received additional certifications alongside his CDL, namely, the HazMat endorsement, doubles endorsement, and tanker endorsement.

37.     Identify the driver of the XPO Logistics Freight, Inc who was directly in front of you and made a left turn onto U.S. Highway 74 Alternate prior to you pulling onto U.S. Highway 74 Alternate.

**ANSWER**:     Defendant does not recall who was directly in front of him.

38.     If you have ever been disqualified from driving a commercial motor vehicle, please describe when and under what circumstances you were disqualified.

**ANSWER**:     Defendant has never been disqualified from driving a commercial motor vehicle.

39.     If you consumed any alcoholic beverages, sedative, tranquilizer, stimulant and/or other prescription and/or over the counter drug or medicine (whether legal or not) during the 72-hour period immediately before the subject collision, identify the substance consumed, the amount consumed, the time and place of consumption and the purpose for the consumption.

**ANSWER**:     **Defendant does not recall consuming any alcoholic beverages, sedative, tranquilizer, stimulant and/or other prescription and/or over the counter drug or medicine during the 72-hour period immediately before the subject collision.**

40.     Have you ever been involved in any lawsuit other than the present one (excluding domestic cases)? If so, explain whether you were a plaintiff, defendant, or witness and identify the jurisdiction, date and nature of the lawsuit.

**ANSWER**:     **Defendant does not recall and/or is not aware of being involved in any lawsuit other than the present one.**

## REQUEST FOR PRODUCTION TO WILLIAM LAMB

1.      All documents, items, or materials in Interrogatories 1 through 40, which Plaintiff requested to be attached to your answers to these interrogatories and which are referenced, relied upon or referred to in your Interrogatory responses above.

> **RESPONSE**:        Defendant will produce documents, if any, responsive to the above-referenced Request.

2.      Any applicable liability insurance policies, including excess insurance policies; and including any policies which provide for a defense to any defendant; and for any primary or excess insurance policies, include the declaration pages, showing limits of liability.

> **RESPONSE**:        Defendant is not an expert on insurance or its connection to liability and coverage. **Further, Defendant is not aware of any applicable personal liability insurance policy or its coverage.**

3.      Copies of all reservation of rights letters or agreements regarding insurance coverage for the subject collision.

> **RESPONSE**:        Defendant is not an expert on insurance or its connection to liability and coverage. **Further, Defendant is not aware of any reservation of rights or agreements.**

4.      A copy of all documents in your possession that relate to work you have done for any trucking company in the past seven (7) years. This includes any documents you prepared for any trucking or transportation company and any documents you ever received from any trucking or transportation company.

> **RESPONSE**:        **Defendant incorporates and references his resume produced alongside Defendant XPO's written responses.**

5.      Any reports to any law enforcement, governmental, or regulatory agency concerning the incident which is the subject of this lawsuit that are known to or in the possession of Defendant.

> **RESPONSE**:        Defendant will produce documents, if any, responsive to the above-referenced Request.

6.      For each witness identified in response to Interrogatory Numbers 4,5,6, above, produce the following:

  a.    A resume, curriculum vitae, or other summary of the expert's credentials   and publications;

  b.    A copy of any and all reports, summaries, field notes, internal memoranda, or any other records of any type or nature prepared, gathered or in the      possession of

said expert which relate in any manner to any factual allegation, claim, or defense in Plaintiff's Complaint or in any of the answers of Defendant.

> **RESPONSE:** Defendant will produce all reports created for disclosure by Defendant's retained expert(s) when appropriate.

7. All documents setting forth the relationship between you and XPO Logistics Freight, Inc. This includes, but is not limited to all leases, employment contracts and independent contractor agreements and other contracts, agreements, memorandum and the like.

> **RESPONSE:** **Defendant references and incorporates the personnel file produced alongside Defendant XPO's written responses.**

8. Please produce for copying and inspection, in their native electronic format, any photographs, videotapes, measurements, diagrams, plats, drawings or other depictions of the subject collision scene, subject vehicles or any other matter involved in any manner with the subject of this lawsuit.

> **RESPONSE:** Defendant will produce all reports created for disclosure by Defendant's retained expert(s) when appropriate. Further, Defendant will produce documents, if any, responsive to the above-referenced Request.

9. Any communications, written or electronic, in their native format, between you and any other Party in this action, relating in any way to the subject matter in this Action. If you claim privilege, please provide a privilege log.

> **RESPONSE:** Defendant will produce documents, if any, responsive to the above-referenced Request.

10. Any and all documents related to your internal investigation of the subject matter of this Action.

> **RESPONSE:** Defendant will produce all reports created for disclosure by Defendant's retained expert(s) when appropriate.

11. A copy of all documents in your possession that relate to your qualifications to operate a commercial motor vehicle.

> **RESPONSE:** Defendant requested and will supplement the production served alongside these responses with documents, if any, responsive to the above Request.

12. A copy of all medical certificates in your possession for the past seven (7) years.

13

**RESPONSE:** Defendant is not aware of any medical certificates in his possession or received in the past seven years. For avoidance of any confusion, Defendant does not believe he has any medical certificates.

13. A copy of all blood and/or urine test results in your possession for the past seven (7) years.

**RESPONSE:** Defendant references and incorporates the lab tests provided alongside Defendant XPO's written responses.

14. All data and materials you have ever obtained through FMCSA's Pre-Employment Screening Program.

**RESPONSE:** Defendant is not in possession of any data or materials from FMCSA's Pre-Employment Screening Program.

15. All documents that relate in any way to your training to operate a commercial motor vehicle.

**RESPONSE:** Defendant is not in possession of any documents that relate to training to operate a commercial motor vehicle other than those produced alongside XPO's written discovery responses.

16. All documents that relate in any way to your orientation and hiring at XPO Logistics Freight, Inc.

**RESPONSE:** Defendant will produce documents, if any, responsive to the above-referenced Request. **Further, Defendant incorporates and references the personnel file produced alongside Defendant XPO's written responses.**

17. A copy of the front and back of every driver's license issued to you in your possession, custody and control.

**RESPONSE:** Defendant incorporates and references the personnel file produced alongside Defendant XPO's written responses.

18. All documents of any kind that relate to any action (formal or informal) by any supervisor or manager or anyone working by or on behalf of XPO Logistics Freight, Inc. directed to you for the purpose of teaching, counseling, disciplining, correcting or otherwise managing you in any way relating to the safe operation of a commercial vehicle.

**RESPONSE:** Defendant will produce, if any, documents responsive to the above-referenced Request.

14

19.     For each communication device (e.g., cell phone, PDAs, smartphones, texting and emailing devices, etc.) that was in the tractor that you were operating at the time of the subject collision, produce all documents reflecting usage and billing for the time period beginning 48 hours before the subject collision and ending 48 hours after the subject collision. This includes all devices, whether owned by you or not, and whether it was in use at the time of the subject incident or not.

**RESPONSE**:          **Defendant has requested and will produce cell phone data, specifically, reflecting billing for the time period beginning 48 hours before the subject collision and ending 48 hours after the subject collision. Defendant is not aware of where to obtain "usage" information for his personal device.**

20.     Copies of each Motor Vehicle Record (MVR) regarding you in your possession.

**RESPONSE**:          **Defendant has requested and will produce, if any, copies of his Motor Vehicle Record (MVR).**

21.     Copies of each Drive A Check (DAC) report regarding you in your possession.

**RESPONSE**:          **Defendant has requested and will produce, if any, copies of his Drive A Check (DAC) report.**

22.     Copies of each personnel file and employment-related file in your possession.

**RESPONSE**:          Defendant is not the proper custodian for the documents in the above-referenced Request. **Defendant incorporates and references the personnel file produced alongside Defendant XPO's written responses.**

23.     Copies of all medical treatment records related to injuries sustained by you during the subject collision.

**RESPONSE**:          Defendant is not in possession of the above-referenced documents.

24.     All correspondence and other communication of any kind between you and any third party relating to the subject collision.

**RESPONSE**:          **Defendant will produce, if any, communications and correspondence between him and any third party relating to the subject collision other than those with the undersigned counsel.**

25.     All correspondence and other communication of any kind between you and any other Defendant in this case.

15

**RESPONSE:**     Defendant will produce, if any, responsive non-privileged documents.

26.     All documents that relate, refer and/or discuss in any way the load you hauled at the time of the subject collision, including by way of example and without limitation, all manifest, bills of lading, weight receipts, dispatch documents, content summaries and documents that address the contents, ownership, pick-up, detainment and delivery of the load.

**RESPONSE:**     **Defendant is not in possession of documents he hauled at the time of the subject collision. Defendant is also not the proper custodian.**

27.     Copies of all policies, procedures, rules, guidelines, directives and instructions ever given to you by XPO Logistics Freight, Inc.

**RESPONSE:**     Defendant will produce, if any, documents responsive to the above-referenced Request.

28.     Copies of all employee handbooks and/or manuals provided to you by XPO Logistics Freight, Inc. at any time.

**RESPONSE:**     Defendant will produce, if any, documents responsive to the above-referenced Request.

29.     Copies of all documents sent to or received from any governmental agency relating to the subject collision and/or your operation of a commercial motor vehicle in the past three years.

**RESPONSE:**     **Defendant is not in possession of the above-referenced documents.**

30.     Copies of all hours of service logs and other time logs in your possession for the period beginning 180 days before the Subject Incident and ending 14 days following the Subject Incident.

**RESPONSE:**     **Defendant incorporates and references the HOS logs produced alongside Defendant XPO's written responses.**

31.     In addition to the documents responsive to the preceding Request, produce all documents showing where you were and what you were doing during the period beginning 14 days before the Subject Incident and ending 2 days following the Subject Incident.

**RESPONSE:**     **Defendant does not recall where he was and what exactly he was doing 14 days prior leading up to the subject incident. Further, based on his recollection, Defendant does not believe he is in possession of any documents showing what he was doing during the 16 day period. To the extent documents become available,**

16

**Defendant reserves the right to supplement this response and/or documents produced alongside these written responses.**

32.     A copy of all audits and summaries of your logs covering the period beginning one year prior to the Subject Incident and ending 14 days following the Subject Incident.

**RESPONSE**:     **Defendant is not in possession of the above-referenced documents.**

33.     For the period beginning 14 days prior to the Subject Incident and ending 48 hours after the Subject Incident produce all of the following documents in your possession:

    a.    dispatch records;
    b.    fax transmissions;
    c.    mobile radio records;
    d.    pre-rate records;
    e.    wrecker or tow truck records;
    f.    pick-up and delivery records;
    g.    trip summaries;
    h.    delivery manifests;
    i.    credit card receipts;
    j.    toll tickets;
    k.    fuel receipts;
    l.    weight tickets;
    m.    fuel tax records;
    n.    state entry and departure records;
    o.    expense sheets;
    p.    trailer interchange records;
    q.    bills of lading;
    r.    manifests and waybills;
    s.    rental contracts involving the vehicle; and
    t.    seal records for the trailer.

**RESPONSE**:     **Defendant is not in possession of the above-referenced documents.**

34.     With respect to each expert witness who may provide testimony at the trial of this case, provide:

    a.    A copy of all documents (as that term is defined above) and items of any kind produced <u>to</u> said expert;
    b.    A copy of all documents (as that term is defined above) and items of any kind generated or produced <u>by</u> said expert;
    c.    A copy of the entire file of said expert;
    d.    A current résumé or curriculum vitae for said expert; and
    e.    All billing records and work logs for said expert.

**RESPONSE**:        Defendant will produce all reports created for disclosure by Defendant's retained expert(s) when appropriate.

35.    A copy of any and all documents and other materials which support any contention that the Subject Incident was the fault of anyone other than you.

**RESPONSE**:        Defendant will produce all reports created for disclosure by Defendant's retained expert(s) when appropriate.

36.    Copies of all diagrams, graphs, illustrations, photographs, charts, pictures, models, blow-ups, or any other document or thing, including electronically created charts, animations, or data that you intend to utilize as an exhibit, demonstrative exhibit, or aid in the trial of this case not previously supplied.

**RESPONSE**:        Defendant will produce all reports created for disclosure by Defendant's retained expert(s) when appropriate.

37.    Produce any document or thing that you contend is evidence, proof, or support of your claims on any issue of negligence or causation as to the Subject Incident, including but not limited to admissions of fault, engineering analysis, scientific tests, and official or unofficial reports.

**RESPONSE**:        Defendant will produce all reports created for disclosure by Defendant's retained expert(s) when appropriate.

38.    Produce any document or thing that you contend evidences or supports your denial of any of Plaintiff's Requests for Admissions.

**RESPONSE**:        Defendant will produce, if any, documents responsive to the above-referenced Request.

39.    If any surveillance has been undertaken by or on behalf of you, produce a copy of all reports, photographs, video and anything else generated through that investigation.

**RESPONSE**:        **Defendant is not in possession of any surveillance videos, reports, or photographs generated through the investigation.**

40.    Copies of all out of service orders for the tractor in question (i.e., the tractor being operated by you on October 11, 2023) in your possession.

**RESPONSE**:        Defendant is not in possession of the above-requested documents.

41.    Produce all documents given to any person or entity, including any insurance company in return for payment in whole or in part for property damage, e.g., loan receipt(s), release(s), assignment(s), etc.

18

> **RESPONSE:** Defendant is not an expert on insurance or its connection to liability and coverage. **Further, Defendant is not in possession of the above referenced documents.**

42. For the tractor and trailer involved in the Subject Incident, produce all the Driver Vehicle Inspection Reports (DVIR) from the period beginning six months before the Subject Incident and ending one week after the Subject Incident.

> **RESPONSE:** **Defendant is not in possession of the above-referenced documents.**

43. Copies of all documents in your possession, custody and/or control relating in any way to the Subject Incident.

> **RESPONSE:** Defendant will produce, if any, documents responsive to the above-referenced Request.

44. Copies of all documents sent by you to any person or entity (other than your attorney(s)), regarding the Subject Incident and/or describing the Subject Incident.

> **RESPONSE:** Defendant will produce, if any, documents responsive to the above-referenced Request.

45. A copy of every document related to any investigation done by or on behalf of XPO Logistics Freight, Inc. of the scene of the Subject collision.

> **RESPONSE:** Defendant will produce all reports created for disclosure by Defendant's retained expert(s) when appropriate.

46. All documents that set forth any facts leading up to the subject collision.

> **RESPONSE:** **Based on Defendant's reasonable understanding of the above-referenced request, documents have already been produced (specifically, with respect to previously requests for production of documents).**

47. All documents that explain what caused the subject collision.

> **RESPONSE:** Defendant will produce all reports created for disclosure by Defendant's retained expert(s) when appropriate. Further, Defendant will produce, if any, documents responsive to the above-referenced Request.

48. All documents assessing preventability of and/or fault for the subject collision.

19

**RESPONSE**: Defendant will produce all reports created for disclosure by Defendant's retained expert(s) when appropriate. Further, Defendant will produce, if any, documents responsive to the above-referenced Request.

49. Copies of all photographs, video, computer simulations, and any other documents depicting:

      a. Any vehicle involved in the Subject collision;
      b. Any person involved in the Subject collision
      c. The scene of the Subject collision; and/or
      d. Any evidence (roadway markings or other) relevant to the Subject collision.

**RESPONSE**: Defendant will produce all reports created for disclosure by Defendant's retained expert(s) when appropriate. Further, Defendant will produce, if any, documents responsive to the above-referenced Request.

50. Copies all reports relating to the subject incident in your possession custody and/or control.

**RESPONSE**: Defendant will produce all reports created for disclosure by Defendant's retained expert(s) when appropriate. Further, Defendant will produce, if any, documents responsive to the above-referenced Request.

51. A copy of all correspondence and other communications (including e-mail) that you have had with any person (other than your lawyer) involving the Subject Incident.

**RESPONSE**: **Defendant will produce, if any, documents reflecting communications with any third-party other than his counsel.**

52. All tapes and transcripts of conversations, interviews, statements, etc. of any witness, party or any other entity whatsoever regarding any aspect of the Subject Incident, the injuries or damages resulting therefrom, or this lawsuit.

**RESPONSE**: Defendant will produce all reports created for disclosure by Defendant's retained expert(s) when appropriate. Further, Defendant will produce, if any, documents responsive to the above-referenced Request.

20

## REQUESTS FOR ADMISSION

1.    Admit that you have been properly served with the Summons and Complaint in this action.

**RESPONSE: Admitted**

2.    Admit that you have been properly named in the Summons and Complaint in this Action.

**RESPONSE: Admitted**

3.    Admit that proper *in personam* jurisdiction is present over you.

**RESPONSE: Admitted.**

4.    Admit that you stopped in the roadway completely blocking all westbound lanes of U.S. 74 Alternate on October 11, 2023.

**RESPONSE: Denied**

5.    Admit that you were talking on a cellular device at the time of the subject collision.

**RESPONSE: Admitted**

6.    Admit that at the time of the subject collision you did not have your seat belt on.

**RESPONSE: Admitted**

7.    Admit that you were distracted by your cellular device and conversation on October 11, 2023 immediately prior to the subject collision.

**RESPONSE: Denied**

8.    Admit that you failed to yield right of way to decedent Mark K. Smith's 2018 Chevrolet Silverado vehicle on October 11, 2023.

**RESPONSE: Denied**

9.    Admit that on October 11, 2023, you were acting as an employee of XPO Logistics Freight, Inc.

**RESPONSE: Admitted.**

21

10.     Admit that on October 11, 2023, you were acting within the course and scope of your employment with XPO Logistics Freight, Inc.

**RESPONSE: Admitted.**

11.     Admit that you were operating the subject tractor-trailer owned by XPO Logistics Freight, Inc. and were doing so in furtherance of the business interests of XPO Logistics Freight, Inc.

**RESPONSE: Admitted.**

This the 3rd day of September, 2024.

                                        **Gordon Rees Scully Mansukhani, LLP**

                         By:    _____
                                        Megan M. Stacy
                                        North Carolina Bar No. 47108
                                        Le'Ron A. Byrd
                                        North Carolina Bar No. 55732
                                        150 Fayetteville Street, Suite 1120
                                        Raleigh, NC 27602
                                        Phone: 919-787-4555
                                        Fax: 919-741-5840
                                        E-mail: mstacy@grsm.com
                                        E-mail: lbyrd@grsm.com
                                        *Counsel for Defendant XPO Logistics*
                                        *Freight, Inc. and William Lamb*

**CERTIFICATE OF SERVICE**

This is to certify that I caused the foregoing **Supplemental Responses to Plaintiff's First Set of Discovery Requests** served upon all counsel of record by email pursuant to the North Carolina Rules of Civil Procedure addressed as follows:

J. William Owen
Musselwhite, Musselwhite, Branch & Grantham, P.A.
P.O. Box 1448
Lumberton, NC 28359
wowen@mmbglaw.com
*Counsel for Plaintiff Cindy Smith,*
*Administratrix of the Estate of Mark K. Smith*

Jennifer Welch
Cranfill Sumner
P.O. Box 27808
Raleigh, NC 27611-7808
jwelch@cshlaw.com
*Counsel for Counterclaim-Defendant Cindy Smith,*
*Administratrix of the Estate of Mark K. Smith*

This the 3rd day of September, 2024.

**Gordon Rees Scully Mansukhani, LLP**

By: _____
Le'Ron A. Byrd

23