STATE OF NORTH CAROLINA

ROBESON COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
24 CVS 468

|  |  |
|---|---|
| CINDY SOLES SMITH, Administratrix of the ESTATE OF MARK KEANNAN SMITH | ) ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| WILLIAM BRATTY LAMB and XPO LOGISTICS FREIGHT, INC. | ) ) ) |
| Defendants. | ) ) |

## ORDER GRANTING PLAINTIFF'S MOTION FOR SANCTIONS AND SECOND MOTION TO COMPEL AGAINST DEFENDANT XPO LOGISTICS FREIGHT, INC.

THIS CAUSE came before the Undersigned on Plaintiff's Motion for Sanctions and Second Motion to Compel Against Defendant XPO Logistics Freight, Inc ("XPO") on April 16, 2025. This Court, having read the Motion, heard the oral arguments of the parties, and having read the submissions of the parties, is of the opinion that Plaintiff's Motion for Sanctions and Second Motion to Compel should be **GRANTED** and hereby issues the following Order pursuant to Rules 26, 33, 34, and 37 of the North Carolina Rules of Civil Procedure:

1. This Action arises out of the horrific death of Mark Smith, who was killed in a collision on U.S. 74 Alternate on October 11, 2023, in Robeson County, North Carolina.

2. The subject collision occurred when decedent Mark Smith collided with a tractor-trailer owned by XPO, a logistics and transportation conglomerate headquartered in Greenwich, Connecticut.

1

3.      XPO is one of the largest and most sophisticated "less-than-truckload" (LTL) transportation companies in the world, with nearly 10,000 power units and over 12,500 commercial vehicle operators.

4.      On June 5, 2024, Plaintiff served XPO with her First Set of Interrogatories, First Request for Production of Documents and First Request for Admission.

5.      On June 27, 2024, XPO moved for an extension of time to respond to Plaintiff's First Set of Interrogatories, First Request for Production of Documents and First Request for Admission.

6.      The Clerk entered an Order enlarging the time for XPO to respond to Plaintiff's First Set of Interrogatories, First Request for Production and First Request for Admission to and including August 5, 2024.

7.      On August 6, 2024, XPO served untimely responses to Plaintiff's First Set of Interrogatories, First Request for Production of Documents and First Request for Admission.

8.      The Court finds and concludes that XPO's Responses to Plaintiff's First Interrogatories, First Request for Production of Documents and First Request for Admission contained numerous improper objections, refusals to substantively answer, improper limitations and XPO withheld clearly responsive documents and materials from Plaintiff.

9.      On August 6, 2024, counsel for Plaintiff sent a detailed correspondence to counsel for XPO advising counsel of the consequences of its untimely discovery responses and requested prompt supplementation.

2

10. On August 22, 2024, counsel for Plaintiff again sent a detailed correspondence to XPO advising counsel of the improper objections and past-due discovery and again requested complete responses on or before August 30, 2024.

11. On August 30, 2024, counsel for XPO requested another extension of time to fully respond to Plaintiff's First Set of Interrogatories, First Request for Production of Documents and First Request for Admission, as requested in Plaintiff's correspondence dated August 6, 2024 and August 30, 2024.

12. Counsel for Plaintiff allowed this extension and voluntarily enlarged the deadline to September 3, 2024 for XPO to respond to the initial discovery served by Plaintiff.

13. On September 3, 2024, XPO served its First Supplemental Responses to Plaintiff's First Set of Interrogatories, First Request for Production of Documents and First Request for Admission.

14. After reviewing the production and responses from XPO, on September 4, 2024, counsel for Plaintiff again advised counsel for XPO of the various ongoing discovery deficiencies – including the production of XPO's insurance policies, declaration pages, training materials, the employee handbook and basic shipping documents (e.g., Bill of Lading and Manifest) that were intentionally withheld from Plaintiff without justification.

15. On October 10, 2024, counsel for Plaintiff sent counsel for XPO a detailed correspondence which requested supplemental discovery responses to the following specific request:

    a. <u>Request for Production 2</u> (request for the document retention policy of XPO);

    b. <u>Request for Production 3 and 4</u> (request for <u>all</u> insurance policies for XPO, including all excess policies);

c. <u>Request for Production 6</u> (request for the Driver Qualification File, Driver Investigation File and Driver History File);

d. <u>Request for Production 33</u> (email communications between Lamb and XPO for 90 days prior to the subject collision);

e. <u>Request for Production 34</u> (request for communications between XPO and Lamb from any onboard communication systems);

f. <u>Request for Production 35</u> (request for all onboard audio and visual telematics data and videos);

g. <u>Request for Production 40</u> (request for DVIR reports);

h. <u>Request for Production of 42</u> (request for basic shipping documents including the manifest, bill of lading and dispatch documents);

i. <u>Request for Production 46</u> (documents concerning preventability analysis completed on behalf of XPO and the conclusions of such analysis);

j. <u>Request for Production 55-59</u> (request for training materials that were provided to Defendant Lamb);

k. <u>Request for Production 60</u> (request for documents related to hierarchy of supervisors and management at XPO);

l. <u>Request for Production 61</u> (request for training documents provided to XPO employees) ;

m. <u>Request for Production 63-64</u> (request for contracts or agreements between XPO, its driver (Lamb) and any other entities involved in the subject transport);

n. <u>Request for Production 65</u> (request for XPO's "Accident Register" which is

required to be maintained under federal law);

o. <u>Request for Production 66</u> (request for 30(b)(6) deposition transcripts from XPO corporate designee(s) for injury or death claims in last 5 years);

p. <u>Interrogatory 3</u> (information requested concerning injury and death claims and lawsuits involving XPO);

q. <u>Interrogatory 5</u> (seeking actual written responses to (a)-(g));

r. <u>Interrogatory 6</u> (seeking actual written responses to (a)-(e));

s. <u>Interrogatory 7</u> (seeking actual written responses to (a)-(e));

t. <u>Interrogatory 12</u> (seeking actual written responses to (b)-(d));

u. <u>Interrogatory 14</u> (seeking actual written responses to the question asked);

v. <u>Interrogatory 15</u> (seeking actual written responses to the question asked);

w. <u>Interrogatory 20</u> (seeking written responses to internal investigation documents referenced by XPO);

x. <u>Interrogatory 22</u> (seeking actual written responses, not direction to documents referenced by XPO);

y. <u>Interrogatory 26</u> (seeking written responses to internal investigation documents referenced by XPO);

z. <u>Interrogatory 32</u> (seeking written responses to internal investigation documents referenced by XPO);

aa. <u>Interrogatory 36</u> (seeking written responses concerning XPO's accident review board and preventability determination completed by XPO);

bb. <u>Interrogatory 38</u> (seeking actual written responses concerning all liability insurance coverage for XPO)

5

16.     In the detailed correspondence of October 10, 2024, counsel for Plaintiff requested supplemental responses within 15 business days and once again certified that Plaintiff would seek the Court's intervention under Rule 37 if substantive responses were not received in a timely manner.

17.     On October 22, 2024, counsel for Plaintiff served its Second Request for Production of Documents on XPO, which related specifically to telematics software used by XPO.

18.     On October 29, 2024, counsel for Plaintiff sent counsel for XPO a detailed correspondence, once again requesting the insurance coverage and declaration pages for XPO, which were still being intentionally withheld from production without justification.

19.     In a letter dated October 29, 2024, counsel for Plaintiff alternatively requested an affidavit from XPO concerning the existence of excess insurance coverage that would be potentially applicable to this wrongful death action since XPO continued to withhold highly relevant insurance materials without justification.

20.     On November 1, 2024, as a final show of good faith and cooperation, counsel for Plaintiff sent counsel for XPO a detailed correspondence and agreed to voluntarily limit the scope of her request for supplementation with an updated due date of December 2, 2024.

21.     After multiple additional requests for further extensions of time by XPO, counsel for Plaintiff voluntarily agreed to a new due date of December 23, 2024, for all supplemental discovery responses, since that date correlated with XPO's due date for its responses to Plaintiff's Second Request for Production of Documents.

22.     On December 23, 2024, at 4:41pm, XPO served its responses to Plaintiff's November 1, 2024 detailed request for supplementation and also served its responses to

Plaintiff's Second Request for Production of Documents.

23. The Court finds and concludes that XPO's December 23, 2024 supplementation and December 23, 2024 responses to Plaintiff's Second Request for Production of Documents contained numerous improper objections, refusals to substantively answer, improper limitations of their responses and XPO withheld clearly responsive documents and materials from Plaintiff without justification.

24. The Court finds and concludes that as of the date of this Order, XPO has refused to produce responsive and discoverable documents, materials, data and files related to its telematics systems, including from Samara or Lytx.

25. On December 24, 2024, counsel for Plaintiff advised counsel for XPO that the responses to Plaintiff's Second Request for Production of Documents and the supplementation in response to the November 1, 2024 request from Plaintiff, were both woefully insufficient and counsel for Plaintiff advised XPO that a Rule 37 motion to compel was forthcoming.

26. The Court hereby finds and concludes that throughout the pendency of this Action, XPO has displayed a calculated pattern of discovery abuse and, on numerous occasions, has egregiously violated its obligations to Plaintiff and to this Court under the North Carolina Rules of Civil Procedure.

27. The Court further finds and concludes that XPO has exhibited a pattern of doing so, despite many attempts by Plaintiff's counsel to resolve these discovery deficiencies without the need for judicial intervention.

28. On January 2, 2025, Plaintiff filed a Motion to Compel Against XPO and that motion was heard by this Court on January 13, 2025.

29. On January 21, 2025, this Court entered an Order compelling XPO to respond fully to certain discovery – specifically set forth in the Order – within 30 days of the entry of the Order.

30. The Court finds and concludes that the January 21, 2025 Order unambiguously and unequivocally commanded certain production and supplementation on or before February 21, 2025.

31. The Court finds and concludes that XPO failed to serve *any* additional discovery whatsoever on or before February 21, 2025, despite being ordered to do so.

32. The Court finds and concludes that XPO failed to move to enlarge the time in which it was commanded to respond to the January 21, 2025 Order on or before February 21, 2025.

33. Counsel for Plaintiff communicated with counsel for XPO by electronic mail on February 24, 2025 and advised counsel for XPO that they were violating the Court's January 21, 2025 Order and asked counsel for XPO to "state their intentions prior to Plaintiff moving for sanctions and further moving to compel."

34. On February 26, 2025, past the deadline set by this Court in the Order dated January 21, 2025, XPO served extremely limited and vague supplemental discovery responses.

35. The Court finds and concludes that the February 26, 2025 supplemental responses of XPO were *unsigned* by counsel and remain *unsigned* by counsel in direct violation of Rule 11(a) of the North Carolina Rules of Civil Procedure.

36. Likewise, the Court finds and concludes that the February 26, 2025 supplemental responses of XPO were also *unverified* by anyone at XPO.

37.     The Court finds and concludes that the unsigned and unverified February 26, 2025 supplemental responses of XPO were woefully inadequate and clearly violated the Court's January 21, 2025 Order.

38.     In XPO's limited supplemental responses dated February 26, 2025, XPO stated that it had "filed a Motion for Reconsideration that includes a request for the Court to reconsider [certain] provisions of the Order."

39.     The Court finds and concludes that the Motion for Reconsideration referenced in the February 26, 2025 supplemental responses was not actually filed until <u>two days later</u> on February 28, 2025.

40.     XPO then attempted to have its Motion for Reconsideration heard on March 17, 2025, but failed to serve a Notice of Hearing at least five days before the hearing. Counsel for Plaintiff objected to XPO's attempt to circumvent the Rules of Civil Procedure and requested that the Court not hear the improperly noticed Motion for Reconsideration on March 17, 2025.

41.     Plaintiff originally noticed her Motion for Sanctions and Second Motion to Compel for March 17, 2025, however at the request of XPO, the Court continued the matter to April 16, 2025, to be heard by the Undersigned, who originally issued the January 21, 2025 Order to Compel.

42.     In a correspondence dated March 17, 2025, 24 days after the mandatory deadline set by the January 21, 2025 Order, counsel for Plaintiff unequivocally warned counsel for XPO that the January 21, 2025 Order "was <u>not</u> tolled and that the ongoing violation of the Court's Order would likely result in severe sanctions under Rule 37(b)."

9

43.     The Court finds and concludes that XPO has continually, intentionally and egregiously violated its obligations to Plaintiff and to this Court under the North Carolina Rules of Civil Procedure.

44.     The Cout further finds and concludes that XPO has exhibited a deliberate and calculated pattern of doing so, despite many attempts by Plaintiff's counsel to resolve these discovery issues and deficiencies without judicial intervention and despite the January 21, 2025 Order.

45.     The Court finds and concludes that Plaintiff is unable to fairly and fully prosecute her various claims without the critical and relevant materials being intentionally and unjustly withheld by XPO.

46.     The Court notes that this matter is currently set for trial on May 12, 2025 and that Plaintiff has been severely prejudiced by the ongoing discovery abuse and misconduct of XPO.

## ORDER FOR SANCTIONS

47.     XPO's violations of the January 21, 2025 Order resulted in the withholding of information, documents, materials, and files that are highly relevant towards necessary elements of proof for claims asserted by Plaintiff in her First Amended Complaint.

48.     XPO's misrepresentations to counsel regarding the existence or lack thereof of highly relevant and discoverable materials (e.g., insurance coverage, telematics data, prior serious injury and death claims/lawsuits, training materials, preventability analysis materials, among others) violated XPO's obligations to seasonably supplement and amend discovery responses pursuant to Rule 26(e).

49. The Court further finds and concludes that XPO's conduct in making these misrepresentations, which it knew or should have known would be reasonably relied upon by Plaintiff, implicates the Court's inherent powers to control proceedings before it.

50. XPO's answers to certain discovery request served by Plaintiff were so evasive and incomplete that, pursuant to Rule 37, the Court treats them as a failure to answer.

51. The Court finds and concludes that, due to this failure to answer, sanctions are available under Rule 37(d) regarding these evasive and incomplete responses.

52. The Court finds and concludes that XPO failed to comply with the Court's January 21, 2025 Order.

53. The Court finds and concludes that, as of the date of this Order, XPO continues to violate the Court's January 21, 2025 Order.

54. The Court has considered all sanctions available under Rules 26(e), 37(b), and 37(d), and the inherent power of the Court to control proceedings before it, including the striking of XPO's Answer in its entirety, the granting of a default judgment against XPO on the issue of liability, deeming Plaintiff's First Requests for Admission to be admitted as to XPO, and the imposition of contempt proceedings against XPO.

55. The irreparable prejudice to Plaintiff's claims caused by the ongoing violations of the Court's January 21, 2025 Order squarely relate to various claims asserted by Plaintiff in the First Amended Complaint.

56. The Court, in its discretion pursuant to the North Carolina Rules of Civil Procedure, including Rules 26, 37(a), 37(b)(2), and 37(d), and its inherent authority to control proceedings before it, hereby finds and concludes that the following sanctions are necessary and appropriate to remedy the ongoing discovery violations by XPO:

11

a. It is established as a fact for all purposes in this Action, including dispositive motions and trial, that on October 11, 2023, XPO employee William Lamb, proceeded into the intersection of U.S. Highway 74 Alternate and W. 5th Street Extension and stopped his tractor-trailer directly in front of decedent Mark Smith and such conduct of William Lamb was negligent, careless, reckless and grossly negligent.

b. It is established as a fact for all purposes in this Action, including dispositive motions and trial, that on October 11, 2023, XPO employee William Lamb drove the subject tractor-trailer into a busy highway intersection and suddenly stopped, when William Lamb was aware of the presence of decedent Mark Smith's vehicle approaching from his left, and a school bus approaching from his right and such conduct of William Lamb was negligent, careless, reckless and grossly negligent.

c. It is established as a fact for all purposes in this Action, including dispositive motions and trial, that on October 11, 2023, XPO employee William Lamb was distracted by a phone call when the subject collision occurred and such conduct of William Lamb was negligent, careless, reckless and grossly negligent.

d. It is established as a fact for all purposes in this Action, including dispositive motions and trial, that on October 11, 2023, XPO employee William Lamb violated policies of XPO with respect to distracted driving and such conduct of William Lamb was negligent, careless, reckless and grossly negligent.

e. It is established as a fact for all purposes in this Action, including dispositive motions and trial, that XPO failed to properly train and supervise employee

12

William Lamb in accordance with industry standards and that said conduct of XPO was negligent, careless, reckless and grossly negligent.

    f.   The Court, in its discretion, hereby strikes the following defenses contained within Defendant XPO's Answer to Plaintiff's First Amended Complaint:

        i.   Second Defense (contributory negligence);

        ii.   Third Defense (general negligence denial);

        iii.   Sixth Defense (general negligence denial);

        iv.   Seventh Defense (causation denial);

        v.   Eighth Defense (contributory negligence)

57.    The Court, in its discretion, has determined that the sanctions entered under this Order are the only just and appropriate sanctions in view of the totality of the circumstances of this case.

58.    The Court has considered all lesser sanctions and finds and concludes that the imposition of lesser sanctions is inadequate given Defendant XPO's continuing discovery abuse and misconduct, the needs of the litigation, and the critically relevant nature of the documents and information that have been intentionally and unjustly withheld from Plaintiff.

## SECOND ORDER TO COMPEL

59.    The Court, in its discretion, pursuant to Rules 26, 33, 34, and 37 of the North Carolina Rules of Civil Procedure, hereby orders that XPO further supplement their responses to Plaintiff's discovery request, within thirty (30) days from the entry of this Order, specifically as follows:

13

a. <u>Interrogatory No. 3:</u> XPO shall provide a list of all claims or lawsuits filed against XPO involving serious injury or death for the past three (3) years. This list shall include a brief description of the parties, jurisdiction and the circumstances of each claim/suit and the disposition of each claim/suit. For purposes of this supplementation, the term "serious" shall include any of the following: fractures, traumatic brain injury, burns, amputation(s), paralysis, spinal cord injuries, loss of vision and loss of use of an upper or lower extremity.

b. <u>Interrogatory No. 5:</u> XPO shall provide a detailed description of all telematics software being used by XPO at the time of the collision on October 11, 2023.

c. <u>Interrogatory No. 14:</u> XPO shall provide a detailed response that sets forth all formal and informal disciplinary and/or counseling actions regarding employee William Lamb undertaken by XPO at any time.

d. <u>Interrogatory No. 22:</u> XPO shall, in detail, identify all policies, procedures, rules, guidelines, directives, manuals, handbooks and instructions that were in effect for employee William Lamb on October 11, 2023.

e. <u>Interrogatory No. 36:</u> XPO shall provide the identities of all persons involved with the preventability analysis/determination concerning the subject crash of October 11, 2023, including the dates of the review, and the conclusions that were reached.

f. <u>Interrogatory No. 38:</u> XPO shall identify and list the insurer, insured and policy limits for any and all layers of liability insurance that does or may provide coverage on or behalf of XPO, as of the date of the subject crash of October 11, 2023, up to Two Hundred and Fifty Million Dollars ($250,000,000).

This includes any excess/layered liability coverage of any kind that would or may provide coverage for this Action.

g. <u>First Request for Production No. 3-4:</u> XPO shall produce declaration pages for any and all layers of liability insurance that does or may provide coverage on or behalf of XPO as of the date of the subject crash of October 11, 2023, up to Two Hundred and Fifty Million Dollars ($250,000,000). This includes excess/layered liability coverage of any kind that would or may provide coverage for this Action.

h. <u>First Request for Production No. 6:</u> XPO shall provide William Lamb's Driver Qualification File, Driver Investigation File, Driver History File and all documents that demonstrate compliance with federal and state driver qualification laws and regulations.

i. <u>First Request for Production No. 35:</u> XPO shall provide Plaintiff with all telematics data, videos, photos, and coaching sessions involving William Lamb from the date of hire through present.

j. <u>First Request for Production No. 46:</u> XPO shall provide Plaintiff with all documents relating to the preventability analysis/review and determination relating to the subject crash of October 11, 2023.

k. <u>First Request for Production No. 55-59:</u> XPO shall further supplement its responses to Plaintiff's First Request for Production No. 55-59 and provide Plaintiff with all training materials, manuals, policies, directives, handbooks, rules and other training materials provided or used in the "XPO University" that were provided to William Lamb or used to train William Lamb. This

includes safety training videos, PowerPoints or other demonstrative training materials provided to William Lamb at any time.

l. <u>First Request for Production 61</u>: XPO shall produce to Plaintiff any document, article or presentation prepared and/or presented by any XPO representative relating to the safe operation of a commercial motor vehicle that was provided or offered to William Lamb.

m. <u>First Request for Production No. 65</u>: XPO shall produce to Plaintiff a fully unredacted version of XPO's Accident Register, which is required to be maintained by federal law (49 CFR 390.15).

n. <u>Request for Production 66</u>: XPO shall produce to Plaintiff all Rule 30(b)(6) deposition transcripts, that are in the possession and control of XPO, from corporate designees from XPO for litigation within the last 5 years that involve the following: (a) serious injury (as the term "serious" is defined in this Order) or death and (b) a left turn by XPO's driver. These transcripts shall be produced in an unredacted format to Plaintiff.

o. <u>Second Request for Production No. 1</u>: XPO shall produce to Plaintiff all telematics (Samsara or Lytx) videos, datasets, photos, screenshots, comments, coaching sessions, events coached and session notes relating to William Lamb from the date of hire (09/09/20-present).

p. <u>Second Request for Production No. 2</u>: XPO shall provide Plaintiff any documents that identify employees of XPO (or third parties) who have monitored telematics programs (Samsara or Lytx) and/or telematics data for employee William Lamb from the date of hire (09/09/20- present).

q. <u>Second Request for Production No. 4</u>: XPO shall produce to Plaintiff logs of all safety alerts received in the telematics (Samsara or Lytx) safety inbox or other location designated for William Lamb for 6-months prior to the subject crash on October 11, 2023 through present.

r. <u>Second Request for Production No. 6</u>: XPO shall produce to Plaintiff a printout of the telematics (Samsara or Lytx) "Safety Score" (or its equivalent) and the configuration page under any telematics program used by XPO for the 3-months prior to the subject crash of October 11, 2023 through present.

s. <u>Second Request for Production No. 8</u>: XPO shall produce to Plaintiff a printout of the alert configuration page for any telematics software (Samsara or Lytx) used by XPO for the date of the subject crash (October 11, 2023).

t. <u>Second Request for Production No. 9</u>: XPO shall produce to Plaintiff all notifications in the telematics software (Samsara or Lytx) inbox (or other similar location) for William Lamb for 6-months prior to the subject crash of October 11, 2023 through present.

u. <u>Second Request for Production No. 10</u>: XPO shall produce to Plaintiff documents relating to the telematics (Samsara or Lytx) safety settings utilized for William Lamb's commercial vehicle.

v. <u>Second Request for Production No. 11</u>: XPO shall produce to Plaintiff documents relating to the safety settings in any telematics transportation management system or software (Samsara or Lytx) as of the date of the subject crash of October 11, 2023.

w. <u>Second Request for Production No. 13</u>: XPO shall produce to Plaintiff the administrative username and password for any telematics software/safety management system (Samsara or Lytx) being used by XPO as of the date of the subject crash of October 11, 2023 in order for Plaintiff's consultant(s) to assess the transportation management system account for data and information relating specifically to (a) the subject crash of October 11, 2023 and (b) William Lamb. Said consultant of Plaintiff shall be qualified and shall be allowed to access the telematics data at a mutually agreeable location and time.

x. <u>Second Request for Production No. 14</u>: XPO shall produce a complete full-length, uncut and unredacted version of any and all video footage from the date of the subject crash of October 11, 2023, regardless of the quality of the video footage.

60. This Second Order to Compel is intended to expedite the litigation and is also intended to supplement and clarify certain provisions contained within the January 21, 2025 Order that were raised at the hearing on April 16, 2025.

61. To the extent that XPO claims that a document or set of documents is not within their possession or control, XPO shall specifically identify the document(s), the custodian of the document(s), the efforts made to obtain the document(s), and, to the extent that any document was destroyed, the date of destruction and the identity of the individual(s) who authorized the destruction of any such document(s).

62. To the extent that XPO claims that a document or documents are protected from disclosure pursuant to the attorney-client or work product privileges, XPO shall provide detailed privilege logs that set forth with particularity the document or documents,

the author of the document(s), the recipient of the document(s), and a description of the document(s) being withheld sufficient for the Plaintiff to evaluate the claim of privilege.

63.    To the extent that the Parties cannot agree on whether a document is subject to the attorney-client or work-product privileges, the Party that is asserting the privilege shall submit the materials to the Undersigned for *in camera* review.

64.    The Court finds and concludes that the Consent Protective Order previously entered in this Action provides adequate protection for any materials subject to any alleged trade secret, confidential, or proprietary privileges.


**IT IS SO ORDERED.**

This the _____ day of April, 2025.


_____
HONORABLE JAMES GREGORY BELL
*Senior Resident Superior Court Judge Presiding*