# Smith v. XPO
# 7:25-cv-01545-D-BM

# Exhibit 1 to Response to XPO's Motion for Reconsideration

# Plaintiff's Hearing Binder – April 16, 2025 Sanctions Hearing

*Estate of Mark Smith v. XPO Logistics Freight, Inc. et al.*

24 CVS 468

<u>Plaintiff's Motion for Sanction and Second Motion to Compel</u>

April 16, 2025

The Honorable James Gregory Bell Presiding

*Estate of Mark K. Smith v. XPO Logistics Freight, Inc. et al.*
24 CVS 468

## PLAINTIFF'S HEARING BINDER

Summary of XPO's Violations of Order to Compel.............................. 1

Plaintiff's Discovery Request .................................................. 2

Discovery Deficiency/Notice Letters & Emails to XPO.................... 3

Order Granting Plaintiff's First Motion to Compel [January 21, 2025].......... 4

XPO's Unverified and Unsigned Response [February 26, 2025]................... 5

Rule 37.................................................................................. 6

Plaintiff's Motion for Sanctions and Second Motion to Compel.................. 7

XPO's Answer and Counterclaim............................................. 8

XPO's Answers to Plaintiff's First Request for Admission........................ 9

Examples of XPO Discovery Abuse in Other Cases............................ 10

XPO Record Retention Policy.................................................. 11

Plaintiff's First Amended Complaint.......................................... 12

STATE OF NORTH CAROLINA

ROBESON COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
24 CVS 468

CINDY SOLES SMITH, Administratrix )
of the ESTATE OF MARK KEANNAN )
SMITH )
     Plaintiff, )
      )
v. )
      )
WILLIAM BRATTY LAMB and )
XPO LOGISTICS FREIGHT, INC. )
      )
     Defendants. )
      )

## XPO'S VIOLATIONS AND WILLFUL REFUSALS TO COMPLY WITH ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL

Plaintiff Cindy Soles Smith, in her capacity as the Administratrix of the Estate of Mark Keannan Smith, submits the following materials summarizing Defendant XPO Logistics Freight, Inc. ("XPO")'s **continuing violations** of their obligations under the North Carolina Rules of Civil Procedure, and specifically, their **multiple willful and intentional violations** of the Order Granting Plaintiff's First Motion to Compel entered by this Court on January 21, 2025:

## I. XPO'S *WILLFUL* FAILURE TO COMPLY WITH DISCOVERY OBLIGATIONS AND THE ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL

– Your Honor, we are before you after having exhausted all other options. As a brief procedural background:

 o Plaintiff served her First Interrogatories, First Request for Production of Documents and First Request for Admission **315 days ago,** on June 5, 2024.

 o Plaintiff served her Second Request for Production of Documents **176 days ago**, on October 22, 2024.

1

- Following months of good faith attempts to resolve discovery disputes without the Court's intervention, Plaintiff moved to compel before Your Honor on January 13, 2025.

- Following the hearing on January 13, 2025, Your Honor Ordered XPO to respond fully and without further objection <u>within thirty (30) days of the entry of the Court's Order Granting Plaintiff's Motion to Compel.</u>

- Your Honor's Order commanded production of ***very specific documents*** and ***very specific interrogatories*** – all of which are highly relevant to Plaintiff's various claims.

  - Deadline for Compliance: <u>February 21, 2025</u>

  - XPO failed to respond in thirty days as ordered.

- Instead, XPO's served an **<u>unsigned and unverified</u>** response dated **<u>February 26, 2025</u>** – five (5) days *after* the date mandated by the Order.

- In the February 26, 2025 unsigned and unverified response, XPO <u>only produced 3 documents</u>:

  - XPO's Document Retention Policy
  - 1 Reservation of Rights Letter
  - 1 Additional Declaration Page - Chubb

- Moreover, in its February 26, 2025 unsinged and unverified response, XPO claims that it "filed a Motion for Reconsideration that includes a request for the Court to Reconsider [certain] provisions of the Order."

  - However, the Motion for Reconsideration was <u>not</u> filed by XPO until <u>February 28, 2025</u> – **<u>seven (7) days after the Court's mandatory deadline.</u>**

  - XPO **<u>misrepresented</u>** to the Court and to Plaintiff that a "Motion for Reconsideration" had been filed, **<u>when in fact it that was not true.</u>**

2

- XPO has since attempted to have their "Motion for Reconsideration" heard by this Court - but violated Rule 6(d) by failing to serve a Notice of Hearing 5 days before the time set for hearing on Plaintiff's Motion for Sanctions, which was originally set for March 17, 2025.

- Judge Powers continued to Plaintiff's Motion for Sanctions to today so that the matter could be heard by Your Honor.

## II. XPO HAS WILLFULLY REFUSED TO PROVIDE COMPLETE AND TRUTHFUL LIABILITY INSURANCE INFORMATION

- XPO was ordered to provide information concerning **all layers of coverage** (i.e., the *entire tower of coverage*) and has failed to produce these highly relevant and discoverable insurance documents despite being *ordered* to do so.

- XPO has **misrepresented (and continues to misrepresent) the total amount of available insurance coverage** and self-insured retention to counsel for Plaintiff and to this Court, **on multiple occasions**.

  - <u>Example</u>: Counsel for Plaintiff is aware of multiple policies/excess layers that have been produced in other cases, but which are being **intentionally withheld in the present case**.

  - XPO has, on multiple occasions, claimed to have "one policy" with Chubb with a liability limit of $10,000,000 – **however, this is not true.**

  - XPO is the facing a similar of a Motion for Sanctions in Mobile, Alabama for this **same exact discovery abuse** and **deceitful tactics**—See e.g., *Sonja Renae Caffey v. Dwight Richard Westfall and XPO Logistics Freight, Inc.* 02-CV-2023-900747.00.

## III. XPO REFUSED TO PROVIDE ALL INFORMATION CONCERNING THE PREVENTABILITY ANALYSIS AND REVIEW RELATING TO THE SUBJECT CRASH

- XPO admits that it performed a detailed "preventability analysis and review" of the subject collision but has refused to comply with the Court's Order to:

3

- o Identify all persons involved with the preventability analysis/determination concerning the subject crash of October 11, 2023;

- o The dates of the review; and

- o The conclusions that were reached.

## IV. XPO REFUSED TO PRODUCE A LIST OF ALL SERIOUS INJURY AND DEATH CASES FOR THE PAST THREE YEARS

- – XPO was ordered to produce a list of all claims or lawsuits that were filed against XPO involving serious injury or death for the past three (3) years.

  - o This information is highly relevant to Plaintiff's claims for negligent hiring, negligent supervision, training and retention.

  - o It is also relevant to duty, breach, causation and notice.

- – This information is readily available to XPO and they were Ordered to produce this highly relevant information but to date, have refused to do so.

## V. XPO REFUSALS AND MISREPRESENTATIONS CONCERNING ITS SAFETY TECHNOLOGY

- – XPO was ordered provide highly relevant information concerning safety and training technology (including telematics systems such as Lytx and Samsara).

- – By way of example, XPO failed to identity "Lytx" as a telematics software, despite it being mentioned in Defendant Lamb's employee file.

- – XPO has otherwise failed to respond fully to specific discovery request as it relates to safety telematics technology and software – all of which is highly relevant to Plaintiff's claims.

4

## VI. XPO REFUSED TO DESCRIBE ALL OF LAMB'S FORMAL AND INFORMAL DISCIPLINARY AND/OR COUNSELING ACTIONS UNDERTAKEN BY XPO.

- XPO has failed to provide a substantive response to specific Interrogatories concerning this subject – rather, XPO has directed to Plaintiff to documents which is non-responsive and in violations of the Court's Order.

## VII. XPO REFUSED TO IDENTIFY ALL POLICIES, PROCEDURES, RULES, GUIDELINES, DIRECTIVES, MANUALS, HANDBOOKS AND INSTRUCTIONS THAT WERE IN EFFECT FOR DEFENDANT LAMB ON OCTOBER 11, 2023.

- XPO claims that it will supplement these materials but to date as failed to do so.

## VIII. XPO REFUSED TO PROVIDE WILLIAM LAMB'S DRIVER QUALIFICAITON FILE, DRIVER INVESTIGATON FILE, DRIVER HISTORY FILE

- XPO claims to have produced this information – however providing the "employee file" for William Lamb XPO, standing alone, is not responsive to this specific discovery request.

## IX. XPO REFUSED TO PROVIDE ALL TRAINING MATERIALS

- XPO has willfully refused to provide the following highly relevant materials which are highly relevant to Plaintiff's claims against XPO for negligent training, supervision, hiring and retention:

  - o Training materials
  - o Training manuals
  - o Policies
  - o Directives
  - o Safety training videos and PowerPoints
  - o Articles or presentations presented by XPO personnel concerning the safe operation of a commercial vehicle during the last 5 years.

- On March 16, 2025, XPO produced a transcript for William Lamb from "XPO University" which shows courses completed but does not comply with

5

the Court's Order Granting Plaintiff's Motion to Compel.

## X. XPO REFUSED TO PROIVDE ITS <u>ACCIDENT REGISTER</u> (49 CFR 390.15)

– XPO claims that it will provide a copy of the Accident Register – which is required to be maintained by federal law – however to date, XPO has refused to produce this information despite being ordered to do so.

## XI. XPO REFUSED TO PRODUCE CORPORATE DESGINEE DEPOSITION TRANSCRIPTS

– The Court ordered XPO to produce "all unredacted Rule 30(b)(6) deposition transcripts from corporate designees from XPO for litigation within the last 5 years that involve the following:

  o Serious injury or death; and
  o A *left turn* by XPO's driver

– To date, XPO has produced no responsive transcripts, despite being ordered to do so by this Court.

## XII. XPO REFUSED TO PRODUCE HIGHLY RELEVANT AND DISCOVERABLE TELEMATICS DATA

– The Court's January 21, 2025 Order commanded XPO to produce highly relevant telematics data, videos, photos, screenshots, comments, coaching sessions and notes. XPO has failed to produce this information despite being ordered to do so.

– The Court also ordered XPO to produce the safety configuration settings contained within its fleet management telematics software and XPO has failed to produce this information despite being ordered to do so.

– XPO was further specifically ordered to produce the administrative password and username for any safety telematics software being used on the date of the subject crash so that Plaintiff's consultants could assess data and information relating to:

  o William Lamb; and
  o The subject crash of October 11, 2023.

6

- To date, XPO has refused to comply with the Court's Order dated January 21, 2025.

## XIII. REMEDIES REQUIRED DUE TO XPO'S ONGOING DISCOVERY ABUSE AND VIOLATION OF THE COURT'S ORDER

- Rule 37 of the North Carolina Rules of Civil Procedure authorizes a trial court to impose sanctions, including dismissal, upon a party that "fails to obey an order to provide or permit discovery[.]" N.C. Gen. Stat § 1A-1, Rule 37(b)(2) (2021). "**[T]rial courts are vested with broad discretion in ordering sanctions under Rule 37(b).**" *GEA, Inc. v. Luxury Auctions Mktg., Inc.,* 259 N.C. App. 443, 452, 817 S.E.2d 422, 429-30 (2018) (citation omitted). "Not only is the decision to impose Rule 37(b) sanctions within the sound discretion of the trial court, but so too is the choice of Rule 37(b) sanctions to impose." *Id.* at 452, 817 S.E.2d at 430 (citation omitted).

- Rule 37 of the North Carolina Rules of Civil Procedure **confers power on trial judges to impose sanctions that "prevent or eliminate dilatory tactics on the part of unscrupulous attorneys or litigants."** *Essex Grp., Inc. v. Express Wire Servs., Inc.,* 157 N.C. App. 360, 363, 578 S.E.2d 705, 707 (2003). Sanctions for failing to obey a discovery order are within the sound discretion of the trial court and will not be overturned on appeal absent a showing of abuse of that discretion. *In re Estate of Johnson,* 205 N.C.App. 641, 644, 697 S.E.2d 365, 367 (2010). "A trial court does not abuse its discretion by imposing a severe sanction so long as that sanction is `among those expressly authorized by statute' and there is no `specific evidence of injustice.'" *Batlle v. Sabates,* 198 N.C. App. 407, 417, 681 S.E.2d 788, 795 (2009)(citation omitted); *see also Martin v. Solon Automated Servs., Inc.,* 84 N.C. App. 197, 201, 352 S.E.2d 278, 281 (1987) ("Even though the [Rule 37] sanctions imposed were somewhat severe, they were among those expressly authorized by the statute; thus, we cannot hold that they constitute an abuse of discretion absent specific evidence of injustice caused thereby.").

- In light of the pattern of the willful discovery abuse and violation of the Court's Order, Plaintiff request the following Rule 37(b) Sanctions:

- The following Paragraphs of Plaintiff's First Amended Complaint should be deemed established for purposes of this Action:

    o Paragraph 24
    o Paragraph 26

- o Paragraph 27 – specifically as to Defendant Lamb's gross negligence and careless/reckless conduct;
- o Paragraph 31
- o Paragraph 32 – specifically as to Defendant Lamb's gross negligence and careless/reckless conduct;
- o Paragraph 34 and Subparagraphs (a)-(l) – as to Defendant Lamb's gross negligence and careless/reckless conduct;
- o Paragraph 45;
- o Paragraphs 46-47
- o Paragraph 48, including Subparagraphs (a)-(g)

- The following Defenses contained in Defendant XPO Logistics Freight, Inc. Answer to First Plaintiff's Amended Complaint **should be stricken**:

  - o Second Defense (contributory negligence)
  - o Third Defense (XPO's general denial of negligence)
  - o Sixth Defense (XPO's general denial of negligence)
  - o Seventh Defense (lack of causation)
  - o Eighth Defense (contributory negligence)

8

J.W. Musselwhite
W. Edward Musselwhite, Jr.
David F. Branch, Jr.

# MUSSELWHITE | MUSSELWHITE
# BRANCH & GRANTHAM

### ATTORNEYS AT LAW

Norris Musselwhite Grantham
J. William Owen

William E. Musselwhite Sr.
(1930-1987)
Fred L. Musselwhite
(1939-2017)

June 5, 2024

VIA EMAIL ONLY

Megan Stacy
Le'Ron Byrd
Gordon Rees Scully Mansukhani
150 Fayetteville Street, Suite 1120
Raleigh, NC 27601

Re: Cindy Soles Smith, Administratrix of the Estate of Mark K. Smith v. William Bratty Lamb and XPO Logistics Freight, Inc. 24 CVS 468 (Robeson County)

Dear Megan & Le'Ron:

Enclosed for service via electronic mail please find the following:

(1) Plaintiff's First Set of Interrogatories, Request for Production of Documents and Request for Admission to Defendant William Bratty Lamb;

(2) Plaintiff's First Set of Interrogatories, Request for Production of Documents and Request for Admission to Defendant XPO Logistics Freight, Inc.

Sincerely yours,

MUSSELWHITE, MUSSELWHITE, BRANCH & GRANTHAM

J. William Owen

Enclosures

Cc: Jennfier Welch (via email only)



PLAINTIFF'S EXHIBIT

## Will Owen

**From:** Will Owen
**Sent:** Wednesday, June 05, 2024 10:41 AM
**To:** mstacy@grsm.com; lbyrd@grsm.com
**Cc:** Jennifer A. Welch; Brandi Davis; Sabrina Rockwell; Taylor Bolebruch; Stacy Frazier
**Subject:** Estate of Mark K. Smith v. XPO Logistics Freight et al., 24 CVS 468 (Robeson County)
**Attachments:** Ltr to Megan Stacy and Le'Ron Byrd 6.5.24.pdf; First Set of Interrogatories, Request for Production and Request for Admission to Lamb.pdf; First Set of Interrogatories, Request for Production and Request for Admission to XPO.pdf

Dear Counsel:

Attached for service pursuant to Rule 5 of the North Carolina Rules of Civil Procedure please find the following:

(1) Plaintiff's First Set of Interrogatories, Request for Production of Documents and Request for Admission to Defendant William Bratty Lamb;

(2) Plaintiff's First Set of Interrogatories, Request for Production of Documents and Request for Admission to Defendant XPO Logistics Freight, Inc.

We look forward to continuing to work with you on this tragic case.

**J. William Owen**
Musselwhite, Musselwhite, Branch & Grantham, P.A.
T: +1 910 738 5277 | F: +1 910 738 3678

STATE OF NORTH CAROLINA

COUNTY OF ROBESON

CINDY SOLES SMITH, Administratrix of the )
ESTATE OF MARK KEANNAN SMITH )
)
        Plaintiff, )
)
v. )
)
WILLIAM BRATTY LAMB )
)
        Defendant )
)
and )
)
XPO LOGISTICS FREIGHT, INC. )
)
        Defendant/Counterclaim )
        Plaintiff )

## PLAINTIFF'S FIRST SET OF INTERROGATORIES, FIRST REQUESTS FOR PRODUCTION, AND FIRST REQUESTS FOR ADMISSION TO DEFENDANT XPO LOGISTICS FREIGHT, INC.

Pursuant to Rules 26, 33, 34 and 36 of the North Carolina Rules of Civil Procedure, you are hereby required to answer under oath within thirty (30) days the following requests for discovery. Each of the interrogatories is a continuing interrogatory so as to require you to file supplemental answers if you obtain further or different information between the time your answers are served and the time of the trial. These interrogatories request information which is known by you or is available to you, or is in the possession of your representatives, servants, or agents, insurance carriers and their representatives, including your attorney and his investigators, unless such information is clearly privileged.

For each document responsive to this request that is withheld under claim of privilege or work-product immunity, provide a statement under oath by a person having knowledge setting forth as to each document:

    1.    The name and title of the author;
    2.    The name and title of each person to whom the document was addressed;
    3.    The name and title of each person to whom a copy of the document was sent;
    4.    The date of the document;
    5.    The number of pages of the document;

6. A brief description of the nature and subject matter of the document;
7. The nature of the claimed privilege or immunity;
8. The category or categories of the request to which the document is responsive; and
9. The exact location of the original and each copy as of the date and receipt of this request, along with the name and address of the custodian of said originals and copies.

If you are aware of any document otherwise responsive to these requests, which document is no longer in your custody or control, identify the name and title of the author, name and title of the addressee, date of the document, subject matter of the document or documents, the last date on which the document was in your control, the person or entity, if any, now in control of the document, the reasons for your disposition or release of the document, all persons who have knowledge of the circumstances surrounding its disposition and state what knowledge each person has.

If you cannot answer the following interrogatories in full, after exercising due diligence to secure the information to do so, so state, and answer to the extent possible, specifying your inability to answer the remainder, and stating whatever information or knowledge you have concerning the unanswered portions.

Pursuant to Rule 34 of the North Carolina Rules of Civil Procedure, the plaintiff hereby requests that the defendant produce the originals of all documents herein requested and permit the plaintiff to inspect and copy the same, at the law office of Musselwhite, Musselwhite, Branch & Grantham, P.A. (606 N. Elm Street Lumberton, NC 28358) on the thirtieth (30) day following service of these Interrogatories, Requests for Production of Documents, and Requests for Admissions. In the alternative, the defendant may comply with these requests by attaching legible copies of all such documents and clearly designating the interrogatory to which each document or group of documents pertains.

In the event the defendant should fail to answer or should provide evasive or incomplete answers to any of the discovery requests set forth below, or in the event the defendant should fail or refuse to produce any of the documents requested herein, the plaintiff puts the defendant on notice that the plaintiff will move the Court, pursuant to Rule 37(a)(4) of the North Carolina Rules of Civil Procedure, for the reasonable expenses, including attorney's fees, incurred by the plaintiff to move the Court to compel the defendant to provide answers or to provide adequate or complete answers to all such discovery requests and to produce all such documents requested herein.

For the purposes of these discovery requests, the meaning of the word "document" shall include, but not be limited to, writings, drawings, graphs, charts, photographs, reports, phonograph records, computer records, digital recordings, and other data compilations from which information can be obtained or translated, if necessary, through detection devices or other equipment, into usable form.

2

You are required and have a lawful duty to supplement, update and amend your responses and answers to these discovery requests in the following instances:

1. Any requests or questions directly addressed to:
   a. The identity and location of persons having knowledge of discoverable matter; and
   b. The identity of each person expected to be called as an expert witness at the trial, the subject matter on which he is to testify and the substance of his testimony.

2. Any responses or answers to questions or requests if you obtain information upon the basis of which:
   a. You know or discover that the prior response was incorrect or incomplete when made; or
   b. You know that the response, though correct when made is no longer true and the circumstances are such that a failure to amend the response is in substance a knowing concealment.

## DEFINITIONS

Unless otherwise indicated, the following definitions shall be applicable to these Interrogatories, Requests for Production of Documents and Requests for Admissions to Defendant XPO Logistics Freight, Inc.:

1. The term "Document" as used herein shall be given a very broad definition to include every type of paper, writing, data, record, graphic, drawing, photograph, audio recording and video recording. The term includes material in all forms, including printed, written, recorded, or other. The term includes all files, records and data contained in any computer system, computer component and/or computer storage (e.g., hard drive, disc, magnetic tape, backup system, etc.). This term includes, but is not limited to, correspondence, reports, meeting minutes, memoranda, stenographic or handwritten notes, diaries, notebooks, account books, orders, invoices, statements, bills, checks, vouchers, purchase orders, studies, surveys, charts, maps, analyses, publications, books, pamphlets, periodicals, catalogues, brochures, schedules, circulars, bulletins, notices, instructions, manuals, journals, e-mails, e-mail attachments, data sheets, work sheets, statistical compilations, data processing cards, microfilms, computer records (including printouts, disks or other magnetic storage media), tapes, photographs (positive or negative prints), drawings, films, videotapes, hard drive recordings, pictures, and voice recordings. Plaintiff expressly intends for the term "Document" to include every copy of such writing, etc. when such copy contains any commentary or notation whatsoever that does not appear on the original and any attachments or exhibits to the requested document or any other documents referred to in the requested document or incorporated by reference.

3

2. **"Person"** means any natural person, corporation, partnership, proprietorship, association, organization, group of persons, or any governmental body or subdivision thereof.

3. **"Identify"** with respect to any **"person"** or any reference to stating the "identity" of any "person" means to provide the name, home address, telephone number, business name, business address, and business telephone number of such person, and a description of each such person's connection with the events in question.

4. **"Identify"** with respect to any **"document"** or any reference to stating the "identification" of any "document" means to provide the title and date of each such document, the name and address of the party or parties responsible for the preparation of each such document, the name and address of the party who requested or required the preparation of the document or on whose behalf it was prepared, the name and address of the recipient or recipients of each such document, and the names and addresses of any and all persons who have custody or control of each such document, or copies thereof.

5. **"Subject Incident"** means the collision between William Bratty Lamb, driver for XPO Logistics Freight, Inc and Mark K. Smith, which occurred on October 11, 2023 in Robeson County, North Carolina.

6. **"You," "Your,"** or **"XPO"** means Defendant XPO Logistics Freight, Inc.

7. **"William Lamb"** means Defendant William Bratty Lamb.

8. **"Similar"** shall have the meaning given in the American Heritage Dictionary, which is "showing some resemblance; related in appearance or nature; alike but not identical." As used here, the word "similar" shall not be limited as if modified by the word "substantially" and shall not mean "the same". If you limit the information provided because you use another interpretation of the word "similar," please state the interpretation you are using and reveal the nature of the information withheld.

9. The terms **"and"** as well as **"or"** shall be each construed conjunctively and disjunctively as necessary to bring within the scope of each interrogatory and request for documents all information and documents that might otherwise be construed to be outside its scope. The term **"and/or"** shall be construed likewise.

10. Whenever necessary to bring within the scope of an interrogatory or request for production of documents any information or document that might otherwise be construed to be outside its scope: (i) the use of a verb in any tense shall be construed as the use of the verb in all other tenses; (ii) the use of the singular shall be construed as the use of the plural and vice versa; and (iii) "any"

4

includes "all," and "all" includes "any."

11. With regard to any term used herein that is deemed by the responding party as being ambiguous or vague, a term shall be construed in its broadest sense to encompass all reasonable definitions of that term.

# INTERROGATORIES TO DEFENDANT XPO

1. If you contend that Plaintiff has sued the wrong party or that your name is incorrectly stated in this lawsuit, please explain the basis for your contention and identify the correct legal entity for the correct party in interest to this suit.

   **ANSWER:**

2. Identify the following people: (a) The Safety Director/Chief Safety Officer for XPO on the date of the Subject Incident and now; (b) The person(s) primarily responsible for compliance with state and federal safety regulations at XPO on the date of the Subject Incident and now; (c) The person(s) responsible for training William Lamb; and (d) William Lambs' supervisor and manager on the date of the Subject Incident.

   **ANSWER:**

3. For each claim (formal or informal) and lawsuit wherein it is/was suggested or alleged that any person was injured or killed as a result of XPO's driver's actions in the past three years, provide the style of the case (or name of parties, jurisdiction and case number), and describe briefly the circumstances of each suit/claim and the disposition.

   **ANSWER:**

4. Identify and explain each communication of any kind between any federal and/or state agency and XPO that involved compliance (or noncompliance) with state and/or federal laws and/or regulations in the past 5 years. This would include, but is not limited to, all letters, interventions, complaints, warnings, citations, and safety ratings.

   **ANSWER:**

5

5. With respect to the <u>tractor</u> operated by William Lamb at the time of the Subject Incident, provide the following information:

(a) Identify the registered owner, leasor (if any) and leasee (if any) on the date of the Subject Incident and presently.

(b) Provide the mileage and gross weight at the time of the Subject Incident;

(c) For the engine, identify the manufacturer, year, model and identification number;

(d) Identify all systems and devices in/on the tractor that have the capability of recording and or transmitting any data about the operation of the tractor (including without limitation Engine Control Module, Event Data Recorder, Airbag Control Module, Brake Control Module, Electronic On-Board Recorder, VORAD, etc.), state whether or not that data has been preserved and/or downloaded, and if so, when and by whom.

(e) Identify all systems and devices of any kind in or on the tractor that allowed for communication between the driver and any other person or entity, state whether the data for the time period surrounding the Subject Incident has been preserved, and identify the person who has custody of the data and of the system from which the data was acquired.

(f) Identify all systems and devices of any kind in or on the tractor that has the capability to monitor, record, and/or transmit data (this includes, but is not limited to, Qualcomm, TransCore, SkyBitz, Fluensee, Fleetilla, Teletrac, Lat-Lon, Telogis, GeoLogic, Cheetah, Xata, PeopleNet or similar system; any collision or lane departure warning system; any driver safety monitoring or hours of service monitoring system; any transponders or tachographs; any onboard cameras or video devices; any bar code or toll pass systems; and any other tracking system, logging unit, trip monitor, trip recorder, GPS system, satellite systems, or cellular systems), state whether the data for the time period surrounding the Subject Incident has been preserved, and identify the person who has custody of the data and of the system from which the data was acquired.

(g) Identify all maintenance and repairs performed for the time period from 12 months before the Subject Incident to present.


**ANSWER:**

6

6. With respect to the <u>trailer</u> operated by William Lamb at the time of the Subject Incident, provide the following information:

    (a)  Identify the registered owner, leasor (if any) and leasee (if any) on the date of the Subject Incident and presently.

    (b)  Provide the mileage and gross weight at the time of the Subject Incident;

    (c)  Identify all systems and devices in/on the trailer that have the capability of recording any data about the operation of the trailer (including without limitation ABS control module, etc.), state whether or not that data has been preserved and/or downloaded, and if so, when and by whom.

    (d)  Identify all systems and devices of any kind in or on the trailer that has the capability to monitor, record, and/or transmit data (this includes, but is not limited to, any transponders or tachographs; any bar code systems; and any other tracking system, logging unit, GPS system, satellite systems, or cellular systems), state whether the data for the time period surrounding the Subject Incident has been preserved, and identify the person who has custody of the data and of the system from which the data was acquired.

    (e)  Identify all maintenance and repairs performed for the time period from 12 months before the Subject Incident to present.

**ANSWER:**

7. With respect to the trip that William Lamb was on at the time of the Subject Incident, provide the following information:

    (a)  Identify all shippers and brokers involved;

    (b)  Explain where and when (date and time) William Lamb picked up the load he had at the time of the Subject Incident;

    (c)  Identify where (name and address of location) and when (date and time) the load was to be delivered;

    (d)  Identify the location, time, duration and reason for each stop William Lamb made from the time he picked up the load until the time of the Subject Incident; and

    (e)  Identify the route William Lamb intended to follow from the point of origin to the point of destination.

**ANSWER:**

8. With respect to William Lamb's Hours of Service (HOS) in the eight (8) days leading up to the date of the Subject Incident, provide the following information:

(a) Identify all errors on William Lamb's logs of which you are aware;

(b) Identify all HOS violations of which you are aware;

(c) Explain what you have done, if anything, to audit or verify the accuracy of

7

William Lamb's logs and identify all persons involved in the process; and,

(d) Identify all documents and data of any kind that you used to audit or verify the accuracy of William Lamb's logs.

**ANSWER:**

9. For the 72 hours leading up to the Subject Incident, provide the following information regarding William Lamb:

   (a) Identify all driving hours
   (b) Identify all on-duty not driving hours (location and activities)
   (c) Identify all stops (time and location) and the reason for them;
   (d) Identify when and where meals were eaten
   (e) Identify when and where William Lamb slept
   (f) Identify when and where and in what dosages all medications (prescription and over the counter) were ingested.

   **ANSWER:**

10. Did William Lamb have any health issues that affected or could have affected his ability to drive in any way in the 72 hours leading up to the Subject Incident? If so, explain.

    **ANSWER:**

11. If XPO performs hours of service log audits on drivers:

    (a) Explain what is entailed in the auditing process;
    (b) Identify all documents and data used in the process;
    (c) Identify who performs the audits (in-house or outsourced);
    (d) Identify when, if ever, William Lamb's logs were audited; and
    (e) Identify all Hours of Service violations of which you are aware for William Lamb while he was working with your company.

    **ANSWER:**

12. With Respect to William Lamb, provide the following information:

    (a) Explain the relationship between XPO and William Lamb at the time of the Subject Incident (e.g., leased driver, company driver, etc.);
    (b) Explain how William Lamb was paid for driving (by hour, by load, by mile, salary or other);
    (c) Explain all steps XPO undertook to qualify William Lamb in accord with the Federal Motor Carrier Safety Regulations;

8

(d)    Identify when XPO's relationship with William Lamb began and ended.

ANSWER:

13. Was William Lamb acting within the course and scope of his employment or agency at the time of the Subject Incident? If not, explain the basis for your contention and identify documents and witnesses that support your contention.

ANSWER:

14. Identify and describe all formal and informal disciplinary and/or counseling actions undertaken by XPO regarding William Lamb at any time.

ANSWER:

15. Describe in detail all training and education (including on the job training) provided by or on behalf of XPO to William Lamb at any time and in any way related to the operation of a commercial motor vehicle.

ANSWER:

16. Identify all traffic violations committed by William Lamb, either while in your employment or in previous employment.

ANSWER:

17. If William Lamb has ever been arrested or charged with any crime to your knowledge, for each arrest or charge identify the charge, date, jurisdiction and disposition.

ANSWER:

18. For each motor vehicle collision/accident involving William Lamb of which you are aware, provide the collision/accident date, location, jurisdiction, names of other parties involved and a brief description of what happened.

ANSWER:

19. If William Lamb had ever been disqualified from driving a commercial motor vehicle while in your employ, please describe when and under what circumstances.

ANSWER:

9

20. Identify and explain all communications of any kind between William Lamb and anyone acting for or on behalf of XPO during the twenty-four (24) hours <u>before</u> and <u>after</u> the Subject Incident. For each communication, identify the method of communication (cell phone, QualComm, other), time of communication, persons involved, and the general subject.

   ANSWER:

21. If you maintain that the Federal Motor Carrier Safety Regulations did not apply to William Lamb at the time of the Subject Incident, explain the basis for your contention and identify all facts, witnesses, and documents that support your contention.

   ANSWER:

22. Identify all XPO policies, procedures, rules, guidelines, directives, manuals, handbooks and instructions that were in effect for William Lamb at the time of the Subject Incident.

   ANSWER:

23. Describe in detail when and how you first became aware that William Lamb was involved in the Subject Incident. Please include the identification of all persons involved and what information was conveyed.

   ANSWER:

24. Explain your understanding of <u>how</u> and <u>why</u> the Subject Incident occurred.

   ANSWER:

25. Identify all persons who to your knowledge were present at the scene of the Subject Incident at any time in the 48 hours after the collision and explain their role, why they were at the scene and what actions they took.

10

**ANSWER:**

26. Identify each person (name and employer) who has been involved in the investigation of the Subject Incident. For each person identified, describe their role and involvement in the investigation.

**ANSWER:**

27. Identify all person(s) who you to your knowledge have or may have any relevant information regarding: the Subject Incident; the facts leading up to the Subject Incident; the investigation of the Subject Incident; any party to this action; any vehicles involved in the Subject Incident; and/or any claims or defenses raised in this action. The purpose of this Interrogatory is to identify all witnesses whom XPO believes may have relevant testimony of any kind in connection with this case.

**ANSWER:**

28. Identify all persons who to your knowledge have given a statement in any form (written, oral, recorded or otherwise) in connection with this case. For each person identified, provide the date and time of the statement, identify to whom the statement was made and who was present when the statement was made, identify whether the statement was written, oral, recorded, and/or transcribed, and identify all persons presently having custody of the statement.

**ANSWER:**

29. Identify and explain all interaction and communication between anyone working for or on behalf of XPO and any federal and/or state law enforcement personnel/agency regarding the Subject Incident. Please include the identification of all persons involved and what information was conveyed.

**ANSWER:**

30. Identify and explain all interaction and communication between anyone working for or on behalf of XPO and anyone employed with or acting on behalf of any other Defendant named in this action in connection with the Subject Incident.

**ANSWER:**

11

31. Please state whether any drug and/or alcohol tests (blood, urine or otherwise) performed on William Lamb after the Subject Incident occurred. If so, please state the time at which the test was administered, the name, address and phone number of the persons, firms, or entities who administered said test(s) and all such persons, firms, or entities in possession of a copy of the results of said test(s).

ANSWER:

32. As to any tests, inspections, measurements and/or investigations performed by or on behalf of XPO, or of which you are at all aware regarding in any way the Subject Incident and/or any other matter raised in this case, identify all person(s) who ordered and/or who participated in performing each and describe in detail the subject(s), purpose(s), methodologies and conclusions of each.

ANSWER:

33. Identify all photographs, motion pictures, maps, plats, drawings, diagrams, videotapes, or other tangible or documentary evidence depicting the scene of the Subject Incident and/or any person or vehicle involved in the Subject Incident.

ANSWER:

34. If you maintain that any non-party has any responsibility of any kind for causing the Subject Incident, and/or for causing any of the damages alleged in the Complaint, identify each such person and or entity, describe in detail the basis for their responsibility and identify all person(s) who have any knowledge regarding this issue.

ANSWER:

35. If you maintain that Decedent Mark Smith has any responsibility of any kind for causing the Subject Incident, and/or for causing any of the damages alleged in the Plaintiff's Complaint, describe in detail the basis for this responsibility and identify all person(s) who have any knowledge regarding this issue.

ANSWER:

12

36. If XPO has performed any review (e.g., accident review board, preventability determination) of the Subject Incident to determine preventability and/or fault, identify all persons involved in the review, the dates of the review and the conclusions that were reached.

ANSWER:

37. Identify each person XPO expects to call as an expert witness at trial and for each expert identified: (a) summarize each opinion the expert holds in regards to this case; (b) identify the factual basis for each such opinion; (c) identify all documents and evidence of any kind provided to the expert for review; and (d) identify all documents and evidence of any kind that support each opinion.

ANSWER:

38. For each insurance policy of any kind that does or may provide any coverage on behalf of any XPO (whether it is your policy or anyone else's policy) for damages/injuries alleged in this case, provide: name of Insurer; policy number; limits of coverage; the name(s) of all insureds; and state whether any insurer has offered a defense under a reservation of rights or otherwise contested coverage for the subject case.

ANSWER:

PLEASE TAKE NOTICE THAT THESE INTERROGATORIES ARE CONTINUING, AND YOU ARE UNDER A DUTY TO SUPPLEMENT OR AMEND YOUR ANSWERS TO PLAINTIFF'S DISCOVERY REQUESTS.

## REQUEST FOR PRODUCTION TO DEFENDANT XPO

PURSUANT to Rule 34 of the Rules of Civil Procedure, you are requested to produce for copying and inspection those items listed below. These items are to be produced at the offices of Musselwhite, Musselwhite, Branch & Grantham 606 N. Elm Street Lumberton, NC 28358 Monday through Friday within the time limit provided by the Rules of Civil Procedure. The items to be produced include:

1. A copy of each document utilized by you in any way in responding to Plaintiff's First Interrogatories to XPO.

RESPONSE:

13

2. A copy of each document retention policy in effect for XPO at any time between the time of the Subject Incident and present.

   RESPONSE:

3. A copy of each insurance policy (and declarations page for each policy) that provides or may provide coverage for damages sustained in the Subject Incident.

   RESPONSE:

4. Copies of all reservation of rights letters and/or agreements regarding insurance coverage for the Subject Incident.

   RESPONSE:

5. All documents setting forth the relationship between William Lamb and XPO. This includes, but is not limited to all leases, employment contracts, and independent contractor agreements and other contracts, agreements, memorandum and the like.

   RESPONSE:

6. The contents of William Lamb's driver qualification file, driver investigation file, driver history file and all documents that demonstrate compliance with federal and state driver qualification laws and regulations. The requested documents include, but are not limited to all documents required by FMCSR, 49 CFR Part 391, and the state equivalent thereto. If any responsive documents have been removed from the driver qualification file, these should be produced nonetheless.

   RESPONSE:

7. All documents of any kind that relate to any pre-employment background investigation of William Lamb, including without limitation any investigation of William Lamb's qualifications, character, driving history, training, criminal history, drug use, financial responsibility, medical conditions, health conditions, and/or any other matter relevant to employment with XPO. This specifically includes all data and information obtained through FMCSA's Pre-Employment Screening Program.

   RESPONSE:

8. All documents that relate in any way to your recruiting of William Lamb.

   RESPONSE:

14

9. All documents that relate in any way to you hiring William Lamb.

RESPONSE:

10. All documents that relate in any way to any orientation provided by XPO to William Lamb.

RESPONSE:

11. All documents that relate in any way to training of William Lamb. This includes but is not limited to all documents that show all training received by William Lamb; when, where and who provided the training and all materials used for training.

RESPONSE:

12. All quizzes, tests and/or other assessments (questions and answers) ever given by or on behalf of XPO to William Lamb at any time. An answer key should also be provided.

RESPONSE:

13. Copies of all documents (a) explaining how William Lamb was compensated for the one month leading up to and including the date of the Subject Incident and extending one week after the date of the Subject Incident; and (b) showing any detention of wages over the same time period.

RESPONSE:

14. A copy of the front and back of every driver's license issued to William Lamb (regardless of name used) in your possession, custody and/or control.

RESPONSE:

15. All documents placing you on notice of any violation by William Lamb of any law, ordinance or regulation. This includes, but is not limited to, reports of violations pursuant to Section 391.27(a) of the Federal Motor Carrier Safety Regulations, as well as copies of citations, warnings and inspection reports.

RESPONSE:

16. All documents relating to any and all blood, urine, hair or other type of drug or alcohol testing of William Lamb in your possession, custody and/or control.

RESPONSE:

15

17. A copy of all documents relating to any violation of any safety rule or principle by William Lamb at any time.

RESPONSE:

18. All documents of any kind that relate to any action (formal or informal) by any supervisor or manager or anyone working by or on behalf of XPO directed to William Lamb for the purpose of teaching, counseling, disciplining, correcting or otherwise managing William Lamb in any way relating to the safe operation of a commercial vehicle. This includes but is not limited to all disciplinary actions and the contents of all disciplinary folders or files of any kind by whatever name called.

RESPONSE:

19. A copy of all documents in your possession relating in any way to any motor vehicle collision and/or accident of any kind in which William Lamb has been involved.

RESPONSE:

20. Copies of all documents relating to any complaint, criticism or concern raised by any person or entity regarding the driving performance and/or safety of William Lamb. This should include, but is not limited to, customer complaints and call-ins by motorists either to company directly or to any service (i.e., How's My Driving? Call 800...).

RESPONSE:

21. For each communication device (e.g., cell phones, PDAs, smartphones, texting and e-mailing devices, etc.) that was in the tractor that William Lamb's was operating at the time of the Subject Incident, produce all documents reflecting usage and billing for the time period time period beginning 48 hours before the Subject Incident and ending 48 hours after the Subject Incident. This includes all devices, whether owned by William Lamb or not, and whether it was in use at the time of the Subject Incident or not.

RESPONSE:

22. Copies of all documents prepared by William Lamb that describes the Subject Incident or the circumstances leading up to the subject incident.

RESPONSE:

23. All documents evidencing any evaluation of the driving abilities, safety, and/or performance of William Lamb that has not been produced in response to the preceding Requests.

16

**RESPONSE:**

24. A complete copy of the contents of each and every file (whether maintained physically or electronically), regardless of what the file is called, regarding or addressing William Lamb in any way, that has not been produced in response to other Requests above.

**RESPONSE:**

25. A copy of all William Lamb's hours of service logs and any other driving logs and/or time sheets for the period beginning 180 days before the Subject Incident and ending 7 days following the Subject Incident.

**RESPONSE:**

26. In addition to the documents responsive to the preceding Request, produce all documents in your possession custody or control that demonstrate what William documents was doing for the time period beginning 14 days before the Subject Incident and ending two days following the Subject Incident. The requested documents include all documents that a motor carrier division officer might use to audit the logs of this driver, including, but not but are not limited to:

a. All documents evidencing hours of service not produced above (e.g., daily logs and time sheets as well as log audits and letters regarding hours of service);
b. All documents that could be used to check the accuracy of Hours of Service logs and/or time sheets;
c. All documents related to trips (including driver's trip envelopes, trip reports, work reports, bills of lading, manifests, cargo documents of any kind, load documents of any kind, loading and unloading records of any kind, load detention records of any kind, freight bills, pick-up and delivery records of any kind, directions (e.g., routes to take), instructions (delivery notes, times, special handling), driver's trip check and settlement sheets, dispatch records, mileage reports, weight and scale records, and receipts for fuel, food, tolls, lodging, permits, repairs, and/or other purchases and expenses of any kind whether reimbursable or not, final trip accounting documents and printouts, as well as any and all reports and/or summaries of any kind referencing the above information);
d. All documents evidencing any and all stops; and
e. All driver call in reports and any other documentation of any communications between you and William Lamb.

**RESPONSE:**

17

27. A copy of all audits and summaries of William Lamb's hours of service covering the period beginning one year prior to the Subject Incident and ending 14 days following the Subject Incident.

**RESPONSE:**

28. For the <u>tractor</u> involved in the Subject Incident, produce the following documents:

    a. Title;
    b. Registration;
    c. Operators manual;
    d. Maintenance Schedules;
    e. All documents evidencing maintenance performed on the tractor at any time within 6 months before the Subject Incident;
    f. All documents evidencing any inspections of the tractor during the 6 months before the Subject Incident;
    g. All documents evidencing any repairs and/or modifications to the tractor at any time within 6 months before the Subject Incident;
    h. All documents evidencing any repairs made to the tractor as a result of the subject collision (including insurance submissions);
    i. All leases involving the vehicle;
    j. Documents evidencing the purchase of the vehicle;
    k. Documents evidencing the sale of the vehicle if it has been sold;
    l. Documents evidencing mileage and weight at time of the Subject Incident; and
    m. Copies of each and every logbook, ledger, file or the like maintained for any reason regarding the vehicle.

**RESPONSE:**

29. For the <u>trailer</u> involved in the Subject Incident, produce the following documents:

    n. Title;
    o. Registration;
    p. Operators manual;
    q. Maintenance and service manuals;
    r. All documents evidencing maintenance performed on the trailer at any time within 6 months before the Subject Incident;
    s. All documents evidencing any inspections of the trailer during the 6 months before the Subject Incident;
    t. All documents evidencing any repairs and/or modifications to the trailer at any time within 6 months before the Subject Incident;
    u. All documents evidencing any repairs made to the trailer as a result of the subject collision (including insurance submissions);
    v. All leases involving the vehicle;
    w. Documents evidencing the purchase of the vehicle;

18

x.   Documents evidencing the sale of the vehicle if it has been sold;

y.   Documents evidencing mileage and weight at time of the Subject Incident; and

z.   Copies of each and every logbook, ledger, file or the like maintained for any reason regarding the vehicle.

**RESPONSE:**

30. If any data is available (whether or not downloaded or retrieved) from the tractor or any part or system from the tractor (e.g., engine control module (ECM), event data recorder (EDR), Sensing Diagnostic Module (SDM), drive-train or transmission control unit, power steering unit, airbag module, ABS or other brake system, or any EOBR), please produce both the printout of the data and the data file in its original format. This request is intended to cover data for as long as it was recorded before during and after the Subject Incident.

**RESPONSE:**

31. If any data is available (whether or not downloaded or retrieved) from the trailer or any part or system from the trailer (e.g., event data recorder, ABS or other brake system, or any EOBR), please produce both the printout of the data and the data file in its original format. This request is intended to cover data for as long as it was recorded before during and after the Subject Incident.

**RESPONSE:**

32. If the tractor at issue was equipped with a lane departure warning system or collision warning system (e.g., VORAD), please produce the printout of the downloaded data and to the degree possible produce the data file in its original format.

**RESPONSE:**

33. Produce copies of all e-mails between William Lamb and XPO for the time period beginning 90 days prior to the Subject Incident and present.

**RESPONSE:**

34. Produce copies of all communications and transmissions between William Lamb and XPO that were transmitted through any system on-board of the tractor or trailer involved in the Subject Incident for the period beginning 30 days before the Subject Incident and ending seven days after the Subject Incident. This includes any and all satellite or cellular systems, regardless of manufacturer, and includes, without limitation, all electronic on-board recorders (EOBRs) and system such as those made available by Qualcomm, TransCore, SkyBitz, Fluensee, Fleetilla, Teletrac,

19

Lat-Lon, Telogis, GeoLogic, Cheetah, Xata, PeopleNet and other transportation service and product providers.

RESPONSE:

35. If the tractor was equipped with any on-board audio or video recording or monitoring devices and/or any other driver or driver safety monitoring system, please produce everything that was retrieved or could be retrieved from such devices and systems.

RESPONSE:

36. To the degree that it has not been produced in response to other Requests above, produce all data of any kind that was recovered from the tractor, the trailer and/or anything inside or connected to any part or system of the tractor and/or trailer that were involved in the Subject Incident.

RESPONSE:

37. A copy of each out of service report or violation concerning the <u>tractor</u> and/or the <u>trailer</u> involved in the Subject Incident from the period beginning one year prior to the Subject Incident through present. This request includes any supplements, responses, amendments and dispositions regarding any violation.

RESPONSE:

38. Produce all documents evidencing damage to any vehicle or other property as a result of the Subject Incident, including but not limited to repair estimates, appraisals, purchase invoices, repair bills, and checks or drafts reflecting payment for repair or replacement, and any other documents concerning or establishing the value of any item of property before or after the Subject Incident.

RESPONSE:

39. Produce all documents given to any person or entity, including any insurance company in return for payment in whole or in part for property damage, e.g., loan receipt(s), release(s), assignment(s), etc.

RESPONSE:

40. For the tractor and trailer involved in the Subject Incident, produce all the Driver Vehicle Inspection Reports (DVIR) from the period beginning six months before the Subject Incident and ending one week after the Subject Incident.

RESPONSE:

20

41. Produce all pre-trip inspection reports for the trip in question and three months prior to the date of the Subject Incident for the <u>tractor</u> and <u>trailer</u>.

   **RESPONSE:**

42. All documents that relate to the load being hauled by William Lamb at the time of the Subject Incident, including, by way of example and without limitation, all manifests, bills of lading, weight receipts, dispatch documents, content summaries, and documents that address the contents, ownership, pick-up, detainment, and delivery of the load.

   **RESPONSE:**

43. A copy of every document related to any investigation done by or on behalf of XPO of the scene of the Subject Incident.

   **RESPONSE:**

44. All documents authored by anyone working for or on behalf of XPO that set forth any facts relating to the Subject Incident.

   **RESPONSE:**

45. All documents that explain what caused the Subject Incident.

   **RESPONSE:**

46. All documents assessing preventability of and/or fault for the Subject Incident.

   **RESPONSE:**

47. If the scene of the Subject Incident was mapped (with a total station or other survey equipment) within 14 days of the Subject Incident, please produce a copy of the survey data files and all diagrams produced therefrom.

   **RESPONSE:**

48. Copies of all photographs, video, computer simulations, and any other documents depicting:

   a. Any vehicle involved in the Subject Incident;
   b. Any person involved in the Subject Incident;
   c. The scene of the Subject Incident; and/or
   d. Any evidence (roadway markings or other) relevant to the Subject Incident.

   **RESPONSE:**

21

49. Copies of all reports (you know what this means and it is not vague) relating to the Subject Incident including those prepared by William Lamb and those prepared by anyone working for or on behalf of XPO (except lawyers).

RESPONSE:

50. A copy of all correspondence and other communications (including e-mail) that you have had with any person other than your lawyer involving the Subject Incident.

RESPONSE:

51. All tapes and transcripts of conversations, interviews, and/or statements of any person who purports to know any facts or circumstances relevant to the issues of liability, comparative fault, causation and/or damages in this case.

RESPONSE:

52. If an Accident Review Board or similar entity reviewed the Subject Incident, produce the following:

   a. A copy of all documents (as defined) and other materials of any kind reviewed by said board or entity;
   b. A copy of all reports and documents (as defined) of any kind generated by said board or entity;
   c. Documents evidencing who was on the board;
   d. Documents evidencing all criteria for review; and
   e. Determination of preventability and all other conclusions reached by said board or entity.

RESPONSE:

53. Copies of all documents sent to or received from any governmental agency regarding the Subject Incident, the driver involved in the Subject Incident, or any subject that is part of the basis of this lawsuit.

RESPONSE:

54. Copy of all documents and communications of any kind related to any CSA Intervention against your company in the past two years.

RESPONSE:

55. Copies of all XPO policies, procedures, rules, guidelines, directives, manuals, handbooks and instructions that were in effect at the time of the Subject Incident, relating to:

22

a. Working for or with trucking company generally (e.g., employee manual or handbook);
b. Operation of any motor vehicle (e.g., driving manuals or handbooks, and the like);
c. Operation of a commercial vehicle;
d. Driving safety;
e. Defensive driving;
f. Compliance with federal and state laws and regulations;
g. Accident investigation;
h. Accident review boards;
i. Determination of preventability of accidents;
j. Hiring, training and supervising drivers; and
k. Disciplinary actions.

**RESPONSE:**

56. Copies of each document that William Lamb signed to prove that William Lamb received and/or agreed to be bound by any policies, procedures, rules, guidelines and/or standards of XPO.

**RESPONSE:**

57. To the degree that XPO has any rules, policies, procedures, guidelines, driving manuals, employee handbooks or manuals, or other similar documents that were not provided to William Lamb before the Subject Incident, please produce them now.

**RESPONSE:**

58. A complete copy of, or in the alternative, access to, each driver safety training film, video, videotape, videocassette, audio cassette, computer program, simulator, driver diagnostic record or test, maintained by your company, or used by XPO, its personnel, agents, or employees during the year of the Subject Incident and three years prior.

**RESPONSE:**

59. Copies of all industry and/or other guidelines and/or practices that you rely upon to support your contentions in this case.

**RESPONSE:**

23

60. Copy of documents showing the hierarchy of managerial positions at XPO and who occupied such positions as of the time of the subject incident and presently.

   RESPONSE:

61. A copy of each document (including articles and presentations) prepared and/or presented by any XPO representative relating to the safe operation of a commercial motor vehicle and/or the safe operation of a trucking company in the past five years.

   RESPONSE:

62. All company newsletters distributed during the time period beginning two years before the Subject Incident and present.

   RESPONSE:

63. A copy of all lease and trip lease contracts applicable to William Lamb and/or any vehicle involved in the Subject Incident.

   RESPONSE:

64. Copies of any contract under which your company was operating the truck in question at the time of the Subject Incident.

   RESPONSE:

65. A copy of XPO's accident register maintained as required by 49 CFR § 390.35.

   RESPONSE:

66. Transcripts or recordings of all depositions of corporate designees for XPO given in the past five years in cases where it was alleged that a driver working for XPO caused injury or death to another person.

   RESPONSE:

67. Copies of all documents putting any third party on notice of a claim arising from the Subject Incident.

   RESPONSE:

68. All correspondence and other communication of any kind between you and any other Defendant to this Action.

24

**RESPONSE:**

69. With respect to each expert witness who may provide testimony at the trial of this case, provide:

    a. A copy of all documents (as that term is defined above) and items of any kind produced to said expert;

    b. A copy of all documents (as that term is defined above) and items of any kind generated or produced by said expert;

    c. A copy of the entire file of said expert;

    d. A current résumé or curriculum vitae for said expert; and

    e. All billing records and work logs for said expert.

**RESPONSE:**

70. A copy of any and all documents and other materials which support any contention that the Subject Incident was the fault of anyone other than the Defendants.

**RESPONSE:**

71. Copies of all diagrams, graphs, illustrations, photographs, charts, pictures, models, blow-ups, or any other document or thing, including electronically created charts, animations, or data that you intend to utilize as an exhibit, demonstrative exhibit, or aid in the trial of this case not previously supplied.

**RESPONSE:**

72. Produce each document or thing that you contend is evidence, proof, or support of your claims on any issue of negligence or causation as to the Subject Incident, including but not limited to admissions of fault, engineering analysis, scientific tests, and official or unofficial reports.

**RESPONSE:**

73. Produce each document or thing that you contend evidences or supports your denial of any of Plaintiff's Requests for Admissions.

**RESPONSE:**

74. If any surveillance has been undertaken by or on behalf of XPO, produce a copy of all reports, photographs, video and anything else generated through that investigation.

**RESPONSE:**

PLEASE TAKE NOTICE THAT THESE REQUESTS FOR PRODUCTION ARE CONTINUING, AND YOU ARE UNDER A DUTY TO SUPPLEMENT OR AMEND YOUR ANSWERS TO PLAINTIFF'S DISCOVERY REQUESTS.

## REQUESTS FOR ADMISSION

Plaintiff serves you with the following requests for admission under the provisions of Rules 26 and 36 of the North Carolina Rules of Civil Procedure. You are requested to admit the truth of all matters within the scope of Rule 26(b) of the North Carolina Rules of Civil Procedure as they relate to statements or opinions of fact or of the application of law to fact, including the genuineness of certain documents.

Each matter will be considered admitted unless, within thirty (30) days of the date of service of this request, defendants serve upon counsel for plaintiff a written answer or objection addressed to the matter and signed by defendants or defendant's attorney. If objection is made, the reasons therefore shall be stated. Each answer shall specifically deny the matter or set forth in detail the reasons why the defendant cannot truthfully admit or deny the matter. A denial shall fairly meet the substance of the requested admission, and when good faith requires that defendant qualify an answer or deny only a part of the matter of which an admission is requested, defendant shall specify so much of it as is true and qualify or deny the remainder.

Defendant may not give lack of information or knowledge as a reason for failure to admit or deny unless defendants state that they have made a reasonable inquiry and the information known or readily obtainable by defendant is insufficient to enable defendant to admit or deny. Any matter admitted hereunder is conclusively established for the purposes of the pending action unless this Court on Motion permits withdrawal of amendment of the admission.

1. Admit that the DOT number for XPO is 241829.

ADMIT:
DENY:
REASON, IF DENIED:

2. Admit that the MC ICC number for XPO is 165377.

ADMIT:
DENY:
REASON, IF DENIED:

3. Admit that Decedent Mark Smith is a member of the public.

ADMIT:
DENY:
REASON, IF DENIED:

26

4. Admit that XPO was involved in intrastate transport at the time of the Subject Incident.

ADMIT:
DENY:
REASON, IF DENIED:

5. Admit that XPO was involved in interstate transport at the time of the Subject Incident.

ADMIT:
DENY:
REASON, IF DENIED:

6. Admit that XPO is a "motor carrier" as defined by the Federal Motor Carrier Safety Regulations.

ADMIT:
DENY:
REASON, IF DENIED:

7. Admit that XPO was a motor carrier as defined by the Federal Motor Carrier Safety Regulations at the time of the Subject Incident.

ADMIT:
DENY:
REASON, IF DENIED:

8. Admit that on October 11, 2023, XPO was the owner of a tractor involved in the Subject Incident.

ADMIT:
DENY:
REASON, IF DENIED:

9. Admit that on October 11, 2023, XPO was the owner of a trailer involved in the Subject Incident.

ADMIT:
DENY:
REASON, IF DENIED:

27

10. Admit that the tractor-trailer, VIN 3AKBGADV9GSHB2477, was involved in the Subject Incident.

ADMIT:
DENY:
REASON, IF DENIED:

11. Admit that on October 11, 2023, William Lamb was an agent of XPO.

ADMIT:
DENY:
REASON, IF DENIED:

12. Admit that on October 11, 2023, William Lamb was an employee of XPO.

ADMIT:
DENY:
REASON, IF DENIED:

13. Admit that at the time of the Subject Incident, William Lamb was acting within the course and scope of his employment or agency with XPO.

ADMIT:
DENY:
REASON, IF DENIED:

14. Admit that on October 11, 2023, William Lamb was operating the tractor-trailer owned by XPO.

ADMIT:
DENY:
REASON, IF DENIED:

15. Admit that on October 11, 2023, William Lamb was operating the tractor-trailer with the permission of XPO.

ADMIT:
DENY:
REASON, IF DENIED:

28

16. Admit that on October 11, 2023, William Lamb was operating the tractor-trailer with the knowledge of XPO.

ADMIT:
DENY:
REASON, IF DENIED:

17. Admit that on October 11, 2023, William Lamb was operating the tractor-trailer as trained by XPO.

ADMIT:
DENY:
REASON, IF DENIED:

18. Admit that on October 11, 2023, William Lamb was not operating the tractor-trailer as trained by XPO.

ADMIT:
DENY:
REASON, IF DENIED:

19. Admit that William Lamb is fully responsible for causing the Subject Incident.

ADMIT:
DENY:
REASON, IF DENIED:

20. Admit that William Lamb was a professional driver on the date and time of the Subject Incident.

ADMIT:
DENY:
REASON, IF DENIED:

21. Admit that XPO is properly named in the Complaint.

ADMIT:
DENY:
REASON, IF DENIED:

22. Admit that venue is proper in Robeson County Superior Court.

ADMIT:
DENY:
REASON, IF DENIED:

29

23. Admit that jurisdiction is proper in this Court.

**ADMIT:**
**DENY:**
**REASON, IF DENIED:**

24. Admit that service was proper upon XPO,

**ADMIT:**
**DENY:**
**REASON, IF DENIED:**

25. Admit that the person answering these questions has authority from XPO to do so.

**ADMIT:**
**DENY:**
**REASON, IF DENIED:**

This the 5 day of June, 2024

MUSSELWHITE, MUSSELWHITE,
BRANCH & GRANTHAM, P.A.

J. William Owen
NC State Bar No. 47994
606 N. Elm Street
Lumberton, NC 28358
wowen@mmbglaw.com
*Counsel for Plaintiff*

30

# CERTIFICATE OF SERVICE

This certifies that a copy of the foregoing *Plaintiff's First Set of Interrogatories, First Request for Production of Documents* and *First Request for Admission to Defendant XPO Logistics Freight, Inc.* were served on all counsel of record, via electronic mail only addressed as follows:

Megan M. Stacy
Gordon Rees Scully Mansukhani, LLP
Le'Ron A. Byrd
150 Fayetteville St., Suite 1120
Raleigh, NC 27602
mstacy@grsm.com
lbyrd@grsm.com
*Counsel for Defendant XPO Logistics Freight, Inc. and Defendant Lamb*

Jennifer Welch
Cranfill Sumner
P.O. Box 27808
Raleigh, NC 27611-7808
JWelch@cshlaw.com
*Counsel for Counterclaim Defendant Cindy Smith, Adminsitratrix of the Estate of Mark K. Smith.*

This the 5 day of June, 2024

MUSSELWHITE, MUSSELWHITE,
BRANCH & GRANTHAM, P.A.

J. William Owen
NC State Bar No. 47994
606 N. Elm Street
Lumberton, NC 28358
wowen@mmbglaw.com
*Counsel for Plaintiff*

31

J.W. Musselwhite
W. Edward Musselwhite, Jr.
David F. Branch, Jr.

# MUSSELWHITE | MUSSELWHITE
# BRANCH & GRANTHAM
### ATTORNEYS AT LAW

Norris Musselwhite Grantham
J. William Owen

William E. Musselwhite Sr.
(1930-1987)
Fred L. Musselwhite
(1939-2017)

October 22, 2024

<u>VIA EMAIL AND US MAIL</u>

Megan Stacy
Le'Ron Byrd
Gordon Rees Scully Mansukhani
150 Fayetteville Street, Suite 1120
Raleigh, NC 27601

Re:   Cindy Soles Smith, Administratrix of the Estate of Mark K. Smith
      v. William Bratty Lamb and XPO Logistics Freight, Inc.
      24 CVS 468 (Robeson County)

Dear Megan & Le'Ron:

Enclosed please find Plaintiff's Second Request for Production of Documents to
Defendant XPO Logistics Freight, Inc.

Sincerely yours,

MUSSELWHITE, MUSSELWHITE, BRANCH & GRANTHAM

J. William Owen

Cc: Jennfier Welch (via email only)



PLAINTIFF'S
EXHIBIT
_____
11

606 North Elm Street      Post Office Box 1448      Lumberton, NC 28359-1448
Telephone: (910) 738-5277      Fax: (910) 738-3678

STATE OF NORTH CAROLINA

COUNTY OF ROBESON

CINDY SOLES SMITH, Administratrix of the )
ESTATE OF MARK KEANNAN SMITH )
)
                    Plaintiff, )
)
v. )
)
WILLIAM BRATTY LAMB )
)
                    Defendant )
)
and )
)
XPO LOGISTICS FREIGHT, INC. )
)
                    Defendant/Counterclaim )
                    Plaintiff )

## PLAINTIFF'S SECOND REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT XPO LOGISTICS FREIGHT, INC.

Pursuant to Rules 26 and 34 of the North Carolina Rules of Civil Procedure, you are hereby required to answer under oath within thirty (30) days the following requests for discovery. Each of the Request for Production is continuing so as to require you to file supplemental answers if you obtain further or different information between the time your answers are served and the time of the trial. These Request for Production request documents and data which is known by you or is available to you, or is in the possession of your representatives, servants, or agents, insurance carriers and their representatives, including your attorney and his investigators, unless such information is clearly privileged.

For each document responsive to this request that is withheld under claim of privilege or work-product immunity, provide a statement under oath by a person having knowledge setting forth as to each document:

1.   The name and title of the author;
2.   The name and title of each person to whom the document was addressed;
3.   The name and title of each person to whom a copy of the document was sent;
4.   The date of the document;
5.   The number of pages of the document;
6.   A brief description of the nature and subject matter of the document;
7.   The nature of the claimed privilege or immunity;

8.    The category or categories of the request to which the document is responsive; and

9.    The exact location of the original and each copy as of the date and receipt of this request, along with the name and address of the custodian of said originals and copies.

If you are aware of any document otherwise responsive to these requests, which document is no longer in your custody or control, identify the name and title of the author, name and title of the addressee, date of the document, subject matter of the document or documents, the last date on which the document was in your control, the person or entity, if any, now in control of the document, the reasons for your disposition or release of the document, all persons who have knowledge of the circumstances surrounding its disposition and state what knowledge each person has.

Pursuant to Rule 34 of the North Carolina Rules of Civil Procedure, the plaintiff hereby requests that the defendant produce the originals of all documents herein requested and permit the plaintiff to inspect and copy the same, at the law office of Musselwhite, Musselwhite, Branch & Grantham, P.A. (606 N. Elm Street Lumberton, NC 28358) on the thirtieth (30) day following service of these Interrogatories, Requests for Production of Documents, and Requests for Admissions. In the alternative, the defendant may comply with these requests by attaching legible copies of all such documents and clearly designating the request to which each document or group of documents pertains.

In the event the defendant should fail to answer or should provide evasive or incomplete answers to any of the discovery requests set forth below, or in the event the defendant should fail or refuse to produce any of the documents requested herein, the plaintiff puts the defendant on notice that the plaintiff will move the Court, pursuant to Rule 37(a)(4) of the North Carolina Rules of Civil Procedure, for the reasonable expenses, including attorney's fees, incurred by the plaintiff to move the Court to compel the defendant to provide answers or to provide adequate or complete answers to all such discovery requests and to produce all such documents requested herein.

For the purposes of these discovery requests, the meaning of the word "document" shall include, but not be limited to, writings, drawings, graphs, charts, photographs, reports, phonograph records, computer records, digital recordings, and other data compilations from which information can be obtained or translated, if necessary, through detection devices or other equipment, into usable form.

You are required and have a lawful duty to supplement, update and amend your responses and answers to these discovery requests in the following instances:

1.    Any requests or questions directly addressed to:
      a.    The identity and location of persons having knowledge of discoverable matter; and

2

b. The identity of each person expected to be called as an expert witness at the trial, the subject matter on which he is to testify and the substance of his testimony.

2. Any responses or answers to questions or requests if you obtain information upon the basis of which:
   a. You know or discover that the prior response was incorrect or incomplete when made; or
   b. You know that the response, though correct when made is no longer true and the circumstances are such that a failure to amend the response is in substance a knowing concealment.

## DEFINITIONS

Unless otherwise indicated, the following definitions shall be applicable to these Requests for Production of Documents to Defendant XPO Logistics Freight, Inc.:

1. The term **"Document"** as used herein shall be given a very broad definition to include every type of paper, writing, data, record, graphic, drawing, photograph, audio recording and video recording. The term includes material in all forms, including printed, written, recorded, or other. The term includes all files, records and data contained in any computer system, computer component and/or computer storage (e.g., hard drive, disc, magnetic tape, backup system, etc.). This term includes, but is not limited to, correspondence, reports, meeting minutes, memoranda, stenographic or handwritten notes, diaries, notebooks, account books, orders, invoices, statements, bills, checks, vouchers, purchase orders, studies, surveys, charts, maps, analyses, publications, books, pamphlets, periodicals, catalogues, brochures, schedules, circulars, bulletins, notices, instructions, manuals, journals, e-mails, e-mail attachments, data sheets, work sheets, statistical compilations, data processing cards, microfilms, computer records (including printouts, disks or other magnetic storage media), tapes, photographs (positive or negative prints), drawings, films, videotapes, hard drive recordings, pictures, and voice recordings. Plaintiff expressly intends for the term "Document" to include every copy of such writing, etc. when such copy contains any commentary or notation whatsoever that does not appear on the original and any attachments or exhibits to the requested document or any other documents referred to in the requested document or incorporated by reference.

2. **"Person"** means any natural person, corporation, partnership, proprietorship, association, organization, group of persons, or any governmental body or subdivision thereof.

3. **"Identify"** with respect to any "person" or any reference to stating the "Identity" of any "person" means to provide the name, home address, telephone number, business name, business address, and business telephone number of such person, and a description of each such person's connection with the events

3

in question.

4. **"Identify"** with respect to any **"document"** or any reference to stating the **"identification"** of any **"document"** means to provide the title and date of each such document, the name and address of the party or parties responsible for the preparation of each such document, the name and address of the party who requested or required the preparation of the document or on whose behalf it was prepared, the name and address of the recipient or recipients of each such document, and the names and addresses of any and all persons who have custody or control of each such document, or copies thereof.

5. **"Subject Incident"** means the collision between William Bratty Lamb, driver for XPO Logistics Freight, Inc and Mark K. Smith, which occurred on October 11, 2023 in Robeson County, North Carolina.

6. **"You," "Your,"** or **"XPO"** means Defendant XPO Logistics Freight, Inc.

7. **"William Lamb"** means Defendant William Bratty Lamb.

8. **"Similar"** shall have the meaning given in the American Heritage Dictionary, which is "showing some resemblance; related in appearance or nature; alike but not identical." As used here, the word "similar" shall not be limited as if modified by the word "substantially" and shall not mean "the same". If you limit the information provided because you use another interpretation of the word "similar," please state the interpretation you are using and reveal the nature of the information withheld.

9. The terms **"and"** as well as **"or"** shall be each construed conjunctively and disjunctively as necessary to bring within the scope of each request for documents all information and documents that might otherwise be construed to be outside its scope. The term **"and/or"** shall be construed likewise.

10. Whenever necessary to bring within the scope of a request for production of documents any information or document that might otherwise be construed to be outside its scope: (i) the use of a verb in any tense shall be construed as the use of the verb in all other tenses; (ii) the use of the singular shall be construed as the use of the plural and vice versa; and (iii) "any" includes "all," and "all" includes "any."

11. **"Telematics Data"** or **"Telematics Software"** as that term is used herein includes but is not limited to all underlying data relating to: stationary and in motion updates, all notifications and alerts, trip reports, maintenance notifications, hours of service records and notifications mapping and navigating records, critical event notifications, video, audio, safety scorecards and associated data, collision notification, in-vehicle driver coaching, training records, re-training records, targeted training, documentation that self-coaching was completed, and driver

4

behavior notifications (including but not limited to erratic steering pattern detection, signs of fatigue, acceleration, braking, cornering, idling, close following, U-turns, speeding, cell phone use, risky behaviors, distracted driving and lane departures).

## SECOND REQUEST FOR PRODUCTION TO DEFENDANT XPO LOGISTICS FREIGHT, INC.

PURSUANT to Rule 34 of the Rules of Civil Procedure, you are requested to produce for copying and inspection those items listed below. These items are to be produced at the offices of Musselwhite, Musselwhite, Branch & Grantham 606 N. Elm Street Lumberton, NC 28358 Monday through Friday within the time limit provided by the Rules of Civil Procedure. The items to be produced include:

1. All telematics data (specifically including but not limited to: videos, screenshots, coaching sessions, behaviors coached, event coached, comments, event notes and session notes) for William Lamb from date of hire (09-09-20) through present.

**RESPONSE:**

2. Any documents that reflect the identity of employees of XPO Logistics Freight Inc. (or any third parties) who regularly monitored or reviewed telematics data (including but not limited to Lytx software) for employee William Lamb from the date of hire (09-09-20) through present.

**RESPONSE:**

3. Produce copies of all communications and transmissions between William Lamb and any entity transmitted through any system on-board the tractor and trailer involved in the Subject Incident for the period of 30-days before the Subject Incident and ending 7-days after the Subject Incident. This includes any and all satellite or cellular systems or telematics systems, regardless of manufacturer, and includes without limitation, all electronic on-board recorders (EOBRs) and systems such as those made available by Geotab, Teletrac Navman, Verizon Connect, Samsara, Fleet Complete, Motive, GPS Insight, ORBCOMM or some other system or the like.

**RESPONSE:**

4. With respect to any telematics software being used by XPO Logistics Freight, Inc, produce the log of all safety alerts received in the safety inbox or other location designated for William Lamb for 6-months prior to the Subject Incident through present.

**RESPONSE:**

5

5. With respect to any telematics software being used by XPO Logistics Freight, Inc., produce any and all electronic log violations or notifications for William Lamb for 6-months prior to the Subject Incident.

   RESPONSE:

6. With respect to any telematics software being used by XPO Logistics Freight, Inc., produce a printout of the Safety Score and the configuration page for William Lamb for 3-months prior to the Subject Incident through present.

   RESPONSE:

7. With respect to any telematics software being used by XPO Logistics Freight, Inc., produce a printout of the speeding settings page for the transportation management system used by XPO Logistics Freight, Inc. on the date of the Subject Incident.

   RESPONSE:

8. With respect to any telematics software being used by XPO Logistics Freight, Inc., produce a printout of the alert configuration page for the date of the Subject Incident.

   RESPONSE:

9. With respect to any telematics software being used by XPO Logistics Freight, Inc, produce all notifications in the inbox (or other similar location) for William Lamb for 6-months prior to the Subject Incident through present.

   RESPONSE:

10. With respect to any telematics software being used by XPO Logistics Freight, Inc, produce the safety setting in the transportation management system utilized for William Lamb's individual vehicle/person on the date of Subject Incident.

    RESPONSE:

6

11. Produce the safety setting in the transportation management system utilized for fleet wide vehicles on the date of the Subject Incident (these include: harsh event sensitivity, forward collision warning, distracted driving detection, tailgating detection, following distance, audio recording, camera height calibration, in-cab voice coaching for policy violations, in-cab coaching for driver speeding and in-cab nudges or alerts).

**RESPONSE:**

12. Produce the electronics audit log for William Lamb's electronic logging device for 6-months before the Subject Incident.

**RESPONSE:**

13. With respect to any telematics software being used by XPO Logistics Freight, Inc., produce the administrative username and password for Plaintiff's expert(s) to access XPO Logistic Freight Inc.'s transportation management system account for data and information related to the Subject Incident and William Lamb.

**RESPONSE:**

14. Produce the complete video footage, from the Video Library in the telematics system cloud or wherever it is located, of the forward-facing and driver-facing video footage from the date of the Subject Incident.

**RESPONSE:**

15. With respect to any telematics software being used by XPO Logistics Freight, Inc., produce the Video Audit Log for the video produced of the Subject Incident, which may show which administrator viewed the video, when they viewed it, when it was downloaded, and any pinned notes saved with the video.

**RESPONSE:**

7

This the 22nd day of October, 2024

MUSSELWHITE, MUSSELWHITE,
BRANCH & GRANTHAM, P.A.

J. William Owen
NC State Bar No. 47994
606 N. Elm Street
Lumberton, NC 28358
wowen@mmbglaw.com
Counsel for Plaintiff

8

# CERTIFICATE OF SERVICE

This certifies that a copy of the foregoing *Plaintiff's Second Request for Production of Documents to Defendant XPO Logistics Freight, Inc.* was served on all counsel of record, via electronic mail only addressed as follows:

Megan M. Stacy
Gordon Rees Scully Mansukhani, LLP
Le'Ron A. Byrd
150 Fayetteville St., Suite 1120
Raleigh, NC 27602
mstacy@grsm.com
lbyrd@grsm.com
*Counsel for Defendant XPO Logistics Freight, Inc. and Defendant Lamb*

Jennifer Welch
Cranfill Sumner
P.O. Box 27808
Raleigh, NC 27611-7808
JWelch@cshlaw.com
*Counsel for Counterclaim Defendant Cindy Smith, Adminsitratrix of the Estate of Mark K. Smith.*

This the 22day of October, 2024

MUSSELWHITE, MUSSELWHITE,
BRANCH & GRANTHAM, P.A.

J. William Owen
NC State Bar No. 47994
606 N. Elm Street
Lumberton, NC 28358
wowen@mmbglaw.com
*Counsel for Plaintiff*

9

J.W. Musselwhite
W Edward Musselwhite, Jr
David F. Branch, Jr.

Norris Musselwhite Grantham
J. William Owen

William E. Musselwhite Sr.
(1930-1987)
Fred L. Musselwhite
(1939-2017)

# MUSSELWHITE | MUSSELWHITE
# BRANCH & GRANTHAM

### ATTORNEYS AT LAW

August 6, 2024

VIA EMAIL AND US MAIL

Megan Stacy
Le'Ron Byrd
Gordon Rees Scully Mansukhani
150 Fayetteville Street, Suite 1120
Raleigh, NC 27601

Re:  **Cindy Soles Smith, Administratrix of the Estate of Mark K. Smith
v. William Bratty Lamb and XPO Logistics Freight, Inc.
24 CVS 468 (Robeson County)**

Dear Le'Ron:

I am in receipt of two emails dated August 6, 2024, wherein you produced XPO Logistics Freight, Inc.'s Responses to Plaintiff's First Set of Interrogatories, First Request for Production of Documents and First Request for Admission and Defendant William B. Lamb's Responses to First Set of Interrogatories, First Request for Production of Documents and First Request for Admission.

As I am sure you are aware, the foregoing First Set of Interrogatories, First Request for Production of Documents and First Request for Admission directed to Defendant XPO Logistics Freight, Inc. and Defendant William B. Lamb were served upon you pursuant to Rule 5 on June 5, 2024. You then moved for an extension of time through the Court and were granted an extension, through the Court, to respond to Plaintiff's discovery request on or before August 5, 2024.

Your email today seems to indicate that you were granted an additional extension of time to respond to Plaintiff's First Set of Interrogatories, First Request for Production of Documents and First Request for Admission directed to Defendant XPO Logistics Freight, Inc. and Defendant William B. Lamb. That is not accurate as we never granted Defendant XPO Logistics Freight, Inc. or Defendant William B. Lamb an extension of time to respond to Plaintiff's discovery request. The only extension was granted by the Court on July 1, 2024, which provided a production date of August 5, 2024.

The discovery responses were not served within the time prescribed by the Order dated July 1, 2024 and by the Rules of Civil Procedure. Accordingly, it is our position that all of the Request for Admissions directed to Defendants XPO Logistics Freight, Inc. and Defendant William B. Lamb are deemed admitted.


PLAINTIFF'S EXHIBIT 5

It is also our position that all objections to Interrogatories, Request for Production of Documents and Request for Admission are untimely and were thereby waived. This includes waiver of all general objections, attorney-client privilege and work product objections (See e.g., Kean v. Kean 2022-NCCOA-275). Defendants likewise failed to move for a protective order within the prescribed period since the underlying objections were waived.

I am still in the process of reviewing Defendant XPO Logistics Freight, Inc.'s and Defendant William B. Lamb's Responses to Plaintiff's First Set of Interrogatories, First Request for Production of Documents and First Request for Admission – however upon initial review, the responses appear to be lacking in substance, invasive and otherwise incomplete. The responses also contain improper objections. By way of example, Defendants failed to produce basic insurance policy information that is clearly discoverable under Rule 26(b)(2).

In light of the foregoing, please produce complete responses, without objection, to Plaintiff's First Set of Interrogatories and First Request for Production of Documents directed to Defendant XPO Logistics Freight, Inc. and Defendant William B. Lamb within ten (10) business days. Please also let me know your position regarding the admissions of Defendant XPO Logistics Freight, Inc. and Defendant William B. Lamb.

If we cannot agree on the above–I will have no choice but to move the Court for relief under Rule 36 and Rule 37. Please consider this correspondence as Plaintiff's good faith attempt to resolve this discovery dispute amicably without the Court's intervention.

Sincerely yours,

MUSSELWHITE, MUSSELWHITE, BRANCH & GRANTHAM

J. William Owen

Enclosures

Cc: Jennfier Welch (via email only).

J.W. Musselwhite
W. Edward Musselwhite, Jr.
David F. Branch, Jr.

Norris Musselwhite Grantham
J. William Owen

William E. Musselwhite Sr.
(1930-1987)
Fred L. Musselwhite
(1939-2017)

# MUSSELWHITE | MUSSELWHITE
# BRANCH & GRANTHAM

### ATTORNEYS AT LAW

August 22, 2024

VIA EMAIL AND US MAIL

Megan Stacy
Le'Ron Byrd
Gordon Rees Scully Mansukhani
150 Fayetteville Street, Suite 1120
Raleigh, NC 27601

Re: Cindy Soles Smith, Administratrix of the Estate of Mark K. Smith
v. William Bratty Lamb and XPO Logistics Freight, Inc.
24 CVS 468 (Robeson County)

Dear Megan:

In our letter dated August 6, 2024, we addressed several concerns that we had with Defendant XPO and Defendant Lamb's discovery responses. As you know, on June 5, 2024, we served 74 specific Request for Production of Documents on Defendant XPO and 52 specific Request for Production of Documents on Defendant Lamb.

The past-due discovery responses from Defendant XPO and Defendant Lamb obtained multiple improper objections. Despite them being improper, since the responses were served late, it remains our position that as a matter of law all objections are now waived.

Moreover, the past-due responses obtained extremely limited document production, mainly consisting of publicly accessible collision reports, 911 calls and photographs. Defendants likewise failed to move for a protective order within the prescribed period since the underlying objections were waived. In the spirit of compromise, we agreed to the potential entry of a consent protective order with the understanding that it should obtain a sharing provision. We will still agree to a protective order for truly confidential and proprietary information. However we cannot continue to delay this matter as many of the documents requested are simply *not* confidential.

In our letter of August 6, 2024 and subsequent phone conversation, we requested full and complete discovery responses prior to involving the Court. We requested that these responses be expeditiously supplemented within 10 business days, which would have been by August 20, 2024. We have received no supplemental

606 North Elm Street    Post Office Box 1448    Lumberton, NC 28359-144
Telephone: (910) 738-5277    Fax: (910) 738-3678


PLAINTIFF'S EXHIBIT

or otherwise substantive response to our discovery despite our good faith attempts to resolve these discovery disputes without the Court's intervention.

I want to reiterate our position regarding the waiver of the objections in your past-due discovery responses. We expect full and complete discovery responses, without objection on or before August 30, 2024 by 5:00pm EST. If we cannot agree on the above—I will have no choice but to move the Court for relief under Rule 36 and Rule 37 and request appropriate sanctions. Please consider this correspondence as Plaintiff's second good faith attempt to resolve this discovery dispute amicably without the Court's intervention.

Sincerely yours,

MUSSELWHITE, MUSSELWHITE, BRANCH & GRANTHAM

J. William Owen

Enclosures

Cc: Jennfier Welch (via email only)

**Will Owen**

| | |
|---|---|
| From: | Will Owen |
| Sent: | Friday, August 30, 2024 4:48 PM |
| To: | Le'Ron Byrd |
| Cc: | Brandi Davis; Jennifer A. Welch; Stacy Frazier; Megan Stacy |
| Subject: | Re: Estate of Smith v. Lamb, et al. | Defendants' Responses to Plaintiff's First Set of Discovery Requests |

Le'Ron:

Thanks for letting me know, I can extend the deadline to 5pm EST on Tuesday (September 3rd) with all other conditions outlined in my recent correspondence remaining the same. Enjoy your holiday.

Will

**J. William Owen**
Musselwhite, Musselwhite, Branch & Grantham, P.A.
T: +1 910 738 5277 | F: +1 910 738 3678

From: Le'Ron Byrd <lbyrd@grsm.com>
Sent: Friday, August 30, 2024 4:26:10 PM
To: Will Owen <wowen@mmbglaw.com>
Cc: Brandi Davis <bldavis@grsm.com>; Jennifer A. Welch <JWelch@cshlaw.com>; Stacy Frazier <sfrazier@cshlaw.com>; Megan Stacy <mstacy@grsm.com>
Subject: RE: Estate of Smith v. Lamb, et al. | Defendants' Responses to Plaintiff's First Set of Discovery Requests

Will:

I just called your line and it went to voicemail. By way of update, I wanted to send you a note prior to the deadline identified in your letter. We're currently finalizing our supplemental written responses and production to send to your office. Given that a lot of folks have already left for the holiday, we're doing a lot of heavy lifting on our end with less than usual help. That said, and in response to your letter, we will get you supplemental responses later today. It just won't be before the 5pm deadline.

If you have any questions, please feel free to reach out to my cell phone listed below.

As always, thank you for your professionalism and courtesy.

Regards,
Le'Ron

**LE'RON A. BYRD | Associate**

GORDON REES SCULLY MANSUKHANI | GRSM50
YOUR 50 STATE LAW FIRM™
CELEBRATING 50 YEARS OF EXCELLENCE



1

**Will Owen**

| | |
|---|---|
| **From:** | Will Owen |
| **Sent:** | Wednesday, September 04, 2024 9:39 AM |
| **To:** | Brandi Davis; Le'Ron Byrd |
| **Cc:** | Jennifer A. Welch; Stacy Frazier; Megan Stacy |
| **Subject:** | RE: Estate of Smith v. Lamb, et al. | Defendants' Responses to Plaintiff's First Set of Discovery Requests |

Megan & Le'Ron:

Thank you for your correspondence and supplemental discovery. I am still in the process of reviewing your supplementation but wanted to get back with you in an expeditious manner.

At first glance, I was surprised to see that the following were not produced:

(1) Insurance policy for XPO Logistics Freight, Inc. – given that we served our discovery back on June 5, 2024, I find it hard to understand why this still has not been produced. We will need a copy of the entire tower of coverage as well. I can imagine that XPO has multiple layers of coverage. This is not confidential or proprietary and is specifically discoverable (see Rule 26(b)(2)).

(2) XPO Training Materials and Employee Handbook – I noticed that you produced the redacted personnel file for William Lamb but no training materials or employee handbook. These items are highly relevant and are discoverable.

(3) Shipping documents – at minimum, we need the Bill of Lading and Manifest. Again, these are very basic shipping documents and are not confidential or proprietary.

I will send a more detailed deficiency letter once I review the responses and production from yesterday and any supplementation that you plan to make on September 6th per your letter. Your correspondence yesterday seems to suggest that we are seeking items that are wholly unrelated to the subject litigation. We strongly disagree. This is a very serious death case and XPO is a large and sophisticated motor carrier with 9,955 power units and 12,806 drivers. As I am sure you are aware, items that pre-date the subject collision can be highly relevant (i.e., logs, lytx data, samsara data, prior accidents, loading/unloading, etc.). All of our highly specific discovery request were reasonable calculated to lead to potentially relevant and discoverable information and we expect substantive responses to each request.

I am likewise surprised that XPO cannot seem to formulate a response to our Request for Monetary Relief Sought with respect to the counterclaim of XPO against my client's estate. The XPO tractor was damaged in October 2023 — why the delay? I must again emphasize that this matter will likely appear on the next administrative calendar in Robeson County, and we plan to set it for trial in Spring 2025, hence our urgency and persistence. I look forward to continuing to work with both of you on this exceptionally tragic case.

Will

**J. William Owen**
Musselwhite, Musselwhite, Branch & Grantham, P.A.
T: +1 910 738 5277 | F: +1 910 738 3678

From: Brandi Davis <bldavis@grsm.com>
Sent: Tuesday, September 03, 2024 4:24 PM
To: Will Owen <wowen@mmbglaw.com>; Le'Ron Byrd <lbyrd@grsm.com>

PLAINTIFF'S
EXHIBIT
**9**

1

J.W. Musselwhite
W. Edward Musselwhite, Jr.
David F. Branch, Jr.

# MUSSELWHITE | MUSSELWHITE
# BRANCH & GRANTHAM

### ATTORNEYS AT LAW

Norris Musselwhite Grantham
J. William Owen

William E. Musselwhite Sr.
(1930-1987)
Fred L. Musselwhite
(1939-2017)

October 10, 2024

VIA EMAIL AND US MAIL

Megan Stacy
Le'Ron Byrd
Gordon Rees Scully Mansukhani
150 Fayetteville Street, Suite 1120
Raleigh, NC 27601

**Re:** **Cindy Soles Smith, Administratrix of the Estate of Mark K. Smith
v. William Bratty Lamb and XPO Logistics Freight, Inc.
24 CVS 468 (Robeson County)**

Dear Megan & Le'Ron:

     I have reviewed XPO's supplemental discovery responses dated September 3, 2024.

     As you know, Plaintiff served 74 specific Request for Production of Documents on XPO on June 5, 2024. In your supplemental responses, XPO objected 74 times – to every single Request for Production served by Plaintiff. It is noteworthy that nearly all of the objections are identical boilerplate objections. In the same set of discovery, Plaintiff served 38 Interrogatories on XPO. In the supplemental responses, XPO objected 38 times – to every single interrogatory served by Plaintiff. Likewise, nearly all of these objections are identical boilerplate objections.

     As you know, Courts routinely grant motions to compel and even sanctions where a party responding to discovery utilizes general, boilerplate objections. Courts in this state have uniformly expressed disfavor for general boilerplate objections and these objections do not comply with the Rules of Civil Procedure. As you will recall from our previous correspondence, the discovery responses of XPO were past-due when they were served beyond the time set forth in the Order issued by the Clerk and without any extensions from our office. It remains our position that as a matter of law, all of XPO's objections to the past-due written discovery were thereby waived.

     Notwithstanding the waiver issue, in an effort to move this matter forward – I have summarized our position regarding some of the more serious written discovery deficiencies below:

606 North Elm Street    Post Office Box 1448    Lumberton, NC 28359-1448
Telephone: (910) 738-5277    Fax: (910) 738-3678


PLAINTIFF'S
EXHIBIT
10

o **RFP No. 2:** Plaintiff requested a copy of the document retention policies for XPO. XPO indicated that these policies would be supplemented. We have not received responsive documents.

o **RFP No. 3 and No. 4:** Plaintiff requested copies of each insurance policy and the corresponding declaration page for *each policy* that provides coverage for the Subject Incident. XPO provided one policy from Chubb which appears to insure XPO Logistics, Inc, up to $10,000,000. As you know, we sued XPO Logistics Freight, Inc. and their employee-driver (Lamb). The policy that you provided appears to only insure XPO Logistics, Inc. – not XPO Logistics Freight, Inc. We need declaration pages for the entire tower of coverage for XPO Logistics Freight, Inc. It is my understanding that the tower is well into the 9-figure range. We have not received these highly relevant and discoverable insurance documents, please supplement your response accordingly.

o **RFP No. 6:** Plaintiff requested the Driver Qualification File, Driver Investigation File and Driver History File that is required under federal law. Plaintiff has not received responsive documents to this request.

o **RFP No. 33:** Plaintiff seeks email communications between Lamb and XPO for the 90 days prior to the subject collision to present. Plaintiff has not received any responsive documents. If documents are being withheld pursuant to privilege, please provide a privilege log.

o **RFP No. 34:** Plaintiff seeks communications between Lamb and XPO that were transmitted through any system on-board the tractor and trailer involved in the subject collision for 30-days before the Subject Incident and ending 7 days after the Subject incident. Plaintiff has not received responsive documents. To the extent that said communications are confidential or proprietary, we now have a protective order in place and we ask that these documents be produced.

o **RFP No. 35:** Plaintiff seeks all on-board audio and video from the on-board monitoring devices. We now know that XPO uses the telematics program provided through Lytx to monitor, train and "coach" its employee-drivers. We need all of the Lytx data from the subject tractor and all Lytx data that in any way relates to Defendant Lamb.

o **RFP No. 40:** Plaintiff seeks Driver Vehicle Inspection Reports (DVIR) from the period of 6-months before the Subject Incident until one week following the Subject Incident for the tractor and trailer involved in this collision. XPO objected to this request as overly broad – Plaintiff is only seeking DVIR's for the subject tractor and trailer involved in this collision. This is not overly broad or unduly burdensome.

o **RFP No. 42:** Plaintiff seeks basic shipping documents from XPO, including the bill of lading, manifest and dispatch documents related to

the load that Defendant Lamb was transporting at the time of the subject collision. No documents have been produced. These are clearly relevant and discoverable.

o **RFP No. 46:** Plaintiff seeks documents related to the Preventability Reports/Analysis prepared by XPO following the subject collision. Plaintiff has not received any responsive documents relating to the preventability analysis that was completed by XPO in the ordinary course of business. Please supplement this response accordingly.

o **RFP No. 55-59:** These requests seek all training materials provided to XPO drivers. While you produce the purported "employee handbook" for XPO —we need all *training materials* that were provided to Defendant Lamb or that should have been provided to Defendant Lamb during his employment with XPO.

o **RFP No. 60:** Plaintiff seeks *documents* — not counsel-created summaries — of the hierarchy at XPO at the time of the subject collision and presently.

o **RFP No. 61:** Plaintiff seeks documents that were prepared and/or presented by XPO representatives concerning the *safe operation of commercial vehicles* during the last 5 years. Plaintiff has not received any documents responsive to this request. This request is not overly broad as it relates specifically to safety.

o **RFP No. 63-64:** Plaintiff seeks any contracts or agreements applicable to Defendant Lamb or the subject tractor and trailer. Defendant objected to this request. If documents are being withheld pursuant to privilege, please produce a privilege log.

o **RFP No. 65:** Plaintiff seeks XPO's "Accident Register" which is required by federal law. Plaintiff has not received any responsive documents to this specific request. It is not overly broad or unduly burdensome to produce this highly relevant information.

o **RFP No. 66:** Plaintiff seeks deposition transcripts from XPO corporate designees concerning accidents where it was alleged that XPO's employee caused an injury or death to another person during the last 5 years. Plaintiff has not received any responsive documents. This is not overly broad or burdensome. If documents are being withheld pursuant to privilege, please produce a privilege log.

o **Interrogatory No. 3:** Plaintiff seeks information concerning claims and lawsuits filed against XPO wherein a person was injured or killed as a result of XPO drivers. No responsive documents were produced. This is highly relevant information that is discoverable. XPO alleges that this information is public. Keep in mind that Plaintiff seeks pre-suit *claim*

information that is not public. Please supplement this response accordingly.

- o **Interrogatory No. 5:** Plaintiff seeks actual written responses to (a)-(g) – none were provided. Please supplement with written responses to each subsection. These questions are not overbroad or unduly burdensome to answer.

- o **Interrogatory No. 6:** Plaintiff seeks actual written responses to (a)-(e) –none were provided. Please supplement with written responses to each subsection. These questions are not overbroad or unduly burdensome to answer.

- o **Interrogatory No. 7:** Plaintiff seeks actual written responses to (a)-(e) –none were provided. Please supplement with written responses to each subsection. These questions are not overbroad or unduly burdensome to answer.

- o **Interrogatory No. 12:** Plaintiff seeks actual written responses to (b)-(d). Please supplement with written responses to each subsection. These questions are not overbroad. These questions are not overbroad or unduly burdensome to answer.

- o **Interrogatory No. 14:** Plaintiff seeks actual written responses to the question asked. XPO only provided a direction to documents produced rather than written responses as required by the Rules. These questions are not overbroad or unduly burdensome to answer.

- o **Interrogatory No. 15:** Plaintiff seeks actual written responses to the question asked. XPO only provided a direction to files produced rather than written responses as required by the Rules. These questions are not overbroad or unduly burdensome to answer.

- o **Interrogatory No. 20:** Please produce the "internal investigation documents" that XPO references in this response. If documents are being withheld pursuant to privilege, please product a privilege log.

- o **Interrogatory No. 22:** Plaintiff seeks actual written responses to the question asked. XPO only provided a direction to documents produced rather than written responses as required by the Rules. These questions are not overbroad or unduly burdensome to answer.

- o **Interrogatory No. 26:** Please produce the "internal investigation documents" that XPO references in this response. If documents are being withheld pursuant to privilege, please product a privilege log.

- o **Interrogatory No. 32:** Please produce the "internal investigation documents" that XPO references in this response. If documents are being withheld pursuant to privilege, please product a privilege log.

- o **Interrogatory No. 36:** Plaintiff seeks actual written responses to the question asked. XPO only provided a direction to documents that were allegedly produced rather than written responses as required by the Rules. These questions are not overbroad or unduly burdensome to answer. Plaintiff is not seeking information concerning experts hired by XPO. This Interrogatory ask for written answers concerning XPO's accident review board and preventability determination, which are conducted in the ordinary course of business.

- o **Interrogatory No. 38:** Plaintiff seeks actual written answers to the question posed regarding the identity of insurance carriers for XPO, policy numbers, limits of coverages and names of all insureds. Please supplement this response as this information is clearly and specifically discoverable under the Rules.

In addition to the above, please produce the following:

- o Unredacted version of XPO-000058;
- o XPO-000091 does not appear to relate to this case (wrong employee);
- o Please provide a legible copy of XPO- 000109.

Lastly, we have not received any meaningful response to our Request for Monetary Relief Sought. I understand that XPO has sued my client for damages to the trailer owned by XPO. The computation for the exact monetary relief sought should not be difficult to ascertain. Please supplement the foregoing responses in the next fifteen (15) business days. Once again, please consider this correspondence as Plaintiff's good faith attempt under Rule 37 to resolve these discovery deficiencies without the need for the Court's intervention. I look forward to continuing to work with you on this incredibly tragic matter.

Sincerely yours,

MUSSELWHITE, MUSSELWHITE, BRANCH & GRANTHAM

J. William Owen

Cc: Jennfier Welch (via email only)

J.W Musselwhite
W. Edward Musselwhite, Jr.
David F. Branch, Jr.

Norris Musselwhite Grantham
J. William Owen

# MUSSELWHITE | MUSSELWHITE
# BRANCH & GRANTHAM

## ATTORNEYS AT LAW

William E. Musselwhite Sr.
(1930-1987)
Fred L. Musselwhite
(1939-2017)

October 29, 2024

VIA EMAIL AND US MAIL

Megan Stacy
Le'Ron Byrd
Gordon Rees Scully Mansukhani
150 Fayetteville Street, Suite 1120
Raleigh, NC 27601

  **Re:**   **Cindy Soles Smith, Administratrix of the Estate of Mark K. Smith**
    **v. William Bratty Lamb and XPO Logistics Freight, Inc.**
    **24 CVS 468 (Robeson County)**

Dear Megan & Le'Ron:

  I am in receipt of your letter dated October 25, 2024, and will specifically respond to any request that Plaintiff supplement her discovery responses in a future correspondence.

  With respect to the total available insurance coverage for XPO Logistics Freight, Inc. and Defendant Lamb — know that both of you have an obligation to make sure that all layers of coverage are on notice of their potential exposure which I believe is as high as $100,000,000. Of course, if you decide not to do so, then you are making that decision at your own peril and I hope that you have E&O coverage high enough to back you up if you make the wrong decision. If despite this warning your position remains that the only applicable policy of coverage whatsoever is the single policy from Chubb that has been produced in discovery (with a per occurrence limit of $10,000,000) — please complete a sworn affidavit confirming this under oath and provide it to me on or before the deadline set forth in my previous correspondence of October 10, 2024, which is on or before Friday November 1, 2024 by 5pm EST.

  You and your client should know that Robeson County juries have a long and deeply rooted history of awarding large verdicts in personal injury and wrongful death cases. This is attributable in large part to the uniquely diversified population. Robeson County is 41.7% American Indian, 30.9% White, 23.8% African American and 3.6% Hispanic/Latino. Since 2008, Robeson County has been identified as among the 10% of the United States counties that are "majority-minority." Robeson County is also among one of the poorest counties in the United States. Further, as you are aware, since COVID, juries have found for the plaintiff more often than in the past, and when they have found for the plaintiff, have issued substantial verdicts. For example, a Pitt County jury awarded $34,000,000 in a wrongful death case mere months ago.

606 North Elm Street  Post Office Box 1448  Lumberton, NC 28359-1
Telephone: (910) 738-5277  Fax: (910) 738-3678



PLAINTIFF'S
EXHIBIT
12

It is also important to appreciate that our firm was founded in 1955 and has represented tens of thousands of Robeson County residents and has successfully tried more cases to verdict than anyone in the area. This case has evidence of significant actual physcial pain and mental suffering along with potential punitive exposures, among other aggravating factors.

In the spirit of transparency, note that this matter will appear on the next Administrative Calendar which is scheduled for December 2, 2024. Know that I will request a Spring 2025 trial setting with a peremptory setting. The facts, circumstances, posture and potential exposure that this tragic case presents should give pause to your clients. We look forward to receiving the requested supplementation from Defendant XPO Logistics Freight, Inc. on or before Friday November 1, 2024, by 5pm EST.

Sincerely yours,

MUSSELWHITE, MUSSELWHITE, BRANCH & GRANTHAM

J. William Owen

Cc: Jennifer Welch (via email only)

J.W. Musselwhite
W. Edward Musselwhite, Jr.
David F. Branch, Jr.

# MUSSELWHITE | MUSSELWHITE
# BRANCH & GRANTHAM

### ATTORNEYS AT LAW

Norris Musselwhite Grantham
J. William Owen

William E. Musselwhite Sr.
(1930-1987)
Fred L. Musselwhite
(1939-2017)

November 1, 2024

VIA EMAIL AND US MAIL

Megan Stacy
Le'Ron Byrd
Gordon Rees Scully Mansukhani
150 Fayetteville Street, Suite 1120
Raleigh, NC 27601

*Re:*   **Cindy Soles Smith, Administratrix of the Estate of Mark K. Smith v.
William Bratly Lamb and XPO Logistics Freight, Inc.
24 CVS 468 (Robeson County)**

Dear Le'Ron:

Thank you for taking my call on Wednesday to discuss this case and the ongoing written discovery deficiencies for XPO Logistics Freight, Inc. As discussed, we are wanting to move forward with depositions in the near future, including the deposition of Defendant Lamb and the 30(b)(6) deposition of XPO Logistics Freight, Inc. While I appreciate that I can obtain oral testimony concerning many of the topics referenced below, I need responsive *documents* and actual written interrogatory responses prior to these depositions.

Per your request, I have included additional details concerning each of the written discovery request that needs further supplementation. As you know, Rule 26(a)(1) allows "parties to obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, electronically stored information, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence nor is it grounds for objection that the examining party has knowledge of the information as to which discovery is sought. "

The purpose and intent of this Rule is to prevent a party who has discoverable information from making evasive, incomplete, or untimely responses to request for discovery. *Green, ex rel. Green v. Maness*, 69 N.C. App. 292, 316 S.E.2d 917, cert. denied. 312 N.C. 621, 323 S.E.2d 922 (1984). To be relevant for purposes of discovery, the information need only be "reasonably calculated" to lead to the discovery of admissible evidence. *Shellhorn v. Brad Ragan, Inc.* 38 N.C. App 310, 248 S.E.2d 103, cert. denied, 295 N.C. 735, 249 S.E.2d 804 (1978). Simply put, the relevancy test for discovery is not


PLAINTIFF'S
EXHIBIT
13

the same as the relevancy test for admissibility into evidence. Moreover, the scope of discovery is not limited to matters relevant to claims for relief, but also includes matters relevant to defenses. Below please find Plaintiff's responses to the concerns raised in your October 25, 2024 letter in bold.

- **RFP No. 2:** Plaintiff requests a copy of the document retention policies for XPO. **XPO will supplement now that a Protective Order has been entered. Please promptly produce the Document Retention Policy for XPO Logistics Freight, Inc.**

- **RFP Nos. 3 and 4:** Plaintiff requested copies of each insurance policy and the corresponding declaration page for each policy that provides coverage for the Subject Incident ("Incident"). Plaintiff now seeks the "entire tower" of coverage for XPO Logistics Freight, Inc. It is our position that the policy and declaration page provided on September 3, 2024 is the only applicable and relevant insurance policy for this matter and we have not received any information to date that would suggest otherwise. **Plaintiff did not make a new request for the "tower" of coverage. The initial request for production made on June 5, 2024 asked for any and all insurance coverage for XPO Logistics Freight, Inc. and Defendant Lamb. I direct you and your client to Rule 26(b)(2), which addresses the discoverability of insurance coverage. The Rule states as follows: "Insurance Agreements. - A party may obtain discovery of the existence and contents of any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment. Information concerning the insurance agreement is not by reason of disclosure admissible in evidence at trial. For purposes of this subsection, an application for insurance shall not be treated as part of an insurance agreement." Although I believe there is coverage well beyond $100,000,000, in our letter dated October 29, 2024, we asked that XPO Logistics Freight, Inc. produce insurance coverage documents (i.e., policy declaration pages and policy information) for liability coverage up to $100,000,000. We hereby reiterate that request. If it remains XPO's position that the "only applicable and relevant coverage" for this loss whatsoever is the single Chubb policy produced on September 3, 2024, please have your client produce a signed affidavit concerning this declaration and promptly produce same in response to our June 5, 2024 discovery request.**

- **RFP No. 6:** Plaintiff requested the Driver Qualification File, Driver Investigation File and Driver History File. As noted by our supplemental responses, XPO has produced the entire personnel file for William Lamb which includes all information related in its possession related to his qualifications and investigations. XPO has also produced all driving history information contained in Defendant Lamb's personnel file. **We have reviewed the employee file produced by XPO concerning William Lamb. As you know, 49 CFR § 391.51 sets forth the requirements of the "Driver Qualification File" that must be maintained pursuant to federal law. We have not received all of the documents that are set forth in 49 CFR § 391.51. Likewise, the requirements for a "Driver Inspection History File" are set forth in detail in 49 CFR § 391.53. It does not appear that we have received complete responses concerning these federally required files that should be in the possession and control of XPO.**

This request is discoverable and relevant given the nature the allegations in Plaintiff's First Amended Complaint. It is also relevant to defenses alleged by XPO.

* RFP No. 33: Plaintiff seeks email communications between Lamb and XPO for the 90 days prior to the Incident. Further, Plaintiff brazenly concludes that this is relevant. We simply do not see the relevance in William Lamb's email communications with XPO for the 90 days prior to the Incident. If there are specific emails that Plaintiff seeks that can potentially be related to this litigation, please let us know and we will conduct a good faith search. Otherwise, we simply see no reasonable basis for producing 3-months' worth of business related emails to Plaintiff. Plaintiff has also not provided a cohesive response as to why it would be entitled to this type of information or the relevance to the Incident and/or this matter. This request is reasonably calculated to lead to the discovery of admissible information and is relevant given the nature the allegations in Plaintiff's First Amended Complaint. It is also relevant to defenses alleged by XPO. For purposes of clarity, Plaintiff will limit the scope of RFP 33 to all communications between Lamb and XPO for 90 days prior to the incident concerning the following – any safety violations (including warnings or concerns), training, driver fitness, use of cellular or electronic devices, distracted driving, close calls, licensure, left turns, speeding, texting, unsafe driving and video telematics.

* RFP No. 34: Plaintiff seeks communications between Lamb and XPO that were transmitted through any system on-board the tractor and trailer involved in the Incident for 30-days before the Incident and ending 7 days after the Incident. Like 3 the above, we do not see the relevance of communications between Lamb and XPO that 30-days before the Incident and 7 days after the Incident. Please let us know if there are specific types of communications that Plaintiff seeks that can potentially be related to this litigation. This request is reasonably calculated to lead to the discovery of admissible information and is relevant given the nature the allegations in Plaintiff's First Amended Complaint. It is also relevant to defenses alleged by XPO. For purposes of clarity, Plaintiff will limit the scope of RFP 34 to all communications between Lamb and XPO for 30 days prior to the incident and ending 7 days after the subject incident, concerning the following – the subject collision, discipline, preventability, any safety violations (including warnings or concerns), training, driver fitness, use of cellular or electronic devices, distracted driving, left turns, close calls, licensure, speeding, texting, unsafe driving and video telematics.

* RFP No. 35: Plaintiff seeks all on-board audio and video from the on-board monitoring devices. Specifically, the telematics program provided through Lytx to monitor, train and "coach" its employee-drivers. XPO sees absolutely no reason for it to provide all on-board audio and video from on-board monitoring devices provided to Lytx to monitor and coach all of its employee-drivers globally. Plaintiff has also not provided a cohesive response as to why it would be entitled to this type of information or the relevance to the Incident and/or this matter. For clarity and in the spirit of cooperation and compromise, Plaintiff will limit RFP 35 in scope to Defendant Lamb. This request includes all telematics data and footage whatsoever in the possession and control of XPO that in any way relates to Defendant Lamb. For instance, the video from inside the XPO cab

that has been provided is only 30 seconds. Typically, when there is a harsh event, the lookback period is one minute before the harsh event. We need the entire (at least one minute) video clip from the date of the subject collision together with all other telematics data and video footage concerning Defendant Lamb.

- RFP No. 40: Plaintiff seeks Driver Vehicle Inspection Reports (DVIR) from the period of 6-months before the Incident until one week following the Incident for the tractor and trailer involved in the Incident. Plaintiff further conclusively claims that this is not "overly broad or unduly burdensome." To add more than a conclusive claim as Plaintiff seemingly alleges—this information is overly broad and burdensome because it covers a time period well beyond and prior to the Incident. We simply see no reasonable basis for why DVIR information 6-months prior to the Incident for the tractor and trailer could potentially be relevant. However, if there is specific information that Plaintiff seeks that could reasonably be related to this litigation concerning the tractor and trailer, XPO welcomes a more detailed response. In the sprit of compromise and cooperation, Plaintiff will limit the scope of RFP No. 40 to 30-days prior to the subject collision and 2-days following the subject collision. A DVIR is a pre and post inspection report that is required by federal law.

- RFP No. 42: Plaintiff seeks basic shipping documents from XPO, including the bill of lading, manifest and dispatch documents related to the load that Defendant Lamb was transporting at the time of the Incident. Plaintiff claims these are "clearly" relevant and discoverable. We disagree. Again, for similar reasons discussed above concerning XPO's personal business and clients, we see no reasonable basis for producing bill of lading, manifest, and dispatch documents which have nothing to do with the Incident. To the extent Plaintiff can articular a reasonable basis for why that information is relevant, XPO requests it to do so or narrow its request. A Bill of Lading (BOL) is an important legal document that is highly relevant in all trucking cases. It will show the items being transported by Defendant Lamb when the incident occurred. At this point, we have no information concerning the contents of the trailer being hauled by Defendant Lamb when the subject incident occurred. The BOL will identify the motor carrier, the shipper, a description of the goods, the number of goods, the weight and measurements of the goods and other critical evidence that Plaintiff is entitled to under the Rules. Like a BOL, the Manifest is also an important legal document that provides records of the cargo, passengers and crew in the vehicle for transportation. The Manifest is even more critical in an LTL transport. Lastly, dispatch records are important documents in legal cases as they can indicate if a driver was under pressure to meet tight deadlines. This request is reasonably calculated to lead to the discovery of admissible information and is relevant given the nature the allegations in Plaintiff's First Amended Complaint. It is also relevant to defenses alleged by XPO

- RFP No. 46: Plaintiff seeks documents related to the Preventability Reports/Analysis prepared by XPO following the Incident. Plaintiff claims it has not received any responsive documents relating to the preventability analysis that was completed by XPO in the ordinary course of business. We disagree. XPO provided all documents related to the Incident in its previous productions. If already

produced as stated above, please provide the bates numbers for the complete Preventability Analysis completed by XPO concerning the subject incident.

- RFP Nos. 55-59: Plaintiff seeks documents related to all training materials provided to XPO drivers. We simply do not see the reasonable basis for providing training materials provided to XPO drivers globally. However, and to the extent Plaintiff seeks training materials provided to drivers like Defendant William Lamb—and those provided to William Lamb—please see the documents produced in XPO's first and supplemental production of documents. Plaintiff will limit RFP 55-59 to training materials provided to Defendant Lamb and other XPO drivers at the Lumberton, NC terminal from the date Defendant Lamb was hired by XPO until present. These materials are highly relevant to allegations contained in Plaintiff's First Amended Complaint and Defendant XPO's Answer.

- RFP No. 60: Plaintiff seeks documents—not counsel-created summaries—of the hierarchy at XPO at the time of the Incident and presently. XPO is not in possession of formal hierarchy charts which show the relationship between its executives and drivers like William Lamb. Further, and to the best of our knowledge, XPO counsel did not create summaries and produce them to Plaintiff. To the extent Plaintiff believes XPO produced work-product detailing XPO hierarchy information, please identify the bates-number so we can evaluate whether that document needs to be clawed back. Produce documents that are in the possession and control of XPO. If these documents do not exist, please state that in your response. We reserve the right to revisit this RFP once XPO produces the Document Retention Policies.

- RFP No. 61: Plaintiff seeks documents that were prepared and/or presented by XPO representatives concerning the safe operation of commercial vehicles during the last 5 years. Plaintiff claims this request is not overly broad solely because it relates to "safety." While we agree that documents that discuss the safe operation of commercial vehicles relate to "safety" that does not automatically correlate to relevance here—especially, where Plaintiff requests documents that are circulated and/or presented by "XPO representatives" worldwide. Plaintiff will limit RFP 61 to safety presentations provided to Defendant Lamb, other XPO drivers at the Lumberton, NC terminal and any managers at the Lumberton, NC terminal from the date Defendant Lamb by XPO was hired until present.

- RFP Nos. 63-64: Plaintiff seeks any contracts or agreements applicable to Defendant Lamb or the subject tractor and trailer. As noted above, XPO does not see the point or relevance in providing driving history related to William Lamb's everyday travels for its clients and business. These files do not contain any information regarding driver safety or analysis. XPO has, however, produced all contracts or agreements related to Defendant Lamb. Plaintiff limits RDP No. 63-64 to any documents that in any way relates to safety, training, production requirements, speed of production, dispatch requirements and any expectations concerning timing of delivery and the expected speed of deliveries.

- **RFP No. 65:** Plaintiff seeks XPO's Accident Register. Plaintiff claims this is not overly broad or unduly burdensome. We see no reasonable basis for providing XPO's Accident Register for all of their global drivers. Please provide your basis as to how this is relevant to this action or narrow the request. As you know, an Accident Register is required by federal law (See 49 CFR § 390.15). Plaintiff will agree to narrow the request to XPO's Accident Register for a period of 2 years prior to the subject collision for all accidents resulting in serious injury or death to a third party.

- **RFP No. 66:** Plaintiff seeks deposition transcripts from XPO corporate designees concerning accidents where it was alleged that XPO's employee caused an injury or death to another person during the last 5 years. XPO is not in possession of deposition transcripts and these materials can be obtained by Plaintiff's counsel via other means that are as readily available to Plaintiff as they are to Defendants. Plaintiff does not have access to deposition transcripts as you describe. Plaintiff agrees to limit this request to 30(b)(6) deposition transcripts from XPO designees within the last 5-years for incidents involving an XPO driver making a left turn that resulted in serious injuries or death to third parties.

- **Interrogatory No. 3:** Plaintiff seeks information concerning claims and lawsuits filed against XPO wherein a person was injured or killed as a result of XPO drivers. Plaintiff now apparently wants "pre-suit" claim information. This was not a part of Plaintiff's initial Interrogatory. Given that, XPO does not intend to detail any "pre suit" claim information. We respectfully disagree. Interrogatory No. 3 served on June 5, 2024 stated exactly as follows: "For each claim (formal or informal) and lawsuit wherein it is/was suggested or alleged that any person was injured or killed as a result of XPO's driver's actions in the past three years, provide the style of the case (or name of parties, jurisdiction and case number), and describe briefly the circumstances of each suit/claim and the disposition." As you know, this Interrogatory specifically addresses pre-suit informal claims. Please supplement this interrogatory with an actual written response. This request is reasonable calculated to lead to the discovery of admissible information and is within the scope of permissible discovery. It also directly relates to the claims alleged in Plaintiff's First Amended Complaint.

- **Interrogatory No. 5:** Plaintiff seeks supplemental written responses to (a)-(g), i.e., information related to the tractor operated by William Lamb at the time of the Incident, including, without limitation, all maintenance and repairs from 12 months prior to the Incident. XPO has provided all relevant information related to the tractor operated by William Lamb. However, we will supplement our prior response in a forthcoming supplemental response with information that is in XPO's possession and not unduly burdensome to locate. Plaintiff will limit this Interrogatory to (a)-(f) which eliminates the maintenance/repair request. Plaintiff seeks actual written responses to (a)-(e). These requests are very specific and are reasonably calculated to lead to potentially admissible information. By way of example, this Interrogatory seeks information concerning the legal owner of the tractor. It also seeks information concerning telematics and other

monitoring systems and devices that were installed and used on the subject tractor. Clearly this is discoverable.

- **Interrogatory No. 6:** Plaintiff seeks supplemental written responses to (a)-(e), i.e., information related to the trailer operated by William Lamb at the time of the Incident, including, without limitation, all maintenance and repairs from 12 months prior to the Incident. XPO has provided all relevant information related to the trailer operated by William Lamb. However, we will supplement our prior is in XPO's possession and not unduly burdensome to locate. Plaintiff will limit this Interrogatory to (a)-(d) which eliminates the maintenance/repair request. Plaintiff seeks actual written responses to (a)-(e). These requests are very specific and are reasonably calculated to lead to potentially admissible information. By way of example, this interrogatory seeks information concerning the legal owner of the trailer. It also seeks information concerning telematics and other monitoring systems and devices that were installed and used on the subject trailer. Clearly this is discoverable.

- **Interrogatory No. 7:** Plaintiff seeks supplemental written responses to (a)-(e), i.e., Re: the trip that William Lamb was on—"Identify all shippers and brokers involved; Explain where and when (date and time) William Lamb picked up the load he had at the time of the Subject Incident; Identify where (name and address of location) and when (date and time) the load was to be delivered; Identify the location, time, duration and reason for each stop William Lamb made from the time he picked up the load until the time of the Subject Incident; and Identify the route William Lamb intended to follow from the point of origin to the point of destination." We do not see any reasonable basis for Plaintiff to know "all shippers and brokers" involved in the load William Lamb had at the time of the Incident. Please provide the basis as to how information related to XPO business clients and contacts are relevant to this action. Although not likely in this particular case, the identity of potential shippers and brokers can reveal other potential Defendants, which is relevant to Plaintiff's causes of action. The other subsections request basic information on when and where Defendant Lamb obtained the subject load. We see no reason why this information is not discoverable as it is clearly relevant to the allegations contained in Plaintiff's First Amended Complaint.

- **Interrogatory No. 12:** Plaintiff seeks information related to (b)-(d), i.e., "Explain how William Lamb was paid for driving (by hour, by load, by mile, salary or other); Explain all steps XPO undertook to qualify William Lamb in accord with the Federal Motor Carrier Safety Regulations; and Identify when XPO's relationship with William Lamb began and ended." XPO provided all information related to how William Lamb was paid in their supplemental production of documents. Further, directing a party to written documents detailing the answers to an Interrogatory is an appropriate practice in North Carolina. However, and to the extent there is information Plaintiff feels it is not in possession of, please apprise us of that information. We will supplement in forthcoming supplemental responses. Again, the purpose of this interrogatory was to obtain actual written responses, not a direction to documents. Please supplement your response accordingly. Rule 33 requires each interrogatory to be "answered separately and fully in writing under oath." It is not proper to direct Plaintiff to documents.

- **Interrogatory No. 14:** Plaintiff seeks information related to information produced in response to the Requests for Production of Documents. Specifically, Plaintiff seeks written responses to all formal and informal disciplinary and/or counseling actions undertaken by XPO. Like the above, we will provide supplemental responses. Please promptly supplement with a written response, not a direction to documents or the employee file.

- **Interrogatory No. 15:** Plaintiff seeks information related to information produced in response to the Requests for Production of Documents re: all training and education provided or on behalf of XPO to William Lamb. We will provide supplemental responses. Please promptly supplement with a written response, not a direction to documents or the employee file.

- **Interrogatory No. 20:** Plaintiff requests XPO to "produce" documents related to the internal investigation documents referenced in XPO's written responses. XPO has produced all documents related to the internal investigation. Interrogatory No. 20 stated exactly as follows: "Identify and explain all communications of any kind between William Lamb and anyone acting for or on behalf of XPO during the twenty-four (24) hours before and after the Subject Incident. For each communication, identify the method of communication (cell phone, QualComm, other), time of communication, persons involved, and the general subject."

- **Interrogatory No. 22:** Plaintiff seeks information related to XPO policies, procedures, rules, guidelines, directives, manual, handbooks and instructions. We will provide supplemental responses. Please promptly supplement with a written response, not a direction to documents or the employee file.

- **Interrogatory No. 26:** Plaintiff requests XPO to "produce" information related to the "internal investigation documents" that XPO references in its response. XPO has produced all documents related to the internal investigation. Please promptly supplement with a written response, not a direction to documents or the employee file.

- **Interrogatory No. 32:** Plaintiff requests XPO to "produce" information, again, related to the "internal investigation documents" that XPO references in its written response. XPO has produced all documents related to the internal investigation. Please promptly supplement with a written response, not a direction to documents or the employee file.

- **Interrogatory No. 36:** Plaintiff seeks supplemental written responses to Interrogatory No. 36. Specifically, Plaintiff seeks information concerning XPO's "accident review board" and preventability determination that are conducted in the ordinary course of business. XPO does not identify folks who participated in the internal investigation of this Incident as the formal "accident review board." However, all documents related to an investigation have been discussed in Defendant William Lamb's written responses. Please promptly supplement with a written response, not a direction to documents or the employee file.

- Interrogatory No. 38: Plaintiff seeks supplemental responses to questions regarding the identity of insurance carriers for XPO, policy numbers, limits of coverages and names of all insureds. As stated above, Plaintiff requested copies of each insurance policy and the corresponding declaration page for each policy that provides coverage for the Incident. Plaintiff now seeks the "entire tower" of coverage for XPO Logistics Freight, Inc. However, the entire tower of coverage is not applicable or relevant to the "Subject Incident." The policy and declaration page provided on September 3, 2024, however, is the applicable insurance policy for this matter. Plaintiff did not make a new request for the "tower" of coverage. The initial request for production made on June 5, 2024 asked for any and all insurance coverage for XPO Logistics Freight, Inc. and Defendant Lamb. I direct you and your client to Rule 26(b)(2), which addresses the discoverability of insurance coverage. The Rule states as follows: "Insurance Agreements. - A party may obtain discovery of the existence and contents of any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment. Information concerning the insurance agreement is not by reason of disclosure admissible in evidence at trial. For purposes of this subsection, an application for insurance shall not be treated as part of an insurance agreement." Although I believe there is coverage beyond $100,000,000, in our letter dated October 29, 2024, we asked that XPO Logistics Freight, Inc. produce insurance coverage documents (i.e., policy declaration pages and policy information) for liability coverage up to $100,000,000. We hereby reiterate that request. If it remains XPO's position that the "only applicable and relevant coverage" for this loss whatsoever is the single Chubb policy produced on September 3, 2024, please have your client produce a signed affidavit concerning this declaration and promptly produce same in response to our June 5, 2024 discovery request.

- Unredacted Version of XPO000058 and a legible copy of XPO000109: We will review and provide our position regarding these documents in a supplemental response. Please supplement with a legible copy of these documents.

Given the updated and narrowed scope of the above, we would expect XPO Logistics Freight, Inc. to be able to respond fully and completely within the next 30 days. Please provide supplemental responses on or before Monday December 2, 2024 by 5pm EST. Please consider this correspondence as Plaintiff's final good faith attempt to resolve the discovery deficiencies stemming from the June 5, 2024 Interrogatories and Request for Production of Documents served on Defendant XPO Logistics Freight, Inc. without the need for the Court's intervention under Rule 37. Thanking you in advance for your prompt response and cooperation.

Sincerely yours,

MUSSELWHITE, MUSSELWHITE, BRANCH & GRANTHAM

J. William Owen

Cc: Jennfier Welch (via email only)

**From:** Will Owen
**Sent:** Tuesday, December 10, 2024 5:05 PM
**To:** Le'Ron Byrd; Jennifer A. Welch
**Cc:** Brandi Davis; Megan Stacy
**Subject:** Re: Estate of Smith v. XPO, et al. | Discovery and Requests for Monetary Statement for Relief

Le'Ron:

Thanks for the update. Today I received information concerning the identity of the bus driver who can be heard speaking in the video of the accident. I am reviewing my file to see if there are any other potential witnesses/statements that will require supplemental responses. I will of course promptly supplement Plaintiff's responses accordingly.

As a professional courtesy, since the second RFPs served on XPO are due on 12/23/24, I would be willing to push the deadline for all written discovery to 12/23/24 by 5pm EST. I would rather wait a little longer to get meaningful and detailed responses.

I will want to start setting depositions in January. How is your schedule looking in January/February?

**J. William Owen**
Musselwhite, Musselwhite, Branch & Grantham, P.A.
T: +1 910 738 5277 | F: +1 910 738 3678

**From:** Le'Ron Byrd <lbyrd@grsm.com>
**Sent:** Tuesday, December 10, 2024 4:46:53 PM
**To:** Will Owen <wowen@mmbglaw.com>; Jennifer A. Welch <JWelch@cshlaw.com>
**Cc:** Brandi Davis <bldavis@grsm.com>; Megan Stacy <mstacy@grsm.com>
**Subject:** RE: Estate of Smith v. XPO, et al. | Discovery and Requests for Monetary Statement for Relief

Will:

I'm still working on finalizing these responses with our client. I need their responses on a few of the Interrogatories we discussed, not many. I'm also waiting for additional files/documentation in response to the RFPs. Given that, I'm hoping to get these to you tomorrow. Again, we apologize for the additional delay. We're working hard to get these to you as soon as possible especially in light of our recent discussion to wrap up discovery.

In the meantime, do you have any updates on supplementation of Plaintiff's responses to Defendant's First Set of Discovery Requests? The last time we spoke regarding out letter, you mentioned there being a small set of documents that would be responsive for you all to produce.

Regards,
Le'Ron



1

J.W. Musselwhite
W. Edward Musselwhite, Jr.
David F. Branch, Jr.

# MUSSELWHITE | MUSSELWHITE
# BRANCH & GRANTHAM

### ATTORNEYS AT LAW

Norris Musselwhite Grantham
J. William Owen

William E. Musselwhite Sr.
(1930-1987)
Fred L. Musselwhite
(1939-2017)

December 24, 2024

<u>VIA EMAIL ONLY</u>

Megan Stacy
Le'Ron Byrd
Gordon Rees Scully Mansukhani
150 Fayetteville Street, Suite 1120
Raleigh, NC 27601

**Re:** **Cindy Soles Smith, Administratrix of the Estate of Mark K. Smith
v. William Bratty Lamb and XPO Logistics Freight, Inc.
24 CVS 468 (Robeson County)**

Dear Megan & Le'Ron:

I have now had an opportunity to review Defendant XPO Logistics Freight, Inc.'s Supplemental Responses to Plaintiff's First Set of Interrogatories and Request for Production of Documents. I have also reviewed Defendant XPO Logistics Freight, Inc.'s Responses to Plaintiff's Second Request for Production of Documents, both of which were served by email on 12/23/24 at 4:41PM – a mere 19 minutes before their due date, and after multiple extensions of time. You will also recall that in a detailed correspondence dated November 1, 2024, Plaintiff voluntarily narrowed the scope of the initial Interrogatories and Request for Production of Documents in a good faith effort to obtain relevant and responsive documents from XPO. To date, these various good faith efforts have proven to be a waste of time.

I must inform you that both sets of discovery responses are woefully insufficient and lacking. For instance, XPO only produced the "DDEC Report" (ECM printout) from the subject tractor instead of the actual telematics data related specifically to Defendant Lamb that was requested throughout the Second Request for Production of Documents. In fact, Defendant XPO failed to produce any additional documents whatsoever that pertain to the actual telematics systems that were onboard the subject tractor (i.e, Lytx and/or Samsara). The boilerplate objections throughout the responses are likewise unavailing. Under Rule 26(b)(1) we may obtain discovery from XPO regarding:

> "Any matter, not privileged, which is relevant to the subject matter involved in the pending action, <u>whether it relates to the claim</u> or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any

books, documents, electronically stored information, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence nor is it grounds for objection that the examining party has knowledge of the information as to which discovery is sought."

For instance, XPO's general objections throughout the responses seem to suggest that Plaintiff is only entitled to documents or data that relate to the subject crash and nothing else. I would urge you to review the First Amended Complaint in further detail as we have asserted multiple claims for relief including independent negligence claims against XPO for negligent hiring, training, retention, supervision and the like. We are also seeking punitive damages for the willful and wanton conduct of both Defendant Lamb and XPO. Simply put, we are entitled to written discovery pertaining to acts or omissions that occurred *prior to the subject collision* as those request relate squarely to our various claims and causes of action. Moreover, by way of example, Defendant XPO Logistics Freight, Inc. failed to produce the declaration pages for excess layers of insurance coverage that have been requested multiple times. We are not asking for your opinion regarding coverage – we are simply entitled to the insurance policies that may provide coverage for a verdict obtained in this wrongful death case – not whether you or XPO believes that this claim warrants that particular value.

I regret to inform you that given the ongoing discovery abuse and deficiencies, we will be filing a motion to compel and will notice the hearing for **January 13, 2025 at 10:00am.** Our filed motion and notice of hearing are forthcoming. To the extent that additional supplementation are forthcoming, I suggest that XPO serve the supplementation as soon as possible.

Sincerely yours,

MUSSELWHITE, MUSSELWHITE, BRANCH & GRANTHAM

J. William Owen

Cc: Jennfier Welch (via email only)

**Subject:** Re: Est. Mark Smith v. XPO Logistics Freight, Inc. et al. (24 CVS 468)
**Date:** Friday, January 10, 2025 at 9:23:32 AM Eastern Standard Time
**From:** Will Owen
**To:** Brandi Davis
**CC:** Le'Ron Byrd, Megan Stacy, Sabrina Rockwell

Brandi:

Thanks for letting me know, hope everything is okay.

Megan- feel free to call me on my cell 910-617-4038 or email me if you or someone from your firm wants to confer on the second RFPs. As stated in my 12/24/24 letter, the responses were grossly inadequate. In fact, no new telematics data, videos and/or documents whatsoever were produced which is an obvious problem. Thanks.

Will

### J. William Owen

Musselwhite, Musselwhite, Branch & Grantham, P.A.

T: +1 910 738 5277 | F: +1 910 738 3678

**From:** Brandi Davis <bldavis@grsm.com>
**Sent:** Friday, January 10, 2025 9:17:41 AM
**To:** Will Owen <wowen@mmbglaw.com>
**Cc:** Le'Ron Byrd <lbyrd@grsm.com>; Megan Stacy <mstacy@grsm.com>; Sabrina Rockwell <srockwell@grsm.com>
**Subject:** Re: Est. Mark Smith v. XPO Logistics Freight, Inc. et al. (24 CVS 468)

Good morning, Will:

Le'Ron is out having surgery today and unable to meet.

Thank you!

Brandi

**From:** Will Owen <wowen@mmbglaw.com>
**Sent:** Friday, January 10, 2025 9:05:58 AM
**To:** Brandi Davis <bldavis@grsm.com>
**Cc:** Le'Ron Byrd <lbyrd@grsm.com>; Megan Stacy <mstacy@grsm.com>; Sabrina Rockwell <srockwell@grsm.com>
**Subject:** Re: Est. Mark Smith v. XPO Logistics Freight, Inc. et al. (24 CVS 468)

Le'Ron:

I can be available to meet and confer via phone today regarding XPO's responses to Plaintiff's Second Request for Production of Documents prior to the hearing on Monday at 10am. Let me know, thanks.

**J. William Owen**
Musselwhite, Musselwhite, Branch & Grantham, P.A.
T: +1 910 738 5277 | F: +1 910 738 3678

---

**From:** Brandi Davis <bldavis@grsm.com>
**Sent:** Thursday, January 9, 2025 4:39:13 PM
**To:** Chavis-locklear, Gwendolyn <gwendolyn.chavis.locklear@nccourts.org>
**Cc:** Will Owen <wowen@mmbglaw.com>; Le'Ron Byrd <lbyrd@grsm.com>; Megan Stacy <mstacy@grsm.com>; Sabrina Rockwell <srockwell@grsm.com>
**Subject:** Est. Mark Smith v. XPO Logistics Freight, Inc. et al. (24 CVS 468)

Good afternoon,

Attached please find ***Defendant XPO Logistics Freight, Inc.'s Memorandum in Opposition to Plaintiff's Motion to Compel*** regarding the above-referenced matter. Please be advised that this Motion is set for hearing on Monday, January 13, 2025. By copy of this email, I am serving all parties involved.

Thank you.

---

**BRANDI L. DAVIS**
Paralegal

**GORDON REES SCULLY MANSUKHANI | GRSM50**
**YOUR 50 STATE LAW FIRM™**

150 Fayetteville Street, Suite 1120, Raleigh, NC 27601

bldavis@grsm.com

grsm.com
vCard

---

This email communication may contain CONFIDENTIAL INFORMATION WHICH ALSO MAY BE LEGALLY PRIVILEGED and is intended only for the use of the intended recipients identified above. If you are not the intended recipient of this communication, you are hereby

| | |
|---|---|
| **From:** | Will Owen |
| **Sent:** | Monday, February 24, 2025 5:27 PM |
| **To:** | Megan Stacy; Brandi Davis; Jennifer A. Welch |
| **Cc:** | Austin Kessler; Sabrina Rockwell |
| **Subject:** | Re: Estate of Smith v. Lamb, et al. - Subpoena - Robeson County District Attorney and Lumberton Rescue and EMS, Inc. |
| **Attachments:** | Est. Mark Smith v. XPO - Order to Compel (01.21.25).pdf |

Megan,

XPO has failed to comply with the attached Order.

Please state your clients' intentions with respect to compliance. Otherwise, I will have no choice but to file a second motion to compel and motion for sanctions. Please consider this email as our good faith attempt to resolve this amicably without the Court's intervention under Rule 37.

**J. William Owen**
Musselwhite, Musselwhite, Branch & Grantham, P.A.
T: +1 910 738 5277 | F: +1 910 738 3678

From: Will Owen
Sent: Monday, February 24, 2025 10:48:19 AM
To: Megan Stacy <mstacy@grsm.com>; Brandi Davis <bldavis@grsm.com>; Jennifer A. Welch <JWelch@cshlaw.com>
Cc: Austin Kessler <akessler@grsm.com>; Sabrina Rockwell <srockwell@grsm.com>
Subject: RE: Estate of Smith v. Lamb, et al. - Subpoena - Robeson County District Attorney and Lumberton Rescue and EMS, Inc.

Thanks, Megan.

When can we expect to receive the supplemental responses pursuant to the Court's Order to Compel?

**J. William Owen**
Musselwhite, Musselwhite, Branch & Grantham, P.A.
T: +1 910 738 5277 | F: +1 910 738 3678

From: Megan Stacy <mstacy@grsm.com>
Sent: Thursday, February 20, 2025 11:46 PM
To: Will Owen <wowen@mmbglaw.com>; Brandi Davis <bldavis@grsm.com>; Jennifer A. Welch <JWelch@cshlaw.com>
Cc: Austin Kessler <akessler@grsm.com>; Sabrina Rockwell <srockwell@grsm.com>
Subject: Re: Estate of Smith v. Lamb, et al. - Subpoena - Robeson County District Attorney and Lumberton Rescue and EMS, Inc.

Good evening Will: I am uploading XPO's supplemental responses and documents to a shared file and will have a link over to you shortly. I appreciate your patience as I troubleshoot.

**Megan M. Stacy**

1

PLAINTIFF'S EXHIBIT 20

**Subject:** Re: Estate of Smith v. Lamb, et al. - 24CVS000468
**Date:** Tuesday, March 11, 2025 at 8:41:42 AM Eastern Daylight Time
**From:** Will Owen
**To:** Chavis-locklear, Gwendolyn
**CC:** Devin Honbarger, Austin Kessler, Megan Stacy, Brandi Davis

Dear Gwen:

If XPO wanted their Motion for Reconsideration to be properly before the Court on March 17th they should have complied with Rule 6(d) of the North Carolina Rules of Civil Procedure, which provides:

> "A written motion, other than one which may be heard ex parte, and <u>notice of the hearing</u> thereof <u>shall be served not later than five days before the time specified for the hearing</u>."

Here, XPO failed to serve a Notice of Hearing as mandated by Rule 6(d) and Plaintiff objects to XPO's attempt to set their motion past the mandatory deadlines set forth in the Rules of Civil Procedure.

**J. William Owen**
Musselwhite, Musselwhite, Branch & Grantham, P.A.

T: <u>+1 910 738 5277</u> | F: <u>+1 910 738 3678</u>

**From:** Brandi Davis <<u>bldavis@grsm.com</u>>
**Date:** Monday, March 10, 2025 at 12:39 PM
**To:** Chavis-locklear, Gwendolyn <<u>gwendolyn.chavis.locklear@nccourts.org</u>>
**Cc:** Devin Honbarger <<u>dhonbarger@grsm.com</u>>, Austin Kessler <<u>akessler@grsm.com</u>>, Megan Stacy <<u>mstacy@grsm.com</u>>, Will Owen <<u>wowen@mmbglaw.com</u>>
**Subject:** Estate of Smith v. Lamb, et al. - 24CVS000468

Good afternoon, Gwen:

I hope that you are doing well. Defendant XPO in the above referenced matter would like to be placed on the Court's Mach 17th calendar along with Plaintiff's Motion for Sanctions and Second Motion to Compel. Defendant XPO currently has a Motion for Reconsideration pending before the Court.

Would you advise if the Court would allow Defendant XPO's Motion to be added the Courts March 17th calendar?

Thank you and I look forward to hearing from you.

Branndi

**BRANDI L. DAVIS**
Paralegal

**GORDON REES SCULLY MANSUKHANI | GRSM50**
**YOUR 50 STATE LAW FIRM™**

150 Fayetteville Street, Suite 1120, Raleigh, NC 27601

bldavis@grsm.com

grsm.com
vCard

This email communication may contain CONFIDENTIAL INFORMATION WHICH ALSO MAY BE LEGALLY PRIVILEGED and is intended only for the use of the intended recipients identified above. If you are not the intended recipient of this communication, you are hereby notified that any unauthorized review, use, dissemination, distribution, downloading, or copying of this communication is strictly prohibited. If you are not the intended recipient and have received this communication in error, please immediately notify us by reply email, delete the communication and destroy all copies.

**GORDON REES SCULLY MANSUKHANI, LLP**
**YOUR 50 STATE LAW FIRM™**
http://www.grsm.com

**Subject:** Re: Estate of Smith v. Lamb, et al. - 24CVS000468
**Date:** Wednesday, March 12, 2025 at 5:14:22 PM Eastern Daylight Time
**From:** Will Owen
**To:** Brandi Davis, Chavis-locklear, Gwendolyn, Megan Stacy, Austin Kessler, Devin Honbarger, Jennifer A. Welch

Dear Gwen and Counsel:

Again, for the record, we object to this memorandum being used or submitted to the Court on 3/17/25 as XPO has not properly noticed any motions for 3/17/25.

I will of course bring this to the Court's attention on Monday, however I wanted my position to remain consistent and clear as XPO continues to submit items to the Court via email or otherwise. Thanks.

Will

## J. William Owen

Musselwhite, Musselwhite, Branch & Grantham, P.A.
T: +1 910 738 5277 I F: +1 910 738 3678

---

**From:** Brandi Davis <bldavis@grsm.com>
**Sent:** Wednesday, March 12, 2025 5:00:16 PM
**To:** Chavis-locklear, Gwendolyn <gwendolyn.chavis.locklear@nccourts.org>; Megan Stacy <mstacy@grsm.com>; Austin Kessler <akessler@grsm.com>; Devin Honbarger <dhonbarger@grsm.com>; Will Owen <wowen@mmbglaw.com>; Jennifer A. Welch <JWelch@cshlaw.com>
**Subject:** Fw: Estate of Smith v. Lamb, et al. - 24CVS000468

Good afternoon, Gwen,

Attached please find Defendant XPO's Memorandum of Law in support of its Motion for Reconsideration.

Thank you!

Brandi

---

**From:** Megan Stacy <mstacy@grsm.com>
**Sent:** Wednesday, March 12, 2025 4:56 PM
**To:** Will Owen <wowen@mmbglaw.com>; Jennifer A. Welch <JWelch@cshlaw.com>
**Cc:** Austin Kessler <akessler@grsm.com>; Brandi Davis <bldavis@grsm.com>; Devin Honbarger <dhonbarger@grsm.com>
**Subject:** Re: Estate of Smith v. Lamb, et al. - 24CVS000468

Good afternoon counsel,

Please see the attached for service XPO's Me

morandum of Law in Support of its Motion for Reconsideration.

**Megan M. Stacy**
Partner
M: 984.289.1405
mstacy@grsm.com
*Licensed in NC + SC*

GORDON REES SCULLY MANSUKHANI | GRSM50
YOUR 50 STATE LAW FIRM™

**From:** Will Owen <wowen@mmbglaw.com>
**Sent:** Tuesday, March 11, 2025 10:47 AM
**To:** Devin Honbarger <dhonbarger@grsm.com>; Chavis-locklear, Gwendolyn
<gwendolyn.chavis.locklear@nccourts.org>
**Cc:** Austin Kessler <akessler@grsm.com>; Megan Stacy <mstacy@grsm.com>; Brandi Davis
<bldavis@grsm.com>
**Subject:** Re: Estate of Smith v. Lamb, et al. - 24CVS000468

**External Email: STOP! LOOK! THINK! before you engage.**
This message came from outside GRSM.                          Devin,

No, I will not consent to that.

We are moving forward with our Motion for Sanctions and Second Motion to Compel on Monday
March 17, 2025 at 10:00am as noticed.

**J. William Owen**
Musselwhite, Musselwhite, Branch & Grantham, P.A.
T: +1 910 738 5277 I F: +1 910 738 3678

**From:** Devin Honbarger <dhonbarger@grsm.com>
**Sent:** Tuesday, March 11, 2025 10:44 AM
**To:** Will Owen <wowen@mmbglaw.com>; Chavis-locklear, Gwendolyn
<gwendolyn.chavis.locklear@nccourts.org>
**Cc:** Austin Kessler <akessler@grsm.com>; Megan Stacy <mstacy@grsm.com>; Brandi Davis
<bldavis@grsm.com>
**Subject:** RE: Estate of Smith v. Lamb, et al. - 24CVS000468

Will,

Would you consent to continuing the Court's hearing on your motions until April 14, 2025, so that
all three motions could be heard at the same time in the interest of judicial economy? Gwen has
informed us that is the next available time for hearing of our Motion for Reconsideration.

Thank you,

_____

**Devin L. Honbarger**
Associate

**GORDON REES SCULLY MANSUKHANI I GRSM50**
**YOUR 50 STATE LAW FIRM™**

150 Fayetteville Street, Suite 1120, Raleigh, NC 27601

dhonbarger@grsm.com

grsm.com
vCard

**From:** Will Owen <wowen@mmbglaw.com>
**Sent:** Tuesday, March 11, 2025 8:42 AM
**To:** Chavis-locklear, Gwendolyn <gwendolyn.chavis.locklear@nccourts.org>
**Cc:** Devin Honbarger <dhonbarger@grsm.com>; Austin Kessler <akessler@grsm.com>;
Megan Stacy <mstacy@grsm.com>; Brandi Davis <bldavis@grsm.com>
**Subject:** Re: Estate of Smith v. Lamb, et al. - 24CVS000468

Dear Gwen:

If XPO wanted their Motion for Reconsideration to be properly before the Court on March
17th they should have complied with Rule 6(d) of the North Carolina Rules of Civil
Procedure, which provides:

> "A written motion, other than one which may be heard ex parte, and
> **notice of the hearing** thereof **shall be served not later than five days**
> **before the time specified for the hearing**."

Here, XPO failed to serve a Notice of Hearing as mandated by Rule 6(d) and Plaintiff
objects to XPO's attempt to set their motion past the mandatory deadlines set forth in the
Rules of Civil Procedure.

**J. William Owen**
Musselwhite, Musselwhite, Branch & Grantham, P.A.
T: +1 910 738 5277 I F: +1 910 738 3678

_____

**From:** Brandi Davis <bldavis@grsm.com>
**Date:** Monday, March 10, 2025 at 12:39 PM
**To:** Chavis-locklear, Gwendolyn <gwendolyn.chavis.locklear@nccourts.org>
**Cc:** Devin Honbarger <dhonbarger@grsm.com>, Austin Kessler <akessler@grsm.com>,
Megan Stacy <mstacy@grsm.com>, Will Owen <wowen@mmbglaw.com>
**Subject:** Estate of Smith v. Lamb, et al. - 24CVS000468

Good afternoon, Gwen:

I hope that you are doing well. Defendant XPO in the above referenced matter would like to be

placed on the Court's Mach 17th calendar along with Plaintiff's Motion for Sanctions and Second Motion to Compel. Defendant XPO currently has a Motion for Reconsideration pending before the Court.

Would you advise if the Court would allow Defendant XPO's Motion to be added the Courts March 17th calendar?

Thank you and I look forward to hearing from you.

Branndi

---

**Brandi L. Davis**
Paralegal

**GORDON REES SCULLY MANSUKHANI I GRSM50**
**YOUR 50 STATE LAW FIRM™**

150 Fayetteville Street, Suite 1120, Raleigh, NC 27601

bldavis@grsm.com

grsm.com
vCard

---

This email communication may contain CONFIDENTIAL INFORMATION WHICH ALSO MAY BE LEGALLY PRIVILEGED and is intended only for the use of the intended recipients identified above. If you are not the intended recipient of this communication, you are hereby notified that any unauthorized review, use, dissemination, distribution, downloading, or copying of this communication is strictly prohibited. If you are not the intended recipient and have received this communication in error, please immediately notify us by reply email, delete the communication and destroy all copies.

**GORDON REES SCULLY MANSUKHANI, LLP**
**YOUR 50 STATE LAW FIRM™**
http://www.grsm.com

**Subject:** RE: 24CVS000468-770; CINDY SOLES ADMR SMITH VS WILLIAM BRATTY LAMB
**Date:** Tuesday, March 11, 2025 at 4:03:00 PM Eastern Daylight Time
**From:** Will Owen
**To:** Devin Honbarger, Chavis-locklear, Gwendolyn, Brandi Davis
**CC:** Jennifer A. Welch, Austin Kessler, Megan Stacy

Dear Gwen:

Just so our position is abundantly clear - Plaintiff continues to object to XPO's attempts to have its untimely motion(s) heard on 3/17 as XPO did not comply with Rule 6(d), which requires a Notice of Hearing to be served no later than 5 days before the time set for hearing. This same 5-day mandatory period would apply to XPO's latest attempt to "continue" Plaintiff's duly noticed Motions that are properly scheduled to be heard on March 17th.

Thanks,

**J. William Owen**
Musselwhite, Musselwhite, Branch & Grantham, P.A.
T: +1 910 738 5277 | F: +1 910 738 3678

**From:** Devin Honbarger <dhonbarger@grsm.com>
**Sent:** Tuesday, March 11, 2025 3:49 PM
**To:** Chavis-locklear, Gwendolyn <gwendolyn.chavis.locklear@nccourts.org>; Brandi Davis <bldavis@grsm.com>
**Cc:** Will Owen <wowen@mmbglaw.com>; Will Owen <wowen@mmbglaw.com>; Jennifer A. Welch <JWelch@cshlaw.com>; Austin Kessler <akessler@grsm.com>; Megan Stacy <mstacy@grsm.com>
**Subject:** RE: 24CVS000468-770; CINDY SOLES ADMR SMITH VS WILLIAM BRATTY LAMB

Gwen,

We do plan to argue this Motion at the hearing, but we would like to have the written Motion is included in the Court's file.

Thank you,

**DEVIN L. HONBARGER**
Associate
**GORDON REES SCULLY MANSUKHANI | GRSM50**
**YOUR 50 STATE LAW FIRM™**

150 Fayetteville Street, Suite 1120, Raleigh, NC 27601

dhonbarger@grsm.com

grsm.com
vCard

**From:** Chavis-locklear, Gwendolyn <gwendolyn.chavis.locklear@nccourts.org>
**Sent:** Tuesday, March 11, 2025 3:45 PM

**To:** Brandi Davis <bldavis@grsm.com>
**Cc:** Will Owen <wowen@mmbglaw.com>; Cc: Will Owen <wowen@mmbglaw.com>; Jennifer A. Welch <JWelch@cshlaw.com>; Austin Kessler <akessler@grsm.com>; Megan Stacy <mstacy@grsm.com>; Devin Honbarger <dhonbarger@grsm.com>
**Subject:** RE: 24CVS000468-770; CINDY SOLES ADMR SMITH VS WILLIAM BRATTY LAMB

Good afternoon:

I am in receipt of your Order for Continuance. You cannot ask for opposing counsels' motion to be continued without opposing counsel agreeing to the continuance. If you feel that the motion needs to be continued, you will have to argue that before the presiding judge the day of the scheduled hearing.

Gwen
Court Manager II
Superior Court

**Gwen Chavis**
**North Carolina Judicial Branch**
O 910-272-5916
F 910-272-5917

**From:** Brandi Davis <bldavis@grsm.com>
**Sent:** Tuesday, March 11, 2025 3:17 PM
**To:** Chavis-locklear, Gwendolyn <gwendolyn.chavis.locklear@nccourts.org>
**Cc:** Will Owen <wowen@mmbglaw.com>; Jennifer A. Welch <JWelch@cshlaw.com>; Austin Kessler <akessler@grsm.com>; Megan Stacy <mstacy@grsm.com>; Devin Honbarger <dhonbarger@grsm.com>
**Subject:** 24CVS000468-770; CINDY SOLES ADMR SMITH VS WILLIAM BRATTY LAMB

CAUTION: External email. Do not click links or open attachments unless verified. Report suspicious emails with the Report Message button located on your Outlook menu bar on the Home tab.

Good afternoon, Ms. Chavis:

The attached Defendant XPO Logistics Freight, Inc.'s Motion for Continuance of Hearing set for Monday, March 17th at 10 a.m. has been e-filed within Odyssey this afternoon.

Thank you.

---

**BRANDI L. DAVIS**
Paralegal

**GORDON REES SCULLY MANSUKHANI | GRSM50**
**YOUR 50 STATE LAW FIRM™**

150 Fayetteville Street, Suite 1120, Raleigh, NC 27601

bldavis@grsm.com

grsm.com
vCard

---

This email communication may contain CONFIDENTIAL INFORMATION WHICH ALSO MAY BE LEGALLY PRIVILEGED and is intended only for the use of the intended recipients identified above. If you are not the intended recipient of this communication, you are hereby notified that any unauthorized review, use, dissemination, distribution, downloading, or copying of this communication is strictly prohibited. If you are not the intended recipient and have received this communication in error, please immediately notify us by reply email, delete the communication and destroy all copies.

**GORDON REES SCULLY MANSUKHANI, LLP**
**YOUR 50 STATE LAW FIRM™**
http://www.grsm.com

E-mail correspondence to and from this address may be subject to the North Carolina public records laws and if so, may be disclosed.

J.W. Musselwhite
W. Edward Musselwhite, Jr.
David F. Branch, Jr.

Norris Musselwhite Grantham
J. William Owen

# MUSSELWHITE | MUSSELWHITE
# BRANCH & GRANTHAM

## ATTORNEYS AT LAW

March 17, 2025

VIA EMAIL AND US MAIL

Megan Stacy
Gordon Rees Scully Mansukhani
150 Fayetteville Street, Suite 1120
Raleigh, NC 27601

> Re: **Cindy Soles Smith, Administratrix of the Estate of Mark K. Smith
> v. William Bratty Lamb and XPO Logistics Freight, Inc.
> 24 CVS 468 (Robeson County)**

Dear Megan,

It was nice meeting you today in person. With respect to Plaintiff's Motion for Sanctions, Second Motion to Compel and Motion to Quash Subpoena, I have attached the following, which were electronically filed a few moments ago:

    (1) Amended Notice of Hearing – April 16, 2025
    (2) Calendar Request – April 16, 2025

As I stated verbally to you today – XPO has utterly failed to comply with the Court's January 21, 2025 Order Granting Plaintiff's Motion to Compel, which required full and complete responses, without further objection, on or before February 21, 2025. On February 28, 2025, XPO filed a Motion and Motion to Quash Subpoena under Rule 54(b). This Motion was filed *after* the mandatory compliance deadline set forth in the Order. XPO's Motion for Reconsideration does not toll XPO's obligations under the January 21, 2025 Order which remains in full effect. The ongoing disregard for the January 21, 2025 Order has substantially prejudiced Plaintiff and will be grounds for severe Rule 37(b) sanctions.

Sincerely,

MUSSELWHITE, MUSSELWHITE, BRANCH & GRANTHAM

J. William Owen

STATE OF NORTH CAROLINA

ROBESON COUNTY

CINDY SOLES SMITH, Administratrix )
of the ESTATE OF MARK KEANNAN )
SMITH )
)
Plaintiff, )
)
v. )
)
WILLIAM BRATTY LAMB and )
XPO LOGISTICS FREIGHT, INC. )
)
Defendants. )

## ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL AGAINST DEFENDANT XPO LOGISTICS FREIGHT, INC.

THIS CAUSE came before the Undersigned on Plaintiff's Motion to Compel, and this Court, having read the pleadings, motion, and submissions of the Parties, and having heard the arguments of Counsel, and having concluded that Plaintiff's Motion to Compel should be granted, hereby issues the following Order pursuant to Rule 37(a) of the North Carolina Rules of Civil Procedure:

1.     Defendant XPO Logistics Freight, Inc.'s ("XPO") Responses to Plaintiff's First Interrogatories and First Requests for Production of Documents, XPO's First Supplemental Reponses to Plaintiff's First Interrogatories and Request for Production of Documents and XPO's Second Supplemental Responses to Plaintiff's First Interrogatories and First Request for Production of Documents contained numerous improper objections and did not comply with the North

1

PLAINTIFF'S
EXHIBIT
18

Carolina Rules of Civil Procedure.

2.     With respect to Plaintiff's First Set of Interrogatories and First Request for Production of Documents, Defendant XPO shall further supplement the following specific discovery request with full, complete, and substantive responses, without further objection, within thirty (30) days of the entry of this Order, specifically as follows:

a. Interrogatory No. 3 – XPO shall provide Plaintiff with a list of all claims or lawsuits filed against XPO involving serious injury or death for the past three years. This list should include a brief description of the parties, jurisdiction and the circumstances of each suit/claim and the disposition of each suit/claim.

b. Interrogatory No. 5: XPO shall provide Plaintiff with a detailed response to subsections (e)-(f) – which specifically includes information concerning any telematics software being used by XPO at the time of the subject crash on October 11, 2023.

c. Interrogatory No 6: XPO shall provide Plaintiff with a detailed and substantive response to subsections (c) and (d).

d. Interrogatory No. 7: XPO shall provide Plaintiff with detailed and substantive responses to subsections (a)-(e), which specifically includes the identities of any shippers, brokers, intended route, and when and how the load was to be delivered.

2

e. <u>Interrogatory No. 14:</u> XPO shall provide Plaintiff with a detailed and substantive response that sets forth and describes all formal and informal disciplinary and/or counseling actions regarding William Lamb undertaken by XPO at any time.

f. <u>Interrogatory No. 15</u>: XPO shall provide Plaintiff a detailed and substantive response setting forth all training and education (including on job training) provided by or on behalf of XPO to William Lamb relating to the operation of a commercial motor vehicle.

g. <u>Interrogatory No. 22:</u> XPO shall, in detail, identity of all policies, procedures, rules, guidelines, directives, manuals, handbooks and instructions that were in effect for William Lamb at the time of the subject crash.

h. <u>Interrogatory No. 36</u>: XPO shall provide the identities of all persons involved with the preventability analysis/determination concerning the subject crash of October 11, 2023, the dates of the review, and the conclusions that were reached.

i. <u>Interrogatory No. 38:</u> XPO shall identify and list the insurer, insured and policy limit(s) for any and all layers of liability insurance coverage that does or may provide coverage on behalf of XPO as of the date of the subject crash on October 11, 2023. This includes excess/layered liability coverage of any kind that would

3

or may provide coverage for this case, including disclosure of documents that reveal or relate to the entire tower of liability coverage afforded to XPO as of October 11, 2023.

j. First Request for Production No. 2: XPO shall provide Plaintiff a complete, unredacted copy of all document retention policies that were in effect at time of the subject crash of October 11, 2023.

k. First Request for Production No. 3-4: XPO shall provide declaration pages for all layers of coverage in the tower of liability coverage for XPO as of October 11, 2023 that does or may provide coverage for the subject crash of October 11, 2023. XPO shall also provide any reservation of rights letters or agreements regarding insurance coverage for the subject crash.

l. First Request for Production No. 6: XPO shall provide Plaintiff the contents of William Lamb's Driver Qualification File, Driver Investigation File, Driver History File and all documents that demonstrate compliance with federal and state driver qualification laws and regulations.

m. First Request for Production No. 35: XPO shall provide Plaintiff with all telematics data, videos, photos, and coaching sessions involving William Lamb from the date of hire through present.

n. First Request for Production No. 42: XPO shall provide Plaintiff with the Bill of Lading, Manifest, weight receipts, dispatch

4

documents/records and content summaries relating to the load being transported by William Lamb on October 11, 2023.

o. First Request for Production No. 46: XPO shall provide Plaintiff with all documents relating to the preventability analysis and determination relating to the subject crash of October 11, 2023, including the conclusions of the preventability review/analysis.

p. First Request for Production No. 55-59: XPO shall further supplement its responses to First Request for Production No. 55-59 and provide Plaintiff with all training materials, manuals, policies, directives, handbooks, rules and other training materials provided or used by its CDL drivers, including William Lamb. This includes safety training videos, PowerPoints or other demonstrative training materials used by XPO for its drivers, including William Lamb.

q. First Request for Production 61: XPO shall produce to Plaintiff any document, article or presentation prepared and/or presented by any XPO representative relating to the safe operation of a commercial motor vehicle during the past five years.

r. First Request for Production No. 65: XPO shall produce to Plaintiff a fully unredacted version of XPO's Accident Register, which is required to be maintained by federal law (49 CFR 390.15).

s. Request for Production 66: XPO shall produce to Plaintiff all Rule

5

30(b)(6) deposition transcripts from corporate designees from XPO for litigation within the last 5 years that involve the following: (a) serious injury or death and (b) a left turn by XPO's driver. These transcripts shall be produced in an unredacted format.

3.   Defendant XPO's Responses to Plaintiff's Second Requests for Production of Documents contained numerous improper objections and did not comply with the North Carolina Rules of Civil Procedure.

4.   With respect to Plaintiff's Second Request for Production of Documents, Defendant XPO shall supplement the following specific responses with full, complete, and substantive responses without further objection, within thirty (30) days of the entry of this Order, specifically as follows:

   a. Second Request for Production No. 1: XPO shall produce to Plaintiff all telematics videos, datasets, photos, screenshots, comments, coaching sessions, events coached and session notes relating to William Lamb from the date of hire (09/09/20-present).

   b. Second Request for Production No. 2: XPO shall provide Plaintiff any documents that identify employees of XPO (or third parties) who have monitored telematics programs and/or telematics data for employee William Lamb from the date of hire (09/09/20-present).

   c. Second Request for Production No. 4: XPO shall produce to Plaintiff logs of all safety alerts received in the telematics safety

6

inbox or other location designated for William Lamb for 6-months prior to the subject crash on October 11, 2023 through present.

d. Second Request for Production No. 6: XPO shall produce to Plaintiff a printout of the Safety Score (or its equivalent) and the configuration page under any telematics program used by XPO for the 3-months prior to the subject crash of October 11, 2023 through present.

e. Second Request for Production No. 8: XPO shall produce to Plaintiff a printout of the alert configuration page for any telematics software used by XPO for the date of the subject crash (October 11, 2023).

f. Second Request for Production No. 9: XPO shall produce to Plaintiff all notifications in the telematics software inbox (or other similar location) for William Lamb for 6-months prior to the subject crash of October 11, 2023 through present.

g. Second Request for Production No. 10: XPO shall produce to Plaintiff documents relating to the telematics safety settings utilized for William Lamb's commercial vehicle.

h. Second Request for Production No. 11: XPO shall produce to Plaintiff documents relating to the safety settings in any telematics transportation management system or software as of the date of the subject crash of October 11, 2023.

7

i. Second Request for Production No. 13: XPO shall produce to Plaintiff the administrative username and password for any telematics software /safety management system being used by XPO as of the date of the subject crash of October 11, 2023 in order for Plaintiff's consultant(s) to assess the transportation management system account for data and information relating specifically to (a) the subject crash of October 11, 2023 and (b) William Lamb.

j. Second Request for Production No. 14: XPO shall produce a complete full-length, uncut and unredacted version of any and all video footage from the date of the subject crash of October 11, 2023.

5. To the extent that Defendant XPO claims that a document or set of documents is not within their possession or control, Defendant XPO shall specifically identify the document(s), the custodian of the document(s), the efforts made to obtain the document(s), and, to the extent that any document was destroyed, the date of destruction and the identity of the individual(s) who authorized the destruction of any such document(s).

6. To the extent that Defendant XPO claims that a document or documents are protected from disclosure pursuant to the attorney-client or work product privileges, Defendant XPO shall provide detailed privilege logs that set forth with particularity the document or documents, the author of the

8

document(s), the recipient of the document(s), and a description of the document(s) being withheld sufficient for the Plaintiff to evaluate the claim of privilege.

7. To the extent that the Parties cannot agree on whether a document is subject to the attorney-client or work-product privileges, the Party that is asserting the privilege shall submit the materials to the Undersigned for *in camera* review.

8. The Court finds and concludes that the Consent Protective Order previously entered in this Action provides adequate protection for any materials subject to any alleged trade secret, confidential, or proprietary privileges.

IT IS SO ORDERED.

This the ___7 1___ day of January, 2025.

HONORABLE JAMES GREGORY BELL
Senior Resident Superior Court Judge
Presiding

9

CINDY SOLES SMITH, Administratrix of the
ESTATE OF MARK KEANNAN SMITH,

    Plaintiff/Counterclaim-Defendant,

    v.

WILLIAM BRATTY LAMB,

    Defendant,

    and

XPO LOGISTICS FREIGHT, INC.

    Defendant/Counterclaim-Plaintiff.

**DEFENDANT XPO LOGISTICS
FREIGHT, INC.'s**

**THIRD SUPPLEMENTAL RESPONSES
TO PLAINTIFF'S FIRST SET OF
INTERROGATORIES AND REQUESTS
FOR PRODUCTION OF DOCUMENTS**

-and-

**FIRST SUPPLEMENTAL RESPONSES
TO PLAINTIFF'S SECOND SET OF
REQUESTS FOR PRODUCTION**

Pursuant to the North Carolina Rules of Civil Procedure and the Court's Order on Plaintiff's Motion to Compel, Defendant/Counterclaim-Plaintiff XPO Logistics Freight, Inc. ("XPO" or "Defendant"), by and through the undersigned counsel, hereby provides its third supplemental responses to the First Set of Interrogatories and Requests for Production of Documents and first supplemental responses to the Second Set of Requests for Production of Documents, both served by Plaintiff/Counterclaim-Defendant Cindy Soles Smith, Administratrix of the Estate of Mark Keannan Smith ("Plaintiff").

## FIRST SET OF INTERROGATORIES

3.    For each claim (formal or informal) and lawsuit wherein it is/was suggested or alleged that any person was injured or killed as a result of XPO's driver's actions in the past three years, provide the style of the case (or name of parties, jurisdiction and case number), and describe briefly the circumstances of each suit/claim and the disposition.

**ANSWER:** Objection. Defendant objects to this Interrogatory to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant further objects to this Interrogatory to the extent it seeks information in the possession of or equally accessible to Plaintiff. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery. Defendant also objects to the extent that this request seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other

PLAINTIFF'S
EXHIBIT
9

privilege. Subject to and without waiving these objections, Defendant identifies the instant litigation, which is the only civil lawsuit involving the Co-Defendant William Lamb. By way of further response, any additional lawsuits involving XPO are a matter of public record and are equally accessible to the Plaintiff.

SUPPLEMENTAL RESPONSE (12/23/24): Objection. As an initial matter, XPO does not keep a registrar of informal claims where a person was injured or killed as a result of XPO's driver's actions. XPO is a provider of freight transportation services. It moves goods through its customers supply chains in North America and Europe. A basic Westlaw search will reveal that there are 800+ cases with opinions drafted by Courts around the nation detailing XPO matters as of the date of these responses. Further, and more notably, any written response detailing every suit over the last three years with a detailed description would be an extremely inefficient and ineffective task for information not related to this action. Simply put, any request for the undersigned counsel to briefly describe the circumstances of each suit, claim, and disposition is undoubtedly overbroad, neither relevant, and would easily subject XPO to undue burden and expense. Given that, and unless counsel for Plaintiff provides an extremely narrowed scope with respect to this request, and/or absent Court Order, XPO will not provide an egregiously long summary detailing every formal or informal claim or suit where an individual has been injured as a result of XPO's driver's actions.

Supplemental Response (Feb. 2025): In response to the Court's Order on Plaintiff's Motion to Compel, XPO filed a Motion for Reconsideration that includes a request for the Court to Reconsider the provision of the Order pertaining to this Interrogatory. XPO will revise and/or supplement this response, as necessary, upon receipt of the Court's ruling on its Motion for Reconsideration.

5.     With respect to the tractor operated by William Lamb at the time of the Subject Incident, provide the following information:

E)     Identify all systems and devices of any kind in or on the tractor that allowed for communication between the driver and any other person or entity, state whether the data for the time period surrounding the Subject Incident has been preserved, and identify the person who has custody of the data and of the system from which the data was acquired.

F)     Identify all systems and devices of any kind in or on the tractor that has the capability to monitor, record, and/or transmit data (this includes, but is not limited to, Qualcomm, TransCore, SkyBitz, Fluensee, Fleetilla, Teletrac, Lat-Lon, Telogis, GeoLogic, Cheetah, Xata, PeopleNet or similar system; any collision or lane departure warning system; any driver safety monitoring or hours of service monitoring system; any transponders or tachographs; any onboard cameras or video devices; any bar code or toll pass systems; and any other tracking system, logging unit, trip monitor, trip recorder, GPS system, satellite systems, or cellular systems), state whether the data for the time period surrounding the Subject Incident has been preserved, and identify the person who has custody of the data and of the system from which the data was acquired.

2

**ANWSWER:** Objection. Defendant objects to this Interrogatory to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Interrogatory to the extent it requests XPO to gather and compile information related to maintenance for a period of 12 months before the Subject Incident, as this information is well outside of the relevance and purview of this action. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery. Defendant also objects to the extent that this request seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other privilege

Subject to and without waiving the above objections, Defendant is the owner of the tractor operated by Defendant William Lamb at the time of the Subject Incident. Defendant further references and incorporates the documents produced in connection with Defendant's Responses to Plaintiff's First Set of Request for Production of Documents.

**SUPPLEMENTAL RESPONSE** (12/23/24): XPO is the registered owner of the tractor that was operated by Co-Defendant William Lamb at the time of the Subject Incident. XPO no longer has access to the mileage and gross weight of the vehicle at the time of the Subject Incident. The serial number for the vehicle is 7F21D4823L2000426. The tech spec number for the 48' Large Trailer was 20XPO48PLG. The Vin Number is 3AKBGADV9GSHB2477. The tractor had devices and systems that were capable of recording and/or transmitting data about the operation of the tractor. Those systems included an Engine Control Module (ECM) which records and monitors engine performance data. Additionally, the tractor included an Electronic On-Board Recorder (EOBR). Following the incident, XPO downloaded a print out (produced alongside these supplemental responses) of recorded information on or around December 14, 2023. The vehicle model is a 2016 Freightliner Cascadia. The engine S/N No. is 471927S0368009.

Supplemental Response (Feb. 2025): With respect to subsections (e) and (f) of this request, XPO previously identified all systems and devices in the tractor at the time of the incident (ECM and EOBR). The material from the date of the incident was preserved and is in the custody of XPO. These materials were also previously produced at Bates XPO000052-0056, XPO00001786-1794, and XPO00001795-1814. All responsive information in XPO's possession, custody, or control have been produced.

6.     With respect to the trailer operated by William Lamb at the time of the Subject Incident, provide the following information:

C) Identify all systems and devices in/on the trailer that have the capability of recording any data about the operation of the trailer (including without limitation ABS control module, etc.), state whether or not that data has been preserved and/or downloaded, and if so, when and by whom.

D) Identify all systems and devices of any kind in or on the trailer that has the capability to monitor, record, and/or transmit data (this includes, but is not limited

3

to, any transponders or tachographs; any bar code systems; and any other tracking system, logging unit, GPS system, satellite systems, or cellular systems), state whether the data for the time period surrounding the Subject Incident has been preserved, and identify the person who has custody of the data and of the system from which the data was acquired.

**ANSWER:** Objection. Defendant objects to this Interrogatory to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Interrogatory to the extent it requests XPO to gather and compile information related to maintenance for a period of 12 months before the Subject Incident, as this information is well outside of the relevance and purview of this action. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery.

Subject to and without waiving the above objections, Defendant is the owner of the trailer operated by Defendant William Lamb at the time of the Subject Incident. Defendant further references and incorporates the documents produced in connection with Defendant's Responses to Plaintiff's First Set of Request for Production of Documents.

**SUPPLEMENTAL RESPONSE** (12/10/24): XPO is the registered owner of the trailer that was operated by Co-Defendant William Lamb at the time of the Subject Incident. XPO no longer has access to the mileage and gross weight of the vehicle at the time of the Subject Incident. The serial number for the vehicle is 7F21D4823L2000426. The tech spec number for the 48' Large Trailer was 20XPO48PLG. The Vin Number is 3AKBGADV9GSHB2477. The vehicle model is a 2016 Freightliner Cascadia. The tractor is equipped with systems capable of monitoring, recording, and/or transmitting data. Namely, the Engine Control Module, Electronic On-Board Recorder. The data for the time period surrounding the Subject Incident, namely, the DVIR data has been preserved as a part of standard record-keeping for vehicle inspections and produced herewith.

Supplemental Response (Feb. 2025): With respect to subsections (c) and (d) of this request, XPO previously identified all systems and devices in the trailer at the time of the incident (ECM and EOBR). The material from the date of the incident was preserved and is in the custody of XPO. These materials were also previously produced at Bates XPO000052-0056, XPO00001786-1794, and XPO00001795-1814. All responsive information in XPO's possession, custody, or control have been produced.

7.     With respect to the trip that William Lamb was on at the time of the Subject Incident, provide the following information:

(a)     Identify all shippers and brokers involved;
(b)     Explain where and when (date and time) William Lamb picked up the load he had at the time of the Subject Incident;
(c)     Identify where (name and address of location) and when (date and time) the load was to be delivered;
(d)     Identify the location, time, duration and reason for each stop William Lamb

4

made from the time he picked up the load until the time of the Subject Incident; and

(e)    Identify the route William Lamb intended to follow from the point of origin to the point of destination.

ANSWER: Objection. Defendant objects to this Interrogatory to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Interrogatory to the extent it seeks information that is confidential or proprietary. Specifically, Defendant objects to this Interrogatory to the extent it requests information related to all parties involved, trip and company information, in addition to the intended route and point of origin to the point of the destination. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery.

Subject to and without waiving these objections, Defendant has produced relevant, responsive, non-privileged documents containing information responsive to this request and references and incorporates same in its response to this request.

SUPPLEMENTAL RESPONSE (12/10/24): XPO maintains its objection with respect to this Interrogatory, specifically, given that it seeks information that is not relevant to the claims or defenses in this case and is not reasonably calculated to lead to the discovery of admissible evidence. Specifically, the incident in question involves Plaintiff crashing into the Defendant's truck, and the Plaintiff's requests for detailed information about the trip, including shipping, brokers, and specific route details, do not pertain to the liability or circumstances surrounding the crash. Further the information requested is overly broad, speculative, and concerns the operational details of the trip that are unrelated to the facts of the crash itself. The request for information on stops, route, and load details is especially irrelevant as it does not address the causation of the collision or the Plaintiff's conduct in the incident. Therefore, these requests are disproportionate to the needs of the case and are unduly burdensome. As suggested in Defendant's initial responses, Defendant will provide any relevant, non-privilege documents or information regarding the tractor and trailer involved in the incident, but objects to this Interrogatory as it seeks irrelevant information beyond the scope of the issues raised by Plaintiff's own claims.

Supplemental Response (Feb. 2025): XPO is producing a manifest for the date of the incident as well as a bill of lading that includes the date of the incident, both of which contain information responsive to this request. All responsive information in XPO's possession, custody, or control have been produced.

14.    Identify and describe all formal and informal disciplinary and/or counseling actions undertaken by XPO regarding William Lamb at any time.

ANSWER: Objection. Defendant objects to this Interrogatory to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during

5

the　　　　　　　　　course　　　　　　　　　of　　　　　　　　　discovery.

Subject to and without waiving the above objections, none. By way of further response, Defendant references and directs Plaintiff to the personnel file produced alongside Defendant's Responses to Plaintiff's First Set of Requests for Production of Documents.

**SUPPLEMENTAL RESPONSE** (12/23/24): Co-Defendant William Lamb was never the subject of any informal or formal disciplinary action. On occasions, William Lamb was notified of tardiness or driving corrections but not informal or formal disciplinary actions.

Supplemental Response (Feb. 2025): XPO previously produced the complete personnel file for William Lamb, which contains all responsive information in its possession, custody, or control.

15.　　Describe in detail **all** training and education (including on the job training) provided by or on behalf of XPO to William Lamb at any time and in any way related to the operation of a commercial motor vehicle.

**ANSWER: Objection.** Defendant objects to this Interrogatory to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery.

Subject to and without waiving the above objections, Defendant references and directs Plaintiff to the personnel file produced alongside Defendant's Responses to Plaintiff's First Set of Requests for Production of Documents.

**SUPPLEMENTAL RESPONSE** (12/23/24): XPO Logistics provides a comprehensive driver training program to ensure William Lamb meets safety standards and operational efficiency. The program includes hands-on training and on-going development to support professional growth and safety on the road. On or around December 2020 and January 2021, XPO through personnel member, Bradley Lutz, engaged in a coaching session to make sure Co-Defendant William Lamb followed proper protocols when operating an XPO vehicle. Mr. Lutz ensured Mr. Lamb was trained in defensive driving techniques, hazard recognition, accident-avoidance strategies, and emergency procedures. Further, and during the process, Mr. Lutz emphasized compliance with federal and state safety regulations, including hours of service, weight limits, and vehicle inspections. During those coaching sessions, Mr. Lutz would inform Mr. Lamb of his driving speed, vehicle awareness, and safety. Mr. Lamb also underwent an initial training program on the use of technology such as electronic logging devices (ELDs).

Supplemental Response (Feb. 2025): XPO previously produced the complete personnel file for William Lamb, which contains all responsive information in its possession, custody, or control. All responsive information in XPO's possession, custody, or control have been produced.

6

22.     Identify all XPO policies, procedures, rules, guidelines, directives, manuals, handbooks and instructions that were in effect for William Lamb at the time of the Subject Incident.

ANSWER: Objection. Defendant objects to this Interrogatory to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Specifically, Defendant objects to the broad nature of identifying all company, policies, rules, guidelines, directives, manuals, handbooks and other information irrespective or pertinent to this action as irrelevant. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery. Defendant also objects to the extent that this request seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other privilege.

Subject to and without waiving the above objections, Defendant has produced relevant, responsive, non-privileged documents containing information responsive to this request and references and incorporates same in its response to this request.

SUPPLEMENTAL RESPONSE (12/23/24): XPO Logistics provides an Employee Handbook and Supplement that includes XPO policies, procedures, rules, guidelines, directives, and instructions. These documents were produced alongside XPO's First Set of Supplemental Responses to Plaintiff's First Set of Discovery Requests.

Supplemental Response (Feb. 2025): XPO previously produced responsive materials. XPO also produces additional responsive non-privileged policies, procedures, rules, guidelines, directives, manuals, handbooks, and instructions that were in effect for William Lamb at the time of the incident and contain information responsive to this request. All responsive information in XPO's possession, custody, or control has been produced.

36.     If XPO has performed any review (e.g., accident review board, preventability determination) of the Subject Incident to determine preventability and/or fault, identify all persons involved in the review, the dates of the review and the conclusions that were reached.

ANSWER: Objection. Defendant objects to this Interrogatory to the extent it is overbroad as to scope. Defendant objects to this Interrogatory to the extent it requires information protected by privilege, including without limitation the attorney-client privilege and/or the work-product doctrine. Defendant objects to this Interrogatory to the extent it seeks the premature discovery of expert testimony, inconsistent with North Carolina Rules of Civil Procedure. Defendant further objects to this Interrogatory to the extent it seeks discovery of expert information not required to be disclosed by the North Carolina Rules of Civil Procedure relating to experts, a Discovery Scheduling Order to be entered in this case, and/or case law interpreting the North Carolina Rules of Civil Procedure relating to expert disclosure. Defendant objects to this Interrogatory to the extent it seeks information that is confidential or proprietary.

7

Subject to and without waiving the above objections, Defendant has produced relevant, responsive, non-privileged documents containing information responsive to this request and references and incorporates same in its response to this request.

**SUPPLEMENTAL RESPONSE (12/23/24):** Other than retention of counsel and an internal review of all statements submitted by William Lamb to the police, criminal charges, drug tests results, and dash cam video, XPO did not perform any review specifically to determine fault. However, XPO did conduct preventability review as defined by XPO.

Supplemental Response (Feb. 2025): XPO did perform an internal preventability analysis is producing all non-privileged documents relative to same.

38.     For each insurance policy of any kind that does or may provide any coverage on behalf of any XPO (whether it is your policy or anyone else's policy) for damages/injuries alleged in this case, provide: name of insurer; policy number; limits of coverage; the name(s) of all insureds; and state whether any insurer has offered a defense under a reservation of rights or otherwise contested coverage for the subject case.

**ANSWER: Objection.** Defendant objects to this Interrogatory to the extent it is overbroad as to scope. Further, Defendant objects to this Interrogatory to the extent it assumes facts either not true or proven. Specifically, Defendant objects to Plaintiff's statement that Plaintiff's injuries were caused in whole or in part by Defendant. Defendant objects to this Interrogatory to the extent it seeks information that is confidential or proprietary. Defendant also objects to this interrogatory to the extent that it seeks a legal opinion concerning coverage; the undersigned makes no representations concerning coverage.

Subject to and without waiving these objections, Defendant has requested a copy of the responsive policy(ies) and will produce to Plaintiff upon receipt of same.

**SUPPLEMENTAL RESPONSE (12/23/24):** As noted in XPO's document production, XPO is currently insured with Chubb. XPO is not aware of any additional insurance policy that would allow for coverage based on Plaintiff's allegations detailed in its Complaint and Plaintiff's response to XPO's Request for Statement of Monetary Relief.

Supplemental Response (Feb. 2025): XPO is producing four additional documents that contain information responsive to this request including, without limitation, Reservation of Rights letters, self insured retention and excess policies as well as an SIR deductible endorsement.

## FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS

2.     A copy of each document retention policy in effect for XPO at any time between the time of the Subject Incident and present.

**RESPONSE: Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the

8

discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

Subject to and without waiving these objections, Defendant will supplement its response following the submission of a Protective Order in this action.

**SUPPLEMENTAL RESPONSE** (12/23/24): XPO does have a document retention policy. XPO will supplement with its policy.

Supplemental Response (Feb. 2025): All responsive documents in XPO's possession, custody, or control have been produced.

3.    **A copy of each insurance policy (and declarations page for each policy) that provides or may provide coverage for damages sustained in the Subject Incident.**

**RESPONSE: Objection.** Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

Subject to and without waiving these objections, Defendant has requested a copy of the responsive policy(ies) and will produce to Plaintiff upon receipt of same.

**SUPPLEMENTAL RESPONSE** (12/23/24): XPO produced all responsive documents to the above-referenced request in its first set of supplemental responses to Plaintiff's First Set of Requests for Production of Documents.

Supplemental Response (Feb. 2025): All responsive documents in XPO's possession, custody, or control have been produced.

4.    **Copies of all reservation of rights letters and/or agreements regarding insurance coverage for the Subject Incident.**

**RESPONSE: Objection.** Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

Subject to and without waiving these objections, Defendant has requested a copy of the responsive policy(ies) and will produce to Plaintiff upon receipt of same.

**SUPPLEMENTAL RESPONSE** (12/23/24): XPO produced all responsive documents to the above-referenced request in its first set of supplemental responses to Plaintiff's First Set of Requests for Production of Documents.

Supplemental Response (Feb. 2025): All responsive documents in XPO's possession, custody, or control have been produced.

6.    **The contents of William Lamb's driver qualification file, driver investigation file, driver history file and all documents that demonstrate compliance with federal and state**

9

driver qualification laws and regulations. The requested documents include, but are not limited to all documents required by FMCSR, 49 CFR Part 391, and the state equivalent thereto. If any responsive documents have been removed from the driver qualification file, these should be produced nonetheless.

RESPONSE: Objection. Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

Subject to and without waiving these objections, Defendant has produced relevant, responsive, non-privileged documents in response to this request.

SUPPLEMENTAL RESPONSE (12/23/24): To the best of its knowledge, XPO produced all responsive documents to the above-referenced request in its first set of supplemental responses to Plaintiff's First Set of Requests for Production of Documents. To the extent responsive documents become available, XPO will supplement in connection with these supplemental responses.

Supplemental Response (Feb. 2025): All responsive documents in XPO's possession, custody, or control have been produced.

35. If the tractor was equipped with any on-board audio or video recording or monitoring devices and/or any other driver or driver safety monitoring system, please produce everything that was retrieved or could be retrieved from such devices and systems.

RESPONSE: Objection. Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

Subject to and without waiving these objections, Defendant incorporates and references documents produced alongside these responses.

SUPPLEMENTAL RESPONSE (12/23/24): XPO produced all responsive documents to the above-referenced request in its first set of supplemental responses to Plaintiff's First Set of Requests for Production of Documents.

Supplemental Response (Feb. 2025): All responsive documents in XPO's possession, custody, or control have been produced. XPO does not maintain data unless there is a triggering event.

42. All documents that relate to the load being hauled by William Lamb at the time of the Subject Incident, including, by way of example and without limitation, all manifests, bills of lading, weight receipts, dispatch documents, content summaries, and documents that address the contents, ownership, pick-up, detainment, and delivery of the load.

10

**RESPONSE: Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery.

**SUPPLEMENTAL RESPONSE** (12/23/24): XPO will supplement its document production to include Bill of Lading (BOL) documents, as requested in Plaintiff's November 1, 2024 meet and conferral letter, to the extent, if any in XPO's possession.

Supplemental Response (Feb. 2025): XPO is producing a manifest for the date of the incident as well as a bill of lading that includes the date of the incident, both of which contain information responsive to this request. All responsive documents in XPO's possession, custody, or control have been produced.

46.    **All documents assessing preventability of and/or fault for the Subject Incident.**

**RESPONSE: Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant further objects to this Request to the extent it's premature and discovery is on-going. Defendant objects to this Request to the extent it seeks the premature discovery of expert testimony, inconsistent with North Carolina Rules of Civil Procedure. Defendant further objects to this Request to the extent it seeks discovery of expert information not required to be disclosed by the North Carolina Rules of Civil Procedure relating to experts, a Discovery Scheduling Order to be entered in this case, and/or case law interpreting the North Carolina Rules of Civil Procedure relating to expert disclosure. Defendant objects to this Request to the extent it requires information protected by privilege, including without limitation the attorney-client privilege and/or the work-product doctrine. Defendant further objects to this Request to the extent it seeks a legal conclusion. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery.

Subject to and without waiving the above objections, Defendant will produce all reports created for disclosure by Defendant's retained expert(s) when appropriate. Further, Defendant has produced relevant, responsive, non-privileged documents in response to this request.

**SUPPLEMENTAL RESPONSE** (12/23/24): XPO is not in possession of the above-referenced documents.

Supplemental Response (Feb. 2025): All responsive documents in XPO's possession, custody, or control have been produced.

55.    **Copies of all XPO policies, procedures, rules, guidelines, directives, manuals, handbooks and instructions that were in effect at the time of the Subject Incident, relating to:**

11

a. Working for or with trucking company generally (e.g., employee manual or handbook);
b. Operation of any motor vehicle (e.g., driving manuals or handbooks, and the like);
c. Operation of a commercial vehicle;
d. Driving safety;
e. Defensive driving;
f. Compliance with federal and state laws and regulations;
g. Accident investigation;
h. Accident review boards;
i. Determination of preventability of accidents;
j. Hiring, training and supervising drivers; and
k. Disciplinary actions.

RESPONSE: Objection. Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary. Defendant also objects to the extent that this request seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other privilege.

Subject to and without waiving these objections, Defendant will supplement its response following the submission of a Protective Order in this action.

SUPPLEMENTAL RESPONSE (12/23/24): XPO produced all responsive documents to the above-referenced request in its first set of supplemental responses to Plaintiff's First Set of Requests for Production of Documents.

Supplemental Response (Feb. 2025): In response to the Court's Order on Plaintiff's Motion to Compel, XPO filed a Motion for Reconsideration that includes a request for the Court to Reconsider the provision of the Order pertaining to this Interrogatory. XPO will revise and/or supplement this response, as necessary, upon receipt of the Court's ruling on its Motion for Reconsideration.

56. Copies of each document that William Lamb signed to prove that William Lamb received and/or agreed to be bound by any policies, procedures, rules, guidelines and/or standards of XPO.

RESPONSE: Objection. Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

Subject to and without waiving these objections, Defendant will supplement its response following the submission of a Protective Order in this action.

12

**SUPPLEMENTAL RESPONSE** (12/23/24): XPO produced all responsive documents to the above-referenced request in its first set of supplemental responses to Plaintiff's First Set of Requests for Production of Documents.

Supplemental Response (Feb. 2025): In response to the Court's Order on Plaintiff's Motion to Compel, XPO filed a Motion for Reconsideration that includes a request for the Court to Reconsider the provision of the Order pertaining to this Interrogatory. XPO will revise and/or supplement this response, as necessary, upon receipt of the Court's ruling on its Motion for Reconsideration.

57.    **To the degree that XPO has any rules, policies, procedures, guidelines, driving manuals, employee handbooks or manuals, or other similar documents that were not provided to William Lamb before the Subject Incident, please produce them now.**

**RESPONSE: Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary. Defendant also objects to the extent that this request seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other privilege.

Subject to and without waiving these objections, Defendant will supplement its response following the submission of a Protective Order in this action.

**SUPPLEMENTAL RESPONSE** (12/23/24): XPO produced all responsive documents to the above-referenced request in its first set of supplemental responses to Plaintiff's First Set of Requests for Production of Documents.

Supplemental Response (Feb. 2025): In response to the Court's Order on Plaintiff's Motion to Compel, XPO filed a Motion for Reconsideration that includes a request for the Court to Reconsider the provision of the Order pertaining to this Interrogatory. XPO will revise and/or supplement this response, as necessary, upon receipt of the Court's ruling on its Motion for Reconsideration.

58.    **A complete copy of, or in the alternative, access to, each driver safety training film, video, videotape, videocassette, audio cassette, computer program, simulator, driver diagnostic record or test, maintained by your company, or used by XPO, its personnel, agents, or employees during the year of the Subject Incident and three years prior.**

**RESPONSE: Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

Subject to and without waiving these objections, Defendant will supplement its response following the submission of a Protective Order in this action.

13

**SUPPLEMENTAL RESPONSE** (12/23/24): XPO will supplement its document production, to the extent any supplemental files exist.

> **Supplemental Response** (Feb. 2025): In response to the Court's Order on Plaintiff's Motion to Compel, XPO filed a Motion for Reconsideration that includes a request for the Court to Reconsider the provision of the Order pertaining to this Interrogatory. XPO will revise and/or supplement this response, as necessary, upon receipt of the Court's ruling on its Motion for Reconsideration.

59. **Copies of all industry and/or other guidelines and/or practices that you rely upon to support your contentions in this case.**

**RESPONSE: Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

Subject to and without waiving these objections, Defendant will supplement its response following the submission of a Protective Order in this action.

**SUPPLEMENTAL RESPONSE** (12/23/24): XPO will supplement its document production, to the extent any responsive documents exist.

> **Supplemental Response** (Feb. 2025): In response to the Court's Order on Plaintiff's Motion to Compel, XPO filed a Motion for Reconsideration that includes a request for the Court to Reconsider the provision of the Order pertaining to this Interrogatory. XPO will revise and/or supplement this response, as necessary, upon receipt of the Court's ruling on its Motion for Reconsideration.

61. **A copy of each document (including articles and presentations) prepared and/or presented by any XPO representative relating to the safe operation of a commercial motor vehicle and/or the safe operation of a trucking company in the past five years.**

**RESPONSE: Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary. Defendant also objects to the extent that this request seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other privilege.

**SUPPLEMENTAL RESPONSE** (12/23/24): XPO produced all responsive documents to the above-referenced request in its first set of supplemental responses to Plaintiff's First Set of Requests for Production of Documents.

14

Supplemental Response (Feb. 2025): In response to the Court's Order on Plaintiff's Motion to Compel, XPO filed a Motion for Reconsideration that includes a request for the Court to Reconsider the provision of the Order pertaining to this Interrogatory. XPO will revise and/or supplement this response, as necessary, upon receipt of the Court's ruling on its Motion for Reconsideration.

**65. A copy of XPO's accident register maintained as required by 49 CFR § 390.35.**

**RESPONSE: Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant objects to this Request to the extent it seeks information that is confidential or proprietary.

**SUPPLEMENTAL RESPONSE** (12/23/24): XPO maintains its objection to producing an entire copy of its accident register. Specifically, Defendant objects to the request for production of an "accident registrar" of XPO as it seeks documents that are not relevant to the claims or defenses in this case. The incident in question involves the Plaintiff crashing into to the Defendant's truck, and the Plaintiff's request for an accident registrar is overly broad and not related to the facts of the crash or the Plaintiff's conduct leading to the incident. An accident registrar may document past incidents that are not connected to this specific case or the actions of the Plaintiff. Further, the requested documents are likely irrelevant to the cause of the accident or determining liability in this matter. Further, the request is disproportionate to the needs of the case, as it involves a general catalog of past accidents, which do not provide relevant information regarding the subject incident. Therefore, the Defendant objects to this request on grounds of relevance and proportionality under the applicable rules of civil procedure.

Supplemental Response (Feb. 2025): XPO is producing relevant materials in response to this request.

**66. Transcripts or recordings of all depositions of corporate designees for XPO given in the past five years in cases where it was alleged that a driver working for XPO caused injury or death to another person.**

**RESPONSE: Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant further objects to this request to the extent that it seeks information that is confidential, proprietary, or otherwise not subject to disclosure during the course of discovery. Defendant also objects to the extent that this request seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other privilege.

**SUPPLEMENTAL RESPONSE** (12/23/24): November 1, 2024, Plaintiff limited the scope of the above-referenced request to 30(b)(6) deposition transcripts from XPO designees within the last 5-years for incidents involving an XPO driver making a left turn that resulted in serious injuries or death to third parties. As noted above, XPO is a provider of freight transportation services. It moves goods through its customers supply chains in North America and Europe. A basic Westlaw

search will reveal that there are 800+ cases with opinions drafted by Courts around the nation detailing XPO matters as of the date of these responses. Further, and more notably, even with Plaintiff's limited scope, the request is still undoubtedly overbroad, neither relevant, and would easily subject XPO to undue burden and expense. Given that, and/or absent Court Order, XPO will not produce a plethora of 30(b)(6) transcripts where it can conduct its own 30(b)(6) concerning the facts relevant and pertinent to this case concerning the Subject Collision.

Supplemental Response (Feb. 2025): In response to the Court's Order on Plaintiff's Motion to Compel, XPO filed a Motion for Reconsideration that includes a request for the Court to Reconsider the provision of the Order pertaining to this Interrogatory. XPO will revise and/or supplement this response, as necessary, upon receipt of the Court's ruling on its Motion for Reconsideration.

## SECOND REQUESTS FOR PRODUCTION OF DOCUMENTS

1.    All telematics data (specifically including but not limited to: videos, screenshots, coaching sessions, behaviors coached, event coached, comments, event notes and session notes) for William Lamb from date of hire (09-09-20) through present.

**RESPONSE: Objection.** Defendant objects to this Interrogatory as vague and ambiguous and to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

To the best of its knowledge, XPO produced all responsive documents to the above-referenced request in its first set of supplemental responses to Plaintiff's First Set of Requests for Production of Documents. To the extent responsive documents become available, XPO will supplement in connection with these supplemental responses.

Supplemental Response (Feb. 2025): All responsive documents in XPO's possession, custody, or control have been produced. XPO does not maintain data unless there is a triggering event.

2.    Any documents that reflect the identity of employees of XPO Logistics Freight Inc. (or any third parties) who regularly monitored or reviewed telematics data (including but not limited to Lytx software) for employee William Lamb from the date of hire (09-09-20) through present.

**RESPONSE: Objection.** Defendant objects to this Interrogatory as vague and ambiguous and to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

There is not a single individual specifically assigned to regularly review all telematics data for employee William Lamb. Further, telematics is not routinely reviewed for every employee on a continuous basis, and as such, no one individual is tasked with monitoring or reviewing all of the data generated. The Defendant does not maintain a centralized list of employees or third parties who regularly reviewed telematics data.

16

Supplemental Response (Feb. 2025): All responsive documents in XPO's possession, custody, or control have been produced.

4.     With respect to any telematics software being used by XPO Logistics Freight, Inc, produce the log of all safety alerts received in the safety inbox or other location designated for William Lamb for 6-months prior to the Subject Incident through present.

**RESPONSE: Objection.** Defendant objects to this Interrogatory as vague and ambiguous and to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. The request seeks the production of logs for all safety alerts received in the safety inbox or any other location designated for employee William Lamb for a six-month period prior to the Subject Incident through the present. This request is overly broad and seeks information that is not relevant to the issues at hand, which involve the Plaintiff's collision with the Defendant's truck. The requested safety alerts pertain to operational data that does not have a direct bearing on the causation of the subject incident, or the actions of the parties involved in the crash. The request for a six-month period of alerts is excessive, as it extends well beyond the specific circumstances of the incident. The data sought is not pertinent to establishing liability or understanding the events leading up to the crash. Moreover, complying with this request would impose an undue burden, as it would require the review and production of a potentially vast amount of data that may not be relevant to the claims or defenses in this case.

Supplemental Response (Feb. 2025): All responsive documents in XPO's possession, custody, or control have been produced.

6. With respect to any telematics software being used by XPO Logistics Freight, Inc., produce a printout of the Safety Score and the configuration page for William Lamb for 3-months prior to the Subject Incident through present.

**RESPONSE: Objection.** Defendant objects to this Interrogatory as vague and ambiguous and to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

Defendant is not in possession of these documents containing Safety Score to the best of its knowledge. Defendant will supplement this response to the extent these documents become available.

Supplemental Response (Feb. 2025): XPO's safety score is a matter of public record via the Federal Motor Carrier Safety Administration website fmcsa.gov and XPO is producing this material as well.

8.     With respect to any telematics software being used by XPO Logistics Freight, Inc., produce a printout of the alert configuration page for the date of the Subject Incident.

**RESPONSE: Objection.** Defendant objects to this Interrogatory as vague and ambiguous and to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving these objections, please see the documents produced in connection with these responses.

**Supplemental Response** (Feb. 2025): All responsive documents in XPO's possession, custody, or control have been produced.

9.      With respect to any telematics software being used by XPO Logistics Freight, Inc, produce all notifications in the inbox (or other similar location) for William Lamb for 6-months prior to the Subject Incident through present.

**RESPONSE: Objection.** Defendant objects to this Interrogatory as vague and ambiguous and to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. The request seeks the production of all notifications in the inbox (or other similar location) for William Lamb for a six-month period prior to the Subject Incident through the present. However, this request is not relevant to the claims or defenses in this case, which concern the Plaintiff's collision with the Defendant's truck. The notifications sought by the Plaintiff, which likely pertain to operational or procedural communications unrelated to the subject incident, do not have a direct bearing on the events surrounding the crash or the actions of either party involved. The focus of the case is on the cause and circumstances of the crash, not on unrelated communications that may be stored in a telematics inbox. Further, the request is overly broad and burdensome, as it asks for all notifications over a six-month period, which could include a significant volume of irrelevant data. The production of such a large quantity of notifications would require time-consuming review and could result in the production of numerous documents that are not material to any issue in the case.

**Supplemental Response** (Feb. 2025): All responsive documents in XPO's possession, custody, or control have been produced.

10.     With respect to any telematics software being used by XPO Logistics Freight, Inc, produce the safety setting in the transportation management system utilized for William Lamb's individual vehicle/person on the date of Subject Incident.

**RESPONSE: Objection.** Defendant objects to this Interrogatory as vague and ambiguous and to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving these objections, Defendant is not in possession of the above referenced documents. Defendant will supplement this response to the extent these documents become available.

**Supplemental Response** (Feb. 2025): All responsive documents in XPO's possession, custody, or control have been produced.

18

11.     Produce the safety setting in the transportation management system utilized for fleet wide vehicles on the date of the Subject Incident (these include: harsh event sensitivity, forward collision warning, distracted driving detection, tailgating detection, following distance, audio recording, camera height calibration, in-cab voice coaching for policy violations, in-cab coaching for driver speeding and in-cab nudges or alerts).

**RESPONSE: Objection.** Defendant objects to this Interrogatory as vague and ambiguous and to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving these objections, Defendant is not in possession of the above referenced documents. Defendant will supplement this response to the extent these documents become available.

**Supplemental Response (Feb. 2025):** In response to the Court's Order on Plaintiff's Motion to Compel, XPO filed a Motion for Reconsideration that includes a request for the Court to Reconsider the provision of the Order pertaining to this Request. XPO will revise and/or supplement this response, as necessary, upon receipt of the Court's ruling on its Motion for Reconsideration.

13.     With respect to any telematics software being used by XPO Logistics Freight, Inc., produce the administrative username and password for Plaintiffs expert(s) to access XPO Logistic Freight Inc.'s transportation management system account for data and information related to the Subject Incident and William Lamb.

**RESPONSE: Objection.** Defendant objects to this Request to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and subjects Defendant to undue burden and expense. Defendant further objects to this Request to the extent it's premature and discovery is on-going. Defendant objects to this Request to the extent it seeks the premature discovery of expert testimony, inconsistent with North Carolina Rules of Civil Procedure. Defendant further objects to this Request to the extent it seeks discovery of expert information not required to be disclosed by the North Carolina Rules of Civil Procedure relating to experts, a Discovery Scheduling Order to be entered in this case, and/or case law interpreting the North Carolina Rules of Civil Procedure relating to expert disclosure.

Subject to and without waiving the above objections, Defendant will produce relevant telematic data with respect to William Lamb.

**Supplemental Response (Feb. 2025):** In response to the Court's Order on Plaintiff's Motion to Compel, XPO filed a Motion for Reconsideration that includes a request for the Court to Reconsider the provision of the Order pertaining to this Request. XPO will revise and/or supplement this response, as necessary, upon receipt of the Court's ruling on its Motion for Reconsideration.

14. Produce the complete video footage, from the Video Library in the telematics system cloud or wherever it is located, of the forward-facing and driver-facing video footage from the date of the Subject Incident.

**RESPONSE: Objection.** Defendant objects to this Interrogatory as vague and ambiguous and to the extent it is overbroad as to scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the above objections, Defendant produced all video footage in its possession from the Subject Incident.

**Supplemental Response** (Feb. 2025): All responsive documents in XPO's possession, custody, or control have been produced.

This the 26th day of February, 2025.

**Gordon Rees Scully Mansukhani, LLP**

By: _____

Megan M. Stacy
N.C. State Bar No. 47108
Austin R. Kessler
North Carolina Bar No. 53124
Devin Honbarger
North Carolina Bar No. 59513
150 Fayetteville Street, Suite 1120
Raleigh, North Carolina 27601
Telephone: (919) 787-4555
Facsimile: (919) 741-5840
E-mail: mstacy@grsm.com
E-mail: akessler@grsm.com
E-mail: dhonbarger@grsm.com
*Counsel for Defendant XPO Logistics Freight, Inc. and William Lamb*

## CERTIFICATE OF SERVICE

This is to certify that I caused the foregoing **Supplemental Discovery Responses** to be served upon all counsel of record by email pursuant to the North Carolina Rules of Civil Procedure addressed as follows:

J. William Owen
Musselwhite, Musselwhite, Branch & Grantham, P.A.
P.O. Box 1448
Lumberton, NC 28359
wowen@mmbglaw.com
*Counsel for Plaintiff Cindy Smith,*
*Administratrix of the Estate of Mark K. Smith*

Jennifer Welch
Cranfill Sumner
P.O. Box 27808
Raleigh, NC 27611-7808
jwelch@cshlaw.com
*Counsel for Counterclaim-Defendant Cindy Smith,*
*Administratrix of the Estate of Mark K. Smith*

This the 26th day of February, 2025.

**Gordon Rees Scully Mansukhani, LLP**

By: _____
Megan M. Stacy
N.C. State Bar No. 47108
Austin R. Kessler
North Carolina Bar No. 53124
Devin Honbarger
North Carolina Bar No. 59513
150 Fayetteville Street, Suite 1120
Raleigh, North Carolina 27601
Telephone: (919) 787-4555
Facsimile: (919) 741-5840
E-mail: mstacy@grsm.com
E-mail: akessler@grsm.com
E-mail: dhonbarger@grsm.com
*Counsel for Defendant XPO Logistics Freight, Inc.*
*and William Lamb*

21

## Rule 37. Failure to make discovery; sanctions.

(a) Motion for order compelling discovery. - A party, upon reasonable notice to other parties and all persons affected thereby, may apply for an order compelling discovery as follows:

    (1) Appropriate Court. - An application for an order to a party or a deponent who is not a party may be made to a judge of the court in which the action is pending, or, on matters relating to a deposition where the deposition is being taken in this State, to a judge of the court in the county where the deposition is being taken, as defined by Rule 30(h).

    (2) Motion. - If a deponent fails to answer a question propounded or submitted under Rules 30 or 31, or a corporation or other entity fails to make a designation under Rule 30(b)(6) or 31(a), or a party fails to answer an interrogatory submitted under Rule 33, or if a party, in response to a request for inspection submitted under Rule 34, fails to respond that inspection will be permitted as requested or fails to permit inspection as requested, the discovering party may move for an order compelling an answer, or a designation, or an order compelling inspection in accordance with the request. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make the discovery in an effort to secure the information or material without court action. When taking a deposition on oral examination, the proponent of the question shall complete the examination on all other matters before the examination is adjourned, in order to apply for an order. If the motion is based upon an objection to production of electronically stored information from sources the objecting party identified as not reasonably accessible because of undue burden or cost, the objecting party has the burden of showing that the basis for the objection exists.

    If the court denies the motion in whole or in part, it may make such protective order as it would have been empowered to make on a motion made pursuant to Rule 26(c).

    (3) Evasive or Incomplete Answer. - For purposes of this subdivision an evasive or incomplete answer is to be treated as a failure to answer.

    (4) Award of Expenses of Motion. - If the motion is granted, the court shall, after opportunity for hearing, require the party or deponent whose conduct necessitated the motion or the party advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney's fees, unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust.

If the motion is denied, the court shall, after opportunity for hearing, require the moving party to pay to the party or deponent who opposed the motion the reasonable expenses incurred in opposing the motion, including attorney's fees, unless the court finds that the making of the motion was substantially justified or that other circumstances make an award of expenses unjust.

If the motion is granted in part and denied in part, the court may apportion the reasonable expenses incurred in relation to the motion among the parties and persons in a just manner.

(b) Failure to comply with order. -

   (1) Sanctions by Court in County Where Deposition Is Taken. - If a deponent fails to be sworn or to answer a question after being directed to do so by a judge of the court in the county in which the deposition is being taken, the failure may be considered a contempt of that court.

   (2) Sanctions by Court in Which Action Is Pending. - If a party or an officer, director, or managing agent of a party or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a party fails to obey an order to provide or permit discovery, including an order made under section (a) of this rule or Rule 35, or if a party fails to obey an order entered under Rule 26(f) a judge of the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

   a. An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

   b. An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting the party from introducing designated matters in evidence;

   c. An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;

   d. In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of court the failure to obey any orders except an order to submit to a physical or mental examination;

   e. Where a party has failed to comply with an order under Rule 35(a) requiring the party to produce another for examination, such orders as are listed in subdivisions a, b, and c of this

subsection, unless the party failing to comply shows that the party is unable to produce such person for examination.

In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

(b1) Failure to provide electronically stored information. - Absent exceptional circumstances, a court may not impose sanctions under these rules on a party for failing to provide electronically stored information lost as a result of routine, good-faith operation of an electronic information system.

(c) Expenses on failure to admit. - If a party fails to admit the genuineness of any document or the truth of any matter as requested under Rule 36, and if the party requesting the admissions thereafter proves the genuineness of the document or the truth of the matter, the requesting party may apply to the court for an order requiring the other party to pay to him or her the reasonable expenses incurred in making that proof, including reasonable attorney's fees. The court shall make the order unless it finds that (i) the request was held objectionable pursuant to Rule 36(a), or (ii) the admission sought was of no substantial importance, or (iii) the party failing to admit had reasonable ground to believe that he or she might prevail on the matter, or (iv) there was other good reason for the failure to admit.

(d) Failure of party to attend at own deposition or serve answers to interrogatories or respond to request for inspection. - If a party or an officer, director, or managing agent of a party or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a party fails (i) to appear before the person who is to take the deposition, after being served with a proper notice, or (ii) to serve answers or objections to interrogatories submitted under Rule 33, after proper service of the interrogatories, or (iii) to serve a written response to a request for inspection submitted under Rule 34, after proper service of the request, the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under subdivisions a, b, and c of subsection (b)(2) of this rule. In lieu of any order or in addition thereto, the court shall require the party failing to act to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

The failure to act described in this section may not be excused on the ground that the discovery sought is objectionable unless the party failing to act has applied for a protective order as provided by Rule 26(c).

(e), (f) Reserved for future codification purposes.

(g) Failure to participate in the framing of a discovery plan. - If a party or the party's attorney fails to participate in good faith in the framing of a discovery plan by agreement

as is required by Rule 26(f), the court may, after opportunity for hearing, require such party or the party's attorney to pay to any other party the reasonable expenses, including attorney's fees, caused by the failure. (1967, c. 954, s. 1; 1973, c. 827, s. 1; 1975, c. 762, s. 2; 1985, c. 603, ss. 5-7; 2001-379, s. 5; 2011-199, s. 5.)

## CHART OF CIVIL DISCOVERY SANCTIONS UNDER RULE 37

Ann M. Anderson, UNC School of Government (January 2012)

| BASIS OF MOTION FOR SANCTIONS[1] | SANCTION(S) AVAILABLE[2] | ATTORNEY FEES, EXPENSES |
|---|---|---|
| **Rule 37(a)(2), (3)** <br><br> Failure to: <br> • Answer a question posed at a deposition or propounded in writing. Rules 30, 31. <br> • Designate a person to be deposed on behalf of corporate party. Rule 30(b)(6). <br> • Answer an interrogatory or serve a candid/complete answer. Rule 33. <br> • State in response to request for inspection/production that inspection will be permitted or failing to produce or allow inspection. Rule 34. | **Rule 37(a)** <br><br> Court may make order compelling failing party to properly respond. <br><br> *(Notes:* <br> • *Party moving to compel must include certification that it has in good faith attempted to confer with the non-movant to obtain the materials before resorting to court action.* <br> • *If party fails to comply with this order compelling discovery, sanctions are available under Rule 37(b)(2). See section immediately below.)* | **Rule 37(a)(4)** <br><br> • If motion granted, court **shall** order non-complying party to pay reasonable expenses and attorney fees *incurred in obtaining order* **unless** court finds the failure was (a) substantially justified; or (b) that other circumstances make award unjust. <br> • If motion denied, court shall order movant to pay expenses and attorney fees *incurred in opposing order* unless court finds the failure was (a) substantially justified; or (b) that other circumstances make award unjust. <br> • If motion denied in part and granted in part, court may apportion fees/expenses. |
| **Rule 37(b)(2)** <br><br> Failure to comply with a prior discovery order: <br> • Order compelling discovery response under Rule 37(a). *(See section immediately above.)* <br> • Order entered pursuant to Rule 37(d). *(See section immediately below.)* <br> • Order entered pursuant to Rule 37(b)(1) that deponent be sworn or | **Rule 37(b)(2)** <br><br> Court may make: <br> • "Such orders in regard to the failure as are just"; <br> • Order that designated facts be taken to be established; <br> • Order prohibiting party from introducing designated matter into evidence; <br> • Order: <br>    • striking out all or part of pleadings; | **Rule 37(b)(2)** <br><br> <u>Yes</u>. If motion granted, court **shall** require party failing to comply to pay movant's reasonable expenses, including attorney fees *caused by the failure* unless court finds the failure was (a) substantially justified; or (b) that other circumstances make award unjust. <br><br> Court may award these expenses and fees in lieu of or in addition to Rule 37(b)(2) sanctions. |

---

[1] If the motion is based on an objection to production of electronically stored information from sources the objecting party identified as not reasonably accessible due to undue burden or cost, the objecting party has the burden of showing the basis for the objection exists. Rule 37(a)(2).

[2] Absent exceptional circumstances, a court may not impose sanctions under these rules on a party for failing to provide electronically stored information lost as a result of routine, good-faith operation of an electronic information system. Rule 37(b1).

Civil Discovery Sanctions under Rule 37 - 1

| BASIS OF MOTION FOR SANCTIONS[1] | SANCTION(S) AVAILABLE[2] | ATTORNEY FEES, EXPENSES |
|---|---|---|
| answer a question. <br> • Order for physical or mental examination pursuant to Rule 35. <br> • Order following discovery conference under Rule 26(f). | • staying further proceedings until the order is obeyed; <br> • dismissing all or part of the action; or <br> • rendering default judgment <br> • Contempt order (except for Rule 35(a) violation) | (No provision for award to non-movant if motion denied.) |
| **Rule 37(e)** <br><br> Failure to: <br> • Appear at deposition. Rules 30, 31. <br> • Serve answers to interrogatories. Rule 33. <br> • Serve responses to request for inspection/production of documents. Rule 34. | **Rule 37(b)(2), (e)** <br><br> Court may: <br> • "Make such orders in regard to the failure as are just"; <br> • Order that designated facts be taken to be established in the action; <br> • Order prohibiting party from introducing designated matter into evidence; <br> • Order striking out all or part of pleadings. | **Rule 37(e)** <br><br> <u>Yes</u>. If motion granted, court shall require the party failing to comply to pay reasonable expenses of movant, including attorney fees *caused by the failure* unless the court finds the failure was (a) substantially justified; or (b) that other circumstances make award unjust. <br><br> Court may award these expenses and fees in lieu of or in addition to Rule 37(d) sanctions. <br><br> (No provision for award to non-movant if motion denied.) |
| **Rule 37(d)** <br><br> Failure to admit genuineness of document or truth of any matter requested under Rule 36 where requesting party later proves genuineness/truth. | **Rule 37(d)** <br><br> Order of expenses/attorney fees ⟶ | **Rule 37(d)** <br><br> Upon motion, court **shall** make order of expenses/attorney fees incurred in making the proof **unless** it finds (i) request was held objectionable pursuant to Rule 36(a), or (ii) admission sought was of no substantial importance, or (iii) party failing to admit had reasonable ground to believe it might prevail on the matter; or (iv) there was other good reason for failure to admit. <br><br> (No provision for award to non-movant where motion denied.) |

Civil Discovery Sanctions under Rule 37 - 2

| BASIS OF MOTION FOR SANCTIONS[1] | SANCTION(S) AVAILABLE[2] | ATTORNEY FEES, EXPENSES |
|---|---|---|
| **Rule 37(g)**<br><br>Failure to participate in good faith in the framing of a discovery plan under Rule 26(f). | **Rule 37(g)**<br><br>Order of expenses/attorney fees →→→→ | **Rule 37(g)**<br><br>After opp'y for hearing, court may order party *or* its attorney to pay moving party's reasonable expenses and attorney fees *caused by the failure*.<br><br>(No provision for award to non-movant where motion denied.) |

Note: Other sanction provisions can be found within Rule 26 and within the discovery rules governing each method of discovery (Rules 30 through 36). There is considerable overlap among these rules and Rule 37, but each rule should be consulted separately where a motion is being made pursuant to that Rule.

© 2012 School of Government  The University of North Carolina at Chapel Hill. This document may not be copied or posted online, nor transmitted, in printed or electronic form, without the written permission of the School of Government, except as allowed by fair use under United States copyright law. For questions about use of the document and permission for copying, contact the School of Government at sales@sog.unc.edu or call 919.966.4119.

Case 7:25-cv-01545-D-BM     Document 41-1     Filed 02/13/26     Page 130 of 192

STATE OF NORTH CAROLINA

ROBESON COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
24 CVS 468

CINDY SOLES SMITH, Administratrix )
of the ESTATE OF MARK KEANNAN )
SMITH )
)
      Plaintiff, )
)
v. )
)
WILLIAM BRATTY LAMB and )
XPO LOGISTICS FREIGHT, INC. )
)
      Defendants. )
)

## PLAINTIFF'S MOTION FOR SANCTIONS AND SECOND MOTION TO COMPEL AGAINST DEFENDANT XPO LOGISTICS FREIGHT, INC.

NOW COMES Plaintiff, Cindy Soles Smith, by and through undersigned counsel, pursuant to Rules 26, 33, 34, and 37 of the North Carolina Rules of Civil Procedure, and moves for an Order compelling Defendant XPO Logistics Freight, Inc. to respond fully, completely, and without objection to Plaintiff's First Interrogatories, First Requests for Production of Documents and Second Request for Production of Documents, and produce all documents responsive thereto and moving the Court for appropriate sanctions. In support of this Motion, Plaintiff states as follows:

    1.    This Action arises out of the horrific suffering and death of Mark Smith, who was tragically killed in a serious motor vehicle collision on U.S. 74 Alternate on October 11, 2023, in Robeson County involving a commercial vehicle owned by XPO – a shipping and transportation conglomerate based in Greenwich, Connecticut.

2.     Plaintiff served XPO with Plaintiff's First Interrogatories and First Request for Production of Documents and First Request for Admission on June 5, 2024. *(Plaintiff's Exhibit 1)*

3.     On June 27, 2024, XPO moved the Clerk for an extension of time to respond to Plaintiff's first set of discovery. *(Plaintiff's Exhibit 2)*

4.     The Clerk granted an Order enlarging the time for XPO to respond to Plaintiff's First Set of Interrogatories, First Request for Production and First Request for Admission to and including August 5, 2024. *(Plaintiff's Exhibit 3)*

5.     On August 6, 2024, XPO served its untimely responses to Plaintiff's First Interrogatories, First Request for Production of Documents and First Request for Admission. *(Plaintiff's Exhibit 4)*

6.     XPO's responses contained numerous improper objections and refusals to substantively answer, improper limitations of their responses and XPO improperly withheld clearly responsive documents and materials.

7.     On August 6, 2024, counsel for Plaintiff sent a detailed correspondence to counsel for XPO advising counsel for XPO of the consequences of its untimely discovery responses and requested supplementation – without objection – within 10 business days. *(Plaintiff's Exhibit 5)*

8.     On August 22, 2024, counsel for Plaintiff again sent a detailed correspondence to XPO advising of the improper objections and past-due discovery and further advised XPO that its objections were waived as a matter of law and again requested complete responses on or before August 30, 2024. *(Plaintiff's Exhibit 6)*

2

9.   On August 30, 2024, counsel for XPO requested another extension of time to fully respond to Plaintiff's discovery, as requested in the correspondence dated August 6, 2024 and August 30, 2024. In a show of good faith and cooperation, counsel for Plaintiff allowed this extension and moved the deadline to September 3, 2024. *(Plaintiff's Exhibit 7)*

10.   XPO served its First Supplemental Responses to Plaintiff's First Set of Interrogatories, First Request for Production of Documents and First Request for Admission on September 3, 2024. *(Plaintiff's Exhibit 8)*

11.   After reviewing the production and responses from XPO, on September 4, 2024, counsel for Plaintiff again advised counsel for XPO of the various ongoing discovery deficiencies — including the production of XPO's insurance policies, declaration pages, training materials, the employee handbook and basic shipping documents (e.g., Bill of Lading and Manifest). *(Plaintiff's Exhibit 9)*

12.   On October 10, 2024, counsel for Plaintiff sent counsel for XPO a detailed correspondence which requested supplemental discovery responses to the following specific request:

   a.  Request for Production 2 (request for the document retention policy of XPO);

   b.  Request for Production 3 and 4 (request for all insurance policies for XPO, including all excess policies);

   c.  Request for Production 6 (request for the Driver Qualification File, Driver Investigation File and Driver History File);

   d.  Request for Production 33 (email communications between Lamb and XPO for 90 days prior to the subject collision);

3

e. <u>Request for Production 34</u> (request for communications between XPO and Lamb from any onboard communication systems);

f. <u>Request for Production 35</u> (request for all onboard audio and visual telematics data and videos);

g. <u>Request for Production 40</u> (request for DVIR reports);

h. <u>Request for Production of 42</u> (request for basic shipping documents including the manifest, bill of lading and dispatch documents);

i. <u>Request for Production 46</u> (documents concerning preventability analysis completed on behalf of XPO and the conclusions of such analysis);

j. <u>Request for Production 55-59</u> (request for training materials that were provided to Defendant Lamb);

k. <u>Request for Production 60</u> (request for documents related to hierarchy of supervisors and management at XPO);

l. <u>Request for Production 61</u> (request for training documents provided to XPO employees) ;

m. <u>Request for Production 63-64</u> (request for contracts or agreements between XPO, its driver (Lamb) and any other entities involved in the subject transport);

n. <u>Request for Production 65</u> (request for XPO's "Accident Register" which is required to be maintained under federal law);

o. <u>Request for Production 66</u> (request for 30(b)(6) deposition transcripts from XPO corporate designee(s) for injury or death claims in last 5 years);

p. <u>Interrogatory 3</u> (information requested concerning injury and death claims

4

and lawsuits involving XPO);

q. Interrogatory 5 (seeking actual written responses to (a)-(g));

r. Interrogatory 6 (seeking actual written responses to (a)-(e));

s. Interrogatory 7 (seeking actual written responses to (a)-(e));

t. Interrogatory 12 (seeking actual written responses to (b)-(d));

u. Interrogatory 14 (seeking actual written responses to the question asked);

v. Interrogatory 15 (seeking actual written responses to the question asked);

w. Interrogatory 20 (seeking written responses to internal investigation documents referenced by XPO);

x. Interrogatory 22 (seeking actual written responses, not direction to documents referenced by XPO);

y. Interrogatory 26 (seeking written responses to internal investigation documents referenced by XPO);

z. Interrogatory 32 (seeking written responses to internal investigation documents referenced by XPO);

aa. Interrogatory 36 (seeking written responses concerning XPO's accident review board and preventability determination completed by XPO);

bb. Interrogatory 38 (seeking actual written responses concerning all liability insurance coverage for XPO)

13.    In the detailed correspondence of October 10, 2024, counsel for Plaintiff further requested supplementation of the following XPO Bates:

a. XPO – 000058

b. XPO – 000091

5

c.  XPO – 000109

14.    In the detailed correspondence of October 10, 2024, counsel for Plaintiff requested supplemental responses within 15 business days and once again certified that Plaintiff would seek the Court's intervention if substantive responses were not received in a timely manner. *(Plaintiff's Exhibit 10)*

15.    On October 22, 2024, counsel for Plaintiff served its Second Request for Production of Documents on XPO, which related specifically to telematics software used by XPO. *(Plaintiff's Exhibit 11)*

16.    On October 29, 2024, counsel for Plaintiff sent counsel for XPO a detailed correspondence again requesting the insurance coverage and declaration pages for XPO. In this letter, counsel for Plaintiff alternatively requested an affidavit from XPO concerning the existence of excess insurance coverage that would be potentially applicable to this wrongful death case. *(Plaintiff's Exhibit 12)*

17.    On November 1, 2024, as a final show of good faith and cooperation, counsel for Plaintiff sent counsel for XPO a detailed letter and *agreed to voluntarily limit the scope of its request for supplementation* with an updated due date of December 2, 2024. *(Plaintiff's Exhibit 13)*

18.    After multiple requests for further extensions of time by XPO, counsel for Plaintiff agreed to a new due date of December 23, 2024, for all supplemental discovery responses as it correlated with XPO's due date for responses to Plaintiff's Second Request for Production of Documents. *(Plaintiff's Exhibit 14)*

19.    On December 23, 2024, at 4:41pm, XPO served its responses to Plaintiff's November 1, 2024 supplementation request and also served its responses to Plaintiff's

6

Second Request for Production of Documents. *(Plaintiff's Exhibit 15)*

20.    As with all responses served by XPO in this litigation to date, XPO's responses contained numerous improper objections and refusals to provide relevant and discoverable documents and information. XPO also refused to produce responsive and discoverable documents, materials, and files requested which were related to the telematics systems on board the subject tractor trailer.

21.    On December 24, 2024, counsel for Plaintiff advised counsel for XPO that the responses to Plaintiff's Second Request for Production of Documents and the supplementation in response to the November 1, 2024 correspondence were both woefully insufficient and counsel for Plaintiff advised XPO that this Motion was forthcoming. *(Plaintiff's Exhibit 16)*

22.    Throughout this litigation, XPO has continually and egregiously violated their obligations to Plaintiff and to this Court under the North Carolina Rules of Civil Procedure. XPO has exhibited a pattern of doing so, despite many attempts by Plaintiff's counsel to resolve these issues without judicial intervention.

23.    Plaintiff filed a Motion to Compel Against Defendant XPO on January 2, 2025 that was heard by this Court on January 13, 2025. *(Plaintiff's Exhibit 17)*

24.    This Court entered an Order on January 21, 2025 compelling Defendant XPO to respond fully to certain discovery – specifically set forth in the Order – within 30 days. *(Plaintiff's Exbibit 18)*

25.    On February 25, 2025 and February 26, 2025, past the deadline set by this Court in the Order dated January 21, 2025, Defendant XPO served their supplemental discovery responses that were woefully inadequate. *(Plaintiff's Exhibit 19)*

26.     Plaintiff attempted to confer with Defendant XPO on February 24, 2025 but has not received complete supplementation from Defendant XPO as required by the Order entered by this Court on January 21, 2025. *(Plaintiff's Exhibit 20)*

27.     Defendant XPO has continually, intentionally and egregiously violated their obligations to the Plaintiff and to this Court under the North Carolina Rules of Civil Procedure. Defendant XPO has exhibited a deliberate and calculated pattern of doing so despite many attempts by Plaintiff's counsel to resolve these issues without judicial intervention. Plaintiff is unable to effectively prosecute her claims without the highly relevant materials being withheld by Defendant XPO.

28.     Pursuant to N.C.G.S. § 1A-1, Rule 37(d), Defendant XPO is subject to sanctions by this Court for the failure to comply with this Court's Order. Plaintiff therefore moves the Court to issue any sanction available pursuant to Rule 37(b)(2) for these failures, including but not limited to:

  a. An order compelling Defendant XPO to appear and show cause as to why they should not be held in contempt by the Court;

  b. An order taxing Defendant XPO with all costs incurred by the Plaintiff in this Action;

  c. An order taxing Defendant XPO with reasonable attorney's fees incurred by Defendant XPO's refusal to participate in discovery as required by the North Carolina Rules of Civil Procedure; and

  d. An order granting Plaintiff with such other and further relief against Defendant XPO available pursuant to Rules 26 and 37 of the North Carolina Rules of Civil Procedure in the discretion of the Court.

8

WHEREFORE, Plaintiff moves this Court for an Order pursuant to Rule 37(a) of the North Carolina Rules of Civil Procedure:

1.    Compelling Defendant XPO to fully answer Plaintiff's First Interrogatories, First Requests for Production of Documents and Second Request for Production of Documents without objection;

2.    Compelling Defendant XPO to produce all documents responsive to Plaintiff's First Interrogatories, First Requests for Production and Second Request for Production without objection;

3.    Compelling Defendant XPO to appear and show cause as to why they should not be held in contempt by the Court;

4.    Overruling all Defendant XPO's objections contained within its Responses to Plaintiff's First Interrogatories, First Requests for Production of Documents and Second Request for Production of Documents;

5.    Taxing Defendant XPO with all costs incurred by the Plaintiff in this Action;

6.    Taxing Defendant XPO with reasonable attorney's fees incurred by said Defendants' refusal to participate in discovery as required by the North Carolina Rules of Civil Procedure; and

7.    For any further relief available under Rule 37(a) and/or Rule 37(b) – including sanctions – that the Court deems appropriate in the interests of justice given the continued disregard to which Defendant XPO has had to its obligations to participate in discovery in this Action.

*[Signature on Next Page]*

9

This the 26th day of February, 2025.

MUSSELWHITE, MUSSELWHITE,
BRANCH & GRANTHAM, P.A.

J. William Owen, NC Bar # 47994
P.O. Box 1448
Lumberton, NC 28359
Telephone: (910) 738-5277
Facsimile: (910) 738-3678
wowen@mmbglaw.com
*Counsel for Plaintiff*

10

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing *PLAINTIFF'S SECOND MOTION TO COMPEL AGAINST DEFENDANT XPO, NOTICE OF HEARING and CALENDAR REQUEST* was served upon all parties by email and U.S. mail to the following:

Megan M. Stacy
Austin Kessler
Gordon Rees Scully Mansukhani, LLP
150 Fayetteville St., Suite 1120
Raleigh, NC 27602
mstacy@grsm.com
lbyrd@grsm.com
*Counsel for Defendant XPO Logistics Freight, Inc. and Defendant Lamb*

Jennifer Welch
Cranfill Sumner
P.O. Box 27808
Raleigh, NC 27611-7808
JWelch@cshlaw.com
*Counsel for Counterclaim Defendant Cindy Smith, Adminsitratrix of the Estate of Mark K. Smith.*

This the 26th day of February, 2025.

MUSSELWHITE, MUSSELWHITE,
BRANCH & GRANTHAM, P.A.

J. William Owen
NC State Bar No. 47994
606 N. Elm Street
Lumberton, NC 28358
wowen@mmbglaw.com
*Counsel for Plaintiff*

STATE OF NORTH CAROLINA
COUNTY OF ROBESON

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
24-CVS-468

CINDY SOLES SMITH, Administratrix of the
ESTATE OF MARK KEANNAN SMITH,

              Plaintiff/Counterclaim-
              Defendant,

v.

WILLIAM BRATTY LAMB,

              Defendant,

and

XPO LOGISTICS FREIGHT, INC.

              Defendant/Counterclaim-
              Plaintiff.

ANSWER, DEFENSES, AND
COUNTERCLAIM OF
XPO LOGISTICS FREIGHT INC. TO
FIRST AMENDED COMPLAINT

Defendant XPO Logistics Freight, Inc. ("XPO" or "Defendant") responds as follows to the Complaint filed against it by Plaintiff Cindy Soles Smith ("Plaintiff"), denying the claims asserted and the relief sought therein as set forth below:

*Parties and Jurisdiction*

1.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 1 of Plaintiff's Complaint, and such allegations are therefore denied.

2.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 2 of Plaintiff's Complaint, and such allegations are therefore denied.

3.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 3 of Plaintiff's Complaint, and such allegations are therefore

denied.

4.     Defendant admits the allegations of Paragraph 4.

5.     Defendant admits the allegations of Paragraph 5.

6.     The allegations of Paragraph 6 state conclusions of law as to which no response is required. To the extent any further response may be deemed required, Defendant does not dispute that venue is proper in Robeson County.

7.     The allegations of Paragraph 7 state conclusions of law as to which no response is required. To the extent any further response may be deemed required, Defendant does not dispute that this Court has subject matter jurisdiction. Except as expressly admitted, Defendant denies the allegations of Paragraph 7.

8.     The allegations of Paragraph 8 state conclusions of law as to which no response is required. To the extent any further response may be deemed required, Defendant does not dispute that this Court has personal jurisdiction over Defendants.

*Statement of the Facts*

9.     Defendant incorporates the previous paragraphs of its Answer as if fully stated herein.

10.     Defendant admits that on October 11, 2023 Defendant William Bratty Lamb ("Lamb") was operating a 2016 Freightliner tractor trailer owned by XPO. Defendant further admits that Lamb was driving in Lumberton County and was later involved in a collision. Additionally, Defendant admits that Mark Smith ("Smith" or "Decedent") drove his truck into the tractor trailer owned by XPO. Defendant further admits that Lamb was acting in the course and scope of his employment for Defendant at the time of the events alleged in Plaintiff's Complaint. Except as expressly admitted, Defendant denies the allegations of Paragraph 10.

11. Defendant admits the allegations of Paragraph 11.

12. Defendant admits the allegations of Paragraph 12.

13. Defendant admits the allegations of Paragraph 13.

14. Defendant admits the allegations of Paragraph 14.

15. Defendant admits the allegations of Paragraph 15.

16. Defendant admits the allegations of Paragraph 16.

17. Defendant admits that on October 11, 2023 Lamb was operating a 2016 Freightliner tractor trailer owned by XPO. The remaining allegations of Paragraph 17 state conclusions of law as to which no response is required. To the extent any further response is deemed required, Defendant admits that it is subject to certain North Carolina and federal laws, that such laws and regulations speak for themselves, and Defendant denies any allegations inconsistent therewith. Except as stated, denied.

18. Defendant admits the allegations of Paragraph 18.

19. Defendant admits that on October 11, 2023 Lamb was operating a 2016 Freightliner tractor trailer owned by XPO around 7:00am. Defendant admits that Lamb was acting in the course and scope of his employment for Defendant at the time of the events alleged in Plaintiff's Complaint. Defendant further admits that XPO Logistics Freight, Inc's terminal is located at 4715 W. 5th Street, Lumberton, North Carolina 28358. Except as expressly admitted, Defendant denies the allegations of Paragraph 19.

20. The allegations of Paragraph 20 state conclusions of law as to which no response is required. To the extent any further response may be deemed required, Defendant admits that Lamb was acting in the course and scope of his employment for Defendant at the time of the events alleged in Plaintiff's Complaint. Except as expressly admitted, Defendant denies the allegations of

Paragraph 20.

21.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 21 of Plaintiff's Complaint, and such allegations are therefore denied.

22.     Defendant admits that it was around 7:00am when the incident occurred. Defendant further admits that it was a clear day with good visibility. Except as expressly admitted, Defendant denies the remaining allegations in Paragraph 22.

23.     Defendant admits that Smith was traveling west on US-74 Alternate in the left lane at a rate higher than the posted speed limit. Except as expressly admitted, Defendant denies the allegations of Paragraph 23.

24.     Defendant denies the allegations of Paragraph 24.

25.     Defendant admits that Lamb completed a written statement to the Lumberton Police Department on October 11, 2023, and the contents of it speak for themselves. Except as expressly admitted, Defendant denies the allegations of Paragraph 25.

26.     Defendant denies the allegations of Paragraph 26.

27.     Defendant denies the allegations of Paragraph 27.

28.     Defendant denies the allegations of Paragraph 28.

29.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 29 of Plaintiff's Complaint, and such allegations are therefore denied.

*First Claim of Relief*
*Negligent, Grossly Negligent, Reckless, Willful and Wanton Conduct of William Bratty*
*Lamb, Imputed to XPO*
*(XPO)*

30.     Defendant incorporates the previous paragraphs of its Answer as if fully stated

herein.

31.    The allegations of Paragraph 31 state conclusions of law as to which no response is required. To the extent any further response may be deemed required, Defendant admits it owes certain duties of care and denies any allegations inconsistent with applicable law. Except as expressly admitted, Defendant denies the allegations of Paragraph 31.

32.    Defendant denies the allegations of Paragraph 32.

33.    The allegations of Paragraph 33 state conclusions of law as to which no response is required. To the extent any further response may be deemed required, Defendant admits that on October 11, 2023 Lamb was operating a 2016 Freightliner tractor trailer owned by XPO. Defendant further admits that Lamb was driving in Lumberton County and was later involved in a collision. Additionally, Defendant admits that Smith drove his truck into the tractor trailer owned by XPO. Defendant further admits that Lamb was acting in the course and scope of his employment for Defendant at the time of the events alleged in Plaintiff's Complaint. Except as expressly admitted, Defendant denies the allegations of Paragraph 33.

34.    Defendant denies the allegations of Paragraph 34.

35.    Defendant denies the allegations of Paragraph 35.

36.    Defendant denies the allegations of Paragraph 36.

37.    The allegations of Paragraph 37 state conclusions of law as to which no response is required. To the extent any further response may be deemed required, Defendant admits that Lamb was acting in the course and scope of his employment for Defendant at the time of the events alleged in Plaintiff's Complaint. Except as expressly admitted, Defendant denies the allegations of Paragraph 37.

*Second Claim for Relief*
*Punitive Damages Against Defendant William Bratty Lamb and Defendant XPO Logistics*

38.     Defendant incorporates the previous paragraphs of its Answer as if fully stated herein.

39.     Defendant denies the allegations of Paragraph 39.

40.     The allegations of Paragraph 40 state conclusions of law as to which no response is required. To the extent a response is deemed required, Defendant denies that Plaintiff is entitled to relief for the allegations stated.

41.     Defendant denies the allegations of Paragraph 41.

42.     Defendant denies the allegations of Paragraph 42.

43.     Defendant denies the allegations of Paragraph 43.

*Third Claim for Relief*
*Negligent Hiring, Negligent Supervision, Negligent Training, Negligent Retention,*
*Negligent Entrustment Claims Against Defendant XPO Logistics.*

44.     Defendant incorporates the previous paragraphs of its Answer as if fully stated herein.

45.     The allegations of Paragraph 45 state conclusions of law as to which no response is required. To the extent any further response may be deemed required, Defendant admits that it owes certain duties under applicable law and denies any allegations inconsistent therewith. Defendant denies the allegations of Paragraph 45 to the extent it purports to allege that Defendant did not comply with any duty owed under North Carolina law. Except as expressly admitted, Defendant denies the allegations of Paragraph 45.

46.     Defendant denies the allegations of Paragraph 46.

47.     Defendant denies the allegations of Paragraph 47.

48.     Defendant denies the allegations of Paragraph 48.

49.     Defendant denies the allegations of Paragraph 49.

No further response is required to the "WHEREFORE" or Prayer for Relief in Plaintiff's Complaint, but Defendant specifically denies that Plaintiff is entitled to any relief requested or any other relief at law or in equity. Any and all allegations of Plaintiff's Complaint that are not expressly admitted herein are denied.

## First Defense

One or more of Plaintiff's claims should be dismissed with prejudice pursuant to 12(b)(6) of the North Carolina Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

## Second Defense

To the extent that it is shown that Smith was negligent by failing to exercise reasonable care for his own safety or as otherwise shown during discovery in this action, and such negligence was a proximate cause of Plaintiff's alleged injuries, Plaintiff is completely barred from recovery from XPO.

## Third Defense

At all times relevant to the Complaint, XPO's actions were lawful and conducted in accordance with all applicable duties, laws, and regulations.

## Fourth Defense

Plaintiff's claims against Defendant may be barred, in whole or in part, by doctrines of intervening/superseding negligence. Plaintiff's alleged injuries, damages, or losses were directly and/or proximately caused by the intervening, superseding acts and conduct of others over whom XPO had no control, thereby precluding any recovery against XPO.

## Fifth Defense

To the extent that Plaintiff suffered any damages, which is expressly denied, Plaintiff's

damages are subject to mitigation and are barred, in whole or in part, by any failure to mitigate such damages.

### Sixth Defense

Defendant XPO denies that it was negligent in any manner or that any negligent act or omission on its part caused or contributed to any injuries or damages alleged to have been sustained by Plaintiff, the existence of which is denied.

### Seventh Defense

Defendant XPO states that Plaintiff's claims are barred, in whole or in part, by lack of causation, and the same is pled as a bar to Plaintiff's claims against XPO.

### Eighth Defense

Smith had an opportunity to avoid the collision and failed to do so; such failure is imputed to Smith.

### Ninth Defense

Defendant reserves the right to supplement and/or amend this Answer to assert additional defenses that may be revealed through further investigation and discovery.

### COUNTERCLAIM

Defendant/Counterclaim Plaintiff XPO Logistics Freight Inc. ("XPO") brings these counterclaims against Plaintiff/Counterclaim Defendant Cindy Soles Smith ("Counterclaim Defendant") seeking monetary and equitable relief for Decedent Mark Smith's ("Smith") damage to XPO's vehicle in connection with the October 11, 2023 accident. XPO has incurred significant fees in repairing its vehicle and now brings this Counterclaim and in support shows as follows:

## PARTIES

1.    Counterclaim Plaintiff XPO is a corporation organized and existing under and by virtue of the laws of the State of Delaware and authorized to do business the State of North Carolina.

2.    Upon information and belief, Counterclaim Defendant Cindy Soles Smith has applied for, and has been duly appointed as, Administratrix of the Estate of Mark Keannan Smith by Brunswick County Clerk of Superior Court. Further, and upon information and belief, Counterclaim Defendant is a citizen and resident of Brunswick County, North Carolina.

## JURISDICTION AND VENUE

3.    This Court has subject matter jurisdiction over this action pursuant to N.C. Gen. Stat. §§ 7A-240 and 7A-243.

4.    This Court has personal jurisdiction over Counterclaim Defendant in this matter pursuant to N.C. Gen. Stat. § 1-75.4.

5.    Venue is proper in this Court pursuant to N.C. Gen. Stat. §§ 1-79 and 1-82.

## FACTUAL ALLEGATIONS

6.    On October 11, 2023, Smith was operating a 2018 Chevrolet pickup truck.

7.    Further, and on October 11, 2023, around 7:00am traffic was light and it was a clear day with good visibility.

8.    While traveling on US-74 in Lumberton County, North Carolina, Smith crashed into XPO's truck (the "Accident") while traveling at a speed higher than the posted speed limit.

9.    Upon information and belief, the brakes in the 2018 Chevrolet were operable on or around 7:00am on October 11, 2023.

10.    Following the Accident, no tire marks were found in the road indicating that

Smith's brakes were being applied five (5) to forty (40) feet away from where he crashed into XPO's truck.

    11.    XPO's truck was damaged when Smith crashed into XPO's truck, which was being operated by Defendant William Lamb ("Lamb").

## CLAIMS FOR RELIEF

### Count-One – Negligence
*Cindy Smith as Administratrix of the Estate of*
*Mark Keannan Smith*

    12.    The allegations contained in the prior paragraphs are hereby re-alleged and incorporated by reference as if fully set forth herein.

    13.    On October 11, 2023, Smith owed a duty of reasonable care to those lawfully on the roadway, including but not limited to Lamb, to operate the subject commercial motor vehicle in a reasonable manner.

    14.    On October 11, 2023, Smith operated the 2018 Chevrolet vehicle in a negligent, reckless, and careless manner endangering the lives of those lawfully on the roadway, including but not limited to Lamb.

    15.    Specifically, Smith was negligent, grossly negligent, reckless, and careless in that Smith:

        a.    Operated a motor vehicle in a negligent, reckless, and careless manner endangering the lives of those lawfully on the roadway in violation of N.C. Gen. Stat. § 20-140 and 49 C.F.R. 393, *et seq.*;

        b.    Operated a motor vehicle without due caution and circumspection and in a manner as to endanger persons or property in violation of N.C. Gen. Stat. § 20-140 and 49 C.F.R. 393, *et seq.*;

c.    Negligently, recklessly, and carelessly drove a motor vehicle into a highway and failed to stop when Lamb was entering the highway;

d.    Drove carelessly in a manner ignoring the rights and safety of others in violation of N.C. Gen. Stat. § 20-141.6 and 49 C.F.R. 393, *et seq.*; and

e.    Negligently failed to maintain a proper lookout in violation of N.C. Gen. Stat. § 20-141 and 49 C.F.R. 393, *et seq.*

16.    As a direct and proximate result of the negligent, reckless, and careless conduct of Smith, XPO's truck was significantly damaged.

## Relief Requested

Having fully responded to the allegations of Plaintiff's Complaint, XPO respectfully requests this Court to award it the following relief:

1.    That Plaintiff take nothing of and from Defendant;

2.    That Plaintiff's claims against Defendant be dismissed with prejudice;

3.    That this Court enter judgment in favor of Defendant/Counterclaim Plaintiff XPO for all compensatory damages, in an amount to be determined at trial, but in any event in excess of $25,000.00;

4.    That the costs of this action be taxed against Plaintiff;

5.    That Defendant recovers its attorney's fees in connection with this action as permitted by law;

6.    That Defendant have a trial by jury of all issues so triable; and

7.    That Defendant be awarded such further and additional relief as the Court may deem just and proper.

This the 20th day of March, 2024.

Gordon Rees Scully Mansukhani, LLP

By: _____

Megan M. Stacy
North Carolina Bar No. 47108
Le'Ron A. Byrd
North Carolina Bar No. 55732
150 Fayetteville Street, Suite 1120
Raleigh, NC 27602
Phone: 919-787-4555
Fax: 919-741-5840
E-mail: mstacy@grsm.com
E-mail: lbyrd@grsm.com
*Counsel for Defendant XPO Logistics
Freight, Inc. and William Lamb*

# CERTIFICATE OF SERVICE

This is to certify that I caused the foregoing **ANSWER, DEFENSES, AND COUNTERCLAIM OF XPO LOGISTICS FREIGHT, INC. TO FIRST AMENDED COMPLAINT** be filed and served upon all counsel of record by email pursuant to Rule 5 of the North Carolina Rules of Civil Procedure addressed as follows:

J. William Owen
Musselwhite, Musselwhite, Branch & Grantham, P.A.
P.O. Box 1448
Lumberton, NC 28359
wowen@mmbglaw.com
*Counsel for Plaintiff*

This the 20th day of March, 2024.

Gordon Rees Scully Mansukhani, LLP

By

Le'Ron A. Byrd

# REQUESTS FOR ADMISSION

1. Admit that the DOT number for XPO is 241829.

   **RESPONSE: Admitted**

2. Admit that the MC ICC number for XPO is 165377.

   **RESPONSE: Admitted**

3. Admit that Decedent Mark Smith is a member of the public.

   **RESPONSE: Denied**

4. Admit that XPO was involved in intrastate transport at the time of the Subject Incident.

   **RESPONSE: Admitted**

5. Admit that XPO was involved in interstate transport at the time of the Subject Incident.

   **RESPONSE: Admitted**

6. Admit that XPO is a "motor carrier" as defined by the Federal Motor Carrier Safety Regulations.

   **RESPONSE: Objection.** Defendant objects to this Request for Admission to the extent it calls for a legal conclusion. Subject to and without waiving these objections, admitted.

7. Admit that XPO was a motor carrier as defined by the Federal Motor Carrier Safety Regulations at the time of the Subject Incident.

   **RESPONSE: Objection.** Defendant objects to this Request for Admission to the extent it calls for a legal conclusion. Subject to and without waiving these objections, admitted.

8. Admit that on October 11, 2023, XPO was the owner of a tractor involved in the Subject Incident.

   **RESPONSE: Admitted**

9. Admit that on October 11, 2023, XPO was the owner of a trailer involved in the Subject Incident.

   **RESPONSE: Admitted**

48

10. Admit that the tractor-trailer, VIN 3AKBGADV9GSHB2477, was involved in the Subject Incident.

RESPONSE: Admitted

11. Admit that on October 11, 2023, William Lamb was an agent of XPO.

RESPONSE: Objection. Defendant objects to this Request for Admission to the extent it calls for a legal conclusion. Subject to and without waiving these objections and to the extent any response is deemed required, Defendant admits that William Lamb worked for XPO on October 11, 2023 as a commercial driver.

12. Admit that on October 11, 2023, William Lamb was an employee of XPO.

RESPONSE: Admitted

13. Admit that at the time of the Subject Incident, William Lamb was acting within the course and scope of his employment or agency with XPO.

RESPONSE: Objection. Defendant objects to this Request for Admission to the extent it calls for a legal conclusion. Subject to and without waiving these objections and to the extent any response is deemed required, Defendant admits that William Lamb worked for XPO on October 11, 2023 as a commercial driver.

14. Admit that on October 11, 2023, William Lamb was operating the tractor-trailer owned by XPO.

RESPONSE: Admitted

15. Admit that on October 11, 2023, William Lamb was operating the tractor-trailer with the permission of XPO.

RESPONSE: Admitted

16. Admit that on October 11, 2023, William Lamb was operating the tractor-trailer with the knowledge of XPO.

RESPONSE: Admitted

17. Admit that on October 11, 2023, William Lamb was operating the tractor-trailer as trained by XPO.

49

RESPONSE: Admitted

18. Admit that on October 11, 2023, William Lamb was not operating the tractor-trailer as trained by XPO.

RESPONSE: Denied

19. Admit that William Lamb is fully responsible for causing the Subject Incident.

RESPONSE: Denied

20. Admit that William Lamb was a professional driver on the date and time of the Subject Incident.

RESPONSE: Admitted

21. Admit that XPO is properly named in the Complaint.

RESPONSE: Admitted

22. Admit that venue is proper in Robeson County Superior Court.

RESPONSE: Objection. Defendant objects to this Request for Admission to the extent it calls for a legal conclusion. Subject to and without waiving these objections, admitted.

23. Admit that jurisdiction is proper in this Court.

RESPONSE: Objection. Defendant objects to this Request for Admission to the extent it calls for a legal conclusion. Subject to and without waiving these objections, admitted.

24. Admit that service was proper upon XPO.

RESPONSE: Admitted

25. Admit that the person answering these questions has authority from XPO to do so.

RESPONSE: Admitted



1/24/2025 9:56 AM
02-CV-2023-900747.00
CIRCUIT COURT OF
MOBILE COUNTY, ALABAMA
ASHLEIGH LONG, CLERK

## IN THE CIRCUIT COURT OF MOBILE COUNTY, ALABAMA

| | | |
|---|---|---|
| **SONJA RENAE CAFFEY;** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **CIVIL ACTION NO.** |
| **v.** | * | |
| | * | **CV-2023-900747** |
| **DWIGHT RICHARD WESTFALL, II; et al.;** | * | |
| | * | |
| **Defendants.** | * | |

### PLAINTIFF'S MOTION TO COMPEL

Defendants have failed to provide Plaintiff with a full and complete copy of the limits of their liability insurance coverages, despite repeated requests for such information. Plaintiff seeks an order compelling production of such obviously discoverable information and further seeks sanctions for what can only be described as a willful disregard of a key discovery rule. In further support, Plaintiff shows as follows:

### FACTUAL BACKGROUND

1.  As the Court may recall, this case arises from an April 3, 2023, collision between the Defendants' 18-wheeler and the Plaintiff, who was a pedestrian walking across the street on a green light at the time.

2.  Plaintiff's injuries are catastrophic to say the least. Her current BCBS subrogation lien exceeds $446,000.00. Plaintiff's life-care planner estimates that her future care needs will exceed $2,000,000.00. Plaintiff's pain, mental anguish, and loss of future use are nearly incalculable given all she has been through.

3.  As part of Plaintiff's initial discovery requests, she sought to obtain ALL possible sources and amounts of liability insurance coverage. Requests 2 and 3 asked for the following information:

2. Do you have liability insurance of any type (including excess and/or umbrella insurance) that may conceivably provide coverage relative to the allegations and events described in the Complaint? If so, please produce complete copies of all such insurance policies, including any and all references to policy limits.

3. Do you have any self-insured retention relative to any insurance identified in your response(s) to these discovery requests? If so, please state the amount.

4. In response, the Defendants produced a Declarations page from Chubb Group of Insurance Companies setting forth $REDACTED[1] amount of insurance coverage.

5. During the 30(b)(6) deposition of XPO's corporate representative, Plaintiff's counsel specifically inquired into the amount of insurance to ensure that all available insurance was known. Defendants advised, through their counsel, that the amounts set forth in the declarations page previously provided were correct and that there was no additional insurance coverage.

```
 6    Q. Mr. Reed, when we were taking a
 7  break, we were going over the "Declarations
 8  Page" for how much insurance coverage there
 9  applies, and it's my understanding that
10  there is $          of total insurance
11  coverage that applies in this case; is that
12  correct?
13    A. I don't have any knowledge of how
14  the insurance works.
15    Q. Okay.
16      MR. SMALLEY: I just need to get
17  something on the record to that.
18      MR. MARCHAND: Yeah, our
19  understanding, and based on some
20  confirmation, is that there's a total
21  coverage of               SRI. So
22  it's a            policy.
```

---

[1] All references to the amount of coverage have been redacted herein.

2

Deposition of Christopher Reed, 89/6-22.

6.  Subsequently, it has been determined that XPO does indeed have additional layers or towers of insurance coverage that it failed to produce to Plaintiff. No reason or justification has been provided for the blatant failure to comply with Alabama's procedural rules and requirements, nor could any exist.

## LEGAL ARGUMENT

### I.  The Defendants' Insurance Agreements Are Obviously Discoverable.

This matter is governed by Rule 26(b)(3) of the *Alabama Rules of Civil Procedure*, which states:

> (3) INSURANCE AGREEMENTS. A party may obtain discovery of the existence and contents of any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment that may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment. Information concerning the insurance agreement is not by reason of disclosure admissible in evidence at trial. For purposes of this paragraph, an application for insurance shall not be treated as part of an insurance agreement.

Plaintiff is obviously entitled to know about the "existence and contents of ANY insurance agreement" that may cover the damages in this case. As Champ Lyons, Jr. notes in *Alabama Rules of Civil Procedure Annotated* §26.13 – Discoverability of Insurance (3d ed. 1996), past debates about the discoverability of the defendant's liability coverage became "academic" with the amendment of Rule 26(b)(2) in 1995. This amendment specifically and explicitly "permits discovery of the limits of insurance coverage." Or, in the words of the *Alabama Court of Civil Appeals,* "the limits of [the defendants'] insurance policy [are] discoverable." *Phillips v. Winsett*, 717 So. 2d 818, 821 (Ala. Civ. App. 1998); *and Ex parte Badham*, 730 So. 2d 135 (Ala. 1999) ("We hold that Rule 26(b)(2), *Ala. R. Civ. P.*, does provide for the discovery of the policy limits."). A defendant does NOT get to pick and choose which insurance agreements will be produced.

3

Plaintiff is rightfully concerned about this egregious and intentional disregard of the discovery process.

There is simply no way that the Defendants did not know of the need to produce all available insurance policies. Plaintiff requested this information in her initial discovery responses. Plaintiff asked about it during the corporation's deposition. There was a brief recess of the deposition so that this question could be answered. It now appears that, despite answering twice on the record, under oath, that there was a set amount of insurance, the Defendants have hidden possible coverages.

## II. Request To Compel Production And For Sanctions Against XPO.

### A. The Court must compel Defendants to produce all insurance coverages.

Pursuant to Rule 37, *Alabama Rules of Civil Procedure*, Plaintiff requests an Order compelling Defendants to produce all of their available insurance coverages. This information is discoverable, was requested, and yet it has not been produced in full. Plaintiff attempted to resolve this matter without Court intervention by asking for such information on the record in a deposition and discussing this very issue with opposing counsel, again – entirely on the record. When a party's sworn responses and statements in a deposition cannot be relied upon, the opposing party is left with nothing else to do but ask the Court to enforce the rules.

### B. Sanctions are required in this instance.

Additionally, though, considering the nature of this violation, Plaintiff further asks the Court to enter an Order sanctioning XPO pursuant to Rule 37(a)(4). The information requested is clearly discoverable. The information was clearly requested both in writing and during XPO's deposition. The information is necessary to pursue this matter, to negotiate the claim, and to

4

prepare the case for settlement or trial. It is vital for both parties to know the exact amount of insurance coverage, which is why that information is discoverable in the first place.

In *Phillips v. Winsett*, 717 So. 2d 818 (Ala. Civ. App. 1998), the Alabama Court of Civil Appeals affirmed a trial court's entry of sanctions against a defendant for failing and refusing to provide information regarding his insurance limits. In that case, decided three years after Rule 26(b)(2) was amended, the Court noted that the amount of liability insurance was discoverable and that sanctions were due to be entered for the defendant's failing to provide such information to plaintiff. As a result, the trial court's entry of $1,350.00 in sanctions was deemed appropriate.

In this case, much stronger sanctions are due to be entered than mere attorney's fees. Unlike the defendant in *Phillips*, who could argue that the amendment to Rule 26(b)(2) was new and thus unclear or inapplicable, discovery of insurance limits has been the law of the land in this state for 30 years now. Additionally, unlike the defendant in *Phillips*, XPO is a sophisticated entity doing business all across the nation while counseled by excellent attorneys (both in-house and outside counsel) who know the applicable rules. It is simply unfathomable that XPO would not know of the importance of providing this information to Plaintiff. And what is worse is that XPO had multiple opportunities to fix this error and yet consistently failed to correct the record. In such instances, sanctions are not just appropriate but required.

Here, Plaintiff requests as a sanction that the Defendants' Answer be struck in its entirety. Plaintiff has previously moved to strike certain of the Defendants' affirmative defenses on account of the lack of any duty on the part of the Plaintiff to avoid being run over when walking across a street on a green light. By hiding the total amount of insurance coverage on multiple occasions, failing to correct the record in this regard, and blatantly ignoring a basic requirement of our

5

procedural rules, XPO is attempting to flout the rules that allow both sides a fair bite at the apple. Under such circumstances, strong sanctions are not just appropriate, they are required.

## CONCLUSION

In light of the above, Plaintiff respectfully requests an Order granting this motion, compelling the Defendants to provide ALL applicable liability insurance information, and such other or further relief that the Court finds appropriate in this case.

Respectfully submitted,

/s/ Jack Smalley III
JACK SMALLEY III     (SMA014)
*Attorney for Plaintiff*

LONG & LONG, PC
3600 Springhill Memorial Drive N
Mobile, Alabama 36608
T: (251) 445-6000
F: (251) 445-0282
Trip@longandlong.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of January 2025, a copy of the foregoing has been electronically filed with the Clerk of the Court using the AlaFile e-filing system, which will send notification of such filing to the following:

Chad C. Marchand, Esq.
DeLashmet Marchand, P.C.
P.O. Box 2047
Mobile, Alabama 36652
*Attorney for Defendants*

/s/ Jack Smalley III
JACK SMALLEY III

6

# Business Ethics Policy
## Record Retention Policy



"*Driven by Integrity*"

HQL-0350 (10/15)

XPO - 001629

# 1 Purpose

During the conduct of Company business, certain records must be maintained for referral purposes as specified by applicable law and/or contract requirements. The purpose of the Record Retention Guide (the "Guide") is to help the Company reduce the cost of record-keeping and to ensure that those records that have outlived their usefulness are destroyed and those records that may be useful for further reference are retained appropriately and stored economically. This Guide provides for the systematic review, retention and destruction of certain records.

The primary goal of this Guide is to ensure that guidelines are in place to effectively manage the information generated and received by the Company and to reduce the expense and risk of liability associated with the maintenance of this information. Therefore, this Guide and the associated Record Retention Schedule(s) (the "Schedule(s)") shall identify specific records to be preserved for an applicable retention period. The Schedule(s) may not cover all of the records generated or received by the Company. For records that are not specifically covered by the Schedule(s), the following Policy and Exceptions should be used as a guide to help decide whether to retain or destroy the records in question.

This Guide and the following policy are applicable to all XPO Logistics, Inc. employees who were employees of any entity or business unit in the former Con-way family of companies, including the entities formerly called Con-way Inc., Menlo Worldwide, LLC, Con-way Freight Inc., Con-way Truckload Inc., Con-way Enterprise Services Inc., Con-way Multimodal Inc., Con-way Manufacturing and each of their respective former subsidiaries (collectively referred to as "Company" throughout this policy).

Due to XPO Logistics' recent acquisition of the Con-way family of companies, there may be more than one policy that could apply to a particular employee or situation. In any situation where more than one policy could apply, employees, including officers, should adhere to the requirements of all applicable policies. If it's not possible to comply with all applicable policies, consult with the Legal Department or Compliance Office for further guidance.

# 2 Policy

It is the Company's policy and practice to maintain complete, accurate and high-quality records. Records are to be retained for the period of their immediate business use, unless longer retention is required for historical reference, contractual or legal requirements, or for other purposes as set forth in this Guide.

Records that are no longer required and have satisfied their required periods of retention should be destroyed in an appropriate manner.

Specific requirements, responsibilities and retention periods applicable to the Company's records are described in this Guide. Copies of this Guide are available from the Company's Legal department or on the Company's intranet.

The Company's Internal Audit department oversees compliance with this Guide and will conduct periodic compliance audits to ensure the Guide and the Schedule(s) are being adhered to.

All employees are responsible for ensuring accurate and complete records are identified, retained, stored, protected and subsequently destroyed, within their area of responsibility and in accordance with the requirements outlined in this Guide.

XPO - 001830

## 3   Exceptions

Records must be retained for a longer period than specified herein if the requirements of one or more of the following exceptions are met:

> - Relevant federal or state statutes and/or regulations require a longer retention period than specified for the record(s) in question;
> - The record(s) in question must be retained longer than specified as necessary to fulfill the Company's or subsidiary's specific business purpose;
> - Notification is received from management that ongoing litigation and/or cooperation with a governmental agency require the record(s) in question be retained for a longer period than specified.

## 4   Questions

Questions regarding the content of this Guide or the Schedule(s) should be directed to the Company's Legal department.

## 5   Guidelines for Retention of Correspondence and Internal Memoranda

As a general rule, correspondence should not be retained for longer than one year past its period of immediate business use. However, correspondence may be retained for a shorter or longer period of time if it meets any of the following criteria. The term "correspondence," as used herein, means paper as well as electronic correspondence (including, but not limited to, email and instant messaging):

### 5.1   Correspondence to be Destroyed within 30 Days
Unimportant correspondence that requires no acknowledgement or follow-up, or any correspondence of inconsequential subject matter to which no further reference will be necessary, including duplicate correspondence.

### 5.2   Correspondence to be Destroyed within One Year
Correspondence that has no business value or purpose within a reasonable period of time, such as correspondence of various types that might be referred to shortly after it is sent or received, but that soon cease to have a business value or purpose.

### 5.3   Correspondence to be Retained for the Life of the Principal Record It Supports
If the correspondence materially supports a record that is being retained under the Record Retention Schedule, then the supporting correspondence should be retained for the same period of time as the principal record it supports. Examples might include correspondence pertaining to patents, copyrights, exports, licensing agreements, bills of sale or permits; correspondence that constitutes all or a part of a contract, or that is important in the clarification of certain points in a contract; correspondence denying liability of the Company; and transmittals or cover sheets that support the principal record by proving the date and/or time of transmittal or receipt where such proof may be necessary for legal or contractual reasons.

### 5.4   Correspondence to be Retained under the Record Retention Schedule
If the correspondence is itself a record that is required to be retained under the Record Retention Schedule, then the correspondence must be retained in accordance with the Schedule. For example, correspondence relating to an export or import license application is an Export Control Regulation Record that is required to be retained as a principal record.

XPO - 001631

**Abbreviations**

AC - After Completion
ACT - While Employed or Active
AF - After End of Fiscal Year
AT - After Termination
OBS - Obsolete
P – Permanent
SUP - Until Superseded

**I. General Corporate Records (Including Documents Processed or Received by the Office of the Corporate Secretary**

*General Principle* - The Office of the Corporate Secretary shall keep all such documents that might have business significance, and shall keep or provide for the retention of such other documents as may have historical value.

A. All SEC and SEC-related material and financing documents, credit agreements, loan agreements, commitments, etc.                          P

B. Articles of incorporation, code of regulations and amendments thereto, corporate charter          P

C. Bylaws                                            P

D. Permits to do business                            P

E. Minutes of meetings of directors and shareholders
                                                     P

F. Minutes of meetings of sub-boards or other internal committee meetings                        P

G. Certificate of inspector of elections for shareholder meetings                             P

**II. Shareholder Records**

*General Principle* - The Office of the Corporate Secretary shall keep such records as will enable the Company to ascertain who its existing shareholders are, who its shareholders were at any time in the past, and whether or not any person was ever a shareholder of the Company. The Office of the Corporate Secretary also shall keep an adequate record of the payment of all dividends so the Company's dividend liability to any shareholder or group of shareholders can be ascertained.

A. Stockholder and stock transfer records            P

B. Stock savings plan records                        P

C. Cancelled stock certificates               7 years

D. Transfer agent dividend payment letters           P

E. Shareholder correspondence                        P

**III. General Corporate Communication and Related Records**

A. Advertising copy (bound)                    7 years

B. Advertising plan, budget production statistics
                                               4 years

C. Company newsletters                         2 years

D. Photographs                                       P

E. Mailing lists                                   SUP

**IV. Tax Records**

*General Principle* - The Tax department must keep such permanent books of account or records, including inventories, as are sufficient to establish the amount of gross income, deductions, credits or other matters required to be shown in any Company tax return.

These documents and records should be kept for as long as the contents thereof may become material in the administration of an Internal Revenue law.

The Tax department should keep all records used to compute earnings and profits permanently.

A. Depreciation schedules                            P

B. Tax bills and statements                          P

C. One copy of all income and franchise tax returns and supporting worksheets and related schedules    P

D. One copy of Social Security tax records and worksheets                                         P

E. One copy of Social Security tax records and worksheets                                    7 years

F. Unemployment tax records          Until statute of
                                      limitations on tax
                                        has expired

G. Sales and use tax                 Until statute of
                                      limitations on tax
                                        has expired

H. Excise tax records                Until statute of
                                      limitations on tax
                                        has expired

I. Payroll tax records                         4 years

J. Fuel tax receipts                           3 years

Work papers for each of the above should be kept for corresponding periods. But if the retention period is permanent, then retain only until the related tax period is closed for purposes of assessment or claim for refund.

**V. Employee Benefit Plan Documents and Supporting Employee Data (ERISA Documents)**

*General Principle* - Employee benefit plan documents and supporting employee data shall be

4

XPO - 001832

kept in such manner and for such periods that the Company can establish at all times whether or not any benefit is payable to any person, and if so the amount of such benefit. Where possible, records may be stored electronically.

| | |
|---|---|
| A. Plan documents and all amendments thereto | P |
| B. Records of employee service and eligibility for benefits (including hours worked and any breaks in service) | P |
| C. Required personal information on employees and former employees (name, address Social Security number, period of employment, pay [hourly or salary]) | P |
| D. Records of plan administrator setting forth authority to pay | P |
| E. Records of benefits paid to employees or their beneficiaries | P |
| F. Plan documents and supporting documentation (such as actuarial calculations and Form 5500s) filed with the Internal Revenue Service, Department of Labor and Pension Benefit Guaranty Corporation | P |
| G. Certificates of creditable coverage (available to health benefit plan participants and dependents upon request) | P |
| H. COBRA notices (Consolidated Omnibus Budget Reconciliation Act of 1985) | 6 years |
| I. Employee 401(k) matching contributions | 7 years |
| J. Health Insurance Portability and Accountability Act documentation | 7 years |
| K. Benefit plan audit reports | 7 years |
| L. Vendor SAS 70 reports | 3 years |

**VI. Payroll Documents**

*General Principle* - Payroll documents and supporting data should be kept in such a manner that the Company's responsibilities under the Wage and Hour Rules of the Department of Labor, as well as the rules of the Walsh-Healey Act, can be shown. Also, payroll records must be such as to enable the Company to compute the payment of any pension.

| | |
|---|---|
| A. Earnings records (general) | 7 years |
| B. Online pay stubs | AF + 2 |
| C Paycheck detail in PeopleSoft | 7 years |
| D. Time cards and time sheets | 7 years |
| E. Kronos detailed weekly reports | 3 months at local facility; 7 years at general office |

**VII. Safety Documents (including Occupational Safety and Health Administration Records)**

*General Principle* - The Company must keep all documents relating to employee health and safety for such periods as will enable it to demonstrate compliance with an applicable regulation or standard.

These regulations and standards are in a state of continual expansion and change and states impose various record-keeping regulations. Following is a current list of the most widely applicable federal rules.

| | |
|---|---|
| A. OSHA 300 log and summary of occupational injuries and illnesses | 5 years |
| B. OSHA 301 Injury and Illness report | 5 years |
| C. OSHA 300-A annual summary of occupational related injuries and illnesses | 5 years |
| D. OSHA reporting documentation | 30 years |
| E. Hazard Communication Rule training documentation, compliance materials, etc. | SUP |
| F. Documentation that employees have been trained in hazard communication, etc. | 3 years |
| G. Employee exposure records | ACT + 30 years |
| H. Process Safety Management Standard (for highly hazardous chemicals) training, compliance materials, etc. | SUP |
| I. Asbestos records pertaining to exposure measurement | ACT + 30 years |
| J. Respiratory protection records pertaining to employee exposure | ACT + 30 years |
| K. Respirator fit testing records | ACT until next test |
| L. Workplace violence records | 6 years |
| M. Material safety data sheets | SUP |
| N. Permit-required confined space entry permits | 1 year |
| O. PCB spill cleanup records | 5 years |
| P. PCB transfer maintenance records | 3 years |
| Q. Portable fire extinguisher testing certifications | ACT until next test |
| R. Asbestos training records | AT + 1 year |
| S. Lead employee exposure/ monitoring records | AT + 40 years or ACT + 20 years |
| T. Accident reports | P |
| U. Driver investigation history file | AT + 3 years |

5

XPO - 001833

V. Request and response for driver history    1 year

W. DOT reporting documentation    30 years

X. Driver files    ACT + 3 years

Y. Driver logs    6 months

Z. Truck files

AA. Forklift inspection    ACT + 18 months

BB. MHE service records    Life of equipment

CC. SIMS    3 years

DD. TSA training documentation    AT + 4 years

EE. Video distributions    6 years

**VIII. Accounting and Finance**

A. All ledgers    20 years

B. All balance sheets and other SUP financial statements    P

C. Estimates, projections, planning memos, etc.    10 years

D. Banking records, including deposit and withdrawal records, bank statements    20 years

E. Checking records, including account statements, check register and cancelled checks    20 years

F. Expense accounts, approvals, petty cash records, sales force commission records    10 years

G. Records of accounting practices and procedures    10 years

H. Bankruptcy records    7 years

I. Capital expenditure requests (ERs)    2 years

J. Cash applications    3 years

K. Cash collection records    3 years

L. Cash management records    2 years

M. Debit/credit memos    3 years

N. ICP history (general)    P

O. Shrinkage reports    7 years

P. Software capitalization records    5 years

Q. Vendor ledger    7 years

R. Vendor purchase log    3 years

**IX. Patents, Trademarks, Copyrights, Trade Secrets and Software**

A. Original patents and trademarks, related documents, work papers    Life of patent or trademark + 5 years

B. Royalty records    Life of patent or trademark + 5 years

C. All copyright permissions for use of others' copyrighted material    P

D. All permissions to use any photographs, including photos of employees    P

E. All copyright registrations    P

F. Documents relating to the acquisition of any rights in any creative work where the Company's right to remove such work from its buildings or property has been addressed    P

G. Requests for potential trade secret information made pursuant to statutes such as the Freedom of Information Act or OSHA's Hazard Communication Rule    P

H. Documents related to security measures taken to protect trade secrets    P

I. Confidentiality and nondisclosure agreements relating to trade secrets, including agreements with employees, vendors, suppliers and customers    P

J. Licensing agreements (Company licensing to an outside entity)    P

K. Records describing trade secrets    P

L. Idea submissions, both from employees and from solicited and unsolicited outside sources    P

M. Records of efforts not to infringe any copyright, patent, trademark, trade secret, etc.    P

N. Records showing the Company has licensed the right to use any software that is on any Company computer As long as software is in use or agreement is active    + 6 years

**X. Insurance Records**

A. Insurance policies and records    P

B. General insurance reports and records    5 years

C. Insurance claims – liability and equipment    AC + 7 years

D. Underwriter reports and audits    10 years

E. Surety bonds and letters of credit    P

6

F. State workers compensation records, audits
10 years

G. Workers compensation claims, records
AC + 7 years

H. Insurance records (employees)      AT + 11 years

I. Property insurance policies and records      P

J. Fidelity bonds      P

## XI. Location/Plant and Property Records

A. Depreciation schedules      P

B. Inventory records      P

C. Maintenance and repair, building      10 years

D. Maintenance and repair, machinery and equipment
5 years

E. Property deeds, easements, licenses, right of way
P

F. Facility purchase or lease records      P

G. Space allocation records      1 year

H. Mortgages      Until recording of cancellation
+5 years

I. Records relating to the disposal of waste at any
facility      P

J. Property management data      1 year

K. Appraisals      1 year

L. Accident reports/insurance claims      7 years

M. Equipment inventory      ACT

N. Office layouts      ACT

O. Blueprints      P

P. Building plans and specifications      ACT + 1 year

Q. Certificate of occupancy (should be displayed at
site)      Until vacated

## XII. Personnel

A. Employees' personnel records, including form
190, application forms, performance reviews; FRCA
records, offer letters, W-4, resume, reference letters,
contracts of employment (including confidentiality,
non-disclosure and invention and copyright
assignment agreements), performance evaluations,
alcohol, drug testing, discipline records, promotions,
demotions, pay rate, termination papers, exit
interview records

B. Individual incentive award payments (ICP)
6 years

C. Garnishments (general)      ACT + 3 years

D. Education and training records      AT + 10 years

E. Request and response for driver history      1 year

F. Employee medical file (including records of leave
granted under FMLA and records of accommodation
to a disabled employee requesting such
accommodation)      AT+6

G. Records showing employee exposure to
potentially hazardous substances (removed from
medical file AT)      P

H. Invention and copyright assignment agreements
(removed from personnel file AT)      P

I. Fingerprints      AT + 10 years

J. Safety or injury frequency reports      10 years

K. Job file, including applications for the specific job,
resumes of all applicants, advertisements, interview
questions, test results, notes, etc.      1 year

L. Employee handbooks and policies      SUP + 6 years

M. Training manuals      SUP

N. Job and market analysis      3 years

O. Reduction in force records      2 years

P. Job descriptions      SUP + 2 years

Q. Affirmative action programs      SUP + 1 year

R. EEO-1      5 years

S. Records of any sexual harassment complaints and
investigations and actions taken in response
ACT of all
employees involved
+ 3 years

T. Records showing employment eligibility under the
Immigration Reform and Control Act (1-9 and
supporting documentation)      The later of
3 years after
hiring or 1 year AT

U. Records for preparing certificates of creditable
coverage, including the name of the group health
plan, name of each participant and dependent under
the plan, the name, address and telephone number of
the party responsible for providing the certificate
(e.g., the plan admin or issuer)   Until coverage ceases
+ 2 years

7

| | |
|---|---|
| V. Employee travel | 13 months |
| W. Video distributions | 6 years |

**XIII. Printing and Duplication**

| | |
|---|---|
| A. Copies of documents produced by print shop | OBS |
| B. Negatives | OBS |
| C. Plates | OBS |
| D. Drawings and/or artwork | OBS |
| E. Printing orders | AT + 2 years |
| F. Form files | 10 years |

**XIV. Manufacturing**

| | |
|---|---|
| A. Bills of material | 2 years |
| B. Drafting records | P |
| C. Drawings | 15 years |
| D. Inspection records | 15 years |
| E. Lab test reports | P |
| F. Memos, production | AC |
| G. Products tooling, design, engineering research, experiment and specs, records | 20 years |
| H. Production reports | 3 years |
| I. Reliability records | P |
| J. Tool control | AT + 3 years |
| K. Work orders | 3 years |
| L. Work status reports | AC |

**XV. Office Supplies and Service**

| | |
|---|---|
| A. Inventories | AF + 1 year |
| B. Office equipment records | AF + 6 years |
| C. Requests for service | |
| D. Requisitions for supplies | |

**XVII. Sales and Marketing**

| | |
|---|---|
| A. Customer file | ACT + 5 years |
| B. Customer data sheets | Life of account |
| C. Customer surveys | 1 year |
| D. Goldmine electronic reports | As long as customer exists in CIS |
| E. A&B account activity report | 1 year |
| F. Sales invoices | Until payment + 1 year |
| G. Sales analysis reports | 5 years |

| | |
|---|---|
| H. Sales expenses | 5 years |
| I. Daily inbound manifests | 1 year |
| J. Daily outbound manifests | 1 year |
| K. Account data sheets | 1 year |
| L. Customer pricing files (cancelled) | 3 years |
| M. Customer pricing requests (never implemented; bids not awarded) | 3 years |
| N. Customer requests (certificates of insurance, operating authority, etc.) | 1 year |
| O. Quality process requests | 1 year |
| P. Market investigations and reports | 7 years |
| Q. Competitor files | 5 years |
| R. Market research data | 7 years |
| S. Presentations and proposals | 7 years |
| T. BDM asset checklist | AT + 6 years |
| U. Monthly sales lead registers | 90 days |
| V. Returned/overdue leads | 1 week |
| W. Service center sales lead recap | 1 year |
| X. Week That Was report | 3 years |
| Y. Conference reports | 1 year |
| Z. News centers (on CD) | P |

**XVII. Credit Relating to Customers**

| | |
|---|---|
| A. Application for credit, approvals, qualification reports | ACT + 1 year |
| B. Collections - correspondence | 2 years |
| C. Customer financial statements | 3 years |
| D. Guarantees and subordination agreements | ACT + 3 years |
| E. Security agreements and financing statements | ACT + 3 years |
| F. Trade clearances | 3 years |
| G. Marginal accounts | |
| H. Disputed accounts | |
| I. Embarrassed debtors | |

8

XPO - 001836

## XVIII. Contracts and Agreements

*General Principle* – The Company must keep all contracts, including, but not limited to customer and supplier contracts, government contracts, service agreements, leases, owner/operator agreements, information technology contracts and carrier contracts.

While the contract is in effect, the contract file should be continually reviewed and duplicates destroyed. After termination, all nonessential papers should be destroyed prior to filing in storage.

| | |
|---|---|
| A. Contracts (non-governmental) | AC or AT + 6 years |
| B. Contracts – government (prime and subcontract) | 3 years after final payment or, for certain records, the period specified in Federal Acquisition Regulation (FAR) section 4.705 through 4.703. |

## XIX. Operations

| | |
|---|---|
| A. Aircraft operating and maintenance | P |
| B. Bills of lading, waybills | Until delivery + 6 years |
| C. Freight bills | Until payment + 3 years |
| D. Freight claims | Until settlement + 3 years |
| E. Motor operating and maintenance | 5 years |
| F. Rates and tariffs | SUP |
| G. Receiving documents | 6 years |
| H. Shipping and related documents | 6 years |
| I. Facility operating statistics | 1 year |
| J. Drivers sign-in/sign-out sheets | 3 years |
| K. Hazardous material load sheets | 3 years |
| L. NLM load sheets | 1 year |
| M. Port of entry border manifest | 2 years |
| N. GO access control program | P |
| O. Comcheck records | 6 years |
| P. Collections – c.o.d./driver collect | 3 years |
| Q. Deadhead mileage pay sheet | 3 years |
| R. Outbound projection audits | 2 years |
| S. Monthly load factor/king of the hill | 13 months |
| T. Dispatch report (late shipments) | 1 year |
| U. ESL reports | 1 month |
| V. FAC reports | 1 month |
| W. Monthly service report | 13 months |
| X. Morning reports | 1 year |
| Y. Region morning reports | 1 month |
| Z. Week That Was reports | 2 years |
| AA. Video distributions | 13 months |
| BB. Daily linehaul lineup | 5 days |
| CC. Direct run reports | 5 days |
| DD. FAC VIA reports | 5 days |
| EE. Meet and turn finals | 5 days |
| FF. Via reports | 5 days |
| GG. Admin messages sent to and received from the field | 5 days |

## XX. Security

| | |
|---|---|
| A. Employee case files | AT + 5 years |
| B. Employee badge records | AT + 5 years |
| C. Visitor records | 2 years |
| D. Subcontractor badge records | AT + 2 years |
| E. Vendor badge records | ACT + 2 years |
| F. Fire, theft investigations | P |

## XXI. Other Records

### A. Litigation Files and Court Record**

*General Principle* – The Company must retain litigation and court-related documents necessary to support the outcome of a litigated case, court proceeding or any government or agency investigation.

| | |
|---|---|
| 1. Complaints and charges filed and responses | ACT + 3 years |
| 2. Depositions | ACT + 3 years |
| 3. Discovery requests and responses | ACT + 3 years |
| 4. Case related correspondence between attorneys | ACT + 3 years |
| 5. Other court or agency records (including court orders or decisions, filings, and motions) | ACT + 3 years |
| 6. Privileged document logs | ACT + 3 years |

Case 7:25-cv-01545-D-BM    Document 41-1    Filed 02/13/26    Page 172 of 192

7. All records (including court filings, cancelled checks, summary documents, stipulations and/or dismissals) showing satisfaction of any claim, judgment, or lien                                            10 years

**B. Business Development Center Records**

1. BDC call reports                                          1 year

2. CRM files                                         As long as customer exists In CIS

3. STAR score sheets                                   1 year

4. STAR worksheets                                     1 year

5. TIAS – hardcopy                                     1 year

6. TIOS – hardcopy                                     1 year

7. Agency payroll drafts                               1 year

8. Annual review of driver record
                                              P (in personnel file)

9. City dispatch records                               1 year

10. City mileage report P&D equipment         3 months

11. Credit exception reports                          1 month

12. Delivery receipts                                 6 years

13. Disaster recovery plans                                P

14. Dock write up                                      3 days

15. Driver's instruction checklist on hazardous material loads                                       2 years

16. Equipment daily inspection and condition report                                              90 days

17. Equipment interchange receipt and safety inspection report                                     3 years

18. Freight delivery exception log                     1 year

19. Inspection request/damage notification log   1 year

20. Loading manifests                                 2 years

21. Miscellaneous equipment disposition record
                                                       1 year

22. Miscellaneous invoices                             1 year

23. Miscellaneous miles report                        3 months

24. Port of entry border manifest                     2 years

25. Purchase orders                                   3 years

26. Invoices                                          6 years

27. Register turnpike tickets                         2 years

28. Service center unloading check sheet              2 years

29. SIMS (on-line security loss report) message
                                                       3 years

30. Special activities report                          2 years

31. Statement of service center income and expense
                                      1 year (in service center)

32. Terminal drafts                     1 year (in service center)

33. Terminal recap listing (TCRD)        1 to 8 years
                                (depending on state requirements)

34. Service center statistics                          1 month
                                             (in service center)

35. Transportation entry and manifest of goods subject to customs inspection and permit     5 years

**C. Products Liability-Related Records**

*General Principle* – Retain records supporting corporate decisions regarding the safety of a particular product.

1. Policies on product safety                          SUP

2. Product design information (including 90 days design decisions, industry standards, alternative designs, etc.)                                          P

3. Safety test data                                    P

4. Manuals, promotional material                       P

5. Letters, litigation related materials (including customer complaints, reports)                     P

6. Product-recall related information                  P

**D. Email or Electronic Records**

*General Principle* – Material retained in electronic or digital form should be retained for the same period as the equivalent material in printed form. This includes, but is not limited to, email and instant messaging records.

**E. Immigration Reform and Control Act Records (1-9)**

*General Principle* – The Company must keep 1-9 documents for three years from the date of hiring or one year after the date that the individual's employment is terminated, whichever is later. Also retain supporting documents for the same period.

**F. Export Control Regulation Records****

1. Export control documents*, memoranda, notes, correspondence, contracts, invitations to bid, books of account, financial records, restrictive trade practices or boycott documents and reports, dock receipts, SED or AES records, and packing slips.     5 years

*Export control documents include any documents relating to the transportation of U.S.-origin goods outside the United States, including domestic*

10

XPO - 001838

transfers or shipments of goods intended for export from the United States and shipments of U.S.-origin goods within or among countries other than the United States.

2. Records pertaining to the Trading with the Enemy Act and the International Emergency Economic Powers Act, to include records pertaining to any destination subject to a U.S. embargo or sanctions or parties restricted from engaging in activities pursuant to those statutes.                                    5 years

3. Arms Export Control Act/International Traffic in Arms Regulations records pertaining to the manufacture, acquisition, and disposition of defense articles and the provision of defense services, to include warehousing and transportation of defense articles outside the United States.            5 years

  \*\*All Export Control Regulation Records must be kept for 5 years from the latest of the following date:

  a. Export from the United States;

  b. Any known re-export, retransfer, or diversion of the item from the United States; or

  c. Any termination of the transaction.

4. Atomic Energy Act records              5 years

### G. Importation Activity Records

1. Information that pertains directly or indirectly to importation activities and information required for the entry of merchandise (the "(A)(1)(A)" list)
                                              5 years

2. Packing lists                         60 days

### H. Federal Election Campaign Act

1. Political Action Committee reports (including statement, disclosure report, and notices filed with the Federal Election Commission    3 years after filed

### I. Anti-Boycott Regulations

1. Export control documents (including a license, application for a license, application for international import certificates, international import certificates, shipper's export declaration, a dock receipt or bill of lading in connection with an export, Customs Form 7512, other written information pertaining to an export such as memoranda, notes, correspondence, contracts, financial records, books of account, restrictive trade practices or boycott documents and reports, etc.)                              5 years\*

  \*Records must be kept for a period of 5 years from the date of receipt of the boycott-related request or requirement.

### J. Foreign Corrupt Practices Act

1. Books, records and accounts that reflect that the Company complied with the law (these include such things as Company policies, documentation showing when the FCPA was discussed in meetings, procedures used to inform new employees, employee certifications, employee discipline records, etc.)    P

---

\* Files to be retained at the discretion of the credit manager.

\*\* Records pertaining to outstanding exceptions, unsettled claims, incomplete investigations, cases pending or under litigation shall be retained until final clearance from Company Legal department

11

**Annex A**

**Environmental Record Retention Schedule**

**1    Policy Statement**

It is the Company's policy to destroy all environmental records, except those specifically authorized to be preserved in this Schedule. Those records specifically authorized to be preserved are as follows:

**Abbreviations**

P – Permanent
SUP – Until Superseded

**I. General Environmental Records**

A. Judicial, administrative orders; consent decrees; Potentially Responsible Party designations

P or duration of order or decree +6 years

B Environmental Protection Agency reporting documentation 30 years

C. Correspondence with government environmental agencies 6 years

D. Permits (including applications and supporting documentation); continuous emission monitoring system (CEMS) records; reports of GEMS startup, shutdown, or malfunction; and written quarterly reports of excess emissions

As long as the facility is operating + 5 years

E. Monitoring reports

As long as the facility is operating + 5 years

F. Material safety data sheets (MSDS) SUP

G. Facility audit reports P

H. Phase I and 11 property records P

I. Phase I, II and III audits P

**II. Emergency Planning and Community Right-to-Know**

A. Toxic chemical release inventory forms (Form Rs) (including supporting documentation) 3 years

B. Supplier notifications 3 years

C. Tier I and H reports 3 years

**III. Toxic Substances Control Act**

A. § 8(a) Information gathering reports of order (including supporting documentation, or decree notices that must be sent to customers, and all return receipts signed by customers if applicable) 3 years

B. Inventory reporting rule reports (40 C.F.R. part 710) 4 years

C. Significant new use notices (including supporting documentation) 5 years

D. Pre-manufacture notices (including supporting documentation) 5 years

E. Allegations of significant adverse reactions (by Company employees) 30 years

F. Allegations of significant adverse reactions (by non-employees such as site neighbors or customers) 5 years

G. Hazardous material load sheets 3 years

H. Hazardous materials disposal records 5 years

I. Hazardous materials storage records 3 years

J. Hazardous materials incident reports P

**IV. Comprehensive Environmental Response, Compensation and Liability Act (CERCLA)**

A. Toxic chemical release reporting records 3 years

B. Records regarding onsite disposal of toxic chemicals under CERCLA § 103(d) (U.S. Code Title 42) 50 years

HQL-0350 (10/15)

XPO - 001840

## V. Resource Conservation and Recovery Act (including underground storage tanks)

*Note:* It is important to note that many states have their own reporting requirements in this area. Contact the Legal department if you have questions regarding your state's reporting requirements.

A. Waste manifests, exception reports biennial reports, laboratory test data, inspection records and reports, annual reviews                     3 years

B. Hazardous waste determinations              3 years

C. Treatment, storage, and disposal facility inspection records (operating log)                     3 years

D. Employee training records           For current employee's retain until closure of facility. For former employee's, retain 3 years from date employee left facility

E. Closure and post closure records      Retain closure plan until closure complete and certified. Retain post-closure plan-closure care begins.

F. Underground storage tanks (USTs) (records documenting proper operation of the tank) Operating life of tank

G. UST release detection system: manufacturer claims pertaining to system 5 years from date of install

H. UST release detection system: results of sampling, testing or monitoring of system           1 year

I. UST release detection system records documenting calibration, maintenance and repair           1 year

J. UST closure records                3 years after completion of permanent closure or change in service.

## VI. Storm Water Pollution Prevention Plan (SWPPP)

A. Refer to the individual Plan/Permit of each location to determine the retention timeframe

## VII. Spill Prevention Control and Countermeasure (SPCC)

A. Above ground storage records           life of tank

B. Monthly and annual inspection checklists 3 years from date of inspection

C. SPCC plan           3 years after facility is no longer subject to regulation

Original BEP Effective Date: June 4, 2012          Updated: October 28, 2015

Replaces Version Updated: June 4, 2012

STATE OF NORTH CAROLINA

COUNTY OF ROBESON

FILED

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
24 CVS 468

2024 FEB 22 P 3: 21

ROBESON CO.. C.S.C.

CINDY SOLES SMITH, Administratrix of the
ESTATE OF MARK KEANNAN SMITH

BY_____

          Plaintiff,

v.

WILLIAM BRATTY LAMB
XPO LOGISTICS FREIGHT, INC.

          Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**FIRST AMENDED
COMPLAINT**

**(Jury Trial Demanded)**

NOW COMES Plaintiff CINDY SOLES SMITH, and hereby amends her Complaint, as a matter of course, pursuant to Rule 15(a) of the North Carolina Rules of Civil Procedure, acting in her fiduciary capacity as the Administratrix of the Estate of MARK KEANNAN SMITH, complaining of Defendants WILLIAM BRATTY LAMB and XPO LOGISTICS FREIGHT, INC. and alleges as follows:

## PARTIES AND JURISDICTION

1.     Plaintiff **Cindy Soles Smith** (hereafter, "Plaintiff") has applied for, and has been duly appointed as, Administratrix of the Estate of Mark Keannan Smith by the Brunswick County Clerk of Superior Court.

2.     Plaintiff is a citizen and resident of Brunswick County, North Carolina.

3.     Acting in her fiduciary capacity, Plaintiff files this wrongful death action pursuant to Chapter 28A of the General Statutes of North Carolina, including section 28A-18-2, within two years of the date of death of her husband, Mark Keannan Smith.

4. Upon information and belief, Defendant **William Bratty Lamb** (hereafter, "Defendant Lamb") is a citizen and resident of Robeson County, North Carolina, residing at 557 Emma Jane Rd. St. Pauls, North Carolina 28384.

5. Defendant **XPO Logistics Freight, Inc.** (hereafter, "XPO Logistics") is a Delaware corporation with its principal office located at 2211 Old Earhart Rd. Ann Arbor, MI 48105. At all relevant times, Defendant XPO Logistics maintained a registered office in the State of North Carolina and can be served through its registered agent, Registered Agent Solutions, Inc. located at 176 Mine Lake Court, Ste. 100 Raleigh, North Carolina 27615.

6. Venue is proper in Robeson County Superior Court pursuant to G.S. § 1-82.

7. This Court has subject matter jurisdiction over this civil action in that the amount in controversy exceeds the sum of Twenty-Five Thousand Dollars ($25,000.00) pursuant to G.S. § 7A-243.

8. This Court likewise has personal jurisdiction over the Defendants under both statutory and common law.

## STATEMENT OF THE FACTS

9. Paragraphs 1 through 8 of the First Amended Complaint are incorporated herein by reference.

10. On information and belief, on or about October 11, 2023 at approximately 7:00am, Defendant Lamb was acting as an employee or agent of XPO Logistics Freight, Inc. and within the course and scope of his employment with XPO Logistics Freight, Inc.

11. XPO Logistics Freight, Inc. is a wholly owned subsidiary of XPO, Inc., formally known as XPO Logistics, Inc.

2

12. XPO, Inc. maintains approximately 145 subsidiaries, many of which are incorporated in the State of Delaware.

13. XPO, Inc. is the second largest provider of less-than-truckload (LTL) services in North America with 564 locations globally. "LTL" is a freight model which involves shipping smaller quantities of goods for multiple customers at a time.

14. XPO Logistics Freight, Inc. is a corporation organized under the laws of the State of Delaware with its headquarters located at 2211 Old Earhart Rd. Ann Arbor, Michigan 48105.

15. XPO Logistics Freight, Inc. engages in substantial business operations in Robeson County, North Carolina, which includes a large shipping terminal located at 4715 W. 5th Street Lumberton, NC 28358.

16. At the date and time above stated, Defendant Lamb was operating a 2016 Freightliner tractor that was owned by XPO Logistics Freight, Inc. and being operated under U.S. DOT No. 241829.

17. The 2016 Freightliner was a commercial motor vehicle and was being operated in commerce at the time of the subject collision referenced below. As a result, the subject 2016 Freightliner was subject to North Carolina and federal laws and regulations concerning the operation of the commercial vehicle, including that the commercial vehicle must be operated under the motor carrier authority of one or more motor carriers authorized under the Federal Motor Carrier Administration pursuant to Title 40 of the Code of Federal Regulations.

18. Upon information and belief, XPO Logistics Freight, Inc. maintained operating authority for commercial motor vehicles with the United States Department of Transportation (US DOT # 241829) at all times relevant herein for the 2016 Freightliner being operated by Defendant William Bratty Lamb.

3

19.    Upon information and belief, in the early morning hours of October 11, 2023, Defendant Lamb departed XPO Logistics Freight, Inc.'s terminal located at 4715 W. 5th Street Lumberton, NC 28358 and traveled south on W. 5th Street Extension towards the intersection of US-74 Alternate carrying multiple items of freight in an LTL transport.

20.    At all relevant times herein, Defendant Lamb was acting within the course and scope of his employment with XPO Logistics Freight, Inc. and was acting as an employee, agent and/or servant of XPO Logistics Freight when the collision referenced herein occurred.

21.    On or about October 11, 2023 at approximately 7:00am, Mark Keannan Smith (hereafter, "Mark Smith" or "Decedent") was operating a 2018 Chevrolet pickup truck that was owned by his employer, National Erectors Rebar, Inc.

22.    Upon information and belief, it was still dark when the collision occurred and the sun was starting to rise and all vehicular traffic in the area had their headlights activated due to the darkness.

23.    At the time and date above stated, Mark Smith was traveling west on US-74 Alternate and was traveling in the left lane.

24.    At the time and date above stated, Defendant Lamb was sitting still at the stop sign at the intersection of US-74 Alternate and W. 5th Street Extension in Robeson County, NC and Defendant Lamb admitted that he looked to his left and saw Mark Smith's vehicle approaching with his headlights on prior to Defendant Lamb wantonly and heedlessly proceeding into the subject highway and intersection directly in front of Mark Smith.

25.    At the time and date above stated, Defendant Lamb also admitted that he observed a school bus to his right along with another passenger vehicle to his right that was behind the subject school bus.

4

26. Both observations, admitted by Defendant Lamb, and described above were made *prior* to Defendant Lamb wantonly and heedlessly pulling out into the highway and blocking all westbound lanes of travel on US Highway 74 Alternate with his tractor and trailer.

27. At the time and date above stated, notwithstanding the foregoing admitted observations of Defendant Lamb, Defendant Lamb willfully, wantonly, carelessly and heedlessly proceeded into the subject highway with his tractor and trailer and proceeded to stop completely in the roadway thereby blocking all westbound lanes of travel on US Highway 74 Alternate, directly in front of Mark Smith.

28. At the time and date above stated, Defendant Lamb failed to yield right of way to Mark Smith thereby causing Mark Smith to collide with the subject XPO trailer, which caused Mark Smith to be pinned in his vehicle and suffer severe actual physical pain and mental suffering prior to him being later being pronounced deceased at the scene.

29. Following the impact described above, Mark Smith was seen moving his arm, moaning, crying and significantly suffering prior to him later being pronounced deceased at the scene.

### FIRST CLAIM FOR RELIEF

### NEGLIGENT, GROSSLY NEGLIGENT, RECKLESS, WILLFUL AND WANTON CONDUCT OF WILLIAM BRATTY LAMB, IMPUTED TO DEFENDANT XPO LOGISTICS

30. Paragraphs 1-29 of this First Amended Complaint are reincorporated as if fully set forth herein.

31. On October 11, 2023, at the aforementioned time and place, William Bratty Lamb owed a duty of reasonable care to those lawfully on the roadway, including but not limited to Mark Smith, to operate the subject commercial motor vehicle in a reasonable and safe manner.

5

32. On October 11, 2023, at the above-mentioned time and place, Defendant William Bratty Lamb operated the subject commercial motor vehicle owned by XPO Logistics Freight, Inc. in a negligent, grossly negligent, reckless, careless, willful and wanton manner endangering the lives of those lawfully on the roadway, including but not limited to decedent Mark Smith.

33. At all times relevant herein, Defendant William Bratty Lamb was an employee, agent, or servant of XPO Logistics Freight, Inc. and was operating the 2016 Freightliner tractor and attached trailer within the course and scope of said employment, agency and servitude and was subject to the control of XPO Logistics Freight, Inc. at all times relevant to the subject transportation of freight and in furtherance of the business interest of XPO Logistics Freight, Inc.

34. Specifically, Defendant William Bratty Lamb, an employee and/or agent of XPO Logistics Freight, Inc. was negligent, negligent *per se,* grossly negligent, reckless, careless, willful and wanton in that Defendant William Bratty Lamb:

   a. Operated the 2016 Freightliner tractor and attached trailer carelessly, negligently, grossly negligently, willfully and recklessly in willful and wanton disregard for the rights and safety of others in violation of N.C. Gen. Stat. § 20-140;

   b. Operated the 2016 Freightliner tractor and attached trailer without due caution and circumspection and in a manner as to endanger persons or property in violation of N.C. Gen. Stat. § 20-140;

   c. Negligently, grossly negligently, heedlessly, willfully and wantonly drove the subject commercial motor vehicle into a busy highway intersection and stopped when Defendant Lamb was aware of the presence of Mark Smith's vehicle approaching from the left, and a school bus and another passenger vehicle approaching from the right;

6

d. Drove carelessly and heedlessly in willful and wanton disregard of the rights and safety of others in violation of N.C. Gen. Stat. § 20-141.6;

e. Negligently, grossly negligently, willfully and wantonly failed to yield right of way to the vehicle being driven by decedent Mark Smith, in violation of N.C. Gen. Stat. § 20-160.1;

f. Negligently, grossly negligently, willfully and wantonly failed to maintain a proper lookout in violation of N.C. Gen. Stat. § 20-141;

g. Negligently, grossly negligently, carelessly, willfully and wantonly suddenly and without warning stopped the commercial vehicle in the subject intersection, which cased his attached trailer to block all westbound lanes of U.S. 74 Alternate;

h. Negligently, grossly negligently, willfully, and wantonly failed to operate the subject commercial motor vehicle in accordance with North Carolina laws, ordinances, and regulations, in violation of 49 C.F.R. § 392.2;

i. Negligently, grossly negligently, willfully, and wantonly operated the subject tractor-trailer in a condition as to likely cause an accident or a breakdown of the subject tractor-trailer, in violation of 49 C.F.R. § 396.9;

j. Negligently, grossly negligently, willfully, and wantonly operated the subject tractor while his ability or alertness was impaired through fatigue, illness, or any other cause as to make it unsafe for him to operate the truck, in violation of 49 C.F.R. § 392.3;

k. Negligently, grossly negligently, willfully, and wantonly operated the subject vehicle in violation of 49 C.F.R. § 325-399;

7

l. Negligently, grossly negligent, reckless, carelessly, willfully and wanton made an extremely unsafe left-turn in violation of the standards of care and training requirements of commercial vehicle operators, as those standards are prescribed in the Commercial Drivers' License (CDL) manual.

m. Was negligent, grossly negligent, reckless, willful and wanton in other manners as will be determined through discovery and proven at trial.

35. As a direct and proximate result of the negligent, grossly negligent, reckless, careless, willful and wanton conduct of Defendant William Bratty Lamb, jointly and severally with the negligent, grossly negligent, reckless, careless and willful and wanton conduct of Defendant XPO Logistics, decedent Mark Smith, became trapped in his vehicle and was unable to be rescued, which resulted in his slow and painful death. Decedent Mark Smith was alive, moaning and moving his arm after impact and sustained unimaginable physical pain and mental suffering prior to his death. Accordingly, the Estate of Mark Keannan Smith, by and through Adminsitratrix Cindy Soles Smith, is seeking all available compensatory and punitive damages pursuant to N.C. Gen. Stat. § 28A-18-2(b), including:

a. Expenses for care, treatment and hospitalization incident to the injury resulting in death of Mark Smith;

b. Compensation for pain and suffering of the decedent Mark Smith;

c. The reasonable funeral expenses of the decedent Mark Smith;

d. The present monetary value of decedent Mark Smith to the persons entitled to receive the damages recovered, including but not limited to compensation for the loss of the reasonably expected;

8

e. Net income of the decedent Mark Smith;

f. Compensation for the loss of services, protection, care and assistance of the decedent Mark Smith, whether voluntary or obligatory, to the persons entitled to the damages recovered;

g. Compensation for loss of society, companionship, comfort, guidance, kindly offices and advice of decedent Mark Smith to the persons entitled to the damages recovered;

h. Such punitive damages as decedent Mark Smith could have recovered pursuant to Chapter 1D of the General Statutes had decedent Mark Smith survived, and punitive damages for wrongfully causing the death of the decedent Mark Smith through malice or willful or wanton conduct, as defined in G.S. 1D-5;

36.     In that Defendant Lamb was acting as an agent or employee of Defendant XPO Logistics at all relevant times, the negligent, grossly negligent and willful and wanton acts or omissions of Defendant Lamb are imputed to Defendant XPO Logistics by operation of law and Defendant XPO Logistics is vicariously liable in all respects, under theories of *respondeat superior*, agency, joint enterprise, and vicarious liability, among others.

37.     Upon information at all times relevant herein, Defendant Lamb was operating under the employment, agency and servitude of Defendant XPO Logistics and was at all times subject to the control of Defendant XPO Logistics.

## SECOND CLAIM FOR RELIEF

## PUNITIVE DAMAGES AGAINST DEFENDANT WILLIAM BRATTY LAMB AND DEFENDANT XPO LOGISTICS

9

38. Paragraphs 1-37 of this Complaint, including all subparts, are reincorporated as if fully set forth herein.

39. The foregoing conduct of Defendant William Bratty Lamb, imputed to Defendant XPO Logistics by operation of law, specifically complained of above and incorporated herein by reference, is so egregious as to be reckless, willful and wanton.

40. Pursuant to Chapter 1D of the North Carolina General Statutes, Plaintiff seeks punitive damages against Defendant William Lamb and Defendant XPO Logistics, jointly and severally, as allowed under N.C. Gen. Stat. § 28A-18-2(b), in addition to compensatory damages, against Defendant William Bratty Lamb and Defendant XPO Logistics given the aforementioned willful and/or wanton conduct of Defendant William Bratty Lamb and Defendant XPO Logistics on or before October 11, 2023.

41. Defendant William Bratty Lamb's conduct on October 11, 2023, was "willful and wanton conduct" as that term is defined under G.S. § 1D-5(7), in that Defendant William Bratty Lamb's conduct in operating the commercial vehicle was made with intentional disregard of and indifference to the rights and safety of others, including Decedent Mark Smith, which Defendant William Bratty Lamb knew, or should know, is reasonably likely to result in injury, damage or other harm.

42. The conduct of Defendant Lamb, imputed to Defendant XPO Logistics, was reckless, willful and wanton, in that Defendant Lamb:

   a. Drove the tractor-trailer carelessly and heedlessly in and willful or wanton disregard of the rights and safety of others in violation of N.C. Gen. Stat. § 20-140;

   b. Drove the subject tractor-trailer without due caution and circumspection and in a manner as to endanger or be likely to

10

endanger persons or property in violation of N.C. Gen. Stat. § 20-140;

c. Drove carelessly and heedlessly in willful and wanton disregard of the rights and safety of others in violation of N.C. Gen. Stat. § 20-141.6;

d. Wantonly engaged in aggressive driving in violation of N.C. Gen. Stat. § 20-141.6;

e. Wantonly failed to yield right of way to the vehicle being driven by Decedent Mark Smith, causing serious bodily injury, in violation of N.C. Gen. Stat. § 20-160.1;

f. Wantonly failed to operate the tractor-trailer in accordance with North Carolina laws, ordinances, and regulations and in violation of 49 C.F.R. § 392.2;

g. Wantonly operated the subject tractor-trailer in a condition as to likely cause an accident or a breakdown of the subject tractor-trailer, in violation of 49 C.F.R. § 396.9;

h. Wantonly operated the tractor-trailer while his ability or alertness was impaired through fatigue, illness, or any other cause as to make it unsafe for him to operate the tractor-trailer in violation of 49 C.F.R. § 392.3;

i. Defendant XPO Logistics aided, abetted and condoned Defendant William Lamb's willful and wanton conduct complained above;

11

j. Was reckless, willful and wanton in such other ways as will be determined through discovery and proven at trial.

43.     Pursuant to N.C. Gen. Stat. § 1D-15, Plaintiff is entitled to recover from Defendant William Bratty Lamb and Defendant XPO Logistics, jointly and severally, punitive damages for the willful and wanton misconduct of Defendants, that proximately caused and/or related to the injuries suffered by the Plaintiff, in an amount to be determined by the jury but in any event exceeding $25,000.00.

## THIRD CLAIM FOR RELIEF

### NEGLIGENT HIRING, NEGLIGENT SUPERVISION, NEGLIGENT TRAINING, NEGLIGENT RETENTION, NEGLIGENT ENTRUSTMENT CLAIMS AGAINST DEFENDANT XPO LOGISTICS

44.     Paragraphs 1-43 of this Complaint, including all subparts, are reincorporated as if fully set forth herein.

45.     On or before October 11, 2023, Defendant XPO Logistics owed a duty of reasonable and ordinary care to those lawfully on the roadway, including but not limited to Mark Smith, to hire, supervise, train, retain and entrust the operators of its commercial motor vehicles to drive in a reasonable and safe manner on public streets and highways.

46.     Defendant XPO Logistics failed to exercise reasonable and ordinary care in the hiring and retaining of Defendant William Bratty Lamb as a commercial vehicle operator.

47.     Defendant XPO Logistics likewise failed to exercise reasonable and ordinary care in the training and ongoing supervision of employee William Bratty Lamb.

48.    Defendant XPO Logistics was directly and independently negligent in that Defendant XPO Logistics:

a. Negligently hired Defendant William Lamb as a commercial vehicle operator when Defendant XPO Logistics knew or should have known William Lamb was unfit or otherwise unqualified;

b. Negligently retained Defendant William Lamb as a commercial vehicle operator as Defendant William Lamb when Defendant XPO Logistics knew or should have known William Lamb was unfit or otherwise unqualified;

c. Negligently supervised Defendant William Lamb as a commercial vehicle operator when Defendant XPO Logistics knew or should have known William Lamb was unfit or otherwise unqualified;

d. Negligently trained Defendant William Lamb as a commercial vehicle operator, specifically including negligently training Defendant Lamb with respect to safe left turns, and other important safety training which is contained in the Commercial Drivers' License (CDL) Manual.

e. Negligently trained Defendant William Lamb with respect to industry standards and safety standards contained in the Commercial Drivers' License (CDL) Manual.

f. Negligently aided and abetted Defendant Lamb in violating multiple Federal Motor Carrier Safety Administration (FMCSA) regulations and standards as well as North Carolina state laws with respect to motor carrier safety regulations, including but not limited to, violations of 49 CFR § 396.9; 49 CFR § 392.3; 49 CFR § 392.2.

13

g. Negligently entrusted and furnished the commercial motor vehicle to Defendant Lamb when Defendant XPO Logistics, knew or should have known, that Defendant Lamb was unfit to operate the commercial vehicle and his operation of said commercial vehicle was likely to result in injury or death to others;

h. Was otherwise negligent and/or grossly negligent as will be further shown in discovery.

49. As a direct and proximate result of the negligent, grossly negligent, reckless, careless, willful and wanton conduct of Defendant XPO Logistics, jointly and severally with the negligent, grossly negligent, reckless, carless and willful and wanton conduct of Defendant William Lamb, decedent Mark Smith, became trapped in his vehicle and was unable to be rescued, which resulted in his slow and painful death. Decedent Mark Smith was alive, moaning and moving his arm after impact and sustained unimaginable physical pain and mental suffering prior to his death. Accordingly, the Estate of Mark Keannan Smith, by and through Adminsitratrix Cindy Soles Smith, is seeking all available compensatory and punitive damages pursuant to N.C. Gen. Stat. § 28A-18-2(b), including:

a. Expenses for care, treatment and hospitalization incident to the injury resulting in death of Mark Smith;

b. Compensation for pain and suffering of the decedent Mark Smith;

c. The reasonable funeral expenses of the decedent Mark Smith;

d. The present monetary value of decedent Mark Smith to the persons entitled to receive the damages recovered, including but not limited to compensation for the loss of the reasonably expected;

e. Net income of the decedent Mark Smith;

f. Compensation for the loss of services, protection, care and assistance of the decedent Mark Smith, whether voluntary or obligatory, to the persons entitled to the damages recovered;

g. Compensation for loss of society, companionship, comfort, guidance, kindly offices and advice of decedent Mark Smith to the persons entitled to the damages recovered;

h. Such punitive damages as decedent Mark Smith could have recovered pursuant to Chapter 1D of the General Statutes had decedent Mark Smith survived, and punitive damages for wrongfully causing the death of the decedent Mark Smith through malice or willful or wanton conduct, as defined in G.S. 1D-5;

## THE PLAINTIFF RESPECTFULLY DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Cindy Soles Smith, in her fiduciary capacity as Administratrix of the Estate of Mark Keannan Smith, pursuant to N.C. Gen. Stat. § 28A-18-2, prays that she will have and recover of Defendants William Bratty Lamb and Defendant XPO Logistics, jointly and severally, as follows:

1. Compensatory damages against Defendants, jointly and severally, in an amount to be determined by a jury, but in an event in *excess of* Twenty-Five Thousand Dollars ($25,000.00) plus interest thereon in favor of the Estate of Mark Keannan Smith;

2. Punitive damages against Defendants, jointly and severally, to the extent that the jury finds by clear and convincing evidence that the conduct of any of the

15

Defendants proximately causing and/or related to the subject death complained of in this action were willful and/or wanton in nature, in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00) plus interest thereon in favor of the Estate of Mark Keannan Smith;

3. Cost incurred in bringing this action;
4. Any and all pre and post judgment interest as provided by law;
5. A trial by jury as to all of the issues so triable; and
6. Any other and further relief as the Court deems just, equitable and proper.

This the 22nd day of February, 2024.

MUSSELWHITE, MUSSELWHITE,
BRANCH & GRANTHAM, P.A.

J. WILLIAM OWEN
NC State Bar No. 47994
P.O. Box 1448
Lumberton, NC 28359
Telephone: (910) 738-5277
Facsimile: (910) 738-3678
wowen@mmbglaw.com

*Attorney for Plaintiff Cindy Soles Smith, Administratrix of the Estate of Mark Keannan Smith*

16