IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:25-CV-1545

| | | |
|---|---|---|
| CINDY SOLES SMITH, as Administratrix of the Estate of Mark Keannan Smith, | ) ) ) ) | |
| Plaintiff, | ) ) | **ORDER** |
| v. | ) ) ) | |
| XPO LOGISTICS FREIGHT, INC., | ) ) | |
| Defendant. | ) | |

On February 15, 2024, Cindy Soles Smith ("Smith" or "plaintiff") filed a complaint against William Bratty Lamb ("Lamb") in Robeson County Superior Court. See [D.E. 2-3]; [D.E. 2-1] 2. On February 22, 2024, Smith amended her complaint and added a second defendant—XPO Logistics Freight, Inc. ("XPO" or "defendant"). See [D.E. 2-5]. On July 9, 2025, Robeson County Superior Court severed the case against XPO and Lamb, meaning Smith could proceed "separately and distinctly" against each defendant. [D.E. 16-59] 9.

On October 8, 2025, XPO removed the action against XPO to this court [D.E. 1, 2] and filed exhibits, which XPO later consolidated [D.E. 16]. On November 3, 2025, Smith moved to remand the action [D.E. 25] and filed a memorandum and exhibits in support [D.E. 26]. On November 24, 2025, XPO responded in opposition and filed exhibits [D.E. 30]. On December 4, 2025, Smith replied [D.E. 32]. On December 5, 2025, XPO moved to strike new arguments in Smith's reply brief or in the alternative to file a surreply [D.E. 33]. XPO later moved for reconsideration and for leave to file [D.E. 38, 46]. On May 27, 2026, XPO moved to disqualify Smith's counsel [D.E. 47] and to seal certain information in support [D.E. 48]. As explained

below, the court grants Smith's motion to remand and denies as moot XPO's motions to strike, for reconsideration, and for leave to file. The court declines to address XPO's motion to disqualify and motion to seal. Robeson County Superior Court can address those motions once fully briefed.

I.

On October 11, 2023, at approximately 7:00 a.m., Mark Smith ("decedent"), plaintiff Smith's late husband, died after his vehicle collided with Lamb's tractor-trailer. See Compl. [D.E. 16-3] ¶¶ 20, 27. At the time of the collision, Lamb (an XPO employee) was driving XPO's 53-foot tractor-trailer. See id. ¶ 15; see also [D.E. 26] 2; [D.E. 30] ¶ 3. Decedent was driving west in the left lane on US-74 Alternate. See Compl. ¶ 22. Meanwhile, Lamb stopped at a stop sign at the intersection of US-74 Alternate and West 5th Street Extension. See id. ¶ 23. Although Lamb saw decedent's vehicle approaching, Lamb pulled into the intersection and stopped, blocking all westbound lanes on US-74 Alternate. See id. ¶¶ 23, 25–26. Decedent's vehicle collided with Lamb's tractor-trailer. See id. ¶ 27. Smith alleges that decedent was "pinned in his vehicle and suffer[ed] severe actual physical pain and mental suffering" before emergency personnel "pronounced [him] deceased at the scene." Id.

Law enforcement investigated the accident, interviewed witnesses, and reviewed video footage. See [D.E. 26] 3. On October 18, 2024, police charged Lamb with misdemeanor death by motor vehicle and failure to yield. See [D.E. 26-16] 2; N.C. Gen. Stat. §§ 20-141.4, 20-155(b). Those charges remain pending. See Smart Search, N.C. Jud. Branch, https://portal-nc.tylertech.cloud/Portal/Home/Dashboard/29 (search "23CR438001-770") (last visited May 29, 2026).

On February 15, 2024, Smith filed a complaint against Lamb in Robeson County Superior Court. See [D.E. 2-3]; [D.E. 2-1] 2. On February 22, 2024, Smith amended her complaint and

2

named XPO as a second defendant. See [D.E. 2-5]. When XPO answered the complaint, it filed a counterclaim against Smith for property damage to its tractor-trailer. See [D.E. 26] 4; [D.E. 30] ¶ 6. On June 5, 2024, Smith served separate written discovery on Lamb and XPO, including first interrogatories, requests for production, and requests for admission. See [D.E. 26] 4; [D.E. 30] ¶ 6. On June 27, 2024, XPO and Lamb moved for an extension of time to respond to Smith's initial discovery requests. See [D.E. 26] 4. The clerk extended the deadline to August 5, 2024. See id.

On August 6, 2024, XPO and Lamb (represented by the same counsel) served untimely responses to Smith's initial discovery requests. See id. That same day, Smith sent a detailed letter to XPO and Lamb about the consequences of their untimely and insufficient responses and requested prompt supplementation. See [D.E. 26-4]. From August to October 2024, Smith sent three additional letters to XPO emphasizing its discovery requests for documents such as XPO's insurance policy, training materials and employee handbook, and shipping documents. See [D.E. 26-5] (Aug. 22, 2024 letter); [D.E. 26-7] (Sept. 4, 2024 letter); [D.E. 26-8] (Oct. 10, 2024 letter).[1] XPO failed to produce these discoverable documents.

On October 22, 2024, Smith served her second request for production on XPO, which focused on the telematics software that XPO used at the time of the accident. See [D.E. 26-19]. Additionally, Smith limited the scope of supplementation for the initial discovery requests and agreed to let XPO serve the supplemental responses and the second request for production responses on the same day—December 23, 2024. See [D.E. 26-11]. On December 23, 2024, XPO

---

[1] XPO notes that Smith did not involve Lamb in the discovery disputes, but that fact is irrelevant. XPO and Lamb had the same counsel. Moreover, Lamb's employer (XPO) possessed and controlled most of the requested documents. See, e.g., [D.E. 26-7] 2 (questioning XPO's failure to provide XPO's insurance policy, XPO's training materials and employee handbook, and XPO's shipping documents).

3

served both responses, but Smith informed XPO that "both sets of discovery responses [were] woefully insufficient and lacking." [D.E. 26-12] 2.

On January 2, 2025, Smith moved to compel. See [D.E. 16-21]. On January 13, 2025, Robeson County Superior Court held a hearing on the motion. See [D.E. 16-22]. On January 21, 2025, the court ordered XPO to respond fully without objection to certain discovery requests within 30 days of the order's entry. See [D.E. 16-23] 2–10; [D.E. 16-40] ¶ 30. XPO did not timely respond. Rather, on February 26, 2025, XPO served "extremely limited and vague supplemental discovery responses," which counsel failed to sign and XPO failed to verify. See [D.E. 16-40] ¶¶ 34–36. That same day, Smith moved for sanctions and filed a second motion to compel. See [D.E. 30-2].

On April 25, 2025, the court granted Smith's motion for sanctions and second motion to compel ("April 25, 2025 order"). See [D.E. 16-40]. The court found that "XPO . . . continually, intentionally and egregiously violated its obligations to [Smith] and to th[e] [c]ourt under the North Carolina Rules of Civil Procedure." Id. ¶ 43. Furthermore, the court found that XPO "exhibited a deliberate and calculated pattern" by withholding discoverable materials, misrepresenting the existence of discoverable materials, and responding to Smith's requests with "evasive and incomplete" responses. Id. ¶¶ 44, 47–48, 50. Thus, the state court entered discovery sanctions against XPO, which included deeming Lamb's and XPO's negligence and gross negligence established and striking various defenses (such as contributory negligence and causation). See id. ¶¶ 47–58. The court also ordered XPO to produce supplemental discovery within 30 days. See id. ¶ 59. XPO appealed. See [D.E. 16-47].

On May 30, 2025, XPO and Lamb (still represented by the same counsel) moved for a "global stay . . . [of] all proceedings" in Robeson County Superior Court. [D.E. 16-49] 2. On June

4

5, 2025, Smith moved to sever the claims against Lamb and XPO. See [D.E. 16-52]. Smith wanted to proceed against Lamb while XPO appealed the April 25, 2025 order. See id. ¶ 26.

On July 9, 2025, the court granted Smith's motion to sever ("severance order"). See [D.E. 16-59].[2] In its order, the court reiterated that the sanctions imposed by the April 25, 2025 order applied only to XPO, not Lamb. See id. ¶ 19. And the court emphasized that the same counsel represented Lamb and XPO. Therefore, the court found that if the court did not sever the claims, there was "a risk of substantial prejudice to both [Smith] and [d]efendant Lamb at trial" because "a jury would likely be confused about to whom the established facts apply." Id. ¶ 32. Furthermore, the court concluded that "joinder of [d]efendant XPO and [d]efendant Lamb ha[d] resulted in substantial and unwarranted delays in written and oral discovery and ha[d] been severely prejudicial to [Smith]." Id. ¶ 35. Thus, the court severed the claims, continuing the claims against XPO under the existing civil action number and providing Lamb with a new civil action number. See id. at 9.

Also on July 9, 2025, the court denied XPO's and Lamb's motion for a global stay. See [D.E. 16-58]. XPO and Lamb then moved for a temporary stay and petitioned for a writ of supersedeas with the North Carolina Court of Appeals, which the North Carolina Court of Appeals denied. See [D.E. 16-63]; [D.E. 16-65].

As for the amount in controversy, North Carolina law prohibits plaintiffs from specifying a precise dollar amount of unliquidated damages in a complaint. See N.C. Gen. Stat. § 1A-1, Rule 8(a)(2). On June 10, 2024, Smith responded to XPO's first set of interrogatories. See [D.E. 26-17]. In Smith's response, Smith told XPO that she sought damages for decedent's annual income,

---

[2] The state court signed the order on July 8, 2025, but did not file the order until July 9, 2025. In this order, the court uses July 9, 2025, as the date the state court's order took effect.

5

which ranged from $150,000 to $175,000 per year. See id. at 5–6, 9. On December 2, 2024, XPO served a Rule 8 request for a statement of the monetary relief sought ("Rule 8 Request"). See [D.E. 30-7]. On December 5, 2024, Smith responded and listed categories of relief sought (including decedent's annual income) but did not quantify the total damages. See [D.E. 30-8]. On September 8, 2025, after the severance order, XPO served a second Rule 8 Request on Smith. See [D.E. 30-11]. Smith resent her December 5, 2024 response, which listed categories of relief sought but no quantified total. See [D.E. 16-72]; [D.E. 30] ¶ 29. On September 17, 2025, XPO served its first set of requests for admission and asked Smith whether the damages sought "exceed $75,000." [D.E. 30-12] 4. On September 18, 2025, Smith told XPO that "she is seeking substantial compensatory and punitive damages that far exceed[] the sum of $75,000." [D.E. 30-13] 5.

On October 8, 2025, XPO removed the action against XPO to this court. See [D.E. 1, 2]. On November 3, 2025, Smith moved to remand the action and filed a memorandum in support. See [D.E. 25, 26]. On November 24, 2025, XPO responded in opposition. See [D.E. 30]. On December 4, 2025, Smith replied. See [D.E. 32].

On December 5, 2025, XPO moved to strike new arguments in Smith's reply brief or in the alternative to file a surreply. See [D.E. 33]. On January 27, 2026, XPO moved for reconsideration and revision of Robeson County Superior Court's April 25, 2025 order and filed a memorandum in support. See [D.E. 38, 39]. On February 13, 2026, Smith responded in opposition. See [D.E. 41]. On February 27, 2026, XPO replied. See [D.E. 42]. On April 28, 2026, Smith filed a notice with supplemental information regarding Smith's motion to remand. See [D.E. 45]. That same day, XPO moved to disregard or, alternatively, for leave to file a response to docket entry 45. See [D.E. 46]. On May 27, 2026, XPO moved to disqualify Smith's counsel and to seal certain information in support. See [D.E. 47, 48].

6

## II.

"[F]ederal courts, unlike most state courts, are courts of limited jurisdiction" that Congress created "with specified jurisdictional requirements and limitations." Strawn v. AT&T Mobility LLC, 530 F.3d 293, 296 (4th Cir. 2008); see Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). Removal from state court requires the federal district court to have original jurisdiction over the removed action. See 28 U.S.C. § 1441(a); Enbridge Energy, LP v. Nessel ex rel. Michigan, 146 S. Ct. 1074, 1079 (2026); Lontz v. Tharp, 413 F.3d 435, 439 (4th Cir. 2005). Accordingly, a defendant generally may remove an action to federal court only if the face of the complaint demonstrates diversity jurisdiction or federal question jurisdiction. See 28 U.S.C. § 1441(b); Enbridge Energy, LP, 146 S. Ct. at 1079; Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 6 (2003); Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc., 535 U.S. 826, 830 & n.2 (2002); Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987); W. Va. State Univ. Bd. of Governors v. Dow Chem. Co., 23 F.4th 288, 297 (4th Cir. 2022).

A party removing an action has the "burden of establishing federal jurisdiction." Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994); see Republican Nat'l Comm. v. N.C. State Bd. of Elections, 120 F.4th 390, 398 (4th Cir. 2024); Hughes v. Wells Fargo Bank, N.A., 617 F. App'x 261, 263 (4th Cir. 2015) (per curiam) (unpublished). "Because removal jurisdiction raises significant federalism concerns, [the court] must strictly construe removal jurisdiction." Mulcahey, 29 F.3d at 151; see Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108–09 (1941). "If federal jurisdiction is doubtful, a remand is necessary." Mulcahey, 29 F.3d at 151; see Common Cause v. Lewis, 956 F.3d 246, 252 (4th Cir. 2020) (citation omitted). In a case removed based on diversity jurisdiction, the civil action must be between "citizens of different

7

States" and the amount in controversy must exceed $75,000 exclusive of interest and costs. 28 U.S.C. § 1332(a).

"The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant . . . of a copy of the initial pleading setting forth the claim for relief . . . or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter." 28 U.S.C. § 1446(b)(1). Moreover, "if the case stated by the initial pleading is not removable, a notice of removal may be filed within [30] days after receipt by the defendant . . . of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." Id. § 1446(b)(3). No party may remove an action based on diversity jurisdiction "more than 1 year after" the action commenced, "unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." Id. § 1446(c)(1). "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." Id. § 1447(c).

A.

Smith argues that the court must remand the action to state court because federal jurisdiction is based on diversity and more than a year elapsed since Smith commenced the action. See [D.E. 26] 11–21. In support, Smith notes that she filed her complaint on February 15, 2024, and XPO remained under the original case number upon severance. See [D.E. 32] 2–4. Moreover, on October 8, 2025, more than 19 months after the original suit commenced, XPO filed its notice of removal. Thus, according to Smith, XPO's removal is too late. XPO responds that Smith acted

8

in bad faith to prevent XPO from removing the action. <u>See</u> [D.E. 30] ¶¶ 52–65 (citing 28 U.S.C. § 1446(c)(1)). Thus, according to XPO, its removal is permissible under 28 U.S.C. § 1446(c)(1).

The Fourth Circuit has not explored the bad faith exception under section 1446(c)(1), but the plaintiff is the master of her complaint. <u>See</u> <u>Caterpillar Inc.</u>, 482 U.S. at 392 & n.7; <u>Mayor & City Council of Balt. v. BP P.L.C.</u>, 31 F.4th 178, 198 (4th Cir. 2022); <u>Pinney v. Nokia, Inc.</u>, 402 F.3d 430, 442 (4th Cir. 2005). Thus, there is nothing "inherently invidious or 'bad faith' about using deliberate tactics to defeat federal jurisdiction." <u>Aguayo v. AMCO Ins. Co.</u>, 59 F. Supp. 3d 1225, 1273 (D.N.M. 2014); <u>see</u> <u>Johnson v. HCR Manorcare LLC</u>, No. 1:15-CV-189, 2015 WL 6511301, at *4 (N.D. W. Va. Oct. 28, 2015) (unpublished); <u>Ramirez v. Johnson & Johnson</u>, No. 2:15-CV-9131, 2015 WL 4665809, at *3 (S.D. W. Va. Aug. 6, 2015) (unpublished); <u>cf.</u> <u>Brazell v. Gen. Motors, LLC</u>, No. CA 6:14-4588, 2015 WL 1486932, at *4 (D.S.C. Mar. 30, 2015) (unpublished) (discussing fraudulent joinder); <u>Duck Village Outfitters v. Nationwide Mut. Ins. Co.</u>, No. 2:14-CV-60, 2015 WL 540149, at *2 (E.D.N.C. Feb. 10, 2015) (unpublished) (same).

To prove bad faith under section 1446(c)(1), a defendant bears the "arduous burden" of proving that the plaintiff engaged in forum manipulation specifically to prevent removal. <u>Ramirez</u>, 2015 WL 4665809, at *3 (collecting cases); <u>see</u> <u>Johnson</u>, 2015 WL 6511301, at *4; <u>see, e.g.</u>, <u>White v. Lexington Ct. Apartments, LLC</u>, No. 8:16-CV-427, 2016 WL 1558340, at *3–4 (D. Md. Apr. 18, 2016) (unpublished) (remanding the action because defendant did not show that plaintiff acted in bad faith "<u>in order to prevent removal</u>"); <u>Mansilla-Gomez v. Mid-S. Erectors, Inc.</u>, No. 0:14-CV-308, 2014 WL 1347485, at *2 (D.S.C. Apr. 3, 2014) (unpublished) (remanding the action because the bad faith exception under section 1446(c)(1) did not apply where "other factors might have motivated Plaintiff's decisions to leave out his citizenship in the complaint and other reasons might have caused Plaintiff's delay in responding to the interrogatories"). The bad faith inquiry

9

under section 1446(c)(1) focuses on a plaintiff's subjective intent. See Aguayo, 59 F. Supp. 3d at 1266; see also 28 U.S.C. § 1446(c)(1) ("A case may not be removed under subsection (b)(3) on the basis of jurisdiction conferred by section 1332 more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." (emphasis added)).

When a plaintiff makes a litigation decision that creates diversity jurisdiction after the one-year limit in section 1446(c)(1), the court considers whether the plaintiff's litigation decision was motivated by litigation strategy or forum manipulation. See Brogan-Johnson v. Navient Sols., Inc., No. 5:21-CV-155, 2021 WL 4597661, at *4 (N.D. W. Va. Oct. 6, 2021) (unpublished). "[I]t is not inherently bad faith for a plaintiff to make a litigation decision after the one-year limit that would otherwise give rise to diversity jurisdiction." Id.; see McDonald-Lerner v. Neurocare Assocs., P.A., No. 14-CV-942, 2014 WL 1356602, at *1–2 (D. Md. Apr. 4, 2014) (unpublished) (holding that the bad faith exception under section 1446(c)(1) did not apply where plaintiffs dismissed non-diverse defendants after learning a defendant doctor was not insured and defendant had delayed discovery that would uncover that information). Moreover, although a plaintiff intentionally withholding information about citizenship or the amount in controversy may reflect bad faith, the defendant must diligently seek the information within the one-year removal period in section 1446(c)(1) for the bad faith exception in section 1446(c)(1) to apply. See Hajdasz v. Magic Burgers, LLC, 805 F. App'x 884, 889–90 (11th Cir. 2020) (per curiam) (unpublished) (affirming the district court's finding that the bad faith exception under section 1446(c)(1) did not apply when defendant alleged that plaintiff withheld the amount in controversy because defendant did not move to compel answers to the deposition questions about the controversy amount for 16 months and did not compel responses to written discovery regarding damages).

10

XPO makes two arguments in support of Smith's bad faith: (1) Smith concealed whether the amount in controversy exceeded $75,000; and (2) Smith used Lamb as a non-diverse spoiler. See [D.E. 30] ¶¶ 52–65. The court rejects XPO's arguments.

As for the amount in controversy, XPO argues that Smith's concealed the amount in controversy, which is "powerful, unambiguous evidence that [Smith] acted in bad faith." Id. ¶ 54. But the unambiguous evidence shows that Smith repeatedly told XPO that the amount in controversy exceeded $75,000 within the one-year removal period in section 1446(c)(1). Specifically, on February 15, 2024, Smith filed her complaint, which started the one-year removal clock in section 1446(c)(1).[3] On June 10, 2024, Smith responded to XPO's first set of interrogatories and told XPO that decedent's annual income ranged from $150,000 to $175,000. See [D.E. 26-17] 9. In that same document, XPO asked Smith to "[d]escribe the support [and] assistance . . . that [d]ecedent provided for which you are seeking to recover as damages in this lawsuit." Id. at 6. Smith's response listed decedent's earnings at "approximately $175,000 per year" and described an "occasional bonus based on project production" that averaged $30,000. Id. at 6–7. On December 5, 2024, Smith responded to XPO's Rule 8 Request and reiterated that she sought damages for decedent's annual income. See [D.E. 30-8]. These responses make clear that XPO knew that the amount in controversy exceeded $75,000 within the one-year removal period in section 1446(c)(1).

In opposition, XPO focuses on its alleged attempts to determine the amount in controversy after the one-year limit in section 1446(c)(1) expired. See [D.E. 30] ¶¶ 52–56, 63–65. XPO's

_____

[3] Under North Carolina law, "[a] civil action is commenced by filing a complaint with the court." N.C. Gen. Stat. § 1A-1, Rule 3(a). Therefore, the one-year clock in section 1446(c)(1) started on February 15, 2024. Even if the clock started on February 22, 2024, when Smith sued XPO, the result would be identical.

11

alleged efforts to discern the amount in controversy after the one-year period in section 1446(c)(1) expired are irrelevant. See Hajdasz, 805 F. App'x at 889–90.

As for whether Smith included Lamb as a non-diverse spoiler, XPO argues that Smith did not actively litigate against Lamb. See [D.E. 30] ¶¶ 57–62. In support, XPO notes that Smith failed to notice Lamb's deposition. According to XPO, Smith's failure to notice Lamb's deposition is a "hallmark of bad faith." Id. ¶ 61.

The court rejects XPO's argument. "Any non-token amount of discovery or other active litigation against a removal spoiler entitles the plaintiff" to the rebuttable presumption of good faith. Aguayo, 59 F. Supp. 3d at 1275. Here, Smith served separate written discovery on Lamb and XPO, including first interrogatories, requests for production, and requests for admission. See [D.E. 26] 4; [D.E. 30] ¶ 6. Furthermore, Smith pursued written discovery from Lamb instead of a deposition because Lamb's pending state criminal charges allow him to "invoke the Fifth Amendment privilege against self-incrimination" to most material questions. [D.E. 26] 20. Moreover, although Smith litigated discovery disputes only against XPO, XPO possessed and controlled the requested discovery (not Lamb). Additionally, Smith's case against XPO and Lamb in state court was "slow-moving" because XPO repeatedly refused to produce discoverable materials and thwarted the state court's orders. Cf. Aguayo, 59 F. Supp. 3d at 1274. In fact, the first year of litigation in state court revolved around discovery disputes that XPO created. And, unlike the cases XPO cites, Smith did not dismiss Lamb from this case after the one-year period in section 1446(c)(1) expired. Cf. Heacock v. Rolling Frito-Lay Sales, LP, No. C16-829, 2016 WL 4009849, at *4 (W.D. Wash. July 27, 2016) (unpublished) (dismissing non-diverse defendant after 19 months); Lawson v. Parker Hannifin Corp., No. 4:13-CV-923, 2014 WL 1158880, at *4 (N.D. Tex. Mar. 20, 2014) (unpublished) (nonsuiting the defendant shortly after the one-year limit

12

in section 1446(c)(1) expired); In re Propulsid Prods. Liab. Litig., No. MDL 1355, 2007 WL 1668752, at *1 (E.D. La. June 6, 2007) (unpublished) (dismissing all non-diverse defendants three years after filing suit); Elsholtz v. Taser Int'l, Inc., 410 F. Supp. 2d 505, 506–07 (N.D. Tex. 2006) (nonsuiting the only non-diverse party after the one-year limit in section 1446(c)(1) expired); Shiver v. Sprintcom, Inc., 167 F. Supp. 2d 962, 963 (S.D. Tex. 2001) (nonsuiting the non-diverse party from the lawsuit on the eve of trial). Rather, Smith continues to litigate her claims against Lamb in Robeson County Superior Court.

Notably, Smith moved to sever the claims against XPO and Lamb so she could continue to litigate her claims against Lamb without delay. In her motion to sever, Smith told the court that XPO's discovery misconduct led to severe delay and prejudice, and Smith wanted to proceed to trial against Lamb in Robeson County Superior Court without waiting for the North Carolina Court of Appeals to resolve XPO's interlocutory appeal. See [D.E. 16-52] 4–5. Robeson County Superior Court agreed with Smith and granted Smith's motion to sever on July 9, 2025, because "joinder of [d]efendant XPO and [d]efendant Lamb ha[d] resulted in substantial and unwarranted delays in written and oral discovery and ha[d] been severely prejudicial to [Smith]." [D.E. 16-59] ¶ 35. Additionally, the court found that there was "a risk of substantial prejudice to both [Smith] and [d]efendant Lamb at trial" if the claims remained joined. Id. ¶ 32.

When Robeson County Superior Court granted Smith's June 2025 motion to sever on July 9, 2025, and severed the two defendants, the action involving Smith and XPO involved two diverse parties. Moreover, although the severance created diversity jurisdiction after the one-year limit in section 1446(c)(1), Smith made a litigation decision to seek a severance based on the case's unique posture, including XPO's repeated discovery violations and interlocutory appeal. Smith did not engage in forum manipulation in order to prevent removal. See, e.g., Brogan-Johnson, 2021 WL

13

4597661, at *4; White, 2016 WL 1558340, at *3–4; McDonald-Lerner, 2014 WL 1356602, at *1–2. XPO has failed to meet the "arduous burden" of proving that the bad faith exception in section 1446(c)(1) applies. Ramirez, 2015 WL 4665809, at *3; see, e.g., White, 2016 WL 1558340, at *3–4; Johnson, 2015 WL 6511301, at *4; Mansilla-Gomez, 2014 WL 1347485, at *2.

In finding that XPO has failed to prove that the bad faith exception in section 1446(c)(1) applies, the court did not consider Smith's notice filing at docket entry 45. The information is not necessary to decide Smith's motion to remand. Thus, the court denies as moot XPO's motion to disregard or alternatively for leave to file a response to docket entry 45. See [D.E. 46].

B.

Alternatively, even if the bad faith exception in section 1446(c)(1) applies (and it does not), XPO did not remove the action within 30 days of the July 9, 2025 severance order. Thus, XPO's removal was untimely under 28 U.S.C. § 1446(b)(3).

Generally, "[t]he notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b). But "if the case stated by the initial pleading is not removable, a notice of removal may be filed within [30] days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." Id. § 1446(b)(3) (emphasis added). Other papers or documents need not be part of the state court record and include "any information received by the defendant, whether communicated in a formal or informal manner."

14

Northrop Grumman Tech. Servs., Inc. v. DynCorp Int'l, LLC, 865 F.3d 181, 186–87 (4th Cir. 2017) (cleaned up); see Yarnevic v. Brink's, Inc., 102 F.3d 753, 755 (4th Cir. 1996).[4]

In determining whether a defendant was notified of the amount in controversy, the court first examines the initial pleadings and then the documents and other papers that the parties exchanged in the case. See Lovern v. Gen. Motors Corp., 121 F.3d 160, 162 (4th Cir. 1997); Padgett Props., LLLP v. Nautilus Ins. Co., 645 F. Supp. 3d 538, 542 (E.D.N.C. 2022). The pleading, motion, order, or other papers must be "unequivocally clear and certain" that the amount in controversy exceeds $75,000 exclusive of interest and costs to start the 30-day clock. Bosky v. Kroger Tex., LP, 288 F.3d 208, 211 (5th Cir. 2002) (citation omitted); see Northrop Grumman, 865 F.3d at 187 n.5; Huffman v. Saul Holdings Ltd. P'ship, 194 F.3d 1072, 1078 (10th Cir. 1999); Padgett Props., LLLP, 645 F. Supp. 3d at 542; US Airways, Inc. v. PMA Cap. Ins. Co., 340 F. Supp. 2d 699, 703–04 (E.D. Va. 2004).

If a plaintiff seeks a category of relief (such as lost annual income or medical bills) and provides those figures to the defendant, which alone or in combination exceed $75,000, then it is "unequivocally clear and certain" that the amount in controversy requirement is met. See, e.g., Buchanan v. APAC-Atl., Inc., No. 1:20-CV-141, 2020 WL 5742844, at *2 (W.D.N.C. Sept. 25, 2020) (unpublished); Est. of Fraire v. TransAm Trucking, Inc., No. 5:18-CV-177, 2019 WL 654312, at *3–4 (N.D. W. Va. Feb. 15, 2019) (unpublished). A defendant's subjective knowledge, inability to do simple calculations, or willful blindness is irrelevant. See Lovern, 121 F.3d at 162; Ramirez-Martinez v. Nissan N. Am., Inc., No. 2:25-CV-4744, 2025 WL 3672948, at *4 (C.D. Cal.

---

[4] XPO argues that the court must look to the "written, record-based case documents, such as Rule 8 statements, rather than off-the-record 'stray' communications." [D.E. 30] ¶ 72. The court disagrees. As discussed, Northrop Grumman and Yarnevic (which XPO does not cite) define "other paper[s]" as information that XPO received both formally and informally from Smith. See Northrop Grumman, 865 F.3d at 186–87; Yarnevic, 102 F.3d at 755.

Dec. 16, 2025) (unpublished) (holding that defendant's "willful blindness" to information in subsequent "other paper" did not halt the 30-day clock); Scriptchek Visual Verification Sys., Inc. v. R.R. Donnelley & Sons Co., No. 20-CIV-61261, 2021 WL 226095, at *5 (S.D. Fla. Jan. 22, 2021) (unpublished); Bragg v. Kentucky RSA # 9-10, Inc., 126 F. Supp. 2d 448, 449 (E.D. Ky. 2001).

As discussed, on June 10, 2024, Smith responded to XPO's first set of interrogatories and told XPO that decedent's annual income ranged from $150,000 to $175,000. See [D.E. 26-17] 9. In that same document, XPO asked Smith to "[d]escribe the support [and] assistance . . . that [d]ecedent provided for which you are seeking to recover as damages in this lawsuit." Id. at 6 (emphasis added). In response, Smith listed decedent's earnings at "approximately $175,000 per year" and described an "occasional bonus based on project production" that averaged $30,000. Id. at 6–7. On December 5, 2024, six months later, Smith responded to a Rule 8 Request and reiterated that she sought damages for decedent's annual income. See [D.E. 30-8]. Thus, Smith repeatedly communicated to XPO that the amount in controversy exceeded $75,000 exclusive of interests and costs. See, e.g., Buchanan, 2020 WL 5742844, at *2; Est. of Fraire, 2019 WL 654312, at *3–4. Furthermore, on October 29, 2024, Smith emailed XPO's counsel requesting the insurance coverage and warned XPO that the insurance carrier needed to be notified that its potential exposure could be "as high as $100,000,000." [D.E. 26-9] 2. XPO received this information from Smith, which qualifies it as "other paper[s]." See Northrop Grumman, 865 F.3d at 186–87; Yarnevic, 102 F.3d at 755; see also Rodgers v. Nw. Mut. Life Ins. Co., 952 F. Supp. 325, 327–29 (W.D. Va. 1997) (holding that an informal letter constituted an "other paper" under Yarnevic).

Having examined the documents and other papers that the parties exchanged, the court finds that, before the July 9, 2025 severance order, XPO received "other paper[s]" that made it

"unequivocally clear and certain" that the amount in controversy exceeded $75,000 exclusive of interests and costs. Bosky, 288 F.3d at 211 (citation omitted); see Northrop Grumman, 865 F.3d at 187 n.5; Huffman, 194 F.3d at 1078; Lovern, 121 F.3d at 162; Padgett Props., LLLP, 645 F. Supp. 3d at 542; US Airways, Inc., 340 F. Supp. 2d at 703–04. Thus, on July 9, 2025, the severance order created complete diversity and started the 30-day clock, which expired on August 8, 2025. Accordingly, XPO's October 8, 2025 removal was untimely.

In opposition, XPO argues that Smith "refused to provide any Rule 8 written statement," which "left XPO with no way to obtain a clear, record-based jurisdictional figure" until September 18, 2025. [D.E. 30] ¶¶ 72, 75. In support, XPO cites cases in which courts found that the "other paper[s]" were ambiguous about the amount in controversy. See id. ¶¶ 69–74.

The court rejects XPO's argument. As discussed, the "other paper[s]" in this case unequivocally informed XPO that Smith sought more than $75,000 in damages, exclusive of interest and costs, before the July 9, 2025 severance order. Furthermore, Smith never offered conflicting information that the amount in controversy was less than $75,000 exclusive of interests and costs. And Smith's refusal to quantify her total damages in her Rule 8 responses does not create ambiguity. Moreover, XPO's apparent willful blindness does not toll the 30-day removal clock. See Lovern, 121 F.3d at 162; Ramirez-Martinez, 2025 WL 3672948, at *4; Scriptchek Visual Verification Sys., Inc., 2021 WL 226095, at *5; Bragg, 126 F. Supp. 2d at 449. Thus, having reviewed the record and governing law, the court remands this case to Robeson County Superior Court.

In light of this conclusion, the court does not address Smith's argument that XPO waived its right to remove. The court also denies as moot XPO's motion to strike new arguments about waiver in Smith's reply brief or alternatively to file a surreply. See [D.E. 33].

17

## III.

Smith argues that under 28 U.S.C. § 1447(c), she is entitled to just costs and actual expenses, including attorneys' fees incurred as a result of the removal. See [D.E. 26] 23–24. When a court remands a case to state court, "[s]ection 1447(c) authorizes courts to award costs and fees, but only when such an award is just." Martin v. Franklin Cap. Corp., 546 U.S. 132, 138 (2005); see 28 U.S.C. § 1447(c) ("An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."). In making this determination, courts must consider the reasonableness of the removal. See Martin, 546 U.S. at 141; Dreamworks Motorsports, Inc. v. Klein, No. 24-2006, 2026 WL 837544, at *2 (4th Cir. Mar. 26, 2026) (per curiam) (unpublished). "Absent unusual circumstances, courts may award attorney's fees under [section] 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." Martin, 546 U.S. at 141; see Black v. Mantei & Assocs., Ltd., 145 F.4th 528, 534 (4th Cir. 2025). "The ultimate decision as to whether or not fees and costs should be awarded is left to the sound discretion of the district court, and it is not necessary for the [c]ourt to find 'bad faith' on the part of the removing party before making such awards." Allen v. Monsanto Co., 396 F. Supp. 2d 728, 733 (S.D. W. Va. 2005) (citation omitted); see Carter v. Acadia Healthcare Co., 705 F. Supp. 3d 597, 603 (S.D. W. Va. 2023).

An award of fees and costs is appropriate because two grounds expressly foreclosed XPO's removal. First, as discussed, XPO removed this action after the one-year limit in section 1446(c)(1) expired, and XPO had no objectively reasonable belief that Smith acted in bad faith. Cf. 28 U.S.C. § 1446(c)(1). Second, as discussed, even if XPO proved bad faith (and it did not), XPO did not remove this action within 30 days after the July 9, 2025 severance order. Cf. id.

18

§ 1446(b)(3). Thus, the court finds that Smith is entitled to just costs and actual expenses incurred as a result of removal. See id. § 1447(c).

IV.

In sum, the court GRANTS plaintiff's motion to remand [D.E. 25], DENIES AS MOOT defendant's other motions [D.E. 33, 38, 46], and REMANDS the action to Robeson County Superior Court. Plaintiff's request for just costs and actual expenses incurred as a result of the removal is GRANTED, and plaintiff is DIRECTED to file, not later than June 18, 2026, an accounting of her just costs and actual expenses. Defendant's motion to disqualify plaintiff's counsel and motion to seal remain pending [D.E. 47, 48], and Robeson County Superior Court can address those motions once fully briefed.

SO ORDERED. This 29 day of May, 2026.

JAMES C. DEVER III
United States District Judge

19