IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:25-cv-01545-D-BM

| | |
|---|---|
| CINDY SOLES SMITH, Administratrix of the ESTATE OF MARK KEANNAN SMITH, <br><br> Plaintiff, <br><br> v. <br><br> XPO LOGISTICS FREIGHT, INC., <br><br> Defendant. | PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR JUST COSTS AND ACTUAL EXPENSES <br><br> 28 U.S.C. § 1447(c) |

In its opposition brief, XPO does not dispute the hourly rate used in the Plaintiff's motion for fees. Instead, XPO contests several line items as either duplicative or not incurred because of removal. Neither point is well taken.

First, there was no duplication of effort. The Plaintiff has two attorneys, who conferred with one another on strategy and divided their efforts on the various motions that had to be briefed.

Second, Plaintiff has only moved for fees for tasks that had to be performed because of the removal. But for the removal, none of the requested fees were necessary. XPO's brief purports to apply this causation-based approach, but then repeatedly switches to non-applicable fee-based standards like "prevailing party" work "incurred to secure remand." Those are not the correct standard under 28 U.S.C. § 1447(c).

**ARGUMENT**

**I.     XPO's Opposition Brief Misstates and Misapplies the Governing Standard.**

Because XPO unreasonably removed this case, it is liable to Plaintiff to attorney's fees "incurred as a result of the removal." 28 U.S.C. § 1447(c). This is a causation standard for determining what fees are awardable. *See, e.g., Avitts v. Amoco Prod. Co.*, 111 F.3d 30, 32 (5th Cir. 1997). *Cf. Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 109-10 (2017) (setting out but-for test to award sanctions under court's inherent power). XPO quotes cases showing that this is a causation standard. XPO Br. (D.E. 56) at 4-5. But then it fails to apply that causation standard to the tasks that it challenges.

First, fees for discovery work are awardable because the discovery tasks would not have occurred in state court—i.e., but-for the removal. XPO argues that these fees would have been expended in state court, but that is wrong. Fees under § 1447(c) are not limited to fees incurred in seeking remand; they include any fees incurred because of removal. *Mints v. Educ. Testing Serv.*, 99 F.3d 1253, 1259 (3d Cir. 1996).

The discovery work performed in this Court involved an analysis of federal-court discovery rules, preparation for a Rule 26(f) conference, preparation of a Joint Rule 26(f) and report, as well as a discovery scheduling order issued by the Court. None of that work would have occurred without removal because there would not have been a discovery conference, discovery report, initial disclosures, or a discovery scheduling order in North Carolina superior court. Indeed, in Lamb's separate case,

2

none of those things have occurred. (D.E. 58[1].) There were also calls between Plaintiff's counsel to consider impact of *federal* discovery on the *federal* case—calls that would not have occurred had the case not been in *federal* court.

Thus, the discovery work that occurred in this case was unique to the case's pendency in federal court. Had the case been in state court, none of this work would have been done.

Second, all work for the disqualification motion is awardable. XPO filed this motion in federal court, and Plaintiff's counsel began initial work on the Plaintiff's response before the case was remanded. Although XPO says disqualification is "unrelated to the removal and remand proceedings," that is *not* the test for § 1447(c). The test is whether the fees were incurred because of the removal. The answer here is yes. XPO has not even pursued disqualification in the remanded proceedings. (*See* D.E. 58 ¶ 10.)

Third, XPO challenges counsel's time spent discussing how to deal with the impact of the removal on the state-court proceedings. Again, XPO ignores the test, saying that this was not time "reasonably incurred to secure remand." Br. at 9. But the test is whether the fees were "incurred as a result of the removal." 28 U.S.C. § 1447(c). Because of the removal, Plaintiff's counsel had to determine the impact of the removal on the state-court proceedings, and had to determine the impact of a remand on those proceedings. Without the removal, Plaintiff's counsel would never

---

[1] J. William Owen filed a *supplemental* declaration on July 20, 2026 – cited as Docket Entry 58.

have had to do that work or have those conversations. The fees would not have been incurred but for the removal.

## II.  XPO's Quibbles with the Lodestar Do Not Warrant a Reduction.

Next, XPO seeks to reduce Plaintiff's lodestar by challenging the amount of time spent on various tasks. But XPO offers no evidence or factual basis to undermine Plaintiff's requested fees. Only Plaintiff has submitted evidence on this fee motion.

First, collaboration between Plaintiff's counsel in a procedurally complex case is a recoverable expense. *See Torres-Baez v. Giovenco-Montano*, No. 2:20-CV-580, 2022 WL 15482678, at *8 (E.D. Va. Oct. 4, 2022), *report and recommendation adopted*, 2022 WL 14975888 (E.D. Va. Oct. 26, 2022) ("Internal meetings are an important part in litigating a case and such communication prevents duplicative work."). XPO complains that the time entries only give a broad topic for strategy discussions between Plaintiff's counsel. (D.E. 56 at 10.) But XPO is not entitled to granular, privilege-level details about counsel's discussions. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("Plaintiff's counsel, of course, is not required to record in great detail how each minute of his time was expended. But at least counsel should identify the general subject matter of his time expenditures."). The general subject matter is clear from the time entries, and XPO does not dispute that it understands the subject matter from the entries. And the work is plainly not duplicative—it takes at least two people to have a conversation.

Second, the similarity of the time entries is no basis for deducting incurred fees. Mr. Shelton's time entries were contemporaneously created because he is paid hourly on the matter. (D.E. 53-1 ¶¶ 2, 19.) Mr. Owen did not create time entries when

he performed work on this case because he was engaged to work on this matter through a contingency-fee agreement, which is how he handles virtually all of his practice. (*See* D.E. 53-2 ¶¶ 4-5.) But his entries are derived from contemporaneous records that he maintains. Mr. Owen created his time entries from a review of his work product on the case, his notes, and Mr. Shelton's contemporaneous time entries submitted by invoice. (See D.E. 58 ¶ 2.) These are records he maintains in the ordinary course of his practice. None of that detracts from the awardability of Mr. Owen's fees, since his work has been adequately reconstructed. *Yohay v. City of Alexandria Emps. Credit Union, Inc.*, 827 F.2d 967, 974 (4th Cir. 1987).

To the extent that the Court believes that the lack of Mr. Owen's independent, contemporaneous time entries leaves any residual uncertainty about the work that he performed, the proper approach is to simply apply a modest discount on the fees he has sought, such as 10%. *See United States ex rel. Hartnett v. Physicians Choice Lab'y Servs.*, No. 3:17-CV-37, 2021 WL 3072460, at \*10 (W.D.N.C. July 20, 2021). The goal of fee-shifting is to "do rough justice, not to achieve auditing perfection." *Goodyear Tire*, 581 U.S. at 110 (cleaned up).

Third, the work performed by Plaintiff's counsel was never duplicative. Both counsel did parts of the research for the briefs filed in this Court. Both counsel drafted parts of every brief filed with the Court. And both counsel revised the drafts to improve the readability and persuasive value of the briefs filed with the Court.

This division of labor is typical for any proceeding involving more than one attorney. Plaintiff's counsel was efficient in how they divided their labor, and XPO

has *no evidence* to suggest otherwise. XPO does not state, for example, how many of its own attorneys worked on each of the papers it filed with the Court, or how much time those attorneys spent on any task. Certainly that would be an appropriate comparator, but XPO chose not to disclose that information to the Court.

Finally, XPO claims that it was unreasonable for Plaintiff's counsel to spend 14.5 hours opposing XPO's reconsideration motion. It gives no evidence or reason why it believes this was too many hours. To disprove this as a reasonable number of hours, XPO could have notified the Court how much *it* spent on the reconsideration briefing. But XPO offers none of its own evidence; it offers just *ipse dixit*.

The time spent on the reconsideration response was reasonable. The brief is over 6000 words and over 20 pages long. It was not duplicative of any work that had already been done on the issue because Plaintiff's counsel had never briefed the issue before. XPO's motion argued that reconsideration was necessary under *federal* law, including the *federal* discovery rules. Since the sanctions had been imposed under *North Carolina* discovery rules, Plaintiff's counsel had never researched how order would fare under federal law. Nor had Plaintiff's counsel previously analyzed the law that governs when a removing defendant seeks federal-court reconsideration of an order entered pre-removal by a state court.

If XPO did not want to chance being hit with fees for briefing on reconsideration, it would have been prudent of XPO not to seek reconsideration, at least until the remand motion was resolved. Yet, when XPO sought reconsideration, it already know that Plaintiff sought fees under § 1447(c). (*Compare* D.E. 26 (remand

6

motion filed Nov. 3, 2025), *with* D.E. 38 (reconsideration motion filed Jan. 27, 2026).) These fees are fully awardable because Plaintiff would not have incurred them but for the removal.

### III.    The Lodestar Should Not Be Reduced.

Last, XPO argues that the lodestar should be reduced because Plaintiff was not a prevailing party on the motions denied as moot. (D.E. 56 at 13-15.) But § 1447(c) is not a prevailing-party fee statute but a causation-based fee statute. The question isn't whether Plaintiff prevailed but whether the fees would have been incurred but for the removal. As already explained, the fees pass but-for scrutiny. Therefore, XPO has not shown that a reduction based on work on these motions is warranted or even allowable under § 1447(c).

And although XPO proposes an arbitrary set of haircuts to Plaintiff's time entries, (D.E. 56 at 16-17), XPO offers no factual basis to support the cuts. XPO simply offers the Court no evidentiary basis to accept its own revised time sheet.

### CONCLUSION

Plaintiff again respectfully requests that the Court award Plaintiff $33,900.00 in attorney's fees as just costs and actual expenses under 28 U.S.C. § 1447(c).

This the 20th day of July, 2026.

**MUSSELWHITE, MUSSELWHITE, BRANCH & GRANTHAM, P.A.**

/s/ J. William Owen
J. William Owen
N.C. Bar No. 47994
wowen@mmbglaw.com
P.O. 1448
Lumberton, NC 28359

*Co-Counsel for Plaintiff*

**DOWLING PLLC**

/s/ Troy D. Shelton
Troy D. Shelton
N.C. Bar No. 48070
tshelton@dowlingfirm.com
3801 Lake Boone Trail, Suite 260
Raeligh, NC 27607

*Co-Counsel for Plaintiff*

# CERTIFICATE OF WORD COUNT

Pursuant to Local Rules 7.2(f)(3), undersigned counsel certifies that this memorandum complies with the applicable word limit. Per the word processing software, this memorandum contains 1,707 words, excluding the case caption, the signature block, required certificates, table of contents, table of authorities, and any attachments, exhibits, affidavits, or other addenda.

/s/ J. William Owen
J. William Owen